Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Janet J. Hur, State Bar No. 330358
E-Mail: jhur@hurrellcantrall.com
Jerad J. Miller, State Bar No. 334001
E-Mail: jjmiller@hurrellcantrall.com
HURRELL CANTRALL LLP
800 West 6th Street, Suite 700
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS(KSx)<br><br>**DEFENDANT MARISOL BARAJAS' DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**<br><br>[Assigned to Hon. Mark C. Scarsi, Courtroom "7C"] |

## DECLARATION OF MARISOL BARAJAS

1. I am a Defendant in the above-entitled action.

2. I have personal knowledge of the facts set forth herein, and if called upon as a witness to testify thereto, I could competently and truthfully do so.

3. I make this declaration in support of Defendants' Motion for Summary Judgment, or Partial Summary Judgment.

4. I am a deputy for the Los Angeles County Sheriff's Department, Walnut Sheriff's Station. I held this same position on the incident date of June 19, 2023.

5. On June 19, 2023, I was on-duty in Diamond Bar, CA, when I received a dispatch call concerning a man carrying an AR-15-style weapon on Diamond Bar Blvd. and wearing a bullet-proof vest. Dispatch further reported that the suspect had fired multiple rounds from his rifle. I responded Code-3 to the location. The suspect was later determined to be Decedent Benjamin Chin.

6. While driving to the Decedent's location, I received an update from dispatch stating that there was a stabbing victim. This individual was later determined to be Plaintiff Jennie Quan, the Decedent's mother.

7. I turned southbound on Diamond Bar Blvd. and saw the suspect approximately 15 – 20 feet north of my patrol vehicle. I observed the suspect with an AR-15 rifle and a bullet-proof vest, indicating to me that the Decedent was a lethal threat who anticipated a violent conflict. The Decedent walked northbound with his rifle slung around his shoulder on his right side on Diamond Bar Boulevard towards deputy vehicles, including mine, and a civilian Tesla. I observed a civilian inside the Tesla as the Decedent walked northbound.

8. I planned to further the distance between my vehicle and the Decedent as he continued walking forward, but civilian and deputy vehicles to my left and behind me, respectively, prevented this option.

9. Believing that the Decedent posed a lethal threat to civilians, deputies and myself as he continued walking northbound, I exited my vehicle and drew my service handgun. I used the driver-side door as cover and used my radio to alert other deputies that I was detaining an armed suspect at gunpoint.

10. I commanded the Decedent seven (7) times to drop his weapon. The commands were ineffective and the Decedent continued moving northbound on Diamond Bar Boulevard, progressing within approximately 7-10 feet of the civilian Tesla and my vehicle.

11. I did not attempt to use less-lethal ammunition against the Decedent because he posed an imminent threat of death or substantial bodily harm to myself,

other deputies, and civilians. Moreover, I believed that less-lethal ammunition would be ineffective due to the Decedent's bullet-proof vest.

12. I then fired one shot from my service weapon at the Decedent and gave him additional commands to put his weapon down. The shot appeared to have no effect on the Decedent, and his bullet-proof vest prevented me from determining whether he was injured. I then ordered him to drop his weapon an eighth (8) time.

13. I ordered the Decedent to drop his weapon a ninth (9) time and began ordering him to drop it a tenth (10) time, but my order was interrupted by Detective Hector Vazquez firing a shotgun round at the Decedent.

14. I reassessed the danger of the situation and determined that the Decedent was still an imminent dangerous threat because he continued advancing with his rifle slung around his shoulder. The bullet-proof vest continued to prevent me from determining the extent of any injuries the Decedent suffered.

15. I then recall firing two-to-three (2-3) additional shots at the Decedent from my handgun. In total, I recall firing three-to-four (3-4) shots at the Decedent.

16. After firing my last shot, Detective Vazquez, who was approaching the Decedent from the rear, fired his second shot at the Decedent with his shotgun. The Decedent fell to the ground after Detective Vazquez's second shot.

17. While on the ground, the Decedent's AR-15 was within reaching distance of the Decedent's arms. Fearing that he was capable of grabbing his rifle and shooting at deputies and civilians in the vicinity, I instructed the Decedent not to reach for his rifle.

18. With the AR-15 still within the Decedent's reach, a plan was developed to safely and securely approach the Decedent so that medical care could be rendered. The Decedent's bullet-proof vest prevented me from determining the extent of the Decedent's injuries.

19. Deputy German Perez equipped a shield and we approached the Decedent to render aid and conduct a search. I searched the Decedent for additional

weapons and removed a folding knife and extra magazines from his right-leg pocket.

20. Medical care was provided to the Decedent at the scene by deputies and members of the fire department until the Decedent was taken to an ambulance.

21. Attached hereto as **Exhibit A** is a true and correct copy of my body-worn video which accurately captured the underlying incident that is the subject of this action. The body-worn video accurately reflects what transpired during the subject incident and after a full and thorough review of the body-worn video, I do not believe there are any inaccuracies contained therein.

22. Attached hereto as **Exhibit B** is a true and correct copy of part one of my audio interview with the Los Angeles County Sheriff's Department, Homicide Bureau, given after the incident on July 7, 2023. The audio interview accurately reflects my statements given to the Homicide Bureau pertaining to the underlying incident that is the subject of this action. I do not believe there are any inaccuracies contained therein.

23. Attached hereto as **Exhibit C** is a true and correct copy of part two of my audio interview with the Los Angeles County Sheriff's Department, Homicide Bureau, given after the incident on July 7, 2023. The audio interview accurately reflects my statements given to the Homicide Bureau pertaining to the underlying incident that is the subject of this action. I do not believe there are any inaccuracies contained therein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 29, 2025, at Los Angeles, California.

Marisol Baraias

# Ex. A – MANUALLY FILED COLA 00285 (VIDEO)

# Ex. B – MANUALLY FILED COLA 00755 (AUDIO FILE)

# Ex. C – MANUALLY FILED COLA 00756 (AUDIO FILE)