Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Janet J. Hur, State Bar No. 330358
E-Mail: jhur@hurrellcantrall.com
Jerad J. Miller, State Bar No. 334001
E-Mail: jjmiller@hurrellcantrall.com
HURRELL CANTRALL LLP
800 West 6th Street, Suite 700
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS(KSx)<br><br>**DEFENDANT HECTOR VAZQUEZ'S DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**<br><br>[Assigned to Hon. Mark C. Scarsi, Courtroom "7C"] |

## DECLARATION OF DETECTIVE HECTOR VAZQUEZ

1. I am a Defendant in the above-entitled action.

2. I have personal knowledge of the facts set forth herein, and if called upon as a witness to testify thereto, I could competently and truthfully do so.

3. I make this declaration in support of Defendants' Motion for Summary Judgment, or Partial Summary Judgment.

4. I am a detective for the Los Angeles County Sheriff's Department, Walnut Sheriff's Station. I held this same position on the incident date of June 19,

2023.

5. On June 19, 2023, I was on-duty in the area of Diamond Bar, CA, when I received a dispatch call concerning an Asian male with an assault rifle firing rounds in the air, possibly with a bullet-proof vest, near the intersection of Crooked Creek Dr. and Rising Star Dr. Dispatch requested that deputies in the area respond with lights and sirens. The suspect was later determined to be Decedent Benjamin Chin.

6. Due to the reports that the suspect was carrying an assault rifle, I armed myself with a shotgun with slug ammunition.

7. While driving to Crooked Creek Drive, I observed numerous civilians outside their homes who appeared scared because of the Decedent.

8. While looking for the suspect, I observed an elderly Asian female with blood on her hands. She approached the deputies and me and asked us not to harm the suspect. This was later determined to be Plaintiff Jennie Quan.

9. Although I did not know that the elderly Asian female was the Decedent's mother at the time of our initial interaction, I believed she was acquainted with the Decedent because she asked the deputies not to harm him.

10. The Decedent's willingness to attack someone he knew with deadly force heightened my fears that the Decedent was a threat and willing to use deadly force against myself, other deputies or civilians.

11. Deputy Carlos De La Torre then informed me that the Decedent was approaching Diamond Bar Blvd. I observed the Decedent approximately 150-200 feet in front of me wearing a bullet-proof vest and what appeared to be an AR-15 rifle with an optical lens. I reasonably believed that the Decedent would be capable of accurately striking myself, other deputies or civilians from approximately 150 – 200 ft. away with an AR-15 equipped with an optical lens.

12. Positioned behind the Decedent, I began approaching the Decedent with a shotgun loaded with slug ammunition. I yelled repeated commands for the Decedent to drop his weapon, which were ignored. He continued approaching the deputies

positioned in front of him on Diamond Bar Blvd. with his rifle in the low-ready position on his right side.

13. To prevent against the Decedent possibly turning around and shooting at the deputies positioned where I was located, I asked Detective Christopher Bronwicki to use his vehicle as cover as we approached the Decedent. I urgently pursued the Decedent towards Diamond Bar Blvd. with fears that the Decedent could open-fire on deputies and civilians at any point. His bullet-proof vest and AR-15 signaled to me that he was ready for a violent conflict, which heightened my fears because I understood Diamond Bar Boulevard to constitute a heavily trafficked roadway where significant civilian presence is likely.

14. I began running on foot from Crooked Creek Dr. to northbound Diamond Bar Blvd. behind the Decedent. I continue to yell commands to the Decedent to drop his weapon, which he continues to ignore. As I turn the corner of Crooked Creek Dr. and approach Diamond Bar Blvd., I observed civilian and deputy vehicles directly in front of the Decedent's path.

15. There was the risk of crossfire from my position due to the civilian and deputy vehicles directly in front of the Decedent, so I repositioned myself towards the Decedent's left-flank without any cover. As I am flanking the Decedent, I heard one shot from an unknown source.

16. I observed that the Decedent had been impacted because he momentarily slumped over, but he quickly stood back up. I then observed the Decedent's right elbow raise, indicating to me that his hand was on the pistol grip of the rifle and would begin firing at deputies and civilians. He was approximately 10-15 ft. from the civilian and deputy vehicles in front of him at this point. Fearing that the Decedent was going to shoot at deputies and civilians, I fired one round from my shotgun at the Decedent. I witnessed the shotgun slug strike the Decedent's bullet-proof vest. The Decedent did not appear to be affected by the shot.

17. Believing that the Decedent would turn towards me to shoot me and

3

that I lacked any cover, I fired a second shotgun round at the Decedent. The Decedent fell to the ground after I fired the second shot.

18. I did not attempt to use less-lethal ammunition against the Decedent because he posed an imminent threat of death or substantial bodily harm to myself, other deputies, and civilians. Moreover, I believed that less-lethal ammunition would be ineffective due to the Decedent's bullet-proof vest.

19. The Decedent dropped his rifle when he fell to the ground. I commanded the deputies on-site to grab a shield and approach the Decedent so that he could be handcuffed and rendered aid. I loaded another shell into my shotgun before approaching the Decedent to protect against the possibility that the Decedent could recover his rifle and shoot deputies and civilians in the vicinity. The Decedent's bullet-proof vest prevented me from determining the extent of the Decedent's injuries.

20. Medical care was provided to the Decedent at the scene by deputies and members of the fire department until the Decedent was taken to an ambulance.

21. Attached hereto as **Exhibit D** is a true and correct copy of my body-worn video which accurately captured the underlying incident that is the subject of this action. The body-worn video accurately reflects what transpired during the subject incident and after a full and thorough review of the body-worn video, I do not believe there are any inaccuracies contained therein.

22. Attached hereto as **Exhibit E** is a true and correct copy of my audio interview with the Los Angeles County Sheriff's Department, Homicide Bureau, given after the incident on July 7, 2023. The audio interview accurately reflects my statements given to the Homicide Bureau pertaining to the underlying incident that is the subject of this action. I do not believe there are any inaccuracies contained therein.

///
///
///
///

4

1  I declare under penalty of perjury under the laws of the State of California that
2  the foregoing is true and correct.
3  Executed on September 29, 2025, at Los Angeles, California.

*[Signature]*

Hector Vazquez

# Ex. D – MANUALLY FILED COLA 00286 (VIDEO)

# Ex. E – MANUALLY FILED COLA 00752 (AUDIO FILE)