Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
Janet J. Hur, State Bar No. 330358
E-Mail: jhur@hurrellcantrall.com
Jerad J. Miller, State Bar No. 334001
E-Mail: jjmiller@hurrellcantrall.com
HURRELL CANTRALL LLP
800 West 6th Street, Suite 700
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS(KSx)<br><br>**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed Concurrently With: 1) Defendants' Motion for Summary Judgment, or Partial Summary Judgment; 2) Declarations of Marisol Barajas, Hector Vazquez, Kyle Toves, Ed Flosi, and Jerad J. Miller; 3) [Proposed] Order; 4) [Proposed] Judgment<br><br>[Assigned to Hon. Mark C. Scarsi, Courtroom "7C"] |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 1.  Marisol Barajas was a deputy for the Los Angeles County Sheriff's | 1. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Department on the day of the incident.<br><br>**Evidence:** Declaration of Deputy Marisol Barajas ("Barajas Decl."), at ¶ 4; COLA 00285 (Exhibit A) – 00286 (Exhibit D). | |
| 2.  Hector Vazquez was a detective for the Los Angeles County Sheriff's Department on the day of the incident.<br><br>**Evidence:** Declaration of Deputy Hector Vazquez ("Vazquez Decl."), at ¶ 4; COLA 00285 (Exhibit A) (Exhibit A) – 00286 (Exhibit D). | 2. |
| 3.  The incident occurred on June 19, 2023 in Diamond Bar, CA.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., at ¶ 5. | 3. |
| 4.  Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶ 5; COLA 00285 (Exhibit A) (Exhibit A), at 0:01:40; | 4. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; | |
| 5. Deputy Barajas traveled southbound on Diamond Bar Boulevard, and the Decedent appeared on the same street walking northbound.<br><br>**Evidence:** Barajas Decl., at ¶ 7; COLA 00285 (Exhibit A), at 0:07:25-0:08:12. | 5. |
| 6. The Decedent was estimated to be approximately 15 - 20 feet from Deputy Barajas' vehicle when she turned on Diamond Bar Boulevard.<br><br>**Evidence:** Barajas Decl., at ¶ 7; COLA 00285 (Exhibit A), at 0:07:25-0:08:12; COLA 00755 (Exhibit B), at 08:03. | 6. |
| 7. The Decedent continued to move northbound towards deputies and civilians with his rifle slung around his shoulder to his right side.<br><br>**Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 12; COLA 00285 (Exhibit A), at 0:07:25-0:08:12; COLA 00286 (Exhibit D). | 7. |
| 8. Deputy Barajas planned to further the distance between her vehicle and the Decedent due to his ongoing approach, but civilian and deputy vehicles to Deputy Barajas' left and behind her prevented this option. | 8. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

3

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Barajas Decl., at ¶ 8; COLA 00285 (Exhibit A), at 0:07:25-0:18:57; COLA 00286 (Exhibit D); COLA 00755 (Exhibit B), at 8:10 – 8:22. | |
| 9. Believing that the Decedent was an imminent dangerous threat to civilians, deputies and herself, Deputy Barajas exited her vehicle and drew her firearm<br><br>**Evidence:** Barajas Decl., at ¶ 9; COLA 00285 (Exhibit A), at 0:07:25; COLA 00755 (Exhibit B), at 7:15 – 10:55; COLA 00756 (Exhibit C), at 12:00 – 12:15. | 9. |
| 10. Deputy Barajas used the driver-side door as cover and stated over her radio that she was detaining the suspect.<br><br>**Evidence:** Barajas Decl., at ¶ 9; COLA 00285 (Exhibit A), at 0:07:25; COLA 00286 (Exhibit D). | 10. |
| 11. Deputy Barajas ordered the Decedent to drop his weapon approximately seven (7) times before firing her first shot from her service handgun.<br><br>**Evidence:** Barajas Decl., at ¶ 10; COLA 00285 (Exhibit A), at 0:07:48 – 0:08:06. | 11. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 12. The Decedent ignored Deputy Barajas' seven (7) commands and continued moving northbound, progressing to within approximately 7 – 10 feet of Deputy Barajas.<br><br>**Evidence:** Barajas Decl., at ¶ 10; COLA 00285 (Exhibit A), at 0:07:48 – 0:08:07; COLA 00756 (Exhibit C), at 12:28. | 12. |
| 13. Less-lethal ammunition was not an option because the Decedent posed an immediate lethal threat due to his proximity to the civilian, and his bullet-proof vest would have rendered less-lethal ammunition ineffective.<br><br>**Evidence:** Barajas Decl, at ¶ 11; COLA 00756 (Exhibit C), at 9:36 – 9:50. | 13. |
| 14. Deputy Barajas fired her first shot from her service weapon at the Decedent, which appeared to have no effect on the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 12; COLA 00285 (Exhibit A), at 0:08:07 – 00286 (Exhibit D). | 14. |
| 15. After her first shot, Deputy Barajas reassessed the situation and determined the Decedent was still an imminent dangerous threat because he continued advancing with his rifle. | 15. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Barajas Decl., at ¶¶ 12, 14; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:14; COLA 00756 (Exhibit C), at 9:36 – 12:11. | |
| 16. The Decedent's bullet-proof vest prevented the Defendant Deputies from determining the extent of any injuries he suffered from their gunshots.<br><br>**Evidence:** Barajas Decl., at ¶¶ 12, 14; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:20; COLA 00286 (Exhibit D), at | 16. |
| 17. Deputy Barajas commanded the Decedent to drop his rifle an eighth (8) time as he continued his approach.<br><br>**Evidence:** Barajas Decl., at ¶ 12; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:14. | 17. |
| 18. Deputy Barajas then ordered the Decedent to drop his weapon a ninth (9) time and begins ordering him to drop it a tenth (10) time, but her order is interrupted by Detective Vazquez's first shot.<br><br>**Evidence:** Barajas Decl., at ¶ 13; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:14; COLA 00286 (Exhibit D), at 0:05:25. | 18. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 19. The Decedent remained standing and capable of firing his rifle slung around his shoulder, indicating to Deputy Barajas that he still remained a dangerous lethal threat to civilians and deputies.<br><br>**Evidence:** Barajas Decl., at ¶ 14; COLA 00285 (Exhibit A), at 0:08:14; COLA 00286 (Exhibit D); COLA 00756 (Exhibit C), at 9:36 – 12:11. | 19. |
| 20. While the Decedent was still approaching, Deputy Barajas fired two additional shots at the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 15; COLA 00285 (Exhibit A), 0:08:13 – 0:08:15; COLA 00286 (Exhibit D), at 0:05:27 – 0:05:29. | 20. |
| 21.Deputy Barajas recalled firing three-to-four (3-4) shots total at the Decedent, but body-worn camera of the incident details that she fired three shots.<br><br>**Evidence:** Barajas Decl., at ¶ 15; COLA 00285 (Exhibit A), 0:08:13 – 0:08:15; COLA 00286 (Exhibit D), at 0:05:27 – 0:05:29. | 21. |
| 22. The Decedent still remained standing with his rifle after Deputy Barajas' two additional shots. | 22. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** COLA 00285 (Exhibit A), at 0:08:13 – 0:08:15;  COLA 00286 (Exhibit D). | |
| 23. Detective Vazquez then fires the final shot, after which the Decedent is finally immobilized and drops to the ground with his rifle.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., at ¶ 17, 19; COLA 00285 (Exhibit A), at 0:08:16; COLA 00286 (Exhibit D), at 0:05:29. | 23. |
| 24. Deputy Barajas' use of force was reasonable at all times during the encounter with the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 1-17; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00756 (Exhibit C). | 24. |
| 25. Once the Decedent was immobilized, Deputy Barajas did not discharge her weapon further.<br><br>**Evidence:** Barajas Decl., at ¶ 15-16; Vazquez Decl., ¶ 17; COLA 00285 (Exhibit A), at 0:08:15 – 0:18:57; COLA 00286 (Exhibit D), 0:05:32 – 0:16:14. | 25. |
| 26. Before responding to Diamond Bar Boulevard, Deputy Barajas received radio calls from dispatch and responding deputies on the L-TAC | 26. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| radio that there was a stabbing victim, the Decedent was armed with an AR-15-style rifle, he had fired multiple rounds, and was wearing a bullet-proof vest.<br><br>**Evidence:** Barajas Decl., at ¶ 5-6; COLA 00285 (Exhibit A), at 0:1:42; 0:03:08;  0:04:41; COLA 00755 (Exhibit B), at 07:23. | |
| 27. After arriving at the incident location, she observed the Decedent wearing bullet-proof vest and wielding an AR-15 – establishing that the Decedent was a lethal threat and anticipated a violent conflict.<br><br>**Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 13; COLA 00285 (Exhibit A), at 0:07:28 – 0:18:57, COLA 00286 (Exhibit D), at 0:05:14 – 0:05:31. | 27. |
| 28. In the direct path of the Decedent on Diamond Bar Boulevard were deputies and civilians in vehicles.<br><br>**Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 14; COLA 00285 (Exhibit A), at 0:07:25-0:18:57; COLA 00286 (Exhibit D), at 0:05:14 – 0:16:14. | 28. |
| 29. As Detective Vazquez proceeded to the incident location, dispatch | 29. |

9

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest.<br><br>**Evidence:** Vazquez Decl., ¶ 5; COLA 00285 (Exhibit A) – 00286 (Exhibit D), at 0:1:00 – 0:04:55; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50. | |
| 30. After arriving near the intersection of Crooked Creek Drive and Rising Star Drive, Detective Vazquez observed numerous civilians who appeared to be frightened by the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 7; COLA 00752 (Exhibit E), at 6:25-6:36. | 30. |
| 31. Due to the reports that the suspect was carrying an assault rifle, Detective Vazquez grabbed his shotgun and loaded it with slug ammunition.<br><br>**Evidence:** Vazquez Decl., ¶ 6; COLA 00286 (Exhibit D), at 0:02:53 – 0:03:05. | 31. |
| 32. While looking for the suspect, Detective Vazquez observed an elderly Asian female with blood on her hands, who later was determined to be Plaintiff Jennie Quan. | 32. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | |
| 33. Plaintiff approached the deputies and asked us them not to harm the suspect.<br><br>**Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), 0:02:12 – 0:02:28. | 33. |
| 34. Although Detective Vazquez did not know that the elderly Asian female was the Decedent's mother at the time of the initial interaction, he believed she was acquainted with the Decedent because she asked the deputies not to harm him.<br><br>**Evidence:** Vazquez Decl., ¶ 8-9; COLA 00286 (Exhibit D), 0:02:12 – 0:02:28; COLA 00752 (Exhibit E) 08:45 – 09:00. | 34. |
| 35. The Decedent's willingness to attack someone he knew with deadly force heightened Detective Vazquez's fears that the Decedent was a threat and willing to use deadly force against him, other deputies or civilians.<br><br>**Evidence:** Vazquez Decl., ¶ 10; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00752 (Exhibit E), at 09:02 – 09:25. | 35. |

Hurrell Cantrall LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | |
| 36. Deputy Carlos De La Torre informed Detective Vazquez that the Decedent was approaching Diamond Bar Boulevard.<br><br>**Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), at 0:02:21. | 36. |
| 37. Detective Vazquez observed the Decedent approximately 150-200 feet ahead of him wearing a bullet-proof vest and what appeared to be an AR-15 rifle with an optical lens for improved accuracy.<br><br>**Evidence:** Vazquez Decl., ¶ 11; COLA 00286 (Exhibit D), at 0:03:00 – 0:03:25; COLA 00752 (Exhibit E), at 10:28 – 11:10. | 37. |
| 38. Detective Vazquez reasonably believed that the Decedent would be capable of accurately striking him, other deputies or civilians from approximately 150 – 200 feet away with an AR-15 equipped with an optical lens.<br><br>**Evidence:** Vazquez Decl., ¶ 11; COLA 00286 (Exhibit D); COLA 00752 (Exhibit E), at 10:28 – 11:10. | 38. |
| 39. Positioned behind the Decedent, Detective Vazquez began approaching the Decedent with his | 39. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| shotgun.<br><br>**Evidence:** Vazquez Decl., ¶ 12; COLA 00286 (Exhibit D), at 0:03:15 – 0:05:35. | |
| 40. Detective Vazquez yelled repeated commands for the Decedent to drop his weapon, which the Decedent ignored.<br><br>**Evidence:** Vazquez Decl., ¶ 12; COLA 00286 (Exhibit D), at 0:03:15 – 0:05:35. | 40. |
| 41. The Decedent then continued approaching the deputies positioned in front of him on Diamond Bar Boulevard with his rifle in the low-ready position on his right side.<br><br>**Evidence:** Barajas Decl., at ¶ 7-16; Vazquez Decl., ¶ 12.; COLA 00285 (Exhibit A), 0:08:13 – 0:08:17; COLA 00286 (Exhibit D), at 0:05:00 – 0:05:32 | 41. |
| 42. To prevent against the threat that the Decedent could turn around and shoot at the deputies positioned where Detective Vazquez was located, Deputy Vazquez asked Detective Christopher Bronowicki to use his vehicle as cover as the deputies approached the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA | 42. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 00286 (Exhibit D), at 0:03:30 – 0:05:03. | |
| 43. Detective Vazquez urgently pursued the Decedent towards Diamond Bar Boulevard with fears that the Decedent could open-fire on deputies and civilians at any point.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA 00286 (Exhibit D), at 0:03:30 – 0:05:03; COLA 00752 (Exhibit E), at 14:30 – 16:01. | 43. |
| 44. The Decedent's bullet-proof vest and AR-15 signaled to Detective Vazquez that he was ready for a violent conflict, which heightened Deputy Vazquez's fears because he understood Diamond Bar Boulevard to constitute a heavily trafficked roadway where significant civilian presence is likely.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00752 (Exhibit E), at 14:30 – 16:01. | 44. |
| 45. Detective Vazquez continued to give commands to the Decedent to drop his weapon while pursuing him from behind from Crooked Creek Drive to Diamond Bar Boulevard, but the commands were ignored. | 45. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Vazquez Decl., ¶ 14; COLA 00286 (Exhibit D), at 0:02:30 – 0:05:03. | |
| 46. As Detective Vazquez turned the corner of Crooked Creek Drive and approached Diamond Bar Boulevard, he observed civilian and deputy vehicles directly in front of the Decedent's path.<br><br>**Evidence:** Vazquez Decl., ¶ 15; COLA 00286 (Exhibit D), at 0:05:14. | 46. |
| 47. There was the risk of crossfire from his position due to the civilian and deputy vehicles directly in front of the Decedent, so Detective Vazquez repositioned himself towards the Decedent's left-flank without any cover.<br><br>**Evidence:** Vazquez Decl., ¶ 15; COLA 00286 (Exhibit D), at 0:05:00 – 0:05:25; COLA 00752 (Exhibit E), at 14:30 – 16:01. | 47. |
| 48. As he was flanking the Decedent, Detective Vazquez heard one gunshot from an unknown source.<br><br>**Evidence:** Vazquez Decl., ¶15; COLA 00286 (Exhibit D), at 0:05:20; COLA 00752 (Exhibit E), at 18:50 – 19:00. | 48. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 49. Detective Vazquez observed that the Decedent had been impacted because he momentarily stopped, but the Decedent then continued forward.<br><br>**Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), at 0:05:20- 0:05:22. | 49. |
| 50. Detective Vazquez then perceived the Decedent's elbow raise as if to reach for his rifle, position the barrel forward, and begin firing.<br><br>**Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), at 0:05:22; COLA 00752 (Exhibit E), at 19:30 – 20:00. | 50. |
| 51. The Decedent was approximately 10-15 feet from the civilian and deputy vehicles in front of him at this point.<br><br>**Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), 0:05:25. | 51. |
| 52. Fearing that the Decedent was going to shoot at deputies and civilians, Detective Vazquez fired one round from his shotgun at the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., ¶13; COLA 00285 (Exhibit A), at 0:08:12; COLA 00286 (Exhibit D), at 0:05:26. | 52. |

16

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 53. The round struck the Decedent's bullet-proof vest and appeared to have no effect on the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 12-14; Vazquez Decl., ¶ 16; COLA 00285 (Exhibit A), at 0:08:12; COLA 00286 (Exhibit D), at 0:05:26. | 53. |
| 54. Without cover and believing that the Decedent would turn towards Detective Vazquez to shoot him, Detective Vazquez fired a second shotgun round at the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 17; COLA 00286 (Exhibit D), at 0:05:30; COLA 00752 (Exhibit E), at 20:50 – 21:50. | 54. |
| 55. The Decedent fell to the ground after Detective Vazquez fired his second shot.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., ¶ 14; COLA 00285 (Exhibit A), at 0:08:18; COLA 00286 (Exhibit D), at 0:05:32. | 55. |
| 56. The Decedent dropped his rifle when he fell to the ground after Detective Vazquez's second shot.<br><br>**Evidence:** Barajas Decl., at ¶ 17; Vazquez Decl., ¶ 15; COLA 00285 (Exhibit A), at 0:10:13; COLA 00286 (Exhibit D), at 0:05:34 | 56. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 57. With the AR-15 still within the Decedent's reach, a plan was developed to safely and securely approach the Decedent so that medical care could be rendered from approximately 11:45:15 to 11:47:07.<br><br>**Evidence:** Barajas Decl., at ¶ 17-18; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at  COLA 00286 (Exhibit D), at 0:06:00 – 0:07:30. | 57. |
| 58. Deputies cautiously approached the Decedent, handcuffed him and began rendering aid after he fell to the ground.<br><br>**Evidence:** Barajas Decl., at ¶ 18-20; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at 010:42 – 0:18:57; COLA 00286 (Exhibit D), at 0:0:25 – 0:16:14. | 58. |
| 59.Deputy Vazquez's use of force was reasonable based on the totality of circumstances.<br><br>**Evidence:** Barajas Decl., at ¶ 5-20; Vazquez Decl., ¶ 5-20; COLA 00285 (Exhibit A) – 00286 (Exhibit D). | 59. |
| 60. The final shot by Detective Vazquez is discharged at approximately 11:45:15 on body-worn camera footage.<br><br>**Evidence:** COLA 00285 (Exhibit A) | 60. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 0:08:17; COLA 00286 (Exhibit D), at 0:05:30. | |
| 61. The Defendant Deputies were unable to determine the extent of the Decedent's injuries due to his bullet-proof vest, preventing the deputies from assessing that the Decedent was no longer a threat.<br><br>**Evidence:** Barajas Decl., at ¶ 18; Vazquez Decl., at ¶19. | 61. |
| 62. At approximately 11:47:17 – 11:47:39, after making a determination that the Decedent is no longer a threat, the deputies approach the Decedent and place him in handcuffs.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:10:19 – 0:10:41; COLA 00286 (Exhibit D), at 0:07:33 – 0:07:55. | 62. |
| 63. From approximately 11:47:41 – 11:48:30, the Decedent's bullet-proof vest is un-Velcroed, his person is searched, and the deputies release him from his handcuffs.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:10:42 – 0:11:31; COLA 00286 (Exhibit D), at 0:07:57 – 0:08:46. | 63. |
| 64.Deputies removed the Decedent's | 64. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| vest and cleaned blood from his body.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:11:24 – 0:18:57; COLA 00286 (Exhibit D), at 0:08:30 – 0:16:14. | |
| 65. At approximately 11:49:40, paramedics from the fire department begin assisting with the Decedent's aid.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:12:42; COLA 00286 (Exhibit D), at 0:09:55. | 65. |
| 66. At approximately 11:57:40, the Decedent is taken from the scene on a gurney and placed in an ambulance.<br><br>**Evidence:** COLA 00289 (Exhibit F), at 0:15:28. | 66. |
| 67. The Defendant Deputies fulfilled their duty of summoning prompt medical care as soon as reasonably possible.<br><br>**Evidence:** Barajas Decl., at ¶ 17-20; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at 0:11:25 COLA 00286 (Exhibit D), at 0:07:33 – 0:16:14; COLA 00289 (Exhibit F), at 0:06:00 – 0:20:28. | 67. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 68. LASD deputies had a legitimate law enforcement purpose and reasonable suspicion to contact and detain the Decedent.<br><br>**Evidence:**<br>Declaration of Ed Flosi "Flosi Decl." ¶11-12 | 68. |
| 69. The deputies' actions were consistent with current law enforcement training and practices the appropriate level of force was used.<br><br>**Evidence:**<br>Flosi Decl. ¶ 11-12 | 69. |
| 70. LASD deputies had a legitimate law enforcement purpose and probable cause to arrest decedent.<br><br>**Evidence:**<br>Flosi Decl. ¶ 13-14 | 70. |
| 71. A reasonable officer could have an honest and strong belief that Decedent's actions were in violation of California Penal Code § 148(a)(1).<br><br>**Evidence:**<br>Flosi Decl. ¶11-15, | 71. |
| 72. The deadly force response by Defendants Barajas and Vasquez was appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily | 72. |

21

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| injury or death.<br><br>**Evidence:**Flosi Decl. ¶21-29. | |
| 73. The actions of decedent created a life-threatening situation and forced the deputies to react quickly and decisively.<br><br>**Evidence:**<br>Flosi Decl. ¶27. | 73. |
| 74. Deadly force responses by the deputies were appropriate and reasonable to prevent a perceived credible threat of injury created by the Decedent's actions and behaviors.<br><br>**Evidence:**<br>Flosi Decl. ¶ 21-29. | 74. |
| 75.The deadly force responses by Deputy Vasquez and Deputy Barajas were appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to them at the moments non-deadly force was used.<br><br>**Evidence:**<br>Flosi Decl. ¶ 21-29. | 75. |
| 76.Officers are trained that for an investigative stop of detention to be valid, there must be reasonable suspicion that: (1) criminal activity may be afoot and (2) the person | 76. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| about to be detained is connected with that possible criminal activity.<br><br>**Evidence:**<br>Flosi Decl. ¶ 12. | |
| 77. Under the totality of the circumstances, a reasonable officer could conclude that the subject described in the call for service was involved or preparing to become involved in criminal activity hence LASD deputies had a legitimate law enforcement purpose and reasonable suspicion to contact and detain Decedent.<br><br>**Evidence:**<br>Flosi Decl. ¶ 13. | 77. |
| 78. The deputies' actions were consistent with current law enforcement training and practices.<br><br>**Evidence:**<br>Flosi Decl. ¶¶ 11, 14, 16, 22, and 30. | 78. |
| 79. There is no independent and objective evidence to support a claim that the Defendant Deputies denied the Decedent medical care.<br><br>**Evidence:**<br>Flosi Decl. ¶¶9(h), 31 -34. | 79. |
| 80. A review of the material and video evidence reveals that the last shot was fired at approximately 11:45:15. | 80. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Flosi Decl. ¶33. | |
| 81. The approach to the Decedent began at approximately 11:47:07.<br><br>**Evidence:**<br><br>Flosi Decl. ¶33. | 81. |
| 82. LASD deputies make contact with the Decedent to render aid at approximately 11:47:17.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 82. |
| 83. The Decedent was handcuffed at approximately 11:47:40.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 83. |
| 84. A deputy confirmed that the fire department personnel was responding at 11:47.58.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 84. |
| 85. LASD deputies start rendering medical aid at approximately 11:48:16.<br>**Evidence:**<br>Flosi Decl. ¶33. | 85. |
| 86. The fire department personnel are on scene at approximately 11:48.42.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 86. |
| 87. After being shot, the Decedent fell | 87. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| next to the rifle that he was wielding.<br><br>**Evidence:**<br>Flosi Decl.  ¶34. | |
| 88. There was a legitimate tactical need to get a shield and contact team formed with non-deadly and deadly force options prior to moving to whether the Decedent fell.<br><br>**Evidence:**<br>Flosi Decl.  ¶34. | 88. |
| 89. It is also noted that there was information that the Decedent had stabbed another person and the edged weapon was unaccounted for.<br><br>**Evidence:**<br>Flosi Decl.  ¶34. | 89. |
| 90. It is demonstrably false that LASD deputies denied the Decedent of medical care.<br><br>**Evidence:**<br>Flosi Decl.  ¶31-34. | 90. |
| 91. The deadly force responses by the deputies were appropriate and reasonable to prevent a perceived credible threat of injury created by Decedent's actions and behaviors.<br><br>**Evidence:**<br>Flosi Decl.  ¶31-34. | 91. |
| 92. The deadly force responses by Vasquez and Barajas were | 92. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to them at the moments non-deadly force was used.<br><br>**Evidence:**<br>Flosi Decl. ¶30. | |
| 93. There is no objective independent evidence in the record that LASD failed to adequately train the involved deputies or that LASD maintains unconstitutional customs, practices, and/or policies.<br><br>**Evidence:**<br>Flosi Decl. ¶35-40. | 93. |

DATED:  September 29, 2025        HURRELL CANTRALL LLP

By: ___*/s/ Jerad J. Miller*___

THOMAS C. HURRELL
JANET J. HUR
JERAD J. MILLER
Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000