**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,

                              Plaintiffs,

vs.

COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,

                              Defendants.

Case No. 2:24-cv-04805-MCS-KS

*Assigned to*:
Hon Mark C. Scarsi
Hon. Mag. Judge Karen L. Stevenson

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Local Rules 56-1 and 56-2 and this Court's June 10, 2024 Initial Standing Order for Civil Cases Assigned to Judge Mark C. Scarsi, Plaintiff respectfully submits her State of Genuine Disputes.

DATED: October 13, 2025          LAW OFFICES OF DALE K. GALIPO

By_____ */s/ Hang D. Le*_____
              Dale K. Galipo
              Hang D. Le
              Attorneys for Plaintiff

## PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 1. Marisol Barajas was a deputy for the Los Angeles County Sheriff's Department on the day of the incident.<br><br>**Evidence:** Declaration of Deputy Marisol Barajas ("Barajas Decl."), at ¶ 4; COLA 00285 (Exhibit A) – 00286 (Exhibit D). | 1.    Undisputed. |
| 2. Hector Vazquez was a detective for the Los Angeles County Sheriff's Department on the day of the incident.<br><br>**Evidence:** Declaration of Deputy Hector Vazquez ("Vazquez Decl."), at ¶ 4; COLA 00285 (Exhibit A) (Exhibit A) – 00286 (Exhibit D). | 2.    Undisputed. |
| 3. The incident occurred on June 19, 2023 in Diamond Bar, CA.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., at ¶ 5. | 3.    Undisputed. |
| 4. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent. | 4.    Disputed to the extent that it was confirmed to be a bullet-proof vest.<br><br>Disputed to the extent that the initial information was that the subject was walking around Diamond Bar Boulevard. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| **Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶ 5; COLA 00285 (Exhibit A) (Exhibit A), at 0:01:40; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; | |
| 5.  Deputy Barajas traveled southbound on Diamond Bar Boulevard, and the Decedent appeared on the same street walking northbound.<br><br>**Evidence:** Barajas Decl., at ¶ 7; COLA 00285 (Exhibit A), at 0:07:25-0:08:12. | 5.      Undisputed. |
| 6.  The Decedent was estimated to be approximately 15 - 20 feet from Deputy Barajas' vehicle when she turned on Diamond Bar Boulevard.<br><br>**Evidence:** Barajas Decl., at ¶ 7; COLA 00285 (Exhibit A), at 0:07:25-0:08:12; COLA 00755 (Exhibit B), at 08:03. | 6.      **Disputed** to the extent that this suggests Deputy Barajas encountered Decedent being approximately 15-20 feet from her vehicle immediately after she turned onto Diamond Bar Boulevard.<br><br>Barajas was driving southbound on Diamond Bar Boulevard before she saw Chin and stopped her car and got out when she saw him.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:20-23.<br><br>Barajas claims she exited her vehicle as soon as she saw Chin.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:3-6.<br><br>There is no cross street near where Barajas got out; it was just a long street.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:22-23:6. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 7. The Decedent continued to move northbound towards deputies and civilians with his rifle slung around his shoulder to his right side.<br><br>**Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 12; COLA 00285 (Exhibit A), at 0:07:25-0:08:12; COLA 00286 (Exhibit D). | 7. **Disputed** to the extent that this suggests there were a lot of civilians on Diamond Bar Boulevard as Chin walked in a northbound direction.<br><br>Other than a few cars on Diamond Bar, there was nobody outside.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 62:17-19. |
| 8. Deputy Barajas planned to further the distance between her vehicle and the Decedent due to his ongoing approach, but civilian and deputy vehicles to Deputy Barajas' left and behind her prevented this option.<br><br>**Evidence:** Barajas Decl., at ¶ 8; COLA 00285 (Exhibit A), at 0:07:25-0:18:57; COLA 00286 (Exhibit D); COLA 00755 (Exhibit B), at 8:10 – 8:22. | 8. **Disputed** to the extent that Deputy Barajas intended to try to get more distance between her vehicle and Chin.<br><br>Barajas was driving southbound on Diamond Bar Boulevard before she saw Chin and stopped her car and got out when she saw him.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:20-23.<br><br>Chin was in the number one southbound lane on Diamond Bar Boulevard when Barajas encountered him.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 20:2-6, 50:25-51:1.<br><br>Barajas stopped her vehicle in the number two lane of the three southbound lanes of Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 51:3-8; Ex. 2 to Le Decl., Vazquez BWC at 5:19.<br><br>Barajas claims she exited her vehicle as soon as she saw Chin. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:3-6. |
| 9.  Believing that the Decedent was an imminent dangerous threat to civilians, deputies and herself, Deputy Barajas exited her vehicle and drew her firearm<br><br>**Evidence:** Barajas Decl., at ¶ 9; COLA 00285 (Exhibit A), at 0:07:25; COLA 00755 (Exhibit B), at 7:15 – 10:55; COLA 00756 (Exhibit C), at 12:00 – 12:15. | 9.    **Disputed** that to the extent that this suggests it was reasonable for Barajas to believe that Decedent was an imminent dangerous threat to civilians, deputies and herself when Deputy Barajas exited her vehicle and drew her firearm. Based on the objective facts, it was not reasonable for Barajas to believe that Chin was a imminent dangerous threat at any time.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.<br><br>*Evidence*: Noble Decl. ¶ 13;Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.<br><br>Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas was on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas was on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9 |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| 10. Deputy Barajas used the driver-side door as cover and stated over her radio that she was detaining the suspect.<br><br>**Evidence:** Barajas Decl., at ¶ 9; COLA 00285 (Exhibit A), at 0:07:25; COLA 00286 (Exhibit D). | 10.     Undisputed. |
| 11. Deputy Barajas ordered the Decedent to drop his weapon approximately seven (7) times | 11.     **Disputed** to the extent that Barajas completed seven commands for Decedent to drop his weapon before firing her first |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| before firing her first shot from her service handgun.<br><br>**Evidence:** Barajas Decl., at ¶ 10; COLA 00285 (Exhibit A), at 0:07:48 – 0:08:06. | shot.<br><br>Barajas shot her first shot in the middle of her seventh command.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:45-11:45:07. |
| 12. The Decedent ignored Deputy Barajas' seven (7) commands and continued moving northbound, progressing to within approximately 7 – 10 feet of Deputy Barajas.<br><br>**Evidence:** Barajas Decl., at ¶ 10; COLA 00285 (Exhibit A), at 0:07:48 – 0:08:07; COLA 00756 (Exhibit C), at 12:28. | 12.    **Disputed** that Chin ever progressed to within approximately 7-10 feet of Barajas.<br><br>Chin was walking at a slow, steady pace on Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 62:20-23; Ex. 2 to Le Decl., Vazquez BWC at 5:02-5:34.<br><br>Chin was approximately 20 to 25 feet from Barajas's patrol vehicle when she fired her first shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:04-11:45:06<br><br>After Barajas's first shot, Chin took four small, slow steps forward before Vazquez's first show, followed immediately by Barajas's second shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:12.<br><br>Chin fell to the ground approximately 15 to 20 feet from Barajas's vehicle.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30; Ex. 11 to Le Decl., Barajas BWC at 11:47:06- |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | 11:47:08. |
| 13. Less-lethal ammunition was not an option because the Decedent posed an immediate lethal threat due to his proximity to the civilian, and his bullet-proof vest would have rendered less-lethal ammunition ineffective.<br><br>**Evidence:** Barajas Decl, at ¶ 11; COLA 00756 (Exhibit C), at 9:36 – 9:50. | 13.   **Disputed**.<br><br>The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting.<br><br>*Evidence*: Noble Decl. ¶ 26.<br><br>The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.<br><br>*Evidence*: Noble Decl. ¶ 26.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13;Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas was on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas was on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9 |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| 14. Deputy Barajas fired her first shot from her service weapon at the Decedent, which appeared to have no effect on the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 12; COLA 00285 (Exhibit A), at 0:08:07 – 00286 (Exhibit D). | 14.   **Disputed** that Barajas's first shot appeared to have no effect on Chin.<br><br>Vazquez thought Chin possibly had been struck by the first shot but was not sure.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:24-23:1.<br><br>Vazquez observed Chin flinch by bending forward slightly before coming back up at the time of the first shot. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:4-21. |
| 15. After her first shot, Deputy Barajas reassessed the situation and determined the Decedent was still an imminent dangerous threat because he continued advancing with his rifle.<br><br>**Evidence:** Barajas Decl., at ¶¶ 12, 14; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:14; COLA 00756 (Exhibit C), at 9:36 – 12:11. | 15.    **Disputed** that Chin was ever an "imminent dangerous threat" at the time the deputies were on scene.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12,<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.<br><br>*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.<br><br>Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed.<br><br>*Evidence*: Noble Decl. ¶ 13. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9 |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4. |
| | Vazquez conceded that based on his training and the totality of the circumstances, he could not shoot Chin as a fleeing felon and could only shoot him if Chin posed an immediate or imminent threat of death or serious bodily injury. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:5-22. |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| 16. The Decedent's bullet-proof vest prevented the Defendant Deputies from determining the extent of any injuries he suffered from their gunshots.<br><br>**Evidence:** Barajas Decl., at ¶¶ 12, 14; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:20; COLA 00286 (Exhibit D), at | 16. **Disputed**.<br><br>Barajas was aiming towards Chin's waistline when she fired her first shot because she was trying to aim at a part that was not covered by the vest he was wearing.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 26:15-27:12.<br><br>Vazquez observed Chin flinch by bending forward slightly before coming back up at the time of the first shot.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:4-21.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Chin was going to the ground in a slow manner. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45:17. |
| | Chin went to the ground soon after Vazquez's second shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:2-5. |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Vazquez got the impression that his second shot struck Chin. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:19-41:1. |
| 17. Deputy Barajas commanded the Decedent to drop his rifle an eighth (8) time as he continued his approach.<br><br>**Evidence:** Barajas Decl., at ¶ 12; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:14. | 17.    Undisputed. |
| 18. Deputy Barajas then ordered the Decedent to drop his weapon a ninth (9) time and begins ordering him to drop it a tenth (10) time, but her order is interrupted by Detective Vazquez's first shot. | 18.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Barajas Decl., at ¶ 13; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:14; COLA 00286 (Exhibit D), at 0:05:25. | |
| 19. The Decedent remained standing and capable of firing his rifle slung around his shoulder, indicating to Deputy Barajas that he still remained a dangerous lethal threat to civilians and deputies.<br><br>**Evidence:** Barajas Decl., at ¶ 14; COLA 00285 (Exhibit A), at 0:08:14; COLA 00286 (Exhibit D); COLA 00756 (Exhibit C), at 9:36 – 12:11. | 19.    **Disputed** to the extent that this suggests Chin posed an immediate or imminent threat of death or serious bodily at any time that would justify the use of deadly force by the deputies. Chin did not pose an immediate or imminent threat of death or serious bodily at any time while the deputies were on scene.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.<br><br>*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.<br><br>Officers are trained that an imminent harm is not merely a fear of future harm, no |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9 |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | Deputy Barajas's first shot at Mr. Chin |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
|  | *Evidence*: Noble Decl. ¶ 20. |
|  | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
|  | *Evidence*: Noble Decl. ¶ 16. |
|  | Vazquez conceded that he could not shoot Chin for simply walking away. |
|  | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
|  | Vazquez conceded that based on his training and the totality of the circumstances, he could not shoot Chin as a fleeing felon and could only shoot him if Chin posed an immediate or imminent threat of death or serious bodily injury. |
|  | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:5-22 |
|  | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| 20. While the Decedent was still approaching, Deputy Barajas fired two additional shots at the Decedent. **Evidence:** Barajas Decl., at ¶ 15; COLA 00285 (Exhibit A), 0:08:13 – 0:08:15; COLA 00286 (Exhibit D), at 0:05:27 – 0:05:29. | 20. **Disputed** to the extent that this suggests Barajas fired two additional shots in quick succession. Barajas fired her third shot approximately two seconds after her second shot. *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:10-11:45:14; Ex. 11 to Le Decl., Barajas BWC at 11:45:10-11:45:15. Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. *Evidence*: Noble Decl. ¶ 22. Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. *Evidence*: Noble Decl. ¶ 23. |
| 21. Deputy Barajas recalled firing three-to-four (3-4) shots total at the Decedent, but body-worn camera of the incident details that she fired | 21. Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| three shots.<br><br>**Evidence:** Barajas Decl., at ¶ 15; COLA 00285 (Exhibit A), 0:08:13 – 0:08:15; COLA 00286 (Exhibit D), at 0:05:27 – 0:05:29. | |
| 22. The Decedent still remained standing with his rifle after Deputy Barajas' two additional shots.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:08:13 – 0:08:15;  COLA 00286 (Exhibit D). | 22.    **Disputed** to the extent that this suggests Chin remained standing upright after Barajas's two additional shots and was unaffected by Barajas's two additional shots.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Chin was going to the ground in a slow manner.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| 23. Detective Vazquez then fires the | 23.    **Disputed** that Chin was |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| final shot, after which the Decedent is finally immobilized and drops to the ground with his rifle.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., at ¶ 17, 19; COLA 00285 (Exhibit A), at 0:08:16; COLA 00286 (Exhibit D), at 0:05:29. | immobilized only after Vazquez's final shot.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Chin was going to the ground in a slow manner.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| 24. Deputy Barajas' use of force was reasonable at all times during the encounter with the Decedent. | 24.    **Disputed**.<br><br>Officers are trained that there must be |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| **Evidence:** Barajas Decl., at ¶ 1-17; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00756 (Exhibit C). | objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
| --- | --- |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Barajas never gave Chin a warning that she was prepared to use deadly force if Chin did not comply with her commands before any of her shots. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | BWC at 11:44:25-11:45:18. |
| | Deputy Barajas violated standard police practices and training when she failed to give Mr. Chin a warning that she we prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that based on his training and the totality of the circumstances, he could not shoot Chin as a fleeing felon and could only shoot him if |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Chin posed an immediate or imminent threat of death or serious bodily injury.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:5-22<br><br>Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4 |
| 25. Once the Decedent was immobilized, Deputy Barajas did not discharge her weapon further.<br><br>**Evidence:** Barajas Decl., at ¶ 15-16; Vazquez Decl., ¶ 17; COLA 00285 (Exhibit A), at 0:08:15 – 0:18:57; COLA 00286 (Exhibit D), 0:05:32 – 0:16:14. | 25.    Undisputed. |
| 26. Before responding to Diamond Bar Boulevard, Deputy Barajas received radio calls from dispatch and responding deputies on the L-TAC radio that there was a stabbing victim, the Decedent was armed with an AR-15-style rifle, he had fired multiple rounds, and was wearing a bullet-proof vest. | 26.    Undisputed. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| **Evidence:** Barajas Decl., at ¶ 5-6; COLA 00285 (Exhibit A), at 0:1:42; 0:03:08;  0:04:41; COLA 00755 (Exhibit B), at 07:23. | |
| 27. After arriving at the incident location, she observed the Decedent wearing bullet-proof vest and wielding an AR-15 – establishing that the Decedent was a lethal threat and anticipated a violent conflict.<br><br>**Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 13; COLA 00285 (Exhibit A), at 0:07:28 – 0:18:57, COLA 00286 (Exhibit D), at 0:05:14 – 0:05:31. | 27.    **Disputed** that Chin ever posed an immediate threat of death or serious bodily injury or that he ever demonstrated the intent for a violent conflict.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.<br><br>*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.<br><br>Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9 |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| 28. In the direct path of the Decedent on Diamond Bar Boulevard were deputies and civilians in vehicles. | 28.  **Disputed** to the extent that there was more than one deputy on Diamond Bar Boulevard at the time Barajas first |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 14; COLA 00285 (Exhibit A), at 0:07:25-0:18:57; COLA 00286 (Exhibit D), at 0:05:14 – 0:16:14. | saw and engaged with Chin. |
| 29. As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest.<br><br>**Evidence:** Vazquez Decl., ¶ 5; COLA 00285 (Exhibit A) – 00286 (Exhibit D), at 0:1:00 – 0:04:55; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50. | 29.    Undisputed. |
| 30. After arriving near the intersection of Crooked Creek Drive and Rising Star Drive, Detective Vazquez observed numerous civilians who appeared to be frightened by the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 7; COLA 00752 (Exhibit E), at 6:25-6:36. | 30.    Undisputed. |
| 31. Due to the reports that the suspect was carrying an assault rifle, Detective Vazquez grabbed his shotgun and loaded it with slug ammunition. | 31.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Vazquez Decl., ¶ 6; COLA 00286 (Exhibit D), at 0:02:53 – 0:03:05. | |
| 32. While looking for the suspect, Detective Vazquez observed an elderly Asian female with blood on her hands, who later was determined to be Plaintiff Jennie Quan.<br><br>**Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | 32.    Undisputed. |
| 33. Plaintiff approached the deputies and asked us them not to harm the suspect.<br><br>**Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), 0:02:12 – 0:02:28. | 33.    Undisputed. |
| 34. Although Detective Vazquez did not know that the elderly Asian female was the Decedent's mother at the time of the initial interaction, he believed she was acquainted with the Decedent because she asked the deputies not to harm him.<br><br>**Evidence:** Vazquez Decl., ¶ 8-9; COLA 00286 (Exhibit D), 0:02:12 – 0:02:28; COLA 00752 (Exhibit E) 08:45 – 09:00. | 34.    Undisputed. |
| 35. The Decedent's willingness to attack someone he knew with deadly force heightened Detective Vazquez's fears that the Decedent | 35.    **Disputed** that Vazquez knew that Decedent had attacked someone he knew.<br><br>When Vazquez encountered Plaintiff, |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| was a threat and willing to use deadly force against him, other deputies or civilians.<br><br>**Evidence:** Vazquez Decl., ¶ 10; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00752 (Exhibit E), at 09:02 – 09:25. | Vazquez saw blood on Plaintiff's hands but did not know the source of the blood.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 42:14-43:5<br><br>When Vazquez was talking to Plaintiff, he could not tell whether or not she had been stabbed—he just saw blood.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 59:21-25.<br><br>Vazquez did not ask Plaintiff if she needed medical attention nor did he call medical attention for her.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 43:9-13. |
| 36. Deputy Carlos De La Torre informed Detective Vazquez that the Decedent was approaching Diamond Bar Boulevard.<br><br>**Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), at 0:02:21. | 36.    Undisputed. |
| 37. Detective Vazquez observed the Decedent approximately 150-200 feet ahead of him wearing a bullet-proof vest and what appeared to be an AR-15 rifle with an optical lens for improved accuracy.<br><br>**Evidence:** Vazquez Decl., ¶ 11; COLA 00286 (Exhibit D), at 0:03:00 – 0:03:25; COLA 00752 (Exhibit E), at 10:28 – 11:10. | 37.    Disputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 38. Detective Vazquez reasonably believed that the Decedent would be capable of accurately striking him, other deputies or civilians from approximately 150 – 200 feet away with an AR-15 equipped with an optical lens.<br><br>**Evidence:** Vazquez Decl., ¶ 11; COLA 00286 (Exhibit D); COLA 00752 (Exhibit E), at 10:28 – 11:10. | 38.    **Disputed**.<br><br>Vazquez only had information that the shots had been fired in the air.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:13-17.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6.<br><br>At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9.<br><br>Barajas never saw Chin holding the firearm with both hands.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas never saw Chin touch the gun. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. Vazquez never heard Chin say anything at any time. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. *Evidence*: Noble Decl. ¶ 15; Ex. 1 to Le Decl., Vazquez Dep. 67:2-4. |
| 39. Positioned behind the Decedent, Detective Vazquez began approaching the Decedent with his shotgun. **Evidence:** Vazquez Decl., ¶ 12; COLA 00286 (Exhibit D), at 0:03:15 – 0:05:35. | 39.    Undisputed. |
| 40. Detective Vazquez yelled repeated commands for the Decedent to drop his weapon, which the Decedent ignored. **Evidence:** Vazquez Decl., ¶ 12; COLA 00286 (Exhibit D), at 0:03:15 – 0:05:35. | 40.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 41. The Decedent then continued approaching the deputies positioned in front of him on Diamond Bar Boulevard with his rifle in the low-ready position on his right side.<br><br>**Evidence:** Barajas Decl., at ¶ 7-16; Vazquez Decl., ¶ 12.; COLA 00285 (Exhibit A), 0:08:13 – 0:08:17; COLA 00286 (Exhibit D), at 0:05:00 – 0:05:32 | 41.    **Disputed** that Chin ever held the rifle in low-ready position.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14.<br><br>Barajas never saw Chin holding the firearm with both hands.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| 42. To prevent against the threat that the Decedent could turn around and | 42.    Undisputed. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| shoot at the deputies positioned where Detective Vazquez was located, Deputy Vazquez asked Detective Christopher Bronowicki to use his vehicle as cover as the deputies approached the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA 00286 (Exhibit D), at 0:03:30 – 0:05:03. | |
| 43. Detective Vazquez urgently pursued the Decedent towards Diamond Bar Boulevard with fears that the Decedent could open-fire on deputies and civilians at any point.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA 00286 (Exhibit D), at 0:03:30 – 0:05:03; COLA 00752 (Exhibit E), at 14:30 – 16:01. | 43.     **Disputed** to the extent that Vazquez's fears were reasonable.<br><br>Vazquez only had information that the shots had been fired in the air.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:13-17.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6.<br><br>At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9.<br><br>Barajas never saw Chin holding the |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15; Ex. 1 to Le Decl., Vazquez Dep. 67:2-4. |
| 44. The Decedent's bullet-proof vest and AR-15 signaled to Detective Vazquez that he was ready for a violent conflict, which heightened Deputy Vazquez's fears because he understood Diamond Bar Boulevard | 44.    **Disputed** that the objective facts support the conclusion that Chin was intent on a violent conflict. When Barajas first saw Chin, she observed a firearm in a slung manner on |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| to constitute a heavily trafficked roadway where significant civilian presence is likely.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00752 (Exhibit E), at 14:30 – 16:01. | Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14.<br><br>Barajas never heard Chin say anything.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1.<br><br>Barajas never saw Chin holding the firearm with both hands.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13.<br><br>At all times while Barajas and Vazquez were on scene, Chin never raised the |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | firearm towards anyone.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9.<br><br>At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| 45. Detective Vazquez continued to give commands to the Decedent to drop his weapon while pursuing him from behind from Crooked Creek Drive to Diamond Bar Boulevard, but the commands were ignored.<br><br>**Evidence:** Vazquez Decl., ¶ 14; COLA 00286 (Exhibit D), at 0:02:30 – 0:05:03. | 45.     Undisputed. |
| 46. As Detective Vazquez turned the corner of Crooked Creek Drive and approached Diamond Bar Boulevard, he observed civilian and deputy vehicles directly in front of the Decedent's path.<br><br>**Evidence:** Vazquez Decl., ¶ 15; COLA 00286 (Exhibit D), at 0:05:14. | 46.     Undisputed. |
| 47. There was the risk of crossfire from his position due to the civilian and deputy vehicles directly in front of the Decedent, so Detective Vazquez repositioned himself towards the | 47.     **Disputed** to the extent that Vazquez was forced to leave cover in order to avoid crossfire.<br><br>Detective Vazquez could have asked Deputy Bronowicki to move his patrol |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Decedent's left-flank without any cover.<br><br>**Evidence:** Vazquez Decl., ¶ 15; COLA 00286 (Exhibit D), at 0:05:00 – 0:05:25; COLA 00752 (Exhibit E), at 14:30 – 16:01. | vehicle to position itself alongside the sidewalk of Diamond Bar Boulevard so that Detective Vazquez could flank Mr. Chin's left side and avoid crossfire all the while maintaining cover<br><br>*Evidence*: Noble Decl. ¶ 19.<br><br>Detective Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19. |
| 48. As he was flanking the Decedent, Detective Vazquez heard one gunshot from an unknown source.<br><br>**Evidence:** Vazquez Decl., ¶15; COLA 00286 (Exhibit D), at 0:05:20; COLA 00752 (Exhibit E), at 18:50 – 19:00. | 48.    **Disputed** that Vazquez could not tell the gunshot was coming from a deputy.<br><br>Vazquez observed that Chin was wearing a vest and had a rifle slung over his right side.<br><br>*Evidence*: Vazquez 24:23-25:1.<br><br>At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6.<br><br>At all times while Barajas and Vazquez |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| 49. Detective Vazquez observed that the Decedent had been impacted because he momentarily stopped, but the Decedent then continued forward.<br><br>**Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), at 0:05:20- 0:05:22. | 49.    Undisputed. |
| 50. Detective Vazquez then perceived the Decedent's elbow raise as if to reach for his rifle, position the barrel forward, and begin firing. | 50.    **Disputed**.<br><br>Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), at 0:05:22; COLA 00752 (Exhibit E), at 19:30 – 20:00. | entire time he was walking down Diamond Bar Boulevard.

Evidence: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot.

Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot.

When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22

Barajas observed that the barrel of the gun on Chin was pointed down.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.

At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Detective Vazquez's belief that Mr. Chin raised his elbow only after Deputy Barajas's first shot shows a gross lack of situational awareness. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | A reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| 51. The Decedent was approximately 10-15 feet from the civilian and deputy vehicles in front of him at this point.  **Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), 0:05:25. | 51.   **Disputed**.  Chin was approximately 20 to 25 feet from Barajas's patrol vehicle when she fired her first shot.  *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:04-11:45:06.  After Barajas's first shot, Chin took four small, slow steps forward before Vazquez's first shot, followed |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | immediately by Barajas's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:12. |
| | Chin fell to the ground approximately 15 to 20 feet from Barajas's vehicle. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30; Ex. 11 to Le Decl., Barajas BWC at 11:47:06-11:47:08. |
| 52. Fearing that the Decedent was going to shoot at deputies and civilians, Detective Vazquez fired one round from his shotgun at the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., ¶13; COLA 00285 (Exhibit A), at 0:08:12; COLA 00286 (Exhibit D), at 0:05:26. | 52.    **Disputed** to the extent that there are any objective facts that showed Chin posed an immediate threat of death or serious bodily injury to anyone to justify the use of deadly force. Chin did not pose an immediate threat of death or serious bodily injury at any time the deputies were on scene.<br><br>Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.

*Evidence*: Noble Decl. ¶ 19.

Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.

*Evidence*: Noble Decl. ¶ 12.

Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.

*Evidence*: Noble Decl. ¶ 13.

Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.

Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed.

*Evidence*: Noble Decl. ¶ 13.

Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force.

*Evidence*: Noble Decl. ¶ 15.

Officers are trained that an overreaction in using force is excessive force.

*Evidence*: Noble Decl. ¶

Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available.

*Evidence*: Noble Decl. ¶ 17.

Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. *Evidence*: Noble Decl. ¶ 21. Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. *Evidence*: Noble Decl. ¶ 25. Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. *Evidence*: Noble Decl. ¶ 25. |
| 53. The round struck the Decedent's bullet-proof vest and appeared to have no effect on the Decedent. **Evidence:** Barajas Decl., at ¶ 12-14; Vazquez Decl., ¶ 16; COLA 00285 (Exhibit A), at 0:08:12; COLA 00286 (Exhibit D), at 0:05:26. | 53.    Undisputed to the extent that this refers to Vazquez's first round. |
| 54. Without cover and believing that the Decedent would turn towards Detective Vazquez to shoot him, | 54.    **Disputed**. Chin's right arm was positioned at an |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Detective Vazquez fired a second shotgun round at the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 17; COLA 00286 (Exhibit D), at 0:05:30; COLA 00752 (Exhibit E), at 20:50 – 21:50. | angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot.<br><br>At the time of Vazquez's first shot, Chin was facing northbound.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.<br><br>When Vazquez fired his first shot, he was aiming at the left side of Chin's torso.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15.<br><br>Vazquez was able to see Chin's back at the time of Vazquez's first shot.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.<br><br>At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |

2:24-cv-04805-MCS-KS

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 59:9-14. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45:17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Vazquez claims that he fired his first shot within a second after Barajas's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 23:12-14. |
| | Vazquez claims the barrel of the gun on Chin was coming up in a northern direction towards Diamond Bar Boulevard at the time he fired his first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 36:4-24 |
| | Vazquez claims that immediately after Vazquez's first shot, Chin began to rotate his body in Vazquez's direction. |
| | *Evidence:* Ex. 1 to Le Decl., Vazquez Dep. 19:1-3, 23:2-18. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez claims he fired his second shot almost consecutively or immediately after his first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 23:15-18. |
| | Vazquez claims that at the time he fired his second shot, Chin had turned and was facing west, in the direction towards Vazquez. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:18-22, 20:6-15. |
| | Vazquez claims the barrel of Chin's gun continued to come up while Chin rotated towards Vazquez with the gun grip in his hand at the time Vazquez fired his second shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 36:25-37:4 |
| | Vazquez claims he was aiming at the front of Chin's body at the time of his second shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:23-15 |
| | Vazquez claims that when Chin began to rotate towards Vazquez, his left hand also went towards the rifle. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 37:12-15 |
| | Vazquez claims after his second shot, Chin continued his rotation towards |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Vazquez with the rifle up and then fell onto his left side, facing westbound.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 38:7-39:3.<br><br>At 11:45:14 on Vazquez's bodyworn camera video, Chin is slightly bent over and facing northbound.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 73:21-74:4; Ex. 7 to Le Decl., Vazquez. Dep. Ex. 5; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6.<br><br>At 11:45:13 on Barajas's bodyworn camera video, a couple of shots have already gone off and Chin is facing north.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 78:13-79:5.<br><br>At 11:45:15 on Barajas's bodyworn camera, Chin is somewhat bent or canted forward and he is still facing north.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 79:20-80:5; Ex. 12 to Le Decl., Barajas Dep. Ex. 13.<br><br>Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4.<br><br>Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. 25. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.<br><br>*Evidence*: Noble Decl. ¶ 26. |
| 55. The Decedent fell to the ground after Detective Vazquez fired his second shot.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., ¶ 14; COLA 00285 (Exhibit A), at 0:08:18; COLA 00286 (Exhibit D), at 0:05:32. | 55.    Undisputed. |
| 56. The Decedent dropped his rifle when he fell to the ground after Detective Vazquez's second shot.<br><br>**Evidence:** Barajas Decl., at ¶ 17; Vazquez Decl., ¶ 15; COLA 00285 (Exhibit A), at 0:10:13; COLA 00286 (Exhibit D), at 0:05:34 | 56.    **Disputed** to the extent that this suggests Chin was ever touching or holding the rifle prior to falling to the ground.<br><br>Vazquez observed that Chin was wearing a vest and had a rifle slung over his right side.<br><br>*Evidence*: Vazquez 24:23-25:1.<br><br>Barajas observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14.<br><br>Barajas never saw Chin holding the |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | firearm with both hands.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| 57. With the AR-15 still within the Decedent's reach, a plan was developed to safely and securely approach the Decedent so that medical care could be rendered from approximately 11:45:15 to 11:47:07.<br><br>**Evidence:** Barajas Decl., at ¶ 17-18; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at COLA 00286 (Exhibit D), at 0:06:00 – 0:07:30. | 57.    Undisputed. |
| 58. Deputies cautiously approached the Decedent, handcuffed him and began rendering aid after he fell to the ground.<br><br>**Evidence:** Barajas Decl., at ¶ 18-20; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at 010:42 – 0:18:57; COLA 00286 (Exhibit D), at 0:0:25 – 0:16:14. | 58.    Undisputed. |
| 59. Deputy Vazquez's use of force was reasonable based on the totality of circumstances.<br><br>**Evidence:** Barajas Decl., at ¶ 5-20; Vazquez Decl., ¶ 5-20; COLA 00285 (Exhibit A) – 00286 (Exhibit D). | 59.    **Disputed**.<br><br>Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 19.

Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.

*Evidence*: Noble Decl. ¶ 12.

Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.

*Evidence*: Noble Decl. ¶ 13.

Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.

*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.

Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 26.<br><br>The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.<br><br>*Evidence*: Noble Decl. ¶ 26. |
| 60. The final shot by Detective Vazquez is discharged at approximately 11:45:15 on body-worn camera footage.<br><br>**Evidence:** COLA 00285 (Exhibit A) 0:08:17; COLA 00286 (Exhibit D), at 0:05:30. | 60.    **Disputed** to the extent that this suggests that final shot by Vazquez was discharged at approximately 11:45:15 on all bodyworn camera videos.<br><br>Vazquez's final shot occurred at approximately 11:45:14 on Vazquez's bodyworn camera video.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot. |
| 61. The Defendant Deputies were unable to determine the extent of the Decedent's injuries due to his bullet-proof vest, preventing the deputies from assessing that the Decedent was no longer a threat.<br><br>**Evidence:** Barajas Decl., at ¶ 18; Vazquez Decl., at ¶19. | 61.    **Disputed** to the extent that the bulletproof vest prevented the deputies from determining that Chin was no longer a threat.<br><br>After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez got the impression that his second shot struck Chin. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:19-41:1. |
| | The rifle was on the ground in the area of Chin's head/shoulder area and Chin hands were not on the rifle. |
| | *Evidence*: Ex. 13 to Le Decl., Toves Dep. 34:18-35:22. |
| 62. At approximately 11:47:17 – 11:47:39, after making a determination that the Decedent is no longer a threat, the deputies approach the Decedent and place him in handcuffs.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:10:19 – 0:10:41; COLA 00286 (Exhibit D), at 0:07:33 – 0:07:55. | 62.    **Disputed** to the extent that this suggests that officers could not initially determine whether Chin was still a threat after he fell to the ground.<br><br>Barajas was aiming towards Chin's waistline when she fired her first shot because she was trying to aim at a part that was not covered by the vest he was wearing.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 26:15-27:12.<br><br>Vazquez observed Chin flinch by bending forward slightly before coming back up at the time of the first shot.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:4-21.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Vazquez got the impression that his second shot struck Chin. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:19-41:1. |
| | The rifle was on the ground in the area of Chin's head/shoulder area and Chin hands were not on the rifle. |
| | *Evidence*: Ex. 13 to Le Decl., Toves Dep. 34:18-35:22. |
| 63. From approximately 11:47:41 – 11:48:30, the Decedent's bullet-proof vest is un-Velcroed, his person is searched, and the deputies release him from his handcuffs.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:10:42 – 0:11:31; COLA 00286 (Exhibit D), at 0:07:57 – 0:08:46. | 63.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 64. Deputies removed the Decedent's vest and cleaned blood from his body.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:11:24 – 0:18:57; COLA 00286 (Exhibit D), at 0:08:30 – 0:16:14. | 64.    Undisputed. |
| 65. At approximately 11:49:40, paramedics from the fire department begin assisting with the Decedent's aid.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:12:42; COLA 00286 (Exhibit D), at 0:09:55. | 65.    Undisputed. |
| 66. At approximately 11:57:40, the Decedent is taken from the scene on a gurney and placed in an ambulance.<br><br>**Evidence:** COLA 00289 (Exhibit F), at 0:15:28. | 66.    Undisputed. |
| 67. The Defendant Deputies fulfilled their duty of summoning prompt medical care as soon as reasonably possible.<br><br>**Evidence:** Barajas Decl., at ¶ 17-20; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at 0:11:25 COLA 00286 (Exhibit D), at 0:07:33 – 0:16:14; COLA 00289 (Exhibit F), at 0:06:00 – 0:20:28. | 67.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 68. LASD deputies had a legitimate law enforcement purpose and reasonable suspicion to contact and detain the Decedent.<br><br>**Evidence:**<br>Declaration of Ed Flosi "Flosi Decl." ¶11-12 | 68.    Undisputed. |
| 69. The deputies' actions were consistent with current law enforcement training and practices the appropriate level of force was used.<br><br>**Evidence:**<br>Flosi Decl. ¶ 11-12 | 69.    **Disputed**.<br><br>Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away.<br><br>*Evidence*: Noble Decl. ¶ 16.<br><br>Vazquez conceded that he could not shoot Chin for simply walking away.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4<br><br>Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |
| 70. LASD deputies had a legitimate law enforcement purpose and probable cause to arrest decedent.<br><br>**Evidence:**<br>Flosi Decl. ¶ 13-14 | 70.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 71. A reasonable officer could have an honest and strong belief that Decedent's actions were in violation of California Penal Code § 148(a)(1).<br><br>**Evidence:**<br>Flosi Decl. ¶11-15, | 71.   **Disputed**. |
| 72. The deadly force response by Defendants Barajas and Vasquez was appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death.<br><br>**Evidence:** Flosi Decl. ¶21-29. | 72.   **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4.<br><br>Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 23.<br><br>Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 21.<br><br>Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos).<br><br>*Evidence*: Noble Decl. ¶ 24. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
| --- | --- |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible.<br><br>*Evidence*: Noble Decl. ¶ 25.<br><br>Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18.<br><br>Vazquez never gave Chin any commands to stop walking or to get on the ground.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19.<br><br>Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so.<br><br>*Evidence*: Noble Decl. ¶ 25.<br><br>The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting.<br><br>*Evidence*: Noble Decl. ¶ 26.<br><br>The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. *Evidence*: Noble Decl. ¶ 26. |
| 73. The actions of decedent created a life-threatening situation and forced the deputies to react quickly and decisively. **Evidence:** Flosi Decl. ¶27. | 73. **Disputed**. When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 Barajas observed that the barrel of the gun on Chin was pointed down. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. Chin had a blank stare on his face. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. The gun was within reach of Chin but Barajas never saw Chin touch the gun. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Chin was going to the ground in a slow manner.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16.<br><br>Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. *Evidence*: Noble Decl. ¶ 26. |
| 74. Deadly force responses by the deputies were appropriate and reasonable to prevent a perceived credible threat of injury created by the Decedent's actions and behaviors. **Evidence:** Flosi Decl. ¶ 21-29. | 74. **Disputed**. When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 Barajas observed that the barrel of the gun on Chin was pointed down. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. Chin had a blank stare on his face. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. The gun was within reach of Chin but Barajas never saw Chin touch the gun. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
| --- | --- |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible.

*Evidence*: Noble Decl. ¶ 25.

Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground.

*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18.

Vazquez never gave Chin any commands to stop walking or to get on the ground.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19.

Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so.

*Evidence*: Noble Decl. ¶ 25.

The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting.

*Evidence*: Noble Decl. ¶ 16.

The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.<br><br>*Evidence*: Noble Decl. ¶ 26. |
| 75. The deadly force responses by Deputy Vasquez and Deputy Barajas were appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to them at the moments non-deadly force was used.<br><br>**Evidence:**<br>Flosi Decl. ¶ 21-29. | 75.    **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible.<br><br>*Evidence*: Noble Decl. ¶ 25.<br><br>Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18.<br><br>Vazquez never gave Chin any commands to stop walking or to get on the ground.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19.<br><br>Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so.<br><br>*Evidence*: Noble Decl. ¶ 25.<br><br>The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting.<br><br>*Evidence*: Noble Decl. ¶ 26.<br><br>The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. *Evidence*: Noble Decl. ¶ 26. |
| 76. Officers are trained that for an investigative stop of detention to be valid, there must be reasonable suspicion that: (1) criminal activity may be afoot and (2) the person about to be detained is connected with that possible criminal activity. **Evidence:** Flosi Decl. ¶ 12. | 76.    Undisputed. |
| 77. Under the totality of the circumstances, a reasonable officer could conclude that the subject described in the call for service was involved or preparing to become involved in criminal activity hence LASD deputies had a legitimate law enforcement purpose and reasonable suspicion to contact and detain Decedent. **Evidence:** Flosi Decl. ¶ 13. | 77.    **Disputed** to the extent that it was a reasonable officer would conclude that the subject was preparing to become involved in criminal activity. Vazquez observed that Chin was wearing a vest and had a rifle slung over his right side. *Evidence*: Vazquez 24:23-25:1. Barajas observed a firearm in a slung manner on Chin's right side. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22. At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. *Evidence*: Ex. 10 to Le Decl., Barajas |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
| --- | --- |
| | Dep. 38:2-6. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| 78. The deputies' actions were consistent with current law enforcement training and practices.<br><br>**Evidence:**<br>Flosi Decl. ¶¶ 11, 14, 16, 22, and 30. | 78. **Disputed**.<br><br>Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | safety or the safety of others is insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Chin into custody at the time of the shooting.<br><br>*Evidence*: Noble Decl. ¶ 26.<br><br>The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.<br><br>*Evidence*: Noble Decl. ¶ 26. |
| 79. There is no independent and objective evidence to support a claim that the Defendant Deputies denied the Decedent medical care.<br><br>**Evidence:**<br>Flosi Decl. ¶¶9(h), 31 -34. | 79.  Undisputed. |
| 80. A review of the material and video evidence reveals that the last shot was fired at approximately 11:45:15.<br><br>**Evidence:**<br>Flosi Decl. ¶33**.** | 80.  **Disputed** to the extent that this suggests that final shot by Vazquez was discharged at approximately 11:45:15 on all bodyworn camera videos.<br><br>Vazquez's final shot occurred at approximately 11:45:14 on Vazquez's bodyworn camera video.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 81. The approach to the Decedent began at approximately 11:47:07.<br><br>**Evidence:**<br><br>Flosi Decl. ¶33. | 81.    Undisputed. |
| 82. LASD deputies make contact with the Decedent to render aid at approximately 11:47:17.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 82.    Undisputed. |
| 83. The Decedent was handcuffed at approximately 11:47:40.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 83.    Undisputed. |
| 84. A deputy confirmed that the fire department personnel was responding at 11:47.58.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 84.    Undisputed. |
| 85. LASD deputies start rendering medical aid at approximately 11:48:16.<br>**Evidence:**<br>Flosi Decl. ¶33. | 85.    Undisputed. |
| 86. The fire department personnel are on scene at approximately 11:48.42.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 86.    Undisputed. |
| 87. After being shot, the Decedent fell next to the rifle that he was wielding.<br><br>**Evidence:** | 87.    **Disputed** that Chin ever "wielded" the rifle while the deputies were on scene.<br><br>Barajas observed that the barrel of the gun on Chin was pointed down. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| Flosi Decl. ¶34. | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| 88.There was a legitimate tactical need to get a shield and contact team formed with non-deadly and deadly force options prior to moving to | 88.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| whether the Decedent fell.<br><br>**Evidence:**<br>Flosi Decl. ¶34. | |
| 89. It is also noted that there was information that the Decedent had stabbed another person and the edged weapon was unaccounted for.<br><br>**Evidence:**<br>Flosi Decl. ¶34. | 89. Undisputed. |
| 90. It is demonstrably false that LASD deputies denied the Decedent of medical care.<br><br>**Evidence:**<br>Flosi Decl. ¶31-34. | 90. Undisputed. |
| 91. The deadly force responses by the deputies were appropriate and reasonable to prevent a perceived credible threat of injury created by Decedent's actions and behaviors.<br><br>**Evidence:**<br>Flosi Decl. ¶31-34. | 91. **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
| --- | --- |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
|  | violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 23.

Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 21.

Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |
| 92. The deadly force responses by Vasquez and Barajas were appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to them at the moments non-deadly force was used.<br><br>**Evidence:**<br>Flosi Decl. ¶30. | 92.    **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4<br><br>Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4.<br><br>Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 23.

Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 21.

Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. *Evidence*: Noble Decl. ¶ 26. |
| 93. There is no objective independent evidence in the record that LASD failed to adequately train the involved deputies or that LASD maintains unconstitutional customs, practices, and/or policies. **Evidence:** Flosi Decl. ¶35-40. | 93.    Undisputed. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES