**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,

                   Plaintiffs,

vs.

COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,

                   Defendants.

Case No. 2:24-cv-04805-MCS-KS

*Assigned to*:
Hon Mark C. Scarsi
Hon. Mag. Judge Karen L. Stevenson

**PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS**

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Local Rules 56-1 and 56-2 and this Court's June 10, 2024 Initial Standing Order for Civil Cases Assigned to Judge Mark C. Scarsi, Plaintiff respectfully submits her Statement of Additional Uncontroverted Facts.

DATED:  October 13, 2025          LAW OFFICES OF DALE K. GALIPO


By_____*/s/ Hang D. Le*_____
      Dale K. Galipo
      Hang D. Le
      Attorneys for Plaintiff

# PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| **The Deputies Receive a Call for Service** | |
| 94.    Vazquez received a call for service regarding a male Asian, wearing a bullet proof vest, walking down the street with an assault-style rifle, and firing off rounds.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 52:12-18. | |
| 95.    Vazquez had information that the shots had been fired in the air.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:13-17. | |
| 96.    Vazquez also had information that someone had been stabbed but he did not know the severity of it.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:18-25. | |
| 97.    The only information that was transmitted over the radio that related the stabbing victim to the incident was that the victim was in the area where the person with the gun was.<br><br>*Evidence:* Ex. 13 to Le Decl., Toves Dep. 20:1-16. | |
| 98.    Barajas started to panic when she heard the priority call.<br><br>*Evidence*: Barajas Dep. 41:8-12. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 99.    When Barajas heard that there was a stabbing victim and shots had been fired, she became extremely nervous and started to panic. Barajas Dep. 47:16-19. | |
| 100.   Neither Vazquez nor Barajas had ever seen Chin before the day of the incident. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 77:8-10; Barajas Dep. 58:22-24. | |
| 101.   Neither Vazquez nor Barajas had any information regarding Chin's background, including any criminal history or any information as to whether Chin was under the influence of drugs or alcohol. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 77:11-13, 77:14-19; Barajas Dep. 58:25-59:2. | |
| **The Deputies Encounter Decedent** | |
| 102.   When Vazquez encountered an Asian female, later identified as Plaintiff Jennie Quan, Vazquez saw blood on Plaintiff's hands but did not know the source of the blood. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 42:14-43:5. | |
| 103.   When Vazquez was talking to Plaintiff, he could not tell whether or not she had been stabbed—he just saw blood. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 59:21-25. | |
| 104.    Vazquez did not ask Plaintiff if she needed medical attention nor did he call medical attention for her.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 43:9-13. | |
| 105.    Plaintiff told Vazquez "Don't hurt him" and "Don't shoot him" a few times.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 42:1-11. | |
| 106.    At around the time Plaintiff told Vazquez, "Don't hurt him" or "Don't shoot him," Vazquez saw Chin.<br><br>*Evidence*: Vazquez 43:14-18. | |
| 107.    Vazquez first saw Chin in Crooked Creek, facing houses, and there did not appear to be any people around.<br><br>*Evidence*: Vazquez 24:11-15, 61:20-21. | |
| 108.    Vazquez observed that Chin was wearing a vest and had a rifle slung over his right side.<br><br>*Evidence*: Vazquez 24:23-25:1. | |
| 109.    Vazquez decided to get his County-issued patrol shotgun.<br><br>*Evidence*: Vazquez 15:5-12, 43:19-21. | |
| 110.    Vazquez's shotgun is a pump shotgun that requires the user the pump | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| the shotgun to eject a casing and load the next round.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 66:2-11. | |
| 111.  A casing is ejected from the shotgun after a shot has occurred, in order to load the next round.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 66:12-67:1. | |
| 112.  Vazquez then observed Chin walk eastbound towards Diamond Bar Boulevard.<br><br>*Evidence*: Vazquez 25:13-26:6. | |
| 113.  Chin walked approximately half a block with the rifle slung over his right side the entire time before he got to Diamond Bar Boulevard.<br><br>*Evidence*: Vazquez 26:16-22. | |
| 114.  When Chin reached Diamond Bar Boulevard, he made a turn and proceeded northbound<br><br>*Evidence*: Vazquez 26:10-15. | |
| 115.  Chin walked a northbound on Diamond Bar Boulevard a very minimal amount—approximately 20 to 30 feet.<br><br>*Evidence*: Vazquez 27:13-15. | |
| 116.  Chin was walking at a slow, steady pace on Diamond Bar Boulevard. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 62:20-23; Ex. 2 to Le Decl., Vazquez BWC at 5:02-5:34. | |
| 117.   Vazquez conceded that he could not shoot Chin for simply walking away.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4. | |
| 118.   Vazquez conceded that based on his training and the totality of the circumstances, he could not shoot Chin as a fleeing felon and could only shoot him if Chin posed an immediate or imminent threat of death or serious bodily injury.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep.  30:5-22. | |
| 119.   Vazquez told Bronowicki to pull up with his vehicle so that he could continue to provide cover to Vazquez and Bronowicki complied.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 62:24-63:7. | |
| 120.   One of the reasons Vazquez wanted the other deputy to bring the car up was to provide Vazquez with cover.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 48:2-5. | |
| 121.   Vazquez then left cover ran on foot away from Bronowicki's vehicle, towards the north sidewalk of Crooked Creek. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
| --- | --- |
| *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 63:8-12. | |
| 122.   Barajas was driving southbound on Diamond Bar Boulevard before she saw Chin and stopped her car and got out when she saw him.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:20-23. | |
| 123.   Chin was walking northbound on the southbound lane of Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 20:2-16. | |
| 124.   Chin was in the number one southbound lane on Diamond Bar Boulevard when Barajas encountered him.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 20:2-6, 50:25-51:1. | |
| 125.   Barajas stopped her vehicle in the number two lane of the three southbound lanes of Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 51:3-8; Ex. 2 to Le Decl., Vazquez BWC at 5:19. | |
| 126.   Barajas experienced additional panic when she saw Chin.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 42:19-21. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 127.    Barajas observed a firearm in a slung manner on Chin's right side. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22. | |
| 128.    Barajas observed that the barrel of the gun on Chin was pointed down. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. | |
| 129.    Barajas claims she exited her vehicle as soon as she saw Chin. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:3-6. | |
| 130.    There is no cross street near where Barajas got out; it was just a long street. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:22-23:6. | |
| 131.    Barajas started to panic as Chin began walking in her direction. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 47:9-11. | |
| 132.    Chin had a blank stare on his face. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. | |
| **The Deputies Use Excessive and Unreasonable Deadly Force Against Decedent** | |
| 133.    Barajas fired the first shot. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 27:16-18, 56:7-12. | |
| 134.   Chin was walking northbound on Diamond Bar Boulevard at the time of the first shot.  *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 28:7- 12. | |
| 135.   Barajas was positioned behind her driver's side door when she fired her first shot.  *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 23:17-23. | |
| 136.   Chin was approximately 20 to 25 feet from Barajas's patrol vehicle when she fired her first shot.  *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:04-11:45:06. | |
| 137.   Barajas was aiming towards Chin's waistline when she fired her first shot because she was trying to aim at a part that was not covered by the vest he was wearing.  *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 26:15-27:12. | |
| 138.   The gun on Chin was pointed down when Barajas fired her first shot.  *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:3-5. | |
| 139.   Vazquez conceded that based on his training, he could not shoot Chin for | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| walking away at the time he heard the first shot because there was not enough to justify the use of deadly force as Chin had only fired rounds in the air and Vazquez did not know the extent of the assault Chin had previously committed.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 28:17-29:25. | |
| 140.    Vazquez thought Chin possibly had been struck by the first shot but was not sure.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:24-23:1. | |
| 141.    Vazquez observed Chin flinch by bending forward slightly before coming back up at the time of the first shot.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:4-21. | |
| 142.    Other than a few cars on Diamond Bar, there was nobody outside.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 62:17-19. | |
| 143.    After Barajas' first shot, she started panicking even more.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 48:10-16. | |
| 144.    Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| front the entire time he was walking down Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. | |
| 145.   Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. | |
| 146.   After Barajas's first shot, Chin took four small, slow steps forward before Vazquez's first shot, followed immediately by Barajas's second shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:12. | |
| 147.   Vazquez was 30 to 40 feet from Chin at the time he fired.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 16:11-13. | |
| 148.   At the time of Vazquez's first shot, Chin was facing northbound.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 149.   Vazquez could tell that his first shot struck the middle left, rear area of Chin's vest.  *Evidence*: Ex. 1 to Le Decl., Vazquez Dep.  31:2-6, 31:16-32:3. | |
| 150.   When Vazquez fired his first shot, he was aiming at the left side of Chin's torso.  *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. | |
| 151.   Vazquez was able to see Chin's back at the time of Vazquez's first shot.  *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. | |
| 152.   At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction  *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. | |
| 153.   Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot.  *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. | |
| 154.    Barajas fired an additional shot immediately after Vazquez's first shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:9-11:45:12; Ex. 11 to Le Decl., Barajas BWC at 11:45:10-11:45:13. | |
| 155.    Barajas fired her second shot approximately seven seconds after her first shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:12; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:13. | |
| 156.    Barajas fired a third shot approximately two seconds after her second shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:10-11:45:14; Ex. 11 to Le Decl., Barajas BWC at 11:45:10-11:45:15. | |
| 157.    The gun on Chin was pointed down when Barajas fired additional shots.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. | |
| 158.    At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. | |
| 159.   At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone.  *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. | |
| 160.   Barajas never saw Chin holding the firearm with both hands.  *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. | |
| 161.   At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.  *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. | |
| 162.   The gun was within reach of Chin but Barajas never saw Chin touch the gun.  *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. | |
| 163.   Barajas never heard Chin say anything.  *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. | |
| 164.   Vazquez never heard Chin say anything at any time. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. | |
| 165.    Barajas could tell that other shots were coming from her right side and she knew that there was another deputy positioned to her right.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 28:19-29:15. | |
| 166.    Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. | |
| 167.    Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. | |
| 168.    Chin was going to the ground in a slow manner.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. | |
| 169.    Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
| --- | --- |
| *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. | |
| 170.   Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. | |
| 171.   Barajas never gave Chin a warning that she was prepared to use deadly force if Chin did not comply with her commands before any of her shots.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. | |
| 172.   Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. | |
| 173.   Vazquez fired his second shot approximately five seconds after he fired his first shot. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16. | |
| 174.   At the time Vazquez fired from his shotgun, he did not have any cover.  *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 44:16-21. | |
| 175.   The fact that Vazquez did not have cover was a factor in his decision to fire his second shot.  *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 44:25-45:12. | |
| 176.   Chin went to the ground soon after Vazquez's second shot.  *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:2-5. | |
| 177.   After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky.  *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. | |
| 178.   Chin fell to the ground approximately 15 to 20 feet from Barajas's vehicle.  *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30; Ex. 11 to Le Decl., Barajas BWC at 11:47:06-11:47:08. | |
| 179.   Vazquez got the impression that his second shot struck Chin. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:19-41:1. | |
| 180.    Vazquez did not hear any shots immediately after his shooting sequence.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:9-12. | |
| 181.    At 11:45:14 on Vazquez's bodyworn camera video, Chin is slightly bent over and facing northbound.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 73:21-74:4; Ex. 7 to Le Decl., Vazquez. Dep. Ex. 5; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6. | |
| 182.    At 11:45:13 on Barajas's bodyworn camera video, a couple of shots have already gone off and Chin is facing north.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 78:13-79:5. | |
| 183.    At 11:45:15 on Barajas's bodyworn camera, Chin is somewhat bent or canted forward and he is still facing north.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 79:20-80:5; Ex. 12 to Le Decl., Barajas Dep. Ex. 13. | |
| 184.    Vazquez never gave Chin any commands to stop walking or to get on the ground. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. | |
| 185.   Vazquez never gave Chin a warning that he was prepared to use deadly force if Chin did not comply with his command before either of Vazquez's shots.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. | |
| 186.   No officer on scene ever gave Chin commands to stop walking, to not advance towards them, or to get on the ground.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19; Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. | |
| 187.   No officer on scene ever gave Chin a warning that deadly force would be used if Chin did not comply with their commands.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19; Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. | |
| 188.   Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| situation play out and try to deescalate the situation further.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. | |
| 189.  Chin sustained gunshot wounds to the front of his body just above his pubic region and lower back.<br><br>*Evidence*: Ex. 14 to Le Decl., Gliniecki Dep. 7:5-15, 7:21-25, 10:13-17. | |
| 190.  The gunshot wound to the front of the Chin's body above his pubic region had a trajectory of left to right, front to back, and downwards.<br><br>*Evidence*: Ex. 14 to Le Decl., Gliniecki Dep. 8:12-15. | |
| 191.  The gunshot wound to the lower back, which was close to the middle of the back, had a trajectory of left to right, back to front, and 45-degree angle upwards.<br><br>*Evidence*: Ex. 14 to Le Decl., Gliniecki Dep. 10:13-11:6, 12:12-21 | |
| 192.  The trajectory of the gunshot wound to the middle of the lower back is consistent Chin being bent forward at the waist and the shooter at Chin's back.<br><br>*Evidence*: Ex. 14 to Le Decl., Gliniecki Dep. 12:22-13:4. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 193.   The gunshot wound that entered the middle of the lower back was determined to be fatal.<br><br>*Evidence*: Ex. 14 to Le Decl., Gliniecki Dep. 13:5-10, 14:1-4. | |
| **<u>The Deputies' Use of Deadly Force Against Decedent Violated Standard Police Practices and Training</u>** | |
| 194.   Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12. | |
| 195.   Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.<br><br>*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl. Vazquez Dep. 50:12-16. | |
| 196.   Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.<br><br>*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., ==Vazquez Dep. 51:17-22.== | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 197.    Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed.<br><br>*Evidence*: Noble Decl. ¶ 13. | |
| 198.    Officers are trained to control their emotions and to not panic when encountering situations similar this incident.<br><br>*Evidence*: Noble Decl. ¶ 15. | |
| 199.    Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force.<br><br>*Evidence*: Noble Decl. ¶ 15; Ex. 1 to Le Decl., Vazquez Dep. 67:2-4. | |
| 200.    Officers are trained that an overreaction in using force is excessive force.<br><br>*Evidence*: Noble Decl. ¶ 15. | |
| 201.    Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Noble Decl. ¶ 17; Ex. 1 to Le Decl., Vazquez Dep. 50:20-23. | |
| 202.   Officers are trained that they cannot shoot a person who they suspect or believe to have committed a violent felony simply for fleeing, unless the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended.<br><br>*Evidence*: Noble Decl. ¶ 16. | |
| 203.   Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away.<br><br>*Evidence*: Noble Decl. ¶ 16. | |
| 204.   Detective Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 205.   Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 20. | |
| 206.   Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 21. | |
| 207.   Approximately six seconds elapsed between Deputy Barajas's first shot and Detective Vazquez's first shot, which is sufficient time for Detective Vazquez to evaluate to situation and see that Mr. Chin was not making any threatening or furtive movement prior to Detective Vazquez's first shot.<br><br>*Evidence*: Noble Decl. ¶ 21. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 208.   Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation.<br><br>*Evidence*: Noble Decl. ¶ 22. | |
| 209.   Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 22. | |
| 210.   Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation.<br><br>*Evidence*: Noble Decl. ¶ 23. | |
| 211.   Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 23. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 212.   Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos).<br><br>*Evidence*: Noble Decl. ¶ 24. | |
| 213.   Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible.<br><br>*Evidence*: Noble Decl. ¶ 25; Ex. 1 to Le Decl., Vazquez Dep. 50:17-19. | |
| 214.   Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so.<br><br>*Evidence*: Noble Decl. ¶ 25. | |
| 215.   The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. | |

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| *Evidence*: Noble Decl. ¶ 26. | |
| 216.   The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.<br><br>*Evidence*: Noble Decl. ¶ 26. | |

PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED FACTS