**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>                    Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>                    Defendants. | Case No. 2:24-cv-04805-MCS-KS<br><br>*Assigned to*:<br>Hon Mark C. Scarsi<br>Hon. Mag. Judge Karen L. Stevenson<br><br>**NOTICE OF ERRATA** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Plaintiff Jennie Quan hereby submits this Notice of Errata regarding Plaintiff's Opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment (Doc. No. 49). Plaintiff inadvertently filed Plaintiff's Opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment without the required Certificate of Compliance pursuant to Local Rule 11-6.2. The corrected Plaintiff's Opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment with the required Certificate of Compliance is attached hereto as "Exhibit A."

Plaintiff apologizes for any inconvenience this may have caused the Court and the parties.

Respectfully submitted,

DATED:  October 14, 2025          LAW OFFICES OF DALE K. GALIPO

By_____*/s/ Hang D. Le*_____
        Dale K. Galipo
        Hang D. Le
        Attorneys for Plaintiff

# Exhibit A

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (Bar No. 293450)
hlee@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>　　　　　　　Defendants. | Case No. 2:24-cv-04805-MCS-KS<br><br>*Assigned to*:<br>Hon Mark C. Scarsi<br>Hon. Mag. Judge Karen L. Stevenson<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**<br><br>[Plaintiff's Statement of Genuine Disputes; Objections to Defendants' Separate Statement of Uncontroverted Facts; Additional Uncontroverted Facts; Declaration of Hang D. Le and exhibits thereto; and Declaration of Jeff Noble *filed concurrently herewith*]<br><br>Date:　November 3, 2025<br>Time:　9:00 a.m.<br>Crtrm: 7C |

# **TABLE OF CONTENTS**

I.  INTRODUCTION .................................................................................... 1

II.  STATEMENT OF FACTS ..................................................................... 1

    A.  The Deputies Receive a Call for Service ................................. 1

    B.  The Deputies Encounter Decedent .......................................... 2

    C.  The Deputies Use Excessive and Unreasonable Force Against Decedent ................................................................................... 3

    D.  The Deputies' Use of Deadly Force Against Decedent Violated Standard Police Practices and Training ................................... 6

III.  LEGAL STANDARD ............................................................................ 8

IV.  THE DEPUTIES ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR THEIR USE OF EXCESSIVE DEADLY FORCE AGAINST CHIN .................................................................................. 9

    A.  Defendant Deputies Used Excessive Deadly Force ................ 9

        1.  The First and Third Graham Factors Do Not Warrant the Use of Deadly Force ............................................... 10

        2.  Chin Did Not Pose an Immediate or Imminent Threat of Death or Serious Bodily Injury Immediately Prior to or During Any of the Shots ...................................... 11

        3.  Additional Factors Weigh Against the Use of Deadly Force ........................................................................... 14

    B.  The Deputies Were on Notice that Their Use of Deadly Force Against Decedent Violated the Constitution ......................... 15

V.  DEFENDANT DEPUTIES ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS ..................... 18

    A.  Qualified Immunity Does Not Apply to Plaintiff's State Law Claims .................................................................................... 18

    C.  Defendants are Not Entitled to Summary Judgment on Plaintiffs' Battery and Negligence Claims ............................. 18

    D.  Defendants are Not Entitled to Summary Judgment on Plaintiff's Bane Act Claim ................................................... 20

VI.  CONCLUSION ..................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A.K.H. ex rel. Landeros v. City of Tustin,*
    837 F.3d 1005 (9th Cir. 2016)..........................................................................11

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970) ........................................................................................8

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ......................................................................................16

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................8

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ......................................................................................16

*Brosseau v. Haugen,*
    543 U.S. 194 (2004) ......................................................................................16

*Bryan v. MacPherson,*
    630 F.3d 805 (9th Cir. 2010) ........................................................................10

*Calonge v. City of San Jose,*
    104 F.4th 39 (9th Cir. 2024)..........................................................11, 12, 13, 17

*Cole Estate of Richards v. Hutchins,*
    959 F.3d 1127 (8th Cir. 2020) ......................................................................16

*Cousins v. Lockyer,*
    568 F.3d 1063 (9th Cir. 2009) ......................................................................18

*Curnow By & Through Curnow v. Ridgecrest Police,*
    952 F.2d 321 (9th Cir. 1991)....................................................................16, 17

*Deorle v. Rutherford,*
    272 F.3d 1272 (9th Cir. 2001)....................................................................12, 14

*Drummond ex rel. Drummond v. City of Anaheim,*
    343 F.3d 1052 (9th Cir. 2003) ......................................................................17

*Est. of Lopez by & through Lopez v. Gelhaus,*
    871 F.3d 998 (9th Cir. 2017 ..........................................................................16

*Estate of Aguirre v. County of Riverside,*
    29 F.4th 624 (9th Cir. 2022)..........................................................................17

*Ford v. City of Yakima,*
    706 F.3d 1188 (9th Cir. 2013) ......................................................................15

*Gonzalez v. City of Anaheim,*
    747 F.3d 789 (9th Cir. 2014)..........................................................................9

*Graham v. Connor*,
  490 U.S. 386 (1989) .................................................................................9, 10

*Grudt v. City of Los Angeles*,
  2 Cal.3d 575 (1970) .......................................................................................19

*Harris v. Roderick*,
  126 F.3d 1189 (9th Cir. 1997) .................................................................16, 17

*Hayes v. Cnty. of San Diego*,
  57 Cal.4th 622 (2013) ...............................................................................18, 19

*Hughes v. Rodriguez*,
  31 F.th 1211 (9th Cir. 2022) ..........................................................................20

*Koussaya v. City of Stockton*,
  54 Cal. App. 5th 909 (2020) ...........................................................................19

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,
  841 F.2d 872 (9th Cir. 1987) ............................................................................8

*Liston v. Cnty. of Riverside*,
  120 F.3d 965 (9th Cir. 1997) ............................................................................9

*Mattos v. Agarano*,
  666 F.3d 433 (9th Cir. 2011) ..........................................................................11

*McLeod v. City of Redding*,
  No. 2:22-CV-00585 WBS JDP, 2024 WL 3011227 (E.D. Cal. June 12, 2024)
  ........................................................................................................................19

*Mendez v. Cnty. of Los Angeles*,
  897 F.3d 1067 (9th Cir. 2018) ........................................................................19

*Mulligan v. Nichols*,
  835 F.3d 983 (9th Cir. 2016) ..........................................................................19

*Munoz v. Olin*,
  24 Cal. 3d 629 (1979) .....................................................................................18

*N.E.M. v. City of Salinas*,
  761 F. App'x 698 (9th Cir. 2019) ...................................................................16

*Price v. Sery*,
  513 F.3d 962 (9th Cir. 2008) .....................................................................11, 12

*Prison Legal News v. Lehman*,
  397 F.3d 692 (9th Cir. 2005) ..........................................................................16

*Reese v. Cnty. of Sacramento*,
  888 F.3d 1030 (9th Cir. 2018) ........................................................................20

*S.R. Nehad v. Browder*,
  929 F.3d 1125 (9th Cir. 2019) .........................................................10, 11, 14, 15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT

*Santos v. Gates,*
    287 F.3d 846 (9th Cir. 2002) ....................................................................... 9

*Saucier v. Katz,*
    533 U.S. 194 (2001) .................................................................................. 16

*Scott v. Harris,*
    550 U.S. 372 (2007) .................................................................................. 13

*Scott v. Henrich,*
    39 F.3d 912 (9th Cir. 1994) ......................................................................... 9

*Singh v. City of Phoenix,*
    124 F.4th 746 (9th Cir. 2024) .............................................................. 10, 11

*Smith v. City of Hemet,*
    394 F.3d 689 (9th Cir. 2005) ........................................................... 9, 11, 15

*Tabares v. City of Huntington Beach,*
    988 F.3d 1119 (9th Cir. 2021) ............................................................. 13, 19

*Tan Lam v. City of Los Banos,*
    976 F.3d 986 (9th Cir. 2020) ..................................................................... 17

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ...................................................................................... 10

*Torres v. City of Madera,*
    648 F.3d 1119 (9th Cir. 2011) ..................................................................... 9

*Venegas v. County of L.A.,*
    153 Cal. App. 4th 1230 (2007) .................................................................. 18

*Villalobos v. City of San Maria,*
    85 Cal. App. 5th 383 (2022) ...................................................................... 19


Other Authorities

CACI 1305B ...................................................................................................... 19

CACI 441 .......................................................................................................... 19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On June 19, 2023, County of Los Angeles Sheriff's Department Deputy Marisol Barajas ("Barajas") and Detective Hector Vazquez ("Vazquez") shot and killed Benjamin Chin ("Chin"). The officers fired a combined total of five shots— all separate volleys. The shooting was captured on several officer-worn body cameras and showed that although Chin was in possession of a rifle slung over his body at the time of the shooting, Chin never touched the rifle, never manipulated the rifle, never raised the rifle, nor pointed the rifle; in short, Chin never made any threatening or furtive movement. The video and forensic evidence, along with Barajas's observations, show that the deputies' use of deadly force was unreasonable because Chin never posed an immediate or imminent threat of death or serious bodily injury.

Defendants now move for summary judgment or partial summary judgment on all of Plaintiff's claims. In light of the uncontroverted video and forensic evidence, and the reasons discussed below, the Court should deny Defendants' motion.[1]

## II.    STATEMENT OF FACTS

A. The Deputies Receive a Call for Service

Vazquez received a call for service regarding a male Asian, wearing a bullet proof vest, walking down the street with an assault-style rifle, and firing off rounds into the air. Plaintiff's Additional Uncontroverted Fact "PAUF" 94-95. Vazquez also received information that someone had been stabbed but he did not know the severity of it. PAUF 96. The only information that was transmitted over the radio

---

[1] Plaintiff voluntarily dismisses/abandons her Denial of Medical Care claim (second claim for relief) and her Municipal Liability claims (third, fourth, and fifth claims for relief).

that related the stabbing victim to the incident was that the victim was in the area where the person with the gun was. PAUF 97.

Barajas started to panic when she heard the priority call. PAUF 98. When she heard that there was a stabbing victim and shots had been fired, she became extremely nervous and started to panic. PAUF 99. Neither Vazquez nor Barajas had ever seen Chin before the day of the incident. PAUF 100. Neither Vazquez nor Barajas had any information regarding Chin's background, including Chin's criminal history or any information as to whether Chin was under the influence of drugs or alcohol. PAUF 101.

B. The Deputies Encounter Decedent

When Vazquez encountered an Asian female, later identified as Plaintiff Jennie Quan, Vazquez saw blood on Plaintiff's hands but did not know the source of the blood. PAUF 102. When Vazquez was talking to Plaintiff, he could not tell whether or not she had been stabbed—he just saw blood. PAUF 103. Vazquez did not ask Plaintiff if she needed medical attention nor did he call medical attention for her. 104. Plaintiff told Vazquez "Don't hurt him" and "Don't shoot him" a few times. PAUF 105. At around the time Plaintiff told Vazquez, "Don't hurt him" or "Don't shoot him," Vazquez saw Chin. PAUF 106.

Vazquez first saw Chin in Crooked Creek, facing houses, and there did not appear to be any people around. PAUF 107. Vazquez observed that Chin was wearing a vest and had a rifle slung over his right side. PAUF 108. Vazquez decided to get his County-issued patrol shotgun, which is a pump shotgun that requires the user the pump the shotgun to eject a casing and load the next round. PAUF 109-110. A casing is ejected from the shotgun after a shot has occurred, in order to load the next round. PAUF 111. Vazquez then observed Chin walk eastbound towards Diamond Bar Boulevard. PAUF 112. Chin walked approximately half a block with the rifle slung over his right side the entire time before he got to Diamond Bar

Boulevard. PAUF 113. Reaching Diamond Bar Boulevard, Chin then made a turn and proceeded northbound for approximately 20 to 30 feet. PAUF 114-115. He walked at a slow, steady pace the entire time on Diamond Bar Boulevard. PAUF 116.

Vazquez conceded that he could not shoot Chin for simply walking away PAUF 117. Vazquez conceded that based on his training and the totality of the circumstances, he could not shoot Chin as a fleeing felon and could only shoot him if Chin posed an immediate or imminent threat of death or serious bodily injury. PAUF 118. Vazquez told Deputy Bronowicki to pull up with his vehicle so that he could continue to provide cover to Vazquez and Bronowicki complied. PAUF 119. One of the reasons Vazquez wanted Bronowicki to bring the car up was to provide Vazquez with cover. PAUF 120. Vazquez then left cover and ran on foot away from Bronowicki's vehicle, towards the north sidewalk of Crooked Creek. PAUF 121.

Barajas was driving southbound on Diamond Bar Boulevard before she saw Chin walking northbound on the same street and stopped her car and got out when she saw him. PAUF 122-23. Chin was in the number one southbound lane on Diamond Bar Boulevard when Barajas encountered him and Barajas stopped her vehicle in the number two lane. PAUF 124-25. Barajas experienced additional panic when she saw Chin. PAUF 126. Barajas also observed a firearm in a slung manner on Chin's right side with the barrel pointed down. PAUF 127-28. Barajas claims she exited her vehicle as soon as she saw Chin. PAUF 129. Chin had a blank stare on his face. PAUF 132. Barajas started to panic as Chin began walking in her direction. PAUF 131.

C. The Deputies Use Excessive and Unreasonable Force Against Decedent

Barajas fired the first shot. PAUF 133. Chin was walking northbound on Diamond Bar Boulevard while Barajas was positioned behind her driver's side door when she fired her first shot. PAUF 134-35. Chin was approximately 20 to 25 feet

from Barajas's patrol vehicle when she fired her first shot. PAUF 136. Barajas was aiming towards Chin's waistline when she fired her first shot because she was trying to aim at a part that was not covered by the vest he was wearing. PAUF 137. The gun on Chin was still pointed down when Barajas fired her first shot. PAUF 138. Vazquez conceded that based on his training, he could not shoot Chin for walking away at the time he heard the first shot because there was not enough to justify the use of deadly force as Chin had only fired rounds in the air and Vazquez did not know the extent of the assault Chin had previously committed. PAUF 139. Vazquez thought Chin possibly had been struck by the first shot because he saw Chin flinch by bending forward slightly before coming back up. PAUF 140-41. Other than a few cars on Diamond Bar, there was nobody outside. PAUF 142. After Barajas' first shot, she started panicking even more. PAUF 143.

Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard, and his right arm did not change positions the entire time. PAUF 144, 153. Additionally, approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. PAUF 145. After Barajas's first shot, Chin took four small, slow steps forward before Vazquez's first shot, followed immediately by Barajas's second shot. PAUF 146. Vazquez was 30 to 40 feet from Chin and Chin was facing northbound at the time Vazquez first fired. PAUF 147-48. When Vazquez fired his first shot, he was aiming at the left side of Chin's torso, and Vazquez was able to see Chin's back. PAUF 150-51. Chin was facing northbound and Vazquez was firing in a slightly northeast direction. PAUF 152. Vazquez claims he could tell that his first shot struck the middle left, rear area of Chin's vest. PAUF 149.

Barajas fired an additional shot immediately after Vazquez's first shot and approximately seven seconds after her first shot. PAUF 154-55. Barajas fired another shot approximately two seconds after her second shot. PAUF 155. The gun

on Chin was still pointed down when Barajas fired those shots. PAUF 157. Barajas could tell that other shots were coming from her right side and she knew that there was another deputy positioned to her right. PAUF 165. Barajas saw Chin react to the gunshots in between her' shots and Vazquez's shot as she saw Chin's posture bend slightly forward and Chin was no longer upright. PAUF 166-67. Chin was going to the ground in a slow manner. PAUF 168. A shot was fired after Chin's posture bent forward as a reaction of Barajas's shots. PAUF 166, 167, 179.

Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. PAUF 172. Vazquez fired his second shot approximately five seconds after he fired his first shot. PAUF 173. Vazquez testified that the fact that Vazquez did not have any cover was a factor in his decision to fire his second shot. PAUF 174-75. Chin went to the ground soon after Vazquez's second shot. PAUF 176. Chin fell onto his back, with his face looking upwards towards the sky. PAUF 177. Chin fell to the ground approximately 15 to 20 feet from Barajas's vehicle. PAUF 178. Vazquez got the impression that his second shot struck Chin. PAUF 179. 181. At 11:45:14 on Vazquez's bodyworn camera video, Chin is slightly bent over and facing northbound. PAUF 181. At 11:45:13 on Barajas's bodyworn camera video, a couple of shots have already gone off and Chin is facing north. PAUF 182. At 11:45:15 on Barajas's bodyworn camera, Chin is somewhat bent or canted forward and he is still facing north. PAUF 183.

At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone, never raised the firearm towards anyone, and never manipulated the firearm. PAUF 158-59, 161. Barajas never saw Chin holding the firearm with both hands. PAUF 160. The gun was within reach of Chin but Barajas never saw Chin touch the gun. PAUF 162. Additionally, neither Barajas nor Vazquez ever heard Chin say anything at any time. PAUF 163-64.

No deputy on scene, including Barajas and Vazquez, ever gave Chin commands to stop walking, to not advance towards them, or to get on the ground.

PAUF 170, 184, 186. No deputy on scene, including Barajas and Vazquez, ever gave Chin a warning that deadly force would be used if Chin did not comply with their commands. PAUF 171, 185, 187. Additionally, Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. PAUF 188.

Chin sustained gunshot wounds to the front of his body, just above his pubic region, and lower back. PAUF 189. The gunshot wound to the front of the Chin's body above his pubic region had a trajectory of left to right, front to back, and downwards. PAUF 190. The gunshot wound to the lower back, which was close to the middle of the back, had a trajectory of left to right, back to front, and 45-degree angle upwards. PAUF 191. The trajectory of the gunshot wound to the middle of the lower back is consistent Chin being bent forward at the waist and the shooter at Chin's back. PAUF 192. This gunshot wound was determined to be fatal. PAUF 193.

### D. The Deputies' Use of Deadly Force Against Decedent Violated Standard Police Practices and Training

Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. PAUF 194. Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. PAUF 195. Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. PAUF 196. Officers are

trained that an imminent harm is not merely a fear of future harm, but one that, from appearances, must be instantly confronted and addressed. PAUF 197. Officers are trained to control their emotions and to not panic when encountering situations similar this incident. PAUF 199. Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that there must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury. PAUF 200. Officers are trained that an overreaction in using force is excessive force and that deadly force should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. PAUF 201-02. Moreover, Officers are trained that they cannot shoot a person who they suspect or believe to have committed a violent felony simply for fleeing, unless the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended. PAUF 203.

Thus, Plaintiff's police practices expert Jeff Noble opined that under the facts of this case, deadly force would not be justified against Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Chin for walking away. PAUF 204. Additionally, Vazquez violated standard police practices and training when he left available cover to follow Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Chin, as evidenced by Vazquez's testimony that being without cover was a factor in his decision to shoot at Chin. PAUF 205. Moreover, Noble opined that Barajas's first, second, and third shots violated standard police practices and training and a reasonably trained officer in Barajas's position would not have believed that Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Barajas's first shot and would not have shot at all. PAUF 206, 210, 212. Noble also opined that Vazquez's first and second shots violated standard police practices and training and a reasonably trained officer in Vazquez's position, acting

pursuant to standard police practices and training, would have been aware of Chin's body and arm positioning throughout the encounter and would not have believed that Chin posed an immediate threat of death or serious bodily injury at the time of Vazquez's first and second shot and would not have shot at all. PAUF 207, 208, 213.

Additionally, police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible and Vazquez and Barajas this training when they failed to give Chin a warning that they were prepared to use deadly force despite it being feasible to do so. PAUF 214-15. Lastly, Noble opined that the deputies had other reasonable alternatives available to them to take Chin into custody at the time of the shooting, including additional time and opportunity to deescalate further by setting up a perimeter (as other units were on scene and on the way), and utilizing less-lethal force such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. PAUF 216-17.

## III.  <u>LEGAL STANDARD</u>

In ruling on a motion for summary judgment, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987). Even where the basic facts are undisputed, summary judgment should be denied if reasonable minds could differ on the inferences to be drawn from those facts. *Adickes*, 398 U.S. at 158-59; *Lake Nacimiento Ranch Co.*, 841 F.2d at 875. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge..." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit] held on many occasions that summary judgment or judgment as a matter of

law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *accord Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). "This is because such cases almost always turn on a jury's credibility determinations." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). Thus, "[t]he [court] must carefully examine all the evidence in the record . . . and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with the known facts." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *accord Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014) (en banc). This includes "circumstantial evidence that, if believed, would tend to discredit the police officer's story." *Scott*, 39 F.3d at 915. Courts do "recognize that police officers are often forced to make split-second judgments" but "[n]ot all errors in perception or judgment . . . are reasonable." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (internal quotation marks and citation omitted). While courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.*

## IV.    THE DEPUTIES ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR THEIR USE OF EXCESSIVE DEADLY FORCE AGAINST CHIN

### A. Defendant Deputies Used Excessive Deadly Force

A constitutional claim for excessive force is evaluated through the Fourth Amendment's reasonableness standard, considering "whether the officers' actions [we]re 'objectionably reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The inquiry into the reasonableness of an officer's use of force "requires the careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'

against the countervailing governmental interests at stake." *Graham*, 490 at 396. "The intrusiveness of a seizure by means of deadly force is unmatched." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 at 396.

### 1. The First and Third Graham Factors Do Not Warrant the Use of Deadly Force

Even when a suspect has previously committed a serious crime, "a jury could discount the severity of the suspect's purported crimes when the suspect is indisputably not engaged in felonious conduct when the officer arrives." *Singh v. City of Phoenix*, 124 F.4th 746, 752 (9th Cir. 2024) (cleaned up) (citing *S.R. Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019)). Here, Chin was not engaged in any felony when Vazquez and Barajas encountered Chin under Plaintiffs' facts, and Chin was not engaged in any felonious conduct during any of Barajas's and Vazquez's shots. Accordingly, the alleged crimes do not support the use of deadly force. *See S.R. Nehad*, 929 F.3d at 1136 (a jury could conclude that the suspect's already completed felony of "threatening with a weapon" did not render the officer's use of deadly force reasonable because the suspect was not engaged in any such conduct when the officer arrived or when he fired his weapon).

"Resistance . . . should not be understood as a binary state, with resistance being either completely passive or active[, r]ather, it runs the gamut from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer," the nature of any resistance should be viewed in light of the particular facts of the case. *Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010). In *Smith v. City of Hemet*, the Ninth Circuit held that the plaintiff's refusal to comply with commands to remove his hands from his pockets and place them on his

head and his reentry into his home despite officers' ordering otherwise were "not…particularly bellicose." 394 F.3d at 703. In *Singh v. City of Phoenix*, the Ninth Circuit held that the plaintiff's refusal to follow commands, including commands to drop the knife he held and to not advance towards the officer, constituted less than active resistance and did not warrant the use of deadly force. 124 F.4th at 748-49, 753-54. Similarly, Chin's only resistance was his failure to obey commands to "drop the gun." The officers never gave Chin any other commands, including potential commands to stop walking, stop advancing, or to get on the ground. Under Plaintiffs' facts, he was not actively resisting nor physically assaulting any of the officers at the time of the use of force.

And as Vazquez conceded, the deputies would not be justified in shooting Chin for fleeing, as the facts known to the deputies at the time did not support justification for shooting a fleeing felon, Chin walked at a slow, steady pace throughout the encounter, and the deputies never gave Chin any commands to stop, to not advance toward anyone, or to get down on the ground. *See Calonge v. City of San Jose*, 104 F.4th 39, 46 (9th Cir. 2024) (deadly force could not be justified by decedent continuing to walk because the officers did not instruct decedent to stop so his actions could not amount to fleeing arrest); *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1009, 1012 (9th Cir. 2016) (explaining that a person is not "flee[ing]" when he "continue[s] to move at about the same speed," even when an officer instructs him to "get down").

### 2. Chin Did Not Pose an Immediate or Imminent Threat of Death or Serious Bodily Injury Immediately Prior to or During Any of the Shots

The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *S.R. Nehad*, 929 F.3d at 1132 (citing *Mattos v. Agarano*, 666 F.3d 433, 441 (9th Cir. 2011)). "[T]o justify deadly force, an objective belief that an imminent threat of death or serious physical harm is required." *Price v. Sery*, 513 F.3d 962, 969 (9th Cir. 2008). A merely subjective belief of threat cannot justify

1  the use of force, "rather, the objectively describable totality of the circumstances

2  would have to be such as to justify the use of force," and a sincerely held but

3  unreasonable belief is insufficient to justify the use of force. *Id.* "[A] a simple

4  statement by an officer that he fears for his safety or the safety of others is not

5  enough; there must be objective factors to justify such a concern" *Deorle v.*

6  *Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). "A desire to resolve quickly a

7  potentially dangerous situation is not the type of governmental interest that, standing

8  alone, justifies the use of force that may cause serious injury." *Id.*

9          Moreover, the Ninth Circuit has "held over and over that a suspect's

10  possession of a gun does not itself justify deadly force." *Calonge*, 104 F.4th at 48.

11  "An immediate threat might be indicated by a furtive movement, harrowing gesture,

12  or serious verbal threat." *Id.* at 46. If a person possesses a gun but does not reach for

13  it or make some similar threatening movement, then it would clearly be

14  unreasonable for officers to shoot him. *Id.*

15          Here, Barajas's subjective belief is insufficient to justify the use of deadly

16  force considering the objective facts. Barajas had already started the panic when she

17  first heard the priority call and panicked even more when she encountered Chin. At

18  all times during the incident, Barajas observed the rifle slung on Chin's right side

19  with the barrel of the gun pointed down. Chin never held the rifle, never touched the

20  rifle with either hand, never manipulated the rifle, never raised the rifle, and never

21  pointed the rifle at anyone while the deputies were on scene. Moreover, the deputies

22  never heard Chin say anything, let alone make any verbal threats. Barajas contends

23  that she shot Chin because he walked towards her and a civilian vehicle while armed

24  with a rifle, but as discussed above, failure to obey commands while visibly armed

25  is not enough to justify the use of deadly force and the deputies never instructed

26  Chin to stop, to not advance towards them, or to get down onto the ground.

27          In *Calonge v. City of San Jose*, the Ninth Circuit held that the totality of the

28  circumstances did not justify the use of deadly force because, despite the decedent

being armed with a replica gun in his waistband that the officers reasonably believed to be a real gun, the decedent never reached for his waistband or made any similar furtive or threatening gesture. 104 F.4th at 46. Similarly, while the deputies could see that Chin was in possession of a rifle, Barajas's testimony and the uncontroverted video evidence shows that Chin never made any threatening or furtive movement. The rifle remained slung on his body with the barrel pointed down at all times. Chin never reached for the rifle. Accordingly, a reasonable jury could find that Barajas's use of deadly force (all three shots) was unreasonable as Chin did not pose an immediate threat of death or serious bodily injury immediately prior to or during Barajas's shots.

Vazquez contends that he fired his first shot because immediately after Barajas's first shot, Vazquez observed Chin bring his right arm up in a manner that Vazquez believed to indicate that Chin was reaching for the rifle. He contends that he fired his second shot almost immediately after his first shot because Chin was turning towards him. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where multiple videos capture the shooting and there are no allegations or indications that the videos have been altered in any way, courts "'allow the videotape[s] to speak for [themselves].'" *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1124 n.4 (9th Cir. 2021) (quoting *Scott*, 550 U.S. at 378 & n.5). Vazquez's story is blatantly contradicted by the video and forensic evidence.

Video from Vazquez's body-worn camera show that Chin's right arm was bent at the elbow the entire time Chin was walking on Diamond Bar Boulevard—the position Vazquez claims Chin's right arm only went to after Barajas's first shot led Vazquez to believe Chin was reaching for the rifle. Moreover, both Barajas's and Vazquez's body-worn camera videos show that Chin never raised the rifle,

never turned in Vazquez's direction prior to Vazquez's second shot, and was not facing Vazquez at the time of Vazquez's second shot. Instead, the videos show that Vazquez's second shot occurred approximately five seconds after his first, Chin had bent forward in response to Barajas's third shot, was not touching the rifle at any time prior to Vazquez's second shot, and was struck in the back by Vazquez's second shot. Chin sustained a gunshot wound to the middle of the lower back that is consistent with Chin being bent at the waist and the shooter being behind Chin— which turned out to be the fatal shot. Additionally, according to Defendants' facts, Barajas allegedly stopped firing once Chin was immobilized and it is undisputed that Vazquez's last shot occurred after Barajas's last shot. Vazquez conceded that if Chin had simply been walking with the rifle slung over his body and pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot—exactly what Plaintiff contends happened according to Barajas's testimony and the video evidence. Thus, there is sufficient evidence to lead a reasonable jury to conclude that both of Vazquez's shots were excessive and unreasonable under the circumstances.

### 3. Additional Factors Weigh Against the Use of Deadly Force

"In some cases, the absence of a warning or order to halt prior to deploying forceful measures against a suspect may suggest that the use of force was unreasonable." *S.R. Nehad*, 929 F.3d at 1137 (citing *Deorle*, 272 F.3d at 1283-84). In *S.R. Nehad v. Browder*, the Ninth Circuit determined that the officer's failure to order the suspect with the knife to halt could support a conclusion that the officer's use of deadly force was unreasonable. 929 F.3d at 1137. Here, Barajas claimed that she shot because Chin was walking towards her and a civilian vehicle while armed with a rifle, yet, Barajas never gave Chin any commands to stop, to not advance, or to get onto the ground. A reasonable jury could find that the lack of sufficient commands weighs against the reasonableness of her use of deadly force.

Additionally, "[t]he seemingly obvious principle that police should, if possible, give warnings prior to using force is not novel, and is well known to law enforcement officers." *S.R. Nehad*, 929 F.3d at 1137. Commands given prior to the use of deadly force are not enough to satisfy this requirement, there must be a warning that the failure to comply would result in the use of deadly force. *See id*. at 1138. It is undisputed that, even though the deputies gave Chin repeated commands to drop the gun, the deputies never gave Chin a verbal warning that they were prepared to use deadly force if he did not comply with commands. A jury could consider the lack of warning that deadly force could be used evidence of the unreasonableness of their use of deadly force. *See id.* at 1137.

"Another relevant factor is 'the availability of alternative methods of capturing or subduing a suspect.'" *S.R. Nehad*, 929 F.3d at 1138 (citing *Smith*, 394 F.3d at 703). "[P]olice are required to consider what other tactics if any were available, and if there were clear, reasonable and less intrusive alternatives to the fore employed, that militates against finding the use of force reasonable." *Id.* (cleaned up). Here, as Vazquez conceded, if the incident had unfolded as Plaintiff contends it did (which is supported by the video evidence), it would not be appropriate to shoot and the deputies had the option to let the situation play out and try to deescalate further. The deputies had the time and opportunity to do so as Chin had not touched or manipulated the gun, and there were other deputies on scene and responding to the scene that would allow them to set up a perimeter and utilize less-lethal force alternatives.

## B. The Deputies Were on Notice that Their Use of Deadly Force Against Decedent Violated the Constitution

An officer is not entitled to qualified immunity where "(1) facts viewed in the light most favorable to the injured party show that the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Ford v. City of Yakima*, 706 F.3d 1188, 1192 (9th Cir. 2013) (citing

*Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A right is clearly established where its "contours . . . [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This requires "cases relevant to the situation [the officer] confronted," *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004), however it does "not require a case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In considering existing precedent, the Court "may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005).

At the time of this June 2023 incident, "it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions…even in circumstances in which the suspect has allegedly committed a violent crime in the immediate past." *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019) (citing *Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1020 (9th Cir. 2017); *George*, 736 F.3d at 838; *Harris v. Roderick*, 126 F.3d 1189, 1203–04 (9th Cir. 1997); *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)) (cleaned up); *see Cole Estate of Richards v. Hutchins*, 959 F.3d 1127, 1134 (8th Cir. 2020) ("it was clearly established that a person does not pose an immediate threat of serious physical harm to another when, although the person is in possession of a gun, he does not point it at another or wield it in an otherwise menacing fashion").

In *Estate of Lopez v. Gelhaus*, the Ninth Circuit held that a reasonable jury could find that the officer's use of deadly force was not objectively reasonable where the decedent was holding a rifle pointed down to the ground, the officer did not warn the decedent that deadly force would be used, and the decedent did not exhibit any aggressive behavior. 871 F.3d at 1013. In *George v. Morris*, the Ninth Circuit held that even in a potentially volatile and dangerous situation, a reasonable

factfinder could conclude that the deputies' use of deadly force against a domestic disturbance suspect who visibly held a gun trained on the ground and never manipulated or pointed the gun at the deputies violated the Fourth Amendment. 736 F.3d at 833, 838, 839. Indeed, as this Court recognized in *Estate of Aguirre v. County of Riverside*, 29 F.4th 624 (9th Cir. 2022), "*Morris* established that, even in [tense and often explosive] situations, officers must not use deadly force against non-threatening suspects, even if those suspects are armed." 29 F.4th at 630. In *Harris v. Roderick*, the Ninth Circuit held deadly force to be unreasonable where the suspect had committed a violent crime in the immediate past by shooting at police officers and was armed at the time of the use of deadly force, but was not escaping and had not made any threatening movement toward anyone. 126 F.3d at 1193, 1203, 1204. In *Curnow v. Ridgecrest*, the Ninth Circuit held that it was unreasonable to use deadly force against a man who was not pointing a gun at the officers and was not facing them at the time of the shooting. 952 F.3d at 325.  More recently in *Calonge v. City of San Jose*, the Ninth Circuit held that the law was clearly established at the time of the 2019 incident that use of deadly force against a man walking down the street with a gun in his waistband, who failed to follow commands but did not make any threatening or furtive movement, violated the Fourth Amendment. 104 F.4th at 46, 48. Additionally, "caselaw has made clear that an officer violates the Fourth Amendment by shooting a person who had previously injured someone but no longer posed an immediate threat." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1001 (9th Cir. 2020). Lastly, Vazquez conceded that pursuant to the deputies' training, it would be inappropriate to shoot Chin if the incident happened as Plaintiff contends it did—where Chin was simply walking with the rifle slung on his body and pointed down and never grabbed or raised the rifle, and never turned towards Vazquez. *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003) (officers' training materials relevant to whether

they would have been on notice that the force employed was objectively unreasonable).

Plaintiff submits that the cases discussed above clearly established Chin's right to be free from unreasonable, deadly force at the time of this incident.

## V.  DEFENDANT DEPUTIES ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS

### A.  Qualified Immunity Does Not Apply to Plaintiff's State Law Claims

Defendants contend that because the deputies are entitled to qualified immunity (Plaintiff disputes that the defendant deputies are entitled to qualified immunity), the deputies cannot be liable under Plaintiff's state law claims. However, "California law is clear that the doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees" and that "qualified immunity does not apply to state civil rights claims." *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009) (cleaned up) (citing *Venegas v. County of L.A.*, 153 Cal. App. 4th 1230, 1243, 1226 (2007)). Moreover, under Plaintiff's facts there is sufficient evidence for a jury to find that the deputies' use of deadly force against Chin was excessive and unreasonable.

### C.  Defendants are Not Entitled to Summary Judgment on Plaintiffs' Battery and Negligence Claims

The California Supreme Court "has long recognized that peace officers have a duty to act reasonably when using deadly force." *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 629 (2013). "[A]n officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979). California "state negligence law, which considers the totality of the circumstances surrounding any use of []force, is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when []force is used." *Hayes*, 57 Cal.4th at 639 (internal citations omitted). The totality of the circumstances necessarily includes the officer's "tactical conduct and decisions

leading up to the use of []force." *See id.* at 637-38. "Under California law, the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of the shooting might be reasonable in isolation." *Tabares*, 988 F.3d at 1125 (citing *Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1082–83 (9th Cir. 2018); *Grudt v. City of Los Angeles*, 2 Cal.3d 575,587 (1970)); *see also Mulligan*, 835 F.3d at 991.

A state law claim for battery by a peace officer considers the "totality of the circumstances," which includes pre-force conduct as well as the use of force. *McLeod v. City of Redding*, No. 2:22-CV-00585 WBS JDP, 2024 WL 3011227, at *8 (E.D. Cal. June 12, 2024) (finding that the analysis on the state law battery claim "requires the same 'totality of the circumstances' inquiry that applied to negligence claims" including pre-shooting conduct); *Villalobos v. City of San Maria*, 85 Cal. App. 5th 383, 389 (2022) (evaluating both battery and negligence claims against police officers under the reasonableness standard articulated in *Hayes*); *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 937 (2020) (same)). Indeed, California Civil Jury Instructions for battery by a peace officer (deadly force), CACI 1305B, and negligent use of deadly force by a peace officer, CACI 441, instructs that the jury may consider the officer's "tactical conduct and decisions before using deadly force." CACI 441 and 1035B further states:

> A threat of death or serious bodily injury is "imminent" when…a person has the *present ability, opportunity, and apparent intent to immediately* cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, *no matter how great the fear and no matter how great the likelihood of the harm,* but is one that, from appearances, must be instantly confronted and addressed.

CACI 441, 1305B (emphasis added).

As discussed above, *supra* Section IV.A., viewing the facts in the light most favorable to Plaintiff, the deputies used excessive and unreasonable deadly force

against Chin as Chin did not pose an imminent threat of death or serious bodily injury at any time immediately prior to or during the shots. Additionally, a jury could find that Vazquez's poor tactical decision to leave cover, despite it being feasible for cover in the form of Bronowicki's vehicle to position itself to allow Vazquez to avoid crossfire, contributed to Vazquez's use of unnecessary, deadly force.

D. Defendants are Not Entitled to Summary Judgment on Plaintiff's Bane Act Claim

"The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). "[A] reckless disregard for a person's constitutional rights is evidence of specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). As discussed above, the deputies used excessive and unreasonable force against Chin. The deputies acted with reckless disregard for Chin's constitutional rights when they used deadly force against Chin, despite Chin not posing a threat of death or serious bodily injury at the time of the volleys of shots.

VI. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' Motion for Summary Judgment, or Partial Summary Judgment as to the claims discussed above.

//
//
//
//
//
//

1  DATED: October 13, 2025          LAW OFFICES OF DALE K. GALIPO

2

3                                    By _____/s/ Hang D. Le_____

4                                       Dale K. Galipo
                                        Hang D. Le
5                                       Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Certificate of Compliance**

The undersigned, counsel of record for Plaintiff Jennie Quan, certifies that this
memorandum contains 6,965, which complies with the 7,000 word limit of L.R.
11-6.1.

DATED: October 13, 2025          LAW OFFICES OF DALE K. GALIPO


By _____ */s/ Hang D. Le*
          Dale K. Galipo
          Hang D. Le
          Attorneys for Plaintiff