1 | Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrellcantrall.com
2 | Janet J. Hur, State Bar No. 330358
E-Mail: jhur@hurrellcantrall.com
3 | Jerad J. Miller, State Bar No. 334001
E-Mail: jjmiller@hurrellcantrall.com
4 | HURRELL CANTRALL LLP
800 West 6th Street, Suite 700
5 | Los Angeles, California 90017
Telephone: (213) 426-2000
6 | Facsimile: (213) 426-2020

7 | Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS
and HECTOR VAZQUEZ

8

9

10

11

*HURRELL CANTRALL LLP*
*800 WEST 6TH STREET, SUITE 700*
*LOS ANGELES, CA 90017-2710*
*TELEPHONE (213) 426-2000*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased, | Case No. 2:24-cv-04805-MCS(KSx) |
| Plaintiff, | **DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES** |
| v. | [Filed Concurrently with: 1) Defendants' Reply to Plaintiff's Opposition; 2) Defendants' Evidentiary Objections to Plaintiff's Statement of Uncontroverted Facts; 3) Defendants' Response to Plaintiff's Additional Uncontroverted Facts] |
| COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive, | |
| Defendants. | [Assigned to Hon. Mark C. Scarsi, Courtroom "7C"] |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF

RECORD:

Defendants COUNTY OF LOS ANGELES, MARISOL BARAJAS AND

HECTOR VAZQUEZ (collectively, "Defendants") hereby submit their response to

Plaintiff's Statement of Genuine Disputes.

/ / /

/ / /

/ / /

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 1. Marisol Barajas was a deputy for the Los Angeles County Sheriff's Department on the day of the incident.<br><br>**Evidence:** Declaration of Deputy Marisol Barajas ("Barajas Decl."), at ¶ 4; COLA 00285 (Exhibit A) – 00286 (Exhibit D). | 1.    Undisputed. |
| 2. Hector Vazquez was a detective for the Los Angeles County Sheriff's Department on the day of the incident.<br><br>**Evidence:** Declaration of Deputy Hector Vazquez ("Vazquez Decl."), at ¶ 4; COLA 00285 (Exhibit A) (Exhibit A) – 00286 (Exhibit D). | 2.    Undisputed. |
| 3. The incident occurred on June 19, 2023 in Diamond Bar, CA.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., at ¶ 5. | 3.    Undisputed. |
| 4. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶ 5; COLA 00285 | 4.    Disputed to the extent that it was confirmed to be a bullet-proof vest.<br><br>Disputed to the extent that the initial information was that the subject was walking around Diamond Bar Boulevard. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| (Exhibit A) (Exhibit A), at 0:01:40; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; | |
| 4. Deputy Barajas and Detective Vazquez understood the Decedent's vest, referenced in the dispatch and L-TAC calls, to refer to a bullet-proof vest, which was confirmed upon the Defendant Deputies' observation of the Decedent. Barajas Decl., at ¶¶ 5, 7; Vazquez Decl., ¶¶ 5, 11. | |
| 5. Deputy Barajas traveled southbound on Diamond Bar Boulevard, and the Decedent appeared on the same street walking northbound.<br><br>**Evidence:** Barajas Decl., at ¶ 7; COLA 00285 (Exhibit A), at 0:07:25-0:08:12. | 5.    Undisputed. |
| 6. The Decedent was estimated to be approximately 15 - 20 feet from Deputy Barajas' vehicle when she turned on Diamond Bar Boulevard.<br><br>**Evidence:** Barajas Decl., at ¶ 7; COLA 00285 (Exhibit A), at 0:07:25-0:08:12; COLA 00755 (Exhibit B), at 08:03. | 6.    **Disputed** to the extent that this suggests Deputy Barajas encountered Decedent being approximately 15-20 feet from her vehicle immediately after she turned onto Diamond Bar Boulevard.<br><br>Barajas was driving southbound on Diamond Bar Boulevard before she saw Chin and stopped her car and got out when she saw him.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:20-23.<br><br>Barajas claims she exited her vehicle as soon as she saw Chin.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:3-6.<br><br>There is no cross street near where Barajas got out; it was just a long street. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:22-23:6. |
| 6. Deputy Barajas was initially traveling northbound on Diamond Bar Boulevard. She made a U-turn and began heading southbound on Diamond Bar Boulevard, where she encountered the Decedent. COLA 00756, at 2:28 – 2:32. | |
| 7. The Decedent continued to move northbound towards deputies and civilians with his rifle slung around his shoulder to his right side.<br><br>**Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 12; COLA 00285 (Exhibit A), at 0:07:25-0:08:12; COLA 00286 (Exhibit D). | 7. **Disputed** to the extent that this suggests there were a lot of civilians on Diamond Bar Boulevard as Chin walked in a northbound direction.<br><br>Other than a few cars on Diamond Bar, there was nobody outside.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 62:17-19. |
| 7. A civilian was parked inside of his vehicle right next to Deputy Barajas on Diamond Bar Boulevard while the Decedent was proceeding northbound. The vehicle is observable in Detective Vazquez's body-worn camera, COLA 00286 (Exhibit D), at 11:45:05. | |
| 8. Deputy Barajas planned to further the distance between her vehicle and the Decedent due to his ongoing approach, but civilian and deputy vehicles to Deputy Barajas' left and behind her prevented this option.<br><br>**Evidence:** Barajas Decl., at ¶ 8; COLA 00285 (Exhibit A), at 0:07:25-0:18:57; COLA 00286 (Exhibit D); COLA 00755 (Exhibit B), at 8:10 – 8:22. | 8. **Disputed** to the extent that Deputy Barajas intended to try to get more distance between her vehicle and Chin.<br><br>Barajas was driving southbound on Diamond Bar Boulevard before she saw Chin and stopped her car and got out when she saw him.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:20-23.<br><br>Chin was in the number one southbound lane on Diamond Bar Boulevard when Barajas encountered him.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas |

HURRELL CANTRALL LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

4

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 20:2-6, 50:25-51:1. |
| | Barajas stopped her vehicle in the number two lane of the three southbound lanes of Diamond Bar Boulevard. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 51:3-8; Ex. 2 to Le Decl., Vazquez BWC at 5:19. |
| | Barajas claims she exited her vehicle as soon as she saw Chin. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 22:3-6. |
| 8. While Deputy Barajas exited her vehicle shortly after seeing the Decedent on Diamond Bar Boulevard, she assessed her ability to create more distance between her and the Decedent after first encountering him on Diamond Bar Boulevard. Barajas Decl., at ¶ 8. | |
| 9.  Believing that the Decedent was an imminent dangerous threat to civilians, deputies and herself, Deputy Barajas exited her vehicle and drew her firearm<br><br>**Evidence:** Barajas Decl., at ¶ 9; COLA 00285 (Exhibit A), at 0:07:25; COLA 00755 (Exhibit B), at 7:15 – 10:55; COLA 00756 (Exhibit C), at 12:00 – 12:15. | 9.     **Disputed** that to the extent that this suggests it was reasonable for Barajas to believe that Decedent was an imminent dangerous threat to civilians, deputies and herself when Deputy Barajas exited her vehicle and drew her firearm. Based on the objective facts, it was not reasonable for Barajas to believe that Chin was a imminent dangerous threat at any time.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13;Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas was on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas was on scene, Chin never raised the firearm towards anyone. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9

At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |

The Decedent posed an imminent threat during the encounter and the Defendant Deputies' responses were reasonable.

Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent. As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. When Deputy Barajas encountered the Decedent on Diamond Bar Boulevard, she observed that he was carrying an AR-15, wearing a bullet-proof vest, and was ignoring commands to drop his weapon.

**Evidence:** Barajas Decl., at ¶¶ 5, 12, 14; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; COLA 00756 (Exhibit C), at 9:36 – 12:11.

| 10. Deputy Barajas used the driver-side door as cover and stated over her radio that she was detaining the suspect.

**Evidence:** Barajas Decl., at ¶ 9; COLA 00285 (Exhibit A), at 0:07:25; COLA 00286 (Exhibit D). | 10.    Undisputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 11. Deputy Barajas ordered the Decedent to drop his weapon approximately seven (7) times before firing her first shot from her service handgun.<br><br>**Evidence:** Barajas Decl., at ¶ 10; COLA 00285 (Exhibit A), at 0:07:48 – 0:08:06. | 11.    **Disputed** to the extent that Barajas completed seven commands for Decedent to drop his weapon before firing her first shot.<br><br>Barajas shot her first shot in the middle of her seventh command.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:45-11:45:07. |
| 11. Deputy Barajas finished her seventh command for the Decedent to drop his weapon before firing. COLA 00285 (Exhibit A), at 0:07:48 – 0:08:06. | |
| 12.The Decedent ignored Deputy Barajas' seven (7) commands and continued moving northbound, progressing to within approximately 7 – 10 feet of Deputy Barajas.<br><br>**Evidence:** Barajas Decl., at ¶ 10; COLA 00285 (Exhibit A), at 0:07:48 – 0:08:07; COLA 00756 (Exhibit C), at 12:28. | 12.    **Disputed** that Chin ever progressed to within approximately 7-10 feet of Barajas.<br><br>Chin was walking at a slow, steady pace on Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 62:20-23; Ex. 2 to Le Decl., Vazquez BWC at 5:02-5:34.<br><br>Chin was approximately 20 to 25 feet from Barajas's patrol vehicle when she fired her first shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:04-11:45:06<br><br>After Barajas's first shot, Chin took four small, slow steps forward before Vazquez's first show, followed immediately by Barajas's second shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez |

9

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | BWC at 11:45:03-11:45:12. |
| | Chin fell to the ground approximately 15 to 20 feet from Barajas's vehicle. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30; Ex. 11 to Le Decl., Barajas BWC at 11:47:06-11:47:08. |
| 12. Deputy Barajas recalled the Decedent approaching within 7-10 feet of her vehicle. Body-worn camera shows her approximation to be reasonable. Barajas Decl., at ¶ 10; COLA 00285 (Exhibit A), at 0:07:48 – 0:08:07; COLA 00756 (Exhibit C), at 12:28. | |
| 13. Less-lethal ammunition was not an option because the Decedent posed an immediate lethal threat due to his proximity to the civilian, and his bullet-proof vest would have rendered less-lethal ammunition ineffective.<br><br>**Evidence:** Barajas Decl, at ¶ 11; COLA 00756 (Exhibit C), at 9:36 – 9:50. | 13.    **Disputed**.<br><br>The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting.<br><br>*Evidence*: Noble Decl. ¶ 26.<br><br>The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.<br><br>*Evidence*: Noble Decl. ¶ 26.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is |

HURRELL CANTRALL LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13;Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an |

HURRELL CANTRALL LLP

800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas was on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas never saw Chin holding the firearm with both hands.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13<br><br>At all times while Barajas was on scene, Chin never raised the firearm towards anyone.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9<br><br>At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6<br><br>Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 21.<br><br>Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have |

Hurrell Cantrall LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

13

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | let the situation play out and try to deescalate the situation further. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| 13. The Decedent posed a lethal and imminent threat to deputies and civilians. Deputies are permitted to respond to lethal and imminent threats with lethal force, making the actions of the Defendant Deputies reasonable. Flosi Decl., at ¶ 22-29. | |
| 14. Deputy Barajas fired her first shot from her service weapon at the Decedent, which appeared to have no effect on the Decedent. **Evidence:** Barajas Decl., at ¶ 12; COLA 00285 (Exhibit A), at 0:08:07 – 00286 (Exhibit D). | 14. **Disputed** that Barajas's first shot appeared to have no effect on Chin. Vazquez thought Chin possibly had been struck by the first shot but was not sure. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:24-23:1. Vazquez observed Chin flinch by bending forward slightly before coming back up at the time of the first shot. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:4-21. |
| 14. The Decedent remained standing up and moving forward after Deputy Barajas' first shot, providing the appearance that the shot had "no effect" on the Decedent. COLA 00286 (Exhibit D), at 0:05:22. | |
| 15. After her first shot, Deputy Barajas reassessed the situation and determined the Decedent was still an imminent dangerous threat because he continued advancing with his rifle. **Evidence:** Barajas Decl., at ¶¶ 12, 14; COLA 00285 (Exhibit A), at 0:08:07 – | 15. **Disputed** that Chin was ever an "imminent dangerous threat" at the time the deputies were on scene. Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

14

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 0:08:14; COLA 00756 (Exhibit C), at 9:36 – 12:11. | insufficient. |

*Evidence*: Noble Decl. ¶ 12,

Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.

*Evidence*: Noble Decl. ¶ 13;Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.

Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed.

*Evidence*: Noble Decl. ¶ 13.

Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force.

*Evidence*: Noble Decl. ¶ 19.

Officers are trained that deadly force is a last resort that should only be used in an

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9 |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to |

17

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4. |
| | Vazquez conceded that based on his training and the totality of the circumstances, he could not shoot Chin as a fleeing felon and could only shoot him if Chin posed an immediate or imminent threat of death or serious bodily injury. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep.  30:5-22. |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| 15. The Decedent posed an imminent threat during the encounter and the Defendant Deputies' responses were reasonable.<br><br>Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. When Deputy Barajas encountered the Decedent on Diamond Bar Boulevard, she observed that he was carrying an AR-15, wearing a bullet-proof vest, and was ignoring commands to drop his weapon.<br><br>After she fired her first shot, the Decedent continued walking northbound on Diamond Bar Boulevard, coming within dangerous proximity of a civilian inside his vehicle.<br><br>**Evidence:** Barajas Decl., at ¶¶ 5, 12, 14; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; COLA 00756 (Exhibit C), at 9:36 – 12:11. | |
| 16. The Decedent's bullet-proof vest prevented the Defendant Deputies from determining the extent of any injuries he suffered from their gunshots.<br><br>**Evidence:** Barajas Decl., at ¶¶ 12, 14; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:20; COLA 00286 (Exhibit D), at | 16.    **Disputed**.<br><br>Barajas was aiming towards Chin's waistline when she fired her first shot because she was trying to aim at a part that was not covered by the vest he was wearing.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 26:15-27:12.<br><br>Vazquez observed Chin flinch by bending forward slightly before coming back up at the time of the first shot.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:4-21.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin went to the ground soon after Vazquez's second shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:2-5. |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Vazquez got the impression that his second shot struck Chin. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:19-41:1. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 16. The bullet-proof vest prevented the Defendant Deputies from confirming whether their shots struck the Decedent, where the shots struck, and the extent of the Decedent's injuries. Barajas Decl., at ¶¶ 12, 14; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:20; COLA 00286 (Exhibit D). | |
| 17. Deputy Barajas commanded the Decedent to drop his rifle an eighth (8) time as he continued his approach.<br><br>**Evidence:** Barajas Decl., at ¶ 12; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:14. | 17. Undisputed. |
| 18. Deputy Barajas then ordered the Decedent to drop his weapon a ninth (9) time and begins ordering him to drop it a tenth (10) time, but her order is interrupted by Detective Vazquez's first shot.<br><br>**Evidence:** Barajas Decl., at ¶ 13; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:14; COLA 00286 (Exhibit D), at 0:05:25. | 18. Undisputed. |
| 19. The Decedent remained standing and capable of firing his rifle slung around his shoulder, indicating to Deputy Barajas that he still remained a dangerous lethal threat to civilians and deputies.<br><br>**Evidence:** Barajas Decl., at ¶ 14; COLA 00285 (Exhibit A), at 0:08:14; COLA 00286 (Exhibit D); COLA 00756 (Exhibit C), at 9:36 – 12:11. | 19. **Disputed** to the extent that this suggests Chin posed an immediate or imminent threat of death or serious bodily at any time that would justify the use of deadly force by the deputies. Chin did not pose an immediate or imminent threat of death or serious bodily at any time while the deputies were on scene.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | officer that he or she fears for his or her safety or the safety of others is insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
| --- | --- |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available.<br><br>*Evidence*: Noble Decl. ¶ 17.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14.<br><br>Barajas never heard Chin say anything. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9 |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that based on his training and the totality of the circumstances, he could not shoot Chin as a fleeing felon and could only shoot him if Chin posed an immediate or imminent threat of death or serious bodily injury. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:5-22 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| 19. The Decedent posed a lethal and imminent threat to deputies and civilians, and presented the capability of quickly firing his rifle while he remained standing with his rifle slung around his shoulder. Deputies are permitted to respond to lethal and imminent threats with lethal force, making the actions of the | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Defendant Deputies reasonable. Flosi Decl., at ¶ 22-29. | |
| 20. While the Decedent was still approaching, Deputy Barajas fired two additional shots at the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 15; COLA 00285 (Exhibit A), 0:08:13 – 0:08:15; COLA 00286 (Exhibit D), at 0:05:27 – 0:05:29. | 20.   **Disputed** to the extent that this suggests Barajas fired two additional shots in quick succession.<br><br>Barajas fired her third shot approximately two seconds after her second shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:10-11:45:14; Ex. 11 to Le Decl., Barajas BWC at 11:45:10-11:45:15.<br><br>Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation.<br><br>*Evidence*: Noble Decl. ¶ 22.<br><br>Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation.<br><br>*Evidence*: Noble Decl. ¶ 23. |
| 22. Defendants' Statement of Uncontroverted Material Fact No. 20 merely stated that Deputy Barajas fired two additional shots while the Decedent still approached. | |
| 21. Deputy Barajas recalled firing three-to-four (3-4) shots total at the Decedent, but body-worn camera of the incident details that she fired three shots. | 21.   Undisputed. |

26

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Barajas Decl., at ¶ 15; COLA 00285 (Exhibit A), 0:08:13 – 0:08:15; COLA 00286 (Exhibit D), at 0:05:27 – 0:05:29. | |
| 22. The Decedent still remained standing with his rifle after Deputy Barajas' two additional shots.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:08:13 – 0:08:15;  COLA 00286 (Exhibit D). | 22.    **Disputed** to the extent that this suggests Chin remained standing upright after Barajas's two additional shots and was unaffected by Barajas's two additional shots.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Chin was going to the ground in a slow manner.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| 22. The Decedent was still standing on his two feet after Deputy Barajas' final two shots. COLA 00285 (Exhibit A), at 0:08:13 – 0:08:15;  COLA 00286 | |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| (Exhibit D). | |
| 23. Detective Vazquez then fires the final shot, after which the Decedent is finally immobilized and drops to the ground with his rifle.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., at ¶ 17, 19; COLA 00285 (Exhibit A), at 0:08:16; COLA 00286 (Exhibit D), at 0:05:29. | 23.    **Disputed** that Chin was immobilized only after Vazquez's final shot.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Chin was going to the ground in a slow manner.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 11:45:14-11:45:16. |
| 23. The Decedent was "immobilized" in the sense that he fell to the ground and was no longer moving forward towards deputies and civilians on Diamond Bar Boulevard after Detective Vazquez's final shot. Barajas Decl., at ¶ 16; Vazquez Decl., at ¶ 17, 19; COLA 00285 (Exhibit A), at 0:08:16; COLA 00286 (Exhibit D), at 0:05:29. | |
| 24. Deputy Barajas' use of force was reasonable at all times during the encounter with the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 1-17; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00756 (Exhibit C). | 24.    **Disputed**.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.<br><br>*Evidence*: Noble Decl. ¶ 13;Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.<br><br>Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | down on the ground.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18.<br><br>Barajas never gave Chin a warning that she was prepared to use deadly force if Chin did not comply with her commands before any of her shots.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18.<br><br>Deputy Barajas violated standard police practices and training when she failed to give Mr. Chin a warning that she we prepared to use deadly force despite it being feasible to do so.<br><br>*Evidence*: Noble Decl. ¶ 25.<br><br>Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 20.<br><br>Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |

HURRELL CANTRALL LLP

800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 22.<br><br>Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 22.<br><br>Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation.<br><br>*Evidence*: Noble Decl. ¶ 23.<br><br>Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all.<br><br>*Evidence*: Noble Decl. ¶ 23.<br><br>Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that based on his training and the totality of the circumstances, he could not shoot Chin as a fleeing felon and could only shoot him if Chin posed an immediate or imminent threat of death or serious bodily injury. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:5-22 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4 |
| 24. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | |
| 25. Once the Decedent was immobilized, Deputy Barajas did not discharge her weapon further.<br><br>**Evidence:** Barajas Decl., at ¶ 15-16; Vazquez Decl., ¶ 17; COLA 00285 (Exhibit A), at 0:08:15 – 0:18:57; COLA 00286 (Exhibit D), 0:05:32 – 0:16:14. | 25.   Undisputed. |
| 26. Before responding to Diamond Bar Boulevard, Deputy Barajas received radio calls from dispatch and responding deputies on the L-TAC radio that there was a stabbing victim, the Decedent was armed with an AR-15-style rifle, he had fired multiple rounds, and was wearing a bullet-proof vest. | 26.   Undisputed. |

HURRELL CANTRALL LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:** Barajas Decl., at ¶ 5-6; COLA 00285 (Exhibit A), at 0:1:42; 0:03:08;  0:04:41; COLA 00755 (Exhibit B), at 07:23. | |
| 27. After arriving at the incident location, she observed the Decedent wearing bullet-proof vest and wielding an AR-15 – establishing that the Decedent was a lethal threat and anticipated a violent conflict.<br><br>**Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 13; COLA 00285 (Exhibit A), at 0:07:28 – 0:18:57, COLA 00286 (Exhibit D), at 0:05:14 – 0:05:31. | 27.    **Disputed** that Chin ever posed an immediate threat of death or serious bodily injury or that he ever demonstrated the intent for a violent conflict.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.<br><br>*Evidence*: Noble Decl. ¶ 13;Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.<br><br>Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | harm, but one that, from appearances, must be instantly confronted and addressed.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force.<br><br>*Evidence*: Noble Decl. ¶ 15.<br><br>Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available.<br><br>*Evidence*: Noble Decl. ¶ 17.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9 |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 27. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle. | |
| | |
| The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. | |
| | |
| **Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | |
| 28. In the direct path of the Decedent on Diamond Bar Boulevard were deputies and civilians in vehicles.<br><br>**Evidence:** Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 14; COLA 00285 (Exhibit A), at 0:07:25-0:18:57; COLA 00286 (Exhibit D), at 0:05:14 – 0:16:14. | 28.   **Disputed** to the extent that there was more than one deputy on Diamond Bar Boulevard at the time Barajas first saw and engaged with Chin. |
| 28. By the time Deputy Barajas fired her first shot at the Decedent, other deputy vehicles were located next to her on Diamond Bar Boulevard. COLA 00285 (Exhibit A) 0:08:00 – 0:08:06. | |
| 29. As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that | 29.   Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| he had fired shots from his rifle and was wearing a bullet-proof vest.<br><br>**Evidence:** Vazquez Decl., ¶ 5; COLA 00285 (Exhibit A) – 00286 (Exhibit D), at 0:1:00 – 0:04:55; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50. | |
| 30. After arriving near the intersection of Crooked Creek Drive and Rising Star Drive, Detective Vazquez observed numerous civilians who appeared to be frightened by the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 7; COLA 00752 (Exhibit E), at 6:25-6:36. | 30.    Undisputed. |
| 31. Due to the reports that the suspect was carrying an assault rifle, Detective Vazquez grabbed his shotgun and loaded it with slug ammunition.<br><br>**Evidence:** Vazquez Decl., ¶ 6; COLA 00286 (Exhibit D), at 0:02:53 – 0:03:05. | 31.    Undisputed. |
| 32. While looking for the suspect, Detective Vazquez observed an elderly Asian female with blood on her hands, who later was determined to be Plaintiff Jennie Quan.<br><br>**Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | 32.    Undisputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 33. Plaintiff approached the deputies and asked us them not to harm the suspect.<br><br>**Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), 0:02:12 – 0:02:28. | 33.    Undisputed. |
| 34. Although Detective Vazquez did not know that the elderly Asian female was the Decedent's mother at the time of the initial interaction, he believed she was acquainted with the Decedent because she asked the deputies not to harm him.<br><br>**Evidence:** Vazquez Decl., ¶ 8-9; COLA 00286 (Exhibit D), 0:02:12 – 0:02:28; COLA 00752 (Exhibit E) 08:45 – 09:00. | 34.    Undisputed. |
| 35. The Decedent's willingness to attack someone he knew with deadly force heightened Detective Vazquez's fears that the Decedent was a threat and willing to use deadly force against him, other deputies or civilians.<br><br>**Evidence:** Vazquez Decl., ¶ 10; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00752 (Exhibit E), at 09:02 – 09:25. | 35.    **Disputed** that Vazquez knew that Decedent had attacked someone he knew.<br><br>When Vazquez encountered Plaintiff, Vazquez saw blood on Plaintiff's hands but did not know the source of the blood.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 42:14-43:5<br><br>When Vazquez was talking to Plaintiff, he could not tell whether or not she had been stabbed—he just saw blood.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 59:21-25.<br><br>Vazquez did not ask Plaintiff if she |

Hurrell Cantrall LLP

800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | needed medical attention nor did he call medical attention for her. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 43:9-13. |
| 35. Detective Vazquez concluded that the Decedent and the Plaintiff knew each other because the Plaintiff was asking deputies not to harm the Decedent. Vazquez Decl., ¶¶ 9-10. | |
| 36. Deputy Carlos De La Torre informed Detective Vazquez that the Decedent was approaching Diamond Bar Boulevard. **Evidence:** Vazquez Decl., ¶ 8; COLA 00286 (Exhibit D), at 0:02:21. | 36.    Undisputed. |
| 37. Detective Vazquez observed the Decedent approximately 150-200 feet ahead of him wearing a bullet-proof vest and what appeared to be an AR-15 rifle with an optical lens for improved accuracy. **Evidence:** Vazquez Decl., ¶ 11; COLA 00286 (Exhibit D), at 0:03:00 – 0:03:25; COLA 00752 (Exhibit E), at 10:28 – 11:10. | 37.    Disputed. |
| 38. Detective Vazquez reasonably believed that the Decedent would be capable of accurately striking him, other deputies or civilians from approximately 150 – 200 feet away with an AR-15 equipped with an optical lens. | 38.    **Disputed**. Vazquez only had information that the shots had been fired in the air. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:13-17. Chin had a blank stare on his face. |

| | Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|---|
| 1 2 | | |
| 3 4 5 | **Evidence:** Vazquez Decl., ¶ 11; COLA 00286 (Exhibit D); COLA 00752 (Exhibit E), at 10:28 – 11:10. | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| 6 | | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| 7 8 | | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| 9 10 11 | | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| 12 13 | | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| 14 15 | | Barajas never saw Chin holding the firearm with both hands. |
| 16 17 | | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| 18 19 20 | | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| 21 | | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| 22 23 | | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| 24 25 | | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| 26 27 | | Vazquez never heard Chin say anything at any time. |
| 28 | | *Evidence*: Ex. 1 to Le Decl., Vazquez |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 40:12-14. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15; Ex. 1 to Le Decl., Vazquez Dep. 67:2-4. |
| 38. Detective Vazquez believed he observed an optical lens on the Decedent's AR-15, making a shot from 150-200 feet away reasonably possible. Vazquez Decl., at ¶ 11. | |
| 39. Positioned behind the Decedent, Detective Vazquez began approaching the Decedent with his shotgun.<br><br>**Evidence:** Vazquez Decl., ¶ 12; COLA 00286 (Exhibit D), at 0:03:15 – 0:05:35. | 39.    Undisputed. |
| 40. Detective Vazquez yelled repeated commands for the Decedent to drop his weapon, which the Decedent ignored.<br><br>**Evidence:** Vazquez Decl., ¶ 12; COLA 00286 (Exhibit D), at 0:03:15 – 0:05:35. | 40.    Undisputed. |
| 41. The Decedent then continued approaching the deputies positioned in front of him on Diamond Bar Boulevard with his rifle in the low- | 41.    **Disputed** that Chin ever held the rifle in low-ready position.<br><br>When Barajas first saw Chin, she |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| ready position on his right side.<br><br>**Evidence:** Barajas Decl., at ¶ 7-16; Vazquez Decl., ¶ 12.; COLA 00285 (Exhibit A), 0:08:13 – 0:08:17; COLA 00286 (Exhibit D), at 0:05:00 – 0:05:32 | observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14.<br><br>Barajas never saw Chin holding the firearm with both hands.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| 41. The Decedent's rifle was held in a low-ready tactical position while walking northbound on Diamond Bar Boulevard. Vazquez Decl., at ¶ 12;COLA 00285 (Exhibit A), 0:08:13 – 0:08:17; COLA 00286 (Exhibit D), at 0:05:00 – 0:05:32. | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 42. To prevent against the threat that the Decedent could turn around and shoot at the deputies positioned where Detective Vazquez was located, Deputy Vazquez asked Detective Christopher Bronowicki to use his vehicle as cover as the deputies approached the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA 00286 (Exhibit D), at 0:03:30 – 0:05:03. | 42.    Undisputed. |
| 43. Detective Vazquez urgently pursued the Decedent towards Diamond Bar Boulevard with fears that the Decedent could open-fire on deputies and civilians at any point.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA 00286 (Exhibit D), at 0:03:30 – 0:05:03; COLA 00752 (Exhibit E), at 14:30 – 16:01. | 43.    **Disputed** to the extent that Vazquez's fears were reasonable.<br><br>Vazquez only had information that the shots had been fired in the air.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 41:13-17.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6.<br><br>At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Barajas Dep. 38:7-9. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15; Ex. 1 to Le Decl., Vazquez Dep. 67:2-4. |
| 43. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | |
| 44. The Decedent's bullet-proof vest and AR-15 signaled to Detective Vazquez that he was ready for a violent conflict, which heightened Deputy Vazquez's fears because he understood Diamond Bar Boulevard to constitute a heavily trafficked roadway where significant civilian presence is likely.<br><br>**Evidence:** Vazquez Decl., ¶ 13; COLA 00285 (Exhibit A) – 00286 (Exhibit D); COLA 00752 (Exhibit E), at 14:30 – 16:01. | 44.  __Disputed__ that the objective facts support the conclusion that Chin was intent on a violent conflict.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>Chin had a blank stare on his face.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |

44. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent. As Detective Vazquez proceeded to

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | |
| 45. Detective Vazquez continued to give commands to the Decedent to drop his weapon while pursuing him from behind from Crooked Creek Drive to Diamond Bar Boulevard, but the commands were ignored.<br><br>**Evidence:** Vazquez Decl., ¶ 14; COLA 00286 (Exhibit D), at 0:02:30 – 0:05:03. | 45.    Undisputed. |
| 46. As Detective Vazquez turned the corner of Crooked Creek Drive and approached Diamond Bar Boulevard, he observed civilian and deputy vehicles directly in front of the Decedent's path.<br><br>**Evidence:** Vazquez Decl., ¶ 15; COLA 00286 (Exhibit D), at 0:05:14. | 46.    Undisputed. |
| 47. There was the risk of crossfire from | 47.    **Disputed** to the extent that |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| his position due to the civilian and deputy vehicles directly in front of the Decedent, so Detective Vazquez repositioned himself towards the Decedent's left-flank without any cover.<br><br>**Evidence:** Vazquez Decl., ¶ 15; COLA 00286 (Exhibit D), at 0:05:00 – 0:05:25; COLA 00752 (Exhibit E), at 14:30 – 16:01. | Vazquez was forced to leave cover in order to avoid crossfire.<br><br>Detective Vazquez could have asked Deputy Bronowicki to move his patrol vehicle to position itself alongside the sidewalk of Diamond Bar Boulevard so that Detective Vazquez could flank Mr. Chin's left side and avoid crossfire all the while maintaining cover<br><br>*Evidence*: Noble Decl. ¶ 19.<br><br>Detective Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19. |
| 47. The position of the vehicle Detective Vazquez used as cover while moving from Crooked Crook Drive to Diamond Bar Boulevard presented a risk of crossfire from the deputies located in front of the Decedent on Diamond Bar Boulevard. Detective Vazquez flanked the Decedent to avoid the risk of cross-fire. Vazquez Decl., ¶ 15; COLA 00286 (Exhibit D), at 0:05:00 – 0:05:25; COLA 00752 (Exhibit E), at 14:30 – 16:01. | |
| 48. As he was flanking the Decedent, Detective Vazquez heard one gunshot from an unknown source.<br><br>**Evidence:** Vazquez Decl., ¶15; COLA | 48.    **Disputed** that Vazquez could not tell the gunshot was coming from a deputy.<br><br>Vazquez observed that Chin was wearing |

HURRELL CANTRALL LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

51

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 00286 (Exhibit D), at 0:05:20; COLA 00752 (Exhibit E), at 18:50 – 19:00. | a vest and had a rifle slung over his right side. |
| | *Evidence*: Vazquez 24:23-25:1. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |

48. Detective Vazquez did not know the source of the first shot. Vazquez Decl.,

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| at ¶ 15. | |
| 49. Detective Vazquez observed that the Decedent had been impacted because he momentarily stopped, but the Decedent then continued forward.<br><br>**Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), at 0:05:20- 0:05:22. | 49.    Undisputed. |
| 50. Detective Vazquez then perceived the Decedent's elbow raise as if to reach for his rifle, position the barrel forward, and begin firing.<br><br>**Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), at 0:05:22; COLA 00752 (Exhibit E), at 19:30 – 20:00. | 50.    **Disputed**.<br><br>Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard.<br><br>Evidence: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot.<br><br>Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Detective Vazquez's belief that Mr. Chin raised his elbow only after Deputy Barajas's first shot shows a gross lack of situational awareness. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | A reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. *Evidence*: Noble Decl. ¶ 21. |
| 50. The Decedent's right elbow was raised, indicating to Detective Vazquez that the Decedent was holding the pistol grip of the rifle. Vazquez Decl., at ¶ 16. | |
| 51. The Decedent was approximately 10-15 feet from the civilian and deputy vehicles in front of him at this point. **Evidence:** Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), 0:05:25. | 51. **Disputed**. Chin was approximately 20 to 25 feet from Barajas's patrol vehicle when she fired her first shot. *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:04-11:45:06. After Barajas's first shot, Chin took four small, slow steps forward before Vazquez's first shot, followed immediately by Barajas's second shot. *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:12. Chin fell to the ground approximately 15 to 20 feet from Barajas's vehicle. *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30; Ex. 11 to Le Decl., Barajas BWC at 11:47:06-11:47:08. |
| 51. Detective Vazquez estimated the Decedent to be approximately 10-15 feet from civilian and deputy vehicles on Diamond Bar Boulevard. Deputy Barajas estimated the Decedent to be 7-10 feet from her vehicle when she fired her first shot. Vazquez Decl., ¶ 16; COLA 00286 (Exhibit D), 0:05:25; Barajas Decl., at ¶ 10; COLA 00285 (Exhibit A), at 0:07:48 – 0:08:07; COLA 00756 (Exhibit C), at | |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 12:28. | |
| 52. Fearing that the Decedent was going to shoot at deputies and civilians, Detective Vazquez fired one round from his shotgun at the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., ¶13; COLA 00285 (Exhibit A), at 0:08:12; COLA 00286 (Exhibit D), at 0:05:26. | 52.    **Disputed** to the extent that there are any objective facts that showed Chin posed an immediate threat of death or serious bodily injury to anyone to justify the use of deadly force. Chin did not pose an immediate threat of death or serious bodily injury at any time the deputies were on scene.<br><br>Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot.<br><br>Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10.<br><br>At the time of Vazquez's first shot, Chin was facing northbound. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | When Barajas first saw Chin, she |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | observed a firearm in a slung manner on Chin's right side.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22

Barajas observed that the barrel of the gun on Chin was pointed down.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.

At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.

The gun was within reach of Chin but Barajas never saw Chin touch the gun.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14.

At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6

At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Barajas Dep. 38:7-9. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 19.

Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.

*Evidence*: Noble Decl. ¶ 12.

Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.

*Evidence*: Noble Decl. ¶ 13.

Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.

*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.

Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force.<br><br>*Evidence*: Noble Decl. ¶ 15.<br><br>Officers are trained that an overreaction in using force is excessive force.<br><br>*Evidence*: Noble Decl. ¶<br><br>Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available.<br><br>*Evidence*: Noble Decl. ¶ 17.<br><br>Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Noble Decl. ¶ 21. Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. *Evidence*: Noble Decl. ¶ 25. Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. *Evidence*: Noble Decl. ¶ 25. |

52. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.

The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | |
| 53.The round struck the Decedent's bullet-proof vest and appeared to have no effect on the Decedent.<br><br>**Evidence:** Barajas Decl., at ¶ 12-14; Vazquez Decl., ¶ 16; COLA 00285 (Exhibit A), at 0:08:12; COLA 00286 (Exhibit D), at 0:05:26. | 53.    Undisputed to the extent that this refers to Vazquez's first round. |
| 54. Without cover and believing that the Decedent would turn towards Detective Vazquez to shoot him, Detective Vazquez fired a second shotgun round at the Decedent.<br><br>**Evidence:** Vazquez Decl., ¶ 17; COLA 00286 (Exhibit D), at 0:05:30; COLA 00752 (Exhibit E), at 20:50 – 21:50. | 54.    **Disputed**.<br><br>Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot.<br><br>At the time of Vazquez's first shot, Chin was facing northbound. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.

When Vazquez fired his first shot, he was aiming at the left side of Chin's torso.

*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15.

Vazquez was able to see Chin's back at the time of Vazquez's first shot.

*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.

At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction

*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.

Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot.

When Barajas first saw Chin, she observed a firearm in a slung manner on |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Chin's right side. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22 |
| | Barajas observed that the barrel of the gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6 |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11- |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Vazquez claims that he fired his first shot within a second after Barajas's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 23:12-14. |
| | Vazquez claims the barrel of the gun on Chin was coming up in a northern direction towards Diamond Bar Boulevard at the time he fired his first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 36:4-24 |
| | Vazquez claims that immediately after Vazquez's first shot, Chin began to rotate his body in Vazquez's direction. |
| | *Evidence:* Ex. 1 to Le Decl., Vazquez Dep. 19:1-3, 23:2-18. |
| | Vazquez claims he fired his second shot almost consecutively or immediately after his first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 23:15-18. |
| | Vazquez claims that at the time he fired his second shot, Chin had turned and was facing west, in the direction towards Vazquez. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:18-22, 20:6-15. |
| | Vazquez claims the barrel of Chin's gun continued to come up while Chin rotated towards Vazquez with the gun grip in his |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | hand at the time Vazquez fired his second shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 36:25-37:4 |
| | Vazquez claims he was aiming at the front of Chin's body at the time of his second shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:23-15 |
| | Vazquez claims that when Chin began to rotate towards Vazquez, his left hand also went towards the rifle. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 37:12-15 |
| | Vazquez claims after his second shot, Chin continued his rotation towards Vazquez with the rifle up and then fell onto his left side, facing westbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 38:7-39:3. |
| | At 11:45:14 on Vazquez's bodyworn camera video, Chin is slightly bent over and facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 73:21-74:4; Ex. 7 to Le Decl., Vazquez. Dep. Ex. 5; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6. |
| | At 11:45:13 on Barajas's bodyworn camera video, a couple of shots have already gone off and Chin is facing north. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 78:13-79:5. |
| | At 11:45:15 on Barajas's bodyworn camera, Chin is somewhat bent or canted forward and he is still facing north. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 79:20-80:5; Ex. 12 to Le Decl., Barajas Dep. Ex. 13. |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.<br><br>*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.<br><br>Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force.

*Evidence*: Noble Decl. ¶ 15.

Officers are trained that an overreaction in using force is excessive force.

*Evidence*: Noble Decl. ¶ 15.

Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available.

*Evidence*: Noble Decl. ¶ 17.

Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos).

*Evidence*: Noble Decl. ¶ 24.

Police officers are trained that they should give a warning that they are |

HURRELL CANTRALL LLP

800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | prepared to use deadly force, when feasible.

*Evidence*: Noble Decl. 25.

Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so.

*Evidence*: Noble Decl. ¶ 25.

The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting.

*Evidence*: Noble Decl. ¶ 26.

The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.

*Evidence*: Noble Decl. ¶ 26. |
| 54. The Decedent remained standing before Detective Vazquez fired his second shot – the fifth and final shot between himself and Deputy Barajas. Believing that the Decedent may turn towards him and shoot him was objectively reasonable.

Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent. As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8, 16-17; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | |
| 55. The Decedent fell to the ground after Detective Vazquez fired his second shot.<br><br>**Evidence:** Barajas Decl., at ¶ 16; Vazquez Decl., ¶ 14; COLA 00285 (Exhibit A), at 0:08:18; COLA 00286 (Exhibit D), at 0:05:32. | 55.    Undisputed. |
| 56. The Decedent dropped his rifle when he fell to the ground after Detective Vazquez's second shot.<br><br>**Evidence:** Barajas Decl., at ¶ 17; Vazquez Decl., ¶ 15; COLA 00285 (Exhibit A), at 0:10:13; COLA 00286 | 56.    **Disputed** to the extent that this suggests Chin was ever touching or holding the rifle prior to falling to the ground.<br><br>Vazquez observed that Chin was wearing a vest and had a rifle slung over his right |

Hurrell Cantrall LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| (Exhibit D), at 0:05:34 | side. *Evidence*: Vazquez 24:23-25:1. Barajas observed a firearm in a slung manner on Chin's right side. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22. The gun was within reach of Chin but Barajas never saw Chin touch the gun. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. Barajas never saw Chin holding the firearm with both hands. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| 56. Detective Vazquez observed the Decedent's right elbow bent at an angle behind his back, indicating that the Decedent had his hand on the pistol grip of the rifle. Vazquez Decl., at ¶ 16. | |
| 57. With the AR-15 still within the Decedent's reach, a plan was developed to safely and securely approach the Decedent so that medical care could be rendered from approximately 11:45:15 to 11:47:07.  **Evidence:** Barajas Decl., at ¶ 17-18; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at COLA 00286 (Exhibit D), at 0:06:00 – 0:07:30. | 57.    Undisputed. |
| 58. Deputies cautiously approached the Decedent, handcuffed him and | 58.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| began rendering aid after he fell to the ground.<br><br>**Evidence:** Barajas Decl., at ¶ 18-20; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at 010:42 – 0:18:57; COLA 00286 (Exhibit D), at 0:0:25 – 0:16:14. | |
| 59. Deputy Vazquez's use of force was reasonable based on the totality of circumstances.<br><br>**Evidence:** Barajas Decl., at ¶ 5-20; Vazquez Decl., ¶ 5-20; COLA 00285 (Exhibit A) – 00286 (Exhibit D). | 59.  **Disputed**.<br><br>Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot.<br><br>Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10.<br><br>At the time of Vazquez's first shot, Chin was facing northbound. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | When Barajas first saw Chin, she |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | observed a firearm in a slung manner on Chin's right side.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22

Barajas observed that the barrel of the gun on Chin was pointed down.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.

At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.

The gun was within reach of Chin but Barajas never saw Chin touch the gun.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14.

At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6

At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Barajas Dep. 38:7-9. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. *Evidence*: Noble Decl. ¶ 19. Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. *Evidence*: Noble Decl. ¶ 12. Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. *Evidence*: Noble Decl. ¶ 13. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available.

*Evidence*: Noble Decl. ¶ 17.

Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 21.

Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |
| 59. Detective Vazquez's use of force was objectively reasonable. | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28. | |
| 60. The final shot by Detective Vazquez is discharged at approximately 11:45:15 on body-worn camera footage.<br><br>**Evidence:** COLA 00285 (Exhibit A) 0:08:17; COLA 00286 (Exhibit D), at 0:05:30. | 60.  **Disputed** to the extent that this suggests that final shot by Vazquez was discharged at approximately 11:45:15 on all bodyworn camera videos.<br><br>Vazquez's final shot occurred at approximately 11:45:14 on Vazquez's bodyworn camera video.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot. |
| 60. | |
| 61. The Defendant Deputies were unable to determine the extent of the Decedent's injuries due to his bullet-proof vest, preventing the deputies from assessing that the Decedent was no longer a threat.<br><br>**Evidence:** Barajas Decl., at ¶ 18; Vazquez Decl., at ¶19. | 61.    **Disputed** to the extent that the bulletproof vest prevented the deputies from determining that Chin was no longer a threat.<br><br>After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30.<br><br>Vazquez got the impression that his second shot struck Chin.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:19-41:1.<br><br>The rifle was on the ground in the area of Chin's head/shoulder area and Chin hands were not on the rifle.<br><br>*Evidence*: Ex. 13 to Le Decl., Toves Dep. 34:18-35:22. |
| 61. The bullet-proof vest prevented the Defendant Deputies from confirming whether their shots struck the Decedent, where the shots struck, and the extent of the Decedent's injuries. Barajas Decl., at ¶¶ 12, 14; COLA 00285 (Exhibit A), at 0:08:07 – 0:08:20; COLA 00286 (Exhibit D). | |
| 62. At approximately 11:47:17 – 11:47:39, after making a determination that the Decedent is | 62.    **Disputed** to the extent that this suggests that officers could not initially determine whether Chin was still a threat |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| no longer a threat, the deputies approach the Decedent and place him in handcuffs.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:10:19 – 0:10:41; COLA 00286 (Exhibit D), at 0:07:33 – 0:07:55. | after he fell to the ground.<br><br>Barajas was aiming towards Chin's waistline when she fired her first shot because she was trying to aim at a part that was not covered by the vest he was wearing.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 26:15-27:12.<br><br>Vazquez observed Chin flinch by bending forward slightly before coming back up at the time of the first shot.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 22:4-21.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | BWC at 11:45:14-11:45:30. <br><br> Vazquez got the impression that his second shot struck Chin. <br><br> *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:19-41:1. <br><br> The rifle was on the ground in the area of Chin's head/shoulder area and Chin hands were not on the rifle. <br><br> *Evidence*: Ex. 13 to Le Decl., Toves Dep. 34:18-35:22. |
| 62. The Decedent's rifle was within his wingspan after he fell to the ground. His ability to grab the rifle and shoot at the deputies was an objectively reasonable risk that required the deputies to take precautions before approaching the Decedent. COLA 00285 (Exhibit A), at 0:10:19 – 0:10:41; COLA 00286 (Exhibit D), at 0:07:33 – 0:07:55. | |
| 63. From approximately 11:47:41 – 11:48:30, the Decedent's bullet-proof vest is un-Velcroed, his person is searched, and the deputies release him from his handcuffs. <br><br> **Evidence:** COLA 00285 (Exhibit A), at 0:10:42 – 0:11:31; COLA 00286 (Exhibit D), at 0:07:57 – 0:08:46. | 63.    Undisputed. |
| 64. Deputies removed the Decedent's vest and cleaned blood from his body. <br><br> **Evidence:** COLA 00285 (Exhibit A), at 0:11:24 – 0:18:57; COLA 00286 (Exhibit D), at 0:08:30 – 0:16:14. | 64.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 65. At approximately 11:49:40, paramedics from the fire department begin assisting with the Decedent's aid.<br><br>**Evidence:** COLA 00285 (Exhibit A), at 0:12:42; COLA 00286 (Exhibit D), at 0:09:55. | 65.    Undisputed. |
| 66. At approximately 11:57:40, the Decedent is taken from the scene on a gurney and placed in an ambulance.<br><br>**Evidence:** COLA 00289 (Exhibit F), at 0:15:28. | 66.    Undisputed. |
| 67. The Defendant Deputies fulfilled their duty of summoning prompt medical care as soon as reasonably possible.<br><br>**Evidence:** Barajas Decl., at ¶ 17-20; Vazquez Decl., ¶ 19-20; COLA 00285 (Exhibit A), at 0:11:25 COLA 00286 (Exhibit D), at 0:07:33 – 0:16:14; COLA 00289 (Exhibit F), at 0:06:00 – 0:20:28. | 67.    Undisputed. |
| 68. LASD deputies had a legitimate law enforcement purpose and reasonable suspicion to contact and detain the Decedent.<br><br>**Evidence:** Declaration of Ed Flosi "Flosi Decl." ¶11-12 | 68.    Undisputed. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 69. The deputies' actions were consistent with current law enforcement training and practices the appropriate level of force was used.<br><br>**Evidence:**<br>Flosi Decl. ¶ 11-12 | 69. **Disputed**.<br><br>Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away.<br><br>*Evidence*: Noble Decl. ¶ 16.<br><br>Vazquez conceded that he could not shoot Chin for simply walking away.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4<br><br>Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4.<br><br>Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | without cover was a factor in his decision to shoot at Mr. Chin. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
| --- | --- |
| | must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |

69. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent. As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat. **Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl.  ¶11-12. | |
| 70. LASD deputies had a legitimate law enforcement purpose and probable cause to arrest decedent. **Evidence:** Flosi Decl. ¶ 13-14 | 70.    Undisputed. |
| 71. A reasonable officer could have an honest and strong belief that Decedent's actions were in violation of California Penal Code § 148(a)(1). **Evidence:** Flosi Decl.  ¶11-15, | 71.    **Disputed**. |
| 72. The deadly force response by Defendants Barajas and Vasquez was appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death. | 72.    **Disputed**. When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side. *Evidence*: Ex. 10 to Le Decl., Barajas |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| **Evidence:**Flosi Decl.  ¶21-29. | Dep. 36:20-22 Barajas observed that the barrel of the gun on Chin was pointed down. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. Chin had a blank stare on his face. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. The gun was within reach of Chin but Barajas never saw Chin touch the gun. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. Barajas never heard Chin say anything. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. Barajas never saw Chin holding the firearm with both hands. *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot.<br><br>Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10.<br><br>At the time of Vazquez's first shot, Chin was facing northbound.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.<br><br>When Vazquez fired his first shot, he was aiming at the left side of Chin's torso.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15.<br><br>Vazquez was able to see Chin's back at the time of Vazquez's first shot.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4.<br><br>Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious |

HURRELL CANTRALL LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | bodily injury to the peace officer or another person. |
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

104

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained |

Hurrell Cantrall LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 72. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent. As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl.  ¶21-29. | |
| 73. The actions of decedent created a life-threatening situation and forced the deputies to react quickly and decisively.<br><br>**Evidence:**<br>Flosi Decl.  ¶27. | 73.    **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

Hurrell Cantrall LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.

Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot.

Vazquez never heard Chin say anything at any time.

*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14.

Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.

Barajas observed Chin's posture bend slightly forward and he was no longer upright.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45- |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

114

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. *Evidence*: Noble Decl. ¶ 19. Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. *Evidence*: Noble Decl. ¶ 12. Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. *Evidence*: Noble Decl. ¶ 13. Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 20.

Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 22.

Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 23.

Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |
| 73. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof | |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle. | |

The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.

**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl. ¶27.

| 74. Deadly force responses by the deputies were appropriate and reasonable to prevent a perceived credible threat of injury created by the Decedent's actions and behaviors.<br><br>**Evidence:**<br>Flosi Decl. ¶ 21-29. | 74.  **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | firearm at anyone.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6.

Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation.

*Evidence*: Noble Decl. ¶ 22.

Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation.

*Evidence*: Noble Decl. ¶ 23.

The gun on Chin was pointed down when Barajas fired additional shots.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8.

Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.<br><br>Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot.<br><br>Vazquez never heard Chin say anything at any time.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45- |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. |
| | *Evidence*: Noble Decl. ¶ 19. |
| | Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. |
| | *Evidence*: Noble Decl. ¶ 12. |
| | Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |
| 74. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl.  ¶21-29. | |
| 75.The deadly force responses by Deputy Vasquez and Deputy Barajas were appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to them at the moments non-deadly force was used.<br><br>**Evidence:**<br>Flosi Decl.  ¶ 21-29. | 75.    **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

135

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.<br><br>Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot.<br><br>Vazquez never heard Chin say anything at any time.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14.<br><br>Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.<br><br>Barajas observed Chin's posture bend slightly forward and he was no longer upright.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45- |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 17.<br><br>Chin was going to the ground in a slow manner.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17.<br><br>Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16.<br><br>Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot.<br><br>Vazquez fired his second shot approximately five seconds after he fired his first shot.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.<br><br>*Evidence*: Noble Decl. ¶ 19.<br><br>Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.<br><br>*Evidence*: Noble Decl. ¶ 12.<br><br>Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.

Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed.

*Evidence*: Noble Decl. ¶ 13.

Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force.

*Evidence*: Noble Decl. ¶ 15.

Officers are trained that an overreaction in using force is excessive force.

*Evidence*: Noble Decl. ¶ 15.

Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available.

*Evidence*: Noble Decl. ¶ 17.

Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been |

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. *Evidence*: Noble Decl. ¶ 21. Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). *Evidence*: Noble Decl. ¶ 24. Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. *Evidence*: Noble Decl. ¶ 25. Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |
| 75. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl.  ¶21-29. | |
| 76. Officers are trained that for an investigative stop of detention to be valid, there must be reasonable suspicion that: (1) criminal activity may be afoot and (2) the person about to be detained is connected with that possible criminal activity.<br><br>**Evidence:**<br>Flosi Decl. ¶ 12**.** | 76.    Undisputed. |
| 77. Under the totality of the circumstances, a reasonable officer | 77.    **Disputed** to the extent that it was a reasonable officer would conclude that |

Hurrell Cantrall LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| could conclude that the subject described in the call for service was involved or preparing to become involved in criminal activity hence LASD deputies had a legitimate law enforcement purpose and reasonable suspicion to contact and detain Decedent.<br><br>**Evidence:**<br>Flosi Decl. ¶ 13. | the subject was preparing to become involved in criminal activity.<br><br>Vazquez observed that Chin was wearing a vest and had a rifle slung over his right side.<br><br>*Evidence*: Vazquez 24:23-25:1.<br><br>Barajas observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22.<br><br>At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6.<br><br>At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas |

HURRELL CANTRALL LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |

77. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.

The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.

**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50;

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl. ¶13. | |
| 78. The deputies' actions were consistent with current law enforcement training and practices.<br><br>**Evidence:**<br>Flosi Decl. ¶ ¶ 11, 14, 16, 22, and 30. | 78.    **Disputed**.<br><br>Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away.<br><br>*Evidence*: Noble Decl. ¶ 16.<br><br>Vazquez conceded that he could not shoot Chin for simply walking away.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4<br><br>Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further.<br><br>*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4.<br><br>Vazquez violated standard police practices and training when he left available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| | force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.

*Evidence*: Noble Decl. ¶ 19.

Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.

*Evidence*: Noble Decl. ¶ 12.

Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.

*Evidence*: Noble Decl. ¶ 13.

Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person.

*Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22.

Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed.<br><br>*Evidence*: Noble Decl. ¶ 13.<br><br>Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force.<br><br>*Evidence*: Noble Decl. ¶ 15.<br><br>Officers are trained that an overreaction in using force is excessive force.<br><br>*Evidence*: Noble Decl. ¶ 15.<br><br>Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available.<br><br>*Evidence*: Noble Decl. ¶ 17.<br><br>Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get down on the ground. |
| | *Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18. |
| | Vazquez never gave Chin any commands |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | to stop walking or to get on the ground. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19. |
| | Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting. |
| | *Evidence*: Noble Decl. ¶ 26. |
| | The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance. |
| | *Evidence*: Noble Decl. ¶ 26. |

78. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| **Moving Party's Uncontroverted Material Facts and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl.  ¶11, 14, 16, 22, 30. | |
| 79. There is no independent and objective evidence to support a claim that the Defendant Deputies denied the Decedent medical care.<br><br>**Evidence:**<br>Flosi Decl.  ¶¶9(h), 31 -34. | 79.    Undisputed. |
| 80. A review of the material and video evidence reveals that the last shot was fired at approximately 11:45:15.<br><br>**Evidence:**<br>Flosi Decl.  ¶33: | 80.    **Disputed** to the extent that this suggests that final shot by Vazquez was discharged at approximately 11:45:15 on all bodyworn camera videos.<br><br>Vazquez's final shot occurred at approximately 11:45:14 on Vazquez's bodyworn camera video.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot. |
| 81. The approach to the Decedent began at approximately 11:47:07.<br><br>**Evidence:**<br><br>Flosi Decl. ¶33. | 81.    Undisputed. |
| 82. LASD deputies make contact with the Decedent to render aid at approximately 11:47:17.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 82.    Undisputed. |
| 83. The Decedent was handcuffed at approximately 11:47:40.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 83.    Undisputed. |
| 84. A deputy confirmed that the fire department personnel was responding at 11:47.58.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 84.    Undisputed. |
| 85. LASD deputies start rendering medical aid at approximately 11:48:16.<br>**Evidence:**<br>Flosi Decl. ¶33. | 85.    Undisputed. |
| 86. The fire department personnel are on scene at approximately 11:48.42.<br><br>**Evidence:**<br>Flosi Decl. ¶33. | 86.    Undisputed. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 87. After being shot, the Decedent fell next to the rifle that he was wielding.<br><br>**Evidence:**<br>Flosi Decl. ¶34. | 87. **Disputed** that Chin ever "wielded" the rifle while the deputies were on scene.<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2.<br><br>At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15.<br><br>The gun was within reach of Chin but Barajas never saw Chin touch the gun.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14.<br><br>Barajas never saw Chin holding the firearm with both hands.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13.<br><br>At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9.<br><br>At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| 87. The rifle was slung around the Decedent's right shoulder and the angle of the Decedent's arm indicated to Detective Vazquez that the Decedent's arm was on the pistol grip of the rifle. Barajas Decl., at ¶ 7; Vazquez Decl., ¶ 12, 16; COLA 00285 (Exhibit A), at 0:07:25-0:08:12; COLA 00286 (Exhibit D). | |
| 88. There was a legitimate tactical need to get a shield and contact team formed with non-deadly and deadly force options prior to moving to whether the Decedent fell.<br><br>**Evidence:**<br>Flosi Decl. ¶34. | 88.    Undisputed. |
| 89. It is also noted that there was information that the Decedent had stabbed another person and the edged weapon was unaccounted for.<br><br>**Evidence:**<br>Flosi Decl. ¶34. | 89.    Undisputed. |
| 90. It is demonstrably false that LASD deputies denied the Decedent of medical care.<br><br>**Evidence:**<br>Flosi Decl. ¶31-34. | 90.    Undisputed. |
| 91. The deadly force responses by the deputies were appropriate and reasonable to prevent a perceived credible threat of injury created by Decedent's actions and behaviors.<br><br>**Evidence:**<br>Flosi Decl. ¶31-34. | 91.    **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | gun on Chin was pointed down. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10.

Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot.

Vazquez never heard Chin say anything at any time.

*Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14.

Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1.

Barajas observed Chin's posture bend slightly forward and he was no longer upright.

*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45- |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 17. |
| | Chin was going to the ground in a slow manner. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. |
| | Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. |
| | Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. |
| | Vazquez fired his second shot approximately five seconds after he fired his first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

161

| | Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|---|
| 3 | | BWC at 11:45:09-11:45:16 |
| 4 | | |
| 5 | | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| 6 | | |
| 7 | | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| 8 | | |
| 9 | | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | *Evidence*: Noble Decl. ¶ 16. |
| 15 | | Vazquez conceded that he could not shoot Chin for simply walking away. |
| 16 | | |
| 17 | | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| 18 | | |
| 19 | | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| 26 | | |
| 27 | | Vazquez violated standard police practices and training when he left |
| 28 | | |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin.

*Evidence*: Noble Decl. ¶ 19.

Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient.

*Evidence*: Noble Decl. ¶ 12.

Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent.

*Evidence*: Noble Decl. ¶ 13.

Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all.

*Evidence*: Noble Decl. ¶ 21.

Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos).

*Evidence*: Noble Decl. ¶ 24.

Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible.

*Evidence*: Noble Decl. ¶ 25.

Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | down on the ground.

*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18.

Vazquez never gave Chin any commands to stop walking or to get on the ground.

*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19.

Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so.

*Evidence*: Noble Decl. ¶ 25.

The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting.

*Evidence*: Noble Decl. ¶ 26.

The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.

*Evidence*: Noble Decl. ¶ 26. |
| 91. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof | |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| vest, later determined to be the Decedent.  As Detective Vazquez proceeded to the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl.  ¶21-29. | |
| 92. The deadly force responses by Vasquez and Barajas were appropriate and consistent with current law enforcement training standards in consideration of the "totality of circumstances" presented to them at the moments non-deadly force was used.<br><br>**Evidence:**<br>Flosi Decl.  ¶30. | 92.  **Disputed**.<br><br>When Barajas first saw Chin, she observed a firearm in a slung manner on Chin's right side.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:20-22<br><br>Barajas observed that the barrel of the gun on Chin was pointed down.<br><br>*Evidence*: Ex. 10 to Le Decl., Barajas |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. 36:23-37:2. |
| | Chin had a blank stare on his face. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:6-8. |
| | At all times while Barajas and Vazquez were on scene, Chin never manipulated the firearm. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 36:13-15. |
| | The gun was within reach of Chin but Barajas never saw Chin touch the gun. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 59:9-14. |
| | Barajas never heard Chin say anything. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 35:24-36:1. |
| | Barajas never saw Chin holding the firearm with both hands. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:10-13. |
| | At all times while Barajas and Vazquez were on scene, Chin never raised the firearm towards anyone. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:57-11:45:16; Ex. 10 to Le Decl., Barajas Dep. 38:7-9. |
| | At all times while Barajas and Vazquez were on scene, Chin never pointed the |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | firearm at anyone. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 38:2-6. |
| | Deputy Barajas fired her second shot approximately seven seconds after her first shot, which is sufficient time for Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas fired her third shot approximately two seconds after her second shot, which is sufficient time to allow Deputy Barajas to reevaluate the situation. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | The gun on Chin was pointed down when Barajas fired additional shots. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 37:6-8. |
| | Chin's right arm was positioned at an angle with his upper arm angling towards his back, his elbow behind his back, and his forearm angling toward his front the entire time he was walking down Diamond Bar Boulevard. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:10; Ex 3 to Le Decl., Vazquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vazquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vazquez |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | Dep. Ex. 3 Screenshot; Ex. 6 to Le Decl., Vazquez Dep. Ex. 4 Screenshot. |
| | Approximately six seconds after Barajas' first shot, Vazquez discharged his shotgun at Chin. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:03-11:45:11; Ex. 11 to Le Decl., Barajas BWC at 11:45:04-11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 32:4-7; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | When Vazquez fired his first shot, he was aiming at the left side of Chin's torso. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 18:10-15. |
| | Vazquez was able to see Chin's back at the time of Vazquez's first shot. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:19-21; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | At the time of Vazquez's first shot, Chin was facing northbound and Vazquez was firing in a slightly northeast direction |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 19:4-13; Ex. 2 to Le Decl., Vazquez BWC at 11:45:10. |
| | Chin's right arm did not change positions from when he started walking northbound on Diamond Bar Boulevard to the time of Vazquez's first shot. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:44:49-11:45:11; Ex. 3 to Le Decl., Vasquez Dep. Ex. 1 Screenshot; Ex. 4 to Le Decl., Vasquez Dep. Ex. 2 Screenshot; Ex. 5 to Le Decl., Vasquez Dep. Ex. 3 Screenshot Dep.; Ex. 6 to Le Decl., Vasquez Dep. Ex. 4 Screenshot. |
| | Vazquez never heard Chin say anything at any time. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 40:12-14. |
| | Barajas saw Chin react to the gunshots in between Barajas' shots and Deputy Vazquez's shot. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 31:14-32:1. |
| | Barajas observed Chin's posture bend slightly forward and he was no longer upright. |
| | *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:2-9; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45- |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | 17. <br><br> Chin was going to the ground in a slow manner. <br><br> *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 40:22-24; Ex. 2 to Le Decl., Vazquez BWC at 11:45:11-11:45:15; Ex. 11 to Le Decl., Barajas BWC at 11:45:11-11:45-17. <br><br> Barajas recalls observing shot(s) fired after Chin's posture bent slightly forward. <br><br> *Evidence*: Ex. 10 to Le Decl., Barajas Dep. 32:10-17; Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:16; Ex. 11 to Le Decl., Barajas BWC at 11:45:14-11:45:16. <br><br> Chin was facing northbound and was not rotating towards Vazquez at the time of Vazquez's second shot. <br><br> *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:13-11:45:16; Ex. 7 to LE Decl., Vazquez Dep. Ex. 5 Screenshot; Ex. 8 to Le Decl., Vazquez Dep. Ex. 6 Screenshot; Ex. 9 to Le Decl., Vazquez Dep. Ex. 7 Screenshot; Ex. 11 to Le Decl., Barajas BWC at 11:45:13-11:45:17; Ex. 12 to Le Decl., Barajas Dep. Ex. 13 Screenshot. <br><br> Vazquez fired his second shot approximately five seconds after he fired his first shot. <br><br> *Evidence*: Ex. 2 to Le Decl., Vazquez |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | BWC at 11:45:09-11:45:16 |
| | After Vazquez's second shot, Chin fell onto his back, with his face looking upwards towards the sky. |
| | *Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:45:14-11:45:30. |
| | Under the facts of this case, deadly force would not be justified against Mr. Chin for his simple act of walking away from officers and the information known to the officers at the time is insufficient to justify the use of deadly force against Mr. Chin for walking away. |
| | *Evidence*: Noble Decl. ¶ 16. |
| | Vazquez conceded that he could not shoot Chin for simply walking away. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 30:1-4 |
| | Vazquez conceded that had Decedent just been walking northbound with the rifle slung around his neck, pointed down, and had not grabbed the rifle, raised the rifle, or turned towards Vazquez with the rifle, it would have been inappropriate to shoot based on his training and he would have let the situation play out and try to deescalate the situation further. |
| | *Evidence*: Ex. 1 to Le Decl., Vazquez Dep. 45:15-46:4. |
| | Vazquez violated standard police practices and training when he left |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | available cover to follow Mr. Chin onto Diamond Bar Boulevard and his tactically inappropriate decision to leave cover contributed to his later use of deadly force against Mr. Chin, as evidenced by Detective Vazquez's testimony that being without cover was a factor in his decision to shoot at Mr. Chin. <br><br> *Evidence*: Noble Decl. ¶ 19. <br><br> Officers are trained that there must be objective factors to justify an immediate threat and that a simple statement by an officer that he or she fears for his or her safety or the safety of others is insufficient. <br><br> *Evidence*: Noble Decl. ¶ 12. <br><br> Officers are trained that to use deadly force, the threat of death or serious bodily injury must be immediate or imminent. <br><br> *Evidence*: Noble Decl. ¶ 13. <br><br> Officers are trained that a threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances known to the officer, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause serious bodily injury to the peace officer or another person. |

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | *Evidence*: Noble Decl. ¶ 13; Ex. 1 to Le Decl., Vazquez Dep. 51:17-22. |
| | Officers are trained that an imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but one that, from appearances, must be instantly confronted and addressed. |
| | *Evidence*: Noble Decl. ¶ 13. |
| | Officers are trained that their subjective fear cannot be a justification for the use of deadly force and that their must be objective facts that show that the subject posed an immediate or imminent threat of death or serious bodily injury at the time of the use of deadly force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that an overreaction in using force is excessive force. |
| | *Evidence*: Noble Decl. ¶ 15. |
| | Officers are trained that deadly force is a last resort that should only be used in an immediate defense of life situation and when no other reasonable alternatives are available. |
| | *Evidence*: Noble Decl. ¶ 17. |
| | Deputy Barajas's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

176

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 20. |
| | Deputy Barajas's second shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's second shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 22. |
| | Deputy Barajas's third shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Deputy Barajas's position would not have believed that Mr. Chin posed an immediate or imminent threat of death or serious bodily injury at the time of Deputy Barajas's third shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 23. |
| | Detective Vazquez's first shot at Mr. Chin violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would have been |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | aware of Mr. Chin's body and arm positioning throughout the encounter and would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's first shot and would not have shot at all. |
| | *Evidence*: Noble Decl. ¶ 21. |
| | Detective Vazquez's second shot violated standard police practices and training and a reasonably trained officer in Detective Vazquez's position, acting pursuant to standard police practices and training, would not have believed that Mr. Chin posed an immediate threat of death or serious bodily injury at the time of Detective Vazquez's second shot and would not have shot at all, particularly since Mr. Chin had already been shot, was bent over at the waist, and was not holding the firearm or turned towards Detective Vazquez (as can be seen in the videos). |
| | *Evidence*: Noble Decl. ¶ 24. |
| | Police officers are trained that they should give a warning that they are prepared to use deadly force, when feasible. |
| | *Evidence*: Noble Decl. ¶ 25. |
| | Barajas never gave Chin commands to stop walking, to not advance towards her or the other vehicle on the road, or to get |

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

178

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | down on the ground.<br><br>*Evidence*: Ex. 11 to Le Decl., Barajas BWC at 11:44:25-11:45:18.<br><br>Vazquez never gave Chin any commands to stop walking or to get on the ground.<br><br>*Evidence*: Ex. 2 to Le Decl., Vazquez BWC at 11:41:56-11:45:19.<br><br>Detective Vazquez and Deputy Barajas violated standard police practices and training when they failed to give Mr. Chin a warning that they were prepared to use deadly force despite it being feasible to do so.<br><br>*Evidence*: Noble Decl. ¶ 25.<br><br>The deputies had other reasonable alternatives available to them to take Mr. Chin into custody at the time of the shooting.<br><br>*Evidence*: Noble Decl. ¶ 26.<br>The deputies had the time and opportunity to deescalate further by setting up a perimeter, as other units were on scene and on their way, and could have utilized less-lethal force, such as the 40mm, the beanbag shotgun, or the Taser in order to gain compliance.<br><br>*Evidence*: Noble Decl. ¶ 26. |

92. Deputy Barajas and Detective Vazquez ("Defendant Deputies") responded Code-3 after receiving a dispatch call concerning a man armed with an AR-15 style rifle walking around Diamond Bar Boulevard and wearing a bullet-proof vest, later determined to be the Decedent. As Detective Vazquez proceeded to

| Moving Party's Uncontroverted Material Facts and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| the incident location, dispatch broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle and was wearing a bullet-proof vest. Detective Vazquez also observed an injured Plaintiff with blood on her hands. The Decedent was shot by the Defendant Deputies when he came within dangerous proximity of a civilian vehicle.<br><br>The totality of circumstances indicated that the Decedent presented a threat of imminent death or substantial bodily harm, making the use of force by the Defendant Deputies objectively reasonable. Deputy Barajas gave the Decedent seven commands before firing her first shot. The Decedent continued approaching towards deputies and the civilian vehicle on Diamond Bar Boulevard. Detective Vazquez then fired his first shot, after which Deputy Barajas fired two additional shots because the Decedent continued walking northbound with his rifle slung around his shoulder. Only after Detective Vazquez's second shot – the fifth and final shot between himself and Deputy Barajas – did the Decedent fall to the ground. No additional shots were fired after the Decedent fell to the ground and no longer posed an imminent lethal threat.<br><br>**Evidence:** Barajas Decl., at ¶ 5; Vazquez Decl., ¶¶ 5, 8; COLA 00285 (Exhibit A), at 0:01:40; 0:08:07 – 0:08:14; COLA 00752 (Exhibit E), at 0:3:42 – 0:04:50; COLA 00286 (Exhibit D), at 0:02:12 – 0:02:28; Flosi Decl. ¶30. | |
| 93. There is no objective independent evidence in the record that LASD failed to adequately train the involved deputies or that LASD maintains unconstitutional customs, practices, and/or policies.<br><br>**Evidence:**<br>Flosi Decl. ¶35-40. | 93.    Undisputed. |

Hurrell Cantrall LLP<br>800 WEST 6TH STREET, SUITE 700<br>LOS ANGELES, CA 90017-2710<br>TELEPHONE (213) 426-2000

180

1  DATED:  October 20, 2025          HURRELL CANTRALL LLP

2

3

4                                By:  _____*/s/ Jerad J. Miller*_____

5                                     THOMAS C. HURRELL
                                      JANET J. HUR
6                                     JERAD J. MILLER
                                      Attorneys for Defendants, COUNTY OF
7                                     LOS ANGELES, MARISOL BARAJAS
                                      and HECTOR VAZQUEZ
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HURRELL CANTRALL LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000