UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, MARISOL BARAJAS, HECTOR VAZQUEZ, and DOES 3–10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS-KS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 47)** |

Defendants County of Los Angeles, Marisol Barajas, and Hector Vazquez move for summary judgment on the claims of Plaintiff Jennie Quan. (Mot., ECF No. 47.) Plaintiff opposed, (Opp'n, ECF No. 49), and Defendants replied, (Reply, ECF No. 52). The Court heard the motion on November 3, 2025. (Mins., ECF No. 54.)

///

## I. BACKGROUND[1]

Plaintiff is the mother and survivor of Benjamin Chin ("Decedent"). (FAC ¶ 5, ECF No. 31.) At the time of the incident at issue in this suit, Defendant Marisol Barajas was a deputy and Defendant Hector Vazquez was a detective for the Los Angeles County Sheriff's Department. (Defs.' Statement of Uncontroverted Facts ("SUF") ¶¶ 1–2, ECF No. 47-7.) On June 19, 2023, in Diamond Bar, California, Barajas and Vazquez ("the Deputies") responded to a dispatch call regarding a man wearing a bulletproof vest, walking down the street with an AR-15-style rifle and firing off rounds into the air. (SUF ¶¶ 3–4, 26; Pl.'s Additional Material Facts ("AMF") ¶ 94, ECF No. 49-3).

From information transmitted over the radio, the Deputies were aware that there was a stabbing victim, (SUF ¶ 26; AMF ¶¶ 96–97), and Vazquez was aware that the stabbing victim was in the same as the man with the gun, (AMF ¶ 97). Vazquez encountered an elderly woman, later identified as Plaintiff, with blood on her hands. (SUF ¶ 32; AMF ¶ 102.) Vazquez did not know the source of the blood and could not tell whether Plaintiff had been stabbed. (AMF ¶¶ 102–03.) Plaintiff said to Vazquez, "don't hurt him," and, "don't shoot him," a few times. (*Id.* ¶ 105.) Around this time, Vazquez saw Decedent for the first time and observed that Decedent was wearing a vest and had a rifle slung over his right side. (*Id.* ¶¶ 106, 108.) Vazquez saw Decedent walk eastbound, toward Diamond Bar Boulevard. (*Id.* ¶¶ 112–13.) Vazquez began to approach Decedent from behind and yelled repeatedly commanding Decedent to drop his weapon; Decedent ignored these commands. (SUF ¶¶ 39–40.) When Decedent reached Diamond Bar Boulevard, he turned north onto the street. (AMF ¶ 114.)

---

[1] The parties submitted voluminous objections to evidence. (Pl.'s Objs., ECF No. 49-2; Defs.' Objs., ECF No. 52-2.) The Court need not resolve many of the objections to adjudicate these motions. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–19 (E.D. Cal. 2006) (lamenting overuse of evidentiary objections in motions for summary judgment). To the extent the Court relies on objected-to evidence in this Order, the relevant objections are overruled.

Vazquez continued to pursue Decedent, giving more commands to Decedent to drop his weapon, which Decedent continued to ignore. (SUF ¶ 45.) Vazquez saw civilian and deputy vehicles in Decedent's path on Diamond Bar Boulevard. (*Id.* ¶ 46.)

Meanwhile, as Barajas drove southbound on Diamond Bar Boulevard, she encountered Decedent on the same street, walking northbound. (*Id.* ¶ 5.) Barajas saw Decedent, stopped her car, and got out. (AMF ¶ 122.) Barajas observed a firearm slung over Decedent's right shoulder. (*Id.* ¶ 127.) Barajas ordered Decedent to drop his weapon six or seven times before she fired her first shot.[2] (SUF ¶ 11.) Vazquez observed that Decedent momentarily stopped, but then Decedent continued forward. (*Id.* ¶ 49.) After her first shot, Barajas ordered Decedent to drop his weapon an eighth and ninth time. (*Id.* ¶¶ 17–18.) Approximately six seconds later, as Barajas began her tenth order to Decedent to drop his weapon, Vazquez fired his first shot. (*Id.* ¶ 18; AMF ¶ 145.) Vazquez's first round struck Decedent's vest and appeared not to affect him. (SUF ¶ 53.) After Vazquez's first shot, Barajas fired a second shot approximately seven seconds after her first shot, (AMF ¶ 155), and a third shot approximately two seconds after her second shot, (*id.* ¶ 156). Four to five seconds after Vazquez's first shot, Vazquez fired a second shot. (AMF ¶ 173; Pl.'s Statement of Genuine Disputes ¶ 11, ECF No. 49-1.) Decedent fell to the ground after Vazquez's second shot. (SUF ¶ 55; AMF ¶ 176.) Throughout the encounter, although the weapon was in Decedent's reach, Barajas never saw Decedent touch the weapon, (AMF ¶ 162), and neither Deputy heard Decedent say anything, (*id.* ¶¶ 163–64). Decedent sustained gunshot wounds to the lower front of his body and to his lower back. (*Id.* ¶ 189.) The wound to his lower back was fatal, according to an autopsy report. (*Id.* ¶ 193.)

Plaintiff alleged eight claims in her amended complaint, (*see generally* FAC

---

[2] The parties dispute whether Barajas uttered her seventh order to drop the weapon before or while she fired her first shot. (Pl.'s Statement of Genuine Disputes ¶ 11, ECF No. 49-1.) The dispute is immaterial to the disposition of the motion.

¶¶ 27–96), but she abandoned several claims in her brief opposing the motion, (Opp'n 1 n.1). Maintaining the original claim numbering, the claims Plaintiff still asserts are: (1) against the Deputies, a claim under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment; (6) against all Defendants, battery; (7) against all Defendants, negligence; and (8) against all Defendants, a claim under the Bane Act, Cal. Civ. Code § 52.1. (FAC ¶¶ 29–37, 74–96.)

## II. LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). To meet its burden,

> [t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

## III. DISCUSSION

Plaintiff "voluntarily dismiss[es]" her second, third, fourth, and fifth claims in their entirety. (Opp'n 1 n.1.) The Court refuses Plaintiff's voluntary dismissal[3] and grants the motion of Defendants as to these claims, as Plaintiff fails to raise any triable issue. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (observing plaintiff abandoned claims by not raising them in opposition to motion for summary judgment). The Court admonishes the parties for declining to resolve these claims at the Local Rule 7-3 conference of counsel or some other time before the motions were filed. *See Rehfeldt v. U.S. Dep't of Homeland Sec.*, No. 20-00181 KJM, 2022 U.S. Dist. LEXIS 238990, at *13–14 (D. Haw. Dec. 22, 2022) ("In waiting until after the [prefiling] conference to withdraw claims in his Opposition—*i.e.*, after Defendants expended time and expense to file the Motion as to all claims—Plaintiff

---

[3] "[W]ithdrawals of individual claims against a given defendant are governed by Fed. R. Civ. P. 15, which addresses amendment to pleadings." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687 (9th Cir. 2005). Amendments sought to be effected after the deadline specified in a scheduling order are governed by the good cause standard of Rule 16(b). *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992). Here, Plaintiff presents no good cause to permit a unilateral voluntary withdrawal of her claims after the amendment deadline. Therefore, the Court finds there is none. *Cf. Frerck v. John Wiley & Sons, Inc.*, No. 11-cv-2727, 2014 U.S. Dist. LEXIS 95099, at *36–37 n.10 (N.D. Ill. July 14, 2014) ("Allowing Plaintiff to withdraw his claims now—at the end of discovery and while Defendant's motion for summary judgment is pending—runs counter to the purpose of summary judgment and would unfairly prejudice Defendant. The Court rejects Plaintiff's attempt to 'deprive the defendant of a ruling on the summary judgment motion by [his] dismissal tactic.'" (alteration in original) (citation omitted) (quoting *Pace v. S. Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969))).

violated the spirit of [the District of Hawaii's analog to Local Rule 7-3]. . . . These claims should have been withdrawn or otherwise resolved before the filing of this Motion.").

The Court turns to Defendants' challenges to Plaintiff's remaining claims.

### A.   Claim 1: Excessive Force

#### 1.   <u>There Is a Genuine Dispute as to Whether the Deputies' Use of Force Was Objectively Reasonable</u>

To prevail on a § 1983 claim, a plaintiff must show a person acting under color of state law violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Fourth Amendment requires law enforcement officers to use force no greater than that which is objectively reasonable under the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

> Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 396 (cleaned up). "[W]hether a particular use of force was reasonable is rarely

determinable as a matter of law." *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994).

Defendants argue that summary judgment should be entered on the excessive force claim because, under the totality of the circumstances, the "Deputies' use of force was reasonable and necessary to protect themselves and nearby citizens from the threat of imminent death or substantial bodily harm." (Mot. 12.) However, Plaintiff offers evidence from which a reasonable juror could determine that Decedent did not pose an immediate threat to the Deputies or to the public. *See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (recognizing that the most important of the *Graham* factors is "whether the suspect poses an immediate threat to the safety of the officers or others" (internal quotation marks omitted)).

A reasonable juror viewing the videos from Barajas's and Vasquez's body-worn cameras, (Barajas Decl. Ex. A, ECF No. 47-4; Vazquez Decl. Ex. D, ECF No. 47-5), could determine that no reasonable officer could have perceived Decedent to pose a threat to the Deputies or civilians at the time that the Deputies shot Decedent. In particular, a reasonable juror could conclude that the barrel of Decedent's firearm was not in a "low ready position" as Defendants contend, (SUF ¶ 41), but in fact was aimed toward the ground, (Pl.'s Statement of Genuine Disputes ¶ 41), and that Decedent never touched, manipulated, raised, or pointed the weapon. Viewing these facts in the light most favorable to Plaintiff, a reasonable juror could find as a result that Decedent made no threatening, harrowing, or furtive gestures throughout the course of his encounter with the Deputies. While Decedent did not obey several commands from the Deputies to drop his weapon, Decedent made no verbal threats and was moving forward at a slow, steady pace, with a blank expression on his face. Making these reasonable inferences from the video evidence, a reasonable juror could discount the Deputies' testimony and find that Decedent did not pose a threat to the safety of any officer or civilian, let alone an immediate one.

Such a conclusion is consistent with how the Ninth Circuit has approached cases in similar factual circumstances. "[M]ere possession of a weapon is insufficient to

justify the use of deadly force," because possession alone does not create an immediate threat. *Est. of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1013 (9th Cir. 2017). For instance, in *Calonge v. City of San Jose*, summary judgment was inappropriate where an officer shot an individual who had what appeared to be a gun in his waistband when a reasonable jury could have concluded that the individual did not pose an immediate threat. 104 F.4th 39, 46 (9th Cir. 2024). The individual did not reach for his weapon or make a "furtive or threatening movement," and therefore, "[h]is mere possession of a gun did not justify the use of deadly force" under the circumstances. *Id.* Similarly, in *George v. Morris*, a factual dispute as to whether an individual who was holding a gun in his hand ever manipulated the gun or pointed it at the officers precluded a grant of summary judgment in favor of the officers. 736 F.3d 829, 832–33, 838 (9th Cir. 2013). The court concluded that because the individual did not point the gun or make any "furtive movement, harrowing gesture, or serious verbal threat [that] might create an immediate threat," it was unreasonable for the officers to use lethal force against him. *Id.* at 838.

Here, a jury could find that the Deputies' use of force was even less reasonable given the Deputies' decision not to warn Decedent that they would use deadly force if he did not comply with their commands to drop his gun. The Ninth Circuit has "recognized that an officer must give a warning before using deadly force whenever practicable." *Calonge*, 104 F.4th at 47 (quoting *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014)); *accord Lopez*, 871 F.3d at 1011 ("Gelhaus indisputably had time to issue a warning, but never notified Andy that he would be fired upon if he either turned or failed to drop the gun."). While "the absence of a warning does not necessarily mean that deadly force was unreasonable," when a warning is "practicable," failing to give one can make an "already unreasonable use of force even less reasonable." *Calonge*, 104 F.4th at 47 (cleaned up). Here, Barajas and Vazquez each issued several orders to Decedent to drop his weapon. A reasonable juror could conclude that, if the Deputies had enough time to repeat their commands multiple times, the Deputies had

enough time to warn Decedent that if he failed to comply, they would use deadly force.

Of course, this is not the only evidence that could support such inferences, and these are not the only inferences that could be made from the video or other evidence. For the purpose of this motion, the Court need only conclude that there is a triable issue as to whether the Deputies' use of force was objectively reasonable. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) (teaching that video evidence of a use of force incident "does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from the footage").

### 2. Factual Disputes Preclude a Pretrial Finding of Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions" by "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Determining whether police officers are entitled to qualified immunity is an issue the Court "must resolve . . . 'at the earliest possible stage in litigation.'" *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (internal quotation marks omitted).

Defendants argue that the "Deputies are entitled to qualified immunity for this cause of action because their use of force did not violate any clearly established right of the Decedent." (Mot. 14.) However, as Plaintiff notes, (Opp'n 16), at the time of the incident, "it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions." *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019) (citing, inter alia, *George*, 736 F.3d at 838, and *Curnow ex rel. Curnow*

*v. Ridgecrest Police*, 952 F.2d 321, 324–25 (9th Cir. 1991)).

Defendants do not dispute that this right was clearly established, but argue that Decedent was reasonably perceived as threatening. (Reply 2–4.) For the reasons discussed above, the video evidence alone presents a triable issue of fact as to whether the Deputies' use of force was objectively reasonable and as to whether Decedent's conduct could reasonably have been perceived to be furtive, harrowing, or threatening. "When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity." *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017) (cleaned up). The Court cannot determine at summary judgment that the Deputies are entitled to qualified immunity.

In sum, the excessive force claim survives Defendants' motion.

### B.     Claims 6–8: State Law Claims

Defendants argue that Plaintiff's claims for battery and negligence fail because the Deputies' use of force was reasonable as a matter of law. (Mot. 19–20.) To sustain battery and negligence claims against a police officer, a claimant must demonstrate the officer's use of force was unreasonable. *See Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (2013) (negligence); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004) (battery). As discussed above, the video evidence alone generates a triable issue as to whether the Deputies' use of force was reasonable.

Finally, Defendants assert that the Bane Act claim must be dismissed because the Deputies' use of force was reasonable. (Mot. 20–21.) Although Defendants present no argument to this end, Defendants also appear to challenge the claim on the basis that the Deputies lacked any specific intent to violate Decedent's rights. (*See id.* at 21 (citing authorities construing specific intent requirement).)

"The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by

threats, intimidation or coercion." *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (internal quotation marks omitted). Bane Act claims require a plaintiff to "demonstrate both that a constitutional violation occurred (either accompanied by threat, intimidation, or coercion, or with one of those as an inherent aspect of the violation) and that the defendant had the specific intent to violate the plaintiff's constitutional right(s)." *A.B. v. City of Santa Ana*, No. SA CV 18-1553-DOC-ADS, 2020 U.S. Dist. LEXIS 73602, at *15–16 (C.D. Cal. Jan. 7, 2020) (citing *Reese*, 888 F.3d at 1043).

    Again, the reasonableness of the Deputies' use of force is a question of fact for the jury. The jury may determine that the Deputies did not in fact perceive Decedent to pose a threat and thus infer specific intent from the evidence. *Cf. O'Neil v. City & County of San Francisco*, No. 17-cv-07190-JCS, 2021 U.S. Dist. LEXIS 129510, at *47–48 (N.D. Cal. July 12, 2021) ("If Samayoa did not perceive a threat from O'Neil, a jury could conclude that he acted in reckless disregard of a constitutional requirement which has been made specific and definite, with an intent to deprive O'Neil of his life, which in these circumstances is the interest protected by that right. . . . A jury might also determine that Samayoa reasonably—or even unreasonably—perceived a threat, in which case he would not satisfy the specific intent requirement for this statute. But Defendants are not entitled to summary judgment on this issue." (cleaned up)). And Plaintiff need not show "coercion independent from the coercion inherent in the . . . use of force" to support her claim. *Johnson v. Shasta County*, 83 F. Supp. 3d 918, 934 (E.D. Cal. 2015) (internal quotation marks omitted).

    The state law claims must be submitted to a jury.

///

## IV. CONCLUSION

The motion is granted in part and denied in part. Plaintiff's second, third, fourth, and fifth claims are dismissed in their entirety. The motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated: November 17, 2025

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE