Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrell-llp.com
Joseph K. Miller, State Bar No. 245685
E-Mail: jmiller@hurrell-llp.com
Jerad J. Miller, State Bar No. 334001
E-Mail: jjmiller@hurrell-llp.com
HURRELL-LLP
800 West 6th Street, Suite 700
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,

        Plaintiff,

    v.

COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,

        Defendants.

Case No. 2:24-cv-04805-MCS(KSx)

**DEFENDANTS' MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

[Assigned to Hon. Mark C. Scarsi, Courtroom "7C"]

TO THE COURT, PLAINTIFF AND HER ATTORNEYS OF RECORD:

    Defendants MARISOL BARAJAS, HECTOR VAZQUEZ AND COUNTY OF LOS ANGELES ("Defendants") hereby submit their Memorandum of Contentions of Fact and Law pursuant to *Local Rule* 16-4.

## MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## I.    STATEMENT OF FACTUAL CONTENTIONS

    On June 19, 2023, Deputy Marisol Barajas ("Barajas") and Detective Hector Vazquez ("Vazquez") (collectively, "Defendant Deputies"), peace officers for the Los Angeles County Sheriff's Department ("LASD"), responded Code- 3 in their patrol

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1  vehicles to dispatch calls concerning an Asian male suspect wearing a bullet-proof
2  vest and carrying an AR-15 style rifle in Diamond Bar, CA. Multiple 911 calls were
3  made describing the suspect, his rifle and bullet-proof vest.  It was further reported to
4  Barajas and Vazquez through dispatch and the Local Tactical Channel ("L-TAC")
5  that the suspect fired multiple rounds and that there was a stabbing victim in the area.
6  The suspect was Benjamin Chin ("Decedent"), and the stabbing victim was Plaintiff
7  Jennie Quan – the Decedent's mother.

8       Barajas traveled southbound on Diamond Bar Boulevard, where she
9  encountered the Decedent walking northbound on the same street with a bullet-proof
10  vest and an AR-15.  The Decedent was estimated to be approximately 15 - 20 feet
11  from Barajas' vehicle when she turned on Diamond Bar Boulevard and first observed
12  him.  Barajas parked and exited her vehicle immediately after observing the Decedent.
13  Next to Barajas was Brandon Wiseman, a civilian seated in his parked Tesla, who was
14  in the direct path of the Decedent on Diamond Bar Boulevard. Additional LASD
15  deputies were behind Barajas, preventing her from moving her vehicle to create more
16  distance between herself and the Decedent.

17       At approximately the same time that Barajas is traveling to Diamond Bar
18  Boulevard, Vazquez responded to Crooked Creek Drive where he observed the
19  Decedent wearing a bullet-proof vest and walking with an AR-15 towards Diamond
20  Bar Boulevard. Vazquez exited his vehicle and began trailing the Decedent on foot.
21  Due to the Decedent's bullet-proof vest, Vazquez exchanged the buckshot
22  ammunition in his shotgun for the higher-impact slug ammunition.  On Crooked
23  Creek Drive, Vazquez encountered an elderly Asian female with blood on her hands.
24  Vazquez did not know that the elderly Asian female was the Decedent's mother at the
25  time of the initial interaction, but he believed she was acquainted with the Decedent
26  because she asked the deputies not to harm the Decedent.  Vazquez and Detective
27  Christopher Bronowicki continued following the Decedent towards Diamond Bar
28  Boulevard while giving him commands to drop his rifle, which the Decedent ignored.

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

As the Decedent walked northbound on Diamond Bar Boulevard towards Barajas and Mr. Wiseman, Barajas drew her service firearm, pointed it at the Decedent and took cover behind the driver's-side door of her patrol vehicle. She then issued seven commands for the Decedent to drop his rifle, which the Decedent ignored. The Decedent maintained possession of his AR-15 while walking towards the Barajas' and Mr. Wiseman's vehicles with his rifle slung around his right shoulder.

After the Decedent approached to within 7-10 feet of her vehicle, Barajas fired her first shot (shot 1) at the Decedent. It was unclear to Barajas whether the shot struck the Decedent, and he continued walking northbound on Diamond Bar Boulevard. Approximately 5.649 seconds later, Vazquez, who was approaching the Decedent's left flank from behind, fired his first shot (shot 2) at the Decedent. The Decedent continued walking northbound on Diamond Bar Boulevard. Barajas then issued her eighth and ninth command, and began issuing her tenth, when she fired her second shot (shot 3) approximately .881 seconds after Vazquez's first shot. She then fired her third shot (shot 4) approximately 1.929 seconds later. After Barajas' third shot, the Decedent began leaning forward at the waist. Approximately 1.552 seconds after Barajas' third shot, Vazquez fired his second shot (shot 5), which was the fifth and final shot in the sequence. The Decedent then fell to the ground and dropped his rifle within his wingspan. No additional shots were fired.

After the responding deputies at the scene developed a plan to safely and securely approach the Decedent, medical care was provided to the Decedent by deputies and Los Angeles County Fire Department paramedics. The Decedent was placed in an ambulance and transported to Pomona Valley Hospital Medical Center, where he was pronounced dead at 11:09 p.m.

/ / /

/ / /

/ / /

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

## II.    CLAIMS

A.    Claim No. 1: Barajas and Vazquez Used Excessive Force Against the Decedent in Violation of the Fourth Amendment (Quan v. Barajas and Vazquez)

a.    Elements Required to Establish Plaintiff's Claim No. 1:

(1)    The Defendant Deputies acted under color of state law;

(2)    The Defendant Deputies unreasonably seized the Decedent's person by using excessive deadly force against him;

(3)    The Defendant Deputies acted intentionally; and

(4)    The acts of the Defendant Deputies were the cause of the deprivation of the Decedent's rights protected by the Constitution or laws of the United States.

See Ninth Circuit Model Civil Jury Instructions §§ 9.1, 9.20, 9.25.

b.    Key Evidence in Opposition to Claim No. 1

(1)    Dispatch reported the following to the Defendant Deputies: the Decedent was wearing a bullet-proof vest while wielding an AR-15, he fired multiple rounds in the air, there was a stabbing victim in the area;

(2)    The Walnut Sheriff's Station received multiple 911 calls reporting the facts and observations relayed to the Defendant Deputies described in section (1) above.

(3)    Video evidence confirms that the Decedent wielded an AR-15, wore a bullet-proof vest, stabbed the Plaintiff (his mother), and fired multiple rounds in the air;

(4)    When Barajas and Vazquez arrived to the scene, they observed the Decedent wearing a bullet-proof vest and wielding an AR-15;

(5) Barajas, while traveling southbound on Diamond Bar Boulevard, exited her patrol vehicle after observing the Decedent walking northbound on Diamond Bar Boulevard;

(6) Mr. Wiseman was inside his parked Tesla on Diamond Bar Boulevard next to Barajas while the Decedent walked northbound on the same street;

(7) Vazquez equipped a shotgun loaded with slug ammunition and followed the Decedent on foot from Crooked Creek Drive to Diamond Bar Boulevard;

(8) Vazquez encountered the Plaintiff on Crooked Creek Drive with blood on her hands, having been stabbed by the Decedent;

(9) Vazquez and Detective Bronowicki issued several commands for the Decedent to drop his rifle prior to the Decedent arriving on Diamond Bar Boulevard, which were ignored;

(10) While the Decedent walked northbound on Diamond Bar Boulevard, Barajas pointed her service handgun at the Decedent and issued seven warnings for him to drop his weapon;

(11) Less-lethal ammunition was not an option because the Decedent posed a lethal imminent threat, and the Defendant Deputies believed less-lethal would be futile against the Decedent's bullet-proof vest.

(12) The Decedent approached to within 7-10 feet of Barajas' vehicle on Diamond Bar Boulevard with his AR-15 slung around his shoulder before Barajas fired the first shot at the Decedent;

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

5

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

(13)   It was unclear to Barajas whether the first shot struck and injured the Decedent because he continued walking northbound on Diamond Bar Boulevard after the first shot;

(14)   At the time of Barajas' first shot, Vazquez was approximately 30-40 feet behind the Decedent's left-flank on Diamond Bar Boulevard;

(15)   After determining that the Decedent still posed a lethal imminent threat, Vazquez and fired his first shot – the second shot in the sequence - approximately 5.649 seconds after Barajas' shot;

(16)   It was unclear to Vazquez whether his first shot injured the Decedent because the Decedent continued walking northbound on Diamond Bar Boulevard after Vazquez's first shot;

(17)   After determining that the Decedent still posed a lethal imminent threat, Barajas ordered the Decedent to drop his weapon an eighth and ninth time, and began ordering him a tenth time, before firing her second shot – the third shot in the sequence.

(18)   Barajas' second shot occurred approximately .881 seconds after Vazquez's first shot;

(19)   It was unclear to Barajas whether the first shot struck and injured the Decedent because the Decedent continued walking northbound on Diamond Bar Boulevard after Barajas' second shot;

(20)   After determining that the Decedent still posed a lethal imminent threat, Barajas fired her third shot – the fourth shot in the sequence – approximately 1.929 seconds after

6

firing her second shot.

(21)    Barajas' third shot struck the Decedent in the lower abdomen, after which he began leaning forward;

(22)    After determining that the Decedent still posed a lethal imminent threat, Vazquez fired his second shot – the fifth and final shot in the sequence – approximately 1.552 seconds after Barajas' third shot.

(23)    Vazquez's second shot struck the Decedent in the lower back, after which the Decedent fell to the ground;

(24)    No additional shots were fired after the Decedent fell to the ground;

(25)    The responding deputies approached the Decedent and promptly began rendering medical care;

(26)    The Decedent was transported to Pomona Valley Hospital Medical Center, where he was pronounced deceased later that day.

**B.    <u>Claim No. 2</u>: Barajas and Vazquez Committed Battery Against the Decedent (Quan v. All Defendants)**

a.    <u>Elements Required to Establish Plaintiff's Claim No. 2:</u>

(1)    The Defendant Deputies intentionally touched the Decedent or caused him to be touched;

(2)    The Defendant Deputies used unreasonable force against the Decedent

(3)    The Decedent did not consent to the use of force;

(4)    The Decedent was harmed; and

(5)    The Defendant Deputies' use of unreasonable force was a substantial factor in causing the Decedent's harm.

*See* Judicial Council of California Civil Jury Instructions No. 1305A.

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

b.   Key Evidence in Opposition to Claim No. 2:

(1)   See key evidence and facts under Claim No. 1.

**C.   Claim No. 3: Barajas and Vazquez Negligently Used Force Against the Decedent (Quan v. All Defendants)**

a.   Elements Required to Establish Plaintiff's Claim No. 3:

(1)   The Defendant Deputies used unreasonable deadly force against the Decedent; and

(2)   The Defendant Deputies' uses of unreasonable force was a substantial factor in causing the Decedent's death.

*See* Judicial Council of California Civil Jury Instruction No. 440 and 3921; *Heymann v. California*, 2000 U.S. Dist. LEXIS 16357 (N.D. Cal. 2000); *Hernandez v. City of Pomona* (2009) 46 Cal. 4th 501, 513.

b.   Key Evidence in Opposition to Claim No. 3:

(1)   See key evidence and facts under Claim No. 1.

**D.   Claim No. 4: Barajas and Vazquez Violated the Bane Act (Civil Code 52.1) (Quan v. All Defendants)**

a.   Elements Required to Establish Plaintiff's Claim No. 4:

(1)   That by threats, intimidation or coercion, the Defendant Deputies caused the Decedent to reasonably believe that if he exercised his Fourth Amendment rights, the Defendant Deputies would commit violence against him and that the Defendant Deputies had the apparent ability to carry out the threats

(2)   The Defendant Deputies intended to deprive the Decedent of his enjoyment of the interests protected by the right

(3)   The Decedent was harmed; and

(4)   The Defendant Deputies' conduct was a substantial factor in causing the Decedent's harm.

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

*See* Judicial Council of California Jury Instructions No. 3066; *Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766, 801-803 (2017).

    b.   <u>Key Evidence in Opposition to Claim No. 4:</u>

       (1)   See key evidence and facts under Claim No. 1.

## III.  <u>AFFIRMATIVE DEFENSES</u>

  A.  <u>First Affirmative Defense</u>: **The Defendant Deputies Are Entitled to Qualified Immunity from the 42 U.S.C. § 1983 Claims**

    a.   <u>Elements Required to Establish Defendants' First Affirmative Defense</u>:

       (1)   The Defendant Deputies' conduct did not deprive the Decedent of his constitutional rights;

       (2)   The officers did not violate a "clearly established" constitutional right of the Decedent; and

       (3)   A reasonable deputy faced with the circumstances facing the Defendant Deputies could have believed his or her conduct was lawful.

See *Saucier* v. *Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

    b.   <u>Key Evidence in Support of Defendants' First Affirmative Defense:</u>

       (1)   An immediate threat existed because the Decedent was armed with an AR-15, bullet-proof vest, he fired multiple rounds in the air, and he stabbed the Plaintiff prior to the Defendant Deputies arriving on scene;

       (2)   The Defendant Deputies were aware of the facts recited in (1) above prior to encountering the Decedent on Diamond Bar Boulevard;

       (3)   Barajas saw the Decedent walking northbound on Diamond

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

Bar Boulevard and parked her vehicle on Diamond Bar Boulevard next to Mr. Wiseman, who was inside his Tesla;

(4)     The Decedent was walking towards Barajas and Mr. Wiseman with his AR-15 slung around his shoulder and wearing his bullet-proof vest;

(5)     The angle of the Decedent's right arm indicates he was holding the pistol grip of the AR-15 with his right hand;

(6)     The Decedent came within 7-10 feet of Mr. Wiseman, at which point Barajas fired her handgun at the Decedent

(7)     Prior to firing her first shot, Barajas pointed her handgun at the Decedent and issued seven commands for the Decedent to drop his weapon, all of which were ignored by the Decedent;

(8)     After Barajas fired her first shot, the Decedent remained standing and continued walking in the direction of Mr. Wiseman and Barajas;

(9)     Vazquez and Detective Bronowicki issued several commands to the Decedent to drop his weapon while the Decedent was walking from Crooked Creek Drive to Diamond Bar Boulevard, which the Decedent ignored;

(10)    Vazquez witnessed the Plaintiff with her hands covered in blood on Crooked Creek Drive prior to the shooting;

(11)    After Barajas' first shot, Vazquez fired the second shot from behind the Decedent while the Decedent was progressing northbound on Diamond Bar Boulevard;

(12)    The Decedent continued walking northbound on Diamond Bar Boulevard after the second shot;

(13)    Barajas issued two more commands for the Decedent to

10

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

drop his weapon, and began issuing a third warning, before firing a third shot overall at the Decedent;

(14)    The Decedent continued standing and advancing towards Mr. Wiseman and Barajas, and Barajas fired a fourth overall shot;

(15)    While the Decedent was still standing, Vazquez fired a fifth overall shot at the Decedent;

(16)    The Decedent fell to the ground after the fifth shot, and no more shots were fired by either deputy.

**B.**    **Second Affirmative Defense: The Officers Are Immune Under California *Penal Code* § 196—Justifiable Homicide**

a.    Elements Required to Establish Defendants' Second Affirmative Defense:

(1)    The circumstances reasonably created a fear of death or serious bodily harm to the officers or others; and

(2)    The officers necessarily committed the homicide against the Decedent in the discharge of their legal duties.

*See* Cal. Pen. Code § 196; *Brown v. Ransweiler*, 171 Cal.App.4th 516, 533 (2009); *Gilmore v. Superior Court*, 230 Cal.App.3d 416, 421 (1991) (justifiable homicide is privileged act that precludes all tort liability arising therefrom).

b.    Key Evidence in Support of Defendants' Second Affirmative Defense:

(1)    See key evidence under first affirmative defense.

**C.**    **Third Affirmative Defense: Qualified Immunities (state)**

a.    Elements Required to Establish Defendants' Third Affirmative Defense:

(1)    If the employee is immune from liability, Defendant County

of Los Angeles also is immune from liability;

(2) An employee of Defendant County of Los Angeles was exercising the discretion vested in him;

(3) An employee of Defendant County of Los Angeles cannot be held liable for an injury caused by the act or omission of another person;

(4) A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

*See* Cal. Gov. Code, § 815.2(b): Injuries by Employee within Scope of Employment; Immunity of Employee; Cal. Gov. Code, § 820.2: Discretionary Acts; Cal. Gov. Code, § 820.8: Acts or Omissions of Others; Cal. Gov. Code § 821.6: Immunity.

    b.   <u>Key Evidence in Support of Defendants' Third Affirmative Defense</u>:

(1) See key evidence under first affirmative defense.

**D.** **<u>Fourth Affirmative Defense</u>: Self-Defense/Defense of Others**

    a.   <u>Elements Required to Establish Defendants' Fourth Affirmative Defense</u>:

(1) That the Defendant Deputies reasonably believed that the Decedent was going to harm each of them or others;

(2) That the Defendant Deputies used only the amount of force that was reasonably necessary to protect themselves or others.

*See* CACI 1304.

    b.   <u>Key Evidence in Support of Defendants' Fourth Affirmative Defense</u>:

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

(1)    See key evidence under first affirmative defense.

**E.    Fifth Affirmative Defense: Contributory Negligence**

    a.    <u>Elements Required to Establish Defendants' Fifth Affirmative Defense</u>:

        (1)    That the Decedent was negligent;

        (2)    That the Decedent and/or others' negligence was a substantial factor in causing his harm.

*See* CACI 405 (2009).

    b.    <u>Key Evidence in Support of Defendants' Fifth Affirmative Defense</u>:

        (1)    See key evidence under first affirmative defense.

**IV.    <u>ANTICIPATED EVIDENTIARY ISSUES</u>**

1. Defendants' Motion in Limine to Exclude, or Limit, the Opinions of Bennet Omalu, MD;

2. Defendants' Motion in Limine to Preclude any Reference or Evidence of Claims, Lawsuits, Settlements, Verdicts, Judgments, Complaints, Discipline, Administrative Investigations or Proceedings, or Other Alleged Incidents;

3. Defendants' Motion in Limine to Exclude Autopsy Photographs of Benjamin Chin.

**V.    <u>ISSUES OF LAW</u>**

**A.    The Defendant Deputies Did Not Use Excessive Force or Commit Battery Against the Decedent**

    a.    <u>Applicable Authority</u>

Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The right to make an arrest or investigatory stop necessarily carries the right

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

to use some degree of physical coercion or threat thereof to effect it. *Id.* Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* The most important factor is whether the suspect posed an immediate threat to the safety of the officers or others. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396-97. The reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397.

Where the officer has probable cause to believe the suspect poses a threat of serious physical harm, either to the officer or others, it is constitutionally reasonable to prevent escape by using deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used to prevent escape. *Id.* at 12. Where a suspect threatens an officer with a weapon such as a gun, the officer is justified in using deadly force. *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005). When an individual points his gun in the officers' direction, the Constitution undoubtedly entitles the officer to respond with deadly force. *George v. Morris*, 736 F.3d 829, 838

14

(9th Cir. 2013).

          b.    <u>Barajas' Use of Force Was Objectively Reasonable</u>

Barajas' use of force was reasonable at all times during the encounter with the Decedent. Before responding to Diamond Bar Boulevard, Barajas received dispatch calls describing the Decedent as wearing a bullet-proof vest and carrying an AR-15, which she confirmed through observation when she arrived to the scene. Moreover, dispatch reported that multiple shots were fired and that there was a stabbing victim in the area. The Decedent's vest and rifle reasonably established that he anticipated a lethal conflict with deputies.

In the direct path of the Decedent on Diamond Bar Boulevard was Barajas and Mr. Wiseman in his vehicle. Barajas drew her service handgun and pointed it at the Decedent. Barajas then issued seven warnings to the Decedent to drop his rifle, which he ignored while advancing on Diamond Bar Boulevard with his rifle slung around his shoulder. It was only after the Decedent demonstrated a clear intent to ignore deputy commands and came within dangerous proximity (7-10 feet) of Mr. Wiseman in his Tesla that Barajas discharged her firearm.

After Barajas' first shot, the Decedent continued advancing towards Mr. Wiseman with his rifle. Vazquez fired a second shot in the direction of the Decedent's left-flank, but the Decedent continued moving northbound on Diamond Bar Boulevard. Barajas then issued two more warnings for the Decedent to drop his weapon, and began issuing a third warning, before firing a third and fourth shot at the Decedent. The Decedent began bending forward after the fourth shot. Vazquez then fired a fifth and final shot, striking the Decedent in the lower-back. The Decedent then fell to the ground and no more shots were fired by either Defendant Deputy. Once the Decedent began falling and no longer possessed a dangerous threat to deputies or civilians, Barajas refrained from discharging her firearm further.

          c.    <u>Vazquez's Use of Force Was Objectively Reasonable</u>

Vazquez's use of force was reasonable based on the totality of circumstances.

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

After receiving a dispatch call that a suspect was wearing a bullet-proof vest, carrying an AR-15, firing multiple rounds in the air with a stabbing victim in the area, Vazquez responded to Crooked Creek Drive, where he encountered the Decedent. The Decedent was walking from Crooked Creek Drive to Diamond Bar Boulevard. Vazquez immediately encountered the Plaintiff, whose hands were covered in blood. Although Vazquez did not know at the time that this was the Decedent's mother, he believed the stabbing victim to be related to the suspect Decedent because she asked the responding deputies not to harm the Decedent. Ahead of Vazquez and the Plaintiff was the Decedent holding his AR-15 and approaching Diamond Bar Boulevard. Vazquez trailed the Decedent and ordered him to drop his weapon, which the Decedent ignored while proceeding towards Diamond Bar Boulevard.

Vazquez arrived on Diamond Bar Boulevard approximately 15 – 20 feet behind the Decedent. The Decedent was approaching Barajas and Mr. Wiseman with his rifle in the tactical low-ready position. Due to the risk of cross-fire from the Deputies positioned in front of the Decedent, Vazquez was forced to flank the Decedent without cover. Observing that the Decedent was ignoring warnings from deputies and rapidly approaching civilian vehicles, Vazquez discharged his shotgun one (1) time. Having little effect on the Decedent due to his bullet-proof vest, Vazquez discharged his shotgun a second and final time. The second shot struck the Decedent, after which the Decedent fell to the ground. No additional shots were fired after the Decedent fell to the ground.

Based on the foregoing, the Defendant Deputies' use of force was reasonable. Without unreasonable force, Plaintiff's claims for Excessive Force and Battery must fail as a matter of law.

### B.    The Defendant Deputies Were Not Negligent

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

1256, 1263 (Ct. Cal. App. 2006).

Sheriff's deputies are not treated the same as the ordinary negligence defendant. State law negligence claims against deputies are analyzed under the same objectively reasonable standard set forth in *Graham*, 490 U.S. at 396-97 and the plaintiff has the burden of proof in establishing excessive force. *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1273 (1998); Cal. Pen. Code, § 835(a). Where the claims are based on the same factual scenario, as in this case, California Courts judge claims of battery and negligent use of deadly force by the same objective reasonableness standards as used by the federal courts to determine whether there was a Fourth Amendment violation. "Negligence claims stemming from allegations of excessive force by a police officer are . . . analyzed under the Fourth Amendment's reasonableness standard." *Carter v. City of Carlsbad*, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011) (citing *Atkinson v. Cnty. of Tulare*, 790 F. Supp. 2d 1188, 1211 (E.D. Cal. 2011) (noting that negligence is "measured by the same reasonableness standard of the Fourth Amendment."); *see also, Hernandez v. City of Pomona* (2009) 46 Cal. 4th 501, 513; *David v. City of Fremont*, 2006 U.S. Dist. LEXIS at *63 (citing *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1102-6). The same consideration of the totality of the circumstances required by *Graham* and *Garner* is required in determining reasonableness under California's negligence law. *Hernandez*, at 514; *see also Hermosillo v. County of Orange*, 2021 U.S. Dist. LEXIS 253767, *27-*32 (C.D. Cal. Sept. 29, 2021); *O'Neil v. City & Cty. of San Francisco*, 2021 U.S. Dist. LEXIS 129510, *41-*44 (N.D. Cal. July 12, 2021); *Koussaya v. City of Stockton*, 54 Cal. App. 5th 909, 932-943 (Cal.Ct.App. 2020).

To prove negligence, a plaintiff must show the defendant had a duty to use due care, he breached that duty, and the breach was the proximate cause of the injury. *Hayes v. County of San Diego*, 57 Cal.4th 622, 629 (2013). Officers have a duty to act reasonably when using deadly force. *Id*. The reasonableness of an deputy's conduct is determined in light of the totality of circumstances, which may

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

include a consideration of the reasonableness of the officer's preshooting conduct for purposes of negligence. *Id*. at 637-39.  As long as a deputy's conduct falls within the range of conduct that is reasonable, there is no requirement that he choose the most reasonable action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, to avoid liability for negligence. *Id*. at 632.  Deputies have a degree of discretion as to how they choose to address a particular situation. *Id.*

In addition, California Penal Code § 835a, provides that a deputy is privileged to use reasonable force to effect an arrest, prevent escape or overcome resistance. Therefore, no liability may be had where an officer uses reasonable force to effect an arrest. Further, immunity from civil liability arises from Cal. Gov. Code § 820.2, which also employs the Fourth Amendment reasonableness standard in conferring immunity for discretionary acts of officers. *Hernandez*, at 514; *see also Koussaya*, 54 Cal. App. 5th 909, 932-943 (Cal.Ct.App. 2020).

Here, the Defendant Deputies reasonably perceived the Decedent to be a lethal imminent threat to themselves and the general public based on the factors made known to them prior to and during the encounter. Prior to encountering the Decedent on Diamond Bar Boulevard, dispatch informed the Defendant Deputies that the Decedent had an AR-15, was wearing a bullet-proof vest, had fired multiple rounds in the air, and that there was a stabbing victim in the area.  Upon arriving on Diamond Bar Boulevard, Barajas witnessed the Decedent wearing his bullet-proof vest and with a rifle slung around his shoulder, heading towards Mr. Wiseman's vehicle. Barajas pointed her handgun at the Decedent and issued seven warnings to drop his weapon – a clear indication that deadly force would be used if he did not comply. The Decedent came within 7-10 feet of Mr. Wiseman's vehicle before Barajas was left with no choice but to shoot the Decedent. She fired three shots at the Decedent before the Decedent fell to the ground and no longer posed a lethal threat.

Vazquez similarly witnessed the Decedent armed with his AR-15 and wearing

a bullet-proof vest when Vazquez arrived on Crooked Creek Drive behind the Decedent.  Several warnings were issued by Vazquez to the Decedent to drop his weapon prior to the Decedent's arrival on Diamond Bar Boulevard, but the warnings were ineffective.  While trailing the Decedent on Crooked Creek Drive, Vazquez observed the Plaintiff with blood on her hands – observing first-hand the stabbing victim that dispatch described to responding deputies. Upon arriving on Diamond Bar Boulevard and witnessing the Decedent come within dangerous proximity of the Decedent, Vazquez fired two shots at the Decedent from his shotgun, including the fifth and final shot.

Based on the totality of circumstances, the actions of the Defendant Deputies were reasonable. Because the actions of the Defendant Deputies were reasonable, the Defendant Deputies did not breach their duty of care to the Decedent. There is no negligent conduct upon which the Decedent can therefore recover.

### C.    The Deputies Are Entitled to Qualified Immunity

A deputy is qualifiedly immune unless he violated a federal statutory or constitutional right, and the unlawfulness of his conduct was clearly established at the time. *D.C. v. Wesby*, 138 S.Ct. 577, 589 (2018).  "Clearly established" means that, at the time of the conduct, the law was sufficiently clear that every reasonable officer would understand that what he is doing is unlawful, meaning existing law must have placed the constitutionality of the officer's conduct beyond debate. *Id.*  This protects all but the plainly incompetent or those who knowingly violate the law. *Id.*  To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. *Id.*  The rule must be "settled law," meaning it is dictated by controlling authority or a robust consensus of cases of persuasive authority. *Id.* at 589-90.  It is not enough that the rule is suggested by then-existing precedent. *Id.* at 590.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *Id.*  Otherwise, the rule is not one that every reasonable official would know. *Id.*

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. *D.C.*, 138 S.Ct. at 590. The rule's contours must be so well defined it is clear to a reasonable officer that his conduct was unlawful. *Id.* This requires a high degree of specificity. *Id.* Courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that were faced. *Id.* A rule is too general if the unlawfulness of the conduct does not follow immediately from the conclusion that the rule was firmly established. *Id.* For instance, a rule that it was "clearly established" that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness is too general. *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018).

"To be "clearly established," a rule must be "dictated by controlling authority or by a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018); see also *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) (noting that Ninth Circuit precedent is sufficient to meet the "clearly established" prong of qualified immunity). The proper inquiry focuses on whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," . . . or "whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional." (internal citations omitted) Courts must define the law to a "high degree of specificity." *Wesby*, 138 S. Ct. at 590. The dispositive question is "whether the violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis in original). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019) (internal quotations omitted.)" *Tuggle v. City of Tulare* (E.D. Cal., June 29, 2023, No. 1:19-CV-01525-JLT-SAB) 2023 WL 4273900, at *9, aff'd sub nom. *Cuevas v. City of Tulare* (9th Cir., July 10, 2024, No.

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1  23-15953) 2024 WL 3352710.

2      The facts and circumstances known to the Defendant Deputies during the

3  encounter with the Decedent justified the deadly use of force.  To sustain a claim

4  under 42 U.S.C. § 1983 against a defendant, the plaintiff must prove that: (1)

5  defendant was acting under color of state law, and (2) deprived plaintiff of rights

6  secured by the Constitution or federal statutes.  *Gibson v. United States*, 781 F.2d

7  1334, 1338 (9th Cir. 1986).  The Fourth Amendment protects "against excessive force

8  in the course of an arrest."  *Gravelet-Blondin v. Shelton* 728 F.3d 1086, 1090 (9th Cir.

9  2013), cert. denied, 2014 WL 684092 (2014).  Evaluation of "excessive force"

10 requires examining "the objective reasonableness of a particular use of force to

11 determine whether it was indeed excessive."  *Id*.  All claims of excessive force are

12 analyzed under the objective reasonableness standard of the Fourth Amendment as

13 enunciated in *Graham v. Connor*, 490 U.S. 386 (1989), and *Tennessee v. Garner*, 471

14 U.S. 1 (1985).  Factors *Graham* sets for evaluating reasonability include: "(1) the

15 severity of the crime at issue, (2) whether the suspect posed an immediate threat to

16 the safety of the officers or others, and (3) whether the suspect actively resisted arrest

17 or attempted to escape."  *Maxwell v. Cnty. of San Diego*, 697 F.3d 941, 951 (9th Cir.

18 2012).  *Garner* considered similar factors, including the immediacy of the threat,

19 necessity of force to safeguard officers or public, and whether officers issued a

20 warning, assuming it was practicable.  *George v. Morris*, 736 F.3d 829, 837 (9th Cir.

21 2013).  "[A]n officer may reasonably use deadly force when he or she confronts an

22 armed suspect in close proximity whose actions indicate an intent to attack. In these

23 circumstances, the Courts cannot ask an officer to hold fire in order to ascertain

24 whether the suspect will, in fact, injure or murder the officer. The high numbers of

25 officer mortalities in recent years illustrate the unreasonableness of such a

26 notion." (*Reynolds v. County of San Diego* (S.D.Cal.1994) 858 F.Supp. 1064, 1073.)

27      Despite these factors, "there are no per se rules in the Fourth Amendment

28 excessive force context[,]" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

HURRELL·LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1  banc), cert. denied, 132 S.Ct. 2682 (2012), and the court must balance "the nature and

2  quality of the intrusion on the individual's Fourth Amendment interests against the

3  countervailing government interests at stake." *Graham*, 490 U.S. at 397 (internal

4  quotation marks and citations omitted).  Further, reasonableness is evaluated from the

5  perspective of a reasonable officer on the scene without the benefit of hindsight.

6  *Graham*, 490 U.S. at 396; *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001),

7  overruled on other grounds by *Person v. Callahan*, 555 U.S. 223 (2009).

8  Consideration must be given to "the fact that police officers are often forced to make

9  split-second judgments – in circumstances that are tense, uncertain, and rapidly

10 evolving …" *Graham*, 490 U.S. at 396-97; *Fisher v. City of San Jose*, 558 F.3d 1069,

11 1081 (9th Cir. 2009) (en banc) (same).   "Thus, under *Graham,* we must avoid

12 substituting our personal notions of proper police procedure for the instantaneous

13 decision of the officer at the scene. We must never allow the theoretical, sanitized

14 world of our imagination to replace the dangerous and complex world that policemen

15 face every day." *Gonzalez* at 813.

16      The Defendant Deputies are entitled to qualified immunity because the

17 Decedent's rights were not so clearly established in a way that would have put every

18 reasonable officer on notice that their conduct during the shooting violated those

19 rights. As discussed in *Graham*, "objectively reasonable" use of force requires

20 examining the facts and circumstances of the circumstances confronting the deputies.

21 *Graham,* 490 U.S. at 397, 109 S.Ct. 1865. Courts look at (1) the severity of the crime

22 at issue, (2) whether the suspect posed an immediate threat to the safety of the officers

23 or others, and (3) whether the suspect actively resisted arrest or attempted to escape

24 when evaluating whether a deputy's actions were reasonable. *Id*. at 396.  Weighing

25 the totality of circumstances leads to the inescapable conclusion that the Defendant

26 Deputies' use of force was reasonable and necessary to protect themselves and nearby

27 citizens from the threat of imminent death or substantial bodily harm.

28      Each use of force by the Defendant Deputies was objectively reasonable given

1 the facts known to the Defendant Deputies prior to the encounter and the
2 ineffectiveness of warnings and lethal munitions during the shooting.  The potential
3 crime at issue – murder – and the Decedent's possession of an AR-15 and use of a
4 bullet-proof vest posed a significant and deadly threat to deputies and civilians in the
5 vicinity.  All uses of force ceased once the Decedent fell to the ground and dropped
6 his rifle.  Qualified immunity is thus applicable to the Defendant Deputies.

7 　　　　Barajas' use of force was reasonable at all times during the encounter with the
8 Decedent.  Before responding to Diamond Bar Boulevard, Barajas received dispatch
9 calls describing the Decedent as wearing a bullet-proof vest and AR-15, which she
10 confirmed through observation when she arrived to the scene. The vest and rifle
11 established that the Decedent anticipated a lethal conflict with deputies. Moreover,
12 she received a dispatch call that there was a stabbing victim prior to her arrival.  In
13 the direct path of the Decedent on Diamond Bar Boulevard were deputies and civilians
14 in vehicles.  Barajas then issued seven (7) warnings to the Decedent to drop his rifle,
15 which he ignored while continuing his advancement.  It was only after the Decedent
16 demonstrated a clear intent to ignore deputy commands and came within dangerous
17 proximity of Mr. Wiseman in his Tesla that Barajas discharged her firearm. The
18 Decedent's bullet-proof vest prevented the lethal munitions from halting the
19 Decedent's approach, requiring Barajas to continue discharging her weapon until the
20 Decedent fell to the ground and dropped his rifle after Vazquez's second, and final,
21 shot. Once the Decedent began falling and no longer possessed a dangerous threat to
22 deputies or civilians, Barajas refrained from discharging her firearm further.

23 　　　　Moreover, Deputy Vazquez's use of force was reasonable based on the totality
24 of circumstances. After receiving a dispatch call concerning a man wearing a bullet-
25 proof vest and firing his rifle around the Diamond Bar area, Vazquez arrived to the
26 scene and immediately observed the Plaintiff's hand covered in blood – placing him
27 on notice that the Decedent was willing to commit violence against someone he knew.
28 Vazquez then proceeded to Diamond Bar Boulevard, where he observed the Decedent

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

1  approximately 15 – 20 feet ahead approaching deputies and civilians with his rifle in

2  the tactical low-ready position. Due to the risk of cross-fire from the Deputies

3  positioned in front of the Decedent, Vazquez was forced to flank the Decedent without

4  cover. Observing that the Decedent was ignoring warnings from deputies and rapidly

5  approaching civilian vehicles, Vazquez discharged his shotgun one (1) time. Having

6  little effect on the Decedent due to his bullet-proof vest, Vazquez discharged his

7  shotgun a second and final time.  The second shot struck the Decedent, after which

8  the Decedent fell to the ground. No additional shots were fired after the Decedent fell

9  to the ground.

10       Plaintiff contends that the Decedent's failure to raise, point or shoot the rifle

11  during the encounter negates any claim that he posed an imminent lethal threat, or

12  that the Defendant Deputies are entitled to qualified immunity.  These elements are

13  not dispositive as to whether an imminent threat existed, or whether qualified

14  immunity applies. Qualified immunity is inapplicable when there is a showing that,

15  based on the totality of circumstances, every reasonable officer would have

16  understood that their use of force violated the clearly established rights of the suspect.

17  Based on the totality of circumstances and the facts known to the Defendant Deputies

18  prior to and during the encounter, Plaintiff cannot establish that every reasonable

19  officer would have refrained from using deadly force against the Decedent.

20       The Defendant Deputies were both made aware prior to encountering the

21  Decedent that he had fired multiple rounds in the air, was wearing a bullet-proof vest,

22  possessed an AR-15 and that there was a stabbing victim in the area.  After arriving

23  at the incident location, the Defendant Deputies observed the Decedent in possession

24  of an AR-15 and bullet-proof vest. They further observed the Decedent ignore

25  numerous commands to drop his weapon and approach dangerously close to Mr.

26  Wiseman's Tesla. Knowing that the Decedent had already used deadly force against

27  a victim (the Plaintiff), the Defendant Deputies had a duty to respond with deadly

28  force once the Decedent came within a few feet of Mr. Wiseman's vehicle. Although

1 the Decedent never raised, pointed or fired his rifle at the Defendant Deputies, his
2 right arm was bent at an angle that suggested his right hand was on the pistol grip of
3 the rifle, and that he could quickly raise and shoot the rifle one-handed.

4      Based on the foregoing, it was objectively reasonable for the Defendant
5 Deputies to respond with lethal force. At a minimum, there is no factual basis for
6 concluding that every objectively reasonable officer would have understood that using
7 lethal force violated the clearly established rights of the Decedent.  Accordingly, the
8 Defendant Deputies are entitled to qualified immunity.

9 **VI.**   **BIFURCATION OF ISSUES**

10      Defendants do not request that the Court bifurcate any additional issues.

11 **VII.**   **JURY TRIAL**

12      All issues applicable to Defendants are triable to a jury, and a Demand for Jury
13 Trial was timely filed by Defendants, as well as by Plaintiff.  Defendants hereby
14 reiterate their demand for a jury trial in this matter.

15 **VIII.** **ABANDONMENT OF ISSUES**

16      The Court granted Defendants' Motion for Summary Judgment, or Partial
17 Summary Judgment, for the following causes of action:

18      (2) Unreasonable Search and Seizure – Denial of Medical Care (42 U.S.C. §
19 1983)

20      (3) Municipal Liability – Ratification (42 U.S.C. § 1983)

21      (4) Municipal Liability – Inadequate Training (42 U.S.C. § 1983)

22      (5) Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. §
23 1983).

24

25

26

27

28

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

1    DATED:  January 5, 2026          HURRELL-LLP

2

3

4                                      By:    _____/s/ Jerad J. Miller_____

5                                             THOMAS C. HURRELL
                                              JOSEPH K. MILLER
6                                             JERAD J. MILLER
                                              Attorneys for Defendants, COUNTY OF
7                                             LOS ANGELES, MARISOL BARAJAS
                                              and HECTOR VAZQUEZ
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000