**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS-KS<br><br>*Assigned to*:<br>Hon Mark C. Scarsi<br>Hon. Mag. Judge Karen L. Stevenson<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF DEFENSE EXPERT JOEL SUSS, PHD FROM TRIAL**<br><br>Final Pretrial Conference:<br>Date:   January 26, 2026<br>Time:   2:00 p.m.<br>Crtrm:  7C<br><br>Trial:<br>Date:   February 10, 2026 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that Plaintiff Jennie Quan hereby moves the Court, by way of this Motion in Limine No. 1, to exclude defense expert Joel Suss, PhD, from testifying on certain subject areas and offering certain opinions at trial in this matter. Plaintiff makes this Motion under Federal Rules of Evidence 401, 402, 403, 702, 703, 704.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel during which no resolution could be reached.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED: January 5, 2026        LAW OFFICES OF DALE K. GALIPO

                              By _____/s/ Hang D. Le_____
                                 Dale K. Galipo
                                 Hang D. Le
                                 Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights case arises from the officer-involved shooting death of Benjamin Chin on June 19, 2023 by County of Los Angeles Sheriff's Department Deputies Marisol Barajas and Hector Vazquez. Plaintiff now moves, by way of this Motion, to exclude Defendant's retained human factors expert from testifying at trial.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> I the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court has a "gatekeeping role" to screen expert testimony, and judges have discretion to determine whether such testimony is admissible, depending on its reliability and relevance. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-97 (1993); *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 147 (1999). "[T]he law grants the [court] broad latitude" in analyzing and determining the reliability of proffered expert witness testimony. *Kumho*, 526 U.S. at 139, 142. "The inquiry [under Rule 702] is a flexible one[,]" and its focus "must be solely on principles and methodology, not on the conclusions [the expert] generate[s]." *Daubert*, 509 U.S. at 594-95. Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," whereas relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–593. "[A]ny step that renders

1. the analysis unreliable…renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PC Litig.*, 35 F.3d 717, 745 (3rd Cir. 1994). Consequently, the Court may exclude an expert's opinions based on obvious mistake in the expert's investigation or reasoning process, *see* E.E.O.C. v. Freeman, 778 F.3d 463, 467 (4th Cir. 2015), when there are analytical gaps between the data and the opinion, *Conde v. Velsicol Chem. Corp.*, 24 F.3d 809 (6th Cir. 1994), or where the opinion is purely speculative, *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001), among other things.

Ultimately, Defendants have the burden for laying the proper foundation for the admission of their police practices experts' opinions and must do so by a preponderance of evidence. *Daubert*, 509 U.S. at 592. When objections are made, the Court must make a preliminary determination regarding the admissibility of such opinion and qualifications of the person attempting to officer such evidence. Fed. Rule Evid. 104(a); Fed. Rule Evid. 702, Advisory Comm.

### III.  ARGUMENT

The entirety of Dr. Suss's report appears to be opinions offered to advocate on behalf of the defendant deputies and to bolster their credibility without any showing that these opinions are tethered to any reliable method of analysis. Dr. Suss's discussion on "perception-response time" is simply an attempt to place some scientific gloss on argument that the defendant deputies conduct was reasonable as he fails to adequately apply the findings of the studies to the evidence in this case. He further attempts to use the studies to supplant the defendant deputies' under-oath testimony regarding their justification for the shooting. The vast majority of Dr. Suss's opinions consist largely of him offering justifications and making factual and legal arguments that the defendant deputies or their attorneys can provide to the jury without the need for expert opinion. Accordingly, Dr. Suss's testimony will not be helpful to the jury and would be unduly prejudicial to Plaintiff.

### A. Dr. Suss's Testimony Will Not Assist the Jury's Understanding of the Evidence

Throughout his report, Dr. Suss offers opinions about whether or not Decedent reasonably appeared to be an immediate threat to the defendant deputies and whether or not defendant deputies perceived Decedent as an immediate threat when they shot him. These opinions are unhelpful to the jury, constitute improper state of mind and legal opinions, and should be excluded at trial.

Dr. Suss offers a number of inappropriate opinions throughout his report, yet his ultimate opinions can be distilled to the following: the deputies (reasonably) perceived decedent to be an immediate threat because he was armed, moving toward a civilian car, not complying with verbal commands, and appeared to be gripping the rifle's grip and that they immediately stopped firing when he no longer posed an immediate threat, (Ex. 1 to Le Decl., Suss Report at 28), the sequence of the shots, including the pauses between shots, show that the deputies' responses were measured and therefore not "williful, wanton, [or] malicious," (*Id.* at 30, 31), that the deputies' beliefs and inferences regarding Decedent's ability, intent, and opportunity to immediately cause harm were reasonable (*Id.* at 32-33), that Deputy Vazquez had "no choice" but to shoot when he did because the risk of crossfire in waiting would have been too great (*Id.* at 33-35), that the deputies considered and exhausted all other available resources before resorting to the use of deadly force (*Id.* at 36-37), and that, based on action-response time, they fired when they did and stopped firing when they did because they had to err on the side of caution due to the possibility of that could not react quickly and accurately enough *if* Decedent decided to fire his rifle (*Id.* at 19-28, 38).

These opinions are unhelpful and improper on multiple levels. Dr. Suss has no direct knowledge of whether defendant deputies actually perceived Decedent as an immediate threat when they shot him; and in the case of his opinion regarding Vazquez having "no choice" but to fire when he did due to risk of crossfire, it is

1  directly contradicted by Vazquez's testimony that he fired because he perceived
2  Decedent turning and raising the rifle towards him and that he would not have shot if
3  Decedent had simply continued to walk forward while ignoring commands because
4  he could then otherwise try to deescalate the situation further. Any opinions about
5  whether defendant deputies *actually* perceived Decedent to be an immediate threat
6  would be impermissible attmepts to bolster the deputies' credibility and would invade
7  the province of the jury. Moreover, any opinion that the defendant deputies
8  *reasonably* perceived Decedent to be an immediate threat and *reasonably* believed
9  that they needed to shoot would constitute improper legal opinion and should be
10 excluded. *See White v. Gerardot*, No. 1:05-CV-382, 2008 WL 4724004, at *2 (N.D.
11 Ind. Oct. 24, 2008) (excluding human factors expert's opinions that the officer
12 actually identified the decedent as a threat, reasonably believed he had to shoot to
13 immediately defend himself, was correct from an action/reactoin perspective in
14 believing the decedent was a lethal threat to him as "[t]hese are impermissible legal
15 conclusions, attempt to bolster [the officer's] credibility, and improperly invade the
16 province of the jury); *Nationwide Transport Finance v. Cass Information Systems,*
17 *Inc.,* 523 F.3d 1051, 1058 (9th Cir. 2008).
18     Dr. Suss's further offer impermissible, speculative opinions throughout his
19 report regarding the defendant deputies' state of mind and the decedent's intent. For
20 example, he states, "I expect that deputies were compelled—in the face of the
21 immediate threat—to act before the decedent had a chance to raise his rifle" (Ex 1 to
22 Le Decl., Suss Report at 23), "I submit that deputies have a conservative response
23 bias when it comes to deciding if a threat is (still) imminent," (*Id.* at 25), "deputies
24 are cautious (risk averse) in making a decision that an armed person is not (or no
25 longer) a threat," and "I contend that—based on their training and experience—
26 Deputy Barajas and Deputy Vazquez had a tendency to be cautious in deciding when
27 the decedent was no longer an immediate threat" (*Id.* at 25). He also offers the
28

opinion that because of the time between shots, the deputies' actions were not "willful, wanton, malicious, and done with reckless disregard for the decedent's safety." (*Id.* at 29-30). He further opines that based on the evidence, the deputies reasonably inferred that "decedent had violent intentions and had disregard for others," "decedent intended to place himself in a situation where he would encounter members of the public," "decedent had little regard for his own safety," and "decedent had no intention of complying with their commands and was determined to carry out a plan." (*Id.* at 32-33). Indeed, the entirety of Dr. Suss's opinions under Section 8 are impermissible state of mind opinions, legal conclusions, and unhelpfult to the trier of fact.

"Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Lanard Toys Ltd. V. Anker Play Prods.*, LLC, No. CV 19-4350-RSWL-AFMx, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) (collecting cases). "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inferences from the facts of the case…[and because t]he jury is sufficiently capable of drawing its own inferences regarding intent, motive or state of mind from the evidence, [] permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and [therefore] would not be helpful to the jury." *Moller v. Cnty. of San Bernardino*, No. 5:22-CV-01306-DSF-MARX, 2024 WL 5185640, at *7 (C.D. Cal. Jan. 2, 2024) (internal citations and quotation marks omitted). Additionally, Dr. Suss's underlying point that the deputies were responding to a fast-moving situation is an obvious point that could easily be understood by a jury without the assistance of an expert. *See Sanchez v. Jiles*, No. CV1009384MMMOPX, 2012 WL 13005996, at *35 (C.D. Cal. June 14, 2012) (excluding defense's human factors expert from opining that the officers were faced with "a fast-moving, dynamic situation that occurs within a compressed time frame…[making] it difficult for officers to immediately repsond to outside stimuli"

because it was an obvious point that the jury could come to from officers' testimony, police practices testimony, and their own every day life). The jury will hear evidence defendant the defendant deputies regarding what they knew, observed, and inferred and what they were thinking when they encountered Decedent. The jury can also appreciate, from every day life, that high pressure situations can produce uncertainty and may elicit a conservative, preemptive response. The jury does not need an expert to regurgitate the defendant deputies' testimony and confirm common-sense facts. Thus, the Court should exclude Dr. Suss's opinions and testimony relating to the deputies' and decedent's intent, motive, or state of mind, that constitute legal conclusions, and that of which are unhelpful to the trier of fact.

## B. Dr. Suss's Prejudicial Testimony Should Be Excluded

The opinions contained in Section 6 of Dr. Suss's report are prejudicial and should be excluded. First, Dr. Suss attempts to redefine the legal standard regarding with constitutes an "immediate/imminent threat" under the guise of expert opinion and departs from the what constitutes an "immediate/imminent threat" under the current case law of the Ninth Circuit. Dr. Suss supports a "conservative" evaluation as to what constitutes an imminent threat under the facts of this case, speculating, without citation or support, that the deputies are cautious and risk averse in making the decision of whether an armed person is an imminent threat based on their training and experience, that under the facts of his case, "it is appropriate and reasonable for any deputy to be cautious in deciding that the suspect is no longer an imminent threat," concluding that the deputies correctly perceived Decedent to be an immediate threat because he was armed, moving toward a civilian car, appeared to be gripping the rifle's pistol grip[1], and was not complying with verbal commands. He cites

---

[1] Dr. Suss's speculation that Decedent was gripping the rifle's pistol grip is unsupported by the evidence and improperly invades the province of the jury, as discussed in subsequent sections of this motion.

studies regarding perception-response time to advocate for the defense argument that the deputuies *had to* shoot before the Decedent ever attempted to manipulate or raise the rifle. (Ex. 1 to Le Decl., Suss Report at 22-23). These opinions directly contradict the state of the law in the Ninth Circuit, wherein "it [is] clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions…even in circumstances in which the suspect has allegedly committed a violent crime in the immediate past." *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019) (citing *Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1020 (9th Cir. 2017); *George*, 736 F.3d at 838; *Harris v. Roderick*, 126 F.3d 1189, 1203–04 (9th Cir. 1997); *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)) (cleaned up). Expert opinion or testimony that attempts to redefine the governing legal standard, such as Dr. Suss's attempt to redefine what constitutes an "immediate/imminent threat" is prejudicial and inadmissible. *See Yu v. Idaho State Univ.*, 15 F.4th 1236, 1247 (9th Cir. 2021) (expert opinion which redefined the governing legal standard for racial discrimination was prejudicial and inadmissible); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1063 (9th Cir. 2008) (evidence on an erroneous inapplicable legal theory or legal principle is inadmissible because any probative value is substantially outweighed by unfair prejudice, confusion of issues, or misleading the jury).

  Additionally, Dr. Suss attempts to take the determination of facts and ultimate issues out of the hands of the jury and essentially argues that the factfinder should simply rely on the deputies' perception of the incident and discount the video evidence. He opines that "a third party's (e.g., juror's) perception of the threat when viewing video footage of the incident" can produce a "liberal response bias" because they are not observing the incident in real time but rather, with the advantage of engaging in a frame-by-frame analysis of the video evidence. He thus concludes that

it was appropriate for the deputies to take a cautious approach in deciding when the Decedent no longer posed an imminent threat, which was after Decedent had already gone to the ground and no longer was attempting to access the rifle. (Ex. 1 to Le Decl. at 26, 28). This opinion improperly invades not only the province of the jury but also that of a police practices expert. *See Yu v. Idaho State Univ.*, 15 F.4th at 1245 ("expert testimony is not admissible simply to the tell the jury that one party's witnesses should be believed and the other party's should not"). It is prejudicial error to admit testimony in which "the evaluation of the of the commonplace by an expert witness [] supplant[s] a jury's independent exercise of common sense." *Stepney v. Dildy*, 128 F.R.D. 77, 79–80 (D. Md. 1989). The jurors will certainly be aware that they are not experiencing the incident in real time like the deputies and the jury instruction already specifically instructs jurors to evaluate the use of force based on the perspective of a reasonable officer at the scene and not with 20/20 hindsight. Dr. Suss's opinions do not add anything of value that the jury will not already know or be instructed on and his discussion regarding response bias will only serve to confuse the jury and prejudicially bolster the credibility of the deputies.

Further, his discussion regarding a suspect's "subtle" changes in posture or motion, like Decedent going from standing erect to being bent at the waist, is not applicable to the facts and circumstances of this case. Deputy Barajas did not fire any shots after Decedent went from standing erect to being bent at the waist. Deputy Vazquez does not claim that he shot his second shot because he did not see Decedent stop and bend at the waist and thus still believed Decedent to be an immediate threat of death or serious bodily harm. Deputy Vazquez testified that he shot a second time because he perceived Decedent to have fully turned to face him while raising the rifle in Deputy Vazquez's direction. And, as Dr. Suss conceded, the videos do not show Decedent ever turning in Deputy Vazquez's direction or raising the rifle towards Deputy Vazquez. (Ex. 2 to Le Decl., Suss Dep. 9:1-7). Accordingly, the entire

Section 6 of Dr. Suss's report should be excluded.

### C. Dr. Suss's Speculative Opinions Should Be Excluded

Dr. Suss's assumption that Decedent was holding the grip of the rifle with his right hand as he walked down Diamond Bar Boulevard is speculative, unsupported by the evidence, is not based on any scientific, technical, or specialized knowledge, and is not helpful the trier of fact. Dr. Suss's assumption/opinion of what he thinks Decedent is doing with his right hand based on his viewing of the deputies' bodyworn camera vidoes does not require any specialized or technical knowledge but is simply an interpretation of the video evidence, which the jury is more than capable of performing without an expert's help. *See Est. of Risher v. City of Los Angeles*, No. CV 17-00995-MWF (DTBX), 2025 WL 869028, at *6 (C.D. Cal. Jan. 22, 2025) (excluding defense experts' opinion regarding the decedent's hand position at the time of the shooting because their interpretation of the video evidence did not require any technical or specialized knowledge and is therefore unhelpful to the jury).

Additionally, Dr. Suss concedes that he cannot see Decedent's right hand at all in any of the videos (Ex. 4 to Le Decl., Suss Dep. 13:2-6, 30:15-18) and that Deputy Barajas testified that Decedent was not touching the rifle (*Id.* 10:24-11:3, 30:19-22). Additoionally, Deputy Vazquez testified that he allegedly saw Decedent bring his right arm up to the bent-elbow position only immediately before Deputy Vazquez fired his first shot. Any consideration of the position of Decedent's right hand as he walked down Diamond Bar Boulevard that diverges from what the defendant deputies observed and knew and the time of the shooting would be considered an after-incident fact which cannot be considered in the use of force analysis because the reasonableness of an officer's use of force is judge *from the perspective of the officer at the scene* and is based on all facts *known to the officer at the time of the use of force*. *See Glenn v. Washington Cnty.*, 673 F.3d 864, 871, 873 n.8 (9th Cir. 2011) ("We cannot consider evidence of which the officers were unaware—the prohibition

against evaluating officers' actions "with the 20/20 vision of hindsight" cuts both ways.").

### D. Dr. Suss's Opinions are Outside the Scope of His Expertise

Dr. Suss is not a police practices expert and has never worked as a police officer. (Ex. 2 to Le Decl., Suss Dep. 23:12-14, 35:23-36:8). Dr. Suss has never qualified as a police practices expert in court. (*Id.* 36:1-8). He is not aware of the California POST standards with respect to the use of deadly force. (*Id.* 23:15-17). He also does not purport to be a firearms expert. Yet, Dr. Suss offers a variety of opinions that rely on expert knowledge of standard police practices, training, and experience and firearms. For example, Dr. Suss's opinion that it was appropriate for the defendant deputies to have a conservative response to whether Decedent posed an immediate threat and to shoot before Decedent ever had a chance to manipulate or raise the rifle is primarily based on his unsupported conclusion that Decedent could have raised the rifle and fired it in less than 1 second. Dr. Suss concedes that there are no studies to support this conclusion bit claims he is "confident this action could easily be performed in less than 1 second" based on his own experiences carrying slung rifles. Dr. Suss is not a firearms expert and he does not provide any support to show that his "experience[] carrying slung rifles" would qualify him under *Daubert* and *Kumho Tire Co.* to render such an opinion. (Ex. 1 to Le Decl., Suss Report at 19-20). Dr. Suss further opines throughout his report regarding the appropriateness of the deputies' responses and actions in accordance with officer training and practices. (*See, e.g., id.* at 25-26, 36-38). Dr. Suss should be precluded from testifying on subject areas outside of his experties.

### IV. CONCLUSION

Pursuant to the foregoing, Plaintiff respectfully requests the Court issue an order excluding defense expert Joel Suss, PhD, from testifying at trial.

Respectfully submitted,

DATED: January 5, 2026          LAW OFFICES OF DALE K. GALIPO

                                By        */s/ Hang D. Le*
                                   Dale K. Galipo
                                   Hang D. Le
                                   Attorneys for Plaintiff