**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS-KS<br><br>*Assigned to*:<br>Hon Mark C. Scarsi<br>Hon. Mag. Judge Karen L. Stevenson<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY OF DEFENSE EXPERT EDWARD T. FLOSI FROM TRIAL**<br><br>Final Pretrial Conference:<br>Date: January 26, 2026<br>Time: 2:00 p.m.<br>Crtrm: 7C<br><br>Trial:<br>Date: February 10, 2026 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** that Plaintiff Jennie Quan hereby moves the Court, by way of this Motion in Limine No. 2, to exclude defense expert Edward T. Flosi, from offering certain opinions and testifying on certain topics at trial in this matter. Plaintiff makes this Motion under Federal Rules of Evidence 702, 703, 704.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel during which no resolution could be reached.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the records and files of this Court, and upon such other oral and documentary evidence as may be presented at the time of the hearing.

DATED: January 5, 2026                    LAW OFFICES OF DALE K. GALIPO

                              By  _____/s/ Hang D. Le_____
                                  Dale K. Galipo
                                  Hang D. Le
                                  Attorneys for Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights case arises from the officer-involved shooting death of Benjamin Chin on June 19, 2023 by County of Los Angeles Sheriff's Department Deputies Marisol Barajas and Hector Vazquez. Defendants have retained police practices expert Edward T. Flosi to offer opinions regarding the defendant deputies' conduct, tactics, and uses of force. By way of this Motion, Plaintiff moves to preclude Mr. Flosi from offering improper opinions/testimony that are improper legal conclusions, speculative and not based on any evidence or witness testimony, are outside the scope of his experties, and/or are not helpful to the trier of fact at trial.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The district court has a "gatekeeping role" to screen expert testimony, and judges have discretion to determine whether such testimony is admissible, depending on its reliability and relevance. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-97 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). "[T]he law grants the [court] broad latitude" in analyzing and determining the reliability of proffered expert witness testimony. *Kumho*, 526 U.S. at 139, 142. "The inquiry [under Rule 702] is a flexible one[,]" and its focus "must be solely on principles and methodology, not on the conclusions [the expert]

generate[s]." *Daubert*, 509 U.S. at 594-95. Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," whereas relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–593. "[A]ny step that renders the analysis unreliable…renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PC Litig.*, 35 F.3d 717, 745 (3rd Cir. 1994). Consequently, the Court may exclude an expert's opinions based on obvious mistake in the expert's investigation or reasoning process, *see* E.E.O.C. v. Freeman, 778 F.3d 463, 467 (4th Cir. 2015), when there are analytical gaps between the data and the opinion, *Conde v. Velsicol Chem. Corp.*, 24 F.3d 809 (6th Cir. 1994), or where the opinion is purely speculative, *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001), among other things.

Ultimately, Defendants have the burden for laying the proper foundation for the admission of their police practices experts' opinions and must do so by a preponderance of evidence. *Daubert*, 509 U.S. at 592. When objections are made, the Court must make a preliminary determination regarding the admissibility of such opinion and qualifications of the person attempting to officer such evidence. Fed. Rule Evid. 104(a); Fed. Rule Evid. 702, Advisory Comm.

### III. ARGUMENT

#### A. Mr. Flosi's Legal Conclusions Should Be Excluded

Throughout his report, Mr. Flosi offers a number of impermissible legal conclusions regarding the incident and the defendant deputies' conduct and uses of force. The opinions Mr. Flosi offers that constitute improper legal conclusions are as follows:

1. The Los Angeles County Sheriff's Department (LASD) deputies had a legitimate law enforcement purpose and reasonable suspicion – based on current law enforcement training – to contact and detain Chin. (Ex. 3 to Le Decl., Flosi Report at 20, 22).
2. The LASD deputies had a legitimate law enforcement purpose and probable

cause – based on current law enforcement training – to arrest Chin. (Ex. 3 to Le Decl., Flosi Report at 22, 24). A reasonable officer could have an honest and strong belief that Chin's actions were in violation of California Penal Code §148(a)(1). (*Id.* at 24).
3. The deadly force responses by Vasquez (sic) and Barajas were appropriate and reasonable to prevent a perceived imminent and credible threat of serious bodily injury or death. (*Id.* at 27).
4. Based on the totality of the circumstances known and perceived by the deputies, it would be reasonable for an officer in the same situation to believe that Chin was moving closer to available targets in preparation to shoot at people stopped in the roadway. (*Id.* at 33).
5. Based on the totality of the circumstances related to the perceived level of resistance by Barajas, it can only be concluded that the level of resistance was high and weighs heavily towards to need to use significant levels of appropriate force including deadly force to immediately and quickly stop Chin's actions. (*Id.* at 34).
6. Barajas reasonably believed several serious and life-threatening crimes had been comitted, were about to be (imminently) committed or being committed at the time of the event and specifically at the time of the deadly force applications. These crimes included: California Penal Code § 245(b)…California Penal Code § 245(d)(2)…. California Penal Code § 187(a)….California Penal Code § 664. (*Id.* at 34-35).
7. Based on the totality of the circumstances related to the perceived level of resistance by Barajas, it can only be concluded that the level of resistance was high and weighs heavily towards to need to use significant levels of appropriate force including deadly force to immediately and quickly stop Chin's actions. (*Id.* at 35).
8. Taking into consideration the facts and circumstances observed and perceived by Vasquez (sic) and Barajas prior to and at the time of the deadly force responses…a resonable officer could conclude that…Chin was an imminent threat of serious bodily injury or death. (*Id.* at 35, 41).

An expert may not provide testimony that amounts to a "legal conclusion[] as to the ulitmate issues in the case." *Torres v. City of L.A.*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008). "[T]he jury," not an expert, "is best suited to determine the reasonableness of an officer's conduct in light of the factual context in which it takes place." Sloman v. Tadlock, 21 F.3d 1462, 1468 (9th Cir. 1994). "In determining what constitutes a legal conclusion, courts may pay special attention to whether the expert uses "legally specialized terms." *Fatai v. Ramos*, No. 19-CV-603-DKW-WRP, 2023

WL 2390573, at *4 (D. Haw. Mar. 7, 2023). The opinions listed above are legal conclusions regarding the ultimate issues in this case, e.g., whether it was reasonable for the deputies to use deadly force, whether it was reasonable for the deputies to believe Chin posed an immediate threat and was about to shoot, the level of resistance Chin posed and the appropriate amount of force to respond to such reasistnace, and utilize specialized legal terms such as "legitimate law enforcement purpose," "reasonable suspicion," "probable cause," and "totality of the circumstances." Thus, Mr. Flosi should be precludef from offering such legal conclusions at trial. *See Est. of Risher v. City of Los Angeles*, No. CV 17-00995-MWF (DTBX), 2025 WL 869028, at *6 (C.D. Cal. Jan. 22, 2025) (excluding similar legal conclusion opinions by Mr. Flosi at trial) *Zuniga v. City of Los Angeles*, No. 2:22-CV-03665-CBM-(ASX), 2024 WL 4744370, at *2–3 (C.D. Cal. Oct. 7, 2024) (same); *Glover v. City of Los Angeles*, No. 2:21-CV-09915-FWS-AS, 2023 WL 8586386, at *4 (C.D. Cal. Oct. 26, 2023) (same).

### B. Mr. Flosi's Opinions That Are Not Helpful to the Trier of Fact Should Be Excluded

Throughout his report, Mr. Flosi also speculates as to the position of Decedent's right hand as Decedent walked down Diamond Bar Boulevard. Mr. Flosi speculates that "based on the video evidence, it appears to (sic) Chin had his right hand holding the grip of the rifle near the trigger guard." (Ex. 3 to Le Decl., Flosi Report at 33; *see id*. at 15, 27). This opinion is speculative, not based on any scientific, technical, or specialized knowledge, and is not helpful to the trier of fact. Mr. Flosi's opinion as to where he believes Decedent's right hand is based on his viewing of the deputies' bodyworn camera videos does not require any specialized or technical knowledge but is simply an interpretation of the video evidence, which the jury is more than capable of performing without an expert's help. *See Est. of Risher v. City of Los Angeles*, No. CV 17-00995-MWF (DTBX), 2025 WL 869028, at *6 (C.D.

1  Cal. Jan. 22, 2025) (excluding Mr. Flosi's opinion regarding the decedent's hand
2  position at the time of the shooting because his interpretation of the video evidence
3  did not require any technical or specialized knowledge and is therefore unhelpful to
4  the jury).

5  Moreover, Mr. Flosi admits that he cannot *actually see* Decedent's right hand
6  in any of the video and that neither deputy ever testified to seeing Decedent holding
7  the rifle with his right hand while he was walking down Diamond Bar Boulevard
8  (Deputy Vazquez claims he only saw Decedent bring his right arm up to the bent-
9  elbow position immediately before his first shot). (Ex. 4 to Le Decl., Flosi Dep.
10 35:21-25, 36:10-14, 40:9-19). Indeed, Mr. Flosi concedes that Deputy Barajas
11 testified that throughout her observations of Decedent, she never saw Decedent touch
12 the rifle. (*Id.* 40:9-19). However, Mr. Flosi goes on to argue that what officers
13 observed can be different than from what actually occurred. (*Id.* 41:13-42:4). While
14 that could be possible, this would be considered an after-incident acquired fact which
15 cannot be considered in the use of force analysis because the reasonableness of an
16 officer's use of force is judge *from the perspective of the officer at the scene* and is
17 based on all facts *known to the officer at the time of the use of force*. *See Glenn v.*
18 *Washington Cnty.*, 673 F.3d 864, 871, 873 n.8 (9th Cir. 2011) ("We cannot consider
19 evidence of which the officers were unaware—the prohibition against evaluating
20 officers' actions "with the 20/20 vision of hindsight" cuts both ways.").

21 Accordingly, Mr. Flosi's opinion regarding the position and placement of
22 Decedent's right hand are unsupported, contrary to the available evidence and the
23 current caselaw, and unhelpful to the trier of fact and should therefore be excluded
24 (along with any other opinions that are in part based on his speculative conclusion
25 that Decedent was holding the grip of the rifle with his right hand).
26 //
27 //
28

**C. Mr. Flosi's Opinions That Are Outside the Scope of His Expertise Should Be Excluded**

In his report, Mr. Flosi offers a reaction-perception opinion to attempt to justify the deputies' uses of deadly force despite there being no threatening or furtive movement by Decedent with the weapon prior to any of the volleys of shots by claiming that the deputies were facing a quickly paced even and were forced to make time-compressed decisions. (*See* Ex. 3 to Le Decl., Flosi Report at 36-40). However, Mr. Flosi is not a human factors or behavioral science expert and does not have any formal training regarding reaction-perception responses. Instead, he bases his opinions on an inapplicable "Tueller drill," wherein the experiment that formed the basis of the drill involved a person with an edged weapon attempting to sprint 21 feet while an officer unholsters his firearm and shoots[1], the inapplicable Learning Domain 19 (Emergency Vehicle Operations), and training and certification from the much-discredited Force Science Institute. *See Alves v. Riverside Cnty.*, No. EDCV192083JGBSHKX, 2023 WL 2983583, at *7-8 (C.D. Cal. Mar. 13, 2023) (collecting sources). As one district court found,

> The Force Science Institute is widely regarded as a purveyor of unreliable pseudoscientific analysis engineered to justify officers' use of force, and its studies, virtually all of which are non-peer reviewed and non of which have been published in reliable scientific journals, enjoy little to or no acceptions within the relevant scientific community.

*Alves*, 2023 WL 2983583, at *7.

Courts have routinely excluded police practices experts who have no educational background in science, neurology, kinesiology, biomechanics, or psychology but only training from the Force Science Institute from offering opinions

---

[1] Dennis Tueller, *How Close is Too Close?*, SWAT Magazine, March 1983, https://uapdi.com/my/docs/tueller.pdf.

1  regarding reaction-perception time because they are not qualified to offer such
2  opinions under *Kumho Tire Co*. *See Tovar v. City of San Jose*, No. 5:21-CV-02497-
3  EJD, 2024 WL 4280950, at *21–22 (N.D. Cal. Sept. 24, 2024) (precluding defense's
4  police practices expert from offering opinions based on scientific principals or
5  analyses, including opinions regarding perception-reaction time due to lack of
6  education, experience, and reliable methodology, despite expert being accredited by
7  Force Science Institute); *Alves*, 2023 WL 2983583, at *7 (precluding defense's
8  former police officer expert from testifying on topics of behavioral science, including
9  time compression, because his accreditation from the Force Science Institute did not
10 meet the *Daubert* standard for admissibility); *Dominguez v. City of Los Angeles*, No.
11 CV174557DMGPLAX, 2018 WL 6164278, at *7–8 (C.D. Cal. Oct. 9, 2018)
12 (precluding Mr. Flosi from offering opinions on perception-reaction time and
13 "reactionary gap" despite his claims that they are "well-known law enforcement
14 principle(s)" because police academies and training organizations are not the
15 "relevant scientific community" for such concepts under *Kumho Tire Co.*).
16 Additionally, Mr. Flosi's point that the deputies were face with a quick-paced event
17 and were forced to make time-compressed decisions is obvious and could easily be
18 understood by a jury without an expert reiterating this fact. *See Sanchez v. Jiles*, No.
19 CV1009384MMMOPX, 2012 WL 13005996, at *35 (C.D. Cal. June 14, 2012)
20 (precluding defense's human factors expert from offering opinions regarding the fast-
21 moving, dynamic situation and the difficulty in immediately responding to outside
22 stimuli as something a jury could obviously appreciate from every day life
23 situations). Accordingly, Mr. Flosi's opinions regarding perception-reaction times,
24 reactionary gaps, and related concepts as well as opinions based on those concepts
25 should be excluded as they are outside the area of his expertise and are unhelpful to
26 the trier of fact.
27 //
28

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court preclude defense police practices expert Edward T. Flosi from offering the opinions discussed herein.

Respectfully submitted,

DATED: January 5, 2026        LAW OFFICES OF DALE K. GALIPO

By  */s/ Hang D. Le*
  Dale K. Galipo
  Hang D. Le
  Attorneys for Plaintiff

10                    2:24-cv-04805-MCS-KS
PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY OF DEFENSE EXPERT EDWARD T. FLOSI FROM TRIAL