# Exhibit 2

```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA

                             --oOo--


JENNIE QUAN, individually and as
successor in interest to BENJAMIN
CHIN, deceased,

          Plaintiffs,

vs.                            Case No.  No. 2:24-cv-04805-MCS-KS

COUNTY OF LOS ANGELES;
MARISOL BARAJAS; HECTOR
VASQUEZ; and DOES 3-10, inclusive,

          Defendants.
_____/



           STENOGRAPHIC REPORTER'S TRANSCRIPT OF

           REMOTE DEPOSITION OF JOEL SUSS, Ph.D.

                  TUESDAY, NOVEMBER 25, 2025






Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No.  21900
```

|   |   |
|---|---|
| 1 | APPEARANCES (Remote) |
| 2 | |
| 3 | FOR THE PLAINTIFFS: |
| 4 |     LAW OFFICES OF DALE K. GALIPO<br>    BY:  DALE K. GALIPO, ESQ. |
| 5 |         HANG LE, ESQ.<br>    21800 Burbank Boulevard, Suite 310 |
| 6 |     Woodland Hills, California 91367<br>    818.347.3333 |
| 7 |     dalekgalipo@yahoo.com<br>    hlee@galipolaw.com |
| 8 | |
|   | FOR THE DEFENDANTS: |
| 9 | |
|   |     HURRELL CANTRALL LLP |
| 10 |     BY:  JERAD MILLER, ESQ.<br>    725 S. Figueroa Street, Suite 3800 |
| 11 |     Los Angeles, California 90017<br>    213.426.2000 |
| 12 |     jjmiller@hurrellcantrall.com |
| 13 | |
|    | --oOo-- |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

1  Q. In watching the video, would you agree it does
2  not appear that Mr. Chin turns towards Deputy Vasquez?
3  A. I agree.
4  Q. And would you agree, in watching the video, it
5  does not appear that Mr. Chin is raising the gun in
6  anyone's direction?
7  A. I agree.
8  Q. So on page -- oh, and by the way, in Deputy
9  Barajas's deposition, did you note that she stated she
10 never actually saw Mr. Chin touching the gun?
11 A. Yes.
12 Q. So on page 8, section 3, you have an
13 introduction; is that right?
14 A. Yes.
15 Q. And you are including, on page 8, some things
16 that were alleged in the complaint?
17 A. Yes.
18 Q. And then on page 9, you're indicating the
19 different sections of your report?
20 A. Yes.
21 Q. And starting on page 10, you're describing
22 Deputy Barajas' perceptions and actions?
23 A. Yes.
24 Q. And some of that would include the fact that
25 she admitted she never saw the weapon pointed or raised.

```
 1    Those would be some of the factors; correct?
 2         A.   Yes.
 3         Q.   And she also indicated that she never saw
 4    Mr. Chin manipulating the weapon.  Do you remember that?
 5         A.   Yes.
 6         Q.   And the section we just talked about, that
 7    "she," meaning Deputy Barajas, never actually saw him
 8    touching the firearm.  Do you recall that, as well?
 9         A.   I recall that, but I would just clarify that
10    that doesn't mean that she didn't think that he was
11    holding the firearm.
12         Q.   Do you recall --
13              (Simultaneous speakers.)
14    BY MR. GALIPO:
15         Q.   Go ahead.  I'm sorry.
16         A.   I'm just trying to make the distinction between
17    the fact that someone could have their hands well away
18    from the firearm, and you can say they're not holding
19    it; but she couldn't see where his right hand was in
20    relation to the firearm, so he -- he may have been
21    holding it, but she couldn't tell if that was the case.
22         Q.   Okay.
23         A.   She couldn't tell for sure.
24         Q.   Okay.  That's fair.
25              I think she said something like, "I didn't see
```

1   him holding it, but it was within reaching distance."

2   Do you remember that?

3        A.   Yes.

4        Q.   And did you note, in several of her

5   descriptions of what was occurring, her using the word

6   "panic" or "panicking"?

7        A.   I did note that she used that word, yes.

8        Q.   I think she referenced that she was panicking

9   even before she got to the scene.  Do you recall that?

10       A.   Yes.

11       Q.   And then she also said she was panicking at

12  different times during the event, after arriving on

13  scene?

14       A.   Yes.

15       Q.   I think even after her first shot she said she

16  was panicking, again.  Do you recall that?

17       A.   I think she said she was panicked.  She felt

18  panicked.  Yes.

19       Q.   Panicked.  Fair enough.

20            You reference on page 11 of your report, when

21  you're describing Deputy Barajas's perceptions and

22  actions, 4.123, a time when she was considering using

23  the Taser.  Do you see that?

24       A.   Yes, I do.

25       Q.   In 4.126 -- this is the reference I think we

Joel Suson, M.D.

1      A.   I agree.
2      Q.   The right hand appears to be out of view at
3  times in the video.  Is that a fair statement?
4      A.   Yes.  I -- I think that it's out of view most
5  of the time until after the -- the shots had -- like the
6  shot sequence had ended.  I think that's fair.
7      Q.   Okay.  Would you agree, in the video, you
8  cannot actually see his right hand holding the weapon?
9      A.   Yes, I agree.
10     Q.   And then starting on page 13, you have a
11 section that describes Deputy Vasquez's perception and
12 actions; correct?
13     A.   Correct.
14     Q.   And this part that you described earlier in his
15 deposition about him observing Mr. Chin turning towards
16 him, would that be somewhere between his first shot and
17 second shot, if you recall?
18     A.   I -- to the best of my recollection, yes.
19     Q.   And is that something that you documented in
20 your report, that he said that in his deposition?
21     A.   No, it was not.  And I believe that the reason
22 was that I don't think I had received his deposition by
23 the time I submitted my report.
24     Q.   Okay.
25     A.   That's -- yes.

```
1      A.   Yes.
2      Q.   What gave you that impression, from watching
3  the video?
4      A.   That he paused or slowed down his walking, his
5  forward motion, at some stages.  And, yes, that slight
6  bending forward.
7      Q.   Okay.  And then going to page 19 of your -- of
8  your report, have you section 6?
9      A.   Yes.
10     Q.   And this is the immediate threat analysis?
11     A.   Yes.
12     Q.   Do you hold yourself out to be a police
13  practices expert?
14     A.   No.
15     Q.   Are you aware of the California POST standards
16  with respect to the use of deadly force?
17     A.   No.  I'm aware of the department's use of force
18  standards.
19     Q.   Their policy?
20     A.   Yes, their policy.
21     Q.   Okay.  But it sounds like you're not familiar
22  with the California POST standards with respect to the
23  use of deadly force.  Is that generally a fair
24  statement?
25     A.   Yes.  I -- in as far as if you ask me specific
```

```
 1   shot number five in this sequence analysis?
 2       A.   So I didn't continue the analysis of the
 3   decedent's behavior after shot five, because after shot
 4   five, he fell to the ground, and the deputies didn't
 5   fire anymore after that.
 6       Q.   Oh, I see.
 7            Is there a reason why you didn't say "prior to
 8   shot five," for example?  Because number one says "prior
 9   to shot one."  I was just curious.
10       A.   No.  I just -- I just felt that it would be
11   easier for the reader to understand that -- what I was
12   talking about was prior -- sorry -- after shot number
13   four and leading up to shot number five.
14       Q.   Okay.  Thank you.
15            And you told me this, I think already, but you
16   cannot see -- actually see Mr. Chin's right hand
17   gripping the rifle in the videos; true?
18       A.   Correct.
19       Q.   And you would at least agree that Deputy
20   Barajas never said she saw his right hand gripping the
21   rifle; is that fair?
22       A.   That is fair.
23       Q.   And then now I'm on page 29.
24       A.   I -- I just -- sorry.  I just want to make one
25   clarification.
```

| | |
|---|---|
| 1 | perspective or a trajectory of his shots?  What is it |
| 2 | attempting to show? |
| 3 |     A.   Yes.  The -- the line of fire that he would |
| 4 | have taken, and showing their closeness or -- or |
| 5 | distance from the stopped vehicles in Deputy -- where |
| 6 | Deputy Barajas was. |
| 7 |     Q.   Okay.  So if the -- Mr. Chin was walking |
| 8 | northbound in the southbound lane, as indicated here, |
| 9 | given Deputy Vasquez's position, he would have been, |
| 10 | when firing, essentially, the back left side of |
| 11 | Mr. Chin.  Does that sound correct? |
| 12 |     A.   Yes.  He was behind him and to his left. |
| 13 |     Q.   Going to page 36 of your report, you have a |
| 14 | section that "the deputies' determination that deadly |
| 15 | force was necessary"; correct? |
| 16 |     A.   Yes. |
| 17 |     Q.   And you actually cite a portion of a Penal Code |
| 18 | Section at 9.2.1, Section 835(a)? |
| 19 |     A.   Yes. |
| 20 |     Q.   You don't intend to give any testimony as to |
| 21 | the California law in this case, do you? |
| 22 |     A.   No, I'm not a lawyer. |
| 23 |     ==Q.==   ==I take it you, yourself, have actually never== |
| 24 | ==been a police officer, have you?== |
| 25 |     ==A.==   ==No, I have not.== |

```
1      Q.   And I think you've told me this, but you have
2   never qualified in court as a police practice expert,
3   have you?
4      A.   I have not.
5      Q.   Have you ever qualified in court, to date, as
6   an expert to give any opinions in an officer-involved
7   shooting case?
8      A.   No.  I have not appeared in court for any case.
9      Q.   At the bottom of page 37 of your report,
10  section 9.4.6 --
11     A.   Yes.
12     Q.   -- you talk about that had the decedent stopped
13  or if his right hand, you know, was away from the
14  wife -- the rifle, you would have expected the deputies
15  to communicate with the decedent, to deescalate the
16  situation, things of that nature.  Do you see that?
17     A.   I do.
18     Q.   But again, you're not planning on giving police
19  practice-type opinions, are you?
20     A.   No.
21     Q.   And then on page 38 of your report, section 10,
22  you have a summary?
23     A.   Yes.
24          MR. GALIPO:  Jerad, do you have any questions
25  of the witness today?
```

```
 1  STATE OF CALIFORNIA)
                        ) ss:
 2  COUNTY OF BUTTE     )

 3
              I, KIMBERLY E. D'URSO, do hereby certify:
 4

 5            That the witness named in the foregoing

 6  deposition was present remotely and duly sworn to testify

 7  to the truth in the within-entitled action on the day and

 8  date and at the time and place therein specified;

 9            That the testimony of said witness was reported

10  by me in shorthand and was thereafter transcribed through

11  computer-aided transcription;

12            That the foregoing constitutes a full, true and

13  correct transcript of said deposition and of the

14  proceedings which took place;

15            Further, that if the foregoing pertains to the

16  original transcript of a deposition in a federal case,

17  before completion of the proceedings, review of the

18  transcript [ ] was [ ] was not requested.

19            That I am a certified stenographic reporter and

20  a disinterested person to the said action;

21            IN WITNESS WHEREOF, I have hereunder subscribed

22  my hand this 11th day of December, 2025.
                         /s/ Kimberly D'Urso
23  _____

24  KIMBERLY D'URSO, CSR NO. 11372, RPR

25
```

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 39