# Exhibit 4

```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                         --oOo--

 4

 5   JENNIE QUAN, individually and as
     successor in interest to BENJAMIN
 6   CHIN, deceased,

 7           Plaintiffs,

 8   vs.                          Case No.  No. 2:24-cv-04805-MCS-KS

 9   COUNTY OF LOS ANGELES;
     MARISOL BARAJAS; HECTOR
10   VASQUEZ; and DOES 3-10, inclusive,

11           Defendants.
     _____/
12

13

14         STENOGRAPHIC REPORTER'S TRANSCRIPT OF

15            REMOTE DEPOSITION OF EDWARD FLOSI

16                TUESDAY, NOVEMBER 25, 2025

17

18

19

20

21

22   Reported Stenographically by:

23   KIMBERLY D'URSO, CSR 11372, RPR

24   Job No.  21900

25
```

```
 1                APPEARANCES (Remote)

 2

 3   FOR THE PLAINTIFFS:

 4        LAW OFFICES OF DALE K. GALIPO
          BY:  DALE K. GALIPO, ESQ.
 5             HANG LE, ESQ.
          21800 Burbank Boulevard, Suite 310
 6        Woodland Hills, California 91367
          818.347.3333
 7        dalekgalipo@yahoo.com
          hlee@galipolaw.com
 8
     FOR THE DEFENDANTS:
 9
          HURRELL CANTRALL LLP
10        BY:  JERAD MILLER, ESQ.
          725 S. Figueroa Street, Suite 3800
11        Los Angeles, California 90017
          213.426.2000
12        jjmiller@hurrellcantrall.com

13
                     --oOo--
14

15

16

17

18

19

20

21

22

23

24

25
```

Edward Flosi

```
 1   Mr. Chin, based on his training?
 2          Do you recall that testimony?  I believe it's
 3   on page 45 and 46 of Vasquez's deposition.
 4      A.  I don't recall that testimony, specifically.
 5      Q.  Do you agree with that testimony, that if
 6   Mr. Chin was walking northbound, with the rifle slung
 7   around his neck, and pointed down, and had not grabbed
 8   the rifle, raised the rifle, or turned towards Vasquez
 9   or anyone with the rifle, it would have been
10   inappropriate to shoot him?
11      A.  Not entirely.  Based on the video review, it's
12   clear to me that Mr. Chin had his right hand on the
13   rifle, and he was still moving toward people with the
14   weapon, after being commanded several times to, "Drop
15   the weapon."  It was known that he had already fired the
16   weapon, and he had already harmed somebody.
17          I think a reasonable officer could conclude
18   that Mr. Chin was moving toward the people in the parked
19   cars or stopped cars, and was causing an imminent threat
20   at that point.
21      Q.  Could you actually see Mr. Chin's right hand in
22   the video?
23      A.  See his hand?  No.  I could see his elbow and
24   the way it's situated, which would cause me to believe
25   that he's holding onto the grip portion of the rifle.
```

1    Q.   Would you agree that, in terms of interpreting
2    what the video shows, that a jury or fact finder would
3    be capable of doing that?
4    A.   I don't know.  It would depend on their
5    knowledge of firearms.
6    Q.   Well, in terms of where his arm or hand is, do
7    you think you have any superior knowledge to a judge or
8    a jury as to that point in watching a video?
9    A.   It would depend on their knowledge of firearms.
10   Q.   Can you actually see Mr. Chin's hand on any
11   part of the firearm in any of the videos?
12   A.   No.  Mr. Chin's body is blocking the right hand
13   from Vasquez's video, and it's not in view from
14   Barajas's video.
15   Q.   And Barajas's deposition testimony is that he
16   never touched the firearm; is that fair?
17   A.   Again, I don't remember that part.
18   Q.   Okay.  Have you reviewed the Court's summary
19   judgment order in this case?
20   A.   No.
21   Q.   In terms of the injured someone, you're talking
22   about the information about the stabbing?
23   A.   Yes, when he stabbed his mother.
24   Q.   Right.  Would you at least agree, based on the
25   information the officers had at the time, they didn't

Edward Osi

1  recall saying that he never touched the gun, but it was
2  within his reach?"
3          Answer:  "Yes."
4          Question:  "Is that your recollection?"
5          Answer:  "Yes."
6          Do you see that?
7          THE WITNESS:  I see that.
8  BY MR. GALIPO:
9      Q.   So does that at least refresh your recollection
10 that in her deposition testimony, she confirmed her
11 statement testimony that he had never touched the gun?
12     A.   That she never saw his hand touching the gun.
13     Q.   Right.
14     A.   It doesn't mean that his hand didn't touch the
15 gun.
16     Q.   Right.  Would you agree, at least according to
17 Deputy Barajas, she never saw Mr. Chin touch the gun?
18     A.   According to this statement, she never saw him
19 touching the gun.
20     Q.   And do you have an understanding as to how long
21 Deputy Barajas was observing Mr. Chin, before the first
22 shot, approximately?
23     A.   She gave him seven commands to, "Drop the
24 weapon," over about 19 seconds, before the first shot.
25     Q.   Okay.  And then I think you told me from the

```
 1   first shot to the last shot was approximately 10
 2   seconds?
 3        A.   Yes, approximately.
 4        Q.   Adding those together, 19 plus 10, would be
 5   approximately 29 seconds?
 6        A.   From the time that the first --
 7             (Simultaneous speakers.)
 8   BY MR. GALIPO:
 9        Q.   She first saw him to the last shot.
10        A.   I don't know if that's when she first saw him.
11   Her first warning was about 19 seconds before the first
12   shot.
13        Q.   Okay.  So whatever time period that she saw him
14   before the shooting or during the shots, at least
15   according to Deputy Barajas, she never saw him touch the
16   gun; is that fair?
17        A.   She never saw his hand on the gun, but it
18   doesn't mean that she could see the hand on the gun.
19        Q.   Her testimony was she never saw him touch the
20   gun.  Those are the words.  True?
21        A.   Yes.  But that doesn't exclude the fact that
22   the body, Mr. Chin's body, and the way he was holding
23   the weapon could have precluded her from seeing the hand
24   on the gun.
25        Q.   You're saying that his hand could have been on
```

1   the gun and she might just not have seen that.  Is that
2   what you're saying?
3        A.   That is certainly a possibility, based on what
4   I have seen on the video from Vasquez's view.
5        Q.   Would you agree that, in watching the video,
6   Mr. Chin's right arm does not change position when he's
7   walking northbound on Diamond Bar, all the way up until
8   the time of the first shot?
9        A.   It appears that his right arm is bent at the
10  elbow, and the forearm is in the direction of where I
11  would anticipate the grip for the rifle to be.
12       Q.   So it looks like the same position, from
13  watching the video, during the time he's walking?
14       A.   I didn't see any significant movement of the
15  right arm.
16       Q.   Did you see any movement of the right arm
17  during the shooting sequence before the last shot?
18       A.   I don't recall any significant movement up
19  until the point where he started to bend and then follow
20  her.
21       Q.   And then with respect to Deputy Vasquez's
22  deposition, do you have that handy somewhere?
23       A.   I do.
24       Q.   So looking at page 30 of Deputy Vasquez's
25  deposition transcript, and this is where he's talking

```
STATE OF CALIFORNIA)
                    ) ss:
COUNTY OF BUTTE     )
```

I, KIMBERLY E. D'URSO, do hereby certify:

That the witness named in the foregoing deposition was present remotely and duly sworn to testify to the truth in the within-entitled action on the day and date and at the time and place therein specified;

That the testimony of said witness was reported by me in shorthand and was thereafter transcribed through computer-aided transcription;

That the foregoing constitutes a full, true and correct transcript of said deposition and of the proceedings which took place;

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

That I am a certified stenographic reporter and a disinterested person to the said action;

IN WITNESS WHEREOF, I have hereunder subscribed my hand this 11th day of December, 2025.

_____

KIMBERLY D'URSO, CSR NO. 11372, RPR