**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS-KS<br><br>Assigned to:<br>Hon Mark C. Scarsi<br>Hon. Mag. Judge Karen L. Stevenson<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1 TO EXCLUDE OR LIMIT THE OPINIONS OF BENNET OMALU, MD**<br><br><u>Final Pretrial Conference</u>:<br>Date:  January 26, 2026<br>Time:  2:00 p.m.<br>Crtrm: 7C<br><br><u>Trial</u>:<br>Date:  February 10, 2026 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This civil rights case arises out of the officer-involved shooting death of Benjamin Chin ("Decedent") by Los Angeles County Sheriff's Department Deputies Marisol Barajas and Hector Vazquez on June 19, 2023. Jennie Quan, Decedent's mother and the plaintiff in this case, brings claims for Fourth Amendment – Excessive Force (42 U.S.C. § 1983), state law battery, state law negligence, and violation of California Civil Code section 52.1 (Bane Act). Under Plaintiff's Fourth Amendment Excessive Force claim, Plaintiff seeks survival damages, including pre-death pain and suffering and loss of life. *See Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102–03 (9th Cir. 2021); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014). Plaintiff further seeks survival damages, including pre-death pain and suffering, under Plaintiff's state law claims. *See* Cal. Civ. Proc. Code § 377.34. Defendants have moved to exclude or limit Plaintiff's forensic pathology expert, Dr. Bennet Omalu, from offering his opinions at trial. For the reasons discussed herein, Plaintiff opposes Defendants' motion in its entirety.

## II. ARGUMENT

### A. Dr. Omalu's Statement Regarding the Delay in Medical Care is Admissible

Defendants misapprehend Dr. Omalu's statement regarding the delay in medical care to Decedent. Dr. Omalu's statement regarding the delay in medical care was simply an observation from the video evidence—one of which is apparent and uncontroverted—from which he partly bases his opinions regarding Decedent's pain and suffering. *See A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4431982, at *2 (S.D. Cal. July 31, 2020) (allowing defendants' police practices expert to testify to what he observed in the videos because those formed the basis for his opinions as to whether the officers acted appropriately). Dr. Omalu is not

attempting to opine on the propriety of the delay or give an opinion as to whether the delay is a basis for liability under Plaintiff's claims. He is simply observing that from the video evidence, there appears to be a delay of a few minutes for medical treateement to Decedent and that, based on his experience and expertise, Decedent experienced pain and suffering from that delay.

### B. Dr. Omalu's Opinions Regarding The Trajectory of Decedent's Gunshot Wounds are Relevant and Admissible

Dr. Omalu is qualified to render opinions regarding the trajectory of Decedent's gunshot wounds and which wounds are entrance or exit wounds. Dr. Omalu is a forensic pathologist who has "been involved in over 15,000 death and injury investigations" and has "personally conducted and performed over 13,000 autopsies and death investigations." (Ex. A to Le Decl., Omalu Report at 2). He has also "perform[ed] trauma pattern analysis in both living patients and deceased patients to determine causes and mechanisms of sustenance of injuries and death." (*Id.*). Further, he has "consulted and [been] retained as an expert witness in 2,000-3,000 cases involving all types of medico-legal cases across all jurisdictionsn in the United States." (*Id.*). His work as a forensic pathologist and expert consultant requires the knowledge of ballistics and gunshot evidence, subjects which other courts have permitted forensic pathologists, including Dr. Omalu, to opine. *See Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1057–58, 1058-59 (9th Cir. 2024) (acknowledging that forensic pathologists "commonly testify" as to decedent's body positioning in police excessive force shooting cases and that the forensic pathologist qualified to render opinions regarding the locations and positions of the individuals involved in the shooting); *Barber v. Cnty. of San Bernardino*, No. EDCV 22-00625-KK-DTBX, 2026 WL 76305, at *6 (C.D. Cal. Jan. 7, 2026); *Ibarra v. Lee*, No. 4:20-CV-598-JDR-SH, 2025 WL 2817639, at *2 (N.D. Okla. Sept. 30, 2025) (collecting cases); *Murillo v. City of Los Angeles*, No. CV218738FMOAGRX, 2023 WL

9420539, at *2 (C.D. Cal. Aug. 21, 2023); *Barillas v. City of Los Angeles*, No. CV 18-08740-CJC (ASX), 2021 WL 4434977, at *13 (C.D. Cal. Apr. 12, 2021). Accordingly, Dr. Omalu is qualified to offer opinons regarding the trajectory and entrance and exit wounds of Decedent's gunshot wounds.

     Moreover, Dr. Omalu's testimony regarding gunshot trajectory is relevant and not cumulative of other evidence. Defendants contend that the autopsy report already lists the trajectory of the gunshot wounds, but Dr. Omalu's opinions connect the trajectory to the likely body positioning of the Decedent at the time he sustained the gunshot wounds, based on trajectory and the appearance of entrance/exit wounds. His opinions are relevant in the context of this case because, despite there being no dispute as to trajectory and the appearance of entrance and exit gunshot wounds, there remains a dispute as to Decedent's body positioning at the time he sustained the gunshot wounds. Deputy Barajas contends that she shot Decedent in part because he was advancing towards her. Deputy Vazquez contends that at the time of his second shot, Decedent had turned in Deputy Vazquez's direction and was facing Deputy Vazquez, such that the front of Decedent's upper body was center-mass to Deputy Vazquez. Additionally, Plaintiff has the burden to of proof that the defendant deputies caused injury, harm, or death to the Decedent. Since there are two shooters, Plaintiff must show that both shooters were in part responsible for Decedent's injury, harm, or death.

     Dr. Omalu's opines that the shooter who fired the bullet that caused injury to Decedent's front abdomen/pelvis was not directly in front of or directly perpendicular to Decedent, but rather was located to the left of the front of Decedent and Decedent was not walking directly towarsds the shooter at the time the shot was sustained. (Ex. A to Le Decl., Omalu Report at 11). This helps Plaintiff establish that Deputy Barajas fired the shot that struck Decedent's abdomen/pelvis and that Decedent was not advancing towards Deputy Barajas at the time of the shot. Dr. Omalu further opines

that the shooter who fired the bullet that entered Decedent's back was located behind Decedent and to his left. (*Id.*). Dr. Omalu also opines that Decedent was not facing the shoooter and was bvent over in some manner or beginnign to fall to the ground when he sustained the gunshot wound to the back. (*Id.*) This helps Plaintiff establish that Deputy Vazquez fired the shot that struck Decedent in the back and that Decedent had not turned to face Deputy Vazquez at the time of the shot. Accordingly, Dr. Omalu's opinions regarding bullet trajectory and body positioning are relevant and admissible.

### C. Dr. Omalu's Opinions Regarding Decedent's Pre-Death Pain and Suffering are Relevant and Admissible

Defendants arguments for exluding Dr. Omalu's opinions regarding Decedent's pain and suffering (that Dr. Omalu's opinions are unreliable because he fails to provide a sufficient explanation for his findings and fails to consider certain mitigating factors, that his opinions have no probative value because videos exists of Decedent after the shooting, and that his opinions regarding Decedent's pain and suffering before the shooting is unreliable) are unpersuasive.

First, Dr. Omalu has provided sufficient explanation and reasoning that form the bases for his opinions regarding Decedent's pre-death pain and suffering. Dr. Omalu states in his report that "[i]t is a generally accepted princple and common knwoldge in medicine and forensic pathology that specific traumatic events generate predictable, reproducible, and specific patterns of trauma and injuries…[including] the patterns of traumas/injuries generated by blunt force impacts, gunshots, firearms and ballistic weapons…" (Ex. A to Le Decl., Omalu Report at 12). Further, he goes on to explain the patho-physiology of conscious pain and suffering, stating that conscious pain and suffering, initiated by nerve endings in the soft tissues and organs, can be elicted by three types of stimuli: mechanical, thermal, and chemical and noted that a person can experience both mechanical and chemical pain stimuli from gunshot

1 wounds. (*Id.* at 12-15). He applies these principles to Decedent's pain and suffering
2 by observing that when Decedent encountered the deputies, he was not expericing
3 any neurological disease or drug intoxication and that he suffered blunt force trauma
4 and gunshot woudns that caused physical and mechanical somatic pain which was
5 transmitted to the brain to cause conscious somatic pain and suffering, which in turn
6 solicited biochemical pain and suffering. (*Id.* at 15-19). He further notes that
7 Decedent did not die immediately as a result of the gunshot wounds, that he can be
8 seen mocing and responding to officers when they approached him after the shooting,
9 and thus Decedent continued to experience pain and suffering for a significant
10 amount of time as "the human body continues to expereicne debilitating trauma-
11 induced and physiologic chemical pain and suffering until there is a complete
12 cessation of all bodily functions and death." (*Id.* at 17-19). Courts have found such
13 detailed discussion and explanation of the concept of pain and suffering and how it
14 relates to gunshot wounds or blunt force trauma to be sufficeint to support Dr.
15 Omalu's opinions on pain and suffering. *See Ibarra*, 2025 WL 2817639, at *5;
16 *Murillo*, 2023 WL 9420539, at *3; *A.B.*, 2020 WL 4430971, at *7.

17       To the extent that Dr. Omalu fails to quantify measurements of pain and
18 suffering, "[t]hat Dr. Omalu cannot testify about decedent's pain and suffering with
19 exact precision does not render his testimony inadmissible" and the lack of precision
20 goes to the weight of Dr. Omalu's testimony rather than its admissibility. *Murrillo*,
21 2023 WL 9420539, at *3 (citing *In re Toyota Motor Corp. Unintended Acceleration*
22 *Mktg., Sales Pracs., & Prod. Liab. Litig.*, 978 F.Supp.2d 1053, 1080 (C.D. Cal.
23 2013)); *Ibarra*, 2025 WL 2817639, at *5. Additionally, to the extent that Defendants
24 contend Dr. Omalu fails to consider factors that may have mitigated Decedent's pain
25 and suffering, that goes to the weight of the Dr. Omalu's opinions, not its
26 admissibility. *See Barber*, 2026 WL 76305, at *6 ("To the extent Defendants argue
27 Dr. Omalu's testimony is not credible or corroborated by the evidence, such concerns
28

go to the weight of the testimony, and therefore, are properly addressed by cross examination).

Moreover, Dr. Omalu's testimony is relevant and would be helpful to the trier of fact. Plaintiff seeks damages on behalf of Decedent for his pre-death pain and suffering under all of Plaintiff's claims. The extent of Decedent's pain and suffering and the range of time that Decedent experienced pain and suffering is directly relevant to the degree of force used, the extent of Decedent's injuries, and calculation of damages, even though there exist videos capturing Decedent after the shooting. *See Barber*, 2026 WL 76305, at *6 (Dr. Omalu's pain and suffering testimony "relevant to assist the jury in assessing the degree of force used and the extent of [p]laintiff's injuries" in a police shooting case, despite the plaintiff being available to testify on his subjective experience on the matter); *Murrillo*, 2023 WL 9420539, at *2 (Dr. Omalu's pain and suffering testimony helpful to the jury to understand the extent of decedent's pain and suffering from the time he was shot until the time he died); *A.B.*, 2020 WL 4430971, at *7 (Dr. Omalu's pain and suffering testimony informative to the degree of force used by defendants and extent of survival damages).

Lastly, Dr. Omalu's opinions regarding Decedent's pain and suffering before the shooting is sufficiently reliable. Dr. Omalu notes that there is no evidence that Decedent was suffering from neurological disease or drug intoxication at the time of the incident and thus, he had "the mental capacity and learned behavior to classify the presence of the police officer, their guns and weapons…the firing and explosive noises of the gun(s), and the bullets hitting him as imminent dangers and threats to his life." (Ex. A to Le Decl., Omalu Report at 15). His opinions on these matters are based on his expertise in forensic pathology, as he states, "This mental awareness of imminent danger initiated the nor-adrenergic and adrenergic biochemical neural responses of fear, right, and flight…[which] caused high levels of mental pain and

suffering." (*Id.*). Such testimony regarding pain and suffering has been found to be admissible. *See A.B.*, 2020 WL 4430971, at *8.

### III. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion in Limine to limit or exclude the the opinions of Dr. Omalu in its entirety.

Respectfully submitted,

DATED: January 12, 2026        LAW OFFICES OF DALE K. GALIPO

                     By         */s/ Hang D. Le*
                        Dale K. Galipo
                        Hang D. Le
                        Attorneys for Plaintiff