1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

9

10  JENNIE QUAN, individually and as successor in interest to BENJAMIN
11  CHIN, deceased,
12                                    Plaintiffs,
13  vs.
14
15  COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR
16  VAZQUEZ; and DOES 3-10, inclusive,
17                                    Defendants.
18
19

Case No. 2:24-cv-04805-MCS-KS

*Assigned to*:
Hon Mark C. Scarsi
Hon. Mag. Judge Karen L. Stevenson

**[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER**

Trial Date:    February 10, 2026

Final Pre-Trial Conference: January 26, 2026

Judge:        Hon. Mark C. Sarsi

20
21
22
23
24
25
26
27
28

1

## TABLE OF CONTENTS

2  1.  THE PARTIES AND PLEADINGS ..................................................................3

3  2.  JURISDICTION ...........................................................................................3

4  3.  TRIAL DURATION ......................................................................................3

5

6  4.  JURY TRIAL ...............................................................................................3

7  5.  ADMITTED FACTS ......................................................................................4

8  6.  STIPULATED FACTS ...................................................................................4

9  7.  PARTIES' CLAIMS AND DEFENSES ...............................................................4

10

11  8.  REMAINING TRIABLE ISSUES ...................................................................18

12  9.  DISCOVERY ..............................................................................................19

13  10.  DISCLOSURES AND EXHIBIT LIST ............................................................19

14  11.  WITNESS LIST ..........................................................................................19

15

16  12.  MOTIONS IN LIMINE ................................................................................20

17  13.  BIFURCATION ..........................................................................................20

18  14.  ADMISSIONS .............................................................................................20

19

20

21

22

23

24

25

26

27

28

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure, Rule 16 and Local Rule 16, IT IS HEREBY ORDERED:

**1.    THE PARTIES AND PLEADINGS**

Plaintiff: Jennie Quan, individually and as successor in interest to Benjamin Chin, deceased.

Defendants: County of Los Angeles, Marisol Barajas, and Hector Vazquez.

All of the defendants have been served. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings that raise the issues are:

A. Plaintiffs' First Amended Complaint. (Doc. No. 31).

B. Defendants' Answer. (Doc. No. 36.)

Plaintiff's second cause of action for Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983), third cause of action for Municipal Liability—Ratification (42 U.S.C. § 19830, fourth cause of action for Municipal Liability—Inadequate Training (42 U.S.C. § 1983), and fifth cause of action for Municipal Liability—Unconstitutional Custom or Policy (42 U.S.C. § 1983) have been dismissed.

**2.    JURISDICTION**

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. § 1367 and § 1391, and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b).

**3.    TRIAL DURATION**

Trial is estimated to take 5-7 court days.

**4.    JURY TRIAL**

The trial is to be a jury trial.

Plaintiff and Defendants shall serve and file "Agreed Upon Set of Jury Instructions and Verdict Forms" as well as the "Joint Statement re Disputed Instructions, Verdicts, etc." by no later than January 12, 2026.

**5.    ADMITTED FACTS**

The following facts are admitted and require no proof:

1.    At all relevant times, Defendant Marisol Barajas was employed as a sheriff's deputy for the Los Angeles Sheriff's Department and by the County of Los Angeles. (Defs.' Answer to FAC, Doc. No. 36 ¶ 7).

2.    At all relevant times, Defendant Hector Vazquez was employed as a sheriff's deputy for the Los Angeles Sheriff's Department and by the County of Los Angeles. (Defs.' Answer to FAC, Doc. No. 36 ¶ 8).

**6.    STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objections:

(1)    The incident occurred on June 19, 2022.

(2)    At all relevant times, Defendants Marisol Barajas and Hector Vazquez were acting within the course and scope of their employment as police officers for Los Angeles County Sheriff's Department.

(3)    At all relevant times, Defendants Marisol Barajas and Hector Vazquez were acting under color of law.

**7.    PARTIES' CLAIMS AND DEFENSES**

**Plaintiff's Claims**:

(a)    Plaintiff plans to pursue the following claims against Defendants:

**Claim 1**: Fourth Amendment—Excessive Force

**Claim 2**: Battery (Survival and Wrongful Death)

**Claim 3**: Negligence (Survival and Wrongful Death)

**Claim 4**: Violation of Cal. Civ. Code § 52.1 ("Bane Act")

(b)    The elements required to establish Plaintiff's claims are:

**Claim 1**:

1.    Marisol Barajas and Hector Vazquez Vaccari acted under color of law;

2.    Whether Marisol Barajas and Hector Vazquez used excessive force

1    against Benjamin Chin;

2    3.    Whether The excessive force caused injury, damage, loss, or harm to

3    Benjamin Chin.

4    **Claim 2**:

5    1.    Marisol Barajas and Hector Vazquez Vaccari used unreasonable force

6    against Mr. Chin;

7    2.    Marisol Barajas and/or Hector Vazquez's use of unreaosnable force was

8    a cause of injury or death to Mr. Chin.

9    **Claim 3**:

10    1.    Marisol Barajas and/or Hector Vazquez Vaccari was negligent;

11    2.    The negligence of Marisol Barajas and/or Hector Vazquez was a cause of

12    injury or death to Mr. Chin.

13    **Claim 4**:

14    1.    Marisol Barajas and Hector Vazquez Vaccari used excessive force

15    against Benjamin Chin;

16    2.    Marisol Barajas and/or Hector Vazquez intended to violate Mr. Chin's

17    rights, demonstrated by these Defendants acting with reckless disregard

18    for Mr. Chin's right to be free from excessive force;

19    3.    The use of excessive force was a cause of injury, damage, harm, or death

20    to Mr. Chin.

21    (c)    The Key Evidence Plaintiff Relies on for Each Claim

22    **Claim 1**:

23    (1) testimonies of defendants; (2) testimonies of deputies at the scene; (3)

24    testimonies of plaintiffs' expert witnesses; (4) videos capturing the incident;

25    (5) still shots from videos capturing the incident; (6) forensic evidence,

26    including autopsy report; (7) testimonies of plaintiff and damages witnesses;

27    and (8) photographs of plaintiff and the decedent.

28    **Claim 2**:

(1) testimonies of defendants; (2) testimonies of deputies at the scene; (3) testimonies of plaintiffs' expert witnesses; (4) videos capturing the incident; (5) still shots from videos capturing the incident; (6) forensic evidence, including autopsy report; (7) testimonies of plaintiff and damages witnesses; and (8) photographs of plaintiff and the decedent.

**Claim 3**:

(1) testimonies of defendants; (2) testimonies of deputies at the scene; (3) testimonies of plaintiffs' expert witnesses; (4) videos capturing the incident; (5) still shots from videos capturing the incident; (6) forensic evidence, including autopsy report; (7) testimonies of plaintiff and damages witnesses; and (8) photographs of plaintiff and the decedent.

**Claim 4**:

(1) testimonies of defendants; (2) testimonies of deputies at the scene; (3) testimonies of plaintiffs' expert witnesses; (4) videos capturing the incident; (5) still shots from videos capturing the incident; (6) forensic evidence, including autopsy report; (7) testimonies of plaintiff and damages witnesses; and (8) photographs of plaintiff and the decedent.

**Defendants' Section**

Defendants contend that the following additional elements are required for Plaintiff's claims set forth in Plaintiff's section above:

**Claim 1 - Excessive Force under The Fourth Amendment to the U.S. Constitution:**

In determining whether the officer used excessive force in this case, the jury should consider all of the circumstances known to the officer on the scene, including:

1.    the nature of the crime or other circumstances known to the officer at the time force was applied;

2.    whether Plaintiff posed an immediate threat to the safety of the officer or to others;

3.      whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

4.      the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5.      the type and amount of force used;

6.      the availability of alternative methods to subdue Plaintiff;

7.      the number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

8.      whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;

9.      whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

10.     whether there was probable cause for a reasonable officer to believe that Plaintiff was committing a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that Plaintiff was committing a crime. (Ninth Circuit Manual of Model Civil Jury Instructions §§ 9.20 & 9.25); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009); *Villanueva v. California*, 986 F.3d 1158, 1168 (9th Cir. 2021).

A. Key Evidence in Opposition to Claim 1:

(1)     Dispatch reported the following to the Defendant Deputies: the Decedent was wearing a bullet-proof vest while wielding an AR-15, he fired multiple rounds in the air, there was a stabbing victim in the area;

(2)     The Walnut Sheriff's Station received multiple 911 calls reporting the

facts and observations relayed to the Defendant Deputies described in section (1) above.

(3)    Video evidence confirms that the Decedent wielded an AR-15, wore a bullet-proof vest, stabbed the Plaintiff (his mother), and fired multiple rounds in the air;

(4)    When Barajas and Vazquez arrived to the scene, they observed the Decedent wearing a bullet-proof vest and wielding an AR-15;

(5)    Barajas, while traveling southbound on Diamond Bar Boulevard, exited her patrol vehicle after observing the Decedent walking northbound on Diamond Bar Boulevard;

(6)    Brandon Wiseman was inside his parked Tesla on Diamond Bar Boulevard next to Barajas while the Decedent walked northbound on the same street;

(7)    Vazquez equipped a shotgun loaded with slug ammunition and followed the Decedent on foot from Crooked Creek Drive to Diamond Bar Boulevard;

(8)    Vazquez encountered the Plaintiff on Crooked Creek Drive with blood on her hands, having been stabbed by the Decedent;

(9)    Vazquez and Detective Bronowicki issued several commands for the Decedent to drop his rifle prior to the Decedent arriving on Diamond Bar Boulevard, which were ignored;

(10)    While the Decedent walked northbound on Diamond Bar Boulevard, Barajas pointed her service handgun at the Decedent and issued seven warnings for him to drop his weapon;

(11)    Less-lethal ammunition was not an option because the Decedent posed a lethal imminent threat, and the Defendant Deputies believed less-lethal would be futile against the Decedent's bullet-proof vest.

(12)    The Decedent approached to within 7-10 feet of Barajas' vehicle on Diamond Bar Boulevard with his AR-15 slung around his shoulder before

Barajas fired the first shot at the Decedent;

(13)   It was unclear to Barajas whether the first shot struck and injured the Decedent because he continued walking northbound on Diamond Bar Boulevard after the first shot;

(14)   At the time of Barajas' first shot, Vazquez was approximately 30-40 feet behind the Decedent's left-flank on Diamond Bar Boulevard;

(15)   After determining that the Decedent still posed a lethal imminent threat, Vazquez and fired his first shot – the second shot in the sequence - approximately 5.649 seconds after Barajas' shot;

(16)   It was unclear to Vazquez whether his first shot injured the Decedent because the Decedent continued walking northbound on Diamond Bar Boulevard after Vazquez's first shot;

(17)   After determining that the Decedent still posed a lethal imminent threat, Barajas ordered the Decedent to drop his weapon an eighth and ninth time, and began ordering him a tenth time, before firing her second shot – the third shot in the sequence.

(18)   Barajas' second shot occurred approximately .881 seconds after Vazquez's first shot;

(19)   It was unclear to Barajas whether the first shot struck and injured the Decedent because the Decedent continued walking northbound on Diamond Bar Boulevard after Barajas' second shot;

(20)   After determining that the Decedent still posed a lethal imminent threat, Barajas fired her third shot – the fourth shot in the sequence – approximately 1.929 seconds after firing her second shot.

(21)   Barajas' third shot struck the Decedent in the lower abdomen, after which he began leaning forward;

(22)   After determining that the Decedent still posed a lethal imminent threat, Vazquez fired his second shot – the fifth and final shot in the sequence –

1   approximately 1.552 seconds after Barajas' third shot.

2   (23)   Vazquez's second shot struck the Decedent in the lower back, after

3   which the Decedent fell to the ground;

4   (24)   No additional shots were fired after the Decedent fell to the ground;

5   (25)   The responding deputies approached the Decedent and promptly began

6   rendering medical care;

7   (26)   The Decedent was transported to Pomona Valley Hospital Medical

8   Center, where he was pronounced deceased later that day.

9   **Claim 2 - Battery by Peace Officer (Deadly Force) – Essential Factual**

10  **Elements:**

11  1.   That Marisol Barajas and Hector Vazquez intentionally touched

12  Benjamin Chin;

13  2.   That Marisol Barajas and Hector Vazquez used deadly force on

14  Benjamin Chin;

15  3.   That Marisol Barajas' and Hector Vazquez' use of deadly force was not

16  necessary to defend human life;

17  4.   That Benjamin Chin was killed; and

18  5.   That Marisol Barajas' and Hector Vazquez' use of deadly force was a

19  substantial factor in causing Benjamin Chin's death.

20  Marisol Barajas and Hector Vazquez use of deadly force was necessary to

21  defend human life only if a reasonable officer in the same situation would have

22  believed, based on the totality of the circumstances known to or perceived by Marisol

23  Barajas and Hector Vazquez at the time, that deadly force was necessary to defend

24  against an imminent threat of death or serious bodily harm to Marisol Barajas and

25  Hector Vazquez or to another person or to apprehend a fleeing person for a felony,

26  when all of the following conditions are present:

27  i. The felony threatened or resulted in death or serious bodily injury to another;

28  ii. Marisol Barajas and Hector Vazquez reasonably believed that Benjamin

1   Chin would cause death or serious bodily injury to another unless immediately

2   apprehended; and

3          iii. If practical under the circumstances, Marisol Barajas and Hector Vazquez

4   made reasonable efforts to identify themselves as peace officers and to warn that

5   deadly force would be used, unless the officers had objectively reasonable grounds to

6   believe Benjamin Chin was aware of those facts.

7          A peace officer must not use deadly force against persons based only on the

8   danger those persons pose to themselves, if an objectively reasonable officer would

9   believe the person does not pose an imminent threat of death or serious bodily injury

10  to the peace officers or to another person.

11         "Deadly force" means any use of force that creates a substantial risk of

12  causing death or serious bodily injury, including, but not limited to, the discharge of a

13  firearm.

14         A threat of death or serious bodily injury is "imminent" when, based on the

15  totality of the circumstances, a reasonable officer in the same situation would believe

16  that a person has the present ability, opportunity, and apparent intent to immediately

17  cause death or serious bodily injury to the peace officer or another person. An

18  imminent harm is not merely a fear of future harm, no matter how great the fear and

19  no matter how great the likelihood of the harm, but is one that, from appearances,

20  must be instantly confronted and addressed.

21         "Totality of the circumstances" means all facts known to the peace officer at

22  the time, including the conduct of Marisol Barajas and Hector Vazquez and Benjamin

23  Chin leading up to the use of deadly force. In determining Marisol Barajas and

24  Hector Vazquez' use of deadly force was necessary in defense of human life, you

25  must consider the Marisol Barajas and Hector Vazquez tactical conduct and decisions

26  before using deadly force on Benjamin Chin and whether Marisol Barajas and Hector

27  Vazquez used other available resources and techniques as alternatives to deadly

28  force, if it was reasonably safe and feasible to do so. You must also consider whether

Marisol Barajas and Hector Vazquez knew or had reason to know that Benjamin Chin was suffering from a physical, mental health, developmental, or intellectual disability that may have affected his ability to understand or comply with commands from the officers.

    A. <u>Key Evidence in Opposition to Claim 2</u>:

    (1) See evidence under Claim 1.

**<u>Claim 3 - Negligent Use of Deadly Force by Peace Officer – Essential Factual Elements (CACI 441):</u>**

    1.    That the Marisol Barajas and Hector Vazquez were peace officers;

    2.    That Marisol Barajas and Hector Vazquez used deadly force on Benjamin Chin;

    3.    That Marisol Barajas' and Hector Vazquez's use of deadly force was not necessary to defend human life;

    4.    That Benjamin Chin was killed; and

    5.    That Marisol Barajas' and Hector Vazquez' use of deadly force was a substantial factor in causing Benjamin Chin's death.

    The Defendants' use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by the Defendants at the time, that deadly force was necessary [either]:

    A. To defend against an imminent threat of death or serious bodily injury to Defendants and/or another person; or

    B. To apprehend a fleeing person for a felony, when all of the conditions are present:

    6.    The felony threatened or resulted in death or serious bodily injury to another;

    7.    The officers reasonably believed that the person fleeing would cause death or serious bodily injury to another unless immediately apprehended; and

8.    The officers made reasonable efforts to identify themselves as peace officers and to warn that deadly force may be used, unless the officers had objectively reasonable grounds to believe the person was already aware of those facts.

A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear or likelihood, but is one that, from appearances, must be confronted and addressed immediately.

"Totality of the circumstances" means all facts known to or perceived by the peace officers at the time, including the conduct of Marisol Barajas, Hector Vazquez and Benjamin Chin leading up to the use of deadly force. In determining whether the use of deadly force was necessary in defense of human life, you must also consider Marisol Barajas' and Hector Vazquez' tactical conduct and decisions before using deadly force on Benjamin Chin and whether Marisol Barajas and Hector Vazquez used other available resources and techniques as an alternative to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.

A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to arrest or prevent escape.

//
//
//
//
//

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

A.    <u>Key Evidence in Opposition to Claim 2:</u>

(1) See evidence under Claim 1.

**<u>Claim 4 – Bane Act</u>**

1.    That Marisol Barajas and Hector Vazquez, acted violently against Benjamin Chin from exercising his right to be free from unreasonable seizure and unreasonable excessive force;

2.    That Marisol Barajas and Hector Vazquez intended to deprive Benjamin Chin of his enjoyment of the interests protected by the right to be free from unreasonable searches and seizures and unreasonable excessive force;

3.    That Benjamin Chin was harmed; and

4.    That the Marisol Barajas' and Hector Vazquez' conduct was a substantial factor in causing Benjamin Chin's harm.

A.    <u>Key Evidence in Opposition to Claim 2:</u>

(1) See evidence under Claim 1.

**<u>Defendants' Affirmative Defenses</u>**:

B.    <u>First Affirmative Defense: The Defendant Deputies Are Entitled to Qualified Immunity from the 42 U.S.C. § 1983 Claims</u>

    1.    <u>Elements Required to Establish Defendants' First Affirmative Defense</u>:

        (a)    The Defendant Deputies' conduct did not deprive the Decedent of his constitutional rights;

        (b)    The officers did not violate a "clearly established" constitutional right of the Decedent; and

        (c)    A reasonable deputy faced with the circumstances facing the Defendant Deputies could have believed his or her conduct was lawful.

See *Saucier* v. *Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

2.    Key Evidence in Support of Defendants' First Affirmative Defense:

(1) An immediate threat existed because the Decedent was armed with an AR-15, bullet-proof vest, he fired multiple rounds in the air, and he stabbed the Plaintiff prior to the Defendant Deputies arriving on scene;

(2) The Defendant Deputies were aware of the facts recited in (1) above prior to encountering the Decedent on Diamond Bar Boulevard;

(3) Barajas saw the Decedent walking northbound on Diamond Bar Boulevard and parked her vehicle on Diamond Bar Boulevard next to Mr. Wiseman, who was inside his Tesla;

(4) The Decedent was walking towards Barajas and Mr. Wiseman with his AR-15 slung around his shoulder and wearing his bullet-proof vest;

(5) The angle of the Decedent's right arm indicates he was holding the pistol grip of the AR-15 with his right hand;

(6) The Decedent came within 7-10 feet of Mr. Wiseman, at which point Barajas fired her handgun at the Decedent

(7) Prior to firing her first shot, Barajas pointed her handgun at the Decedent and issued seven commands for the Decedent to drop his weapon, all of which were ignored by the Decedent;

(8) After Barajas fired her first shot, the Decedent remained standing and continued walking in the direction of Mr. Wiseman and Barajas;

(9) Vazquez and Detective Bronowicki issued several commands to the Decedent to drop his weapon while the Decedent was walking from Crooked Creek Drive to Diamond Bar Boulevard, which the Decedent ignored;

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

(10) Vazquez witnessed the Plaintiff with her hands covered in blood on Crooked Creek Drive prior to the shooting;

(11) After Barajas' first shot, Vazquez fired the second shot from behind the Decedent while the Decedent was progressing northbound on Diamond Bar Boulevard;

(12) The Decedent continued walking northbound on Diamond Bar Boulevard after the second shot;

(13) Barajas issued two more commands for the Decedent to drop his weapon, and began issuing a third warning, before firing a third shot overall at the Decedent;

(14) The Decedent continued standing and advancing towards Mr. Wiseman and Barajas, and Barajas fired a fourth overall shot;

(15) While the Decedent was still standing, Vazquez fired a fifth overall shot at the Decedent;

(16) The Decedent fell to the ground after the fifth shot, and no more shots were fired by either deputy.

C. Second Affirmative Defense: The Officers Are Immune Under California Penal Code § 196—Justifiable Homicide

1. Elements Required to Establish Defendants' Second Affirmative Defense:

(a) The circumstances reasonably created a fear of death or serious bodily harm to the officers or others; and

(b) The officers necessarily committed the homicide against the Decedent in the discharge of their legal duties.

See Cal. Pen. Code § 196; *Brown v. Ransweiler*, 171 Cal.App.4th 516, 533 (2009); *Gilmore v. Superior Court*, 230 Cal.App.3d 416, 421 (1991) (justifiable homicide is privileged act that precludes all tort liability arising therefrom).

2.   <u>Key Evidence in Support of Defendants' Second Affirmative Defense</u>:

   (a)   See key evidence under first affirmative defense.

D.   <u>Third Affirmative Defense: Qualified Immunities (state)</u>

   1.   <u>Elements Required to Establish Defendants' Third Affirmative Defense</u>:

   (a)   If the employee is immune from liability, Defendant County of Los Angeles also is immune from liability;

   (b)   An employee of Defendant County of Los Angeles was exercising the discretion vested in him;

   (c)   An employee of Defendant County of Los Angeles cannot be held liable for an injury caused by the act or omission of another person;

   (d)   A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

*See* Cal. Gov. Code, § 815.2(b): Injuries by Employee within Scope of Employment; Immunity of Employee; Cal. Gov. Code, § 820.2: Discretionary Acts; Cal. Gov. Code, § 820.8: Acts or Omissions of Others; Cal. Gov. Code § 821.6: Immunity.

   2.   <u>Key Evidence in Support of Defendants' Third Affirmative Defense</u>:

   (a)   See key evidence under first affirmative defense.

E.   <u>Fourth Affirmative Defense: Self-Defense/Defense of Others</u>

   1.   <u>Elements Required to Establish Defendants' Fourth Affirmative Defense</u>:

   (a)   That the Defendant Deputies reasonably believed that the

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER

1        Decedent was going to harm each of them or others;

2        (b)    That the Defendant Deputies used only the amount of force

3               that was reasonably necessary to protect themselves or

4               others.

5    *See* CACI 1304.

6        2.    <u>Key Evidence in Support of Defendants' Fourth Affirmative</u>

7              <u>Defense:</u>

8              (a)    See key evidence under first affirmative defense.

9    F.    <u>Fifth Affirmative Defense: Contributory Negligence</u>

10       1.    <u>Elements Required to Establish Defendants' Fifth Affirmative</u>

11             <u>Defense</u>:

12             (a)    That the Decedent was negligent;

13             (b)    That the Decedent and/or others' negligence was a

14                    substantial factor in causing his harm.

15   <u>*See*</u> CACI 405 (2009).

16       2.    <u>Key Evidence in Support of Defendants' Fifth Affirmative</u>

17             <u>Defense:</u>

18             (a)    See key evidence under first affirmative defense.

19 **8.    REMAINING TRIABLE ISSUES**

20       In view of the admitted facts and the elements required to establish the claims

21  and affirmative defenses, the following issues remain to be tried:

22       1.  Whether Defendants Marisol Barajas and/or Hector Vazquez used

23           excessive and/or unreasonable force against Decedent Benjamin Chin;

24       2.  Whether Defendants Marisol Barajas and/or Hector Vazquez's use of

25           excessive and/or unreasonable force was a cause of Decedent Benjamin

26           Chin's injury and/or death;

27       3.  Whether Defendants Marisol Barajas and/or Hector Vazquez were

28           negligent in their conduct towards Decedent Benjamin Chin;

4. Whether Defendants Marisol Barajas and/or Hector Vazquez's negligence was a cause of Decedent's injury and/or death Benjamin Chin;

5. Whether Defendants Marisol Barajas and/or Hector Vazquez acted with reckless disregard of Decedent Benjamin Chin's constitutional rights;

6. The nature and extent of Decedent Benjamin Chin's damages, including the nature and extent of Decedent's injuries, the loss of enjoyment of life, the mental, physical and emotional pain and suffering experienced prior to death;

7. The nature and extent of Plaintiff Jennie Quan's economic and non-economic damages, including Plaintiff's loss of Decedent Benjamin Chin's love, companionship, comfort, care, assistance, protection, affection, society, and moral support; and

8. Whether Defendants Marisol Barajas and/or Hector Vazquez acted with malice, oppression, or in reckless disregard of Decedent Benjamin Chin's rights so as to warrant an award of punitive damages.

**9. DISCOVERY**

All discovery is complete.

**10. DISCLOSURES AND EXHIBIT LIST**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1 ("Joint Exhibit List"). In view of the volume of exhibits marked by each party, the parties have incorporated in the attached "Joint Exhibit List" all agreements regarding admitted exhibits, and all objections, including grounds therefor.

**11. WITNESS LIST**

Witness lists of the parties have been filed under separate cover.

Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment).

**12.    <u>MOTIONS IN LIMINE</u>**

Motions *in Limine* and or law and motion matters have been filed with the Court. The parties have met and conferred on the motions *in limine*. The following motions *in limine*, and no others, are pending or contemplated:

<u>**Plaintiff**</u>:

1.    Plaintiff's Motion *in Limine* No. 1 to Exclude Testimony of Defense Expert Joel Suss, PhD From Trial;

2.    Plaintiff's Motion *in Limine* No. 2 to Exclude Testimony of Defense Expert Edward T. Flosi From Trial;

3.    Plaintiff's Motion *in Limine* No. 3 to Exclude Opinions of Defense Expert John Marehbian, MD Not Disclosed in Rebuttal Report;

4.    Plaintiff's Motion *in Limine* No. 4 to Exclude Evidence or References to Information Not Known to Defendant Deputies at the Time of the Incident;

<u>**Defendants**</u>:

1.    Defendants' Motion in Limine No. 1 to Exclude, or Limit, the Opinions of Bennet Omalu, M.D.;

2.    Defendants' Motion in Limine No. 2 to Preclude Plaintiff From Displaying Autopsy and Postshooting Photographs of Decedent;

3.    Defendants' Motion in Limine No. 3 to Preclude Evidence of Other Claims, Lawsuits, Settlements, Verdicts, Judgments, Complaints, Administrative Investigations or Proceedings and/or Other Alleged Incidents Concerning Defendants or Other Members of Law Enforcement and the Los Angeles County Sheriff's Department.

**13.    <u>BIFURCATION</u>**

Bifurcation of the following issues for trial is ordered: entitlement to punitive damages and amount of punitive damages.

**14.    <u>ADMISSIONS</u>**

The foregoing admissions having been made by the parties, and the parties

having specified the foregoing issues remaining to be litigated, this Final Pre-Trial Conference Order shall supersede the pleadings, and govern the course of the trial of this case, unless modified to prevent manifest justice.

DATED:                                          UNITED STATES DISTRICT COURT


                                                _____
                                                HON. MARK C. SCARSI
                                                UNITED STATES DISTRICT JUDGE


Approved as to form and content:


 /s/ Hang D. Le
_____
Attorney for Plaintiff


 /s/ Jerad J. Miller
_____
Attorney for Defendants

[PROPOSED] FINAL PRE-TRIAL CONFERENCE ORDER