UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN,<br><br>                Plaintiff,<br><br>    v.<br><br>COUNTY OF LOS ANGELES, MARISOL BARAJAS, and HECTOR VAZQUEZ,<br><br>                Defendants. | Case No. 2:24-cv-04805-MCS-KS<br><br>**ORDER RE: MOTIONS IN LIMINE (ECF NOS. 57, 58, 59, 66, 67, 68, 69)** |

Plaintiff Jennie Quan moves in limine: (1) to exclude testimony from Defendants Marisol Barajas, Hector Vazquez, and Los Angeles County Sheriff's Department's human factors expert, Joel Suss, (Pl.'s MIL No. 1, ECF No. 66); (2) to exclude testimony from Defendants' police practices expert, Edward T. Flosi, (Pl.'s MIL No. 2, ECF No. 67); (3) to exclude opinions by Defendants' medical expert, John Marehbian, that were not disclosed in his rebuttal expert report, (Pl.'s MIL No. 3, ECF No. 68); and (4) to exclude evidence or references to information that was not known to Deputies Barajas and Vazquez ("the Deputies") at the time of the incident, (Pl.'s MIL No. 4, ECF No. 69). Defendants oppose the motions. (Opp'ns to Pl.'s MILs Nos. 1–4, ECF Nos. 75–78.)

Defendants move in limine: (1) to exclude or limit the opinions of Plaintiff's forensic pathology expert, Bennet Omalu, (Defs.' MIL No. 1, ECF No. 57); (2) to preclude autopsy and post-shooting photographs of Benjamin Chin ("Decedent"), (Defs.' MIL No. 2, ECF No. 58); and (3) to preclude evidence of other claims, lawsuits, settlements, verdicts, judgments, complaints, administrative investigations or proceedings, or other alleged incidents concerning Defendants or other members of law enforcement and the Los Angeles Sheriff's Department, (Defs.' MIL No. 3, ECF No. 59). Plaintiff opposes the motions. (Opp'ns to Defs.' MILs Nos. 1–3, ECF Nos. 71–73.)

The Court heard argument and issued oral rulings on the motions at the final pretrial conference on January 27, 2026. (Mins., ECF No. 91.) This Order memorializes the Court's reasoning.

## I. BACKGROUND

This is an action under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment. On June 19, 2023, the Deputies responded to reports of a man wearing a bulletproof vest and carrying an assault rifle in Diamond Bar, California. When the Deputies arrived, they observed Decedent with an assault rifle slung over his right shoulder. The Deputies ordered Decedent several times to drop his weapon as

2

Decedent walked toward Deputy Barajas. As Decedent continued to approach her, Deputy Barajas fired her first shot. After her first shot, Deputy Vazquez fired one shot, followed by two more shots from Deputy Barajas, and one final shot from Deputy Vazquez. After this, Decedent fell to the ground. Decedent was pronounced dead at 11:09 p.m. Plaintiff, the mother of Decedent, argues that the Deputies used unreasonable, excessive force against Decedent in violation of the Fourth Amendment. Defendants contend that the Deputies' use of force was reasonable under the circumstances. (*See generally* Pl.'s Mem. of Fact & L., ECF No. 65; Defs.' Mem of Fact & L., ECF No. 60; Joint Statement of the Case, ECF No. 79.)

In the operative complaint, Plaintiff brought eight claims: (1) unreasonable search and seizure—excessive force, under 42 U.S.C. § 1983, against Barajas and Vazquez; (2) unreasonable search and seizure—denial of medical care, under 42 U.S.C. § 1983, against Barajas and Vazquez; (3) municipal liability—ratification, under 42 U.S.C. § 1983, against the County; (4) municipal liability—failure to train, under 42 U.S.C. § 1983, against the County; (5) municipal liability—unconstitutional custom or policy, under 42 U.S.C. § 1983, against the County; (6) battery (wrongful death), against all Defendants; (7) negligence (wrongful death), against all Defendants; (8) violation of the Bane Act, Cal. Civ. Code § 52.1, against all Defendants. (FAC ¶¶ 29–96, ECF No. 31.)

The Court granted summary judgment in Defendants' favor on Claims 2–5. (MSJ Order, ECF No. 56.) Accordingly, the only claims remaining for trial are Claim 1 against Barajas and Vazquez and Claims 6–8 against all Defendants. (Proposed Final Pretrial Conference Order 3–4, ECF No. 81-1.)

In their pleading, Defendants asserted 51 affirmative defenses. (*See* Defs.' Answer to FAC, ECF No. 36.) Defendants indicate that they intend to pursue five affirmative defenses at trial: (1) qualified immunity; (2) justifiable homicide; (3) state law qualified immunities; (4) self-defense / defense of others; and (5) contributory

negligence. (Proposed Final Pretrial Conference Order 14–18.)[1]

## II. MOTIONS IN LIMINE

### A. Plaintiff's Motion In Limine No. 1

Plaintiff moves to exclude the testimony of Joel Suss, Ph.D., Defendants' human factors expert. (Pl.'s MIL No. 1.) She argues that some of Dr. Suss's opinions improperly impinge on the province of the jury. (*See generally id.*) In particular, Plaintiff argues that Dr. Suss's opinions about the Deputies' perceptions, Decedent's intent, and the positioning of Decedent's right arm, as shown in the body-worn camera footage, are issues for the jury. (*Id.* at 3–4, 9.)

Federal Rule of Evidence 702 authorizes "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide an opinion if the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." For an expert's opinion to be admissible, the expert's opinion must be "based on sufficient facts or data," the testimony must be the "product of reliable principles and methods," and the "expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Federal courts have a gatekeeping responsibility to engage in objective screening to ensure that evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (clarifying that the gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge"). The proponent of the expert testimony bears the burden of proving its admissibility. *United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).

An expert's opinion "is not objectionable just because it embraces an ultimate

---

[1] The Court deems any other affirmative defenses abandoned.

issue." Fed. R. Evid. 704(a). However, "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (internal quotation marks omitted). Opinions on ultimate issues of law do "not *aid* the jury in making a decision, but rather attempt[] to substitute the expert's judgment for the jury's." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (internal quotation marks omitted).

The motion is denied without prejudice to Plaintiff lodging specific objections to evidence at trial. Some of Dr. Suss's opinions are well within the realm of expert testimony. For instance, Dr. Suss's expert opinions concerning reaction-perception time or the effects of stress on human perception have a scientific basis and will be helpful to the jury's understanding of the evidence. However, other opinions expressed in Dr. Suss's expert report, such as that Decedent was in fact an immediate threat, may amount to an impermissible opinion on an ultimate issue of law. (*See, e.g.*, Le Decl. Ex. A § 6, ECF No. 70-1.) To the extent any such opinions that amount to a legal conclusion or exceed the scope of Dr. Suss's expertise arise at trial, the Court will address them then.

### B.  Plaintiff's Motion In Limine No. 2

Plaintiff next asks the Court to exclude testimony from Edward T. Flosi, Defendants' police practices expert. (Pl.'s MIL No. 2.) Plaintiff argues that Mr. Flosi offers several impermissible legal conclusions in his report, such as that the Deputies' use of force was reasonable. (*Id.* at 4–6.) Plaintiff also argues that Mr. Flosi's opinions regarding disputed facts from the body-worn camera footage, such as that Decedent's right hand was on the pistol grip of his firearm, are unhelpful to the jury. (*Id.* at 6–7.) In response, Defendants argue that Mr. Flosi's report does not opine on ultimate issues of the law, but rather provides opinions about how the Deputies' conduct comports with California's Peace Officer Standards and Training ("POST"). (Opp'n to Pl.'s MIL No. 2, at 6–7.)

As with Dr. Suss's testimony, the motion is denied without prejudice to Plaintiff

lodging specific objections at trial. The expert opinion of a police practices expert can be helpful to the jury's determination of whether the Deputies' use of force is reasonable. As a result, Mr. Flosi's opinions regarding the Deputies' conduct, based on his experience in law enforcement and application of POST, is relevant and admissible. However, other opinions expressed in Mr. Flosi's report are improper. For instance, Mr. Flosi may rest his opinions about police practices on record evidence, but he may not provide his own opinions about the evidence, such as what the body-worn camera footage depicts. Nor may Mr. Flosi testify as to matters of law that amount to a legal conclusion, such as the reasonableness of the Deputies' use of force. *See, e.g.*, *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015) ("Clark repeatedly opines that the use of force was 'excessive' or 'unreasonable' under the circumstances Whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them is, however, a question for the jury or, if no material facts are in dispute, for the Court." (citation omitted)).

### C. **Plaintiff's Motion In Limine No. 3**

Plaintiff next seeks to exclude the opinions of John Marehbian, M.D., Defendants' rebuttal medical expert, that were not disclosed in his rebuttal expert report. (Pl.'s MIL No. 3.) Plaintiff argues that Dr. Marehbian offered at deposition "new opinions about the variable levels of pain Decedent experienced while still awake and unresponsive." (*Id.* at 4.) Plaintiff contends that these opinions were not included in Dr. Marehbian's report and are therefore untimely. (*Id.*) Defendants respond that Plaintiff's motion is unspecific as to what testimony she wants excluded, (Opp'n to Pl.'s MIL No. 3, at 3–4), and that Dr. Marehbian's opinion that Decedent's pain and suffering before death were mitigated by oxygen loss, drug treatment, and hypovolemic shock is consistent with the opinions expressed in the rebuttal report, (*id.* at 4–5). At the final pretrial conference, Defendants' counsel also represented that Defendants intend to confine their questioning of Dr. Marehbian to the opinions that were expressed in the

rebuttal report.

As the Court previously advised, "[m]otions in limine should address specific issues." (Corrected Order Re: Jury Trial § II(A)(1), ECF No. 28.) Although Plaintiff lodged a copy of Dr. Marehbian's rebuttal report, Plaintiff did not include a deposition transcript or a specific quotation of the objectionable testimony at Dr. Marehbian's deposition. Without more information about the particular testimony sought to be excluded, the Court cannot make an informed decision on the motion.

The motion is denied without prejudice to Plaintiff lodging specific objections to opinions exceeding the scope of the rebuttal report at trial.

### D. Plaintiff's Motion In Limine No. 4

Finally, Plaintiff seeks to exclude evidence or references to information not known to the Deputies at the time of the incident. (Pl.'s MIL No. 4.) Plaintiff argues that information not known to the Deputies at the time of the shooting is irrelevant, unduly prejudicial, and improper character evidence. (*See generally id.*) Plaintiff seeks to exclude several broad categories of information, including Decedent's prior contacts with law enforcement, a prior involuntary psychiatric hold imposed on Decedent, a restraining order taken out against Decedent, and testimony from percipient witnesses about Decedent's behavior before the Deputies arrived on the scene. (*Id.* at 1–2.) Defendants respond that evidence concerning Decedent's intent is relevant and admissible, even if unknown to the Deputies at the time of the shooting, because it will help the jury assess how much of a threat Decedent posed at the time of the shooting and may support the Deputies' testimony. (Opp'n to Pl.'s MIL No. 4, at 2–5.) In addition, Defendants argue Decedent's prior law enforcement contacts and conduct on the day of the incident are relevant to the calculation of damages. (*Id.* at 6–7.)

Given the breadth of evidence subject to Plaintiff's fourth motion in limine, at the final pretrial conference, the Court ordered the parties to meet and confer to narrow down the evidence that is likely to be introduced at trial and to provide the Court with

an update by February 3, 2026, concerning this motion in limine and other issues that were raised at the hearing. Accordingly, the Court defers resolution of this motion until the parties present a narrowed list of the specific pieces of evidence they believe are likely to be introduced at trial.

### E. Defendants' Motion In Limine No. 1

Defendants seek to exclude or limit the opinions of Bennet Omalu, M.D., Plaintiff's medical expert. (Defs.' MIL No. 1.) First, Defendants argue that Dr. Omalu improperly opines about whether Decedent experienced a delay in medical care. (*Id.* at 5.) Second, Defendants argue that Dr. Omalu is unqualified to render a ballistics opinion given that he is a forensic pathologist but not a firearms expert, and therefore he should be precluded from testifying about the trajectory of the gunshots. (*Id.* at 6–7.) In addition, Defendants argue that Dr. Omlau's opinions about the pain and suffering Decedent experienced prior to death are unreliable because they are unspecific and undefined. (*Id.* at 8 (citing opinions in Dr. Omalu's report that Decedent "experienced the highest levels of high-scale . . . pain and suffering" (ellipsis in original) (emphasis omitted)).) Lastly, Defendants argue that Dr. Omalu's opinions about pain and suffering that Decedent experienced prior to the shooting are unreliable and speculative. (*Id.* at 10–11.)

Plaintiff responds that Dr. Omalu does not make a legal conclusion that there was a delay in medical care, but rather observes from the body-worn camera footage that there was a period of time between Decedent being shot and Decedent receiving medical care. (Pl.'s Opp'n to Defs.' MIL No. 1, at 2–3.) In addition, Plaintiff argues that Dr. Omalu is qualified to render opinions about the trajectory of the bullets based on Decedent's gunshot wounds, citing his experience as a forensic pathologist and his qualification in other courts to testify as an expert on these topics. (*Id.* at 3–5.) Lastly, Plaintiff argues that Dr. Omalu should be permitted to testify about Decedent's pain and suffering because his opinion has sufficient bases of knowledge and any issues with a

1  lack of specificity in his opinion go to the weight of his testimony, not its admissibility.
2  (*Id.* at 5–8.)

3        The motion is denied. First, with respect to the delay in medical care, Dr. Omalu
4  may opine about what Decedent may have experienced during the period of time
5  between the shooting and when Decedent began receiving medical care based on his
6  personal observations of the body-worn camera footage. However, as with Dr. Suss and
7  Mr. Flosi, Dr. Omalu may not draw a legal conclusion that there was a delay in medical
8  care. *See Hangarter*, 373 F.3d at 1016. Next, the Court concludes that Dr. Omalu is
9  qualified to render an opinion concerning the bullet trajectories based on Decedent's
10 gunshot wounds. The Court notes that other courts in this District have found Dr. Omalu
11 qualified to testify as an expert witness on these topics. *See Barber v. County of San*
12 *Bernardino*, No. EDCV 22-00625-KK-DTBx, 2026 U.S. Dist. LEXIS 6130, at *19
13 (C.D. Cal. Jan. 7, 2026) (allowing Dr. Omalu to testify regarding bullet trajectories);
14 *Murillo v. City of Los Angeles*, No. CV 21-8738 FMO (AGRx), 2023 U.S. Dist. LEXIS
15 234423, at *5–6 (C.D. Cal. Aug. 21, 2023) (same). In addition, Dr. Omalu has
16 significant experience in autopsies, death investigations, and trauma pattern analyses.
17 (*See* Le Decl. ISO Opp'n Ex. A, at 2, ECF No. 71-2 (describing Dr. Omalu's experience
18 with death and injury investigations).) Defendants' motion is denied in these respects.

19       Turning to Dr. Omalu's opinions concerning Decedent's pain and suffering prior
20 to death, the Court concludes that some of Dr. Omalu's opinions concerning Decedent's
21 pain and suffering are admissible, but others are not. For example, Dr. Omalu's opinions
22 concerning how the body experiences pain and responds to it on a physiological level
23 are based on reliable scientific bases and sufficient facts. Other opinions, however, are
24 speculative and lack a sufficient scientific basis. For instance, Dr. Omalu's opinion that
25 Decedent "experienced the highest levels of high-scale conscious somatic, mental, and
26 biochemical pain and suffering" is untethered to any scientific methodology. (Le Decl.
27 ISO Opp'n Ex. A, at 18.) Dr. Omalu bases this opinion on "generally accepted
28 principles and common knowledge of medicine and science, including the central limit

theorem," but does not apply a specific methodology to conclude that Decedent experienced the "highest" levels of pain. (*Id.*) Without reliable scientific principles and methods upon which to base his opinions, Dr. Omalu's expert opinions would be unhelpful to the jury.

Notwithstanding the Court's concerns, with the guidance provided in this Order, parsing permissible from impermissible opinions Dr. Omalu may or may not offer would be unproductive before trial. Accordingly, the motion is denied without prejudice to Defendants lodging specific objections to opinions that exceed the proper scope of expert testimony at trial.

### F. Defendants' Motion In Limine No. 2

Defendants next seek to preclude Plaintiff from displaying autopsy and post-shooting photographs of Decedent. (Defs.' MIL No. 2.) Defendants argue that the photos are irrelevant and prejudicial. (*See generally id.*) Plaintiff responds that she seeks to introduce only a limited number of photographs (11 images of Decedent's gunshot wounds and two images of abrasions Decedent suffered). (Opp'n to Defs.' MIL No. 2, at 3.) Plaintiff contends that the autopsy photographs are relevant to show Decedent's positioning, including where he was facing, when he sustained the wounds, and to show the extent of Decedent's pain and suffering. (*Id.* at 2–3.)

At the final pretrial conference, the Court ordered the parties to meet and confer to reduce the number of disputed autopsy and post-shooting photographs. Accordingly, the Court defers ruling on this motion.

### G. Defendants' Motion In Limine No. 3

Lastly, Defendants seek to preclude evidence of other claims, lawsuits, settlements, verdicts, judgments, complaints, administrative investigations or proceedings, and/or other alleged incidents concerning Defendants or other members of law enforcement and the Los Angeles Sheriff's Department. (Defs.' MIL No. 3.)

1  Defendants argue that evidence of or reference to other, unrelated claims or lawsuits
2  against Defendants are irrelevant. (*Id.* at 4–6.) Plaintiff responds that she does not intend
3  to introduce any evidence of other claims or lawsuits involving Defendants unless
4  Defendants first open the door to such evidence. (Pl.'s Opp'n to Defs.' MIL No. 3, at
5  3.)

In their motion, Defendants also seek to preclude use of the administrative investigation of the shooting at trial, arguing that the Deputies' statements during the investigation were privileged, confidential, and implicate their Fifth Amendment rights against self-incrimination because their statements were compelled. (Defs.' MIL No. 3, at 10–11.) However, at the final pretrial conference, Defendants' counsel stated that Defendants had no objection to witnesses' administrative investigation statements being used for impeachment.

The motion is denied. Plaintiff represents that she does not intend to introduce such evidence unless first raised by Defendants. The motion is also denied with respect to the administrative investigation of this incident given Defendants' non-opposition at the final pretrial conference to use of witness statements from the administrative investigation for impeachment.

### III.  CONCLUSION

For the foregoing reasons and those discussed at the final pretrial conference on January 27, 2026, the Court:

- Denies Plaintiff's Motions In Limine Nos. 1–3, ECF Nos. 66–68;
- Denies Defendants' Motions In Limine Nos. 1 and 3, ECF Nos. 57, 59;
- Defers ruling on Plaintiffs' Motion In Limine No. 4, ECF No. 69, and Defendants' Motion In Limine No. 2, ECF No. 58.

All decisions on motions in limine are subject to reevaluation at trial. *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing . . . prohibits the court from revisiting its decision when the

evidence is to be offered."); *Luce v. United States*, 469 U.S. 38, 41–42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

**IT IS SO ORDERED.**

Dated: February 2, 2026

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE