**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,

Plaintiffs,

vs.

COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,

Defendants.

Case No. 2:24-cv-04805-MCS-KS

*Assigned to*:
Hon Mark C. Scarsi
Hon. Mag. Judge Karen L. Stevenson

**JOINT STATUS REPORT REGARDING TRIAL ISSUES**

**TO THE HONORABLE COURT**:

Pursuant to the Court's Order re: Jury/Court Trial, Plaintiff Jennie Quan and Defendants County of Los Angeles, Marisol Barajas, and Hector Vazquez, by and through their respective counsel of record, hereby submit this Joint Status Report Regarding Trial Issues.

## I. Introduction of Information Not Known to Defendant Deputies at Trial

On January 5, 2026, Plaintiff filed a Motion *in Limine* to exclude evidence or references to information that was not know to the Defendant Deputies at the time of the incident. Specifically, Plaintiff sough to exclude any introduction to, references or arguments to the following:

- March 7, 2019 contact with law enforcement, including details that Decedent told an officer that he had suicidal thoughts, details regarding a U.S. DOJ/FBI file that was generated from a tip regarding Decedent based on Facebook posts, and Decedent being held on a 5150 as a result of the contact;
- Details regarding the restraining order taken by the Yen family against Decedent, which included Decedent having to surrender firearms
- June 13, 2023 court appearance for the restraining order and subsequent contact with law enforcement due to Decedent's outburst in court;
- June 17, 2023 contact with law enforcement that resulted from Decedent attempting to turn over his firearm to a gun store;
- Evidence collected from Decedent's house after the incident, including 3D print files for gun parts found on Decedent's computer;
- Decedent's journal and calendar, which includes his internal thoughts and struggles
- Evidence from percipient witnesses that witnessed Decedent with his rifle before defendant deputies responded to the scene, including the stabbing of Plaintiff (details of which were not communicated to the defendant

deputies); and

- Testimony from Syed Razvi, Decedent's deceased friend's father, who interacted with Decedent on the day of the incident, and received a call from Plaintiff informing him that Decedent had stabbed her.

At trial, the Court ordered the parties to meet and confer and the specific evidence Defendants intend on introducing regarding the subjects above in order to assist the Court in making informed rulings. After meeting and conferring, Defendants have agreed to exlcude the following at trial:

1. Evidence or references to the June 13, 2023 court appearance;
2. Decedent's journal and calendar;
3. Testimony from Syed Razvi.

The remaining subjects are still at issue. According to the Joint Witness List and Joint Exhibit List submitted by the parties, the specific evidence Defendants seek to introduce in support of the disputed subjects are as follows:

- March 7, 2019 contact with law enforcement: (1) Report regarding Prior Mental Health Incidents (Exhibit 109); (2) Benjamin Chin DMV Report (Exhibit 110); (3) March 7, 2019 Incident & Supplemental Report (Exhibit 112); and (4) Defense expert Edward Flosi's opinion wherein he notes evidence in the record regarding a previous 5150 hold and suicidal ideations.
- Details regarding the restraining order taken by the Yen family against Decedent, which included Decedent having to surrender firearms: (1) Benjamin Chin DMV Report (Exhibit 110); and (2) Benjamin Chin's Restraining Order (Exhibit 113).
- June 17, 2023 contact with law enforcement that resulted from Decedent attempting to turn over his firearm to a gun store: (1) June 17, 2023 Incident Report (Exhibit 114).
- Evidence collected from Decedent's house after the incident, including 3D print files for gun parts found on Decedent's computer: (1) Examination of

Evidence (Exhibit 111)

- Evidence from percipient witnesses that witnessed Decedent with his rifle before defendant deputies responded to the scene, including the stabbing of Plaintiff (details of which were not communicated to the defendant deputies): (1) testimony from percipient witnesses Vergel Sandifer and Janet Johansen regarding their observaitons of Decedent and his actions with the rifle prior to the arrival of the deputies; (2) Witness Interview Summaries (Exhibit 108); (3) Vergel Sandifer Audio Interview (Exhibit 115); (4) Janet Johansen Interview (Exhibit 117); (5) Video of Benjamin Chin Stabbing Plaintiff (Exhibit 127); (6) Video of Benjamin Chin Lifting Rifle in Neighborhood (Exhibit 128); (7) Videos of Benjamin Chin Walking Around Neighborhood (Exhibit 129); and (8) Witness and Deputy Audio Interviews (Exhibit 133).

A. Plaintiff's Arguments

Plaintiff is not opposed to the Defendant Deputies testifying that the knew Decedent was armed with a rifle, had fired several rounds, and that there was a stabbing victim they believed to be related to Decedent. However, anything beyond the information Defendant Deputies had on the day of the incident is not relevant to the use of force analysis. Under Federal Rule of Evidence 401, evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and the fact is "of consequence in determining the action." Fed. R. Evid. 401(a). In determining whether an officer's use of force was objectively reasonable, trial courts and juries must confine their inquiry to the information known to the officer at the time of the use of force. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). The Ninth Circuit has held that information unknown to an officer at the time of his use of force — including information acquired after the incident by investigators or during discovery — cannot be considered. *Glenn v. Washington County*, 673 F.3d 864, 873 (9th Cir. 2011).

To the extent that Defendants argue such evidence is relevant pursuant to *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009), *Boyd* does not apply here. In *Boyd*, the decedent's survivors alleged that law enforcement used excessive force when they shot and killed decedent because decedent was attempting to surrender at the time of the use of force. *Boyd*, 576 F.3d at 944. In contrast, the officer alleged that he shot because the decedent ignored commands and reached into the vehicle with both hands as if to grab something. *Id.* The Ninth Circuit concluded that evidence of the decedent's criminal history and prior acts were properly admitted in the context of "suicide by cop" because it made it more probable that decedent was trying to provoke a police shooting rather than surrender. *Id.* at 944-45. The Ninth Circuit held that, "where what the officer perceived just prior to the use of force is in dispute, evidence [unknown to the officer] that may support one version over another is relevant and admissible." *Id.* at 944.

In this case, Defendants do not assert a suicide-by-cop defense and Decedent's intent or motivation is not at issue. There are multiple videos that capture the shooting and Decedent's actions immediately prior to and during the shooting such that there cannot be a meaningful dispute regarding Decedent's actions and the Defendant Deputies' perceptions just prior to their uses of force. Plaintiff does not dispute that Decedent ignored commands and continued walking in the general direction of a civilian vehicle and Deputy Barajas. Additionally, the videos provide uncontroverted evidence that Decedent did not manipulate, raise or point the rifle at anyone prior to or during the shooting, nor did he ever turn in the direction of Deputy Vazquez. Decedent's mental health is also not at issue as Plaintiff will testify that she observed Decedent acting strangely on the morning of the incident to the point that Plaintiff drove Decedent to see a doctor that day in an attempt to get help. Accordingly, the disputed evidence is not admissible under *Boyd*. *See Qualey v. Pierce Cnty.*, No. 3:23-CV-05679-TMC, 2025 WL 948511, at *5 (W.D. Wash. Mar. 28, 2025) (declining to admit criminal history because decedent's intent was not at

issue); *French v. City of Los Angeles*, No. EDCV20416JGBSPX, 2021 WL 6752007, at *3 (C.D. Cal. Oct. 12, 2021) (declining to admit evidence of prior acts as vague references to decedent's conduct was insufficient to establish relevance of prior acts and mental health); *Speer v. Cnty. of San Bernardino*, No. EDCV 20-44 JGB (SPX), 2021 WL 5969521, at *4 (C.D. Cal. Aug. 9, 2021) (declining to admit evidence of information unknown pursuant to *Boyd* because defendants did not assert a suicide-by-cop defense and the plaintiff's motive/intent not at issue); *Donastorg v. City of Ontario*, No. EDCV 18-992JGB (SPX), 2021 WL 4051170, at *2 (C.D. Cal. June 4, 2021) (same); *Stringer v. City of Pablo*, No. C 07-03544 MEJ, 2009 WL 5215396, at *3 (N.D. Cal. Dec. 28, 2009) (same); *see also Estate of Tindle v. Mateu*, No. 18-CV-05755-YGR, 2020 WL 5760287, at *12 (N.D. Cal. Sept. 28, 2020) (declining to admit information unknown to officer because motive/intent was not at issue and there was video that captured decedent's conduct before and at the time of the shooting for the jury to evaluate regarding the officer's perceptions).

Lastly, the majority of evidence Defendants seek to introduce are hearsay and are without proper foundation. Defendants have not listed any witnesses on their witness list who can establish the foundation for the police reports regarding prior incidents or the DMV records.

**B. Defendants' Arguments**

Defendants argue that particular information not known to the Defendants at the time of the shooting may be relevant for other purposes, such as damages, impeachment or intent. Evidence that tends to make the existence of a fact more or less probable is admissible. Fed. R. Evid. 401, 402. Evidence also is admissible when it is relevant to a material issue in the case and is allowed under FRE 404(b). *United States v. Abel*, 469 U.S. 45, 49 (1984); see also *United States v. Takahashi*, 205 F.3d 1161, 1164 (2000). Relevant evidence may be excluded if its probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence. Fed. R. Evid. 403. "[E]vidence is excludable only if it is 'unfairly' prejudicial, in that it has 'an undue tendency to suggest decision on an improper basis.' " (*Old Chief v. U.S.*, 519 U.S. 172, 193 (1977), citing *Dollar v. Long Mfg., N. C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) [" '[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair' "]. )

The Ninth Circuit has not held that information unknown to police officers can never be admissible. Under *Graham*, evidence of facts unknown to a police officer is admissible "in assessing the credibility of an officer's account of the circumstances that prompted the use of force". *Graham v. Connor*, 490 U.S. 386, 399 n.12 (1989). Consistent with this *Graham* principle, the Ninth Circuit has held that where the material facts are disputed, as they are here, facts unknown to the officers at the point of the use of deadly force can be admissible. *Boyd v. City & County of San Francisco*, 576 F.3d 938, 944 (9th Cir. 2009) (holding that evidence that decedent was on drugs was relevant and admissible in an excessive force case because it made assertions that decedent was acting erratically more probable); *T.D.W. v. Riverside County*, 2010 U.S. Dist. LEXIS 35821, 2010 WL 1006618, at *4 (C.D. Cal. Mar. 11, 2010) (holding that evidence of decedent's intoxication was properly admitted at trial "because this evidence was probative of decedent's conduct, particularly when defendants contended that decedent's erratic behavior immediately preceding and at the time of the shooting led to their use of force").

The Decedent's intent and state of mind are highly relevant to this case. Federal Rules of Evidence 404(b) allows evidence of prior bad acts to be admitted when it is admitted for the purpose of establish intent and motive, among other purposes. Moreover, *Boyd*'s holding extends beyond "suicide by cop" circumstances and applies where the suspect's intent is clearly at issue. (emphasis added)." *Stringer v. City of Pablo*, No. C 07–03544 MEJ, 2009 WL 5215396, at *3 (N.D. Cal. Dec. 28, 2009); *Willis v. City of Fresno*, No. 1:09–CV–01766–BAM, 2013 WL 6145232, at *4

(E.D. Cal. Nov. 21, 2013) (declining to admit evidence of prior acts under *Boyd* where the plaintiff's "motive or intent [was] not at issue, as it was in *Boyd*" and where his "absence of mistake or accident [was] not at issue"); *Jackson v. Cty. of San Bernardino*, 194 F. Supp. 3d 1004, 1009 (C.D. Cal. 2016) (declining to apply *Boyd* were defendants "d[id] not assert a 'suicide by cop' defense, and [the decedent]'s motivation or intention to provoke the deputies to shoot him [was] not at issue"). *Est. of Tindle v. Mateu*, No. 18-CV-05755-YGR, 2020 WL 5760287, at *11 (N.D. Cal. Sept. 28, 2020).

Evidence such as prior 5150 holds, prior restraining orders and gun confiscations, and observations from percipient witnesses prior to the Defendant Deputies arriving on scene will help the jury determine whether the Decedent intended to cause further carnage if the Defendant Deputies had not intervened, and thus is more probative than prejudicial. This fact is especially relevant because the Plaintiff has argued throughout the litigation of the case that the Decedent did not pose a threat because he never raised, pointed, manipulated or fired his rifle after the Defendant Deputies arrived on the scene. The introduction of prior bad acts will therefore assist the jury in establishing the Decedent's intent to cause harm in the absence of raising, pointing, manipulating or firing his rifle. In addition, the Joint Witness List of the parties indicates that Plaintiff intends to testify regarding her "her observations of Decedent's behavior, his lack of drug or behavioral/mental illness history." Prior bad acts of the Decedent may therefore be relevant impeachment evidence.

Moreover, the video of the Decedent stabbing his mother is relevant and more probative than prejudicial because it will assist the jury in determining damages and corroborates the information known to the Defendant Deputies at the time of the incident. In *Green v. Baca*, 226 F.R.D. 624, 658 (C.D. Cal. 2005), the court held that the plaintiffs prison time and length thereof were relevant to the jury's consideration of damages. Among other damages, Plaintiff claims that she suffered loss of love,

companionship, affection, comfort, care, society, training, guidance and financial support. The alleged loss of each type of support is contingent on the Decedent's presence in the Plaintiff's life and ability to provide each type of support. It is fair for the jury to consider whether the actions of the Decedent during the subject incident were likely to result in the Decedent going to prison, and for how long. If the jury determines that there is a likelihood that the Decedent would have gone to prison for a serious crime had he not died from his gunshot wounds, the amount of financial and non-economic support he could provide would be severely limited. Moreover, the stabbing video may substantially limit claims such as a loss of companionship, affection, and comfort from the Decedent. The video of Plaintiff being stabbed is thus highly probative.

Moreover, the video of the stabbing corroborates the information known to the Defendant Deputies before the subject incident. Prior to responding to the scene, the Defendant Deputies received information through L-TAC and dispatch that a stabbing victim was in the area. Footage of the stabbing corroborates the truth and veracity of the radio calls that the Defendant Deputies received, and will assist the jury in understanding the mindset of Defendant Deputies as they responded to the subject incident. The average juror likely has not seen footage of an individual being stabbed, and the video will aid the jury's awareness of the level of violence associated with a stabbing. Referring to the attack on the Plaintiff merely as a "stabbing" fails to convey the extreme violence and brutality of the incident - circumstances that the Defendant Deputies, given their training and experience, would have fully understood when responding. Accordingly, the video footage of the Decedent stabbing his mother should be admitted because it is relevant and helpful to the jury in understanding the subject incident.

## II. Autopsy Photos

Plaintiff are in the process of reducing the number of autopsy photographs Plaintiff will seek to introduce as evidence. Plaintiff contends that Plaintiff should

introduce a few selected photographs in support of Plaintiff's excessive force claim and pain and suffering damages. The parties will continue to meet and confer on this issue.

**III. <u>Foundation and Authentication of Video Evidence</u>**

The parties have agreed to stipulate to foundation and authentication of all videos produced by the other side's forensic video expert. Thus, Defendants withdraw their objections to Exhibits 3-6, and 10-15.

Respectfully submitted,

DATED: February 6, 2026 LAW OFFICES OF DALE K. GALIPO

By *<u>/s/ Hang D. Le</u>*
Dale K. Galipo
Hang D. Le
Attorneys for Plaintiff

DATED: February 6, 2026 HURRELL CANTRALL LLP

By *<u>/s/ Jerad J. Miller*</u>*
Thomas C. Hurrell
Janet J. Hur
Jerad J. Miller
Attorneys for Defendant, County of Los Angeles

*The filer, Hang D. Le, hereby attests that all other signatories listed, and on whose behalf the filing is submitted, concur with the filing's content and have authorized the filing.