Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrell-llp.com
Joseph K. Miller, State Bar No. 245685
E-Mail: jmiller@hurrell-llp.com
Jerad J. Miller, State Bar No. 334001
E-Mail: jjmiller@hurrell-llp.com
HURRELL-LLP
800 West 6th Street, Suite 700
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>            Plaintiff,<br><br>    v.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>            Defendants. | Case No. 2:24-cv-04805-MCS(KSx)<br><br>**DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. RULE 50(b) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. RULE 59**<br><br>*Filed concurrently with Declaration of Joseph K. Miller in Support of Motions; Appendix of Evidence*<br><br>Date:    May 11, 2026<br>Time:    9:00AM<br>Crtrm.:  7C<br><br>[Assigned to Hon. Mark C. Scarsi, Courtroom "7C"] |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ (collectively referred to as "Defendants"), pursuant to F.R.C.P., Rule 50(b), hereby renew their prior Rule 50(a) motion for judgment as a matter of law because there is no "substantial evidence" to support the verdict under the law on the issues of qualified immunity, and whether

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

the Defendant deputies' use of deadly force was reasonable as a matter of law under the totality of the circumstances faced by the Defendant deputies at the time. Defendants' prior Rule 50(a) motion was timely made at the close of Plaintiff's case in chief prior to submitting the case to the jury.  F.R.C.P., Rule 50(b) states in pertinent part:

> "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> …
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law."
>
> [F.R.C.P., Rule 50(b)]

Notice of Entry of Judgment was served on March 11, 2026.  The instant Rule 50 (b) motion is timely filed within 28 days after Entry of Judgment.

Plaintiff's Fourth Amendment Excessive Force claim, state law Battery, Bane Act and Negligence claims fail as a matter of law, because there is no "substantial evidence" to support the verdict as a matter of law. *Barnes v. Felix*, 605 U.S. 73 (2025); *Weisgram v. Marley Co.* 528 US 440, 457(2000); *Payao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

Defendants hereby move the Court to direct the entry of judgment in Defendants' favor as a matter of law.

/ / /

/ / /

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

2

Additionally, Defendants hereby move the Court under F.R.C.P., Rule 59 for a new trial and request the Court conditionally rule on the new trial motion under Rule 50.

DATED:  April 8, 2026          HURRELL-LLP

By:     _/s/ Joseph K. Miller_____
        THOMAS C. HURRELL
        JOSEPH K. MILLER
        JERAD J. MILLER
        Attorneys for Defendants, COUNTY OF
        LOS ANGELES, MARISOL BARAJAS
        and HECTOR VAZQUEZ

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. PROCEDURAL HISTORY ................................................................................ 1

III. STATEMENT OF FACTS ................................................................................. 1

    A. Brief Overview of Facts ......................................................................... 1

    B. Excerpted Trial Testimony ..................................................................... 2

IV. LEGAL STANDARD ...................................................................................... 10

V. EVIDENCE PRESENTED TO THE JURY REGARDING THE "MOMENT-OF-THREAT" RULE CONFLICTED WITH THE JURORS' INQUIRY INTO THE TOTALITY OF THE CIRCUMSTANCES IN EVALUATING THE DEFENDANT DEPUTIES' USE OF FORCE ......................................................................... 11

VI. THE DEFENDANT DEPUTIES ARE ENTITLED TO QUALIFIED IMMUNITY ...................................................................................................... 13

    A. Saucier Step One .................................................................................. 15

    B. Saucier Step Two .................................................................................. 15

VII. ALTERNATIVE MOTION FOR A NEW TRIAL (FRCP 59) ....................... 16

VIII. CONCLUSION ................................................................................................ 17

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anderson v. Independent School Dist.* (8th Cir. 2004) 357 F3d 806, 809 ...............10

*Atlas Food Systems & Services, Inc. v. Crane Nat'l Vendors, Inc.* (4th Cir. 1996) 99 F3d 587 ...............16

*Barnes v. Felix*, 605 U.S. 73 (2025) ...............11, 12

*Carr v. Wal-Mart Stores, Inc.* (5th Cir. 2002) 312 F3d 667, 670 ...............16

*Commodity Futures Trading Comm'n v. Dizona* 594 F3d 408, 414 (5th Cir. 2010)...............11

County of Los Angeles v. Mendez, 581 U.S. 420,428 (2017) ...............11

*Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991)...............14

*Down East Energy Corp. v. Niagara Fire Ins. Co.* (1st Cir. 1999) 176 F3d 7, 14 ...............10

*Eich v. Board of Regents for Central Missouri State Univ.* (8th Cir. 2003) 350 F3d 752, 761...............10

*Escriba v. Foster Poultry Farms, Inc.* (9th Cir. 2014) 743 F3d 1236, 1242-1243 ...............10

*Forte v. Wal-Mart Stores, Inc.* (5th Cir. 2015) 780 F3d 272, 275 ...............10

*Gill v. Rollins Protective Services Co.* (4th Cir. 1985) 773 F2d 592, 594 ...............16

*Graham v. Connor, 490 U.S. 386, 393 (1989)* ...............11, 14

*Johnson Controls, Inc. v. Jay Indus., Inc.* (6th Cir. 2006) 459 F3d 717, 723 ...........10

*Marcano Rivera v. Turabo Med. Ctr. Partnership* (1st Cir. 2005) 415 F3d 162, 171 ...............16

McDonald v. Petree (6th Cir. 2005) 409 F3d 724, 727-728 ...............16

*McEuin v. Crown Equip. Corp.* (9th Cir. 2003) 328 F3d 1028, 1037...............10

*Molski v. M.J. Cable, Inc.* (9th Cir. 2007) 481 F3d 724, 729 ...............16

Murphy v. City of Long Beach (9th Cir. 1990) 914 F2d 183, 187 ...............16

*Napouk v. Las Vegas Metropolitan Police Department*, 123 F.4th 906 (2024)..11, 12

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

*Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) .............................................................................................................13

Sánchez v. Foley (1st Cir. 2020) 972 F3d 1, 16-17.......................................16

*Saucier v. Katz*, 533 U.S. 194, 205 (2001) ...........................................14, 15

*Taylor v. Barkes*, 575 U.S. 822, 825, 135 S.Ct. 2042, 192 L.Ed.2d 78 (2015).........13

*Tisdale v. Federal Express Corp.* (6th Cir. 2005) 415 F3d 516, 528-529] ...............16

*Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir.1985)..................................................................................................10

*Weisgram v. Marley Co.* 528 US 440, 457, 120 S.Ct. 1011, 1022 (2000)............2, 11

**OTHER AUTHORITIES**

Fed.R.Civ.P. 50(a)(1)........................................................................................10

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

## I.    INTRODUCTION

This is renewed Rule 50(b) motion or in the alternative motion under Rule 59 for new trial following a jury verdict. This matter arises from deadly use of force officer involved shooting of a suspect wearing body armor carrying an AR assault rifle where the suspect was advancing toward law enforcement and civilians and had stabbed his mother and fired the rifle in the neighborhood minutes prior to the use of deadly force.

## II.    PROCEDURAL HISTORY

On February 10, 2026, this case was tried before a jury. At the close of Plaintiff's evidence, Defendant moved for judgment as a matter of law under Rule 50(a) regarding Plaintiff's claims that the Defendant deputies use unreasonable force and qualified immunity. The Court denied that motion. The jury returned a verdict for Plaintiff on February 13, 2026.

## III.    STATEMENT OF FACTS

### A.    Brief Overview of Facts

On June 19, 2023, Los Angeles Sheriff's Department ("LASD") Deputy Marisol Barajas and Detective Vazquez responded with lights and sirens (Code-3) to a call regarding a man armed with an AR-15 style rifle walking around the Diamond Bar Boulevard area.

Deputy Barajas traveled southbound on Diamond Bar Boulevard, and the Decedent appeared on the same street walking northbound.  The Decedent was estimated to be approximately 15 - 20 feet from Deputy Barajas' vehicle when she turned on Diamond Bar Boulevard.  Next to Deputy Barajas was a civilian in a Tesla, who was in the direct path of the Decedent heading northbound. Behind Deputy Barajas were additional deputies, preventing her from moving her vehicle to create more distance between herself and the Decedent.

Detective Vazquez was on-duty in Diamond Bar, CA, when he received a dispatch call concerning an Asian male with an assault rifle firing rounds in the air,

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE    (213) 426-2000

1

possibly with a bullet-proof vest, near the intersection of Crooked Creek Drive and Rising Star Drive.  Dispatch requested that deputies in the area respond Code-3. The suspect was later determined to be the Decedent. As Detective Vazquez proceeded to the incident location, dispatch continued to broadcast that the Walnut Sheriff's Station had received multiple calls regarding the same suspect, and that he had fired shots from his rifle.

### B.    Excerpted Trial Testimony

Excerpted and marked portions of the trial testimony are included with the Appendix to this motion. A listing of key portions and evidence follows below.

Detective Vazquez observed Mr. Chin's mother stabbed – though he did not know she was his mother at the time. [Exh D Vazquez Body Cam].  The stabbing was reported on radio broadcast to all responding deputies.  [Exh A Vazquez, pp. 11:1-3; 11:6-16]. Deputies heard Mr. Chin had stabbed a person and had fired the rifle. [Exhibit C; Exh A Barajas, pp.57:9-11]. Deputies observed Mr. Chin had an assault rifle and body armor. [Exh A Vazquez, pp. 41:17-42:3]. Detective Vazquez heard Barajas radio transmission. [Exh A Vazquez, pp. 12:15-25]. Mr. Chin was walking toward a civilian (Mr. Wiseman) and Deputy Barajas with AR rifle and body armor. Deputy Barajas had a 9mm weapon and Chin had body armor. She testified Mr. Chin's assault rifle could penetrate her vehicle and her armor.  [Exh A Barajas, pp.79:12-80:1].

Human Factors expert Joel Suss testified that Mr. Chin could raise and shoot his rifle in less than a second. [Exh B Suss, pp. 93:20-95:15]. Detective Vazquez and Deputy Barajas testified that Mr. Chin could raise and shoot his rifle before they could respond [Exh A Vazquez, pp. 42:14 - 43:9] and that less lethal options would not work based on Mr. Chin having and assault rifle and body armor. [Exh A Vazquez, pp. 44:2-21; Barajas, pp.79:12-80:1].

Deputy Holland and Deputy Toves arrived on seen after Deputy Barajas. Deputy Barajas observed the Tesla to her right.  Mr. Chin ignored multiple

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

commands to drop his rifle. [Exh E, F & G; Exh A Barajas, pp. 88:8-21; Holland, pp. 101:4-15].

Plaintiff expert Jeff Noble admitted that a reasonable officer would be concerned about an individual with an assault rifle wearing a bulletproof vest. [Exh A Noble, pp. 139:10-21]. He also admitted the deputies were aware that he had stabbed someone, but he would not admit the stabbing should intent. [Exh A Noble, pp. 140:1-8]. His testimony regarding what would constitute an imminent threat was not consistent with the law and Supreme Court precedent.

THE COURT: So, it's your opinion then the officers have to wait for the person to touch the gun and move it, before they can perceive the situation as imminent? So, they have to wait until there is some movement of the gun by the individual before they can -- before they can form a perception it's imminent. Is that your opinion, that's where you would draw the line?

THE WITNESS: Yes.

[Exh A Noble, pp. 128:3-11].

Q So, it sounds like you are saying, Mr. Noble, there has to be some furtive movement of grabbing and starting to move or raise the weapon towards the officers or others?

A Yes, there needs to be something.

THE COURT: I'm sorry. You said there has got to be furtive movement, you said there needs to be something. Is your answer, there has got to be some furtive movement?

THE WITNESS: Yes.

[Exh A Noble, pp. 128:14-22].

Q And I think you touched on most of the points, but can you explain again why to the jury?

A There was no imminent threat of death of serious bodily injury.

[Exh A Noble, pp. 135:21-136:24].

3

Q Even if the officers said that they were afraid, and they thought he could raise the rifle, and they were concerned for the person in the Tesla?

A It would still be inconsistent.

[Exh A Noble, pp. 136:25-137:3].

Q And an individual holding an assault style rifle, wearing a bulletproof vest creates a rather bleak scenario, wouldn't you agree?

MR. GALIPO: Objection. Vague, ambiguous as phrased.

THE COURT: You can answer. Go ahead.

THE WITNESS: I think any reasonable officer would be very concerned, yes.

[Exh A Noble, pp. 139:10-21].

Q Would he be concerned that this individual would have the opportunity and ability to cause death very quickly?

A I believe the opportunity and ability, yes.

[Exh A Noble, pp. 139:23-25].

Q The deputies were aware that Mr. Chin had stabbed an individual, correct?

A Yes.

Q Wouldn't that lead to a greater heightened awareness that this individual has the intent and ability and opportunity to cause physical harm to another person?

A I don't think it shows he has the intent. I think it shows he has the ability and opportunity.

[Exh A Noble, pp. 140:1-8].

Q And when Mr. Chin is shot, he is literally seven to eight feet from the driver of the white Tesla, wouldn't you agree?

A Less than ten feet, yes.

[Exh A Noble, pp. 140:9-12].

Q And it's your opinion that the deputies that shot Mr. Chin, needed to wait until Mr. Chin raised his gun up?

A Until he made some kind of motion as though he were about to raise the

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

4

gun, yes.

Q And is it your opinion, that they need to wait until it would be too late to save somebody's life?

MR. GALIPO: Objection. Vague and ambiguous as phrased.

THE COURT: You can answer the question.

THE WITNESS: No. As I said before, you don't need to wait until the gun is actually pointed, but you have to wait until there is some indication that shows his intent.

BY MR. HURRELL:

Q But you would agree, I think you already stated, that Mr. Chin could have raised that rifle into a position that he could fire it within a second or two?

A Yes.

Q That is calling it pretty close, wouldn't you agree?

A Again, you need to wait until there is some kind of movement. You don't have to wait for him to raise it. It is a rifle, it's time to get that barrel up.

Q There is an individual wearing a bullet vest, has an assault style rifle, has already stabbed his mother that day, and he has been shooting the rifle. You have to wait until he raises the rifle, which could last a second or two, until he takes care of that situation?

A You have to wait until he makes some kind of movement as if he's about to raise the rifle, yes.

THE COURT: Excuse me, is it about to raise the rifle, or is it raise the rifle, where are you drawing that line. Before I thought you said, you have got to make some motion with the rifle.

THE WITNESS: Yes.

THE COURT: So your line is, you have to wait until you see him move the rifle; is that the line?

THE WITNESS: Yes.

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

5

[Exh A Noble, pp. 140:13-141:25].

THE COURT: Then one more question before I give it to you back. You said the fact that the officers -- the fact he stabbed somebody, you don't think it shows he has intent to harm another individual; is that right?

THE WITNESS: For the analysis of ability, opportunity and intent, it doesn't apply to that portion of apparent intent, whether he's an imminent threat at the moment the force was used.

THE COURT: Well, help me understand that, so he has just stabbed somebody, he has got an assault rifle, your view is that there is -- the officers shouldn't assume he has an intent to harm another individual?

THE WITNESS: Right. Because somebody could harm somebody else and then give up.

In order to use deadly force, there has to be an imminent threat, something has to be happening right now, not something in the past. Something is happening now.

THE COURT: So, the fact he just stabbed somebody has no part of your analysis at all? I mean, it doesn't matter?

THE WITNESS: It matters, in the sense it's part the totality of the circumstances. It matters in the sense that --

THE COURT: Well, if it matters, what does it matter towards? If it doesn't matter towards intent, what does it matters towards?

THE WITNESS: It tells the officers they are dealing with a dangerous individual.

[Exh A Noble, pp. 142:1-143:5].

Mr. Noble was not at the scene. He is judging the Defendant deputies on scene with 20/20 hindsight.  The Defendant deputies should be judged based on the what they perceived and witnessed in real time on the date of the incident when they responded to the Code 3 emergency call for service.  Their own testimony and the

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

body worn camera videos are the best evidence.

Detective Vazquez testified:

Q You did not want to be shooting in a direction where other deputies or civilians were in the background?

A Correct.

Q At some point, as you were on the sidewalk, you felt you had a good background with respect to Mr. Chin?

A Yeah, I believe there was a safe backdrop.

Q Right. And once you saw that safe background, it was shortly after that that you fired your shot; isn't that true?

A Yes. Shortly after I saw Mr. Chin's arm take that position, where it appeared to me he was gripping the firearm stock.

[Exh A Vazquez, pp. 13:17-14:13].

Q What was going through your head?

A Based on the fact I heard shots fired, I assumed there was other casualties.

[Exh A Barajas, pp.79:2-9]

A If you focus on Mr. Chin, you will see his right arm how the upper part of his arm extends back, his elbows 40 at 90 and his forearm goes in. It appears to me at that point he is grabbing the grip of the handgun. At that point with that grip, he can shoot.

Q Okay. So are you saying, sir, that this was his approximate position when you fired your shot?

A Yes, sir.

[Exh A Vazquez, pp. 18:25-19:7].

Q Well, let's be very clear. Did you at any time, before you fired your first shot,

see Mr. Chin pointing the rifle at anyone?

HURRELL·LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

7

A I could see the rifle slung over his shoulder on his right side, carried, like, a ready position.

[Exh A Vazquez, pp. 21:20-23 ].

Deputy Barajas testified:

Q Can you describe your weapon?

A It's a Smith and Weston, 9mm.

Q Did you hear on the broadcast that Mr. Chin was -- had an assault rifle?

A Yes, I did.

Q How do you compare the two weapons, is one more potentially harmful than the other?

A Yes. Based on me having a 9mm and him wearing a ballistic vest, there is obviously a possibility that it would not affect the vest at all. Also, the assault rifle could pierce through my vehicle and through my armor.

Q Was that going through your head when you heard about this call?

A Yes.

[Exh A Barajas, pp.79:12-80:1]

Q Is that your first shot?

A Yes.

Q And describe what is going on there. Is Mr. Chin walking towards you?

A He is still walking forward.

Q Now?

[Exh A Barajas, pp. 80:11-16]

Q Were you concerned about the civilian in the Tesla to your left?

A Yes.

Q You mentioned you tried to motion for him to get out of there?

A Yes.

Q And what prevented him from doing that? Were there cars parked in back

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

8

of him?

A There was traffic.

[Exh A Barajas, pp. 81:2-10; ]

Q Now, you mentioned when counsel was asking you questions that the rifle was pointed in a downward direction, correct?

A Yes, sir.

Q Did you have a concern that Mr. Chin could raise the rifle from that position?

A Of course, it doesn't take very long to manipulate it with one hand.

Q Have you used a rifle before?

A Yes.

Q How long would it typically take to raise the rifle from a downward position into a pointed position at an individual?

A Just a few seconds if you are not -- you don't necessarily need to align your sites with a rifle.

Q Can you explain what you mean by that?

A Versus like me utilizing the 9mm, I actually have to align my sites to make sure it's hitting the correct target, versus if it's an actual, like, AR, you don't necessarily need to align your sites.

Q Can you shoot a rifle in a position without raising it to your eyes?

A Yes.

[Exh A Barajas, pp. 81:14-82:11]

Detective Vazquez said it clearly:

This man wasn't just the person who was walking down the street with a rifle, it's a person who had stabbed someone who was a relative or a friend of his, someone who had taken the time to put on a bulletproof vest and take this rifle out to a populated area. In my eyes, someone doesn't do that, unless they are prepared to

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE (213) 426-2000

hurt people.

[Exh A Vazquez, pp. 43:10 - 44:1].

## IV.    LEGAL STANDARD

Rule 50 of the Federal Rules of Civil Procedure governs the entry of Judgment as a Matter of Law ("JMOL"). If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir.1985).  However, the Court may enter Judgment as a Matter of Law when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving party]." Fed.R.Civ.P. 50(a)(1). "Judgment as a matter of law is appropriate when a party fails to establish a legally sufficient evidentiary basis for a reasonable jury to find for that party." [*Anderson v. Independent School Dist.* (8th Cir. 2004) 357 F3d 806, 809 (internal quotes omitted); FRCP 50(a)(1); see *Forte v. Wal-Mart Stores, Inc.* (5th Cir. 2015) 780 F3d 272, 275—JMOL motion proper when facts and inferences are so solidly in moving party's favor that rational jury could not reach contrary verdict; *Johnson Controls, Inc. v. Jay Indus., Inc.* (6th Cir. 2006) 459 F3d 717, 723—JMOL "is appropriate when … there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party" (internal quotes omitted)] "The district court may not reject the jury's verdict simply because another appears preferable." [*McEuin v. Crown Equip. Corp.* (9th Cir. 2003) 328 F3d 1028, 1037].  Judgment as a matter of law is proper only if "the evidence, together with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment." [*Down East Energy Corp. v. Niagara Fire Ins. Co.* (1st Cir. 1999) 176 F3d 7, 14; *Escriba v. Foster Poultry Farms, Inc.* (9th Cir. 2014) 743 F3d 1236, 1242-1243; *Eich v. Board of Regents for Central Missouri State Univ.* (8th Cir. 2003) 350 F3d 752, 761— complete absence of probative facts to support conclusion reached required so no

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

reasonable juror could have found for nonmoving party.]  The court must determine whether there is any "legally sufficient evidentiary basis" for a reasonable jury to find for the party opposing the motion. [*Weisgram v. Marley Co.* 528 US 440, 457, 120 S.Ct. 1011, 1022 (2000) [extending appellate court's authority to direct entry of JMOL where jury verdict not supported by sufficient evidence after excising erroneously admitted testimony]. Inadmissible evidence must be excised on review of JMOL. *Commodity Futures Trading Comm'n v. Dizona* 594 F3d 408, 414 (5th Cir. 2010).

## V.  EVIDENCE PRESENTED TO THE JURY REGARDING THE "MOMENT-OF-THREAT" RULE CONFLICTED WITH THE JURORS' INQUIRY INTO THE TOTALITY OF THE CIRCUMSTANCES IN EVALUATING THE DEFENDANT DEPUTIES' USE OF FORCE

Our Supreme Court recently held in *Barnes v. Felix*, 605 U.S. 73 (2025), that the "moment-of-threat" rule conflicts with inquiry into totality of the circumstances for assessing reasonableness of use of force. *Id.*  To assess "whether a police officer use of force was reasonable the analysis requires determining "whether the force deployed was justified from 'the perspective of a reasonable officer on the scene.'" *Barnes* at 79; *Graham v. Connor, 490 U.S. 386, 393 (1989)*; County of Los Angeles v. Mendez, 581 U.S. 420,428 (2017). The "totality of the circumstances" has no time limit. *Barnes* at 80. The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force. *Barnes* at 81. Here, the jury was misled by plaintiff's expert Mr. Noble and plaintiff's counsel regarding the totality of circumstances and reasonableness standard the jury was to consider from the perspective of a reasonable officer on scene. This misstatement of the law was reenforced and repeated throughout trial by plaintiff's counsel and during plaintiff's closing and rebuttal.

In *Napouk v. Las Vegas Metropolitan Police Department*, 123 F.4th 906

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

(2024), a suspect wielding a hatchet In *Napouk,* the Ninth Circuit determined that even if the suspect had not raised his bladed weapon before he was shot, he posed an immediate threat because he was close to and approaching the officers and could have raised the bladed weapon in another second or two and struck the officer with it. The suspect came within nine feet of the officers before the officers shot. The Ninth Circuit's analysis in *Napouk* makes clear that the use of force was reasonable based on the totality of the circumstances the officers faced here.  The Ninth Circuit's analysis in *Napouk* also forecloses any notion that Mr. Chin was not an imminent threat in this case :

> *Napouk may not have been a threat if he simply possessed what they believed was a bladed weapon, or stood in one place, or merely failed to comply with their commands to drop the weapon. But he deliberately advanced toward the officers with what they believed was a long, bladed weapon and repeatedly ignored their commands to drop it and to stop moving. Viewed holistically, these facts justified the officers' use of force.*

> *Napouk*, at 922.

Here, Mr. Chin was wielding an AR assault rifle, wearing body armor advancing toward Deputy Barajas and civilians. Similar to *Napouk*, Mr. Chin came within less than ten feet of Mr. Wiseman's vehicle, even under Mr. Noble's generous estimate. Mr. Chin had stabbed his mother moments before.  It is clear that the jury errored and incorrectly applied a "moment-of-threat" analysis by finding that Mr. Chin did not pose an imminent threat.  There is no other explanation given the totality of the circumstances that were proven on scene. This application "moment-of-threat" analysis advocated by plaintiff's counsel and Mr. Noble is the very analysis and rule rejected by *Barnes*. The argument at trial and expert Noble's testimony that Mr. Chin was not a threat because he "never raised, pointed or manipulated his rifle" ignores the totality of circumstances that the deputies on scene faced. No reasonable law enforcement officer on scene could conclude that Mr. Chin was not an imminent threat. The Defendant deputies' testimony and expert

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

Joel Suss' testimony established that the rifle could be raised and fired within a second and that the deputies would likely not have been able to react and fire a shot before had they waited for him to raise his rifle. Deputy Barajas and Detective Vazquez were aware that Mr. Chin had fired rounds in the neighborhood and was suspect in a stabbing. Deputy Barajas and Detective Vazquez observed Mr. Chin advancing toward Deputy Barajas and Brandon Wiseman while Mr. Chin was carrying an assault rifle and wearing body armor. Multiple deputies on scene, including Deputy Barajas and Detective Vazquez, are heard multiple times verbally and on loud speaker telling Mr. Chin to drop the weapon. It is beyond dispute, based on the totality of the circumstances, that a suspect with an assault rifle, wearing body armor who had just stabbed someone (his mother/plaintiff), shot rounds in the neighborhood and was advancing toward a deputy and civilian not obeying commands to drop the weapon was an imminent threat of deadly and/or serious bodily harm to the officer and civilian was advancing toward.

## VI. THE DEFENDANT DEPUTIES ARE ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825, 135 S.Ct. 2042, 192 L.Ed.2d 78 (2015) (per curiam) (citation and internal quotation marks omitted). In determining whether qualified immunity shields a police officer or other governmental official, we ask two questions: (1) "whether the facts that a plaintiff has alleged ... or shown ... make out a violation of a constitutional right," and (2) if so, whether that right was " 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (citations omitted). If the answer to either question is "no," the officer prevails and is immune from suit. See id. at 236, 129 S.Ct. 808.

13

It is undisputed that Deputy Barrajas and Detective Vasquez use deadly force, however, there is still insufficient evidence to establish a constitutional violation. The Supreme Court of the United States cautioned against applying the "20/20 vision of hindsight" against police officers in this context. *Graham v. Connor*, 490 U.S. 386, 393 (1989). The reasonableness of an officer's use of force must be judged from the perspective of the officer on the scene. *Id*. at 396. Several factors are relevant to determining whether a particular use of force is constitutionally unreasonable. Among those factors are "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Id*. Increased force is justified if the officer reasonably believes that the suspect will fight back. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001). Therefore, the inquiry as to constitutional reasonableness is whether the totality of the circumstances justify the level of force used in the seizure. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991).

The evidence presented at trial demonstrated that Mr. Chin posed an immediate threat to the officers and others. In this situation, police officers are entitled to use a higher level of force to subdue the suspect because he poses such a risk of causing harm to the public or officers. *See, e.g., Saucier*, 533 U .S. at 205. Even if the Court assumes that Mr. Chin did not raise the rifle, the Deputies actions were constitutionally reasonable given the imminent threat Mr. Chin posed.

Given the evidence presented at trial, the defendant deputies' actions were constitutionally reasonable within the bounds of the Fourth Amendment in this case. *See Saucier*, 533 U.S. at 205; *Graham*, 490 U.S. at 396. The Court should conclude that  that Defendant Barrajas and Vasquez are entitled to Judgment as a Matter of Law on these grounds.

Defendants raised the legal question of qualified immunity before the case went to the jury. As will be shown below, even if the Court accepts the jury verdict with respect to unreasonable use of force, Defendants Barrajas and Vasquez are still

14

entitled to Judgment as a Matter of Law because they are protected by qualified immunity.

The doctrine of qualified immunity is applicable to claims against law enforcement officers for unreasonable use of force. *See, generally, Saucier*, 533 U.S. 194. The Supreme Court of the United States held that the qualified immunity inquiry is independent of the Fourth Amendment reasonableness inquiry. *Id*. at 197. Accordingly, even if a defendant officers used unreasonable force in making an arrest, he might still be protected by qualified immunity as a matter of law. *Id*. There are two steps in the qualified immunity analysis. First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Id*. at 201. Second, if there is a constitutional violation, the court must determine "whether the right was clearly established." *Id*. at 201.

### A.      Saucier Step One

The first step in the qualified immunity analysis is to determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. As argued above that Defendants contend that the verdict is inconsistent with the totality of the circumstances the deputies faced and the jury appears to have errored in applying a "moment-of-threat" analysis as argue repeatedly by plaintiff at trial. Thus, while the jury verdict indicates that the jury would find that Plaintiff has satisfied the first inquiry in the qualified immunity analysis, the Court does not agree.

### B.      Saucier Step Two

Even if this Court assumes that the jury correctly determined that Defendants Barrajas and Vasquez violated Plaintiff's Fourth Amendment rights, Defendants Barrajas and Vasquez are still entitled to qualified immunity under the second step of *Saucier*. "[I]f a [constitutional] violation could be made out on a favorable view of the parties's submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. The Supreme Court has stated that "it

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

15

is vital to note" that this second step "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. (emphasis added). The test for "determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202 (emphasis added). Here, Defendants assert that it was not clearly established based on the totality of the circumstances that that the use of deadly force against Mr. Chin by Deputy Barajas and Detective Vazquez was unlawful.

## VII.    ALTERNATIVE MOTION FOR A NEW TRIAL (FRCP 59)

Even if the Court determines that substantial evidence supporting the verdict bars a JMOL, it does not prevent the court from granting a new trial if, in its view, the verdict is against the clear weight of the evidence. [*Molski v. M.J. Cable, Inc*. (9th Cir. 2007) 481 F3d 724, 729; *Marcano Rivera v. Turabo Med. Ctr. Partnership* (1st Cir. 2005) 415 F3d 162, 171; *Tisdale v. Federal Express Corp.* (6th Cir. 2005) 415 F3d 516, 528-529] If the judge "is of the opinion that the verdict is against the clear weight of the evidence or is based upon evidence which is false or will result in a miscarriage of justice …" [*Gill v. Rollins Protective Services Co.* (4th Cir. 1985) 773 F2d 592, 594 (internal quotes omitted); *Carr v. Wal-Mart Stores, Inc.* (5th Cir. 2002) 312 F3d 667, 670; *Atlas Food Systems & Services, Inc. v. Crane Nat'l Vendors, Inc.* (4th Cir. 1996) 99 F3d 587]  In ruling on a new trial motion based on insufficiency of the evidence, the district court must weigh the evidence and assess for itself the credibility of witnesses. [*Sánchez v. Foley* (1st Cir. 2020) 972 F3d 1, 16-17—no abuse of discretion in denying motion for new trial, especially in light of credibility issues at heart of case; McDonald v. Petree (6th Cir. 2005) 409 F3d 724, 727-728; Murphy v. City of Long Beach (9th Cir. 1990) 914 F2d 183, 187—district judge had both right and duty to weigh evidence and set aside jury verdict, even though supported by substantial evidence, where verdict contrary to clear weight of evidence or to prevent miscarriage of justice]

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

16

Based on the reasons set forth above, Defendants respectfully request the Court to grant this Rule 59 request for new trial.

## VIII.  **CONCLUSION**

Based on all of the above, Defendants respectfully request the Court to grant Defendants' Rule 50(b) motion, determine that Deputy Barajas and Detective Vazquez are entitled to qualified immunity and conditionally grant Defendants request for new trial under Rule 59.

DATED:  April 8, 2026                    HURRELL-LLP


By:      */s/ Joseph K. Miller*
THOMAS C. HURRELL
JOSEPH K. MILLER
JERAD J. MILLER
Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

17