**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Hang D. Le (SBN 293450)
E-mail: hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333; Fax: (818) 347-4118

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS-KS<br><br>*Assigned to*:<br>Hon Mark C. Scarsi<br>Hon. Mag. Judge Karen L. Stevenson<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59**<br><br>Date:  June 1, 2026<br>Time:  9:00 a.m.<br>Crtrm:  7C |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S VERDICT ..............1

A.    Legal Standard ..........................................................................................1

B.    Defendants' Rule 50(b) Motion Improperly Raises New Issues .........................2

C.    Substantial Evidence Supports the Jury's Finding that Defendant Deputies Used Excessive Force Against Chin ........................................................................5

D.    The Jury Was Not Required to Believe Defendants' Evidence ......................11

E.    Defendants' Reliance on *Napouk* is Unavailing ...............................................15

III.  DEFENDANT DEPUTIES ARE NOT ENTITLED TO QUALIFIED IMMUNITY ......................................................................................................15

IV.   THE JURY'S VERDICT IS NOT CONTRARY TO THE CLEAR WEIGHT OF THE EVIDENCE ......................................................................................17

V.    CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*A.D. v. Cal. Highway Patrol*,
   712 F.3d 446 (9th Cir. 2013).................................................................2, 15, 16

*A.K.H. ex rel. Landeros v. City of Tustin*,
   837 F.3d 1005 (9th Cir. 2016)..........................................................................8

*Barnes v. Felix*,
   605 U.S. 73 (2025) ......................................................................................4, 19

*Bartleson v. United States*,
   96 F.3d 1270 (9th Cir. 1996)............................................................................4

*Calonge v. City of San Jose*,
   104 F.4th 39 (9th Cir. 2024)................................................... 4, 8, 11, 16

*Costa v. Desert Palace*,
   Inc., 299 F.3d 838 (9th Cir. 2002)................................................................1, 2

*Crawford v. Tribeca Lending Corp.*,
   815 F.3d 121 (2d Cir. 2016)...........................................................................17

*Cruz v. City of Anaheim*,
   765 F.3d 1076 (9th Cir. 2014)........................................................................13

*Curnow by & through Curnow v. Ridgecrest*,
   952 F.2d 321 (9th Cir. 1991)..........................................................................17

*Deorle v. Rutherford*,
   272 F.3d 1272 (9th Cir. 2001)..........................................................................8

*E.E.O.C. v. Go Daddy Software, Inc.*,
   581 F.3d 951 (9th Cir. 2009)............................................................................2

*Estate of Aguirre v. Cnty. of Riverside*,
   131 F.4th 702 (9th Cir. 2025)...........................................................................2

*Estate of Lopez v. Gelhaus by & through Lopez v. Gelhaus*,
   871 F.3d 998 (9th Cir. 2017)..........................................................................17

*Freund v. Nycomend Amersham*,
  347 F.3d 752 (9th Cir. 2003).................................................................................2

*George v. Morris*,
  736 F.3d 829 (9th Cir. 2013)...........................................................................4, 17

*Graham v. Connor*,
  490 U.S. 386 (1989) ..........................................................................................5

*Harris v. Roderick*,
  126 F.3d 1189 (9th Cir. 1997)............................................................................5

*Johnson v. Paradise Valley Unified Sch. Dist.*,
  251 F.3d 1222 (9th Cir. 2001)............................................................................2

*Jones v. Las Vegas Metro. Police Dept.*,
  873 F.3d 1123 (9th Cir. 2017)..........................................................................13

*Josephs v. Pac. Bell*,
  443 F.3d 1050 (9th Cir. 2006)........................................................................1, 2

*Lal v. California*,
  746 F.3d 1112 (9th Cir. 2014)..........................................................................15

*Landes Const. Co., Inc. v. Royal Bank of Canada*,
  833 F.2d 1365 (9th Cir. 1987)..........................................................................17

*Liston v. Cnty. of Riverside*,
  120 F.3d 965 (9th Cir. 1997)..............................................................................6

*Manfred v. Superstation, Inc.*,
  365 F. App'x 856 (9th Cir. 2010) .....................................................................18

*Marbled Murrelet v. Babbit*,
  83 F.3d 1060 (9th Cir. 1996)..............................................................................4

*Mattos v. Agarano*,
  666 F.3d 433 (9th Cir. 2011)..............................................................................8

*Napouk v. Las Vegas Metropolitan Police Department*,
  123 F.4th 906 (9th Cir. 2024)...........................................................................15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER
OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

*Nunez v. Santos*,

   427 F. Supp. 3d 1165 (N.D. Cal. 2019) ....................................................................16

*Pavao v. Pagay*,

   307 F.3d 915 (9th Cir. 2002)......................................................................................1

*Pearson v. Callahan*,

   555 U.S. 223 (2009) .................................................................................................15

*Price v. Sery*,

   513 F.3d 962 (9th Cir. 2008)......................................................................................8

*Quan v. Cnty. of Los Angeles*,

   No. 2:24-CV-04805-MCS-KS, 2025 WL 3691863 (C.D. Cal. Nov. 17, 2025) .10, 16

*Reeves v. Sanderson Plumbing Prod., Inc.*,

   530 U.S. 133 (2000) ...................................................................................................2

*S.R. Nehad v. Browder*,

   929 F.3d 1125 (9th Cir. 2019)....................................................................... 6, 7, 8, 13

*Santos v. Gates*,

   287 F.3d 846 (9th Cir. 2002)......................................................................................6

*Scott v. Henrich*,

   39 F.3d 912 (9th Cir. 1994).........................................................................................5

*Singh v. City of Phoenix*,

   124 F.4th 746 (9th Cir. 2024).....................................................................................7

*Smith v. City of Hemet*,

   394 F.3d 689 (9th Cir. 2005)......................................................................................6

*Tennessee v. Garner*,

   471 U.S. 1 (1985) .......................................................................................................6

*Union Oil Co. of Cal. v. Terrible Herbst, Inc.*,

   331 F.3d 735 (9th Cir.2003)......................................................................................18

*United States v. Graf*,

   610 F.3d 1148 (9th Cir. 2010).....................................................................................3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

*Valenzuela v. City of Anaheim*,

No. SACV1700278CJCDFMX, 2020 WL 10574794 (C.D. Cal. Mar. 11, 2020)......1

*Wallace v. City of San Diego*,

479 F.3d 616 (9th  Cir. 2007).................................................................................18

*Weeks v. Angelone*,

528 U.S. 225 (2000) ..............................................................................................20

*Willis v. City of Fresno*,

680 Fed. App'x 589 (9th Cir. 2017)......................................................................16

**Statutes**

Cal. Pen. Code § 835a...........................................................................................19

**Other Authorities**

CACI 1305B ..........................................................................................................19

CACI 441 ...............................................................................................................19

**Rules**

Fed. R. Civ. P. 50....................................................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants County of Los Angeles, Hector Vazquez, and Marisol Barajas's (together "Defendant Deputies") post-verdict motion under Rules 50(b) and 59 for judgment as a matter of law or alternatively, a new trial ("Defendants' Motion") should be denied in full. Under any objective standard of review, but particularly when viewing the facts and taking all reasonable inferences in the light most favorable to Plaintiff, the verdict must stand. The Court correctly denied Defendants' summary judgment and Rule 50(a) motions, and the same result is mandated here. Defendants further improperly raise new issues in their Rule 50(b) motion, issues that they failed to preserve in their Rule 50(a) motion. For the reasons discusssed herein, Defendants' Motion should be denied in its entirety.

## II.    SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S VERDICT

### A. Legal Standard

"A party seeking judgment as a matter of law under Rule 50(b) has a 'very high' standard to meet." *Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2020 WL 10574794, at *3 (C.D. Cal. Mar. 11, 2020), aff'd, 6 F.4th 1098 (9th Cir. 2021). This "high hurdle recognizes that credibility, inferences and factfinding are the province of the jury[.]" *Costa v. Desert Palace*, Inc., 299 F.3d 838, 859 (9th Cir. 2002). "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). In other words, the Court can "overturn the jury's verdict and grant sucha  motion only if 'there is no legally sufficient basis for a reasonable jury to find for that party on that issue.'" *Costa*, 299

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

F.3d at 859 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000)).

A court ruling on a Rule 50(b) motion may not substitute its own view of evidence for that of a jury. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. Rather, the Court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Josephs*, 443 F.3d at 1062. The Court must also "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151. "Further, unlike a motion to dismiss or motion for summary judgment, [the Court] must defer to the facts as they were reasonably found by the jury[.]" *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 459 (9th Cir. 2013). "This is a highly deferential standard." *Estate of Aguirre v. Cnty. of Riverside*, 131 F.4th 702, 707 (9th Cir. 2025).

### B. Defendants' Rule 50(b) Motion Improperly Raises New Issues

A Rule 50(b) motion is not a freestanding motion; it is a renewed Rule 50(a) motion. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *Id.* Accordingly, a party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomend Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (citing Fed. R. Civ. P. 50 advisory committee's notes to the 1991 amendments ("A post-trial motion for judgment can be granted only on the grounds advanced in the pre-verdict motion.")).

Defendants' Rule 50(a) motion argued that there was not enough evidence to support a *constitutional* violation regarding excessive force. (*See* Trial Tr. Day 3 at

2                    2:24-cv-04805-MCS-KS

112:24-113:13). In doing so, Defendants relied on evidence most favorable to them and argued that "any reasonable officer would have taken the same exact action" as the Defendant Deputies. (*Id.*). However, Plaintiff's California negligence law is different from Fourth Amendment law, and, Plaintiffs contend that California battery law is also legally distinct from Fourth Amendment law. Additionally, Defendants fail to make any substantive argument regarding Plaintiff's California negligence, battery, and Bane Act claims in their brief. *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."). Accordingly, Defendants waived any argument regarding the sufficiency of the evidence for Plaintiff's state law claims.

Defendants further failed to raise any argument regarding Mr. Noble's expert opinions at pre-trial, trial, and in their Rule 50(a) motion. Mr. Noble's opinions regarding Defendant Deputies' use of deadly force, including that under the totality of the circumstances with all the information known to the Defendant Deputies at the time of the shooting, a reasonable officer acting pursuant to standard police practices and training would not have believed that Benjamin Chin ("Chin") posed an immediate threat of death or serious bodily injury because Chin was not touching the rifle and did not make any threatening or furtive movement towards the rifle, have been long-known to Defendants as they were disclosed in Mr. Noble's Rule 26 expert report and his declaration filed in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment. (*See* Doc. No. 49-17). Despite this, Defendants failed to object to the admissibility of Mr. Noble's opinion either before it was admitted or before the Court rendered its judgment. Defendants only now raise the issue of Mr. Noble's testimony in their Rule 50(b) motion in a quasi-sufficiency-of-the-evidence argument. The Ninth Circuit has previously addressed this issue and stated,

3    2:24-cv-04805-MCS-KS

"Although we recognize that [expert testimony] evidence which is unreliable is necessarily insufficient, the appropriate time to raise *Daubert* challenges is at trial. By failing to object to evidence at trial and request a ruling on such an objection, a party waives the right to raise admissibility issues on appeal." *Marbled Murrelet v. Babbit*, 83 F.3d 1060, 1066 (9th Cir. 1996) (holding that even though a challenge to an expert's testimony was couched as an insufficiency of the evidence argument, it was really an objection to the admissibility of the evidence and was waived by not being raised at trial); *see Bartleson v. United States*, 96 F.3d 1270, 1278 (9th Cir. 1996) (argument that defense expert's testimony should be given no weight because it was inadmissible was waived because the plaintiff failed to object to the admissibility of the testimony and request a ruling by the district court before it rendered its judgment).

Defendants further failed to raise objections to Plaintiff's counsel's arguments regarding what constitutes an "imminent threat" under the facts at pretrial, trial, and during their Rule 50(a) motion, despite having sufficient prior notice that this was essentially Plaintiff's theory of the case.[1] Indeed, Plaintiff pled this theory in her

---

[1] To the extent that Defendants' argument appears to imply that *Barnes v. Felix*, 605 U.S. 73 (2025) created a significant change in the legal interpretation of the "totality of the circumstances," the opinion—issued in May 2025 and well-before Defendants' filing of their Motion for Summary Judgment and the trial—simply rejected the *Fifth Circuit's* narrower, two-second approach to the "totality of the circumstances." *Barnes*, 605 U.S. at 81-83. *Barnes'* holding has historically been the Ninth Circuit's approach in evaluating the "totality of the circumstances." *See, e.g., Calonge v. City of San Jose*, 104 F.4th 39, 46 (9th Cir. 2024) (considering the fact that the decedent had failed to comply with commands to drop the gun and was continuing to walk as part of the "totality of the circumstances" before finding that deadly force was not justified because the decedent did not reach for the gun in his waistband or make any similar furtive or threatening movement); *George v. Morris*, 736 F.3d 829, 833, 838-39 (9th Cir. 2013) (taking into account the deputies' knowledge that there had been a domestic disturbance as a specific factor relevant to the "totality of the circumstances" before determining that the decedent did not present an immediate threat to the safety of the officers or others because evidence called into doubt

4                                      2:24-cv-04805-MCS-KS

operative complaint. (*See* Doc. No. 31 at 5-6 ("At all relevant times, Decedent did not pose an immediate threat of death or serious bodily injury to Defendants…or others. Decedent never raised, attempted to raise, or pointed the rifle at Defendants…nor anyone else at the time of the shooting."). Plaintiff's police practices expert also opined on this as discussed above, and Plaintiff further argued this point at the summary judgment stage. (*See* Doc. No. 49).

### C. Substantial Evidence Supports the Jury's Finding that Defendant Deputies Used Excessive Force Against Chin

A constitutional claim for excessive force is evaluated through the Fourth Amendment's reasonableness standard, considering "whether the officers' actions [we]re 'objectionably reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The "nature and quality of the intrusion" is weighed against the "countervailing governmental interests at stake." *Id.* at 396. "The intrusiveness of a seizure by means of deadly force is unmatched." Defendant Deputies deprived Chin of the "fundamental interest in his own life." *Id.* Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* In the context of deadly force, the force is reasonable only "if the officer has 'probable cause to believe the suspect poses a significant threat of death or serious physical injury to the officers or others.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Tennessee v. Garner*, 471 U.S.

---

whether the decedent ever manipulated or pointed the gun at the deputies); *Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997) (the fact that the decedent had committed a violent crime in the immediate past was "an important factor" but was not "a justification for killing him on sight" and finding that the shooting "was not objectively reasonable" because the decedent did not make any threatening movement despite being armed).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

1, 1 (1985)). Additional factors to consider are the availability of alternative methods to effectuate an arrest or overcome resistance, and if feasible, whether a warning was given prior to the use of force. *S.R. Nehad v. Browder*, 929 F.3d 1125, 1137, 1138 (9th Cir. 2019).

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *accord Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). "This is because such cases almost always turn on a jury's credibility determinations." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

At trial, the jury heard evidence that Defendant Deputies had information there was suspect who was armed with what appeared to be an AR-style rifle and was wearing what appeared to be a bullet-proof vest, that shots had been fired in the air, and that an individual had been stabbed. (Trial Tr. Day 1 at 181:8-17, 184:4-7; Trial Tr. Day 2 at 78:15-79:1). However, the Defendant Deputies did not know the severity of the stab wound (Trial Tr. Day 1 at 188:8-14; Trial Tr. Day 2 at 11:4-5, 57:14-15), and when Vazquez interacted with Plaintiff, he observed her standing upright, walking around and talking, and did not ask her where she was stabbed nor asked if she needed medical attention (Trial Tr. Day 2 at 11:6-12, 11:24-12:4). Additionally, when Defendant Deputies first encountered Chin, Chin was not firing the rifle and there were no people around him. (Trial Tr. Day 1 at 194:18-22; Trial Tr. Day 2 at 56:18-20, 57:16-24). Thus, taking all reasonable inferences in light of the jury's verdict, the jury reasonably found that despite Chin having previously committed a serious crime, this factor did not weigh in favor of the use of deadly force because

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

Chin was not engaged in any felonious conduct when the deputies arrived on scene. *See Singh v. City of Phoenix*, 124 F.4th 746, 752 (9th Cir. 2024) (finding that even when a suspect has previously committed a serious crime, "a jury could discount the severity of the suspect's purported crimes when the suspect is indisputably not engaged in felonious conduct when the officer arrives."); *S.R. Nehad*, 929 F.3d at 1136 (a jury could conclude that the suspect's already completed felony of "threatening with a weapon" did not render the officer's use of deadly force reasonable because the suspect was not engaged in any such conduct when the officer arrived or when he fired his weapon).

The jury also heard testimony that the only commands given to Chin was for Chin to drop the gun. The deputies never gave Chin any commands to stop or to get on the ground, or any warning that they were prepared to use deadly force. (Trial Tr. Day 1 at 199:8-17; Trial Tr. Day 2 at 88:24-89:1). Mr. Noble testified that because the rifle was slung on Chin's body, the deputies' commands to drop the gun were problematic because it was essentially telling Chin to grab the gun, which would create movement that may cause a shooting. (Trial Tr. Day 2 at 134:18-135:6). He further testified that the deputies should have issued commands to "get on the ground or I'll shoot" or "stop or I'll shoot." (Trial Tr. Day 2 at 135:7-14). The jury also heard evidence that Vazquez conceded that had Chin not raised the rifle or turned towards anyone with the rifle, but just walked northbound on Diamond Bar Boulevard (which is exactly what the videos depict), it would be inappropriate to shoot. (Trial Tr. Day 2 at 26:6-27:24). Under these facts, the jury had substantial evidence to find that Chin's failure to follow commands and his northbound movement on Diamond Bar Boulevard did not warrant the use of deadly force. *See Singh*, 24 F.4th at 748-49, 753-54 (plaintiff's refusal to follow commands, including commands to drop the knife he held and to not advance towards the officer, constituted less than active resistance and did not warrant the use of deadly force); *see also Calonge*, 104 F.4th at

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

46 (deadly force could not be justified by decedent continuing to walk because the officers did not instruct decedent to stop so his actions could not amount to fleeing arrest); *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1009, 1012 (9th Cir. 2016) (explaining that a person is not "flee[ing]" when he "continue[s] to move at about the same speed," even when an officer instructs him to "get down").

The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety." *S.R. Nehad*, 929 F.3d at 1132 (citing *Mattos v. Agarano*, 666 F.3d 433, 441 (9th Cir. 2011)). "[T]o justify deadly force, an objective belief that an imminent threat of death or serious physical harm is required." *Price v. Sery*, 513 F.3d 962, 969 (9th Cir. 2008). A merely subjective belief of threat cannot justify the use of force, "rather, the objectively describable totality of the circumstances would have to be such as to justify the use of force," and a sincerely held but unreasonable belief is insufficient to justify the use of force. *Id.* "[A] a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern" *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Id.*

Moreover, the Ninth Circuit has "held over and over that a suspect's possession of a gun does not itself justify deadly force." *Calonge*, 104 F.4th at 48. "An immediate threat might be indicated by a furtive movement, harrowing gesture, or serious verbal threat." *Id.* at 46. If a person possesses a gun but does not reach for it or make some similar threatening movement, then it would clearly be unreasonable for officers to shoot him. *Id.*

At trial, the videos played from the deputies' body worn cameras showed, and Vazquez conceded so, that Chin never raised the rifle or pointed the rifle at anyone

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

while the deputies were on scene, including before or during any of the shots.[2] (Ex. D to Miller Decl., Vazquez BWC at 11:44:50-11:45:19; Ex. E to Miller Decl., Barajas BWC at 11:45:10-1:45:19; Ex. 1 to Le Decl., Synced Video of Shots; Trial Tr. Day 2 at 21:6-14, 21:25-22:2, 31:1-20, 31:25-32:9, 32:13-25, 49:22-25). Moreover, Barajas testified that from her vantage point, where she did not have any visual obstruction of Chin and could see his entire body, she never saw Chin point the rifle at anyone, raise the rifle towards anyone, manipulate the rifle, or even touch the rifle with either one of his hands. (Trial Tr. Day 2 at 70:1-22, 72:5-10, 75:19-76:4). Barajas observed the barrel of the rifle pointed down the entire time—even up until the time of the last shot. (Trial Tr. Day 2 at 73:10-14). The videos and evidence further showed that Chin never raised or attempted to raise the rifle while being shot at multiple times within the span of approximately eleven seconds, with approximately five to six seconds in between the first shot and second shot, and further pauses between the second and third shot, third and fourth shot, and fourth and fifth shot. (Trial Tr. Day 2 at 86:16-87:10; Trial Tr. Day 3 at 91:1-15, 96:8-23). Additionally, it was undisputed that Defendant Deputies never heard Chin make any verbal threat. (Trial Tr. Day 1 at 198:23-25; Trial Tr. Day 2 at 63:12-15).

Moreover, there were two other deputies on scene at Diamond Bar Boulevard and neither of them ever discharged their weapons. (Trial Tr. Day 2 at 98:4-7). One of those deputies, Deputy Chad Holland, testified that he had received the same information as the Defendant Deputies prior to arriving at the scene (Trial Tr. Day 2 at 102:3-6) and also observed Chin walking down Diamond Bar Boulevard wearing body armor with an assault rifle slung over his shoulder with the barrel pointed down. (Trial Tr. Day 2 at 95:18-96:1, 96:6-10). Deputy Holland testified that he was

---

[2] Defendants' police practice expert and human factors expert also conceded that the videos do not show Chin ever raising or attempting to raise the rifle before or during the shooting. (Trial Tr. Day 3 at 90:9-13, 96:2-23, 134:23-135:6, 136:23-137:3).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

approximately the same distance away from Chin as Barajas (Trial Tr. Day 2 at 96:2-5). After Deputy Holland arrived on scene and got out of his vehicle, he pointed his firearm at Chin and gave a command to drop the gun. (Trial Tr. Day 2 at 95:15-17, 102:7-103:6, 103:20-24).

Despite Chin failing to comply with Deputy Holland's command, Deputy Holland did not shoot. (Trial Tr. Day 2 at 103:25-104:7). He further testified that he never saw Chin point the rifle at anyone. (Trial Tr. Day 2 at 98:11-13). Almost immediately after Deputy Holland issued his command, Barajas fired her first shot. (Ex. F to Miller Decl., Holland BWC at 11:45:04-11:45:05). Deputy Holland then continued to issue commands for Chin to put the gun down while pointing his firearm at Chin. (Ex. F to Miller Decl., Holland BWC at 11:45:06-11:45:13). Deputy Holland was still standing in the area of his driver's side door with his firearm pointed at Chin when the second and third shots were fired. (Trial Tr. Day 2 at 105:1-8; Ex. F to Miller Decl., Holland BWC at 11:45:06-11:45:13).

As this Court found in its ruling on Defendants' Motion for Summary Judgment, "the video evidence alone presents a triable issue of fact as to whether the Deputies' use of force was objectively reasonable and as to whether Decedent's conduct could reasonably have been perceived to be furtive, harrowing, or threatening." *Quan v. Cnty. of Los Angeles*, No. 2:24-CV-04805-MCS-KS, 2025 WL 3691863, at *5 (C.D. Cal. Nov. 17, 2025). At trial, not only did the jury review the video evidence, but the jury was also presented with evidence that another deputy on scene, who had the same information and similar vantage point as Barajas, did not shoot despite having his gun pointed at Chin at the time of the first, second, and third shots—with approximately six seconds elapsing between the first and second shot. (*Cf.* Jury Instr. No. 23, Doc. No. 107 at 25 ("You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene")). Accordingly, the jury had substantial evidence to support the conclusion that Chin did not pose an immediate threat of death or serious bodily injury, despite his

10                    2:24-cv-04805-MCS-KS

possession of the rifle. *See Calonge*, 104 F.4th at 42, 43, 46 (decedent's possession of a gun—which he had in his front waistband and was resting his right hand on—and failure to comply with commands to drop the gun and advancement toward a school, did not justify the use of deadly force because the decedent did not make any furtive or threatening movement).

### D. **The Jury Was Not Required to Believe Defendants' Evidence**

Defendants argue that Defendant Deputies' and expert Joel Suss's testimonies that Chin could potentially raise the rifle and shoot before the deputies could react and thus had to shoot when they did forecloses any other interpretation of the facts that could lead to a jury verdict in Plaintiff's favor. (*See* Defs.' Mot. at 12-13). However, the jury was not required to believe testimony from Defendant Deputies and Defendants' human factors expert regarding the alleged urgency of the situation and the need to use deadly force at the moment Defendant Deputies decided to use deadly force.

Dr. Suss testified if the Defendant Deputies were to wait for Chin to start to raise the rifle before firing, they would need to take the time to perceive the threat, bring up their weapon up and orient it towards the target, aim, and then pull the trigger. (Trial Tr. Day 3 at 82:16-83:35). The time taken to do so could result in Chin firing first before the Defendant Deputies had time to respond. (Trial. Tr. Day 3 at 84:1-22). However, he also testified that the time required for the Defendant Deputies to discharge their firearms in response to a perceived threat "may be fractions of a second." (Trial Tr. Day 3 at 88:5-22). He further conceded that the time element in his hypothetical could be reduced if an officer already had his gun out and pointed at the target. (Trial Tr. Day 3 at 92:12-93:6). And, as the video evidence shows, both Defendant Deputies had their firearms out and pointed at Chin for much longer than "fractions of a second" before they fired. (*See* Ex. D to Miller Decl., Vazquez BWC at 11:45:00-11:45-16; Ex. E to Miller Decl., Barajas BWC at 11:44:45-11:45:15). Additionally, Dr. Suss's opinion was based on the hypothetical that Chin was starting

11                                    2:24-cv-04805-MCS-KS

to raise the rifle and continued to raise the rifle, while the facts of this case showed that Chin never touched the rifle or attempted to raise the rifle. The jury was instructed that it "may accept [expert opinion testimony] or reject it and give it as much weight as [the jury] think[s] it deserves, considering…the reasons given for the opinion, and all other evidence in the case. (Jury Instr. No. 20, Doc. No. 107 at 22). Thus, the jury was free to reject Dr. Suss's opinion that the Defendant Deputies were required to fire when they did and conclude that the "fractions of a second" response time was not enough to justify Defendant Deputies' preemptive shooting of Chin when he did not make any threatening or furtive movement.

The jury was also free to reject Dr. Suss's opinion that Chin could have raised the rifle in "less than a second" because he conceded that he was not aware of any research regarding how quickly a rifle could be raised from the position of it being slung over someone's shoulder but instead, was relying on his military experience where he carried a similar rifle and observed other people firing from different positions to form the opinion. (Trial Tr. Day 3 at 94:2-17). The Court allowed the opinion as a "lay opinion" and defense counsel conceded that the "jury can weigh his qualification in terms of this testimony." (Trial Tr. Day 3 at 95:1-5). Because Dr. Suss admitted there was no research to support his opinion and that he was basing it on vague military experience, the jury was free to find that Dr. Suss was not qualified to render such an opinion and reject it outright.

Defendants' reliance on Defendant Deputies' testimony that Chin could raise the rifle and shoot before they could respond is premised on taking Defendant Deputies' testimony at face value. However,

> in the deadly force context, [the court] cannot simply accept what may be a self-serving account by the police officer. Because the person most likely to rebut the officer's version of events—the one killed—can't testify, the judge must carefully examine all the evidence in the record to determine whether the officer's story is internally consistent and consistent with other known facts. This includes circumstantial evidence

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

that, if believed, would tend to discredit the police officer's story. *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014). "[C]hanges in [the shooting officer's] account undermine his credibility and preclude [the Court] from accepting his testimony at face value." *Jones v. Las Vegas Metro. Police Dept.*, 873 F.3d 1123, 1132 n.7 (9th Cir. 2017). Judgment as a matter of law "is not appropriate in § 1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt." *S.R. Nehad*, 929 F.3d at 1133.

Substantial evidence at trial undermined Vazquez's credibility such that the jury was free to reject all of Vazquez's testimony, including his claim that he believed Chin could raise and shoot the rifle before he had time to respond. Vazquez testified that he fired his first shot when he saw Chin's right hand go up to the stock of the rifle, which he claimed to have deduced from seeing Chin's right arm bent at the elbow. (Trial Tr. Day 2 at 14:15-17, 18:25-19:7). However, video of the incident showed that Chin's right arm was in the "bent" position the entire time Chin was walking down Diamond Bar Boulevard. (See Trial Tr. Day 2 at 20:13-22, 21:3-13; Ex. D to Miller Decl., Vazquez BWC at 11:44:50-11:45:10). Moreover, Vazquez agreed that he could not see Chin's right hand or the rifle when he fired his first shot. (Trial Tr. Day 2 at 20:23-21:3). When confronted with the video evidence, Vazquez conceded that Chin's right arm stayed at the same position the entire time he walked down Diamond Bar Boulevard and changed his testimony to claim that he fired his first round when he became aware that Chin's right arm was in that position. (Trial Tr. Day 2 at 19:8-17).

Vazquez further claimed that he saw the rifle starting to come up prior to his second shot and that Chin was turning towards Vazquez with the rifle coming toward Vazquez's position when he fired his second shot. (Trial Tr. Day 2 at 23:24-24:1, 24:18-22). To support his claim that the rifle was being raised at the time of his second shot, he testified that the video of the incident showed the rifle come all the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

way up and around Chin's head before Chin tossed it above his head. (Trial Tr. Day 2 at 24:2-7). However, the videos of the incident clearly show that the rifle was pointed down prior to and during Vazquez's second shot, Chin never turned toward Vazquez, and that Chin only raised the rifle up and over his head after Vazquez's second and final shot. (See Trial Tr. Day 2 at 24:8-11; Ex. D to Miller Decl., Vazquez BWC at 11:45:09-11:45:18; Ex. E to Miller Decl., Barajas BWC at 11:45:11-11:45:17). Thus, a jury was not required to believe any of Vazquez's testimony, including his claim that he believed he would not be able to quickly respond before Chin raised the rifle and fire off a shot, in light of his credibility problems and his testimony that he was able to fire the first shot as soon as he saw what he believed to be a threatening movement and was able to fire the second shot as soon as he allegedly saw Chin start to raise the rifle.

Barajas's own testimony undercuts her belief that Chin could raise and shoot the rifle before she had time to respond. Barajas testified that she believed Chin could raise the rifle from a downward position into a pointed position at an individual in "just a few seconds." (Trial Tr. Day 2 at 81:23-25). Barajas further conceded she had previously stated that she started to panic when she first heard the call, panicked even more when she saw Chin, and panicked even more when Chin started walking in her direction. (Trial Tr. Day 2 at 63:16-64:10, 85:4-13). Based on Barajas' testimony, and Dr. Suss's opinion that it takes "fractions of a second" for an officer to perceive a threat and accurately shoot, a jury could reasonably conclude that Barajas overreacted and shot Chin based on her level of fear rather than an objective assessment that Chin presented an immediate threat of death or serious bodily injury.

The jury was instructed that it may believe all, some, or none of a witness's testimony—including where, as here, a witness has deliberately testified untruthfully about something important—and that it decides how much weight a witness's testimony deserves. (Jury Instr. No. 10, Doc. No. 107 at 11). Based on the jury's

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

verdict, the jury disbelieved Defendant Deputies' and Dr. Suss's testimonies that the deputies had to shoot when they did because Chin could have raised and fired the rifle before the deputies had time to respond, and thus their testimonies cannot support judgment as a matter of law.

### E. **Defendants' Reliance on *Napouk* is Unavailing**

Because the facts and all reasonable inference therefrom must be drawn in favor of the non-moving party and with deference to the jury's verdict, *Napouk v. Las Vegas Metropolitan Police Department*, 123 F.4th 906 (9th Cir. 2024) is distinguishable from the facts of this case. In *Napouk*, the decedent made erratic movements with a machete, pointing and moving the weapon in different directions and positions while continually advancing on the officers, despite being warned repeatedly that if he did not stop advancing and did not drop the weapon he would be shot. 123 F.4th 913-14. In response to those warnings, the decedent told the officers he understood that he would be shot and that "you have to" shoot him, while holding onto the machete and advancing on the officers. *Id.* In contrast, the trial evidence showed that Defendant Deputies never warned Chin before deploying deadly force, Chin never made any verbal threats to anyone, and Chin never touched or made any movements with the rifle that was slung over his shoulder.

## III. **DEFENDANT DEPUTIES ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

"In determining whether an officer is entitled to qualified immunity, [the court] consider[s] (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officers' alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "Deference to the jury's view of the facts persist throughout each prong of the qualified immunity inquiry." *A.D.*, 712 F.3d at 456 (citation omitted). "[C]ourts infer those facts from the jury's verdict and theories

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

presented at trial." *Nunez v. Santos*, 427 F. Supp. 3d 1165, 1188 (N.D. Cal. 2019) (citing *Willis v. City of Fresno*, 680 Fed. App'x 589, 591 (9th Cir. 2017)). [T]he jury's view of the facts must govern [the] analysis once litigation has ended with the jury's verdict." *A.D.*, 712 F.3d at 457.

A defendant will only receive qualified immunity if one of two conditions are met: (1) if the plaintiff has failed to allege or show facts that would constitute a constitutional violation, or (2) if a constitutional violation has been shown, the constitutional right violated was not clearly established at the time of misconduct. *A.D.*, 712 F.3d at 453-54. Here, based on the jury's verdict and the resolution of all factual disputes in Plaintiff's' favor, Plaintiff presented sufficient facts at trial to support the jury's finding that Defendant Deputies violated Chin's Fourth Amendment rights against excessive force. *See A.D.*, 712 F.3d at 456 (jury's verdict against the defendant officer was sufficient to deny the officer qualified immunity on the first prong of the qualified immunity analysis). And, as this Court recognized in its prior ruling on Defendants' Motion for Summary Judgment, Chin's constitutional right against excessive force under the circumstances was clearly established at the time of the incident.

As Plaintiff's entire theory of the case was that Chin did not pose an immediate threat of death or serious bodily injury because he made no furtive, threatening, or harrowing gesture towards or with the rifle, the jury verdict's resolution of this dispute in Plaintiff's favor informs the facts of the second prong of the analysis. At the summary judgment stage, this Court found, and Defendants conceded, that "at the time of the incident, 'it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions.'" *Quan*, 2025 WL 3691863, at *4–5 (quoting *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019)); *see, e.g.,* *Calonge,* 104 F.4th at 46, 48 (the law was clearly established at the time of the 2019

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

incident that use of deadly force against a man walking down the street with a gun in his waistband and hand on the gun, who failed to follow commands but did not make any threatening or furtive movement, violated the Fourth Amendment); *Estate of Lopez v. Gelhaus by & through Lopez v. Gelhaus*, 871 F.3d 998, 1013 (9th Cir. 2017) (reasonable jury could find that the officer's use of deadly force was not objectively reasonable where the decedent was holding a rifle pointed down to the ground, the officer did not warn the decedent that deadly force would be used, and the decedent did not exhibit any aggressive behavior); *George*, 736 F.3d at 838, 839 (reasonable factfinder could conclude that the deputies' use of deadly force against a domestic disturbance suspect who visibly held a gun trained on the ground and never manipulated or pointed the gun at the deputies violated the Fourth Amendment); *Curnow by & through Curnow v. Ridgecrest*, 952 F.2d 321, 325 (9th Cir. 1991) (unreasonable to use deadly force against a man who was not pointing a gun at the officers and was not facing them at the time of the shooting). Accordingly, the law was clearly established based on the facts as the jury found them.

## IV. THE JURY'S VERDICT IS NOT CONTRARY TO THE CLEAR WEIGHT OF THE EVIDENCE

A court should not grant a new trial unless, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987). "Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake." *Id.* at 1372. Courts "should not be quick to revisit a jury's credibilty determinations, and must proceed with caution and great restraint when asked to do so." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 128 (2d Cir. 2016). "While the district court reviews the record as a whole to ensure that the verdict is not against the clear weight of the evidence, the district court may not

second guess how the jury weighed specific testimony." *Manfred v. Superstation, Inc.*, 365 F. App'x 856, 858 (9th Cir. 2010) (citing *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir.2003)). A court may not grant a new trial simply because it would have arrived at a different verdict. *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th  Cir. 2007).

Defendants have failed to the meaningfully develop any argument regarding their alternative motion for a new trial, and have failed to specifically articulate how or why the jury's verdict in this case was unsupported by the clear weight of the evidence. Viewing the trial record as a whole, the clear weight of the evidence does not support the conclusion that the jury committed a mistake in finding in favor of Plaintiff on *all claims and defendants* that were presented to the jury.

To the extent that the Court reads Defendants' Motion to imply that the "mistake" was that the jury assessed the reasonableness of the Defendant Deputies' use of deadly force in a vacuum at the moment the force was used, without considering the totality of the circumstances, Defendants' cherry-picked citations to limited portions of Mr. Noble's testimony and references to Plaintiff's counsel's arguments are not enough to support the contention that the jury's verdict was against the *clear weight of the evidence*. As previously discussed, *see supra* Sections III.C-D, there is overwhelming objective evidence, including video evidence, to support the jury's verdict.

Additionally, Defendants' cited testimony of Mr. Noble must be viewed against the trial record as a whole, and when viewed so, shows that Mr. Noble did not misstate the legal standard and did not mislead the jury into ignoring the totality of the circumstances in favor of evaluating Defendant Deputies' the use of force in a vacuum. First, Mr. Noble never testified as to the law as it relates to Defendant Deputies' use of deadly force. Instead, as a police practices expert, he testified on standard police practices and training as it related to the circumstances of this case,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

including that officers are specifically trained that they can only use deadly force when there is an imminent threat of death or serious bodily injury to the officer or another, and that "imminent threat" is defined as the ability, opportunity, and apparent intent to immediately cause death or serious bodily injury[3]. (Trial Tr. Day 2 at 46:12-17, 74:2-5, 74:12-16, 122:3-13). Additionally, officers are trained that an "imminent threat" is not merely a fear of future harm, no matter of great the fear and no matter how great the likelihood of the harm, but one that from appearances must be instantly confronted and addressed.[4] (Trial Tr. Day 2 at 124:1-10; Trial Tr. Day 3 at 129:13-130:2). Mr. Noble also testified that he considered the totality of the circumstances, including that Defendant Deputies had information that Chin had fired shots in the air and that someone had been stabbed, before rendering his opinion that Defendant Deputies' use of deadly force was contrary to standard police practices and training because there was no furtive or threatening movement prior to the shots. (Trial. Tr. Day 2 at 123:10-124:17, 125:8-22, 126:19-128:2, 128:14-22). And as the Supreme Court in *Barnes v. Felix* recognized, while earlier facts and circumstances are relevant to the use of force analysis, "the situation at the precise time of the shooting will often be what matters the most; it is, after all, the officer's choice in that moment that is under review." 605 U.S. at 80.

Plaintiff's counsel's arguments regarding what constituted an imminent threat under the facts of this case also do not support the conclusion that the jury's verdict was against the clear weight of the evidence. Plaintiff's counsel's arguments were within the confines of the law regarding the use of deadly force. Additionally, the Court instructed the jury that "[a]rguments and statements by lawyers are not

---

[3] This training mirrors California law regarding an officer's use of deadly force. *See* Cal. Pen. Code § 835a; CACI 441; CACI 1305B.

[4] Both Plaintiff's and Defendants' police practices expert agree that officers receive this specific training as to what constitutes an "imminent threat" for the purposes of the use of deadly force.

19                                  2:24-cv-04805-MCS-KS

evidence" (Jury Instr. No. 6, Doc. No. 107 at 7) and properly instructed the jury regarding the correct legal standard for Plaintiff's claims (see Jury Instrs. 21-28, Doc No. 107 at 23-33). And under Supreme Court precedent, a jury is presumed to follow the trial court's instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Accordingly, the jury's verdict was not contrary to the clear weight of the evidence.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' Motion for Judgment as a Matter of Law and Motion for New Trial in its entirety.

Respectfully submitted,

DATED:  April 22, 2026          LAW OFFICES OF DALE K. GALIPO

By _____ */s/ Hang D. Le*_____
        Dale K. Galipo
        Hang D. Le
        Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. 50(B) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. 59

## **<u>Certificate of Compliance</u>**

The undersigned, counsel of record for Plaintiff Jennie Quan, certifies that this memorandum contains 6,968, which complies with the 7,000 word limit of L.R. 11-6.1.

DATED: April 22, 2026        LAW OFFICES OF DALE K. GALIPO

By          */s/ Hang D. Le*
         Dale K. Galipo
         Hang D. Le
         Attorneys for Plaintiff