Thomas C. Hurrell, State Bar No. 119876
E-Mail: thurrell@hurrell-llp.com
Joseph K. Miller, State Bar No. 245685
E-Mail: jmiller@hurrell-llp.com
Jerad J. Miller, State Bar No. 334001
E-Mail: jjmiller@hurrell-llp.com
HURRELL-LLP
800 West 6th Street, Suite 700
Los Angeles, California 90017
Telephone: (213) 426-2000
Facsimile: (213) 426-2020

Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES; MARISOL BARAJAS; HECTOR VAZQUEZ; and DOES 3-10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04805-MCS(KSx)<br><br>**REPLY TO OPPOSITION TO COMBINED MOTION FOR JUDGMENT AS A MATTER OF LAW (JMOL) F.R.C.P. RULE 50(b) OR IN THE ALTERNATIVE MOTION FOR NEW TRIAL F.R.C.P. RULE 59**<br><br>Date:    6/1/2026<br>Time:    9:00 AM<br>Crtrm.:  7C<br><br>[Assigned to Hon. Mark C. Scarsi, Courtroom "7C"] |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS:

Defendants COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ (collectively referred to as "Defendants") hereby submit their Reply to plaintiff's Opposition to Defendants' Combined Motion for Judgment as Matter of Law (JMOL) F.R.C.P. 50(B) or In The Alternative Motion for New Trial F.R.C.P. 59.

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

## **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................... 1

II.   THE USE OF FORCE WAS REASONABLE UNDER THE LAW BASED ON THE UNDISPUTED EVIDENCE AND THE TOTALITY OF THE CIRCUMSTANCES KNOWN TO THE OFFICERS ....................... 2

    A.    THE CASES CITED BY PLAINTIFF ARE DISTINGUISHABLE AND DO NOT ESTABLISH THAT THE USE OF FORCE BY DEFENDANTS WAS UNREASONABLE ........ 6

III.  DEPUTY BARAJAS AND DETECTIVE VAZQUEZ ARE ENTITLED TO QUALIFIED IMMUNITY ...................................................... 10

IV.   A NEW TRIAL IS WARRANTED IN THE INTEREST OF JUSTICE ....... 13

V.    CONCLUSION ........................................................................................ 14

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016) ............ 9, 10

*Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 352–55 (4th Cir.1941) ......... 13

*Blanford v. Sacramento County*, 406 F.3d 1110 (C.A.9 2005) ................................ 12

*Calonge v. City of San Jose*, 104 F.4th 39 (9th Cir. 2024) ...................................... 8

*Cheney v. Moler*, 285 F.2d 116, 118–19 (10th Cir.1960) ........................................ 13

*Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014) ........................................ 7

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) .............................................. 7

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) ..................................................... 7

Gonzalez v. City of Anaheim, 747 F.3d 789, 795, 800 (9th Cir. 2014) ..................... 7

*Graham v. Connor*, 490 U.S. 386, 393 (1989) ....................................................... 12

*Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997) ................................................. 9

*Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) .................................... 9

*Kennedy v. Southern California Edison Co.*, 268 F.3d 763 (9th Cir. 2001) .............. 1

*Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ............................................... 10, 12

*Lal v. California, 746 F.3d 1112 (9th Cir. 2014)* .................................................... 13

*Liston v. Cnty. of Riverside*, 120 F.3d 965 (9th Cir. 1997) ...................................... 9

*Murphy v. City of Long Beach* (9th Cir. 1990) ....................................................... 13

*Napouk v. Las Vegas Metropolitan Police Department*, 123 F.4th 906 (2024) ...... 6, 9

*S.R. Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019) ........................................... 8

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................. 11, 13

*Singh v. City of Phoenix*, 124 F.4th 746 (9th Cir. 2024) .......................................... 8

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) ........................................... 8, 9

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

## I. **INTRODUCTION**

This is a deadly use of force case where plaintiff's decedent (Mr. Chin) was wearing body armor carrying an AR assault rifle, advancing toward law enforcement and civilians, had stabbed his mother and fired the rifle in the neighborhood minutes prior to the use of deadly force.  Defendants contend that the jury improperly applied the "moment-of-threat" rule and failed to evaluate the "totality of the circumstances" as they were required to do.  Defendants request the Court to correct the error of law, grant judgment as a matter of law and rule in the alternative on Defendants' new trial motion.  Defendants also request the Court to grant qualified immunity for Deputy Barajas and Detective Vazquez.

It is apparent here that the Jury incorrectly applied the "moment-of-threat" rule after being repeatedly told throughout trial that the use of force was not reasonable if Mr. Chin did not raise the rifle. This was contrary to the required "totality of the circumstances" analysis required of the jury as a matter of law.  An error of law relating to the parties' respective burdens of proof ordinarily requires reversal. *Kennedy v. Southern California Edison Co.*, 268 F.3d 763 (9th Cir. 2001).

The jury was told throughout trial that the deputies use of force could not be reasonable if Mr. Chin did not raise the rifle.  As stated in Defendant's moving papers the jury was misled to focus only on the moment of threat and ignore the totality of the circumstances. The jury was misdirected and conditioned throughout trial by plaintiff's expert and plaintiff's counsel at opening, presentation of evidence and plaintiff's closing. Here, substantial evidence cannot support the jury's conclusion because the jury's conclusion that the use of deadly force was unreasonable was based on the "moment-of -threat" and not the totality of the circumstances.  Jurors were prejudicially told and conditioned by plaintiff's counsel and plaintiff's expert throughout trial that all that mattered was whether Mr. Chin raised the assault rifle. They were told that the use of force was unreasonable if Mr. Chin did not raise the rifle.

Plaintiff does not dispute that the jury applied the "moment-of-threat" rule. In fact, Plaintiff repeats the same erroneous "moment-of-threat" theory again in plaintiff's opposition: "At all relevant times, Decedent did not pose an immediate threat of death or serious bodily injury to Defendants…or others. Decedent never raised, attempted to raise, or pointed the rifle at Defendants…nor anyone else at the time of the shooting."). Plaintiff's police practices expert also opined on this as discussed above, and Plaintiff further argued this point at the summary judgment stage." Plaintiff's Opposition, p. 5: 1-6.

Plaintiff's opposition does not deny that the jury applied the "moment-of-threat" rule. Instead, plaintiff's opposition argues that it is to late to correct the jury's error now. However, the Court has the authority to correct the error and order judgment as a matter of law and/or a new trial.

The error in applying the "moment-of-threat" rule applies to all of plaintiff's causes of action equally. The predicate determination for all the causes of action is whether the use of force was reasonable. All require a decision whether the use of force was reasonable based on the totality of the circumstances. Here, the jury misapplied the "moment-of threat" rule, therefore the jury's finding that the use of force was unreasonable was not based on the totality of the circumstances and cannot be determinative of any of Plaintiff's causes of action.

Further, Deputy Barajas and Detective Vazquez are entitled to qualified immunity

## II. THE USE OF FORCE WAS REASONABLE UNDER THE LAW BASED ON THE UNDISPUTED EVIDENCE AND THE TOTALITY OF THE CIRCUMSTANCES KNOWN TO THE OFFICERS

The facts here are not reasonably or rationally disputed. The video and audio evidence is clear. There was no dispute with respect to the video. Here, no trier of fact could reasonably determine that Mr. Chin did not pose an imminent threat of death or serious bodily harm to Deputy Barajas or the civilians in harm's way on

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

scene.

On June 19, 2023, Los Angeles Sheriff's Department ("LASD") Deputy Marisol Barajas and Detective Vazquez responded with lights and sirens (Code-3) to a call regarding a man armed with an AR-15 style rifle walking around the Diamond Bar Boulevard area. Detective Vazquez observed Mr. Chin's mother stabbed – though he did not know she was his mother at the time. [Exh D Vazquez Body Cam].  The stabbing was reported on radio broadcast to all responding deputies. [Exh A Vazquez, pp. 11:1-3; 11:6-16]. Deputies heard Mr. Chin had stabbed a person and had fired the rifle. [Exhibit C; Exh A Barajas, pp.57:9-11]. Deputies observed Mr. Chin had an assault rifle and body armor. [Exh A Vazquez, pp. 41:17-42:3]. Detective Vazquez heard Barajas radio transmission. [Exh A Vazquez, pp. 12:15-25]. Mr. Chin was walking toward a civilian (Mr. Wiseman) and Deputy Barajas with AR rifle and body armor. Deputy Barajas had a 9mm weapon and Chin had body armor. She testified Mr. Chin's assault rifle could penetrate her vehicle and her armor.  [Exh A Barajas, pp.79:12-80:1].

Plaintiff's statement of facts in opposition is extremely misleading. The severity of Plaintiff's injury is not relevant and is a red herring. Detective Vazquez explained that he observed Mr. Chin with his assault rifle and body armor immediately after he encountered Plaintiff stabbed.  Detective Vazquez' attention was focused on Mr. Chin.  There were personnel behind Detective Vazquez to assist Plaintiff.   Knowing the stabbing video had been precluded by the Court, Plaintiff's counsel repeatedly referred to Mr. Chin's brutal stabbing of his mother as a "cut" misleading the jury regarding the <u>totality of the circumstance</u> the deputies faced.

Further, Plaintiff's opposition erroneously claims no one was around Chin. This is a clear misstatement and not a disputed fact. The video was clear undisputed evidence that people were around Mr. Chin because he was advancing on and came to approximately 7-8 feet or less than ten feet from Deputy Barajas, Brandon Wiseman and other civilians with an assault rifle wearing body armor ignoring

HURRELL·LLP

800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

3

officer commands to drop the gun after he had stabbed his mother and fired the assault rifle in the neighborhood.  These facts are undisputed.

Plaintiff's expert repeatedly claimed that Mr. Chin was not an imminent threat if he did not make a furtive movement by raising the assault rifle. [Furtive (adjective) meaning "*done in a quiet and secretive way to avoid being noticed; surreptitious; expressive of stealth : sly*." Merriam-Webster Dictionary.[1]  The jury did not have the benefit of the definition at trial or during deliberation.

Under the law, Mr. Chin did not have to raise the rifle to be an imminent threat. The actual "furtive" movement here was Mr. Chin concealing his right hand while continuing to advance forward on Deputy Barajas and the civilians with his assault rifle and body armor while ignoring commands to drop the weapon.  Mr. Wiseman confirmed he was holding the rifle. Detective Vazquez believed he was holding the rifle because he was able to see Mr. Chin's right elbow bent as if he was holding the rifle.  Plaintiff's opposition confirms that the video shows his elbow in that bent position to grip the rifle the entire time.  Mr. Chin continued to advance without dropping the rifle and putting his hands up even after initial shots were fired and deflected by his body armor.  He never stopped advancing until the last two shots landed through his body armor.  These facts are beyond dispute.

There was no inconsistency in either Deputy Barajas' or Detective Vazquez's testimony.  Deputy Barajas' body worn video does not show her panicking. NO one could face down an armed gunman without fear.  It would be inhuman otherwise. Detective Vazquez made clear at trial that the hypothetical that Plaintiff's counsel posed at his deposition differed and omitted facts present with Mr. Chin.

Deputy Holland and Deputy Toves arrived on seen after Deputy Barajas. Deputy Barajas arrived on scene facing Mr. Chin at 11:44:26.  Deputy Holland's

---

[1] https://www.merriam-webster.com/dictionary/furtive

video clearly shows that he and his partner Deputy Toves did not arrive until 11:44:50. Barajas had already given multiple commands to Mr. Chin and watched Chin continue to advance forward on her position before Holland and Toves even arrived.  Deputy Holland begins to get out of his vehicle at 11:45:00.  Deputy Barajas fires her first shot as Deputy Holland is giving his first command to put the gun down.  His testimony was he had just arrive and had not assessed the situation before shots fired, but he did perceive Mr. Chin to be a lethal threat. [Exhibit A, (Holland testimony) Reporter's Transcript p. 101, lines 4-15. At the same time while shots were fired, Deputy Toves is observed on his body camera attempting to unlock the safe a the back of their vehicle to retrieve their rifle.  Deputy Holland and his partner had just arrived and were assessing the scene, while Deputy Barajas and Detective Vazquez were already engaged in a standoff with Mr. Chin advancing on Deputy Barajas and the civilians next to her.  That is undisputed by the videos and Deputy Holland's testimony. Plaintiff's argument regarding Deputy Holland and Deputy Toves that they were officers on scene that did not fire a shot is another misleading argument ignoring the actual facts on scene.

The totality of the circumstances facing Deputy Barajas and Detective Vazquez are undisputed.  Mr. Chin was advancing on Deputy Barajas and civilians with an assault rifle and body armor ignoring commands to drop the gun. Mr. Chin continued to advance on Deputy Barajas and the civilians unaffected by the initial gun shot by Barajas.  Both Deputy Barajas and Detective Vazquez heard radio traffic that Mr. Chin had stabbed someone and that he had fired the weapon in the neighborhood.

Deputy Barajas and Detective Vazquez were reasonable is believing the weapon had live ammunition and that Mr. Chin knew how to fire it. Detective Vazquez encountered Plaintiff bloody in the street stabbed. Plaintiff knew her son posed a threat of serious bodily harm because she had just been brutally stabbed by him, yet Plaintiff and Plaintiff's expert claimed at trial that he did not have the

5

requisite "apparent intent" to harm anyone. It is beyond dispute Mr. Chin had the apparent intent to cause great bodily harm.

*Napouk v. Las Vegas Metropolitan Police Department*, 123 F.4th 906 (2024), involved a suspect wielding a hatchet not an AR assault rifle. In *Napouk,* the Ninth Circuit determined that even if the suspect had not raised his bladed weapon before he was shot, he posed an immediate threat because he was close to and approaching the officers and could have raised the bladed weapon in another second or two and struck the officer with it. The suspect came within nine feet of the officers before the officers shot. The Ninth Circuit's analysis in *Napouk* makes clear that the use of force was reasonable based on the totality of the circumstances the officers faced here. The Ninth Circuit's analysis in *Napouk* makes clear that Mr. Chin in this case was an imminent threat of serious bodily harm or death under the law justifying the use of deadly force deployed by Deputy Barajas and Detective Vazquez. The only conclusion based on the undisputed facts presented at trial is that the use of force was reasonable based on the totality of the circumstances the Defendant law enforcement officers faced on scene. The Defendant law enforcement officers should be judged based on what they perceived and witnessed in real time on the date of the incident when they responded to the Code 3 emergency call for service of a man with a gun and body armor who had stabbed someone where upon arrival the man advanced on officers and civilians with the assault rifle and body armor refusing to obey officer commands. The Defendant law enforcement officers should not be judged with 20/20 hindsight of what plaintiff's expert or plaintiff's counsel believe the jury should conclude based on their "moment-of-threat" analysis.

**A.    THE CASES CITED BY PLAINTIFF ARE DISTINGUISHABLE AND DO NOT ESTABLISH THAT THE USE OF FORCE BY DEFENDANTS WAS UNREASONABLE**

Deputy Barajas' and Detective Vazquez' use of force was reasonable under the totality of the circumstances that they faced. The cases cited in Plaintiff's

HURRELL-LLP

800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

6

opposition are distinguishable from the facts in this case:

(i)     In *Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014) an informant told officers that Cruz was gang member and carried a gun.  Officers stopped Cruz for a broken tail light.  Cruz attempted to escape and backed into one of the patrol cars. Cruz eventually stopped and began to obey the officers commands to get out of the vehicle.  Officers opened fire as Cruz attempted to exit believing that he was reaching for a gun in his waste band. In *Cruz*, there was no video to confirm the officers version. Cruz had not harmed anyone prior to the traffic stop.  Cruz had stopped his vehicle and was complying with officers' commands at the time the shots were fired.  The only issue disputed was whether Cruz reached for a gun in his waste band.  A gun was found on the passenger seat after the shooting.

Here, it is undisputed that Mr. Chin was advancing toward Deputy Barajas and civilians with an assault rifle and body armor while ignoring commands to drop the gun. Contrary to plaintiff's argument and plaintiff's experts conclusion, Mr. Chin did not need to raise the assault rifle to be an imminent threat death or serious bodily harm.  His failure show his hands, stop advancing on Deputy Barajas and the civilians.  It is settled that "[t]he law does not require an officer who immediately faces physical harm to wait before defending himself until the indication of impending harm ripens into the onslaught of actual physical injury." See Gonzalez v. City of Anaheim, 747 F.3d 789, 795, 800 (9th Cir. 2014)

(ii)    In *George v. Morris*, 736 F.3d 829 (9th Cir. 2013) a terminally ill man using a walker had a gun in his own house.  He was spotted on his balcony with the gun in his hand.  He had not fired weapon. There were no facts that he had harmed anyone or threatened anyone.

(iii)   *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) cited by Plaintiff is distinguishable from this case. *Deorle* involved a police officer who shot an unarmed man in the face with a lead-filled bean bag round, without warning. There were no bystanders nearby. The man had been "physically compliant and generally

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

followed all the officers' instructions".

(iv)   In *S.R. Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019) officer Browder responded to a call for a "417 (Threatening w[ith] weapon)," and indicated that a male in a back lot was threatening people with a knife.  On arrival, Browder encountered Nehad walking toward him.  Browder exited his vehicle. Browder did not activate his body camera.  Eyewitness accounts diffreed and were contradicted by surveillance video. Less than five seconds after exiting his vehicle, Browder fired a single shot at Nehad, fatally striking him in the chest. Nehad was approximately seventeen feet away at the time Browder shot him.  Browder initially admitted that he had not seen any weapons. Investigators did not find any weapons in the alley, and determined that Nehad had been carrying a metallic blue pen when Browder shot him.

(v)   *Calonge v. City of San Jose*, 104 F.4th 39 (9th Cir. 2024) involved a man (Calonge) with a BB gun in his waistband. Responding officers gave conflicting commands. Calonge was heading away from officers at a distance and there were no civilians near him when the shot was fired. No bystanders were near Calonge or further down the sidewalk toward the intersection.

(vi)   In *Singh v. City of Phoenix*, 124 F.4th 746 (9th Cir. 2024) Officers responded to report of attempted robbery with a knife.  When officers Smith-Petersen and Batway arrived and ordered plaintiff (Singh) to stop and show both hands, Singh was holding a small pocket knife to his own throat.  Singh had not stabbed anyone with the pocket knife.  Singh had stopped moving toward the officers at the time he was shot.  Before officer Smith-Petersen shot Singh, Singh stated that people thought he was "crazy" and that he wanted officer Smith-Petersen to shoot him. At no point did Singh suggest that he intended to harm either of the officers or anyone else. *Id*. at 749.  Singh's conduct showed an intent to harm only himself.  Here, plaintiff had stabbed his mother and was advancing toward officers and civilians with an assault rifle and body armor ignoring commands to drop the

8

assault rifle.  There was no indication he intended only to harm himself.

The Ninth Circuit distinguished *Liston* from Napouk and *Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024). The decedent in *Hart* was trying to commit suicide using a knife, and he already had cut himself by the time the police arrived at his home after his wife called for assistance. *Id*. at 545–46. During the incident, Hart advanced toward the officers with the knife moving to only eight to ten feet away from the officers in several seconds. *Id*. at 546, 549]

(vii)   *Liston v. Cnty. of Riverside*, 120 F.3d 965 (9th Cir. 1997) involved unreasonable force/ seizure during execution of defective warrant on the wrong residence where plaintiffs had no weapon, had harmed no one and attempted to comply with officer commands while explaining officers had the wrong house.]

(viii)   In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), Hemet police responded to a domestic dispute.  The wife who reported confirmed no gun of weapons in house. Hemet police arrived and observed the  husband on the porch within his hands in pockets. Commands were given to remove his hands from pockets.  He refused went inside and came back out on porch with hands still in pockets.  Eventually he showed his hands but refused other commands Pepper spray and then a canine was released. Smith has no weapon, did not stab anyone in the incident.

(ix)   *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997) was a standoff at Ruby Ridge with FBI. Deputy U.S. Marshals were not absolutely immune for false testimony before a grand and petit jury.

(x)   In *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016), Officer Villarreal shot and killed Benny Herrera during an attempted stop after police received a domestic-violence report that Herrera had taken his ex-girlfriend's phone and allegedly hit her. Dispatch told officers Herrera was walking away, was not known to carry weapons, and likely was trying to catch a bus. Officer Miali first followed Herrera in a patrol SUV and ordered him to get down. Herrera

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

9

did not comply and kept moving down the road with one hand in his sweatshirt pocket. Villarreal then drove up beside Herrera to box him in, ordered him to take his hand out of his pocket, and shot him less than a second later as Herrera's hand came out. Herrera was unarmed, and Villarreal admitted he never saw a weapon.

*A.K.H. ex rel. Landeros* is distinguishable from the *Quan* case. Deputies were told that the suspect was not known to carry weapons, and when deputies arrived on scene, no weapon was observed, and the suspect in AKH presented no threat to other civilians and he was walking on the side of the road in the same direction as traffic.

Here, Mr. Chin had stabbed someone, had a working assault rifle and was wearing body armor. When deputies arrived, Mr. Chin was walking in the middle of the road, with his rifle, and was walking towards civilians and Deputy Barajas. Detective Vazquez observed the stabbing victim (Plaintiff) and then observed MR. Chin with his assault rifle and bullet proof vest. Deputy Barajas and later Deputy Holland observed Mr. Chin with his body armor and his assault rifle. Mr. Chin kept his right hand down obscured at his side. Mr. Wiseman confirmed that Mr. Chin did have his hand on the rifle when Chin was advancing toward him and Deputy Barajas. Deputies issued multiple commands, including over loud speaker, for Mr. Chin to drop his rifle. Mr. Chin ignored all of the law enforcement commands and continuously advanced on the civilians and Deputy Barajas closing the gap to within several feet forcing Deputy Barajas and Detective Vazquez to act.

## III.    DEPUTY BARAJAS AND DETECTIVE VAZQUEZ ARE ENTITLED TO QUALIFIED IMMUNITY

Law enforcement officers "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (citation omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. at 1152 (citation omitted). Here, there is no evidence that Deputy Barajas and Detective

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

10

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

Vazquez were incompetent or knowingly violated the law. Here, Mr. Chin was advancing on Deputy Barajas and civilians with an assault rifle wearing body arm ignoring commands to put the gun down.  Deputies knew that Mr. Chin had stabbed someone and fired shots in the neighborhood. Detective Vazquez observed Plaintiff stabbed and then observed Mr. Chin with his rifle wearing body armor advancing toward Deputy Barajas and civilians.  Mr. Chin had his right hand concealed as he advanced.  He ignored commands to drop the weapon and did not show his hands. There is no question that Mr. Chin was an imminent threat of serious bodily harm and death.  He had the ability, opportunity and apparent intent from the totality of the circumstances perceived by the officers at the time to cause serious bodily harm and death. That is not rationally deniable. Under these facts there was no constitutional violation under the first prong of *Saucier v. Katz*, 533 U.S. 194 (2001).

Further, even if there was a constitutional violation under these facts the law did not clearly establish that the officers' conduct would violate the Constitution. As shown in Section IIA above, Plaintiff cites no case that would have put Deputy Barajas and Detective Vazquez on notice that they had to wait until Mr. Chin raised his assault rifle to fire on them before using deadly force where Mr. Chin was advancing on Deputy Barajas and civilians with an assault rifle wearing body arm ignoring commands to put the gun down, had stabbed someone and fired shots in the neighborhood moments before.  Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted. *Saucier v. Katz*, 533 U.S., at 206, 121 S.Ct. 2151 (qualified immunity operates "to protect officers from the sometimes 'hazy border between excessive and acceptable force' "). Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct

11

would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

It is important to emphasize that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*, at 201, 121 S.Ct. 2151. As we previously said in this very context:

> "[T]here is no doubt that [*Graham v. Connor*, 490 U.S. 386, 393 (1989)], clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in *Anderson v. Creighton* 'that the right the official is alleged to have violated must have been "clearly established" in \*199 a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' 483 U.S. [635,] 640 [, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)]. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*, at 201–202, 107 S.Ct. 3034.

*Kisela v. Hughes*, 584 U.S. 100, 107 (2018) [officer's use of force did not violate clearly established law, and thus, officer was entitled to qualified immunity where 911 emergency call reporting that a woman was engaging in erratic behavior "hacking a tree" with a large kitchen knife was shot after taking two steps toward a nearby woman and refused to drop the knife after at least two commands to do so.];[*See also*, *Blanford v. Sacramento County*, 406 F.3d 1110 (C.A.9 2005). In *Blanford,* the police responded to a report that a man was walking through a residential neighborhood carrying a sword and acting in an erratic manner. *Id.,* at 1112. There, as here, the police shot the man after he refused their commands to

12

drop his weapon *Id.,* at 1113. There, as here, the police believed (perhaps mistakenly), that the man posed an immediate threat to others. *Ibid.*  In *Lal v. California, 746 F.3d 1112 (9th Cir. 2014)*, qualified immunity was granted when officers used deadly force against a suspect who was standing one yard away, and only after the suspect: led a high-speed chase; threw "several soft-ball sized rocks at" the officers; walked towards them carrying a "football-sized rock over his head". *Id*. at 1114–15, 1117.  Here, Mr. Chin was armed with an assault rifle and body armor.  He stabbed his mother and fired shots in the neighborhood and then advanced toward Deputy Barajas and civilians ignoring multiple commands to drop the weapon.

Qualified immunity may be granted if either of the *Saucier* steps are satisfied. Here, Defendants contend that both steps are satisfied under these facts and the law. Defendants respectfully request the Court to grant Deputy Barajas and Detective Vazquez qualified immunity.

## IV.    A NEW TRIAL IS WARRANTED IN THE INTEREST OF JUSTICE

An order for new trial is appropriate in this case.  *Murphy v. City of Long Beach* (9th Cir. 1990) 914 F2d 183 was a police shooting wrongful death and civil rights case where the trial court granted a new trial for plaintiffs following a jury verdict against the plaintiffs.  The Ninth Circuit held that the grant of new trial was appropriate where the district court was firmly convinced that the impact of errors resulted in miscarriage of justice. The clear weight of the evidence here against the verdict warrants a new trial in the interest of justice.

The trial judge is ultimately responsible for the conduct of the litigation, and is also responsible for ensuring that a party is not a victim of a miscarriage of justice. *See Cheney v. Moler*, 285 F.2d 116, 118–19 (10th Cir.1960) (duty of trial judge to ensure that just verdict is returned); *Moist Cold*, 249 F.2d at 256 (trial judge may grant new trial to avoid miscarriage of justice); *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350, 352–55 (4th Cir.1941) (detailing the traditional discretion

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE   (213) 426-2000

13

afforded a trial judge). The court's control over a trial is illustrated by the court's *sua sponte* power to grant a new trial on grounds not alleged by a party. *See* Fed.R.Civ.P. 59(d).

## V.    CONCLUSION

Based on all of the above and Defendants original moving papers, Defendants respectfully request the Court to grant Defendants' Rule 50(b) motion, determine that Deputy Barajas and Detective Vazquez are entitled to qualified immunity and conditionally grant Defendants request for new trial under Rule 59.

DATED:  May 6, 2026                    HURRELL-LLP


By:      */s/ Joseph K. Miller*
     THOMAS C. HURRELL
     JOSEPH K. MILLER
     JERAD J. MILLER
     Attorneys for Defendants, COUNTY OF LOS ANGELES, MARISOL BARAJAS and HECTOR VAZQUEZ

HURRELL-LLP
800 WEST 6TH STREET, SUITE 700
LOS ANGELES, CA 90017-2710
TELEPHONE  (213) 426-2000

14