UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIE QUAN, individually and as successor in interest to BENJAMIN CHIN, deceased, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES, MARISOL BARAJAS, HECTOR VAZQUEZ, <br><br> Defendants. | Case No. 2:24-cv-04805-MCS-KS <br><br> **ORDER RE: MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY FOR A NEW TRIAL (ECF NO. 123)** |

Defendants County of Los Angeles, Marisol Barajas, and Hector Vazquez filed a renewed motion for judgment as a matter of law or, alternatively, for a new trial. (Mot., ECF No. 123.) Plaintiff Jennie Quan opposed, (Opp'n, ECF No. 127), and Defendants replied, (Reply, ECF No. 129). The Court deems the motion appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

///

1

## I.   BACKGROUND

Plaintiff is the mother and survivor of Benjamin Chin ("Decedent"). (MSJ Order 2, ECF No. 56.) On June 19, 2023, in Diamond Bar, California, Defendants Barajas and Vazquez (together, "the Deputies") responded to a dispatch call regarding a man, Decedent, who was wearing a bulletproof vest and walking down the street with an AR-15 style rifle. (*Id.* at 2–3.) The Deputies fired a combined total of five shots at Decedent, who died from his injuries. (*Id.* at 3.)

Plaintiff filed suit, alleging that the Deputies used unreasonable and excessive force against Decedent. The case proceeded to a jury trial on the claim of excessive force in violation of 42 U.S.C. § 1983 against the Deputies, and the claims of battery, negligence, and violation of the Bane Act, California Civil Code section 52.1 against all Defendants,. (FPTCO 4, ECF No. 102.) The jury returned a verdict in favor of Plaintiff on all these claims. (Verdict, ECF No. 115.)

## II.   MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.   Legal Standard

Federal Rule of Civil Procedure 50(b) authorizes a party to renew a motion for judgment as a matter of law submitted under Rule 50(a). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

"The standard for judgment as a matter of law . . . 'mirrors' the summary judgment standard." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). A court may grant the motion only if "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Jorgensen v. Cassiday*, 320 F.3d 906, 917 (9th Cir. 2003) (internal quotation marks omitted); *accord Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003) ("Judgment as a matter of law is proper when the evidence

2

permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury.").

A court may not weigh the evidence or assess the credibility of witnesses; instead, the court must "draw all reasonable inferences in favor of the nonmoving party" and "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 150–51. Any part of the verdict supported by "substantial evidence" must be upheld. *SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Id.* (quoting *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007)).

### B.     Discussion

Defendants argue that judgment as a matter of law is appropriate because the jury failed to assess the totality of circumstances concerning the Deputies' use of force, and even if the Deputies' use of force was unreasonable, they are entitled to qualified immunity. (Mot. 11–16.) Plaintiff responds that substantial evidence supports the jury's conclusion that the Deputies used excessive force, (Opp'n 5–11), and that the Deputies are not entitled to qualified immunity because Decedent "did not pose an immediate threat of death or serious bodily injury because he made no furtive, threatening, or harrowing gesture towards or with the rifle," (*id.* at 16).[1]

---

[1] Plaintiff also contends that Defendants waived any argument concerning the sufficiency of evidence for Plaintiff's state law claims because Defendants' Rule 50(a) motion at trial addressed only Plaintiff's 42 U.S.C. § 1983 claim. (Opp'n 2–3.) Plaintiff further argues that Defendants waived their arguments concerning testimony by Plaintiff's police practices expert's opinions and argument by Plaintiff's counsel by failing to object pre-trial, at trial, and in their Rule 50(a) motion. (*Id.* at 3–5.) Given the disposition of this Order, the Court declines to address Plaintiff's arguments regarding waiver.

The Court previously considered and rejected arguments similar to the ones Defendants advance here at summary judgment. (*See generally* MSJ Order 6–10.) At summary judgment, the Court ultimately concluded that, viewing the video footage from the Deputies' body-worn cameras in the light most favorable to Plaintiff, it was possible that "a reasonable juror could find . . . that Decedent made no threatening, harrowing, or furtive gestures throughout the course of his encounter with the Deputies," (*id.* at 7), and as a result, there was a triable issue as to whether the Deputies used excessive force, (*id.* at 9).

The evidence presented at trial is consistent with the Court's analysis at summary judgment. The jurors viewed video footage and still images of the incident from the Deputies' body-worn cameras, allowing them to make a direct assessment of the entirety of Decedent's encounter with the Deputies. In addition, the jurors heard testimony from Deputy Barajas describing the position of Decedent's firearm as "slung over" his shoulder and not "all the way down, but it was down," (Day 2 Tr. 73:10–14, ECF No. 119), and acknowledging that she did not see Decedent raise the firearm at any time prior to or during the shooting, (*id.* at 86:16–87:10). Detective Vazquez likewise conceded in his testimony that, based upon images from his body-worn camera footage, Decedent's firearm appeared to be positioned down and not pointed toward anything when the Deputies fired shots. (*Id.* at 31:3–32:25.) A third officer on the scene, Deputy Chad Holland, also testified that he never saw Decedent point the firearm at anyone. (*Id.* at 98:11–13.) Although Defendants identify other evidence that, they contend, establishes that Decedent posed an immediate threat to the Deputies, (*e.g.*, Mot. 2, 12–13), a court "may not make credibility determinations or weigh the evidence" when deciding a motion for judgment as a matter of law, *Reeves*, 530 U.S. at 150.

Defendants also argue that they are entitled to qualified immunity regardless of the jury's verdict. (Mot. 13–16.) However, Defendants adduce no additional law or argument that leads the Court to reconsider its conclusion at summary judgment that

4

Defendants were not entitled to qualified immunity because "at the time of the incident, 'it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions.'" (MSJ Order 9 (quoting *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019)).) The Ninth Circuit has held that merely possessing a firearm, absent an immediate threat is not enough to justify the use of deadly force. *See, e.g.*, *Calonge v. City of San Jose*, 104 F.4th 39, 46 (9th Cir. 2024) (concluding that an individual's "mere possession of a gun did not justify the use of deadly force," assuming that he "did not reach for his waistband or make a similar furtive or threatening movement"); *George v. Morris*, 736 F.3d 829, 832–33, 838–39 (9th Cir. 2013) (finding lethal force unreasonable where there was a factual dispute as to whether the decedent ever manipulated or pointed his firearm).

*Napouk v. Las Vegas Metropolitan Police Department*, 123 F.4th 906 (9th Cir. 2024), which Defendants cite in their motion, is consistent with this principle. In *Napouk*, the Ninth Circuit rejected a plaintiff's overly broad contention "that an armed individual can pose a threat *only* when that person brandishes the weapon in a threatening manner." *Id.* at 917 (internal quotation marks omitted). Rather, the Ninth Circuit reiterated that "mere possession has never alone justified the use of deadly force by law enforcement," but that, "'[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat.'" *Id.* (quoting *George*, 736 F.3d at 838). While the Ninth Circuit ultimately concluded in *Napouk* that the officers in that case did not use excessive force, *id.* at 922, the facts in that case differed significantly from the facts present here. In *Napouk*, the officers warned the decedent that "they would shoot him if he took another step," but the decedent continued to move forward, holding "what [the officers] reasonably perceived to be a long, bladed weapon in his hand" and "moving it around and pointing it in various directions." *Id.* at 918. Here, the Deputies neither warned Decedent that they would shoot him if he continued to advance forward,

5

nor was Decedent moving his firearm around or pointing it. The Court concludes that the Deputies are not entitled to qualified immunity given the jury's findings.

Finally, Defendants contend that "the jury was misled" by Plaintiff's police practices expert and Plaintiff's counsel argument, contending that they implicitly advocated a "moment-of-threat" analysis that led the jury to disregard the totality of circumstances. (Mot. 11–13.) In particular, Defendants challenge testimony and argument at trial asserting that Decedent "was not a threat because he never raised, pointed or manipulated his rifle," (*id.* at 12 (internal quotation marks omitted)), contending that these statements are inconsistent with *Barnes v. Felix*, 605 U.S. 73 (2025). In *Barnes*, the Supreme Court rejected the Fifth Circuit's moment-of-threat rule, which instructed courts to "look[] only to the circumstances existing at the precise time an officer perceived the threat inducing him to shoot." 605 U.S. at 76. However, the Ninth Circuit has consistently followed the totality of the circumstances inquiry that *Graham v. Connor*, 490 U.S. 386 (1989), and its progeny set forth, and never employed a moment-of-threat rule like the Fifth Circuit's rule. *See, e.g.*, *Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017) (noting that courts "must examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case" (internal quotation marks omitted)). *Barnes* did not alter this totality of the circumstances inquiry. *See Barnes*, 605 U.S. at 79–80 (explaining that the key question in excessive force cases "is whether the force deployed was justified from the perspective of a reasonable officer on the scene," and that this "inquiry . . . requires analyzing the totality of the circumstances" (internal quotation marks omitted)).

Further, the written jury instructions the Court provided to the jury were consistent with *Barnes* because they required the jury to "consider all of the circumstances known to the officers on the scene," including "the nature of the crime or other circumstances known to the officers at the time force was applied." (Jury Instr. No. 23, ECF No. 107.) Defendants do not argue that this instruction or any of the other instructions given to the jury were erroneous. The Court also instructed the jury that

6

"[a]rgument and statements by lawyers are not evidence," (*id.* No. 6), and that the jury must follow the law as provided to it by the Court, (*id.* No. 1). The "jury is presumed to follow its instructions." *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see also Doe v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000) ("There is a strong presumption that the curative instructions given by the district court were followed by the jury . . . .").

Accordingly, drawing all reasonable inferences in favor of Plaintiff and disregarding all evidence favorable to Defendants that the jury was not required to believe, the Court concludes that there is substantial evidence to support the jury's verdict. The Court denies the renewed motion for judgment as a matter of law.

## III.   MOTION FOR A NEW TRIAL

### A.   Legal Standard

"The court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Rule 59 does not specify the grounds upon which a new trial may be granted, but the Ninth Circuit recognizes that courts are bound by historically recognized grounds. For example, a new trial may be granted "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). Courts "enjoy[] considerable discretion" in deciding a new trial motion. *Jorgensen*, 320 F.3d at 918 (internal quotation marks omitted).

If, "in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence," a trial judge has a duty to weigh the evidence and set aside the verdict, even if it is supported by substantial evidence. *Molski*, 481 F.3d at 729 (alteration in original) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)). A court must order a new trial "[i]f, having given full respect to the jury's

findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1371–72 (9th Cir. 1987) (internal quotation marks omitted). In considering a Rule 59 motion, the court "is not required to view the trial evidence in the light most favorable to the verdict"; instead, it may "weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." *Experience Hendrix LLC v. Hendrixlicensing.com Ltd.*, 762 F.3d 829, 841–42 (9th Cir. 2014). "However, a district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

### B.   Discussion

Defendants request a new trial for the same reasons identified in their arguments for judgment as a matter of law, contending that the verdict is contrary to the clear weight of the evidence. (Mot. 16–17.) Plaintiff opposes, arguing that the portions of testimony and argument to which Defendants object in their motion "are not enough to support the contention that the jury's verdict was against the clear weight of the evidence." (Opp'n 18 (emphasis removed).)

Although the standard for a new trial is distinct from the Rule 50(b) standard explored above, the Court's analysis of whether a new trial should be granted follows a similar path, particularly given that Defendants provide no additional evidence or argument in support of their motion for a new trial apart from what Defendants relied upon in their Rule 50(b) motion. (*See* Mot. 17.) Viewing the evidence under the totality of the circumstances, the Court has no reason to disturb the jury's determination that the Deputies used unnecessary and excessive force against Decedent. While Defendants contend that Decedent posed an immediate threat to those present at the scene, (*id.* at 12), the evidence adduced at trial, including the Deputies' testimony and their body-worn camera footage, tended to show that during the Deputies' encounter with

8

Decedent, Decedent's firearm was slung over his shoulder with the rifle pointed down and away, and that Decedent did not raise or point the firearm at anyone. Defendants also note that the Deputies were responding to reports that there was a stabbing victim and that Decedent had fired the rifle into the air, (*id.* at 2, 13), but the evidence established that when the Deputies encountered Decedent, he was neither firing the rifle nor openly wielding a sharp object. The Court is not left with a definite and firm conviction that the jury made a mistake.

The motion for a new trial is denied.

## IV. CONCLUSION

The motion for judgment as a matter of law or, in the alternative, for a new trial is denied.

**IT IS SO ORDERED.**

Dated: June 5, 2026

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE