# Exhibit 6

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California, among other federal courts.  I have personal knowledge of the facts herein and, if called to testify to those facts, could and would do so competently.

2.      I graduated from law school and was admitted to practice in 1978. After 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless people, First Amendment rights and police practices.  Exhibit  1 is my resumé.

3.      I received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California.  In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles.  I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than two decades. Additional recognition of my legal work is set out in my attached resumé.

4.      For the six years prior to 1997, I was a Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California.  During that time, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish

2

reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners familiar with the ACLU lawyers in question so that they could assess the comparable skill levels of attorneys at their firms to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5. As a sole practitioner, I assess a reasonable market rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as I did when I was at the ACLU. Since entering private practice, I continue to survey firms each year to obtain relevant information for rates. As part of my survey, I obtain information concerning rates for attorneys in larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6. I also review fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing civil rights law, as well as court awards to the ACLU, Disability Rights Legal Center ("DRLC"), Public Counsel, Western Center on Law and Poverty ("WCLP"), and other public interest groups in Los Angeles. Because many cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I see those billing rates as well.

7. When I become aware of a case where statutory fees are sought, I obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these

3

Ex. 6, Page 2

firms.  Many of these commercial firms also serve as pro bono counsel on occasion. I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.  If I am preparing a declaration for a specific jurisdiction, I search for recent fee awards for comparably skilled and experienced attorneys in that legal market.

8.    I do not charge to provide a fee declaration; however, I suggest that attorneys in private civil rights practices donate to a non-profit legal organization.

9.    I believe I am extremely qualified to provide declarations for the civil rights bar and the non-profit legal community because of my work at the ACLU and in private practice since 1978 in the area of civil rights, my adjunct teaching at Loyola Law School for the past 18 years, and my role in organizing representation for large-scale legal actions.  For example, at the request of the ACLU of Georgia, I organized the initial representation of nearly 1,000 Mariel Cubans in immigration hearings after they were transferred to federal prisons in Southern California following an uprising over conditions and prolonged detention at the Atlanta Federal Penitentiary in the late 1980s.  Ultimately, the USC Criminal Law Clinic took over responsibility; however, in the initial rounds of hearings, I recruited dozens of law students from UCLA, Loyola and USC and supervised them in representing the Mariel Cubans at administrative hearings. Many of them are employed now at various public interest and civil rights groups in Los Angeles.

10.    I also organized attorneys and students to represent about 5,000 high-school students in Southern California charged in juvenile court as truants after they walked out of school to protest the proposed Sensenbrenner immigration bill in Congress in 2005.  Through all this work, I am familiar with a significant portion of civil rights and public interest law students and lawyers in Los Angeles and am able to assess their skill, experience and reputation based on my professional interactions with them.

4

11.    In addition, unlike most other attorneys providing expert evidence of market rates, I have extensive experience in a broad range of civil rights litigation, including Public Records Act Requests, employment law, First Amendment Church/State law, free speech and assembly, anti-SLAPP litigation, homelessness litigation, excessive force, false arrest and class actions. As my resumé demonstrates, I successfully brought landmark cases in these and other civil rights subject areas, including a state-wide class-action on behalf of women's health-care providers in California against the anti-abortion group Operation Rescue. *National Abortion Federation, et al. v. Operation Rescue, et. al.*, 8 F.3d 680 (9th Cir. 1993). Many of these cases required novel approaches and became models for attorneys challenging similar issues around the country.

12.    For example, in *Jones v. City of Los Angeles*, 2014 U.S. App. LEXIS 6640 (9th Cir. Apr. 10, 2014), (subsequent citation on vacatur upon settlement omitted), first filed in 2003, the groundwork was laid for *Martin v. City of Boise,* 920 F.3d 584 (9th Cir. 2019). When *Jones* was filed, I faced three cases in the Ninth Circuit and one at the California Supreme Court, as well as multiple lawsuits across the country, all unsuccessful in striking policies criminalizing homelessness and replicating *Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *aff'd.* 40 F.3d 1155 (11th Cir. 1994). Although the *Jones* case has now been rejected by the Supreme Court in *Grants Pass v. Johnson*, 603 U.S. 520 (2024), the legal theory I developed to protect the rights of unhoused persons was successfully applied around the country for more than two decades.

13.    In *National Abortion Federation*, the district court dismissed the action pursuant to *Bray v. Alexandria Clinic,* 506 U.S. 263 (1993), holding the first two clauses of the Ku Klux Klan Act, 42 U.S.C.S. § 1985 did not state a claim for relief.    The Circuit reversed and remanded, finding the district court erred in denying Plaintiffs' move to amend to add a claim under 42 U.S.C.S. § 1985(3), the

5

"hindrance" clause. 8 F.3d at 685-87.

14. My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates. Most recently, my declaration was cited favorably in support of an award of fees in *Herrera v. County of Los Angeles,* Case No. cv 22-1013-HDV-PDx (C.D. Cal. Feb. 23, 2026) [Doc. 75, p. 3]; *Lucas R., et al. v. Robert F. Kennedy, Jr.,* Case No. 18-05741 DMG (DEMx), (C.D. Cal. March 3, 2026) [Doc. 482, p. 11]; and *HIT & MISS ENTERPRISES, INC.,* Case 2:18-cv-09996-WLH-SSC, [Doc. 138] (C.D. Cal. Feb. 11, 2025).

15. In September 2023, my declaration was cited with approval for both rates and methodology in an award of attorney fees in *Mickail Myles v. County of San Diego*, Case No. 3:15-cv-01985-JAH-BLM (S.D. Cal. 2023). [Doc. 484, p.7]. The motion in *Myles* was filed in late 2022 in San Diego.   Earlier in 2023, my declaration was cited with approval in *Valenzuela v. City of Anaheim*, Case No. SACV 17-00278-CJC (DFMx) (C.D. Cal. 2023) [Dkt. 462], and the companion case of *Craig v. City of Anaheim,* SACV 17-02094-CJC (DFMx) (C.D. Cal. 2023) [Dkt. 280], on behalf of the Galipo law firm.  My declaration was also cited with approval in *D. R., a minor v. Redondo Beach Unified School District*, Case No. 21-56033 (9th Cir. Aug. 2023).

16. In *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of attorney's fees for the ACLU under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (C.D. Cal. 2008), granting IDEA fees pursuant to 20 U.S.C. §1415(i)(3)(c), the Court cited my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (C.D. Cal. 2007), Judge Pregerson cited my declaration and that of Barry Litt to support the requested rates.  *Id.* at pp. 8-9 and n.4.  Additional cases

6

in which my declaration was cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (C.D. Cal. May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 29, 963-64 (C.D. Cal. 2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. Mar. 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. Wash. 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. Jan. 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012); and *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018), awarding EAJA fees to the ACLU. In *Jochimsen*, a unanimous court held I was qualified as an expert on market rates in California.

17. I also litigated statutory fee issues at the appellate level in several cases, including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal. 4th 533 (2004), affirming continued vitality of the "catalyst" fee doctrine in California and affirming a nearly $2 million fee award in 1999 in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department. I was co-counsel in that case with attorneys Connie Rice and Barry Litt. I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (9th Cir. 2014), establishing entitlement to fees as a

7

"prevailing party" based on the Circuit's necessary approval of a settlement that was, in turn, conditioned on vacatur of the panel decision.

18.   I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU. I also have done CLEs on attorney fees for the National Lawyers Guild and the National Police Accountability Project.

19.   In addition, I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours.  Many of these cases involve multiple attorneys and law offices.  In my own cases, I am usually the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any impermissible hours.  This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items.  For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of work for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Associates.  The unadorned lodestar in *Tipton* was approximately $1,900,000.

20.   In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for all attorneys and support staff in the case.   Because the case was a hybrid class action, with both 300 individual plaintiffs and a residual class of several thousand persons, the legal team was sizable.  The fee approved in the case 25 years ago was $3,713,000.

21.   In all the fee declarations I prepare, I apply my understanding of the decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11.  I understand

8

this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful.  *See Nadarajah,* 569 F.3d at 910.

22.  *Blum* directs that the most important factors in determining reasonable market rates are skill and experience; the size of the firm is not a determinative factor.  This principle in *Blum* was recently reiterated by the Ninth Circuit in *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.,* 168 F.4th 608, 2026 U.S. App. LEXIS 5422, *38 (9th Cir. 2026) (remanding a decision reducing rates based on firm size). *See also, Davis v. City & County of San Francisco*, 976 F.2d 1536, modified on other grounds, 984 F.2d 345 (9th Cir. 1993) (upholding sole practitioners and non-profit law firm staff rates at those charged by "corporate attorneys of equal caliber." *Id.* at 1545; *see also Auer v. Robbins*, 519 U.S. 452 (1997) (market rates for comparably skilled attorneys not reduced based on firm size).

23.  I apply several additional principles to assess market rates.  First, when available, I look at rates awarded to the attorneys in previous cases because I understand such awards are viewed as strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F.3d 889, 892 (9th Cir. 2008).

24.  Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys

9

who do not bill on an hourly basis.  *See Blum*, 465 U.S. at 895; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases). I understand the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

25.    When the specific rate evidence identified in the preceding paragraph is available, I usually do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis.  In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the individual attorneys included in the survey and often no indication of the relevant legal market.  *See, e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where the lower court relied on a national survey rather than local rates).

26.    I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers as they generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees.  *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market).

27.    Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F.3d 1041, 1046 (9th Cir. 2009).

28.    To support my opinion on the reasonableness of the fees sought by this motion, I attach fee awards and declarations in cases in the Los Angeles legal

market. Each is a true and correct copy of the document available in the Court's files. Some are now several years old, so they do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original). To adjust for rates more than two years old, I apply a minimum of a 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles before the pandemic. *See* http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category). For the last three years, I have used a slightly higher increase of five percent to reflect a rise in inflation rates. Even that is below what I observed for increases in the Los Angeles legal market at firms doing similarly complex litigation.

29.    I have not filed a contested fee motion in several years other than to seek Court approval of the lodestar fees in class-action settlements, or to settle non-class cases. In 2024, the Court approved the rate of $1,325 an hour for me in granting final approval of a class action against the City of Santa Monica arising from the 2020 George Floyd protests. *Black Lives Matter, et al. v. City of Santa Monica, et al.,* 2:21-cv-05253-CAS-AJR [Doc 64].

30.    In 2022, the Court approved a rate of $1,150 an hour for me in *Shawn Carroll, et al. v. County of Orange, et al.*, Case No. 8:19-cv-00614 DOC-DFM (C.D. Cal.), a class-action challenging Orange County's regulations for determining eligibility to qualify for General Relief. [Doc. 40, p.5]. In the same case, the Court approved the 2022 rate of $650 an hour for my co-counsel, Brooke Weitzman, then with 8 years of experience.

31.    In May 2019, I applied the rate of $1050 an hour to calculate the fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.)

Ex. 6, Page 10

and for a lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS (C.D. Cal.). My last court awarded fee in a contested motion was $875 in 2014 in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

32. I understand fees are sought by this motion for Dale Galipo at the 2026 rate of $1500 an hour. I am very familiar with Mr. Galipo and know him for many years. In my experience he is, perhaps, the most skilled trial lawyer in complex civil rights cases involving deaths and serious injury caused by law enforcement. Based on discussions I have had with other civil rights lawyers in California, I believe my view of Mr. Galipo's reputation and his skill are broadly shared.

33. I understand that fees are also being sought for Renee Masongsong, an attorney at the Galipo law firm who assisted in this matter. While I have never worked with her, I have spoken with Ms. Masongsong in the past on several occasions. I understand, based on reviewing the firm's website, that she is a 2011 law graduate, currently with 15 years of experience. She is requesting a rate of $900 an hour.

34. Attached to my declaration are several exhibits setting out rates for attorneys in the Central District legal market. Each is a true and correct copy of the document from an official Court website, LEXIS or Westlaw, or an official government website.

35. In my experience, the rates for counsel in this matter are well within the market rate for attorneys of their skill, experience and reputation in the public interest legal community but well below rates for comparably skilled and experienced attorneys at large firms engaged in similarly complex litigation in the Los Angeles legal market.

36. Attached at Exhibit 2 is the Declaration of Michael Strub, Jr. in *Nelson*

12

*v. Bridgers*, an anti-SLAPP lawsuit in Los Angeles Superior Court. Case No. 21STCV35635. The motion included fees at 2022 rates of $1400 an hour for name partners at Greenberg & Gross. Both attorneys are identified in Exhibit 2 as 1988 graduates.  A copy of the Order approving the fee motion is attached at Exhibit 3. Notably, although the court reduced the total requested fees based on excessive billing for some tasks performed by multiple associates, the Court approved the requested rates.  Ex. 3, pp. 1-2.

37.    Attached at Exhibit 4 is the fee award by Judge Marshall to the law firm of Hadsell, Stormer, Renick and Dai in *Pineda v. City of Los Angeles*, Case 2:21-cv-06470-CBM-AS (C.D. Cal. April 19, 2024) [Doc. 195]. I am very familiar with each of these attorneys. The motion was filed in 2023, seeking 2023 market rates. The Court approved $1,400 an hour for attorney Dan Stormer and $915 an hour for Morgan Ricketts. Ex. 4, pp. 3,4.

38.    As the Court's order notes, referencing a supplemental filing by Plaintiff's counsel in *Pineda*, Mr. Stormer received fees in 2024 at $1500 an hour in *Pederson, et al. v. The County of Plumas*, 2:89-1659 (E.D. Cal. Filed Dec. 4, 1989). Ex. 4, p.6.

39.    Ms. Ricketts was noted to be a 2009 law graduate. Ex.4, p. 7. In 2023 she had 14 years of experience, one year less than Ms. Masongsong. Even applying a modest annual increase of 3 percent, Ms. Ricketts' increase over two years would bring the comparable billing rate in the range of $970 an hour, not counting the additional experience for Ms. Masongsong.

40.    Exhibit 5 is a true and correct copy of the contract between the City of Los Angeles and the law firm of Gibson, Dunn  & Crutcher in *Los Angeles Alliance for Human Rights, et al. v. City of Los Angeles, et al.,* 2:20-cv-02291-DOC-KES.  At p. 23, the contract sets out Gibson Dunn's standard billing rates for 2025 and its discounted rates for the *LA Alliance* litigation. I am very familiar with

13

the litigation in the case and represent an intervenor.

41.    The lead Gibson partner on the case is Theane Evangelis. Her standard rate for 2025 was $2,425 and her discounted rate was $1,295.00. Ex. 5, Ex. B, p. 23.  Although I do not know her personally, I read a number of briefs she wrote and watched her argument before the Supreme Court in *Grants Pass v. Johnson*, 603 U.S. 520 (2025).  Based on my review of her profile on the firm's website, I believe she is a 2003 graduate, now with 22 years of experience.  Her standard 2025 rate is almost $1,000 an hour above the rate for Dale Galipo, who has nearly twice the experience.

42.    In Exhibit 5, the standard 2025 billing rate for Marcellus McRae, also a partner at Gibson Dunn, is listed as $2,245 an hour. Based on my review of the firm's website, I formed the belief that Mr. McRae is a 1988 law graduate, now with 27 years of experience. *Id.*  His 2025 customary billing rate is more than $700 an hour higher than the rate requested for Mr. Galipo.

43.    As another point of comparison in Exhibit 5, the 2025 billing rate for Gibson Dunn attorney Bradley Hamburger is $2,110 an hour, nearly $1,200 an hour above the rate requested for Renee Masongsong. *Id.* I reviewed Mr. Hamburger's listing on the firm's website and, on that basis, believe he is a 2009 law graduate. In 2009 he had 1 more year of experience than Ms. Masongsong has now.

44.    Finally, Gibson's standard 2025 rate for a seventh-year associate is $1,555 an hour, higher than Mr. Galipo's requested rate. *Id.*

45.    In *Herring Networks v. Rachel Maddow*, Case No. 19-cv-1713 BAS-AHG (S.D. Cal. 2020), Gibson Dunn submitted the declaration of Scott Edelman, listing the firm's customary billing rates in the Los Angeles legal market.  A true and correct copy of the Edelman Declaration is attached at Exhibit 6.  *Herring Networks* was an anti-SLAPP lawsuit in the Southern District of California.  The motion sought fees for Nathaniel Bach, then a senior associate in Gibson Dunn's

14

Los Angeles office, at his customary 2019 rate of $915 an hour and his 2020 rate of $960 an hour.  Ex. 6, pp. 5-6.  I reviewed Mr. Bach's listing on the State Bar and his current firm and, on that basis, concluded that he is a 2006 law graduate.  In 2020, the year of the *Herring* award, Mr. Bach had 14 years of experience.  Although the Court in *Herring* reduced Mr. Bach's rate to align with local market rates in San Diego, more recent awards to Mr. Bach are Los Angeles market rates and support the reasonableness of the rates in this motion.

46.    Attached at Exhibit 7 is the declaration of Nathaniel Bach submitted in support of an award of fees in *Tracy Anderson Mind and Body, LLC v. Megan Roup*, et al., Case No. 2:22-cv-04735-PSG-E (C.D. Cal. 2023), an anti-SLAPP case. In his declaration, Mr. Bach set out his standard 2022 rate of $960 an hour and his standard 2023 rate of $1,065 an hour, an increase of approximately 12 percent annually.  Ex. 7, p. 5.  In 2023, Mr. Bach had 17 years of experience, two years more than Renee Masongsong has now. His 2023 rate of $1,065 is approximately 10 percent above the 2026 rate requested for Renee Masongsong.

47.    Attached at Exhibit 8 is the 2024 order of final approval by Judge Snyder of the class action against the City of Santa Monica arising from the 2020 George Floyd protests. *Black Lives Matter, et al. v. City of Santa Monica, et al.,* 2:21-cv-05253-CAS-AJR [Doc 64], filed October 22, 2024. Among the attorneys for whom fees were approved were Paul Hoffman at the 2024 rate of $1,425 an hour.  I have known Mr. Hoffman since approximately 1982.  He was my supervisor on the legal staff of the ACLU.  Mr. Hoffman is a 1976 law graduate. Erin Darling was also approved at the 2024 rate of $975 an hour.  I have known Mr. Darling since he was a law student and, based on my personal knowledge, believe him to be a 2008 graduate. In 2024, he had 16 years of experience, one year more than Ms. Masongsong has now.

48.    The rates sought by this motion ($1,500 for Mr. Galipo and $900 for

15

Ex. 6, Page 14

Ms. Masongsong) are consistent with previous awards of fees to the same attorneys in the Central District. Attached at Exhibit 9 is the Order awarding fees to Mr. Galipo and associated in his office in *Paolo French v. City of Los Angeles* (*French II*), Case No. EDCV 20-0416 JGB (SPx) (C.D. Cal. 2024). [Doc. 188]. As the Court's order notes, I provided a supporting fee declaration in this matter both pre- and post-appeal. The 2024 award followed the City's unsuccessful appeal. The Court approved the 2024 rate of $1400 an hour for Dale Galipo and $975 an hour for John Fattahi. *Id.* at 5-6. I have known Mr. Fattahi since approximately 2007 and believe he is a 2006 law graduate.

49. Attached at Exhibit 10 is a rate sheet filed by Robbins Geller Rudman & Dowd, a nationally recognized class-action litigation firm. Over the years, I have known several attorneys at the firm and provided a declaration on the reasonableness of the hours incurred in defeating a SLAPP lawsuit by Trump University. The 2024 rates were provided for a lodestar crosscheck in *Dicker v. TuSimple Holdings, Inc., et al.,* Case No. 3:22-cv-01300 BEN-MSB. *See* 2024 U.S. Dist. LEXIS 232627 (CA SD 12 18 24). The approved 2024 rates in Exhibit 9 include $1400 an hour for Darren Robbins, identified on the firm's website as a 1993 law graduate.

50. Attached at Exhibit 11 is the 2024 Los Angeles Superior Court decision in *Galvan v. Corrigan*, Case No.: BC703891, consolidated with 19STCV07689, awarding attorney fees to Carney Shegarian. The decision is reported at 2024 Cal. Super. LEXIS 59325. I reviewed Mr. Shegarian's State Bar listing and on that basis concluded he is a 1990 admittee. The approved rate for Mr. Shegarian in 2024 was $1,300 based on the Court's consideration of his strong trial skills. Ex. 11, *8.

51. Attached at Exhibit 12 is the 2025 decision of the Los Angeles Superior Court in *Depto v. St. Paul the Apostle Church*, LASC Case No. BC691437,

16

2025 Cal. Super. LEXIS 69715.  In *Depto* Carney Shegarian was awarded fees at the rate of $1,500 an hour, a 15 percent increase over his approved 2024 rate. Ex. 12, *8.

52.   Attached at Exhibit 13 is the 2025 Real Rate Report. The report provides market rates by quartile and mean assessments. I know several of Mr. Galipo's associates over the years and have worked with them in different contexts. Given the skill, experience and reputation of attorneys at the Galipo firm, I would place Mr. Galipo and his associates in the top quartile for their respective categories; however, because the Real Rate Report does not provide fourth-quartile rates, I have applied third-quartile rates. The Real Rate Report for Los Angeles supports the reasonableness of the rates sought.

53.   The third-quartile rate for a partner in Los Angeles for 2025 was $1,334 an hour and for an associate it was $1041 an hour.  Ex. 13, p.20. The 2025 third-quartile rate for an attorney in Los Angeles with seven or more years of experience was $1,065 an hour. Ex. 13, p. 68.

54.   The Real Rate Report also sets out a more detailed analysis of rates for Los Angeles by the size of the law firm.  Those rates are a proper comparator since the skills, experience and reputation of attorneys at larger firms are the measure for similarly skilled and experienced attorneys in the public interest and civil rights legal communities. For example, the breakdown by City and areas of practice reports rates up to $1,800 or more for the Los Angeles legal market. Ex. 13, pp. 207-209.

1.   The chart below sets out the rates referenced in my declaration.

| Ex. | Attorney | Graduation | Award | Years | Rate |
|-----|----------|------------|-------|-------|------|
| 2 | Alan Greenberg | 1988 | 2022 | 34 | $1,400.00 |
| 2 | Wayne Gross | 1988 | 2022 | 34 | $1,400.00 |

17

Ex. 6, Page 16

| 4 | Dan Stormer | 1974 | 2023 | 49 | $1,400.00 |
|---|---|---|---|---|---|
| 4 | Morgan Ricketts | 2009 | 2023 | 14 | $ 915.00 |
| 5 | Theane Evangelis | 2003 | 2025 | 22 | $2,425.00 |
| 5 | Marcellus McRae | 1988 | 2025 | 37 | $2,245.00 |
| 5 | Bradley Hamburger | 2009 | 2025 | 16 | $2,110.00 |
| 5 | 7th Year Associate | 2018 | 2025 | 7 | $1,555.00 |
| 6 | Nathaniel Bach | 2006 | 2020 | 14 | $ 960.00 |
| 7 | Nathan Bach | 2006 | 2022 | 16 | $ 960.00 |
| 7 | Nathaniel Bach | 2006 | 2023 | 17 | $1,065.00 |
| 8 | Erin Darling | 2008 | 2024 | 16 | $ 975.00 |
| 8 | Paul Hoffman | 1976 | 2024 | 48 | $1,425.00 |
| 9 | Dale Galipo | 1988 | 2024 | 36 | $1,400.00 |
| 9 | John Fattahi | 2006 | 2024 | 18 | $ 975.00 |
| 10 | Darrell Robbins | 1993 | 2024 | 31 | $1,400.00 |
| 11 | Carney Shegarian | 1990 | 2024 | 34 | $1,300.00 |
| 12 | Carney Shegarian | 1990 | 2025 | 35 | $1,500.00 |
| 13 | Real Rate Report | partner | 2025 | -- | $1.365.00 |
| 13 | Real Rate Report | Associate | 2025 | -- | $ 982.00 |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of April, 2026 at Los Angeles, California.

*Carol Sobel*

CAROL A. SOBEL

18

Ex. 6, Page 17

# EXHIBIT 1

# CAROL A. SOBEL
725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

LAW OFFICE OF CAROL A. SOBEL                                    APRIL, 1997 TO PRESENT
Solo civil rights law firm.

SENIOR STAFF COUNSEL                                            1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California; supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY                                                 1985 TO 1990
*ACLU Foundation of Southern Califonria*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other First Amendment rights.

ASSOCIATE DIRECTOR                                             1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations, including working with Boards of Directors on development of policy on civil liberties issues. Engaged in litigation and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR                                           1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a 501(c)(3) and a 501(c)(4).

## Admitted to Practice:

| | |
|---|---|
| California Supreme Court | November, 1978 |
| United States Supreme Court | September, 1991 |
| Ninth Circuit Court of Appeals | August, 1986 |
| U.S.D.C. Central District of California | February, 1986 |
| U.S.D.C. Eastern District of California | June, 1990 |

## Litigation Experience:

Federal courts:   (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403 could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid Row.
(Lead counsel and argued on appeal)

Ex. 6, Page 19

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code §85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person "lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal. 2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter alia*, advance-notice requirements police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of searching for parole and probation violations.  See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles*,
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons, brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil rights fee shifting statutes.  Following oral argument, the Ninth Circuit certified issue of continued availability of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing before the California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel*;* argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD). The injunction prevents the LAPD  from engaging in stops of homeless persons for parole and probation sweeps on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy  regulating time, place and manner of student speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement and permitted high insurance and police charges based on the past unlawful conduct of third parties without adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

Ex. 6, Page 20

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel. The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity. Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right to equal protection, due process and right to petition the government because they violated LAPD confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)

*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds. (Lead counsel)

## State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code of Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law. Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian Science parents for death resulting from use of prayer instead of traditional medicine in treatment of ill child.  (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retainer against garment worker advocates must be granted as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring strict adherence to statutory procedures and limiting exemption of local government agencies from adhering to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof burden.  Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.  Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)

Publications:

(Partial listing)s

*Catalyst Fees After Buckhannon*

Civil Rights Litigation and Attorney Fees Annual Handbook

(January 2006)

*Free Speech and Harassment: An Overview*

*in the Public Employee Sector*

CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley

June 1999  No. 136

*Defeating Employer Defenses to Supervisor Liability*

*After* Ellerth *and* Faragher

ADVOCATE, October 1998

*Student Expression Under California Law*

UCLA Journal of Education

Volume 3, pp. 127-137 (1989)

*Should Attorneys Be Disciplined For Gender Bias*

Point/Counterpoint ABA Journal   August, 1995

*Fight Illegal Police Practices in State Court*

Los Angeles Daily Journal

March 6, 1992

*Judicial Oversight Limited by Supreme Court*

Los Angeles Daily Journal

May 6, 1991

*Jury Nullification is Conscience of Community*

Los Angeles Daily Journal

August 31, 1990

*A Basic Right Merits Shield From The Mob*

Los Angeles Times

August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988   II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS   p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A .  June, 1968 |

## Professional and Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

| | |
|---|---|
| Los Angeles Center for Law and Community Action<br>Member, Board of Directors | 2015-present |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

Awards:

(Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2019 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

| | |
|---|---|
| National Lawyers Guild - Ernie Goodman Award | 2007 |
| Angel Award - California Lawyer Magazine Award for pro bono work | 2007 |
| CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine | 2008 |
| Top 75 Women Litigators in California - Daily Journal | 2008, 2013 |
| California Super Lawyers - Top 50 Women Lawyers in Southern California | 2014 |
| National Lawyers Guild, Los Angeles Law for the People Award | 2014 |
| ACLU Lifetime Achievement Award | 2017 |

# EXHIBIT 2

Electronically FILED by Superior Court of California, County of Los Angeles on 01/11/2023 07:52 PM David W. Slayton, Executive Officer/Clerk of Court, by K. Hung,Deputy Clerk

ALAN A. GREENBERG, State Bar No. 150827
  *AGreenberg@GGTrialLaw.com*
WAYNE R. GROSS, State Bar No. 138828
  *WGross@GGTrialLaw.com*
MICHAEL H. STRUB JR., State Bar No. 153828
  *MStrub@GGTrialLaw.com*
DAVID T. SHACKELFORD, State Bar No. 318149
  *DShackelford@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

Attorneys for Defendant Phoebe Bridgers

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| CHRIS NELSON, an individual,<br><br>        Mr. Nelson,<br><br>        v.<br><br>PHOEBE BRIDGERS, an individual; and<br>DOES 1 to 10, inclusive,<br><br>        Defendants. | Case No. 21STCV35635<br><br>**DECLARATION OF MICHAEL H. STRUB, JR. IN SUPPORT OF DEFENDANT PHOEBE BRIDGERS'S MOTION FOR ATTORNEY'S FEES**<br><br>Filed Concurrently with Notice of Motion and Motion, Memorandum of Points and Authorities, Declaration of Deborah S. Mallgrave, and [Proposed] Order<br><br>Date:        March 9, 2023<br>Time:        8:30 a.m.<br>Dept.:        72<br><br>Reservation No.: 013205082792<br><br>Assigned for All Purposes to:<br>Hon. Curtis A. Kin, Dept. 72<br><br>Action Filed:        September 28, 2021 |

STRUB DECLARATION IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

Ex. 6, Page 29

## DECLARATION OF MICHAEL H. STRUB JR.

I, Michael H. Strub Jr., declare as follows:

1.    I am an attorney, duly licensed to practice law in the State of California.  I am a partner with the law firm Greenberg Gross LLP, counsel of record for defendant Phoebe Bridgers in this action.  The facts stated herein are within my personal knowledge and if called upon to testify, I can truthfully and competently do so as to all matters herein.

2.    I make this declaration in support of defendant Phoebe Bridgers's Motion for Attorney's Fees (the "Motion") related to her successful special motion to strike pursuant to California Code of Civil Procedure section 425.16 (the "anti-SLAPP motion").

3.    In pursuing the anti-SLAPP motion, Ms. Bridgers has incurred attorney's fees in the amount of $585,196.50.  Ms. Bridgers also has incurred $36,902.50 in fees in connection with this motion.  Ms. Bridgers is therefore entitled to a total award of $622,099.00 in attorney's fees for successfully pursuing the anti-SLAPP motion.

4.    The attorney's fees incurred in the representation of Ms. Bridgers in this matter are reflected in the billing records of Greenberg Gross.  Attached hereto as **Exhibit A** are true and correct redacted copies of Greenberg Gross invoices through December 31, 2022 reflecting the fees that she was billed in this matter.  Reported in tenths of an hour, these invoices describe in detail the legal work that Greenberg Gross performed in pursing the anti-SLAPP motion and the resulting fees incurred.  One erroneous entry for $328.50 has been redacted from the June 2022 invoice and subtracted from the total of fees requested.

5.    Greenberg Gross was well aware of Ms. Bridgers's reputation advocating for women's rights and social justice and agreed to represent Ms. Bridgers on a partial pro bono basis given that Mr. Nelson's claims arose from Ms. Bridgers's brave choice to speak out against her former abuser.  Specifically, Greenberg Gross provided Ms. Bridgers with a 30 percent discount on its ordinary and customary billing rate.

6.    The information regarding Greenberg Gross's time and fees is taken from time and expense records prepared and maintained contemporaneously by the firm in the ordinary course of business.  I reviewed the printed billing records to confirm the accuracy of the entries on the

printouts as well as the reasonableness of the time and expenses in the litigation.  I also directed the review and redaction of information protected by the attorney-client privilege and work product doctrine from the billing records.

## I.        Hours expended in litigation

7.        On February 14, 2022, Ms. Bridgers filed her anti-SLAPP motion.  There are numerous published decisions interpreting and applying the anti-SLAPP statute, and the anti-SLAPP motion required substantial research and analysis concerning the issues that triggered that statute as applied to Mr. Nelson's complaint.  These included establishing that Instagram was a public forum, that Ms. Bridgers's statements were on an issue of public interest, that Mr. Nelson was a limited purpose public figure, and that Mr. Nelson had not proven actual malice by clear and convincing evidence.

8.        Ms. Bridgers's anti-SLAPP motion was originally scheduled to be heard on March 10, 2022.  On February 22, 2022, Mr. Nelson filed an *ex parte* application to take discovery, including taking Ms. Bridgers's deposition.  The same day, Ms. Bridgers filed an opposition to the *ex parte* application.

9.        On March 3, 2022, Mr. Nelson filed a noticed motion to permit the deposition of Ms. Bridgers and to require her to produce documents.  Ms. Bridgers opposed the motion.

10.        Attached hereto as **Exhibit B** is a true and correct copy of the notice of deposition and request for production of documents, which Mr. Nelson served on April 4, 2022.

11.        On April 5, 2022, prior to the deposition, Ms. Bridgers's and Mr. Nelson's counsel executed the Protective Order, which the Court approved on April 11, 2022.

12.        On April 8, 2022, at her deposition, Ms. Bridgers produced 332 pages of documents responsive to Mr. Nelson's discovery request.  I designated the entire deposition transcript and document production as "Confidential" under the Protective Order.

13.        On May 11, 2022, Mr. Nelson's counsel notified Ms. Bridgers's counsel that Mr. Nelson was disputing all Ms. Bridgers's confidentiality designations, and they filed an *ex parte* application asking the Court to de-designate the deposition transcript and her text messages.

14.     On July 13, 2022, Ms. Bridgers filed a motion to uphold the confidentiality designations.

15.     On July 26, 2022, Mr. Nelson filed his opposition to the anti-SLAPP motion. In support of his opposition, Mr. Nelson lodged conditionally under seal material designated as confidential under the Protective Order. On August 1, 2022, Mr. Nelson filed a motion to seal records lodged in connection with the anti-SLAPP motion and to strike irrelevant material from those records (the "Motion to Seal and Strike"). The motion was scheduled to be heard on November 8, 2022, but was later continued to November 16.

16.     On August 11, 2022, this Court heard arguments related to the anti-SLAPP motion and the motion to uphold confidentiality designations and took the matters under submission.

17.     On October 26, 2022, I sent an email to Mr. Hughes and Ms. Hunter of Clark Hill, LLP proposing to significantly limit the scope of Ms. Bridgers's confidentiality designations in an attempt to meet and confer with Mr. Nelson's counsel regarding the Motion to Seal and Strike. As part of those efforts, I agreed to multiple extensions for Mr. Nelson to file his opposition to the Motion to Seal and Strike so the parties could attempt to resolve the issue. Attached hereto as **Exhibit C** is a true and correct copy of a series of email communications that I had with Mr. Hughes and Ms. Hunter of Clark Hill, LLP between Wednesday, October 26, 2022, and Monday, October 31, 2022. Ultimately, Mr. Nelson's counsel refused to meet and confer on the subject of the redactions and insisted that every portion of Ms. Bridgers's deposition testimony and document production be included in the public record. Attached hereto as **Exhibit D** is a true and correct copy of an email that I received from Mr. Hughes on November 1, 2022. On November 1, 2022, Mr. Nelson filed his opposition to Ms. Bridgers's Motion to Seal and Strike.

18.     On November 3, 2022, Ms. Bridgers filed her reply in support of her Motion to Seal and Strike and also provided the Court with the redactions that Ms. Bridgers's counsel proposed to Mr. Nelson's counsel.

19.     On November 16, 2022, the Court heard Ms. Bridgers's Motion to Seal and Strike.

-4-

## II.   Explanation of fees sought by this motion

20.   Throughout the case, Greenberg Gross staffed the matter leanly. I managed the case as lead counsel with the assistance primarily of one associate, Colin Quinlan, and one paralegal, Emily Long. Cheryl Winsten, my assistant, also performed a number of tasks that in my experience at my prior law firms typically are performed by paralegals. These tasks were not billed to Ms. Bridgers.

21.   The time spent by my firm in this case was reasonable and necessary in light of the amount of work accomplished and the results obtained and was directly related to the anti-SLAPP motion proceedings. As demonstrated in the detailed time entries included in Exhibit A to this declaration, pursuing the anti-SLAPP motion and litigating related issues took considerable time and legal skill.

22.   Ms. Bridgers's counsel's hourly rates for 2022 range from $295-$345 for paralegals and other professionals, $500-$695 for associates and counsel, and $1095-$1400 for partners. Below is a chart that summarizes the number of hours spent by professionals from my firm who performed work on this case since its inception through December 31, 2022. This chart does not include additional time spent on this Motion after December 31, 2022.

23.   The chart includes the name of the professionals who worked on this case, their position at Greenberg Gross, their law school graduation year (where applicable), their standard hourly billing rates for 2022, the number of hours they spent, the resulting lodestar for each such timekeeper, and the lodestar reflecting the 30 percent courtesy discount provided to Ms. Bridgers in this matter.

| Name of Professional, Position & Law School Graduation Year | Hours (2022) | Hourly Rate (2022) | Total Fees (2022) |
|---|---|---|---|
| Alan A. Greenberg (Partner, 1988) | 3.4 | $1,400.00 | $4,760.00 |
| Wayne R. Gross (Partner, 1988) | 25.9 | $1,400.00 | $36,260.00 |
| Michael H. Strub, Jr. (Partner, 1990) | 312.1 | $1,095.00 | $341,749.50 |
| Claire-Lise Y. Kutlay (Counsel, 2015) | 9.4 | $695.00 | $6,533.00 |

| Colin V. Quinlan (Associate, 2014) | 267 | $695.00 | $185,565.00 |
| David T. Shackelford (Associate, 2017) | 39.6 | $655.00 | $25,938.00 |
| Desiree M. Murray (Associate, 2019) | 0.9 | $495.00 | $445.50 |
| Adrianna Gutierrez (Paralegal) | 0.1 | $345.00 | $34.50 |
| Emily Long (Paralegal) | 15.3 | $295.00 | $4,513.00 |
| **TOTAL (2022)** | 673.7 | | $605,799.00 |

| Name of Professional, Position & Law School Graduation Year | Honrs (2021) | Hourly Rate (2021) | Total Fees (2021) |
| --- | --- | --- | --- |
| Alan A. Greenberg (Partner, 1988) | .3 | $1,200.00 | $360.00 |
| Michael H. Strub, Jr. (Partner, 1990) | 12.8 | $985.00 | $12,608.00 |
| Colin V. Quinlan (Associate, 2014) | 5.6 | $595.00 | $3,332.00 |
| **TOTAL (2021)** | 18.7 | | $16,300.00 |

24.    As of December 31, 2022, the number of hours spent on this case by the listed time keepers in my firm was 692.4 hours. The total lodestar for attorney and paralegal time billed through December 31, 2022 is $622,099.00.

25.    Ms. Bridgers has incurred $36,902.50 in fees on this motion through December 31, 2022, which includes 44.7 hours by her attorneys. That amount is included in the amount of $622,099.00.

26.    Greenberg Gross is an elite litigation firm that serves clients from offices in Los Angeles and Orange County, California; Las Vegas, Nevada; and New York, New York. Greenberg Gross is routinely retained to represent leading companies, executives, celebrities, artists, and other high-profile individuals in complex litigation matters. Its attorneys have a great deal of experience in a wide range of areas of law, including complex litigation, fraud, business, torts, contract law, and defamation. The firm has earned numerous accolades, including being named as one of California's Top Boutiques by the *Daily Journal*.

27. The hourly rates in the above chart are the standard rate schedule set by my firm for its attorneys and paralegals in 2022. Based on my experience, I believe the rates charged by my firm do not exceed the rates charged by other firms in the Los Angeles are that handle complex business litigation. The skill and experience of each of the attorneys and legal professionals that worked on this case justifies their hourly rates.

28. I am a partner at Greenberg Gross. I have been litigating cases for more than 30 years in state and federal courts throughout the country. I have regularly appeared on the list of California's Super Lawyers. I am admitted to practice in California and the District of Columbia, and admitted to the bar of the United States Supreme Court, the Ninth Circuit Court of Appeals, every district court in California, and the United States Court of International Trade. I earned my Bachelor of Science in Foreign Service degree from Georgetown University in 1987, and earned my juris doctorate from University of Texas School of Law, highest honors, in 1990.

29. Alan A. Greenberg is one of the founding partners of Greenberg Gross. Mr. Greenberg has been litigating cases for more than 30 years in both state and federal court throughout the U.S., representing entities and individuals in high-profile, bet-the-company litigation and arbitration. Two of his trial verdicts have been listed as among the Top Verdicts of the Year in California. Mr. Greenberg has been recognized as an "Elite Boutique Trailblazer" by the *National Law Journal,* a "California Trailblazer" by *The Recorder*, a Top 100 Lawyers in California by the *Daily Journal,* and has been named to the list of The Best Lawyers in America and Super Lawyers. Mr. Greenberg is admitted to practice in California, New York, and Nevada, as well as several federal district and appellate courts. Mr. Greenberg earned his Bachelor of Arts degree from Cornell University in 1985, and earned his juris doctorate from Boston University, *cum laude,* in 1988.

30. Wayne R. Gross is one of the founding partners of Greenberg Gross. Mr. Gross has been litigating cases for more than 30 years in both state and federal court throughout the U.S., representing entities and individuals in high-profile, bet-the-company litigation and arbitration. Three of his trial verdicts have been listed as among the Top Verdicts of the Year in California. Mr. Gross has been repeatedly selected for inclusion in The Best Lawyers in America, including

-7-

most recently being named "Lawyer of the Year – Litigation – Regulatory Enforcement" in Los Angeles by The Best Lawyers in America 2021. He has been recognized as an "Elite Boutique Trailblazer" and a "Winning Litigator" by the *National Law Journal,* has been included three times as Top 100 Lawyers in California by the *Daily Journal,* and has been named to the list of The Best Lawyers in America and Super Lawyers. Mr. Gross is admitted to practice in California, as well as several federal district and appellate courts. Mr. Gross earned his Bachelor of Science degree from the University of San Francisco, *cum laude,* in 1985, and earned his juris doctorate from the University of California, Hastings College of Law, *magna cum laude,* in 1988.

31.    Claire-Lise Y. Kutlay is counsel in the Los Angeles office of Greenberg Gross, and has been litigating cases for seven years in both state and federal court through the U.S., representing individuals and entities in high-profile, bet-the-company litigation and arbitration. Ms. Kutlay's experience includes serving as the lead associate during two jury trials, second chair in a bench trial, and lead (and sole) counsel in a bench trial and separate arbitration. Two of her trial verdicts have been listed as among the Top Verdicts of the Year in California in 2018. In each year from 2020 to 2022, Ms. Kutlay has been named a "Rising Star" for Southern California by SuperLawyers—a distinction received by less than 2.5% of attorneys. Ms. Kutlay is admitted to practice in California, as well as several federal district and appellate courts. Ms. Kutlay earned her Bachelor of Arts degree in 2011 from the University of Victoria, and earned her juris doctorate from the University of California, Irvine School of Law, *cum laude*, in 2015.

32.    Colin V. Quinlan is an associate in the Los Angeles office of Greenberg Gross, and has been litigating cases for seven years in both state and federal court through the U.S. Prior to joining Greenberg Gross, Mr. Quinlan clerked for Judge James Donato of the U.S. District Court for the Northern District of California. Mr. Quinlan has represented clients in a range of high-stakes matters ranging from trade secrets and intellectual property litigation to governmental investigations. Mr. Quinlan is admitted to practice in California and New York, as well as the United States District Court for the Southern District of New York. Mr. Quinlan earned his Bachelor of Arts degree from the University of Chicago in 2009, and earned his juris doctorate from the Columbia Law School in 2014.

-8-

-9-

33.     David T. Shackelford is an associate in the Los Angeles office of Greenberg Gross, and has been litigating cases for five years in both state and federal court through the U.S.  His experience includes representing individuals and entities in a range of high-stake complex commercial litigation matters ranging from breach of contract disputes to intellectual property litigation.  Mr. Shackelford is admitted to practice in California, as well as several federal district and appellate courts.  He earned his Bachelor of Science degree from University of Utah, *magna cum laude,* in 2013, and earned his juris doctorate from Harvard Law School in 2017.

34.     Desiree N. Murray is an associate in the Orange County office of Greenberg Gross, and has been litigating cases for three years in both state and federal court.  Ms. Murray is admitted to practice in California, as well as the United States District Court for the Central District of California.  Ms. Murray earned her Bachelor of Arts degree in 2016 from American University, and earned her juris doctorate from the University of California, Irvine School of Law, *cum laude*, in 2019.

35.     Adrianna Gutierrez was a paralegal in the Los Angeles office of Greenberg Gross.  She has been working as a civil litigation paralegal for over 17 years.

36.     Emily Long is a paralegal in the Los Angeles office of Greenberg Gross.  She has been working as a civil litigation paralegal for over two years.  Her work on this matter included preparing the redactions to Ms. Bridgers's deposition transcript and document production, organizing the evidence and preparing exhibits for motions.

37.     Attached hereto as **Exhibit E** is a true and correct copy of the 2017 National Law Journal Billing Survey.  Each firm that I previously have been employed by raised its rates each calendar year, typically by approximately 10%.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 11, 2023

Michael H. Strub Jr.

-9-


Ex. 6, Page 37

# EXHIBIT 3

# Nelson v. Bridgers

Superior Court of California, County of Los Angeles

March 9, 2023, Decided

21STCV35635

**Reporter**

2023 Cal. Super. LEXIS 3524 *

CHRIS NELSON v. PHOEBE BRIDGERS

**Notice:** THIS DOCUMENT INCLUDES THE ORDER OF THE COURT. OTHER MATERIALS, SUCH AS LEGAL MEMORANDA, MAY HAVE BEEN INCLUDED BY THE COURT. DOCUMENTS THAT ARE COMBINED AND FILED AS ONE DOCUMENT BY THE COURT ARE PUBLISHED AS ONE DOCUMENT.

**Counsel:  [*1]** For Plaintiff(s): Tiffany B. Hunter via LA CourtConnect.

For Defendant(s): Michael Henry Strub, Jr.

**Judges:** Honorable Curtis A. Kin, Judge.

**Opinion by:** Curtis A. Kin

## Opinion

**NATURE OF PROCEEDINGS:** Hearing on Motion for Attorney Fees

Pursuant to Government Code sections 68086, 70044, and California Rules of Court, rule 2.956, Gaye L. Limon, CSR 7416 certified shorthand reporter is appointed as an official Court reporter pro tempore in these proceedings, and is ordered to comply with the terms of the Court Reporter Agreement. The Order is signed and filed this date.

The matter is called for hearing.

The Court provides the following tentative ruling:

TENTATIVE RULING:

Defendant Phoebe Bridgers' Motion for Attorney Fees Pursuant to Code of Civil Procedure § 425.16 is GRANTED IN PART.

On November 9, 2022, the Court granted defendant Phoebe Bridgers' Special Motion to Strike. Pursuant to CCP § 425.16(c)(1), defendant is entitled to an award of reasonable attorney fees. "A trial court may not rubber stamp a request for attorney fees, but must determine the number of hours reasonably expended." (Donahue v. Donahue (2010) 182 Cal.App.4th 259, 271.)

Ex. 6, Page 39

2023 Cal. Super. LEXIS 3524, *1

Defendant seeks an award of $670,512.00, which includes the fees incurred in preparing the reply in support of the instant motion.

As a threshold matter, the Court finds that the hourly rates claimed by defendant counsel are reasonable. However, the Court **[*2]** notes that such relatively high billing rates must necessarily correlate with reduced time spent completing tasks due to the greater experience that such rates indicate.

Even though defense counsel represented defendant on a partial pro bono basis, defense counsel is entitled to the reasonable value of their services. (See Chacon v. Litke (2010) 181 Cal.App.4th 1234, 1260.)

The Court has reviewed the billing entries from counsel for defendant and finds that there have been some excessive billings for certain matters. (Strub Decl. ¶ 4 & Ex. A; Supp. Strub Decl. ¶ 6 & Ex. F.) Accordingly, the Court makes the following reductions:

• Attorney Colin Quinlan billed for conducting legal research regarding the anti-SLAPP motion on the following dates, for a total of 13.4 hours: 1/21/22 (1.5 hours), 1/22/22 (3.0), 1/23/22 (2.6), 1/24/22 (4.3), and 1/25/22 (2.0). The time spent conducting legal research is reduced by 6 hours, or $4,170 based on Quinlan's hourly rate of $695.

• Attorney Quinlan billed for drafting and/or revising the anti-SLAPP motion and supporting declarations on the following dates for a total of 27.1 hours: 1/21/22 (2.4), 1/23/22 (5.5), 1/24/22 (3.0), 1/25/22 (4.5), 2/3/22 (1.4), 2/8/22 (1.1 revise motion, 0.4 revise draft, **[*3]** 0.6 Walsh declaration, 0.9 Bridgers declaration), 2/9/22 (0.2 Walsh declaration, 0.2 Bridgers declaration, 3.7 revise anti-SLAPP motion, 0.5 Harmon declaration, 0.7 Strub declaration), and 2/10/22 (1.5 revise declarations, 0.5 review declarations). The time spent drafting and revising the anti-SLAPP motion is reduced by 12.1 hours, or $8,409.50 based on Quinlan's hourly rate of $695.

• Attorney Michael Strub billed for conducting legal research regarding the anti-SLAPP motion and/or drafting and reviewing the moving papers on the following dates for a total of 26 hours: 2/5/22 (4.0), 2/6/22 (3.0), 2/7/22 (7.2), 2/8/22 (4.3), 2/9/22 (1.4 revise points and authorities, 0.5 Bridgers declaration, 0.3 Walsh declaration, 0.3 incorporate revisions), 2/10/22 (4.5), and 2/11/22 (0.5). The time spent in connection with preparing the moving papers is reduced by 16 hours, or $17,520 based on Strub's hourly rate of $1,095.

• On 2/22/22 and 2/23/22, defense counsel billed a total of $9,284.50 in connection with the opposition to plaintiff's ex parte application to continue the hearing on the special motion to strike and permit the deposition of defendant. Considering that the ex parte application **[*4]** was granted and was relatively straightforward, defendant spent an excessive amount of time opposing the ex parte application. The fee request is reduced by 75% or $6,963.38.

• Between 3/4/22 and 3/29/22, attorney Quinlan billed in connection with plaintiff's motion to permit the deposition of defendant on the following dates for a total of 10.3 hours: 3/4/22 (0.8 review motion, 2.0 legal research, 0.7 email re: motion, 3.3 draft opposition), 3/6/22 (0.5), 3/7/22 (2.0), 3/9/22 (0.1 email re: opposition), 3/14/22 (0.1), 3/15/22 (0.2), 3/29/22 (0.3 attend hearing, 0.2 confer re: ruling, 0.1 draft correspondence re: ruling). Considering that plaintiff's motion was granted and was relatively straightforward, defendant spent an excessive amount of time

2023 Cal. Super. LEXIS 3524, *4

opposing plaintiff's motion. The time is reduced by 5 hours, or $3,475 based on Quinlan's hourly rate of $695.

• Between 3/4/22 and 3/29/22, attorney Strub billed in connection with plaintiff's motion to permit the deposition of defendant on the following dates for a total of 10.4 hours: 3/4/22 (0.8), 3/8/22 (1.7), 3/15/22 (0.2), 3/28/22 (6.2), 3/29/22 (1.2 prepare for and participate in oral argument, 0.3 confer re: oral argument). Because [*5] plaintiff's motion was granted and was relatively straightforward, the time is reduced by 7.2 hours, or $7,884 based on Strub's hourly rate of $1,095.

• Between 6/10/22 and 7/13/22, attorney Quinlan billed for conducting legal research in connection with defendant's motion to uphold confidentiality designations on the following dates for a total of 16.8 hours: 6/10/22 (2.4), 6/13/22 (1.6), 6/14/22 (1.8), 6/15/22 (0.7), 6/16/22 (2.3), 6/18/22 (1.2) 6/19/22 (3.5), and 6/20/22 (3.3). Considering that the memorandum of points and authorities was only eleven pages and issues involved not particularly complex, the time spent conducting legal research was excessive. The time is reduced by 12.8 hours, or $8,896 based on Quinlan's hourly rate of $695.

• Between 6/14/22 and 7/13/22, attorney Quinlan billed for drafting, reviewing, and/or revising defendant's motion to uphold confidentiality designations on the following dates for a total of 35.5 hours: 6/14/22 (0.6), 6/16/22 (4.2), 6/17/22 (4.8), 6/18/22 (3.1), 6/19/22 (3.7), 6/20/22 (7.8), 7/2/22 (1.5 review, 1.8 revise), 7/6/22 (1.1), 7/8/22 (1.7), 7/13/22 (3.5 proofread and revise, 1.7 review declaration). Considering that the memorandum of [*6] points and authorities was only eleven pages, the time spent drafting and revising the motion was excessive. The time is reduced by 27.5 hours, or $19,112.50 based on Quinlan's hourly rate of $695.

• Between 6/21/22 and 7/13/22, attorney Strub billed for conducting legal research in connection with defendant's motion to uphold confidentiality designation on the following dates for a total of 7.5 hours: 6/24/22 (4.5), 6/30/22 (2), 7/6/22 (0.5), 7/11/22 (0.5). Considering that the memorandum of points and authorities was only eleven pages and issues involved not particularly complex, the time spent conducting legal research was excessive. The time is reduced by 5 hours, or $5,475 based on Strub's hourly rate of $1,095.

• Between 6/21/22 and 7/13/22, attorney Strub billed for reviewing and revising defendant's motion to uphold confidentiality designation on the following dates for a total of 30.2 hours: 6/21/22 (0.5), 7/2/22 (7.0 - includes legal research), 7/3/22 (2.0), 7/6/22 (2.7), 7/8/22 (1.5), 7/10/22 (2.0), 7/11/22 (4.2), 7/12/22 (3.0 revise, 0.8 incorporate revisions), 7//13/22 (6.5 revise and finalize). Considering that the memorandum of points and authorities was only eleven pages, [*7] the time spent drafting and revising the motion was excessive. The time is reduced by 23.2 hours, or $25,404 based on Strub's hourly rate of $1,095.

• Between 7/26/22 and 7/28/22, attorney Strub billed for drafting the reply brief in support of the anti-SLAPP motion on the following dates for a total of 23.5 hours: 7/26/22 (9.0), 7/27/22 (9.5), 7/28/22 (5.0). Considering that the points and authorities was only ten pages, the time spent drafting the reply brief for the anti-SLAPP motion was excessive. The time is reduced by 16.5 hours, or $18,067.50 based on Strub's hourly rate of $1,095.

Ex. 6, Page 41

• On 7/27/22, attorney Quinlan billed 8.5 hours in connection with the reply brief in support of defendant's motion to maintain confidentiality designations. Considering that the reply was five and a half pages, the time is reduced by 3.5 hours, or $2,432.50 based on Quinlan's hourly rate of $695.

• Between 11/18/22 and 12/28/22, attorney David T. Shackelford billed for preparing the instant motion for attorney fees on the following dates for a total of 20.8 hours: 11/18/22 (6.5), 11/22/22 (3.0), 11/28/22 (2.5), 12/7/22 (2.3), 12/20/22 (2.0), 12/21/22 (3.0), 12/23/22 (1.0), 12/28/22 (0.5). Even accounting **[*8]** for the fact that defense counsel applied a partial pro bono discount to the billings, this was a straightforward fee motion after the granting of a special motion to strike. The fee request is reduced by 14.8 hours, or $9,694 based on Shackelford's hourly rate of $655.

• On 11/28/22 and 12/21/22, attorney Claire-Lise Y. Kutlay billed for preparing the instant motion for attorney fees on the following dates for a total of 6 hours: 11/28/22 (2.9), 12/21/22 (2.5 revise motion, 0.6 revise declaration). For the same reason stated with respect to Shackelford, the fee request is reduced by 2 hours, or $1,390 based on Kutlay's hourly rate of $695.

• Between 11/30/22 and 12/31/22, attorney Strub billed for preparing the instant motion on the following dates for a total of 15.5 hours: 11/30/22 (1.0), 12/6/22 (6.0), 12/7/22 (3.5), 12/23/22 (2.0), 12/31/22 (3.0). For the same reason stated with respect to Shackelford, the fee request is reduced by 11.5 hours, or $12,592.50 based on Strub's hourly rate of $1,095.

• On 12/1/22, attorney Shackelford billed $3,995.50 for drafting and revising the anti-SLAPP motion and declarations. The Court ruled on the anti-SLAPP motion on 11/9/22. Accordingly, the **[*9]** fee request is reduced in its entirety, i.e., by $3,995.50.

• Defendant seeks $31,701.50 in connection with the reply for the instant motion. (Supp. Strub Decl. ¶¶ 8, 10.) Considering the straightforward nature of this motion, this fee is reduced by $15,000.

Defendant also agrees to withdraw her request for $6,895 in fees in connection with activities not related to the anti-SLAPP motion. (See 569 East County Boulevard LLC v. Backcountry Against the Dump, Inc. (2016) 6 Cal.App.5th 426, 433 ["A fee award under the anti-SLAPP statute may not include matters unrelated to the anti-SLAPP motion, such as 'attacking service of process, preparing and revising an answer to the complaint, [or] summary judgment research.' [Citation.]".)

The Court otherwise finds that the billing entries are reasonably incurred and reasonably connected to the anti-SLAPP motion, including plaintiff's efforts to strike the confidentiality designations in defendant's deposition. The time spent researching plaintiff's other defamation claims against Emily Bannon and Noel Wells is reasonably related to the anti-SLAPP motion in this action. (See Supp. Strub Decl. ¶ 5.) Counsel for plaintiff's fees are not indicative of the reasonableness of defense counsel's fees. (Goglin v. BMW of North America, LLC 4 Cal.App.5th 462, 473-74 ["Although BMW North America and BMW San Diego presented **[*10]** evidence they paid their counsel much lower hourly rates, the trial court was not obliged to accept this evidence as conclusive of the appropriate hourly rate for the work performed by Goglin's counsel"].) Further, the fact that more than one attorney worked on a particular task is not necessarily unreasonable, as collaboration is not necessarily duplicative. (Premier Medical

2023 Cal. Super. LEXIS 3524, *10

Management Systems, Inc. v. California Ins. Guarantee Assn. (2008) 163 Cal.App.4th 550, 562.)

The motion is GRANTED IN PART. Using the appropriate lodestar approach, and based on the foregoing findings and in view of the totality of the circumstances, the total and reasonable amount of attorney fees incurred for the work performed in connection with the Special Motion to Strike is $493,135.60 ($670,512.00 total request - $177,376.40 reduction). Such fees and costs are awarded to defendant Phoebe Bridgers against plaintiff Chris Nelson.

The matter is argued and the tentative ruling becomes the order of the Court.

The Motion for Attorney Fees filed by Phoebe Bridgers on 01/11/2023 is Granted in Part.

Counsel for defendant shall give notice.

---

**End of Document**

# EXHIBIT 4

Ex. 6, Page 44

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CHRISTIAN PINEDA,

        Plaintiff,

v.

CITY OF LOS ANGELES; *et al.*,

        Defendants.

Case No.:  2:21-cv-06470-CBM-ASx

**ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS [181]**

The matter before the Court is Plaintiff's Motion for Attorneys' Fees and Non-Taxable Costs.  (Dkt. No. 181 (the "Motion").)  The matter is fully briefed. (Dkt. Nos. 182, 187.)

## I.    BACKGROUND

On May 29, 2020, Plaintiff sustained injuries to his left side while moving backwards with his arms and hands up while attending a protest in Los Angeles.

**A.    Complaint**

On August 11, 2021, Plaintiff filed this action asserting First Amendment and Fourth Amendment claims under 42 U.S.C. § 1983 against the City of Los Angeles, Chief Michel More, and Officer Colton Haney and seeking damages, declaratory judgment and attorneys' fees.  *Id.*  (Dkt. No. 1.)  Plaintiff also brought *Monell* claims against the City for unconstitutional policy, practice, or custom, ratification, and failure to train, supervise, discipline, or correct.  *Id.*

1

**B.      Trial and Jury Verdict**

On April 19, 2023, the Case proceeded to trial on Plaintiff's First and Fourth Amendment claims against Officer Haney and Plaintiff's *Monell* claims against the City of Los Angeles and Chief Michel Moore.  (Dkt. No. 138.)  On April 27, 2020, the jury returned its verdict.  The jury found in favor of Plaintiff on his Fourth Amendment claim and his *Monell* claim against the City for failure to properly train its officers to handle the usual and recurring situations with which they would have to deal.  (Dkt. No. 171.)  The jury awarded Plaintiff $85,000 in compensatory damages.  While the jury found that Plaintiff proved Officer Haney acted with malice, oppression, or reckless disregard for Plaintiff's rights, they did not award punitive damages.

## II.      STATEMENT OF THE LAW

Plaintiffs seek an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  Section 1988 provides that in a Section 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988.  "The purpose of [Section] 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). (quoting H.R.Rep. No. 94-1558, p. 1 (1976)).

"The Supreme Court has instructed that [t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate,' an approach commonly known as the 'lodestar.' Method." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (internal quotation marks and citation omitted).  "Reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community."  *Id.* (internal quotation marks and citation omitted.)  "The hours expended and the rate should be supported by adequate documentation and other evidence."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ),

Ex. 6, Page 46

*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388 (2011). The party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of the hourly rates requested. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008).

### III.   DISCUSSION

#### A.   Prevailing Party

A "prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Ackerley Commc'ns, Inc. v. City of Salem, Or.*, 752 F.2d at 1394 (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968)). Plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation mark and citation omitted); *see also* 42 U.S.C. § 1988. Defendants contest that Plaintiff is the prevailing party, and request that the Court exercise its discretion not to award attorneys' fees because Defendants prevailed on Plaintiff's First Amendment claims and on all claims against Chief Michel Moore. However, Plaintiff prevailed on his Section 1983 excessive force claim against Defendant Haney and his Section 1983 *Monell* claim against the City for failure to train. Accordingly, Plaintiff is the prevailing party for purposes of Section 1983.

#### B.   Lodestar

Plaintiff seeks $1,257,522.30 in attorneys' fees. Plaintiffs seek the following:

| Attorney/Biller | | Hours | Hourly Rate | Lodestar x .9 |
|---|---|---|---|---|
| Dan Stormer | Attorney | 239.3 | $1,400 | $335,020 |
| Morgan Ricketts | Attorney | 325.8 | $915 | $298,107 |
| Shaleen Shanbhag | Attorney | 80.5 | $800 | $64,400 |

| David Washington | Attorney | 845.6 | $700 | $591,920 |
|---|---|---|---|---|
| Tami Galindo | Paralegal | 385 | $280 | $107,800 |
| **SUBTOTAL** | | 1,876.2 | | $1,397,247 **x 90%** |
| **TOTAL** | | | | **$1,257,522.30** |
| | | | | |

### 1. Reasonable Hourly Rate

"Reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant community." *Vargas*, 949 F.3d at 1194 (internal quotation marks and citation omitted). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (internal quotation marks and citation omitted). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 980 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Thus, the district court "must base its determination" of the prevailing market hourly rate "on the *current* market rate." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (emphasis in original).

Plaintiff submits declarations from Paul Hoffman and V. James DeSimone demonstrating comparable attorneys' fee rates in the Central District for attorneys with similar experience to Plaintiff's counsel. (Declaration of Paul Hoffman ("Hoffman Decl."); Declaration of V. James DeSimone ("DeSimone Decl.").) Mr. Hoffman has practiced law in Los Angeles since 1976 and is the Director of the Civil Rights Litigation Clinic at UC Irvine Law School. (Hoffman Decl. ¶ 2.) From 1984 to 1994, Mr. Hoffman was the Legal Director of the ACLU

Foundation of Southern California and litigated hundreds of civil rights cases. (*Id.*) Mr. Hoffman declares that over the past 47 years, he has become familiar with the rates charged by lawyers in the Los Angeles community. (*Id.* ¶ 4.) Mr. Hoffman has known Mr. Stormer for more than 40 years and has litigated cases with him. (*Id.* ¶ 5.) Mr. Hoffman declares that Mr. Stormer is one of the premier civil rights lawyers in California, and given his expertise, background and reputation, Mr. Hoffman believes $1,400 an hour is a reasonable hourly rate. (*Id.* ¶ 5.) Mr. Hoffman further declares that he has known Ms. Rickets for nearly ten years and referred a civil rights case to her when she was first beginning to practice in the field. (*Id.* ¶ 6.) Ms. Ricketts has consulted Mr. Hoffman on civil rights cases, including Ninth Circuit argument. (*Id.*) Based on Ms. Ricketts' experience, skill level, and ability as a civil rights attorney in Los Angeles, Mr. Hoffman believes an hourly rate of $915 is reasonable. (*Id.*) As to Mr. Washington, Mr. Hoffman declares that while he has not worked with Mr. Washington, he understands that Mr. Washington is a 2015 law school graduate who clerked for the District of Puerto Rico. (*Id.* ¶ 7.) Mr. Hoffman believes that a rate of $700 per hour is within the standard range of rates charged in the community for work by an attorney of this level of experience. (*Id.*)

Plaintiff also submits the declaration of V. James DeSimone who has practice law in Los Angeles since 1985. (DeSimone Decl. ¶ 2.) Mr. DeSimone declares that he has litigated civil rights cases since 1990. (*Id.* ¶¶ 2-3.) He has authored numerous articles and taught seminars on civil rights and speaks often at bar association events. (*Id.* ¶ 5.) Mr. DeSimone declares that he is familiar with the rates charged by plaintiffs' attorneys throughout California as he has had to survey them in connection with fee applications each year. (*Id.* at ¶ 8.) Mr. DeSimone further declares that rates of similarly trained attorneys for complex civil litigation such as civil rights cases vary from $350 to $1500 an hour. (*Id.* ¶ 16.) As a lawyer with thirty-five years of experience, Mr. DeSimone's hourly rate

is $1,100, which he believes to be on the lower end of the range. (*Id.*) Mr. DeSimone has known Mr. Stormer for over thirty years and has co-counseled cases with him. (*Id.* ¶ 18.) Mr. DeSimone declares that Mr. Stormer's hourly rate is in line with rates currently being charged by attorneys in large firms of comparable or lesser skill and experience in specialized litigation groups. (*Id.*) Further, he declares that he is aware that attorneys with Mr. Stormer's skills, experience, and abilities charge anywhere from $1,100 to $1,800 per hour for plaintiff's side litigation. (*Id.* ¶ 19.) Mr. DeSimone has known Ms. Ricketts for about ten years and believes her hourly rate is in line with fees charged by trial attorneys in civil rights cases at her skill and experience level. (*Id.* ¶ 20.)

The Declarations of DeSimone and Hoffman evidence that Dan Stormer is considered a leading civil rights attorney. (*See* DeSimone Decl. ¶ 18; Hoffman Decl. ¶ 5.) Plaintiff also submits declarations attesting to the reputation, skill, and experience of Plaintiff's counsel. (*See e.g.,* Declaration of Dan Stormer ("Stormer Decl."); Declaration of Morgan Ricketts ("Ricketts Decl."); Declaration of Clay Washington ("Washington Decl.").) Mr. Stormer declares that he has practiced law for 49 years and is a founding partner of the law firm Hadsell Stormer Renick & Dai LLP, which practices primarily in the areas of employment discrimination, constitutional, civil rights, international human rights, and public interest law. (Stormer Decl. ¶ 2.) Among his many accolades, Mr. Stormer has co-authored three law review articles, wrote a monthly column for the Matthew Bender California Labor and Employment Bulletin, has been the subject of numerous legal media profiles, taught legal programs, and received numerous awards in recognition of his skills in civil rights cases. (*Id.* ¶¶ 6-8.) Additionally, on February 22, 2024, in *Pederson, et al. v. The County of Plumas, et al.*, 2:89-1659 (E.D. Cal. filed Dec. 4, 1989), a Court in the Eastern District of California awarded Plaintiffs attorneys' fees, including $6,000 for 4 hours billed by Mr. Stormer at his hourly rate of $1,500. (Dkt. No. 194, March 29, 2024 Declaration

of David Washington ¶¶ 2, 4.)  Thus, Plaintiff's requested rate of $1,400 per hour for Mr. Stormer is supported.

Morgan Ricketts served as counsel in the case and during trial.  Ms. Ricketts graduated from the Harvard Law School in 2009,  has litigated civil rights cases since 2013, and has first-chaired at least ten jury trials.  (Ricketts Decl. ¶ 2.)  Ms. Ricketts estimates litigating twenty to thirty plaintiff's civil rights cases.  (*Id.*)  Plaintiff submitted declarations attesting to her skill and experience.  (*See* DeSimone Decl. ¶ 20; Hoffman Decl. ¶ 6.)  The Court finds her requested rate of $915 reasonable and supported by the evidence.

David Washington served as counsel in the case and during trial.  Mr. Washington has been practicing for eight years, first as a Federal Defender, then as a Civil Rights Fellow with the Southern Poverty Law Center, where he declares he litigated the largest class action lawsuit ever brought against the Alabama Department of Corrections.  (Washington Decl. ¶ 6-8.)  Additionally, in *Pederson,* 2:89-1659 the district court awarded Plaintiffs' attorneys' fees, including $110,460 for 157.8 hours billed by Mr. Washington at his 2023 hourly rate of $700.  (Dkt. No. 194, March 29, 2024 Declaration of David Washington ¶¶ 2, 4.)  The Court finds the requested $700 per hour reasonable based on the evidence presented.

The Court similarly finds the requested rates of $800 for attorney Shaleen Shanbhag and $280 for paralegal Tami Galindo reasonable based on the evidence presented in the Declarations of Dan Stormer and Morgan Rickets.  (Stormer Decl. ¶ 21, Ricketts Decl. ¶ 8.)  Ms. Shanbhag is a former partner at Hadsell & Stormer and graduated from law school in 2014.  (Stormer Decl. ¶ 33.)  Ms. Galindo's requested hourly rate is consistent with the City's requested rate for its own paralegal's time as demonstrated in a Motion for Attorney's fees filed by the City of Los Angeles in February 2019.  (Ricketts Decl. ¶ 8.)

Defendants contend that (1) the rates requested by Mr. Washington and Ms.

Rickets should be reduced based on their lack of experience litigating civil rights cases, and (2) Mr. Stormer's rate should be reduced back on his lack of involvement throughout the case, including trial.  Defendants support their argument with a declaration from Gerald G. Knapton, an expert on legal fees. (Declaration of Gerald G. Knapton ("Knapton Decl.").)  Mr. Knapton is a senior partner with Ropers, Majeski P.C.  (*Id.* ¶ 2.)  He has qualified and testified as an expert on legal fees more than sixty times.  (*Id.* ¶ 3.)  Mr. Knapton relies on the 2022 Real Rate Report[1] to determine non-contingent hourly rates of partners, associates and paralegals based on location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing and paid invoices from about 80 companies. (*Id.* ¶ 35.)  The Real Rate Report shows the following data for partners, associates, and paralegals:

| Role | Timekeepers | First Quartile | Median | Third Quartile |
| --- | --- | --- | --- | --- |
| Partner | 10592 | $430 | $653 | $969 |
| Associate | 9930 | $329 | $485 | $703 |
| Paralegal | 4215 | $150 | $225 | $325 |

The numbers change slightly for attorneys in Los Angeles:

| Role | Timekeepers | First Quartile | Median | Third Quartile |
| --- | --- | --- | --- | --- |
| Partner | 40 | $410 | $835 | $995 |
| Associate | 38 | $361 | $475 | $735 |

Based on Mr. Knapton's analysis, Defendants propose reducing Plaintiff's counsel's rates to $835 for Mr. Stormer, $835 for Ms. Ricketts, $475 for Mr. Washington, and $225 for Ms. Galindo.

In the Ninth Circuit, reasonable rates for civil rights cases are not based

_____

[1] The Real Rate Report is powered by the Wolters Kluwer ELM Solutions LegalVIEW® data warehouse and contains data on law firm rates and staffing trends based on actual invoice data.

only on rates offered in similar civil rights claims but rather comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir.2009) (holding that "the proper scope of comparison is not so limited" as to only other attorneys involved in prison litigation) (internal quotation marks and citation omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990); *see also Camacho*, 523 F.3d at 980 ("[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.") (citation omitted).

The declarations filed in support of Plaintiff's Motion demonstrate that Plaintiff's counsel's requested rates are comparable to other attorneys in Los Angeles with similar skill and experience in complex litigation. The Court finds that counsel represented Plaintiff with professionalism, skill, and knowledge of the law. Thus, the Court overrules Defendants' objections to the declarations submitted by Plaintiff. The Court considers the declarations in calculating appropriate hourly rates for Mr. Stormer, Ms. Ricketts, Mr. Washington, Ms. Shahbag and Ms. Galindo.

### 2. Reasonable Hours

"By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Courts generally accept the reasonableness of hours supported by declarations of counsel. *See, e.g., Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359,

396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.")

Counsel's sworn declarations and attached time records evidence the attorney and paralegal hours spent on this litigation.  Counsel applied a 10% reduction across the board to account for any potential billing errors.  (Stormer Decl. ¶ 33.)  Plaintiff requests a total of 1,876.2 hours.

Defendants contend that Plaintiff should not be awarded fees for administrative work, duplicative work, excessively billed work, block-billed entries, and vague billing descriptions.  Defendants seek a 100% reduction for "administrative work."  Defendants refer to Exhibit 5A of Mr. Knapton's declaration which includes 82.10 hours of billing entries totaling $44,910.50 in fees.  (Knapton Decl. ¶ 68, Exhibit 5A.)  Defendants cite to *Keith v. Volpe*, 644 F. Supp. 1317, 1323 (C.D. Cal. 1986), *aff'd*, 858 F.2d 467 (9th Cir. 1988), which disallowed hours for "clerical, secretarial and similar routine work" such as "pickup copies," "Xerox/distribute memo," "tag exhibits," "file review," "organize files," and "reproduce documents."  Exhibit 5A includes a large number of time entries for "Outlook/calendaring."  Counsel includes time entries for 1.8, 1.6 and .8 hours of work done by Mr. Washington for "draft trial calendar," "trial related deadlines chart," and "Update case calendar," respectively.  The Court finds these tasks to be appropriately billed at the paralegal hourly rate.  Exhibit 5A also includes time spent to "Prepare/edit/finalize Plaintiff's complaint/initiating documents (summons/civil case cover sheet/notice of interested parties)/efile/open new case/prepare chambers copies"; and "Work with IT and client to extract data from his phone for production."  On reply, Plaintiff explains that while there is staff that perform non-specialized tasks such as answering phones, mailing, and printing, tasks that require compliance with court rules such as such as determining how many copies must be delivered to chambers and by what time,

Ex. 6, Page 54

filling out legal forms such as a summons, preparing proofs of service, and filing court documents – are all considered paralegal or attorney tasks, because they require familiarity with and adherence to court procedures and rules.  The Court agrees that these tasks require some familiarity with court rules, and thus the Court does not reduce the fee award based on those time entries.  The Court subtracts $1,764 from the requested fee award to account for attorney time spent calendaring.

Defendants request a 30% reduction for block billed entries.  Defendants refer the Court to Exhibit 5B of Mr. Knapton's declaration which includes 261.50 hours of billing entries totaling $130,127.50 in fees.  (Knapton Decl. ¶ 86, Exhibit 5B.)  Defendants contend that the block billed entries are vague, duplicative, and unnecessary and should be reduced for failing to set forth with any degree of particularity, a breakdown of attorney time for the multiple tasks set forth in each block billed entry.  However, the examples in Exhibit 5b are not examples of improper block-billing.  The Ninth Circuit defines block billing as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."  *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation omitted).  A time entry which identifies interrelated tasks performed simultaneously is not considered block billing.  *See, e.g.*, *LaToya A. v. San Francisco Unified Sch. Dist.*, 2016 WL 344558, at *8 (N.D. Cal. Jan. 28, 2016)  Therefore, the Court includes the time entries identified in Exhibit 5B in the fee award.

Defendants request an additional 30% reduction for vague billing entries.  Defendants refer the Court to Exhibit 5C of Mr. Knapton's declaration which contains 567.30 hours of billing entries totaling $293,972 in fees.  A fee applicant must submit "evidence supporting the hours worked" and "should identify the general subject matter of his time expenditures" but "is not required to record in

Ex. 6, Page 55

great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12. Here, the majority of the time entries included in Exhibit 5C relate to communications with the client. On Reply, Plaintiff explains that most of the time, the subject of the call with the client is privileged and inappropriate to disclose, and that the safer practice is to simply note that there was a client communication. While the time entries referencing "call with client" are vague, each entry is less than an hour, which the Court finds to be a reasonable amount of time to discuss matters with the client. Additionally, Plaintiff requests $14,210 for time entries described as "document review" but has not provided any evidence to support this request, such as the volume or categories of documents reviewed. Without additional information, the Court finds these entries vague. Upon review of additional entries which Defendants contend are vague including "Emails/prepare/edit Plaintiff's complaint," "Discovery plan," "Leave message for Daniel Sosa," "Edit video clip for production," and "Draft discovery requests" the Court finds these entries adequate and do not warrant a reduction in the fee award. Moreover, Plaintiff's counsel has already applied a 10% across the board reduction in the attorneys' fees sought. The Court subtracts $14,210 from the requested fee award to account for unexplained time spent on "document review."

Defendants request a100% reduction of duplicative work. Defendants refer the Court to Exhibit 5D of Mr. Knapton's declaration which contains 13.10 hours of billing entries totaling $5,647.50. (Knapton Decl. ¶ 69, Exhibit 5D.) Defendants contend that in light of counsels' experience and expertise in civil rights work, only one attorney should have been required to attend conferences with opposing counsel, depositions, and client meetings. The Ninth Circuit has held "duplicative work is not inherently inappropriate" (*see Chaudhry v*, 751 F.3d at 1112 (finding district court's reduction of fees by 88% in light of the fact that "multiple attorneys and legal assistants attended and participated in certain conferences, depositions, court hearings, and trial, doing much of the same work"

and "[m]any of the law clerks billed for duplicative note-taking or for training at trial or depositions" required a "more specific explanation than that provided by the district court) (citing *Moreno*, 534 F.3d at 1112)), and "the participation of more than one attorney" in case or at a hearing "does not constitute an unnecessary duplication of effort" (*see Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir. 1986));  *see also Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) ("[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort."); *Lauderdale v. City of Long Beach*, 2010 WL 11570514, at *7 (C.D. Cal. Jan. 11, 2010)  ("[H]aving multiple attorneys attend depositions, meetings and settlement conferences allowed counsel to contribute creative solutions, reduced the need for inter-office communications after meetings, and ameliorated disagreements over what actually went on at meetings.").  As Plaintiff explains, it is a routine practice for more than one attorney to attend conferences with opposing counsel, depositions, and client meetings.  Additionally, the entries in Exhibit 5D relate to conferences amongst Plaintiff's various counsel for purposes of discussing case strategy.  (*See* Ex. 5D ("Litigation strategy call w/ DS"; "Telephone call with DS and DCW re litigation strategy"; "conf with DS, DW re: experts; "Meeting with SS, DW re experts.").)  The participation of more than one attorney was necessary to discuss the relevant issues as provided in the time entries.  Therefore, the Court the Court includes the time entries identified in Exhibit 5D in the fee award.

Defendants request a 40% reduction of "excessively billed work."  Defendants refer the Court to Exhibit 5E of Mr. Knapton's declaration which contains 293.10 hours of billing entries totaling $131,892.50.  (Knapton Decl. ¶ 72, Exhibit 5E.)  Defendants identify tasks that appear to have taken more time than necessary based on the length of the document filed with the Court.  For example, Defendants identify 11.2 hours spent by Ms. Shanbhag's entries to "Draft initial disclosures" which were 3.5 pages in length and 13.7 hours spent by

13

Mr. Washington's to "Draft ex parte app to compel and for sanctions" which was a 4.5-page Application that was denied by the Court. (*See* Dkt. No. 44.) The time spent on the initial disclosures and ex parte application were excessive. Plaintiff's counsel include time entries of 3 and 6 hours spent by Ms. Ricketts and Mr. Washington, respectively, for "Travel to and from Court." This time appears excessive based on the location of Plaintiff's counsel's offices and the courthouse. Plaintiff's counsel also include time entries of 11, 12.4, 15.8, 16.8 and 17.4 hours, for "trial preparation" or trial-related tasks, without substantiating the amount requested. During trial, Court was in session with the jury for approximately five hours, with about two hours spent with counsel after the jury was excused. Without additional information, the Court finds these time entries excessive. The Court limits trial days to eight hours and subtracts the additional time billed. As to the other time entries identified in Exhibit 5E, the Court does not find these entries excessive. Additionally, as noted above, Plaintiff's counsel has already applied a 10% reduction in the attorneys' fees sought. Therefore, the Court subtracts $59,215 from the requested fee award to account for excessive time as indicated above.

### 3. Multiplier

Plaintiff does not request a multiplier. However, Defendants contend that Plaintiff's fee demand should be reduced based on Defendants' success on the majority of the claims asserted against them. The jury found in favor of Defendants on Plaintiff's claims against Chief Moore, and on the majority of claims against the City of Los Angeles with respect to *Monell* liability. Defendants attempt to quantify Plaintiff's success based on a 50% success rate and ask that the Court reduce Plaintiff's number of hours by 75% for their limited success.

The Supreme Court has held: "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will

encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435. Here, Plaintiff prevailed on his Fourth Amendment claim against Officer Haney and his *Monell* claim against the City of Los Angeles for failure to properly train its officers (Dkt. No. 171.) The jury awarded Plaintiff $85,000 in compensatory damages and found that Plaintiff proved Officer Haney acted with malice, oppression, or reckless disregard for Plaintiff's rights. The other claims asserted were related to the underlying incident and based on a common core of facts. Thus, the time spent on claims for which Plaintiff did not prevail cannot reasonably be separated from time spent on claims on which Plaintiff did prevail. *See City of Riverside v. Rivera*, 477 U.S. 561, 569-73 (1986) (holding the district court did not abuse its discretion in awarding attorney's fees for all time reasonably spent litigating the case although respondents had prevailed only on some of their claims and against only some of the defendants); *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (noting "in a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis.")

**4. Costs**

Plaintiff seeks reimbursement of non-taxable costs totaling $15,703.50. Section 1988 permits a prevailing party to recover as part of an attorneys' fee award "those out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted); *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (quoting same). Plaintiff's counsel declares that it is the routine and common practice of firms handling complex litigation to charge fee-paying clients

separately for copying, expert or consultant fees and other necessary out-of-pocket expenses. (Stormer Decl. ¶ 38.) In addition to the $19,080.29 in costs requested in Plaintiff's Bill of Costs, filed on June 13, 2023, Plaintiff requests reimbursement of $15,703.50 in non-taxable expenses. (Dkt. No. 180.) Plaintiff includes an exhibit with documents supporting the costs requested. (Stormer Decl. ¶ 40, Ex. 4.) Plaintiff seeks the following non-taxable costs: $600 paid to Defendants' police practices expert, Edward Flosi, for time spent in deposition; $10,043 in photocopying costs; $2500 in costs to prepare demonstrative video clips for trial; and $2,560.50 in costs to prepare exhibit binders for trial. Defendants concede that these costs are recoverable with the exception of $10,043.10 for photocopying, which Defendants' expert declares "constitutes a part of the firm's overhead." The Court finds reasonable photocopying costs are generally recoverable, however Plaintiff has not adequately shown that the request for $10,043 is reasonable. *See Harper v. City of Los Angeles*, 2006 WL 8446990, at *11 (C.D. Cal. May 16, 2006) (finding plaintiff had not met burden of demonstrating that photocopying costs were "reasonable and necessary for effective and competent representation"). It is Plaintiff's burden to provide the Court with evidence indicating the general purpose or subject matter of the photocopies. The Court cannot determine what would be a reasonable figure based upon this lack of evidence. Accordingly, the Court declines to award the photocopying costs sought. As to the other costs sought and upon review of the evidence, Plaintiff's requests appear reasonably and necessarily incurred in advancing the interests of the client. Therefore, the Motion is **GRANTED** as to the request for nontaxable costs, with the exception of the costs for photocopying.

///

///

///

///

16

Ex. 6, Page 60

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees in the amount of $1,182,333.30 and $5,660.4 for nontaxable costs pursuant to 42 U.S.C. § 1988.


**IT IS SO ORDERED.**


DATED:  APRIL 19, 2024

HON. CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

17

# EXHIBIT 5

AGREEMENT FOR PROFESSIONAL LEGAL SERVICES

BETWEEN

THE CITY OF LOS ANGELES

AND

GIBSON, DUNN & CRUTCHER LLP

## AGREEMENT FOR PROFESSIONAL LEGAL SERVICES

C-201616

THIS AGREEMENT, Contract Number _____, is made and entered into by and between the City of Los Angeles ("City"), a municipal corporation, acting through the Office of the City Attorney ("City Attorney"), and Gibson, Dunn & Crutcher LLP, a Delaware limited liability partnership ("Outside Counsel" or "Gibson Dunn"), with reference to the following:

### RECITALS

**WHEREAS,** the City Attorney and the Los Angeles City Council/Board have approved the use of Outside Counsel to assist the City Attorney with legal representation in the matter of the LA Alliance for Human Rights, et. al v. City of Los Angeles, et. al; and

**WHEREAS,** Outside Counsel indicates that it has the expertise and competence to perform the professional legal services sought by the City; and

**WHEREAS,** the City Attorney has selected Outside Counsel to provide assistance in such matters, Outside Counsel is willing to provide such assistance and represents to the City that it is able to do so without a conflict of interest; and

**WHEREAS,** the professional legal services to be performed by the Outside Counsel are of an expert and technical nature and are temporary and occasional in character;

**NOW, THEREFORE,** in consideration of the promises, covenants, terms and conditions contained herein, the parties hereby covenant, agree and represent as follows:

### I.    SCOPE OF REPRESENTATION AND PARTNERING

Outside Counsel is retained to assist the City Attorney in providing legal representation for the City in the matter of LA Alliance for Human Rights, et. al v. City of Los Angeles, et. al. Outside Counsel shall at all times work under the direction of the City Attorney. The City and City Attorney shall rely on the competence, expertise and experience of Outside Counsel. At all times, Outside Counsel shall provide professional legal advice and services at the highest level expected of law firms providing legal services in the Los Angeles region. This is a non-exclusive agreement to provide legal services to the City and, at the City Attorney's discretion, the City may augment the services with another law firm or law firms or select to terminate Outside Counsel's services in a manner consistent with this Agreement.

City Attorney and Outside Counsel recognize and agree that an important purpose of this Agreement is to promote effective collaboration between City Attorney and Outside Counsel so that, among other things, City Attorney is able to gain familiarity with the legal issues presented in these matters and for Outside Counsel to impart substantive subject matter knowledge to City Attorney's lawyers. To this end, City Attorney and Outside Counsel both agree to make reasonable efforts to coordinate their efforts and work.

1

Ex. 6, Page 64

II.    **GENERAL CONDITIONS**

A.    Period of Performance

This Agreement shall begin on the effective date hereof and will be considered terminated at the earlier of (a) City's termination of Outside Counsel's representation pursuant to Section II.B. below, (b) Outside Counsel's withdrawal from its representation of City, or (c) the substantial completion of Outside Counsel's work for City.  In the event there has been no work performed by Outside Counsel's attorneys on City's behalf for a period of six consecutive months, the parties agree that the attorney-client relationship will have been terminated, unless the matter on which Outside Counsel was engaged is a litigation matter that is still pending in a court or other tribunal.

B.    Termination or Suspension of Legal Services

1.    Termination or Suspension for City's Convenience

a)    Services performed under this Agreement may be terminated or suspended in whole or in part at any time by City Attorney.  City Attorney shall terminate or suspend services by delivering to Outside Counsel a written notice specifying the extent to which services are terminated or suspended and the effective date of such termination or suspension.

b)    After receiving a notice of termination or suspension, unless otherwise directed by City Attorney, Outside Counsel shall:

1)    Stop services on the date and to the extent specified in the notice; and

2)    Continue to perform services not terminated or suspended by the notice.

c)    After receiving a notice of termination, Outside Counsel shall submit final billing for services rendered through the time of termination no later than thirty (30) calendar days from the effective date of termination.

2.    Termination for Outside Counsel's Default

a)    Services performed under this Agreement may be terminated in whole or in part by City Attorney upon a default by Outside Counsel.  Under this Agreement, Outside Counsel will be deemed in default if Outside Counsel:

1)    Fails to perform the service(s) within the specified time period; or

2)    Fails to perform any of the provisions contained in this Agreement; or

3)    Fails to make adequate progress in the matter and

2

Ex. 6, Page 65

endangers the performance of this Agreement's terms.

b)      If City Attorney wholly or partially terminates services under this Agreement, City Attorney may obtain alternative legal services with terms and in a manner City Attorney deems appropriate.

### 3.      Termination By Outside Counsel

Outside Counsel may withdraw from representation and terminate this agreement with consent of the City Attorney or for good cause, which includes the City's breach of this agreement or refusal to cooperate with Outside Counsel or follow our Outside Counsel's advice on a material matter, as well as in any other circumstance permitted by applicable rules.    Otherwise, Outside Counsel's representation of the City will terminate upon the earlier of May 21, 2028, or six months of no work recorded by Outside Counsel on the matter.

### 4.      Transfer of Client File

Outside Counsel shall give City Attorney the Client File (defined below) for every matter in which Outside Counsel is substituted out as attorney of record. Outside Counsel shall reasonably cooperate with City in connection with its transition to alternate counsel.

5.      Notwithstanding such termination, City will remain obligated to pay Outside Counsel for all services provided and to reimburse Outside Counsel for all costs and expenses paid or incurred on City's behalf prior to such termination in accordance with the terms of this Agreement.    If requested by City Attorney, Outside Counsel shall file a Motion for Substitution of Counsel or other necessary pleadings with the court when instructed to do so by City Attorney and shall deliver a Closing Report to City Attorney as soon as reasonably practicable of the termination of services.    The Closing Report shall include:

1)      A brief description of the facts of the case;

2)      A discussion of applicable law;

3)      A description of the status of the case; and

4)      A list and description of future scheduled court appearances.

### C.      Independent Contractor Status

This Agreement is between City and Outside Counsel and is not intended, and shall not be construed, to create, as between City and Outside Counsel, the relationship of agent, servant, employee, partnership, joint venture or association. Outside Counsel understands and agrees that all Outside Counsel personnel furnishing services to City under this Agreement are employees solely of Outside Counsel and not City.    Outside

3

Ex. 6, Page 66

Counsel shall bear the sole responsibility and liability for furnishing workers' compensation benefits to any Outside Counsel personnel for injuries arising from services performed under this Agreement.

D.    Ownership of Documents

All information, documents, records, reports, data, or other materials furnished to Outside Counsel or other such information, documents, records, data or other materials to which Outside Counsel has access during their performance pursuant to this Agreement are deemed confidential and shall remain the property of City ("City Information").  All memorandum, filings, drafts, closing sets, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other work product produced in the course of representing the City for which Outside Counsel has been paid, together with the City Information is defined as the "Client File".  Outside Counsel shall not make use of City Information for any purpose unrelated to the Retained Matter and shall not make oral or written disclosure thereof, other than as necessary for their performance hereunder, in each case, without the prior written approval of City Attorney.

Outside Counsel will retain the Client File electronically and/or in its off-site storage facilities in accordance with Outside Counsel's records retention policy. In the absence of any other arrangements made with City, Outside Counsel's records retention policy provides that upon the expiration of ten years after a matter has been closed, all materials in the file may be destroyed or discarded without notice to City.

The "Firm's Files" are comprised of administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal correspondence and lawyers' work product (such as drafts, notes, internal memoranda, mental impressions, and legal and factual research), or other similar materials. The Firm's Files are Outside Counsel's property and, as such, Outside Counsel may retain or dispose of the Firm's Files at its sole discretion.

E.    Insurance

Outside Counsel shall comply with the insurance requirements described in this Agreement.  If Outside Counsel does not obtain professional liability insurance or maintain the insurance throughout the duration of this Agreement, City Attorney may terminate the Agreement.

F.    Governing Law

The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of California and any action brought by either party on this Agreement shall be brought in the Los Angeles County Central District of California Superior Courts.

G.    Validity

The invalidity in whole or in part of any provision of this Agreement shall not void or affect the validity of any other provision.

H.    Waiver

4

No waiver of a breach of any provision of this Agreement by either party shall constitute a waiver of any future breach of the provision or any breach of any other provision of this Agreement. Failure of either party to enforce any provision of this Agreement at any time shall not be construed as a waiver of that provision.

I.    Remedies Reserved to City

The remedies reserved to City shall be cumulative and additional to any other remedies provided in law or equity.

J.    Authorization for Warranty

Outside Counsel represents and warrants that the signatory(ies) to this Agreement is(are) fully authorized to obligate Outside Counsel and that all corporate acts necessary to the execution of this Agreement have been accomplished.

K.    Changes and Written Amendment of Terms

Material changes to this Agreement shall only be effective upon the execution of a mutually-approved written amendment.

III.   **OUTSIDE COUNSEL'S SERVICES AND RESPONSIBILITIES**

A.    Professional Ethics and Conflicts of Interest

Outside Counsel is a large international law firm with active practices in a variety of areas including regulatory matters, government contracts and litigation. City recognizes that Outside Counsel currently represents and may in the future represent other clients that, from time to time, may have interests adverse to City. Any such representation shall be in accordance with applicable rules of professional conduct.

In a variety of matters currently being handled by Outside Counsel for other clients, the scope of Outside Counsel's representation is such that the City and other City agencies are or may be or later become adverse parties in such matters. Based upon the results of our conflict search, we do not believe that Outside Counsel's representations of other clients presents any direct conflict with the City, other than the representations identified below (collectively, the "Existing Matters"), none of which is directly related to the litigation matter in which Outside Counsel has been asked to represent the City (the "Retained Matter"):

- Representation of Uber in connection with *People v. Uber Technologies, Inc.*
- Representation of HomeAway in connection with *People v. HomeAway.com, Inc.*
- Representation of HRRP Garland in connection with *LA Care v. HRRP Garland, LLC* and *City of Los Angeles v. HRRP Garland, LLC*
- Representation of Alliance for Automotive Innovation as amicus curiae in litigation in the D.C. Circuit concerning Corporate Average Fuel Economy standards
- Representation of SoCalGas and SoCal Edison (and/or their affiliates) in connection with various matters related to franchise agreements with the City (and Port and LAX)
- Representation of MacQuarie in connection with a lease agreement with the City/Port

5

Ex. 6, Page 68

- Representation of SSA Marine/Carrix and Blackstone Infrastructure Partners in connection with a lease agreement related to the Port
- Representation of Berggruen Institute in connection with a proposed Specific Plan and related CEQA approvals for a think tank / educational institute in CD11
- Representation of AI Violet (Hines) in connection with a proposed office development project in Downtown Los Angeles (CD14)
- Representation of Phillips 66 in connection with a proposed conversion of a Wilmington refinery to a different industrial use (CD15)
- Representation of the Los Angeles Rams in connection with a proposed Master Plan for a new practice facility and mixed-use development in Warner Center (CD3)
- Representation of Burlington Stores in connection with potential land use development issues related to improvements to existing store location(s) in the San Fernando Valley
- Representation of Fifteen Group in connection with a potential redevelopment project in CD14
- Representation of Prime Property Capital in connection with a potential land use application in CD4

In addition to the Existing Matters, Outside Counsel also expects to represent existing and future clients in future matters, including litigation, under circumstances in which the City and other City agencies may be adverse parties (collectively, "Future Matters").

To ensure that our work for the City does not adversely affect the ability of Outside Counsel to continue to represent other clients on current or future matters where their interests may be adverse to the City or any agencies thereof, including but not limited to litigation adverse to the City or any of its agencies, the City agrees that:

(1) the City is Outside Counsel's only client in the Retained Matter, and Outside Counsel shall not be deemed to represent (a) the City with respect to any matter other than the Retained Matter; or (b) any other agency with respect to the Retained Matter or any other matters, in each case, absent both parties' consent and our completing a conflicts check;

(2) the City waives any conflict of interest that might exist or arise from Outside Counsel's representation of other clients in connection with:

   a. the Existing Matters and any Future Matters that do not involve litigation against the City;

   b. any Future Matters that involve litigation adverse to the City where such litigation is initiated by the City; and

   c. any Future Matters that involve litigation adverse to the City where such litigation is initiated by another client, provided that (i) such Future Matters do not directly relate to homelessness issues or the work performed for the City in the Retained Matter, and (ii) Outside Counsel establishes an ethical screen between the team on any such Future Matters and the team that has represented the City in the Retained Matter; and

6

Ex. 6, Page 69

(3)   the City will not seek to disqualify Outside Counsel or any of Outside Counsel's lawyers in, or assert a conflict with respect to, Outside Counsel's engagement in any Existing Matters or any Future Matters that are in compliance with the City's agreement to waive conflicts under this paragraph.

Outside Counsel understands and agrees that Outside Counsel may not pay or receive, or agree to pay or receive, any referral fees, remuneration, reciprocal referral or anything else of value as a result of or related to the matters on which Outside Counsel is engaged by the City, other than the fees and costs paid by the City for Outside Counsel's services in these matters. Outside Counsel understands and agrees that no City employee may solicit, agree to accept or receive any referral fees, remuneration or other item of value related to any services rendered to the City, any claim or other matter brought or filed against the City or any settlement, resolution, verdict, or other disposition by or against City. Outside Counsel immediately shall report any such solicitation, agreement or receipt to the City Attorney and to the City Ethics Commission.

B.   Key Outside Counsel Personnel

1.   Outside Counsel's Supervising Attorney for this Agreement shall be Theane Evangelis. Outside Counsel's Supervising Attorney shall not be changed without City Attorney's written authorization.

2.   Outside Counsel's Supervising Attorney shall have full authority to act for Outside Counsel on all daily operational matters under this Agreement and shall serve as or designate Lead Counsel for all law and motion appearances, pretrial and trial proceeding(s), settlement conference(s) or meetings of counsel for the litigants, depositions, document productions, and all court and other proceedings in which substantive rights of the parties may be determined. Designation of a Lead Counsel other than the Supervising Attorney shall be subject to City Attorney's prior written approval.

C.   Legal Representation

1.   Outside Counsel shall provide City with the necessary representation by qualified staff at the least costly billing category. Partners and associates shall be admitted to practice law before all of the courts of the State of California or of whatever state or district in which Outside Counsel is engaged to represent the City. The names of personnel authorized to provide services under this Agreement and the hourly rates for each staff member are listed in the document entitled, "Hourly Rates for Gibson Dunn," attached hereto and incorporated herein as Exhibit B to this Contract.

Any use of personnel other than as enumerated shall be subject to the prior written approval of City Attorney's Supervising Attorney. Outside Counsel may hire experts or consultants, but only with the prior written approval of City Attorney's Supervising Attorney. Outside Counsel may retain other law firms or attorneys as subcontractors to provide the legal services covered by this Agreement, but only with the prior written approval of the Chief Deputy City Attorney. Any such written approval of subcontractors must set forth the name of each approved attorney or other personnel and the agreed rate for such individual.

7

Ex. 6, Page 70

Outside Counsel will use commercially reasonable efforts to require any such subcontractors or consultants comply with the terms and conditions of this Agreement, but Outside Counsel shall not be liable for any act or omission of any such subcontractors or consultants.

2.    Outside Counsel's legal representation shall include, but is not limited to:

    a)    All settlement negotiations and pretrial proceedings;

    b)    Appearances at all law and motion hearings, discovery proceedings, hearings regarding orders to show cause, writs, trials and, when applicable, administrative hearings;

    c)    All due diligence, legal research, preparation for hearings, and review of all documents and other evidentiary materials;

    d)    Investigative, secretarial, and clerical support services necessary to perform the legal representation in a professional manner.

3.    Outside Counsel shall provide all required reports referenced in this Agreement.

4.    Outside Counsel shall meet with City Attorney as City Attorney requires.

5.    Outside Counsel shall consult with City Attorney on trial and tactical decisions.

6.    Outside Counsel shall assist City Attorney's Supervising Attorney in settlement evaluations and negotiations, and shall obtain City Attorney's authority before making any settlement proposal on City's behalf to the Court or any party.

7.    Outside Counsel shall immediately notify City Attorney, in writing, when a judgment, verdict or other award is rendered.

8.    Upon City Attorney's request, Outside Counsel shall provide copies of all court rulings and all pleadings filed with the court or other administrative body, including those submitted by other parties.

9.    Outside Counsel shall maintain all backup documentation to support all entries included in its billings.

D.    Reporting Requirements

Depending on the nature of the matter and the benefit derived, City Attorney may request that Outside Counsel provide City Attorney with the following reports:

1.    Case Evaluation and Plan

    a)    The Case Evaluation and Plan is a written independent evaluation of the case that can be used to develop City's legal position and strategy. It will also serve to assist in controlling litigation costs.  Outside Counsel

8

Ex. 6, Page 71

shall base the Case Evaluation and Plan on a review of the pleadings, discovery, reports and other documents, physical evidence, conversations with City Attorney and any other information Outside Counsel deems appropriate based on Outside Counsel's expertise and experience.

b)      The Case Evaluation and Plan shall include, but is not limited to:

1)      Statement of known facts and identified legal issues, including identities of opposing attorney(s), if known;

2)      Statement of precedent-setting or sensitive issues, if applicable;

3)      Statement of alleged and probable injuries and damages;

4)      Statement of liability exposure;

5)      Statement of recommendation(s) on case strategy, including discovery, motions, extent of legal research, consultants and percipient witnesses, experts to be retained, and the extent of expert services to be performed;

6)      Statement of Outside Counsel's projected costs that can be reasonably anticipated.  Costs shall be budgeted on a total, annualized basis and shall include, but are not limited to:

(a)      Attorney fees - an identification of the staffing levels, hourly rates and estimated number of hours for each partner, associate, and/or paralegal;

(b)      Consultant and expert witness rates, and estimated number of hours each will be needed;

(c)      Deposition, transcript and other expenses;

(d)      Fees and expenses for handling the case through each of the following applicable stages:

(1)      Pleadings

(2)      Discovery

(3)      Pretrial conference(s)

(4)      Mediation or Arbitration

(5)      Trial, and

(6)      Any other identified stages.

9

Ex. 6, Page 72

2.    Proposed Settlement Recommendations

a)    If requested by City Attorney, Outside Counsel shall submit to City Attorney written settlement recommendations that clearly state the reasons supporting a proposed settlement.

3.    Appellate Action

a)    If requested by City Attorney, Outside Counsel shall submit to City Attorney recommendations as to whether to appeal or petition for other review, or defend in the appellate courts. Outside Counsel shall state clearly the reason(s) supporting the recommended action.

b)    Outside Counsel shall list City Attorney as co-counsel with Outside Counsel on all briefs and papers submitted to the appellate courts or other reviewing body.

## IV.    CITY'S DUTIES AND RESPONSIBILITIES

A.    Key City Personnel

1.    City hereby appoints the City Attorney, or his or her designee, to represent the City on all matters related to this Agreement; however, any written amendment to this Agreement requiring additional funds shall be conditioned upon the approval of the additional appropriation of said funds by the Los Angeles City Council/Board. The City Attorney's Supervising Attorneys shall be Chief Deputy City Attorney Valerie Flores and Hydee Feldstein Soto, the Los Angeles City Attorney. On all matters relating to invoices the City Attorney's representative shall be Valerie Flores, Arlene Hoang and Jessica Mariani.

2.    City Attorney's Supervising Attorneys shall have full authority to act for City on all daily operational matters under this Agreement and shall review and approve Outside Counsel's reports, whether written or verbal, and any change in Outside Counsel's designated Lead Counsel.

3.    Approval of proposed settlement recommendations is subject to City's settlement approval procedures.

## V.    COMPENSATION

A.    Appropriation of Funds

The Los Angeles City Council has appropriated $900,000 for this Agreement. Outside Counsel's work pursuant to this Agreement shall not exceed that amount without the prior written approval of City Attorney. While the contract amount is not intended to be a binding fee cap, the City may delay payment for any work done and/or costs incurred in excess of the appropriated amount unless additional appropriations are made and a written amendment to this Agreement is executed by the parties.

10

Ex. 6, Page 73

B.     Outside Counsel's Obligation for Continued Performance

In the event that Outside Counsel's fees, costs and expenses, in the aggregate, exceed the amount appropriated by City as provided herein, Outside Counsel shall not be obligated to provide services or incur any further costs or expenses on the work required hereunder, and the City shall not be liable for fees or costs in excess of the amount appropriated, unless the appropriated amount is increased as provided herein. Outside Counsel shall be responsible for notifying City Attorney's Supervising Attorneys that the aforesaid appropriated amount will be expended before completion of the work required hereunder and that Outside Counsel will need additional funds if City desires further work. Outside Counsel shall give written notice to City Attorney's Supervising Attorney and to the City Attorney's Chief Financial and Administrative Officer, when Outside Counsel's expenditures under this Agreement are equal to sixty percent (60%) and eighty percent (80%) of the total dollar value appropriated for this Agreement so that City Attorney has sufficient time to consider whether it desires to seek an additional appropriation and written amendment to the Agreement.

C.     Fees

1.     The City shall pay Outside Counsel for the services performed by Outside Counsel which are reasonably necessary. The fees for such services shall be based upon the time expended to render the required services, with fractions thereof being stated to the tenth of an hour, and shall be computed at a rate not to exceed the discounted rates specified for each category of staff as listed in Exhibit B. Notwithstanding the foregoing, in no event shall the total fees for Outside Counsel's services over the life of the Retained Matter exceed the amount that Outside Counsel would have billed the City if its fees were computed based on the standard hourly rates in effect at the time the services were provided for each category of staff.

2.     Billing rates may only be increased with the prior written approval of the Chief Deputy City Attorney.

D.     City's Reservation of Rights to Obtain Reimbursement

City shall pay Outside Counsel based on Outside Counsel's submission of monthly invoices consistent with the provisions of this Agreement. Even though City makes payment pursuant to invoices, City shall have the right to demand reimbursement any time City determines that previously paid costs and expenses where not properly billed by Outside Counsel. Outside Counsel shall promptly reimburse City for such costs and expenses previously paid by City.

E.     Expenses

Absent the express prior written approval of the appropriate City Attorney's Supervising Attorney, the City will not pay for any extraordinary expenses incurred in any legal matter. The City Attorney's Chief Financial and Administrative Office must approve in writing any item of expense that exceeds $5,000. The City Attorney's Supervising Attorney must approve in writing any item of expense that exceeds $1,000. Such expenses include, but are not limited to, expert witnesses, consultant services,

11

Ex. 6, Page 74

investigative services, computer litigation support services, videotaping of depositions, temporary office help, travel expenses, meals as well as other expenses. Travel time is non-reimbursable. The City will not pay for business class or first class airfare or luxury hotels. City shall reimburse Outside Counsel for the actual out-of-pocket expenses, enumerated below, but without any additional costs for having advanced the funds. Outside Counsel shall note that City is exempt from all filing fee charges.

    1.    Reimbursable ordinary expenses shall include, but are not limited to:

    a)    Deposition fees- The City expects Outside Counsel to keep the costs of deposition transcripts to a minimum. When depositions are taken and Outside Counsel receives the original, City shall not pay the court reporter's fee for providing Outside Counsel with an extra photocopy of the deposition transcript. City expects Outside Counsel to make a photocopy of the original at Outside Counsel's office. Likewise, when attending depositions of third parties or third-party witnesses, City requests that, if Outside Counsel believes an additional copy of the deposition transcript is necessary, Outside Counsel agree with opposing counsel or co-counsel to share the costs. Prior written approval from City must be obtained before ordering any expedited original or expedited copy of a deposition transcript.

    b)    Deposition summaries, if necessary, should be brief and should be completed by the deposing attorney. The City shall not pay for a paralegal or other lawyer to summarize the deposition transcript unless trial is imminent. City shall not pay for summaries that are, in effect, a complete regurgitation of the underlying deposition.

    c)    Transcript fees;

    d)    Messenger service - where appropriate, documents should be transmitted via email or facsimile/telecopier;

    e)    Facsimile/Telecopier (FAX) transmission - Outside Counsel shall not bill the City for any expense related to facsimile charges beyond Outside Counsel's actual net costs for long distance telephone charges actually and reasonably incurred by Outside Counsel for the sending of facsimiles. Outside Counsel shall indicate in its billing statements the number of pages transmitted via facsimile together with the related cost of each charge. Outside Counsel shall attach the appropriate receipts, invoices or proof of any expenditure for facsimile charges; and

    f)    Process service.

    2.    Reimbursable extraordinary expenses shall include charges for which Outside Counsel has obtained City Attorney's prior written approval. Such expenses shall include, but are not limited to:

    a)    Consultants;

    b)    Expert witnesses;

Ex. 6, Page 75

c)        Investigative services;

d)        Computer Assisted Legal Research ("CALR") - The City of Los Angeles's decision to retain a particular firm is based in part on the firm's expertise and knowledge. The City therefore assumes familiarity with the basic substantive law at issue in the matter for which the firm was retained; any exception to this general expectation should be discussed fully at the time of retention.  In conducting legal research the law firm is expected to utilize all appropriate sources reasonably available, including previously prepared briefs and memoranda. Should Outside Counsel determine that it is necessary to incur CALR charges in order to satisfy the terms of this Agreement, Outside Counsel shall obtain City Attorney Supervising Attorney's prior written approval to charge for such expenses. No charges for CALR shall be paid by the City without its prior written approval of such a charge.

Outside Counsel shall describe in detail in its billings any travel expenses incurred by Outside Counsel. City retains the right to audit these expenses. Only coach fare will be reimbursed for travel. Travel time is non-reimbursable.  If a receipt is submitted, a reasonable single occupancy hotel accommodations will be reimbursed.  For trial attendance by out-of-town experts or consultants, this rate may be increased, depending on the availability of lodging and prior City Attorney written approval.

3.        Non-reimbursable expenses shall include, but are not limited to:

a)        Staff time or overtime for performing secretarial, clerical, or word processing functions;

b)        Charges for time spent complying with City Attorney audits or billing or budgeting inquiries;

c)        Charges for work performed which City Attorney had not authorized. Such work shall be a gratuitous effort by Outside Counsel; and

d)        Expenses that are considered to be part of general law firm overhead, including but not limited to, administrative time, secretarial time, calendaring, setting up files, indexing, word processing, air conditioning, equipment rental, office supplies, meals, snacks, beverages, seminars, books or association dues, etc.;

e)        Travel time.

F.     Rates

Outside Counsel represents that, as of the date hereof, the rates set forth in Sections III.C. and V.C. above and the other economic terms and conditions provided in this Agreement, taken individually, are agreed upon for both parties.

13

Ex. 6, Page 76

## VI.    BILLINGS AND PAYMENTS

A.    Billings

1.    Outside Counsel shall endeavor to submit its billing statement monthly in arrears, no later than the tenth business day of the month following the month service was rendered.

2.    Outside Counsel and City Attorney recognize that legal services performed under this Agreement are being paid for with tax dollars from the citizens of the City of Los Angeles and that, therefore, a heightened duty of care exists in both Outside Counsel and City Attorney to ensure that Outside Counsel scrupulously adheres to principles of moderation, frugality and cost consciousness in carrying out the goals of this Agreement. Outside Counsel pledges to observe a duty of reasonableness and cost effective representation in all aspects of this Agreement. Accordingly, each billing statement shall contain a certification by Outside Counsel's Supervising Attorney that the services performed and the expenses incurred were both reasonable and necessary.

3.    The City will not pay for more than one attorney doing any particular task unless City Attorney has given its prior written approval. The City will not pay for excessive attorneys attending the same deposition or court appearance. The City will pay for the time recorded by more than one attorney for in-office conferences, but only if the conference is an occasional and necessary strategy meeting relating to some significant legal event or proceeding.

The City shall not pay for duplicative time charges by two or more attorneys, e.g., for legal research, reviewing documents, drafting documents, except as reasonably necessary for the complexity of the matter or as approved in writing by City Attorney. The City shall not pay for "training" or "apprenticeship" time. The City shall not pay for the involvement of attorneys who work on the case irregularly or sporadically, unless a particular attorney has a special expertise that substantially advances the prosecution/defense of the case.

4.    Use of paralegals is encouraged providing they meet the requirements set forth herein. Assignment of work to paralegals should not result in duplicative activity between attorneys and paralegals, or the reworking or rewriting of paralegals' work product by attorneys. The City will not pay for paralegal time spent performing clerical/secretarial work (e.g., filing, indexing, sorting, organizing, photocopying and bates stamping documents) unless the City has given its prior written approval. City expects paralegals to perform true paralegal work, e.g., research, document productions, preparing discovery or responses, interviewing witnesses, etc.

5.  Billings under this Agreement shall not be made in more than one-tenth of an hour (six minute) increments, and shall represent the devotion of a full six minutes before such an increment is billed. Under no circumstances shall Outside Counsel use "block billing" procedures, wherein a list of series of activities is done each day with only an aggregate amount of time specified. Instead, Outside Counsel shall provide a detailed specific entry for each separate task and sub-task reflecting the time for such task or subtask. All tasks set forth in Outside Counsel's billing documentation shall be highly specific and highly detailed. Overly generalized listings of task descriptions

14

Ex. 6, Page 77

such as "review contract" or "prepare for negotiations" will not be acceptable. Outside Counsel shall provide a detailed description of each action as described below.

6.      Each billing statement shall be identified by a unique number and itemized to include:

a)      Case name and case number;

b)      Staffing level(s), hourly rates and specific activities for each attorney and/or paralegal;

1)      Each activity shall be billed in a reporting format acceptable to City Attorney.

2)      A detailed description of specific activities for each attorney and/or paralegal shall include, but is not limited to:

(a)      In-person conferences.

(b)      Telephone call(s).

(c)      Correspondence.

(d)      Depositions.

(e)      Case reports.

(f)      Pleading, brief or opinion drafting.

(g)      Hearings.

(h)      Research, including computerized legal research databases.

(i)      Case reviews.

(j)      Trials.

c)      Total current monthly fees billed for each staffing level;

d)      Total cumulative fees billed for each staffing level;

e)      Total current monthly expenses billed in the following categories:

1)      Consultant and expert witness expenses;

2)      Deposition and transcript expenses;

3)      Other miscellaneous expenses.

f)      Total cumulative expenses to date billed in (e) above.

15

Ex. 6, Page 78

B.    Payments

1.    City shall make payment(s) for services rendered under this Agreement based on the monthly, itemized billing statement(s) Outside Counsel submits to City Attorney.

2.    City Attorney's legal and accounting staff shall review all billing statements in accordance with City's review procedures.

3.    City shall make its best effort to process payments promptly after receiving Outside Counsel's monthly billing statement. City shall not pay interest or finance charges on any outstanding balance(s).

C.    Audit

For at least three years after completion of services under this Agreement or termination of this Agreement, Outside Counsel and any third party retained by Outside Counsel to assist in the performance of this Agreement, shall maintain backup documentation to support all entries included in the monthly billing statement. Such backup documentation shall be maintained in an auditable format. City Attorney, at its sole discretion, may, at any time prior to the termination of this Agreement, request an audit of Outside Counsel. Outside Counsel shall cooperate with reasonable audit requests, provided that such audits are conducted with reasonable advance notice to Outside Counsel, do not exceed once annually, and are subject at all times to Outside Counsel's confidentiality and other ethical obligations with respect to other clients.

## VII.    NOTICES

All invoices, notices and required reports shall be written and hand-delivered or mailed by first class, postage prepaid, addressed to City Attorney or Outside Counsel at the addresses below, or at any other address City Attorney or Outside Counsel shall provide in writing to each other, or by email:

A.    If invoice to City Attorney:

Aimee Sevilla
Outside Counsel Accounting Unit
Office of the City Attorney
200 North Main Street,
8th Floor, City Hall East
Los Angeles, California 90012-4130


If notice or a report to City Attorney:

City of Los Angeles
Office of the City Attorney
200 North Main Street, City Hall East
Los Angeles, California 90012-4130
Attention: Arlene Hoang and Jessica Mariani

16

Ex. 6, Page 79

If notice concerning conflict of interest to City Attorney:

Anne Haley, Assistant City Attorney
City of Los Angeles
Office of the City Attorney
200 North Main Street
8th Floor, City Hall East
Los Angeles, California 90012-4130

B.    If notice to Outside Counsel:

GIBSON, DUNN & CRUTCHER LLP
333 South Grand
Los Angeles, CA 90071
Attention: Theane Evangelis

## VIII.    ASSIGNMENT

A.    No part of this Agreement or any right or obligation arising from it is assignable without City's prior written consent.

B.    Any attempt by Outside Counsel to assign or subcontract services relating to this Agreement without City's prior written consent shall constitute a material breach of this Agreement.

## IX.    STANDARD TERMS AND CONDITIONS

### IRAN CONTRACTING ACT OF 2010

In accordance with California Public Contract Code Sections 2200-2208, all bidders submitting proposals for, entering into, or renewing contracts with the City of Los Angeles for goods and services estimated at $1,000,000 or more is required to complete, sign, and submit the "Iran Contracting Act of 2010 Compliance Affidavit."

### STANDARD PROVISIONS FOR CITY CONTRACTS

Contractor agrees to comply with the Standard Provisions for City Contracts (Rev. 6/24 [v. 1.]), which are attached hereto as Exhibit A and incorporated herein by reference, except as follows:

PSC -6 shall not apply to payment of fees.

17

Ex. 6, Page 80

PSC-9 shall be deleted in its entirety. Termination shall be governed by this Agreement.

The second paragraph of PSC-11 shall be amended to read:

"CONTRACTOR shall not use Subcontractors to assist in performance of this Contract without the prior written approval of CITY. If CITY permits the use of Subcontractors, CONTRACTOR shall remain responsible for performing all aspects of this Contract and paying all Subcontractors. CITY has the right to approve CONTRACTOR'S Subcontractors, and CITY reserves the right to request replacement of any Subcontractor. CITY does not have any obligation to pay CONTRACTOR'S Subcontractors, and nothing herein creates any privity of contract between CITY and any

Subcontractor, provided that, CONTRACTOR may, with consent of the CITY, retain third-party vendors, such as eDiscovery providers, consultants or expert witnesses, specifically to work on behalf of the CITY in conjunction with this matter. The retention agreements with such third-party vendors, consultants, and/or experts shall state that the City shall have sole responsibility for payment of services and shall require invoices to be submitted directly    to     the    CITY."

PSC-14 is hereby deleted in its entirety.

PSC-16 shall be deleted in its entirety and replaced with the following:

"Retention of Records. Audit and Reports. CONTRACTOR shall maintain all records, including records of financial transactions, pertaining to the performance of this Contract, in their original form or as otherwise approved by CITY. These records shall be retained as required by law, but in no event for a period of less than three years from the later of the following: (1) final payment made by CITY, (2) the expiration of this Contract or (3) termination of this Contract. The records will be subject to examination and audit by authorized CITY personnel or CITY'S representatives at any time (provided that such audits are conducted with reasonable advance notice to CONTRACTOR, do not exceed once annually, and are subject at all times to CONTRACTOR's confidentiality and other ethical obligations with respect to other clients). CONTRACTOR shall provide any reports requested by CITY regarding performance of this Contract to which CITY is entitled pursuant to the Agreement. Any subcontract entered into by CONTRACTOR for work to be performed under this Contract must include an identical provision. In lieu of retaining the records for the term as prescribed in this provision, CONTRACTOR may, upon CITY'S written approval, submit the required information to CITY in an electronic format, e.g. USB flash drive, at the expiration or termination of this Contract."

PSC-18 is hereby deleted in its entirety.

18

Ex. 6, Page 81

PSC-19 is hereby deleted in its entirety.

PSC-21 is hereby deleted in its entirety. Document ownership and retention is governed by this Agreement.

PSC-22 shall be deleted in its entirety and replaced with the following:

"Data Protection.

A. CONTRACTOR shall protect, using commercially reasonable security means and technology, CITY-provided data or consumer-provided data acquired in the course and scope of this Contract, including but not limited to customer lists and customer credit card or consumer data, (collectively, the "City Data"). CONTRACTOR shall notify CITY in writing as soon as reasonably feasible, and in any event within forty- eight hours, of CONTRACTOR'S discovery or reasonable belief of any unauthorized access of City Data (a "Data Breach"), or of any incident affecting, or potentially affecting City Data related to cyber security (a "Security Incident"), including, but not limited to, denial of service attack, and system outage, instability or degradation due to computer malware or virus. CONTRACTOR shall begin remediation immediately. CONTRACTOR shall provide periodic updates regarding findings and actions performed by CONTRACTOR until the Data Breach or Security Incident has been effectively resolved. CONTRACTOR shall conduct an investigation of the Data Breach or Security Incident and shall share the report of the investigation with CITY. CONTRACTOR shall cooperate fully with CITY, its agents and law enforcement.

B. CONTRACTOR shall fully cooperate with CITY throughout the investigation of a Security Incident and work closely to determine the necessity, extent and timing of remediation responsibilities on a case-by-case basis."

PSC-23 shall be deleted in its entirety and replaced with the following:

"During the term of this Contract, CONTRACTOR shall maintain at its own expense adequate and industry-standard insurance policies with reputable providers. Exhibit 1 attached hereto is deemed deleted."

PSC-24 shall be deleted in its entirety and replaced with the following:

"Best Terms. While it is not possible to make perfect comparisons between the rates that CONTRACTOR will charge CITY and the rates CONTRACTOR charges other clients in other matters, given the different teams staffed on different matters and different times in which agreements are made, the discounted rates CONTRACTOR will charge CITY will be competitive with the financial arrangements CONTRACTOR has with its

19

other clients that are similarly situated and have received rate discounts."

PSC-26 is hereby deleted in its entirety.

PSC-27 is hereby deleted in its entirety.

PSC-29 is hereby deleted in its entirety.

PSC-30, C. is hereby deleted in its entirety.

PSC-32 is hereby deleted in its entirety.

PSC-34 is hereby deleted in its entirety.

PSC-35 is hereby deleted in its entirety.

PSC-37 is hereby deleted in its entirety.

PSC-38 is hereby deleted in its entirety.

PSC-39 is hereby deleted in its entirety.

PSC-40 is hereby deleted in its entirety.

## X.    <u>MERGER</u>

This Agreement supersedes all prior communications and all previous written and oral agreements, and shall constitute the complete and exclusive statement of understanding between City, City Attorney and Outside Counsel relating to the subject matter of this Agreement.

## XI.    <u>ORDER OF PRECEDENCE</u>

In the event of any inconsistency between the provisions in the body of this Agreement and the attachments, the provisions in the body of this Agreement take precedence, followed by Attachment A, Standard Provisions for City Contracts (Rev. 1.25) [v.2], followed by Attachment B, Fee Schedule, followed by any other exhibits or attachments to this Agreement in the order in which they are attached. This Agreement may be executed in one or more counterparts, and by the parties in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement. The parties further agree that facsimile signatures or signatures scanned into .pdf (or signatures in another electronic format designated by City) and sent by e-mail shall be deemed original signatures.

Ex. 6, Page 83

**IN WITNESS WHEREOF** the parties have caused this Agreement to be executed by their respective, duly authorized representatives.

THE CITY OF LOS ANGELES,
a municipal corporation

HYDEE FELDSTEIN SOTO, City Attorney

By _____
     Chief Deputy City Attorney

Date _May 20, 2025_

GIBSON, DUNN & CRUTCHER LLP

By _____

Date _5/20/25_

APPROVED AS TO FORM

HYDEE FELDSTEIN SOTO, City Attorney

By _____

Date _5/29/2025_

ATTEST: PETTY SANTOS, Interim City Clerk

By _____
     Deputy City Clerk

Date Jun 2, 2025

City Business License Number: _____

Internal Revenue Service ID Number: _____

Council File/CAO File Number: _____

Contract Number: C-201616

21

Ex. 6, Page 84

**ATTACHMENT A**

Standard Provisions for City Contracts (Rev. 1/25 [v.2])

## STANDARD PROVISIONS FOR CITY CONTRACTS

### TABLE OF CONTENTS

PSC-1    Construction of Provisions and Titles Herein ................................................ 1

PSC-2    Applicable Law, Interpretation and Enforcement ............................................. 1

PSC-3    Time of Effectiveness ................................................................................... 1

PSC-4    Integrated Contract ...................................................................................... 2

PSC-5    Amendment .................................................................................................. 2

PSC-6    Excusable Delays ......................................................................................... 2

PSC-7    Waiver ........................................................................................................ 2

PSC-8    Suspension .................................................................................................. 2

PSC-9    Termination ................................................................................................. 3

PSC-10    Independent Contractor .............................................................................. 5

PSC-11    Contractor's Personnel ............................................................................... 5

PSC-12    Assignment and Delegation ........................................................................ 6

PSC-13    Permits ..................................................................................................... 6

PSC-14    Claims for Labor and Materials .................................................................. 6

PSC-15    Current Los Angeles City Business Tax Registration Certificate Required .... 6

PSC-16    Retention of Records, Audit and Reports ..................................................... 6

PSC-17    Bonds ....................................................................................................... 7

PSC-18    Indemnification ......................................................................................... 7

PSC-19    Intellectual Property Indemnification .......................................................... 7

PSC-20    Intellectual Property Warranty ................................................................... 8

PSC-21    Ownership and License .............................................................................. 8

PSC-22    Data Protection ........................................................................................ 9

PSC-23    Insurance .................................................................................................. 9

i

Ex. 6, Page 86

**TABLE OF CONTENTS (Continued)**

**PSC-24**    Best Terms .................................................................. **9**

**PSC-25**    Warranty and Responsibility of Contractor ....................................... **10**

**PSC-26**    Mandatory Provisions Pertaining to Non-Discrimination in Employment ...... **10**

**PSC-27**    Child Support Assignment Orders ............................................... **10**

**PSC-28**    Living Wage Ordinance ......................................................... **11**

**PSC-29**    Service Contractor Worker Retention Ordinance ........................... **11**

**PSC-30**    Access and Accommodations .................................................. **11**

**PSC-31**    Contractor Responsibility Ordinance .......................................... **12**

**PSC-32**    Business Inclusion Program ................................................... **12**

**PSC-33**    Slavery Disclosure Ordinance ................................................. **12**

**PSC-34**    First Source Hiring Ordinance ................................................. **12**

**PSC-35**    Local Business Preference Ordinance .......................................... **12**

**PSC-36**    Iran Contracting Act .......................................................... **12**

**PSC-37**    Restrictions on Campaign Contributions in City Elections ................... **12**

**PSC-38**    Contractors' Use of Criminal History for Consideration of Employment Application ................................................................. **13**

**PSC-39**    Limitation of City's Obligation to Make Payment to Contractor ............... **13**

**PSC-40**    Compliance with Identity Theft Laws and Payment Card Data Security Standards ................................................................. **14**

**PSC-41**    Compliance with California Public Resources Code Section 5164 ............ **14**

**PSC-42**    Possessory Interests Tax ...................................................... **14**

**PSC-43**    Confidentiality ............................................................... **15**

**PSC-44**    Contractor Data Reporting .................................................... **15**

**Exhibit 1** Insurance Contractual Requirements ...................................... **16**

ii

Ex. 6, Page 87

**STANDARD PROVISIONS FOR CITY CONTRACTS**

**PSC-1.** <u>Construction of Provisions and Titles Herein</u>

All titles, subtitles, or headings in this Contract have been inserted for convenience, and shall not be deemed to affect the meaning or construction of any of the terms or provisions of this Contract. The language of this Contract shall be construed according to its fair meaning and not strictly for or against **CITY** or **CONTRACTOR**. The word **"CONTRACTOR"** includes the party or parties identified in this Contract. The singular shall include the plural and if there is more than one **CONTRACTOR**, unless expressly stated otherwise, their obligations and liabilities shall be joint and several. Use of the feminine, masculine, or neuter genders shall be deemed to include the genders not used.

**PSC-2.** <u>Applicable Law, Interpretation and Enforcement</u>

Each party's performance shall comply with all applicable laws of the United States of America, the State of California, and **CITY**, including but not limited to, laws regarding health and safety, labor and employment, wage and hours and licensing. This Contract shall be enforced and interpreted under the laws of the State of California without regard to conflict of law principles. **CONTRACTOR** shall comply with new, amended, or revised laws, regulations, or procedures that apply to the performance of this Contract with no additional compensation paid to **CONTRACTOR**.

In any action arising out of this Contract, **CONTRACTOR** consents to personal jurisdiction, and agrees to bring all such actions, exclusively in state or federal courts located in Los Angeles County, California.

If any part, term or provision of this Contract is held void, illegal, unenforceable, or in conflict with any federal, state or local law or regulation, the validity of the remaining parts, terms or provisions of this Contract shall not be affected.

**PSC-3.** <u>Time of Effectiveness</u>

Unless otherwise provided, this Contract shall take effect when all of the following events have occurred:

A.    This Contract has been signed on behalf of **CONTRACTOR** by the person or persons authorized to bind **CONTRACTOR**;

B.    This Contract has been approved by the City Council or by the board, officer or employee authorized to give such approval;

C.    The Office of the City Attorney has indicated in writing its approval of this Contract as to form; and

D.    This Contract has been signed on behalf of **CITY** by the person designated by the City Council, or by the board, officer or employee authorized to enter into this Contract.

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**        1        **ATTACHMENT A**
Ex. 6, Page 88

**PSC-4.** <u>Integrated Contract</u>

This Contract sets forth all of the rights and duties of the parties with respect to the subject matter of this Contract, and replaces any and all previous Contracts or understandings, whether written or oral, relating thereto. This Contract may be amended only as provided for in the provisions of PSC-5 hereof.

**PSC-5.** <u>Amendment</u>

All amendments to this Contract shall be in writing and signed and approved pursuant to the provisions of PSC-3.

**PSC-6.** <u>Excusable Delays</u>

Neither party shall be liable for its delay or failure to perform any obligation under and in accordance with this Contract, if the delay or failure arises out of fires, floods, earthquakes, epidemics, quarantine restrictions, other natural occurrences, strikes, lockouts (other than a lockout by the party or any of the party's Subcontractors), freight embargoes, terrorist acts, insurrections or other civil disturbances, or other similar events to those described above, but in each case the delay or failure to perform must be beyond the control and without any fault or negligence of the party delayed or failing to perform (these events are referred to in this provision as "Force Majeure Events").

Notwithstanding the foregoing, a delay or failure to perform by a Subcontractor of **CONTRACTOR** shall not constitute a Force Majeure Event, unless the delay or failure arises out of causes beyond the control of both **CONTRACTOR** and Subcontractor, and without any fault or negligence of either of them. In such case, **CONTRACTOR** shall not be liable for the delay or failure to perform, unless the goods or services to be furnished by the Subcontractor were obtainable from other sources in sufficient time to permit **CONTRACTOR** to perform timely. As used in this Contract, the term "Subcontractor" means a subcontractor at any tier.

In the event **CONTRACTOR'S** delay or failure to perform arises out of a Force Majeure Event, **CONTRACTOR** agrees to use commercially reasonable best efforts to obtain the goods or services from other sources, and to otherwise mitigate the damages and reduce the delay caused by the Force Majeure Event.

**PSC-7.** <u>Waiver</u>

A waiver of a default of any part, term or provision of this Contract shall not be construed as a waiver of any succeeding default or as a waiver of the part, term or provision itself. A party's performance after the other party's default shall not be construed as a waiver of that default.

**PSC-8.** <u>Suspension</u>

At **CITY'S** sole discretion, **CITY** may suspend any or all services provided under this Contract by providing **CONTRACTOR** with written notice of suspension. Upon receipt of the notice of suspension, **CONTRACTOR** shall immediately cease the services

**STANDARD PROVISIONS**
**FOR CITY CONTRACTS (Rev. 1/25 [v.2])**     **2**

**ATTACHMENT A**
Ex. 6, Page 89

suspended and shall not incur any additional obligations, costs or expenses to **CITY** until **CITY** gives written notice to recommence the services.

**PSC-9.** Termination

> A.   Termination for Convenience

**CITY** may terminate this Contract for **CITY'S** convenience at any time by providing **CONTRACTOR** thirty days written notice. Upon receipt of the notice of termination, **CONTRACTOR** shall immediately take action not to incur any additional obligations, costs or expenses, except as may be necessary to terminate its activities. **CITY** shall pay **CONTRACTOR** its reasonable and allowable costs through the effective date of termination and those reasonable and necessary costs incurred by **CONTRACTOR** to effect the termination. Thereafter, **CONTRACTOR** shall have no further claims against **CITY** under this Contract. All finished and unfinished documents and materials procured for or produced under this Contract, including all intellectual property rights **CITY** is entitled to, shall become **CITY** property upon the date of the termination. **CONTRACTOR** agrees to execute any documents necessary for **CITY** to perfect, memorialize, or record **CITY'S** ownership of rights provided herein.

> B.   Termination for Breach of Contract

> 1.   Except as provided in PSC-6, if **CONTRACTOR** fails to perform any of the provisions of this Contract or so fails to make progress as to endanger timely performance of this Contract, **CITY** may give **CONTRACTOR** written notice of the default. **CITY'S** default notice will indicate whether the default may be cured and the time period to cure the default to the sole satisfaction of **CITY**. Additionally, **CITY'S** default notice may offer **CONTRACTOR** an opportunity to provide **CITY** with a plan to cure the default, which shall be submitted to **CITY** within the time period allowed by **CITY**. At **CITY'S** sole discretion, **CITY** may accept or reject **CONTRACTOR'S** plan. If the default cannot be cured or if **CONTRACTOR** fails to cure within the period allowed by **CITY**, then **CITY** may terminate this Contract due to **CONTRACTOR'S** breach of this Contract.

> 2.   If the default under this Contract is due to **CONTRACTOR'S** failure to maintain the insurance required under this Contract, **CONTRACTOR** shall immediately: (1) suspend performance of any services under this Contract for which insurance was required; and (2) notify its employees and Subcontractors of the loss of insurance coverage and Contractor's obligation to suspend performance of services. **CONTRACTOR** shall not recommence performance until **CONTRACTOR** is fully insured and in compliance with **CITY'S** requirements.

3. If a federal or state proceeding for relief of debtors is undertaken by or against **CONTRACTOR**, or if **CONTRACTOR** makes an assignment for the benefit of creditors, then **CITY** may immediately terminate this Contract.

4. If **CONTRACTOR** engages in any dishonest conduct related to the performance or administration of this Contract or violates **CITY'S** laws, regulations or policies relating to lobbying, then **CITY** may immediately terminate this Contract.

5. Acts of Moral Turpitude

   a. **CONTRACTOR** shall immediately notify **CITY** if **CONTRACTOR** or any Key Person, as defined below, is charged with, indicted for, convicted of, pleads nolo contendere to, or forfeits bail or fails to appear in court for a hearing related to, any act which constitutes an offense involving moral turpitude under federal, state, or local laws ("Act of Moral Turpitude").

   b. If **CONTRACTOR** or a Key Person is convicted of, pleads nolo contendere to, or forfeits bail or fails to appear in court for a hearing related to, an Act of Moral Turpitude, **CITY** may immediately terminate this Contract.

   c. If **CONTRACTOR** or a Key Person is charged with or indicted for an Act of Moral Turpitude, **CITY** may terminate this Contract after providing **CONTRACTOR** an opportunity to present evidence of **CONTRACTOR'S** ability to perform under the terms of this Contract.

   d. Acts of Moral Turpitude include, but are not limited to: violent felonies as defined by Penal Code Section 667.5, crimes involving weapons, crimes resulting in serious bodily injury or death, serious felonies as defined by Penal Code Section 1192.7, and those crimes referenced in the Penal Code and articulated in California Public Resources Code Section 5164(a)(2); in addition to and including acts of murder, rape, sexual assault, robbery, kidnapping, human trafficking, pimping, voluntary manslaughter, aggravated assault, assault on a peace officer, mayhem, fraud, domestic abuse, elderly abuse, and child abuse, regardless of whether such acts are punishable by felony or misdemeanor conviction.

e.  For the purposes of this provision, a Key Person is a principal, officer, or employee assigned to this Contract, or owner (directly or indirectly, through one or more intermediaries) of ten percent or more of the voting power or equity interests of **CONTRACTOR**.

6.  In the event **CITY** terminates this Contract as provided in this section, **CITY** may procure, upon such terms and in the manner as **CITY** may deem appropriate, services similar in scope and level of effort to those so terminated, and **CONTRACTOR** shall be liable to **CITY** for all of its costs and damages, including, but not limited to, any excess costs for such services.

7.  If, after notice of termination of this Contract under the provisions of this section, it is determined for any reason that **CONTRACTOR** was not in default under the provisions of this section, or that the default was excusable under the terms of this Contract, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to PSC-9(A) Termination for Convenience.

8.  The rights and remedies of **CITY** provided in this section shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Contract.

C.  In the event that this Contract is terminated, **CONTRACTOR** shall immediately notify all employees and Subcontractors, and shall notify in writing all other parties contracted with under the terms of this Contract within five working days of the termination.

**PSC-10.** Independent Contractor

**CONTRACTOR** is an independent contractor and not an agent or employee of **CITY**. **CONTRACTOR** shall not represent or otherwise hold out itself or any of its directors, officers, partners, employees, or agents to be an agent or employee of **CITY**.

**PSC-11.** Contractor's Personnel

Unless otherwise approved by **CITY**, **CONTRACTOR** shall use its own employees to perform the services described in this Contract. **CITY** has the right to review and approve any personnel who are assigned to work under this Contract. **CONTRACTOR** shall remove personnel from performing work under this Contract if requested to do so by **CITY**.

**CONTRACTOR** shall not use Subcontractors to assist in performance of this Contract without the prior written approval of **CITY**. If **CITY** permits the use of Subcontractors, **CONTRACTOR** shall remain responsible for performing all aspects of this Contract and paying all Subcontractors. **CITY** has the right to approve **CONTRACTOR'S** Subcontractors, and **CITY** reserves the right to request replacement of any

Ex. 6, Page 92

Subcontractor. **CITY** does not have any obligation to pay **CONTRACTOR'S** Subcontractors, and nothing herein creates any privity of contract between **CITY** and any Subcontractor.

**PSC-12.** Assignment and Delegation

**CONTRACTOR** may not, unless it has first obtained the written permission of **CITY**:

 A. Assign or otherwise alienate any of its rights under this Contract, including the right to payment; or

 B. Delegate, subcontract, or otherwise transfer any of its duties under this Contract.

**PSC-13.** Permits

**CONTRACTOR** and its directors, officers, partners, agents, employees, and Subcontractors, shall obtain and maintain all licenses, permits, certifications and other documents necessary for **CONTRACTOR'S** performance of this Contract. **CONTRACTOR** shall immediately notify **CITY** of any suspension, termination, lapses, non-renewals, or restrictions of licenses, permits, certificates, or other documents that relate to **CONTRACTOR'S** performance of this Contract.

**PSC-14.** Claims for Labor and Materials

**CONTRACTOR** shall promptly pay when due all amounts owed for labor and materials furnished in the performance of this Contract so as to prevent any lien or other claim under any provision of law from arising against any **CITY** property (including reports, documents, and other tangible or intangible matter produced by **CONTRACTOR** hereunder), and shall pay all amounts due under the Unemployment Insurance Act or any other applicable law with respect to labor used to perform under this Contract.

**PSC-15.** Current Los Angeles City Business Tax Registration Certificate Required

For the duration of this Contract, **CONTRACTOR** shall maintain valid Business Tax Registration Certificate(s) as required by **CITY'S** Business Tax Ordinance, Section 21.00 *et seq*. of the Los Angeles Municipal Code ("LAMC"), and shall not allow the Certificate to lapse or be revoked or suspended.

**PSC-16.** Retention of Records, Audit and Reports

**CONTRACTOR** shall maintain all records, including records of financial transactions, pertaining to the performance of this Contract, in their original form or as otherwise approved by **CITY**. These records shall be retained for a period of no less than three years from the later of the following: (1) final payment made by **CITY**, (2) the expiration of this Contract or (3) termination of this Contract. The records will be subject to examination and audit by authorized **CITY** personnel or **CITY'S** representatives at any time. **CONTRACTOR** shall provide any reports requested by **CITY** regarding

**STANDARD PROVISIONS**
**FOR CITY CONTRACTS (Rev. 1/25 [v.2])**    6    **ATTACHMENT A**

Ex. 6, Page 93

performance of this Contract. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

In lieu of retaining the records for the term as prescribed in this provision, **CONTRACTOR** may, upon **CITY'S** written approval, submit the required information to **CITY** in an electronic format, e.g. USB flash drive, at the expiration or termination of this Contract.

**PSC-17.** Bonds

All bonds required by **CITY** shall be filed with the Office of the City Administrative Officer, Risk Management for its review and acceptance in accordance with Los Angeles Administrative Code ("LAAC") Sections 11.47 *et seq*., as amended from to time.

**PSC-18.** Indemnification

Except for the active negligence or willful misconduct of **CITY**, or any of its boards, officers, agents, employees, assigns and successors in interest, **CONTRACTOR** shall defend, indemnify and hold harmless **CITY** and any of its boards, officers, agents, employees, assigns, and successors in interest from and against all lawsuits and causes of action, claims, losses, demands and expenses, including, but not limited to, attorney's fees (both in house and outside counsel) and cost of litigation (including all actual litigation costs incurred by **CITY**, including but not limited to, costs of experts and consultants), damages or liability of any nature whatsoever, for death or injury to any person, including **CONTRACTOR'S** employees and agents, or damage or destruction of any property of either party hereto or of third parties, arising in any manner by reason of an act, error, or omission by **CONTRACTOR,** Subcontractors, or their boards, officers, agents, employees, assigns, and successors in interest. The rights and remedies of **CITY** provided in this section shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Contract. This provision will survive expiration or termination of this Contract.

**PSC-19.** Intellectual Property Indemnification

**CONTRACTOR**, at its own expense, shall defend, indemnify, and hold harmless the **CITY**, and any of its boards, officers, agents, employees, assigns, and successors in interest from and against all lawsuits and causes of action, claims, losses, demands and expenses, including, but not limited to, attorney's fees (both in house and outside counsel) and cost of litigation (including all actual litigation costs incurred by **CITY**, including but not limited to, costs of experts and consultants), damages or liability of any nature arising out of the infringement, actual or alleged, direct or contributory, of any intellectual property rights, including, without limitation, patent, copyright, trademark, trade secret, right of publicity, and proprietary information: (1) on or in any design, medium, matter, article, process, method, application, equipment, device, instrumentation, software, hardware, or firmware used by **CONTRACTOR**, or its Subcontractors, in performing the work under this Contract; or (2) as a result of **CITY'S** actual or intended use of any Work Product (as defined in PSC-21) furnished by **CONTRACTOR**, or its Subcontractors, under this Contract. The rights and remedies of **CITY** provided in this section shall not be exclusive

**STANDARD PROVISIONS**
**FOR CITY CONTRACTS (Rev. 1/25 [v.2])**          7          **ATTACHMENT A**

Ex. 6, Page 94

and are in addition to any other rights and remedies provided by law or under this Contract. This provision will survive expiration or termination of this Contract.

**PSC-20.** <u>Intellectual Property Warranty</u>

**CONTRACTOR** represents and warrants that its performance of all obligations under this Contract does not infringe in any way, directly or contributorily, upon any third party's intellectual property rights, including, without limitation, patent, copyright, trademark, trade secret, right of publicity and proprietary information.

**PSC-21.** <u>Ownership and License</u>

Unless otherwise provided for herein, all finished and unfinished works, tangible or not, created under this Contract including, without limitation, documents, materials, data, reports, manuals, specifications, artwork, drawings, sketches, blueprints, studies, memoranda, computation sheets, computer programs and databases, schematics, photographs, video and audiovisual recordings, sound recordings, marks, logos, graphic designs, notes, websites, domain names, inventions, processes, formulas, matters and combinations thereof, and all forms of intellectual property originated and prepared by **CONTRACTOR** or its Subcontractors under this Contract (each a "Work Product"; collectively "Work Products") shall be and remain the exclusive property of **CITY** for its use in any manner **CITY** deems appropriate. **CONTRACTOR** hereby assigns to **CITY** all goodwill, copyright, trademark, patent, trade secret and all other intellectual property rights worldwide in any Work Products originated and prepared under this Contract. **CONTRACTOR** further agrees to execute any documents necessary for **CITY** to perfect, memorialize, or record **CITY'S** ownership of rights provided herein.

**CONTRACTOR** agrees that a monetary remedy for breach of this Contract may be inadequate, impracticable, or difficult to prove and that a breach may cause **CITY** irreparable harm. **CITY** may therefore enforce this requirement by seeking injunctive relief and specific performance, without any necessity of showing actual damage or irreparable harm. Seeking injunctive relief or specific performance does not preclude **CITY** from seeking or obtaining any other relief to which **CITY** may be entitled.

For all Work Products delivered to **CITY** that are not originated or prepared by **CONTRACTOR** or its Subcontractors under this Contract, **CONTRACTOR** shall secure a grant, at no cost to **CITY**, for a non-exclusive perpetual license to use such Work Products for any **CITY** purposes.

**CONTRACTOR** shall not provide or disclose any Work Product to any third party without prior written consent of **CITY**.

Any subcontract entered into by **CONTRACTOR** relating to this Contract shall include this provision to contractually bind its Subcontractors performing work under this Contract such that **CITY'S** ownership and license rights of all Work Products are preserved and protected as intended herein.

**PSC-22.** Data Protection

    A.    **CONTRACTOR** shall protect, using the most secure means and technology that is commercially available, **CITY**-provided data or consumer-provided data acquired in the course and scope of this Contract, including but not limited to customer lists and customer credit card or consumer data, (collectively, the "City Data"). **CONTRACTOR** shall notify **CITY** in writing as soon as reasonably feasible, and in any event within twenty-four hours, of **CONTRACTOR'S** discovery or reasonable belief of any unauthorized access of City Data (a "Data Breach"), or of any incident affecting, or potentially affecting City Data related to cyber security (a "Security Incident"), including, but not limited to, denial of service attack, and system outage, instability or degradation due to computer malware or virus. **CONTRACTOR** shall begin remediation immediately. **CONTRACTOR** shall provide daily updates, or more frequently if required by **CITY**, regarding findings and actions performed by **CONTRACTOR** until the Data Breach or Security Incident has been effectively resolved to **CITY'S** satisfaction. **CONTRACTOR** shall conduct an investigation of the Data Breach or Security Incident and shall share the report of the investigation with **CITY**. At **CITY'S** sole discretion, **CITY** and its authorized agents shall have the right to lead or participate in the investigation. **CONTRACTOR** shall cooperate fully with **CITY**, its agents and law enforcement.

    B.    If **CITY** is subject to liability for any Data Breach or Security Incident, then **CONTRACTOR** shall fully indemnify and hold harmless **CITY** and defend against any resulting actions.

**PSC-23.** Insurance

During the term of this Contract and without limiting **CONTRACTOR'S** obligation to indemnify, hold harmless and defend **CITY**, **CONTRACTOR** shall provide and maintain at its own expense a program of insurance having the coverages and limits not less than the required amounts and types as determined by the Office of the City Administrative Officer of Los Angeles, Risk Management (template Form General 146 in Exhibit 1 hereto). The insurance must: (1) conform to **CITY'S** requirements; (2) comply with the Insurance Contractual Requirements (Form General 133 in Exhibit 1 hereto); and (3) otherwise be in a form acceptable to the Office of the City Administrative Officer, Risk Management. **CONTRACTOR** shall comply with all Insurance Contractual Requirements shown on Exhibit 1 hereto. Exhibit 1 is hereby incorporated by reference and made a part of this Contract.

**PSC-24.** Best Terms

Throughout the term of this Contract, **CONTRACTOR**, shall offer **CITY** the best terms, prices, and discounts that are offered to any of **CONTRACTOR'S** customers for similar goods and services provided under this Contract.

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**    9    **ATTACHMENT A**

Ex. 6, Page 96

**PSC-25.** Warranty and Responsibility of Contractor

**CONTRACTOR** warrants that the work performed hereunder shall be completed in a manner consistent with professional standards practiced among those firms within **CONTRACTOR'S** profession, doing the same or similar work under the same or similar circumstances.

**PSC-26.** Mandatory Provisions Pertaining to Non-Discrimination in Employment

Unless otherwise exempt, this Contract is subject to the applicable non-discrimination, equal benefits, equal employment practices, and affirmative action program provisions in LAAC Section 10.8 et seq., as amended from time to time.

A.   **CONTRACTOR** shall comply with the applicable non-discrimination and affirmative action provisions of the laws of the United States of America, the State of California, and **CITY**. In performing this Contract, **CONTRACTOR** shall not discriminate in any of its hiring or employment practices against any employee or applicant for employment because of such person's race, color, religion, national origin, ancestry, sex, sexual orientation, gender, gender identity, age, disability, domestic partner status, marital status or medical condition.

B.   The requirements of Section 10.8.2.1 of the LAAC, the Equal Benefits Ordinance, and the provisions of Section 10.8.2.1(f) are incorporated and made a part of this Contract by reference.

C.   The provisions of Section 10.8.3 of the LAAC are incorporated and made a part of this Contract by reference and will be known as the "Equal Employment Practices" provisions of this Contract.

D.   The provisions of Section 10.8.4 of the LAAC are incorporated and made a part of this Contract by reference and will be known as the "Affirmative Action Program" provisions of this Contract.

Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-27.**   Child Support AssignmentOrders

**CONTRACTOR** shall comply with the Child Support Assignment Orders Ordinance, Section 10.10 of the LAAC, as amended from time to time. Pursuant to Section 10.10(b) of the LAAC, **CONTRACTOR** shall fully comply with all applicable State and Federal employment reporting requirements. Failure of **CONTRACTOR** to comply with all applicable reporting requirements or to implement lawfully served Wage and Earnings Assignment or Notices of Assignment, or the failure of any principal owner(s) of **CONTRACTOR** to comply with any Wage and Earnings Assignment or Notices of Assignment applicable to them personally, shall constitute a default by the **CONTRACTOR** under this Contract. Failure of **CONTRACTOR** or principal owner to cure

the default within 90 days of the notice of default will subject this Contract to termination for breach. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-28.** Living Wage Ordinance

**CONTRACTOR** shall comply with the Living Wage Ordinance, LAAC Section 10.37 *et seq.*, as amended from time to time. **CONTRACTOR** further agrees that it shall comply with federal law proscribing retaliation for union organizing. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-29.** Service Contractor Worker Retention Ordinance

**CONTRACTOR** shall comply with the Service Contractor Worker Retention Ordinance, LAAC Section 10.36 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-30.** Access and Accommodations

**CONTRACTOR** represents and certifies that:

A.    **CONTRACTOR** shall comply with the Americans with Disabilities Act, as amended, 42 U.S.C. Section 12101 et seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. Section 701 et seq., the Fair Housing Act, and its implementing regulations and any subsequent amendments, and California Government Code Section 11135;

B.    **CONTRACTOR** shall not discriminate on the basis of disability or on the basis of a person's relationship to, or association with, a person who has a disability;

C.    **CONTRACTOR** shall provide reasonable accommodation upon request to ensure equal access to **CITY**-funded programs, services and activities;

D.    Construction will be performed in accordance with the Uniform Federal Accessibility Standards (UFAS), 24 C.F.R. Part 40; and

E.    The buildings and facilities used to provide services under this Contract are in compliance with the federal and state standards for accessibility as set forth in the 2010 ADA Standards, California Title 24, Chapter 11, or other applicable federal and state law.

**CONTRACTOR** understands that **CITY** is relying upon these certifications and representations as a condition to funding this Contract. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**STANDARD PROVISIONS**
**FOR CITY CONTRACTS (Rev. 1/25 [v.2])**        11        **ATTACHMENT A**

Ex. 6, Page 98

**PSC-31.** Contractor Responsibility Ordinance

**CONTRACTOR** shall comply with the Contractor Responsibility Ordinance, LAAC Section 10.40 *et seq.*, as amended from time to time.

**PSC-32.** Business Inclusion Program

Unless otherwise exempted prior to bid submission, **CONTRACTOR** shall comply with all aspects of the Business Inclusion Program as described in the Request for Proposal/Qualification process, throughout the duration of this Contract. **CONTRACTOR** shall utilize the Regional Alliance Marketplace for Procurement ("RAMP") at https://www.rampla.org/s/, to perform and document outreach to Minority, Women, and Other Business Enterprises. **CONTRACTOR** shall perform subcontractor outreach activities through RAMP. **CONTRACTOR** shall not change any of its designated Subcontractors or pledged specific items of work to be performed by these Subcontractors, nor shall **CONTRACTOR** reduce their level of effort, without prior written approval of **CITY**.

**PSC-33.** Slavery Disclosure Ordinance

**CONTRACTOR** shall comply with the Slavery Disclosure Ordinance, LAAC Section 10.41 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-34.** First Source Hiring Ordinance

**CONTRACTOR** shall comply with the First Source Hiring Ordinance, LAAC Section 10.44 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-35.** Local Business Preference Ordinance

**CONTRACTOR** shall comply with the Local Business Preference Ordinance, LAAC Section 10.47 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-36.** Iran Contracting Act

In accordance with California Public Contract Code Sections 2200-2208, all contractors entering into, or renewing contracts with **CITY** for goods and services estimated at $1,000,000 or more are required to complete, sign, and submit the "Iran Contracting Act of 2010 Compliance Affidavit."

**PSC-37.** Restrictions on Campaign Contributions and Fundraising in City Elections

Unless otherwise exempt, if this Contract is valued at $100,000 or more and requires approval by an elected **CITY** office, **CONTRACTOR**, **CONTRACTOR'S** principals, and **CONTRACTOR'S** Subcontractors expected to receive at least $100,000 for performance

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**          **12**                              **ATTACHMENT A**
Ex. 6, Page 99

under the Contract, and the principals of those Subcontractors (the "Restricted Persons") shall comply with Charter Section 470(c)(12) and LAMC Section 49.7.35. Failure to comply entitles **CITY** to terminate this Contract and to pursue all available legal remedies. Charter Section 470(c)(12) and LAMC Section 49.7.35 limit the ability of the Restricted Persons to make campaign contributions to and engage in fundraising for certain elected **CITY** officials or candidates for elected **CITY** office for twelve months after this Contract is signed. Additionally, a **CONTRACTOR** subject to Charter Section 470(c)(12) is required to comply with disclosure requirements by submitting a completed and signed Ethics Commission Form 55 and to amend the information in that form as specified by law. Any **CONTRACTOR** subject to Charter Section 470(c)(12) shall include the following notice in any contract with any Subcontractor expected to receive at least $100,000 for performance under this Contract:

> "Notice Regarding Restrictions on Campaign Contributions and Fundraising in City Elections
>
> You are a subcontractor on City of Los Angeles Contract # _____. Pursuant to the City of Los Angeles Charter Section 470(c)(12) and related ordinances, you and your principals are prohibited from making campaign contributions to and fundraising for certain elected City of Los Angeles ("**CITY**") officials and candidates for elected **CITY** office for twelve months after the **CITY** contract is signed. You are required to provide the names and contact information of your principals to the **CONTRACTOR** and to amend that information within ten business days if it changes during the twelve month time period. Failure to comply may result in termination of this Contract and any other available legal remedies. Information about the restrictions may be found online at ethics.lacity.org or by calling the Los Angeles City Ethics Commission at (213) 978-1960."

**PSC-38.**    Contractors' Use of Criminal History for Consideration of Employment Applications

**CONTRACTOR** shall comply with the City Contractors' Use of Criminal History for Consideration of Employment Applications Ordinance, LAAC Section 10.48 *et seq*., as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-39.** Limitation of City's Obligation to Make Payment to Contractor

Notwithstanding any other provision of this Contract, including any exhibits or attachments incorporated therein, and in order for **CITY** to comply with its governing legal requirements, **CITY** shall have no obligation to make any payments to **CONTRACTOR** unless **CITY** shall have first made an appropriation of funds equal to or in excess of its obligation to make any payments as provided in this Contract. **CONTRACTOR** agrees that any services provided by **CONTRACTOR**, purchases made by **CONTRACTOR** or expenses incurred by **CONTRACTOR** in excess of the appropriation(s) shall be free and without charge to **CITY** and **CITY** shall have no obligation to pay for the services, purchases or expenses. **CONTRACTOR** shall have no obligation to provide any services,

provide any equipment or incur any expenses in excess of the appropriated amount(s) until **CITY** appropriates additional funds for this Contract.

**PSC-40.** <u>Compliance with Identity Theft Laws and Payment Card Data Security Standards</u>

**CONTRACTOR** shall comply with all identity theft laws including without limitation, laws related to: (1) payment devices; (2) credit and debit card fraud; and (3) the Fair and Accurate Credit Transactions Act ("FACTA"), including its requirement relating to the content of transaction receipts provided to Customers. **CONTRACTOR** also shall comply with all requirements related to maintaining compliance with Payment Card Industry Data Security Standards ("PCI DSS"). During the performance of any service to install, program or update payment devices equipped to conduct credit or debit card transactions, including PCI DSS services, **CONTRACTOR** shall verify proper truncation of receipts in compliance with FACTA.

**PSC-41.** <u>Compliance with California Public Resources Code Section 5164</u>

California Public Resources Code Section 5164 prohibits a public agency from hiring a person for employment or as a volunteer to perform services at any park, playground, or community center used for recreational purposes in a position that has supervisory or disciplinary authority over any minor, if the person has been convicted of certain crimes as referenced in the Penal Code, and articulated in California Public Resources Code Section 5164(a)(2).

If applicable, **CONTRACTOR** shall comply with California Public Resources Code Section 5164, and shall additionally adhere to all rules and regulations that have been adopted or that may be adopted by **CITY**. **CONTRACTOR** is required to have all employees, volunteers and Subcontractors (including all employees and volunteers of any Subcontractor) of **CONTRACTOR** working on premises to pass a fingerprint and background check through the California Department of Justice at **CONTRACTOR'S** sole expense, indicating that such individuals have never been convicted of certain crimes as referenced in the Penal Code and articulated in California Public Resources Code Section 5164(a)(2), if the individual will have supervisory or disciplinary authority over any minor.

**PSC-42.** <u>Possessory Interests Tax</u>

Rights granted to **CONTRACTOR** by **CITY** may create a possessory interest. **CONTRACTOR** agrees that any possessory interest created may be subject to California Revenue and Taxation Code Section 107.6 and a property tax may be levied on that possessory interest. If applicable, **CONTRACTOR** shall pay the property tax. **CONTRACTOR** acknowledges that the notice required under California Revenue and Taxation Code Section 107.6 has been provided.

**PSC-43.** <u>Confidentiality</u>

All documents, information, City Data (as that term is defined in PSC-22), and materials provided to **CONTRACTOR** by **CITY** or developed by **CONTRACTOR** pursuant to this Contract (collectively "Confidential Information") are confidential. **CONTRACTOR** shall not provide, and shall prohibit its employees and subcontractors from providing or disclosing, any Confidential Information or their contents or any information therein either orally or in writing, to any person or entity, except as authorized by **CITY** or as required by law. **CONTRACTOR** shall immediately notify **CITY** of any attempt by a third party to obtain access to any Confidential Information. This provision will survive expiration or termination of this Contract.

**PSC-44**. <u>Contractor Data Reporting</u>

If Contractor is a for-profit, privately owned business, Contractor shall, within 30 days of the effective date of the Contract and on an annual basis thereafter (i.e., within 30 days of the annual anniversary of the effective date of the Contract), report the following information to City via the Regional Alliance Marketplace for Procurement ("RAMP") or via another method specified by City: Contractor's and any Subcontractor's annual revenue, number of employees, location, industry, race/ethnicity and gender of majority owner ("Contractor/Subcontractor  Information"). Contractor shall further request, on an annual basis, that any Subcontractor input or update its business profile, including the Contractor/Subcontractor Information, on RAMP or via another method prescribed by City.

Form Gen. 133 (Rev.10/17)

## EXHIBIT 1

### INSURANCE CONTRACTUAL REQUIREMENTS

**CONTACT** For additional information about compliance with City Insurance and Bond requirements, contact the Office of the City Administrative Officer, Risk Management at (213) 978-RISK (7475) or go online at www.lacity.org/cao/risk. The City approved Bond Assistance Program is available for those contractors who are unable to obtain the City-required performance bonds. A City approved insurance program may be available as a low-cost alternative for contractors who are unable to obtain City-required insurance.

**CONTRACTUAL REQUIREMENTS**

CONTRACTOR AGREES THAT:

**1.   Additional Insured/Loss Payee.** The CITY must be included as an Additional Insured in applicable liability policies to cover the CITY'S liability arising out of the acts or omissions of the named insured. The CITY is to be named as an Additional Named Insured and a Loss Payee As Its Interests May Appear in property insurance in which the CITY has an interest, e.g., as a lien holder.

**2.   Notice of Cancellation.** All required insurance will be maintained in full force for the duration of its business with the CITY. By ordinance, all required insurance must provide at least thirty (30) days' prior written notice (ten (10) days for non-payment of premium) directly to the CITY if your insurance company elects to cancel or materially reduce coverage or limits prior to the policy expiration date, for any reason except impairment of an aggregate limit due to prior claims.

**3.   Primary Coverage.** CONTRACTOR will provide coverage that is primary with respect to any insurance or self-insurance of the CITY. The CITY'S program shall be excess of this insurance and non-contributing.

**4.   Modification of Coverage.** The CITY reserves the right at any time during the term of this Contract to change the amounts and types of insurance required hereunder by giving CONTRACTOR ninety (90) days' advance written notice of such change. If such change should result in substantial additional cost to CONTRACTOR, the CITY agrees to negotiate additional compensation proportional to the increased benefit to the CITY.

**5.   Failure to Procure Insurance.** All required insurance must be submitted and approved by the Office of the City Administrative Officer, Risk Management prior to the inception of any operations by CONTRACTOR.

CONTRACTOR'S failure to procure or maintain required insurance or a self-insurance program during the entire term of this Contract shall constitute a material breach of this Contract under which the CITY may immediately suspend or terminate this Contract or, at its discretion, procure or renew such insurance to protect the CITY'S interests and pay any and all premiums in connection therewith and recover all monies so paid from CONTRACTOR.

**6.  Workers' Compensation.** By signing this Contract, CONTRACTOR hereby certifies that it is aware of the provisions of Section 3700 *et seq*., of the California Labor Code which require every employer to be insured against liability for Workers' Compensation or to undertake

**STANDARD PROVISIONS**
**FOR CITY CONTRACTS (Rev. 1/25 [v.2])**

1

**ATTACHMENT A**

Ex. 6, Page 103

Form Gen. 133 (Rev. 10/17)

self-insurance in accordance with the provisions of that Code, and that it will comply with such provisions at all time during the performance of the work pursuant to this Contract.

**7. California Licensee.** All insurance must be provided by an insurer <u>admitted</u> to do business in California or written through a California-licensed surplus lines broker or through an insurer otherwise acceptable to the CITY. Non-admitted coverage must contain a **Service of Suit** clause in which the underwriters agree to submit as necessary to the jurisdiction of a California court in the event of a coverage dispute. Service of process for this purpose must be allowed upon an agent in California designated by the insurer or upon the California Insurance Commissioner.

**8. Aggregate Limits/Impairment.** If any of the required insurance coverages contain annual aggregate limits, CONTRACTOR must give the CITY written notice of any pending claim or lawsuit which will materially diminish the aggregate within thirty (30) days of knowledge of same. You must take appropriate steps to restore the impaired aggregates or provide replacement insurance protection within thirty (30) days of knowledge of same. The CITY has the option to specify the minimum acceptable aggregate limit for each line of coverage required. No substantial reductions in scope of coverage which may affect the CITY'S protection are allowed without the CITY'S prior written consent.

**9. Commencement of Work.** For purposes of insurance coverage only, this Contract will be deemed to have been executed immediately upon any party hereto taking any steps that can be considered to be in furtherance of or towards performance of this Contract. The requirements in this Section supersede all other sections and provisions of this Contract, including, but not limited to, PSC-3, to the extent that any other section or provision conflicts with or impairs the provisions of this Section.

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**      1      **ATTACHMENT A**

Ex. 6, Page 104

Form Gen. 146 (Rev. 6/12)

# Required Insurance and Minimum Limits

Name: _____    Date: _____

Agreement/Reference: _____

Evidence of coverages checked below, with the specified minimum limits, must be submitted and approved prior to occupancy/start of operations. Amounts shown are Combined Single Limits ("CSLs"). For Automobile Liability, split limits may be substituted for a CSL if the total per occurrence equals or exceeds the CSL amount.

**Limits**

___ **Workers' Compensation (WC) and Employer's Liability (EL)**

☐ Waiver of Subrogation in favor of City            ☐ Longshore & Harbor Workers            WC
                                                    ☐ Jones Act                             _____ *Statutory*

                                                                                            EL _____

___ **General Liability** _____            ___ _____

☐ Products/Completed Operations            ☐
☐ Fire Legal Liability _____            Sexual Misconduct _____
☐

___ **Automobile Liability** (for any and all vehicles used for this contract, other than commuting to/from work)            _____

___ **Professional Liability** (Errors and Omissions)            _____

Discovery Period _____

___ **Property Insurance** (to cover replacement cost of building - as determined by insurance company)            _____

☐ All Risk Coverage            ☐ Boiler and Machinery
☐ Flood _____            ☐ Builder's Risk
☐ Earthquake _____            ☐ _____

___ **Pollution Liability**            _____

☐ _____

___ **Surety Bonds -** Performance and Payment (Labor and Materials) Bonds            _____
___ **Crime Insurance**            _____

**Other:** _____
_____
_____

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**            1            Ex. 6, Page 105

**EXHIBIT B**

**Hourly Rates for Gibson Dunn**

A.    The specific hourly rates for each authorized timekeeper shall not exceed the following during calendar year 2025:

| Authorized Timekeeper | Title | Standard Hourly Rate | Discounted Hourly Rate |
|---|---|---|---|
| Theane Evangelis | Lead Partner | $2,425 | $1,295 |
| Marcellus McRae | Partner | $2,245 | $1,295 |
| Kahn Scolnick | Partner | $2,190 | $1,295 |
| Bradley Hamburger | Partner | $2,110 | $1,295 |
| Senior Associate (7th+ Year) | Associate | $1,555 | $1,295 |
| Mid-Level Associate (4th-6th Year) | Associate | $1,415 | $1,295 |
| Junior Associate (1st -3rd Year) | Associate | $945 - $1,220 | $1,295 |

B.    The hourly rate for each timekeeper category shall not exceed the following:

| Title | Standard Hourly Rate | Discounted Hourly Rate |
|---|---|---|
| Partners | $2,650 | $1,295 |
| Of Counsel | $1,675 | $1,295 |
| Associates | $1,555 | $1,295 |
| Paralegals | $820 | $550 |

109082941.3

23

Ex. 6, Page 106

# EXHIBIT 6

THEODORE J. BOUTROUS JR., SBN 132099
   tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
   tevangelis@gibsondunn.com
NATHANIEL L. BACH, SBN 246518
   nbach@gibsondunn.com
MARISSA B. MOSHELL, SBN 319734
   mmoshell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

SCOTT A. EDELMAN, SBN 116927
   sedelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone:  310.552.8500
Facsimile:   310.551.8741

Attorneys for Defendants Rachel Maddow,
MSNBC Cable L.L.C., NBCUniversal Media,
LLC, and Comcast Corporation

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC., | CASE NO. 19-cv-1713-BAS-AHG |
| Plaintiff, | **DECLARATION OF SCOTT A. EDELMAN IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS** (Cal. Civ. Proc. Code § 425.16(c)(1)) |
| v. | |
| RACHEL MADDOW; COMCAST CORPORATION; NBCUNIVERSAL MEDIA, LLC; and MSNBC CABLE L.L.C., | **COURT TO ISSUE BRIEFING SCHEDULE AND HEARING DATE** |
| Defendants. | Action Filed:  September 9, 2019 |
| | Judge:  Hon. Cynthia Bashant Magistrate Judge: Hon. Allison Goddard Courtroom 3B |

Gibson, Dunn &
Crutcher LLP

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

I, Scott A. Edelman, declare as follows:

1.    I am an attorney at law licensed to practice in the State of California.  I am a partner at Gibson, Dunn & Crutcher LLP ("Gibson Dunn") and counsel of record for Defendants Rachel Maddow, Comcast Corporation, NBCUniversal Media, LLC, and MSNBC Cable L.L.C. ("Defendants").  I am one of the supervising partners in charge of the work performed on this case by the attorneys and other professionals at Gibson Dunn.

2.    I submit this declaration in support of Defendants' Motion for Attorneys' Fees and Costs pursuant to California Code of Civil Procedure section 425.16(c)(1).  All statements in this declaration are based upon my personal knowledge and, if called upon to testify, I could and would testify to the facts set forth herein.

**Gibson Dunn's Retention and Efforts Defending This Case**

3.    On September 9, 2019, Plaintiff Herring Networks, Inc. filed a Complaint for defamation in the United States District Court for the Southern District of California.

4.    Gibson Dunn was retained soon thereafter, and we assembled a team of attorneys experienced in First Amendment jurisprudence, defamation actions, and anti-SLAPP practice.  This team included the following individuals:

· Theodore J. Boutrous, Jr., a partner at Gibson Dunn (a true and correct copy of Mr. Boutrous' biography, showing his credentials and experience, is attached hereto as **Exhibit A**);

· Myself, Scott A. Edelman, a partner at Gibson Dunn (a true and correct copy of my biography, showing my credentials and experience, is attached hereto as **Exhibit B**);

· Nathaniel L. Bach, a senior associate at Gibson Dunn (a true and correct copy of Mr. Bach's biography, showing his credentials and experience, is attached hereto as **Exhibit C**);

Gibson, Dunn &
Crutcher LLP

1

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 111 of 501
Page ID #:3078
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.328   Page 3 of 27

· Marissa B. Moshell, a mid-level associate at Gibson Dunn (a true and correct copy of Ms. Moshell's biography, showing her credentials and experience, is attached hereto as **Exhibit D**); and

· Daniel M. Rubin, a mid-level associate at Gibson Dunn (a true and correct copy of Mr. Rubin's biography, showing his credentials and experience, is attached hereto as **Exhibit E**).

5.      I believe all of the aforementioned attorneys were both necessary and reasonable for the litigation of Defendants' successful Motion to Strike and, based on my experience, I believe that Gibson Dunn staffed and litigated this case in a reasonable, efficient, and appropriate manner.

6.      Once our team was assembled, Defendants' counsel determined the best method for defeating Plaintiff's Complaint was to file a Special Motion to Strike under California Code of Civil Procedure section 425.16.

7.      I communicated our intention of filing an anti-SLAPP motion to Amnon Z. Siegel of Miller Barondess LLP, counsel for Plaintiff, on September 25, 2019.  Mr. Siegel would not agree to dismiss the Complaint.  Mr. Siegel informed me that he still wanted to move forward with discovery, which he felt was permissible at that phase of the proceedings.  As such, I had my team research the permissibility of discovery when defendants file a motion to strike based solely on the complaint and judicially noticeable materials (akin to a Rule 12(b)(6) motion to dismiss), as opposed to factual grounds.  The parties met and conferred on this issue, but did not reach agreement on the permissibility of discovery.  At no point during the meet and confer process, or anytime thereafter, did Plaintiff offer to dismiss its claim.

8.      Substantial efforts went into the preparation of this dispositive motion. Gibson Dunn attorneys researched the legal doctrine of protected opinion, which requires a totality of the circumstances test in which numerous factors may be considered, requiring significant research.  Defendants' counsel also researched the case law surrounding substantially true speech.  Further, given that Plaintiff brought its

Complaint in federal district court, Gibson Dunn attorneys needed to research the interplay between California's state anti-SLAPP statute and federal procedural law. Gibson Dunn attorneys also spent time analyzing the segment of *The Rachel Maddow Show* that was at the center of Plaintiff's lawsuit.

9.   Defendants filed their Special Motion to Strike on October 21, 2019.

10.   Defendants received Plaintiff's Opposition to their Motion to Strike on December 2, 2019.  The Opposition included three declarations, one of which was from an alleged linguistics expert, Professor Stefan Th. Gries.  Professor Gries submitted a report with 17 single-spaced pages of analysis concerning Rachel Maddow's statement.

11.   Gibson Dunn did not hire an expert to rebut Professor Gries' expert report.  Defendants' counsel understood that evidentiary submissions of this sort were improper at this stage of the proceedings, and chose not to waste time and resources retaining an expert to work on a report that should not be considered.  Plaintiff's improper submission did, however, compel Defendants to research the impropriety of evidentiary submissions in the context of a special motion to strike submitted on a legal basis only.  Defendants' counsel also conducted further research to respond to Plaintiff's other arguments.

12.   Defendants filed their reply brief on December 9, 2019.

13.   The next day, Mr. Siegel contacted Defendants' counsel and informed Defendants of his plan to file an *Ex Parte* Application to Supplement the Record.  Mr. Siegel wanted to submit new *evidence* of a December 9, 2019 episode of *Hardball* with Chris Matthews.  Defendants' counsel again told Mr. Siegel that evidentiary submissions were improper at this stage, and that the video was irrelevant.  Plaintiff nonetheless filed its *Ex Parte* Application on December 11, 2019.

14.   As a result of Plaintiff's *Ex Parte* Application, Defendants' counsel was forced to undertake even further research and briefing to oppose the Application. Defendants filed their Opposition on December 13, 2019.

3
EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Ex. 6, Page 111

15.    The Court scheduled an oral argument on Defendants' Motion to Strike and Plaintiff's *Ex Parte* Application to Supplement the Record.  Defendants' counsel spent significant time preparing for the hearing, re-reading nearly thirty cases cited across the briefing, and drafting case summaries and oral argument outlines. Defendants' counsel also reviewed *The Rachel Maddow Show* segment and *The Daily Beast* article on which it was based.  This effort was undoubtedly made more time intensive due to Plaintiff's *Ex Parte* Application to Supplement the Record.

16.    The Court heard telephonic oral argument on May 19, 2020, and issued an Order granting Defendants' Special Motion to Strike on May 22, 2020.  A true and correct copy of the transcript of the hearing on Defendants' Special Motion to Strike is attached hereto as **Exhibit F**.

## **Gibson Dunn's Fees**

17.    Gibson Dunn was retained on a modified contingency fee basis—NBCU agreed to pay Defendants' counsel a rate of $100,000 for the filing and argument on the Anti-SLAPP Motion.  NBCU further agreed that, if they were successful on the Anti-SLAPP Motion and recovered from Plaintiff, they would pay Gibson Dunn any difference between the $100,00 and the fees actually incurred by counsel.

18.    At the time Gibson Dunn was retained in 2019, our standard hourly rates were as follows:

| Timekeeper | Standard 2019 Rate/Hour |
|---|---|
| Theodore J. Boutrous, Jr. (Partner) | $1,450 |
| Scott A. Edelman (Partner) | $1,335 |
| Nathaniel L. Bach (Senior Associate) | $915 |
| Marissa B. Moshell (Mid-Level Associate) | $625 |
| Daniel M. Rubin (Mid-Level Associate) | $625 |
| Lolita C. Gadberry | $460 |

| | |
|---|---|
| (Paralegal) | |
| Erin E. Kurinsky (Researcher) | $270 |
| Carla H. Jones (Researcher) | $270 |

19.    Starting in January 2020, our standard hourly rates were as follows:

| Timekeeper | Standard 2020 Rate/Hour |
|---|---|
| Theodore J. Boutrous, Jr. (Partner) | $1,525 |
| Scott A. Edelman (Partner) | $1,395 |
| Nathaniel L. Bach (Senior Associate) | $960 |
| Marissa B. Moshell (Mid-Level Associate) | $740 |
| Lolita C. Gadberry (Paralegal) | $480 |
| Duke K. Amponsah (Paralegal) | $480 |

20.    Based on my reading of the relevant case law, fee applications submitted in other district courts in California, and my overall familiarity with rates charged by my firm's competitors, it is my understanding that these rates are comparable to the rates charged by peer firms and attorneys with similar skill and experience.

·    Attached hereto as **Exhibit G** is a true and correct copy of an April 2020 fee application submitted in bankruptcy court in the northern district of California, which reflects hourly billing rates for litigation partners and associates from Weil, Gotshal & Manges LLP charged in 2019 and 2020. This fee application shows that Weil charged rates up to $1,325 per hour for litigation partners, and between $595 and $1,050 for litigation associates. Ex. G at 7-9.

Gibson, Dunn &
Crutcher LLP

5

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 115 of 501
Page ID #:3082
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.332   Page 7 of 27

· Attached hereto as **Exhibit H** is a true and correct copy of an excerpt from the Public Rates Report issued by Thomson Reuters on January 14, 2020. The Thomson Reuters report shows the rates charged by attorneys for matters in various jurisdictions, including the northern and central districts of California. Exhibit H excerpts those entries pertaining to any district of California entries on the report. The report shows that, in 2019, senior attorneys were charging up to $1,145 per hour for work performed in the northern district of California. Ex. H at 2.

· Attached hereto as **Exhibit I** is a true and correct copy of an excerpt from the Public Rates Report issued by Thomson Reuters in September 2018. The Thomson Reuters report shows the rates charged by attorneys for matters in various jurisdictions, including California districts, from 2006 to 2015. Exhibit I excerpts those entries pertaining to any district of California entries on the report. The report shows that as early as 2012, eight years ago, senior attorneys were charging upwards of $800 per hour in the southern district of California. Ex. I at 257. As early as 2013, seven years ago, certain senior attorneys were already charging over $1,000 per hour in the central district of California. *Id.* at 139.

21.    Gibson Dunn's hourly rates are also appropriate in light of the high degree of sophistication, experience, and excellence that Gibson Dunn attorneys bring to bear on their work (as demonstrated by the success in the present litigation).

22.    I have reviewed Gibson Dunn's timekeeping records for this case, and the time referenced in these records reflects the time actually worked in connection with this matter. I have become very familiar with such records and the processes by which the firm creates and maintains them. In the regular course of business, Gibson Dunn maintains records of time spent by individual attorneys and other professionals with respect to each client matter. In recording their timekeeping entries, attorneys at

Gibson, Dunn &
Crutcher LLP

6

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Ex. 6, Page 114

Gibson Dunn are required to specify the client and matter, the nature of the work performed, and the amount of time that they expend on a designated task(s).

23.   The work performed on this matter by the attorneys and other professionals at Gibson Dunn can be categorized as follows:

- · (1) reviewing and analyzing Plaintiff's Complaint and discussing initial strategy to defeat Plaintiff's defamation claim;
- · (2) researching and drafting the Anti-SLAPP Motion and supporting documents;
- · (3) reviewing and responding to Plaintiff's opposition brief, including Plaintiff's improper evidentiary submission;
- · (4) reviewing and responding to Plaintiff's *Ex Parte* Application to Supplement the Record;
- · (5) preparing for and attending the hearing on the Anti-SLAPP Motion and Plaintiff's *Ex Parte* Application to Supplement the Record; and
- · (6) researching and drafting the Attorneys' Fees Motion and supporting documents.

Set forth below are the details of the work completed by the Gibson Dunn attorneys and other professionals, divided by category, through the filing of this Motion for Attorneys' Fees and Costs.  This information is a true and accurate reflection of our timekeeping records of amounts incurred:

| Date | Time | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| **Reviewing and analyzing Plaintiff's Complaint and discussing initial strategy to defeat Plaintiff's defamation claim** | | | | |
| 9/23/2019 | 0.2 | $183 | Bach, Nathaniel L. | Call with S. Edelman re seeking extension of time to respond. |
| 9/23/2019 | 0.3 | $400.50 | Edelman, Scott A. | Address service of process. |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Ex. 6, Page 115

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 117 of 501
Page ID #:3084
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.334   Page 9 of 27

| Date | Hours | Amount | Attorney | Description |
|---|---|---|---|---|
| 9/25/2019 | 1.4 | $875 | Moshell, Marissa B. | Call with S. Edelman re response to Plaintiffs' counsel (.2); research for T. Boutrous (.2); draft response to Plaintiffs' counsel (1.0). |
| 9/25/2019 | 0.5 | $457.50 | Bach, Nathaniel L. | Telephone conference with client, T. Boutrous, S. Edelman, T. Evangelis re initial strategy. |
| 9/25/2019 | 1.6 | $2,320 | Boutrous Jr., Theodore J. | Analyzing issues, strategy, participate in strategy call with clients. |
| 9/25/2019 | 0.3 | $400.50 | Edelman, Scott A. | Review complaint, background. |
| 9/25/2019 | 0.5 | $667.50 | Edelman, Scott A. | Research in preparation for call with client. |
| 9/25/2019 | 0.6 | $801 | Edelman, Scott A. | Review correspondence from plaintiffs regarding Rule 26 meeting (.2); correspond with team regarding same (.2); telephone conference with M. Moshell regarding same (.1); update clients (.1). |
| 9/25/2019 | 0.4 | $534 | Edelman, Scott A. | Telephone conference with M. Moshell regarding extension of time to respond. |
| 9/26/2019 | 0.6 | $162 | Kurinsky, Erin E. | Research for M. Moshell. |
| 9/26/2019 | 0.2 | $267 | Edelman, Scott A. | Correspond with client. |
| 9/26/2019 | 0.6 | $801 | Edelman, Scott A. | Address time to respond to complaint with substituted service and email A. Siegel regarding extension. |
| 9/27/2019 | 1.4 | $875 | Moshell, Marissa B. | Draft stipulation and proposed order for extension of time to respond to Plaintiff's Complaint. |

8

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

| Date | Hours | Amount | Name | Description |
|---|---|---|---|---|
| 9/27/2019 | 0.6 | $801 | Edelman, Scott A. | Correspond with plaintiff's counsel regarding extension. |
| 9/30/2019 | 0.1 | $27 | Jones, Carla H. | Legal research for N. Bach. |
| 10/1/2019 | 0.8 | $500 | Moshell, Marissa B. | Draft corporate disclosure statement. |
| 10/1/2019 | 0.6 | $549 | Bach, Nathaniel L. | Emails with A. Jacobs re joint motion to extend time to respond to complaint (.4); email to M. Moshell re corporate disclosure statement (.2). |
| 10/2/2019 | 0.6 | $375 | Moshell, Marissa B. | Finalize stipulation and rule 7.1 statement for filing and file same. |
| 10/2/2019 | 0.7 | $640.50 | Bach, Nathaniel L. | Emails with client re joint stipulation to extend time to respond to complaint (.4); emails with A. Siegel re meet and confer (.3). |
| 10/07/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Begin preparing notices of appearance. |
| 10/08/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Prepare and file notices of appearance. |
| **Researching and drafting the Anti-SLAPP Motion and supporting documents** | | | | |
| 9/20/2019 | 0.4 | $366 | Bach, Nathaniel L. | Emails with T. Boutrous re anti-SLAPP timing. |
| 9/24/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Emails, calls with clients, analyzing issues for anti-SLAPP motion. |
| 9/24/2019 | 0.4 | $366 | Bach, Nathaniel L. | Emails with T. Boutrous re anti-SLAPP motion preparation. |
| 9/25/2019 | 0.8 | $1,068 | Edelman, Scott A. | Prepare for and conference call with clients regarding anti-SLAPP strategy. |
| 9/26/2019 | 2.6 | $1,625 | Moshell, Marissa B. | Calls with N. Bach and T. Boutrous re anti-SLAPP motion (.2); research federal |

9

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 119 of 501
Page ID #:3086
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.336   Page 11 of 27

| Date | Hours | Amount | Attorney | Description |
|---|---|---|---|---|
| | | | | court procedural question (1.0); research for anti-SLAPP motion (1.4). |
| 9/26/2019 | 2.6 | $2,379 | Bach, Nathaniel L. | Calls with T. Boutrous, S. Edelman, M. Moshell re anti-SLAPP brief (.2); research for and begin drafting anti-SLAPP motion to strike (2.4). |
| 9/27/2019 | 4.1 | $3,751.50 | Bach, Nathaniel L. | Research and draft outline for anti-SLAPP motion (3.6); review materials relevant to anti-SLAPP briefing (.4). |
| 9/28/2019 | 0.3 | $187.50 | Moshell, Marissa B. | Research for anti-SLAPP motion. |
| 9/29/2019 | 0.7 | $437.50 | Moshell, Marissa B. | Research for anti-SLAPP motion. |
| 10/1/2019 | 3 | $2,745 | Bach, Nathaniel L. | Research re anti-SLAPP motion to strike (2.2); prepare outline of same (.8). |
| 10/6/2019 | 2.4 | $2,196 | Bach, Nathaniel L. | Draft talking points for meet and confer call (1.2); review opinion standards re First Amendment (1.2). |
| 10/7/2019 | 4.3 | $2,687.50 | Moshell, Marissa B. | Research for anti-SLAPP motion (4.3). |
| 10/7/2019 | 2 | $1,830 | Bach, Nathaniel L. | Prepare for meet and confer with Plaintiff's counsel (.3); meet and confer call with A. Siegel re Anti-SLAPP motion (.4); emails with M. Moshell re research for anti-SLAPP motion (.5); review case law re same (.8). |
| 10/7/2019 | 1 | $1,335 | Edelman, Scott A. | Prepare for and meet and confer with plaintiff re Anti-SLAPP. |
| 10/8/2019 | 5.3 | $274.50 | Bach, Nathaniel L. | Research opinion cases for anti-SLAPP motion (3.0); |

10

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Ex. 6, Page 118

| Date | Hours | Amount | Timekeeper | Description |
|---|---|---|---|---|
| | | | | draft anti-SLAPP motion (2.3). |
| 10/8/2019 | 2.3 | $1,437.50 | Moshell, Marissa B. | Continue research for anti-SLAPP motion (2.3). |
| 10/9/2019 | 4.9 | $4,483.50 | Bach, Nathaniel L. | Drafting anti-SLAPP motion. |
| 10/10/2019 | 5.6 | $5,124 | Bach, Nathaniel L. | Working on anti-SLAPP special motion to strike. |
| 10/10/2019 | 1.5 | $2,175 | Boutrous Jr., Theodore J. | Reading key cases for anti-SLAPP motion. |
| 10/11/2019 | 2 | $2,900 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/11/2019 | 8 | $7,320 | Bach, Nathaniel L. | Drafting anti-SLAPP motion to strike (5.8); researching issues re same (2.2). |
| 10/12/2019 | 5 | $4,575 | Bach, Nathaniel L. | Working on draft of anti-SLAPP motion. |
| 10/13/2019 | 6.6 | $6,039 | Bach, Nathaniel L. | Emails with T. Boutrous re comments to Anti-SLAPP motion (.8); further revisions to same (5.8). |
| 10/13/2019 | 4 | $5,800 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/14/2019 | 7.7 | $7,045.50 | Bach, Nathaniel L. | Call with T. Boutrous, S. Edelman, T. Evangelis re anti-SLAPP brief (.5); further calls with T. Boutrous re same (.3); further revisions to brief (6.9). |
| 10/14/2019 | 1 | $1,335 | Edelman, Scott A. | Review anti-SLAPP brief (.5); team call re same (.5). |
| 10/14/2019 | 6 | $8,700 | Boutrous Jr., Theodore J. | Working on anti-SLAPP motion. |
| 10/15/2019 | 2.2 | $1,375 | Rubin, Daniel M. | Revise anti-SLAPP motion. |
| 10/15/2019 | 4.9 | $4,483.50 | Bach, Nathaniel L. | Implementing further edits, revisions to anti-SLAPP draft (3.5); emails and calls |

11
EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn &
Crutcher LLP

| Date | Hours | Amount | Timekeeper | Description |
|---|---|---|---|---|
| | | | | with T. Boutrous, S. Edelman, T. Evangelis re same (.5); emails with D. Rubin re supporting motion documents (.4); emails with T. Boutrous re upcoming client meeting (.5). |
| 10/15/2019 | 1 | $625 | Rubin, Daniel M. | Draft and revise notice of anti-SLAPP motion, request for judicial notice, and proposed order. |
| 10/15/2019 | 4.5 | $6,525 | Boutrous Jr., Theodore J. | Revising, editing anti-SLAPP motion. |
| 10/15/2019 | 2.9 | $3,871.50 | Edelman, Scott A. | Review draft anti-SLAPP Motion, edit same. |
| 10/16/2019 | 7.4 | $6,771 | Bach, Nathaniel L. | Review client comments on draft anti-SLAPP motion (.6); prepare for client meeting (.5); telephonic conference with S. Weiner, T. Hoff, A. Jacobs, T. Boutrous, S. Edelman re same (.6); further revisions to anti-SLAPP motion (5.7). |
| 10/16/2019 | 2.4 | $1,500 | Rubin, Daniel M. | Draft and revise materials in support of anti-SLAPP motion. |
| 10/16/2019 | 0.7 | $934.50 | Edelman, Scott A. | Telephone conference with clients regarding anti-SLAPP motion. |
| 10/16/2019 | 3 | $4,350 | Boutrous Jr., Theodore J. | Review client comments on anti-SLAPP motion, meet with clients, work on motion. |
| 10/17/2019 | 4.7 | $4,300.50 | Bach, Nathaniel L. | Further revisions to anti-SLAPP motion (3.0); emails with T. Boutrous, client re same (.5); review and revise supporting motion documents (RJN, proposed order, notice of motion, |

12

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn &
Crutcher LLP

Ex. 6, Page 120

| Date | Hours | Amount | Timekeeper | Description |
|---|---|---|---|---|
| | | | | notice of lodging) and send same to client (1.2). |
| 10/17/2019 | 0.2 | $125 | Rubin, Daniel M. | Revise materials in support of anti-SLAPP motion. |
| 10/17/2019 | 2.9 | $4,205 | Boutrous Jr., Theodore J. | Start-to-finish editing, revising of anti-SLAPP motion. |
| 10/18/2019 | 0.9 | $823.50 | Bach, Nathaniel L. | Call with A. Jacobs re anti-SLAPP brief (.1); review further edits to same (.5); emails with D. Rubin re upcoming filing and lodging (.3). |
| 10/18/2019 | 5.1 | $3,187.50 | Rubin, Daniel M. | Revise anti-SLAPP motion to strike Plaintiff's complaint. |
| 10/18/2019 | 0.6 | $375 | Rubin, Daniel M. | Confer with N. Bach re filing of anti-SLAPP motion. |
| 10/18/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Review clients' latest changes, review, revise anti-SLAPP brief. |
| 10/20/2019 | 2.1 | $1,921.50 | Bach, Nathaniel L. | Further revisions to anti-SLAPP motion, including cite check edits (2.0); email to client re putative final draft (.1). |
| 10/21/2019 | 4.2 | $2,625 | Rubin, Daniel M. | Final proof and cite check of anti-SLAPP motion to strike complaint and supporting materials. |
| 10/21/2019 | 3.6 | $3,294 | Bach, Nathaniel L. | Final review of anti-SLAPP motion, memorandum, request for judicial notice, notice of lodging, proposed order (2.7); emails with client re same (.4); emails and calls with D. Rubin re filing (.5). |
| 10/21/2019 | 0.9 | $562.50 | Rubin, Daniel M. | Confer with N. Bach re anti-SLAPP motion to |

13

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

| Date | Hours | Amount | Timekeeper | Description |
|---|---|---|---|---|
| | | | | strike and supporting documents. |
| 10/21/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Final revisions to anti-SLAPP motion papers before filing. |
| **Reviewing and responding to Plaintiff's opposition brief, including Plaintiff's improper evidentiary submission** | | | | |
| 12/2/2019 | 4.7 | $2,937.50 | Moshell, Marissa B. | Call with N. Bach re reply brief (.1); research for reply brief (.1); review and analyze moving and opposition papers on anti-SLAPP motion (2.4); begin drafting reply in support of anti-SLAPP motion (2.1). |
| 12/2/2019 | 2.5 | $2,287.50 | Bach, Nathaniel L. | Review opposition to motion to strike and supporting documents (.8); meet with M. Moshell re drafting reply brief (.2); emails with GDC team re reply brief (.3); draft talking points for reply brief (1.2). |
| 12/3/2019 | 1.2 | $1,098 | Bach, Nathaniel L. | Call with A. Jacobs, M. Moshell re reply brief (.5); meeting with M. Moshell re same (.2); reading Plaintiff's cases (.5). |
| 12/3/2019 | 12.1 | $7,562.50 | Moshell, Marissa B. | Call with client and N. Bach re reply brief (.5); meeting with N. Bach re reply brief (.2); draft reply brief (11.4). |
| 12/3/2019 | 2.2 | $1,012 | Gadberry, Lolita C. | Review opposition brief and download cases and statutes cited in same (1.5); organize cases and statutes and forward zip file of same to M. Moshell (.7). |

14
EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Ex. 6, Page 122

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 124 of 501
Page ID #:3091
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.341   Page 16 of 27

| 12/4/2019 | 3.5 | $2,187.50 | Moshell, Marissa B. | Continue drafting reply brief (3.2); correspond with N. Bach re reply brief (.3). |
|---|---|---|---|---|
| 12/4/2019 | 8.6 | $7,869 | Bach, Nathaniel L. | Working on draft of reply in support of motion to strike. |
| 12/5/2019 | 1 | $460 | Gadberry, Lolita C. | Assist N. Bach with organization and printing of case files for T. Boutrous. |
| 12/5/2019 | 5.5 | $5,032.50 | Bach, Nathaniel L. | Revising reply in support of anti-SLAPP motion. |
| 12/5/2019 | 1 | $1,450 | Boutrous Jr., Theodore J. | Work on anti-SLAPP reply. |
| 12/6/2019 | 1.7 | $1,555.50 | Bach, Nathaniel L. | Revisions to reply brief in support of motion to strike. |
| 12/6/2019 | 0.4 | $250 | Moshell, Marissa B. | Research availability of stay of discovery pending appeal of an anti-SLAPP order. |
| 12/7/2019 | 0.7 | $437.50 | Moshell, Marissa B. | Research stays of discovery on appeal from an anti-SLAPP order. |
| 12/7/2019 | 0.8 | $732 | Bach, Nathaniel L. | Draft email memorandum to T. Boutrous re discovery stay on appeal from an anti-SLAPP order. |
| 12/7/2019 | 3.5 | $3,202.50 | Bach, Nathaniel L. | Revising reply brief in support of motion to dismiss. |
| 12/7/2019 | 1.2 | $1,740 | Boutrous Jr., Theodore J. | Work on anti-SLAPP reply. |
| 12/8/2019 | 1.5 | $1,372.50 | Bach, Nathaniel L. | Further revisions to reply in support of anti-SLAPP motion (1.0); emails with T. Boutrous, S. Weiner re discovery stay (.5). |
| 12/9/2019 | 2.8 | $1,750 | Moshell, Marissa B. | Revise and cite check reply in support of anti-SLAPP motion (2.5); file reply in support of anti-SLAPP motion (.3). |

Gibson, Dunn & Crutcher LLP

15
EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Ex. 6, Page 123

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 125 of 501
Page ID #:3092
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.342   Page 17 of 27

| 12/9/2019 | 3.5 | $3,202.50 | Bach, Nathaniel L. | Final revisions to reply in support of motion to strike (2.0); emails with C. O'Hagan, S. Weiner, M. Moshell re same (.5); final proofs of motion before filing (1.0). |
| 12/9/2019 | 0.5 | $725 | Boutrous Jr., Theodore J. | Final review of anti-SLAPP reply. |
| **Reviewing and responding to Plaintiff's *Ex Parte* Application to Supplement the Record** | | | | |
| 12/10/2019 | 0.9 | $823.50 | Bach, Nathaniel L. | Emails with A. Siegel, client team re ex parte application to supplement record (.6); call with A. Siegel re same (.2); call with S. Edelman re same (.1). |
| 12/10/2019 | 0.2 | $267 | Edelman, Scott A. | Telephone conference with N. Bach regarding ex parte application. |
| 12/11/2019 | 0.5 | $312.50 | Moshell, Marissa B. | Research for Opposition to ex parte application. |
| 12/11/2019 | 2 | $1,830 | Bach, Nathaniel L. | Draft opposition to ex parte application to supplement evidentiary record (1.5); emails with S. Weiner, M. Moshell re same (.5). |
| 12/12/2019 | 0.3 | $435 | Boutrous Jr., Theodore J. | Review, comment on opposition to ex parte. |
| 12/12/2019 | 4.6 | $4,209 | Bach, Nathaniel L. | Further revisions to opposition to ex parte application to supplement (4.2); emails and call with T. Boutrous re same (.4). |
| 12/13/2019 | 1.2 | $1,098 | Bach, Nathaniel L. | Final revision to and proof of opposition to ex parte application. |

16
EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 126 of 501
Page ID #:3093
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.343   Page 18 of 27

| | | | | **Preparing for and attending the hearing on the Anti-SLAPP Motion and Plaintiff's *Ex Parte* Application to Supplement the Record** |
|---|---|---|---|---|
| 3/9/2020 | 0.2 | $192 | Bach, Nathaniel L. | Emails to M. Moshell re hearing preparation. |
| 3/12/2020 | 5.5 | $4,070 | Moshell, Marissa B. | Prepare one-pagers for oral argument on anti-SLAPP motion. |
| 3/16/2020 | 0.7 | $518 | Moshell, Marissa B. | Review and revise oral argument preparation materials. |
| 4/27/2020 | 0.8 | $768 | Bach, Nathaniel L. | Review Bashant orders re tentative rulings in other cases. |
| 4/27/2020 | 0.3 | $418.50 | Edelman, Scott A. | Correspond with client and N. Bach regarding upcoming hearing. |
| 5/4/2020 | 1 | $1,525 | Boutrous Jr., Theodore J. | Begin hearing preparation. |
| 5/7/2020 | 2.1 | $1,554 | Moshell, Marissa B. | Compile materials for T. Boutrous for hearing preparation. |
| 5/12/2020 | 6.9 | $5,106 | Moshell, Marissa B. | Review and analyze key cases and draft case summaries. |
| 5/12/2020 | 0.3 | $288 | Bach, Nathaniel L. | Reviewing outlines for hearing on anti-SLAPP motion. |
| 5/12/2020 | 1.7 | $1,632 | Bach, Nathaniel L. | Revising outline of talking points for anti-SLAPP hearing. |
| 5/12/2020 | 2.5 | $3,812.50 | Boutrous Jr., Theodore J. | Preparing for hearing on anti-SLAPP motion hearing, including studying briefs, cases |
| 5/13/2020 | 2.3 | $2,208 | Bach, Nathaniel L. | Draft mooting questions for anti-SLAPP hearing. |
| 5/13/2020 | 1.9 | $1,406 | Moshell, Marissa B. | Draft questions and answers for hearing preparation. |
| 5/13/2020 | 2.5 | $3,812.50 | Boutrous Jr., Theodore J. | Hearing preparation. |

17

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Ex. 6, Page 125

| 5/14/2020 | 2.9 | $2,146 | Moshell, Marissa B. | Meeting with team and client re hearing (.8); research and correspond with team re hearing on anti-SLAPP motion (2.1). |
|---|---|---|---|---|
| 5/14/2020 | 0.9 | $864 | Bach, Nathaniel L. | Pre-hearing call with client, T. Boutrous, S. Edelman, M. Moshell. |
| 5/14/2020 | 1 | $1,395 | Edelman, Scott A. | Review anti-SLAPP materials in preparation for moot session with client. |
| 5/14/2020 | 0.9 | $1,255.50 | Edelman, Scott A. | Moot session with client. |
| 5/14/2020 | 3.9 | $5,947.50 | Boutrous Jr., Theodore J. | Preparing for moot court, strategy session, participate in same, continue to prepare for hearing on SLAPP motion. |
| 5/15/2020 | 0.6 | $444 | Moshell, Marissa B. | Research for hearing on anti-SLAPP motion. |
| 5/16/2020 | 2 | $3,050 | Boutrous Jr., Theodore J. | Prepare for anti-SLAPP hearing. |
| 5/16/2020 | 0.3 | $222 | Moshell, Marissa B. | Research court reporting and hearing transcription for anti-SLAPP hearing. |
| 5/17/2020 | 3 | $4,575 | Boutrous Jr., Theodore J. | Preparing for hearing on anti-SLAPP motion. |
| 5/17/2020 | 0.3 | $222 | Moshell, Marissa B. | Correspond with T. Boutrous re materials for hearing preparation (.1); correspond with N. Bach and court reporter re hearing transcript (.2). |
| 5/18/2020 | 2.2 | $2,112 | Bach, Nathaniel L. | Draft one-sheets and hearing arguments. |
| 5/18/2020 | 1.3 | $962 | Moshell, Marissa B. | Draft one-pager for oral argument (1); correspond with team re hearing preparation (.3). |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Ex. 6, Page 126

| 5/18/2020 | 4.5 | $6,862.50 | Boutrous Jr., Theodore J. | Continue to prepare for hearing on Anti-SLAPP motion. |
| 5/19/2020 | 1.5 | $1,440 | Bach, Nathaniel L. | Prepare for hearing on anti-SLAPP motion (.7); telephonic hearing re same (.6); post-hearing debrief with client (.3). |
| 5/19/2020 | 1 | $740 | Moshell, Marissa B. | Attend telephonic hearing on anti-SLAPP motion (.6); call with team re hearing (.1); correspond with court reporter re hearing transcript (.3). |
| 5/19/2020 | 1.5 | $2,092.50 | Edelman, Scott A. | Attend anti-SLAPP hearing. |
| 5/19/2020 | 4.3 | $6,557.50 | Boutrous Jr., Theodore J. | Final preparations for hearing on anti-SLAPP motion, argue motion, call with clients re same, review transcript. |
| **Researching and drafting the Attorneys' Fees Motion and supporting documents** | | | | |
| 5/22/2020 | 2.2 | $1,628 | Moshell, Marissa B. | Research filing deadline for motion for attorney's fees (1); review order granting anti-SLAPP motion and draft summary (1.2). |
| 5/22/2020 | 0.5 | $480 | Bach, Nathaniel L. | Review order granting anti-SLAPP motion. |
| 5/22/2020 | 0.6 | $915 | Boutrous Jr., Theodore J. | Analyzing anti-SLAPP ruling. |
| 5/25/2020 | 0.6 | $444 | Moshell, Marissa B. | Conduct research for motion for attorneys' fees. |
| 5/26/2020 | 5.1 | $3,774 | Moshell, Marissa B. | Research for attorney fees motion and bill of costs (4); begin drafting attorney fees motion (1.1). |
| 5/27/2020 | 10.1 | $7,474 | Moshell, Marissa B. | Continue drafting and researching for motion for |

19

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Gibson, Dunn &
Crutcher LLP

Ex. 6, Page 127

| | | | | |
|---|---|---|---|---|
| | | | | attorneys' fees (9.9); call with N. Bach re motion for attorneys' fees and costs (.2). |
| 5/27/2020 | 1.2 | $1,152 | Bach, Nathaniel L. | Call with M. Moshell re drafting fee motion (.3); emails with M. Moshell, S. Edelman re same (.3); reviewing fee summary for motion (.6). |
| 5/27/2020 | 1.5 | $720 | Gadberry, Lolita C. | Review and analyze accounting department billing records received from M. Moshell. |
| 5/27/2020 | 0.3 | $418.50 | Edelman, Scott A. | Emails regarding fee application. |
| 5/28/2020 | 8.2 | $6,068 | Moshell, Marissa B. | Continue drafting fees motion. |
| 5/28/2020 | 0.5 | $480 | Bach, Nathaniel L. | Meet and confer with A. Siegel re motion for fees (.3); email to clients re same (.2). |
| 5/28/2020 | 4.5 | $2,160 | Gadberry, Lolita C. | Review billing records and prepare charts of billed time pursuant to the request of M. Moshell. |
| 5/28/2020 | 0.4 | $558 | Edelman, Scott A. | Edit fees motion; emails with M. Moshell regarding research for fees motion. |
| 5/28/2020 | 1.4 | $672 | Amponsah, Duke K. | Research for fees motion and confer with M. Moshell and R. Klyman re same. |
| 5/29/2020 | 7.4 | $5,476 | Moshell, Marissa B. | Draft declaration for S. Edelman in support of attorneys' fees motion. |
| 5/29/2020 | 5.5 | $2,640 | Gadberry, Lolita C. | Review and analyze chart regarding billed time and edit and revise same (5.00); email exchange with M. Moshell regarding |

Gibson, Dunn & Crutcher LLP

20
EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 130 of 501
Page ID #:3097
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.347   Page 22 of 27

| Date | Hours | Amount | Timekeeper | Description |
|---|---|---|---|---|
| | | | | preparation and review of motion for fees (.50). |
| 5/29/2020 | 0.5 | $697.50 | Edelman, Scott A. | Work on fee application and emails with M. Moshell regarding same. |
| 5/31/2020 | 1.5 | $1,440 | Bach, Nathaniel L. | Revising memorandum in support of fee motion. |
| 6/1/2020 | 2.3 | $1,702 | Moshell, Marissa B. | Review and revise motion for attorneys' fees and supporting declaration (1.8); correspond with team re motion for attorneys' fees (.5). |
| 6/1/2020 | 0.4 | $384 | Bach, Nathaniel L. | Emails with S. Edelman, M. Moshell re motion for fees. |
| 6/1/2020 | 1.0 | $1,395 | Edelman, Scott A. | Edit motion for attorneys' fees, declaration in support. |
| 6/2/2020 | 3.2 | $2,368 | Moshell, Marissa B. | Research for and revise motion for attorneys' fees. |
| 6/2/2020 | 3.5 | $2,590 | Moshell, Marissa B. | Call with S. Edelman and N. Bach re motion for attorneys' fees (.4); continue revising motion for attorneys' fees and supporting declaration (3.1). |
| 6/2/2020 | 1.0 | $1,395 | Edelman, Scott A. | Work on motion for attorneys' fees and telephone conference with N. Bach and M. Moshell regarding same. |
| 6/3/2020 | 3.5 | $2,590 | Moshell, Marissa B. | Revise motion for attorneys' fees and supporting declaration (2.5); compile exhibits for attorneys' fees motion (1). |
| 6/3/2020 | 0.5 | $697.50 | Edelman, Scott A. | Revise motion for attorneys' fees. |
| 6/4/2020 | 4.0 | $2,960 | Moshell, Marissa B. | Research for and revise motion for attorneys' fees and supporting declaration (3.8); call with S. Edelman |

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Ex. 6, Page 129

|  |  |  |  | re attorneys' fees motion (.2). |
|---|---|---|---|---|
| **Total Hours and Fees** | | | | |
| **TOTAL** | 355.5 | $323,965 | | |

24.     Set forth below are the details of the hours expended by the Gibson Dunn attorneys and other professionals, divided by timekeeper, through the filing of this Motion for Attorneys' Fees and Costs.  This information is a true and accurate reflection of our records:

| Timekeeper | Hours Worked |
|---|---|
| Theodore J. Boutrous, Jr. (Partner) | 55.8 |
| Scott A. Edelman (Partner) | 17.5 |
| Nathaniel L. Bach (Senior Associate) | 135.1 |
| Marissa B. Moshell (Mid-Level Associate) | 113.7 |
| Daniel M. Rubin (Mid-Level Associate) | 16.6 |
| Lolita C. Gadberry (Paralegal) | 14.7 |
| Duke Amponsah (Paralegal) | 1.4 |
| Erin E. Kurinsky (Researcher) | .6 |
| Carla H. Jones (Researcher) | .1 |
| **TOTAL** | 355.5 |

25.     In sum, through the filing of this Motion for Attorneys' Fees and Costs, attorneys and other professionals collectively spent 355.5 hours working on this matter, which resulted in $323,965 in attorneys' fees.  Gibson Dunn is also seeking any

Gibson, Dunn & Crutcher LLP

22

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

additional fees incurred in connection with preparing a Reply and attending a hearing on this Motion.

## Gibson Dunn's Costs

26.    In addition to the fees for Gibson Dunn attorneys and other professionals, Defendants incurred certain costs in connection with their Motion to Strike.  I have reviewed Gibson Dunn's record of costs for this case, and I am familiar with such records and the processes by which the firm creates and maintains them.  In the regular course of business, Gibson Dunn maintains records of costs incurred in connection with a particular client and matter.

27.    The costs incurred by Gibson Dunn in connection with this matter can be categorized as follows:

- ·   Courier costs;
- ·   Document retrieval service costs;
- ·   Process server costs;
- ·   Photocopying costs;
- ·   Research costs; and
- ·   Transcript costs.

Set forth below are the details of the costs incurred by Defendants, divided by category, through the filing of this Motion for Attorneys' Fees and Costs.  This information is a true and accurate reflection of our records:

| Date | Cost | Description |
|------|------|-------------|
| **Courier Costs** | | |
| 10/21/2019 | $11.90 | UPS Delivery of DVD to Amnon Z. Siegel at Miller Barondess LLP |
| 5/8/2020 | $48.99 | Delivery of hearing preparation materials to Theodore J. Boutrous, Jr. |
| **Document Retrieval Service Costs** | | |
| 9/26/2019 | $109.72 | Dun & Bradstreet Document Retrieval Research Costs |

23

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

Ex. 6, Page 131

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 133 of 501
Page ID #:3100
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.350   Page 25 of 27

| 10/21/2019 | $12.30 | PACER charges for October 2019 |
| 12/9/2019 | $1.50 | PACER charges for December 2019 |
| 2/2/2020 | $25.00 | Docket tracking charges through December 2019 |
| 2/28/2020 | $2.50 | Docket tracking charges through January 2020 |
| 4/1/2020 | $15.00 | Docket tracking charges through February 2020 |
| 4/30/2020 | $10.00 | Docket tracking charges through March 2020 |
| 5/31/2020 | $5.00 | Docket tracking charges through April 2020 |
| **Process Server Costs** | | |
| 10/21/2019 | $44.12 | First Legal Network, LLC delivery of Notice of Lodging and DVD to Judge Bashant |
| 10/21/2019 | $31.35 | First Legal Network, LLC delivery of DVD to Gibson Dunn |
| **Photocopying Costs** | | |
| 10/15/2019 | $73.80 | Printing and photocopying in connection with anti-SLAPP motion |
| 10/16/2019 | $6.20 | Printing and photocopying in connection with anti-SLAPP motion |
| 10/23/2019 | $24.80 | Printing and photocopying in connection with anti-SLAPP motion |
| 12/5/2019 | $16.90 | Printing and photocopying in connection with reply brief |
| 3/4/2020 | $4.50 | Printing and photocopying in connection with oral argument preparation |
| 5/7/2020 | $60.30 | Printing and photocopying in connection with oral argument preparation |
| 5/9/2020 | $10.35 | Printing and photocopying in connection with oral argument preparation |
| 5/13/2020 | $13.10 | Printing and photocopying in connection with oral argument preparation |
| 5/18/2020 | $7.50 | Printing and photocopying in connection with oral argument preparation |
| **Research Costs** | | |

Gibson, Dunn &
Crutcher LLP

24

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 134 of 501
Page ID #:3101
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.351   Page 26 of 27

| Date | Amount | Description |
|---|---|---|
| 9/26/2019 | $768.00 | Westlaw research costs |
| 9/28/2019 | $120.00 | Westlaw research costs |
| 9/29/2019 | $120.00 | Westlaw research costs |
| 9/30/2019 | $121.50 | Bloomberg Law research costs |
| 10/7/2019 | $1,123.20 | Westlaw research costs |
| 10/8/2019 | $120.00 | Westlaw research costs |
| 10/10/2019 | $408.00 | Westlaw research costs |
| 10/13/2019 | $201.60 | Westlaw research costs |
| 10/14/2019 | $1.60 | HeinOnline research costs |
| 10/14/2019 | $120.00 | Westlaw research costs |
| 10/15/2019 | $120.00 | Westlaw research costs |
| 10/16/2019 | $1,012.80 | Westlaw research costs |
| 10/17/2019 | $360.00 | Westlaw research costs |
| 10/18/2019 | $240.00 | Westlaw research costs |
| 10/20/2019 | $360.00 | Westlaw research costs |
| 12/4/2019 | $480.00 | Westlaw research costs |
| 12/7/2019 | $360.00 | Westlaw research costs |
| 12/11/2019 | $120.00 | Westlaw research costs |
| 5/7/2020 | $240.00 | Westlaw research costs |
| 5/14/2020 | $120.00 | Westlaw research costs |
| 5/15/2020 | $240.00 | Westlaw research costs |
| 5/22/2020 | $240.00 | Westlaw research costs |
| 5/26/2020 | $514.40 | Westlaw research costs |
| 5/27/2020 | $931.20 | Westlaw research costs |
| 5/28/2020 | $562.40 | Westlaw research costs |
| **Transcript Costs** | | |
| 5/19/2020 | $166.75 | Transcript order for hearing on anti-SLAPP motion and Plaintiff's ex parte application to supplement the record |
| **Total Costs** | | |
| **TOTAL** | $9,706.28 | |

28.     In sum, through the filing of this Motion for Attorneys' Fees and Costs, Gibson Dunn incurred $9,706.28 in costs.  Gibson Dunn is also seeking any additional costs incurred in connection with preparing a Reply and attending a hearing on this Motion.

Gibson, Dunn &
Crutcher LLP

25

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Ex. 6, Page 133

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 135 of 501
Page ID #:3102
Case 3:19-cv-01713-BAS-AHG   Document 35-2   Filed 06/05/20   PageID.352   Page 27 of 27

29.    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California on June 5, 2020.

Scott A. Edelman

26

EDELMAN DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn &
Crutcher LLP

Ex. 6, Page 134

# EXHIBIT 7

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER CHATHAM (CA Bar #240972)
  CChatham@manatt.com
NATHANIEL L. BACH (CA Bar #246518)
  NBach@manatt.com
SARAH E. MOSES (CA Bar #291491)
  SMoses@manatt.com
ANDREA D. GONZALEZ (CA Bar #336134)
  ADGonzalez@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California  90067
Telephone:   (310) 312-4000
Facsimile:    (310) 312-4224

Attorneys for Defendants
MEGAN ROUP and THE SCULPT SOCIETY, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY ANDERSON MIND AND BODY, LLC, a Delaware limited liability company; and T.A. STUDIO NEW YORK LLC, a California limited liability company, | No. 2:22-cv-04735-PSG-E |
| | Hon. Philip S. Gutierrez |
| Plaintiffs, | **DECLARATION OF NATHANIEL L. BACH IN SUPPORT OF DEFENDANTS MEGAN ROUP AND THE SCULPT SOCIETY, LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS (CCP § 425.16(C))** |
| v. | |
| MEGAN ROUP, an individual; and THE SCULPT SOCIETY, LLC, a California limited liability company, | |
| Defendants. | Hearing Date:    Sept. 15, 2023<br>Hearing Time:    1:30 p.m.<br>Courtroom:        6A |
| | Complaint Filed:  July 11, 2022<br>FAC Filed:         Sept. 13, 2022<br>Trial Date:         Not yet set |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF NATHANIEL L. BACH

Ex. 6, Page 136

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 138 of 501
Page ID #:3105
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 2 of 56   Page ID #:345

I, Nathaniel L. Bach, declare as follows:

1. I am an attorney at law licensed to practice in the State of California. I am a partner with the law firm of Manatt, Phelps & Phillips, LLP ("Manatt") and counsel of record for Defendants Megan Roup ("Roup") and The Sculpt Society, LLC ("The Sculpt Society") (together, "Defendants") in the above-entitled action. I am one of the supervising partners in charge of the work performed on this case by the attorneys and other professionals at Manatt.

2. I submit this declaration in support of Defendants' Motion for Attorneys' Fees and Costs pursuant to California Code of Civil Procedure section 425.16(c)(1) ("Motion"). I have personal knowledge of the following facts and could competently testify about them.

3. Defendants' Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 20, 2023, and included subsequent correspondence among counsel as well as two stipulations and orders to extend the time for Defendants to file the Motion.

### Manatt's Defense of the Case and Anti-SLAPP Motion

4. On July 11, 2022, Plaintiffs filed their original Complaint. After Manatt was retained and analyzed the claims, on August 3, 2022, I sent a letter to counsel for Plaintiffs informing them of the fundamental deficiencies in the Complaint and urged Defendants to dismiss their improvidently filed claims. In that letter, I informed Plaintiffs that their Unfair Competition Law claim ("UCL") under California law "is predicated upon speech on matters of public interest; i.e., biographical information about a popular, celebrity fitness trainer [and therefore] gives rise to an anti-SLAPP motion to strike, for which attorneys' fees are mandatory to a prevailing defendant. Cal. Code Civ. Proc. § 425.16(c)(1)."

5. Plaintiffs refused to dismiss their claims and, on September 9, 2022, the parties met and conferred about Defendants' intended motion to dismiss the claims in the original Complaint and anti-SLAPP motion to strike the UCL claim.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF NATHANIEL L. BACH

Ex. 6, Page 137

At that meet and confer, Plaintiffs stated that they intended to amend their complaint and, on September 13, 2022, Plaintiffs filed their First Amended Complaint ("FAC").

6. On September 27, 2022, Defendants moved to dismiss Plaintiffs' FAC, and all causes of action therein, under Federal Rule of Civil Procedure 12(b)(6) and strike Plaintiffs' UCL claim under California's anti-SLAPP statute. Given that both the Lanham Act and UCL claims were grounded in Roup's same biographical speech and were therefore inextricably intertwined, Defendants largely sought both claims' dismissal on the same or similar bases. The arguments for dismissal of the Lanham Act and UCL claims formed the basis for Defendants' arguments under the second prong of the anti-SLAPP analysis that Plaintiffs could not establish a probability of prevailing on the UCL claim.

7. On December 12, 2022, the Court dismissed Plaintiffs' Lanham Act and UCL claims with leave to amend, declined to dismiss Plaintiffs' copyright and breach of contract claims, and deferred a ruling on Defendants' anti-SLAPP motion pending Plaintiffs' amendment of the FAC.

8. Plaintiffs thereafter elected not to amend their dismissed claims. As such, on January 18, 2023, Defendants requested that the Court dismiss Plaintiffs' Lanham Act and UCL claims with prejudice and grant Defendants' Anti-SLAPP Motion. Notwithstanding the straightforward nature of Defendants' request, Plaintiffs opposed it, including arguing that the Court had no authority to grant the anti-SLAPP motion. Plaintiffs' opposition arguments necessitated additional research and briefing in connection with Defendants' reply, filed on February 14, 2023.

9. On June 12, 2023, this Court granted Defendants' request and dismissed with prejudice Plaintiffs' Lanham Act and UCL claims under Federal Rule of Civil Procedure 41(b) and struck Plaintiffs' UCL claim under the anti-SLAPP statute.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 138

**Manatt's Team and Reasonableness of Manatt's Fees**

10.    Manatt's team representing Defendants in this action includes attorneys experienced in intellectual property litigation, including copyright infringement claims, Lanham Act claims, unfair competition claims, and anti-SLAPP practice, and includes the following individuals:

- Myself, Nathaniel Bach, a partner in Manatt's Entertainment Litigation group.  A true and correct copy of my biography, showing my credentials and experience is attached hereto as **Exhibit A**.

- Christopher Chatham, a partner in Manatt's Entertainment group, representing clients in both litigation and transactional matters.  A true and correct copy of Mr. Chatham's biography, showing his credentials and experience is attached hereto as **Exhibit B**.

- Sarah Moses, a partner in Manatt's Entertainment Litigation group.  A true and correct copy of Ms. Moses' biography, showing her credentials and experience is attached hereto as **Exhibit C**.

- Andrea D. Gonzalez, an associate in Manatt's Entertainment Litigation group.  A true and correct copy of Ms. Gonzalez's biography, showing her credentials and experience is attached hereto as **Exhibit D**.

- Alejandro Castro, a former litigation associate at Manatt.  A true and correct copy of Mr. Castro's biography, showing his credentials and experience is attached hereto as **Exhibit E**.

- Barbara Gasik, a practice support supervisor at Manatt, with over 20 years of experience assisting legal professionals, including in connection with filings in federal court.

11.    I believe the work performed by all of the aforementioned attorneys and professionals was reasonably necessary for the litigation of Defendants' successful Anti-SLAPP Motion and related arguments.  And, based on my experience, I believe that Manatt staffed and litigated the matters relating to the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 139

Anti-SLAPP Motion in an efficient and appropriate manner. As examples of this efficiency, because of our relevant expertise, either Ms. Moses or I would draft certain portions of the briefing in the first instance, rather than having more junior associates perform work that might need to be more heavily edited, thereby streamlining the process and eliminating levels of review. As another example, Defendants would frequently have legal secretaries and assistants who do not bill for their time perform case-related and administrative work that might have otherwise been performed by a billing paralegal. Each of these team structures helped add to work efficiency in connection with the matters at issue.

12.     Manatt was retained with an arrangement providing for a 15% discount on standard hourly rates with the agreement that, should Defendants bring and prevail on a motion for attorneys' fees, Defendants would seek Manatt's standard rates, with Manatt retaining any difference between fees paid and those actually incurred by counsel.

13.     In 2022, Manatt's team's standard hourly rates were as follows:

| Timekeeper | Standard 2022 Rate/Hour |
| --- | --- |
| Nathaniel L. Bach (Partner) | $950.00 |
| Christopher Chatham (Partner) | $900.00 |
| Sarah E. Moses (Counsel) | $855.00 |
| Alejandro Castro (Associate) | $760.00 |
| Andrea D. Gonzalez (Associate) | $620.00 |
| Barbara Gasik (Practice Support Specialist) | $395.00 |

14.     In 2023, Manatt's team's standard hourly rates are as follows:

| Timekeeper | Standard 2023 Rate/Hour |
| --- | --- |
| Nathaniel L. Bach (Partner) | $1,065.00 |
| Christopher Chatham (Partner) | $1,010.00 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 140

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 142 of 501
Page ID #:3109
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 6 of 56   Page ID #:349

| Sarah E. Moses (Partner) | $1,000.00 |
|---|---|
| Andrea D. Gonzalez (Associate) | $655.00 |
| Barbara Gasik (Practice Support Specialist) | $455.00 |

15.     Manatt is a national law firm with about 450 professionals in offices in Los Angeles, Orange County, San Francisco, Silicon Valley, Sacramento, Boston, Chicago, Albany, New York, and Washington, D.C.

16.     Based on survey data, and my reading of the relevant case law, the rates charged by Manatt in this matter are comparable to rates charged by other large and established law firms of similar training, experience and expertise in Los Angeles for litigation attorneys.  Attached hereto as **Exhibit F** and **Exhibit G** are true and correct copies of 2022 and 2023 data extracted from Peer Monitor, a Thomson Reuters tool that collects billing rate information from participating firms and provides a summary in a "de-identified" manner for legal benchmarking purposes.  This data compares Manatt's standard rates for its litigation attorneys in Los Angeles—shown under the column named "My Firm"—to the standard rates for litigation attorneys in Los Angeles reported by 19 comparable firms, whose collective data is shown under the column named "Peer Group."  The firms in question are Arnold & Porter Kaye Scholer LLP, Baker & Hostetler LLP, Cooley LLP, Crowell & Moring LLP, Dechert LLP, Fenwick & West LLP, Haynes and Boone LLP, Kelley Drye & Warren LLP, King & Spalding LLP, Mayer Brown LLP, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Morrison & Foerster LLP, Munger Tolles & Olson LLP, Orrick, Herrington & Sutcliffe LLP, Perkins Coie LLP, Pillsbury Winthrop Shaw Pittman LLP, Sheppard Mullin Richter & Hampton LLP, Steptoe & Johnson LLP, and Venable LLP.

17.     Below is an extract from the Peer Monitor data, all of which pertains to Litigation hourly rates in 2022 by the identified firms in Los Angeles:

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 143 of 501
Page ID #:3110
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 7 of 56   Page ID #:350

|  | Manatt | Peer Group Median | Peer Group 25th Percentile | Peer Group 75th Percentile |
|---|---|---|---|---|
| All Lawyers | $919 | $904 | $806 | $1,104 |
| All Partners | $1,027 | $1,143 | $944 | $1,208 |
| All Associates | $722 | $794 | $692 | $819 |

18.  Below is an extract from the Peer Monitor data, all of which pertains to Litigation hourly rates in 2023 by the identified firms in Los Angeles:

|  | Manatt | Peer Group Median | Peer Group 25th Percentile | Peer Group 75th Percentile |
|---|---|---|---|---|
| All Lawyers | $966 | $971 | $910 | $1,044 |
| All Partners | $1,144 | $1,253 | $1,033 | $1,343 |
| All Associates | $742 | $862 | $764 | $925 |

19.  Manatt's hourly rates are also appropriate in light of the high degree of sophistication, experience, and quality that Manatt attorneys bring to their work (as demonstrated by the success to date in the present litigation).

20.  I reviewed Manatt's timekeeping records for this case in connection with monthly invoicing, including ensure that the tasks and projects and time recorded therefore are appropriate in my judgment.  Each of the Manatt professionals working on this matter followed Manatt's time-keeping policies and procedures.  In the regular course of business, Manatt's timekeepers keep detailed, contemporaneous time records.  Timekeepers typically log their time to the nearest tenth of an hour.  On a regular basis, these time records are collected and submitted to Manatt's computerized record-keeping system.  This record-keeping system enables Manatt to track all fees incurred on behalf of its clients and further allows Manatt to generate summaries of the work performed and the fees incurred on a particular matter.

21.  Defendants seek those fees associated with bringing their Anti-SLAPP Motion (including reviewing opposition thereto and reply), those portions of their Motion to Dismiss upon which the Anti-SLAPP arguments necessarily rely, the Request for Ruling brought after Plaintiffs did not amend their claims, and this

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 144 of 501
Page ID #:3111
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 8 of 56    Page ID #:351

Motion (including reviewing opposition thereto and reply).  These categories include the following tasks:

(a) reviewing and analyzing Plaintiffs' Complaint and strategizing of how to challenge Plaintiffs' speech-based claims;

(b) researching and drafting the Anti-SLAPP Motion and the arguments pertaining to prongs 1 and 2 of the statutory test:

➢ Prong 1 arguments included establishing that Roup's biographical statements are subject to the anti-SLAPP law and not subject to the commercial speech exemption of CCP § 425.17 (as Plaintiffs had wrongly asserted);

➢ Prong 2 arguments included and incorporated the detailed arguments made to attack the Lanham Act and speech-based portion of the UCL claim, which are inextricably intertwined and based on Roup's same biographical statements and pertained to each.

(c) reviewing and responding to Plaintiffs' opposition to these arguments in their Opposition to the Motion to Dismiss and Strike, and preparing Defendants' Reply brief regarding the same;

(d) following Plaintiffs' election not to attempt to amend their FAC, preparing and filing the Request for Dismissal with Prejudice and Ruling on Motion to Strike;

(e) reviewing and responding to Plaintiffs' opposition to the Request for Dismissal with Prejudice and Ruling on Motion to Strike; and

(f) researching and drafting this fees and costs motion and supporting documents.

22.    A noted above, Defendants seek fees for the parts of the dismissal motion that dealt with the Lanham Act and UCL claims because the factual bases for those claims are inextricably intertwined and the analyses for those claims formed the basis for Defendants' arguments under the second prong of the anti-

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 143

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 145 of 501
Page ID #:3112
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 9 of 56    Page ID #:352

SLAPP analysis. In other words, the anti-SLAPP analysis necessarily relied on the legal analyses of the Lanham Act and UCL claims contained in the motion to dismiss. *See* Dkt. 15-1, at p. 22 ("because Plaintiffs' Lanham Act claim fails, so too does their UCL claim based on the same conduct").

23. As one of the supervising partners on this case, I am primarily responsible for the day-to-day management of this case. Given my IP litigation and anti-SLAPP expertise, my more specific responsibilities included (among other things) strategizing on arguments to raise in the anti-SLAPP and dismissal motion, drafting revisions and supplemental portions of the memoranda of points and authorities in support of the motion and the reply, drafting the request for ruling filed after Plaintiffs did not amend their claims, conferring with opposing counsel regarding anti-SLAPP and dismissal motion and communicating with the client. Christopher Chatham's work included revisions, drafting, and client advice in connection with the anti-SLAPP motion and related motion to dismiss arguments, as well as with how to address Plaintiffs' failure to amend their FAC and Defendants' response thereto. Sarah Moses was responsible for analyzing issues in connection with the anti-SLAPP motion and related portions of the motion to dismiss, drafting the initial versions of the anti-SLAPP motion and reply papers and participating in revisions and analyzing Plaintiffs' anti-SLAPP opposition. Andrea Gonzalez and Alejandro Castro were responsible for (among other things) research to support the anti-SLAPP motion and related portions of the motion to dismiss; drafting portions of the briefs; cite-checking and finalizing the various documents filed by Defendants. Ms. Gonzalez joined the Manatt team in October 2022, upon joining the firm, whereas Mr. Castro worked on the case prior to that time. Barbara Gasik was responsible for helping to finalize and electronically file the anti-SLAPP-related submissions.

24. Moreover, the research and briefing on issues relating to the anti-SLAPP motion and the inextricably intertwined arguments in the motion to dismiss

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 144

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 146 of 501
Page ID #:3113
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 10 of 56    Page ID #:353

were prolonged and made more labor-intensive by Plaintiffs in multiple ways. First, Plaintiffs' original Complaint asserted a false designation of origin claim under the Lanham Act, which Defendants thoroughly researched and drafted briefing to challenge (and upon which the anti-SLAPP arguments would equally rely). However, after the parties exchanged early letter correspondence and met and conferred about Defendants' intended motion to dismiss the original Complaint, Plaintiffs opted to amend their complaint and to entirely rework their Lanham Act theory from a false designation of origin claim—which Defendants had pointed out was absolutely barred under *Dastar*—to a false advertising claim, requiring Defendants to research and develop all-new arguments to respond to that amended claim. Those arguments were all incorporated into and formed the same basis for the prong 2 anti-SLAPP arguments against the UCL claim, thereby making them recoverable fees here. *See* Dkt 15-1, p. 22 ("because Plaintiffs' Lanham Act claim fails, so too does their UCL claim based on the same conduct").

25.    The motion to dismiss and anti-SLAPP motion, Dkt. 15, is effectively compromised of five parts. Each of the four claims (Lanham Act, breach of contract, copyright and UCL) makes up a part and the anti-SLAPP portion makes up the fifth part. However, in order to be conservative in connection with the present fee motion, whenever a time entry generally refers to work related to both the dismissal and anti-SLAPP motion, Defendants have only sought 50% (or half) of that time, rather than 60% (or 3/5) of that time. Moreover, in an further effort to remain conservative in seeking fees in connection with this Motion, Defendants rounded down when calculating 50% of the entry. For example, if an entry generally refers to work related to both the dismissal and anti-SLAPP motion lists 2.1 hours, Defendants only seek 1 hour instead of 1.05 hours. Defendants have not sought time that pertains solely to the copyright and/or breach of contract claims, or any other matter not relating to the anti-SLAPP Motion. Defendants reserve their rights to seek any attorneys' fees and costs not sought and recovered via this

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -    DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 145

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 147 of 501
Page ID #:3114
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 11 of 56   Page ID #:354

Motion as appropriate under the Copyright Act, Lanham Act, or other applicable law.

26.    The details of the work completed by Manatt attorneys and other professionals through the filing of this Motion for Attorneys' Fees and Costs is set forth below.  The information in the chart below is a true and accurate reflection of the amounts incurred on our timekeeping records:

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| **Researching and drafting the Anti-SLAPP and Dismissal Motion and supporting documents** | | | | |
| 7/17/2022 | .5 | $475.00 | N. Bach | Emails to C. Chatham re initial analysis of claims against Roup & TSS. |
| 7/25/2022 | .2* | $190.00 | N. Bach | Begin drafting letter to DLA Piper regarding bases for motion to dismiss |
| 7/26/2022 | 1.8* | $1,539.00 | S. Moses | Research copyright and Lanham Act claims; exchange emails with N. Bach re same. |
| 7/27/2022 | .3* | $285.00 | N. Bach | Drafting letter to DLA Piper |
| 7/27/2022 | .2* | $171.00 | S. Moses | Videoconference with client re motion to dismiss |
| 7/29/2022 | 2.9* | $2,755.00 | N. Bach | Researching UCL claim defenses and preparing for call with T. Bentz; emails with S. Moses re defenses to UCL claim; debrief call with clients, |

[1] Defendants have annotated entries that generally refer to work related to both the dismissal and anti-SLAPP motion or that include tasks that Defendants are not seeking fees on in this Motion with an asterisk (*) in the "Time" column of this chart.  The listed times in the "Time" column that are marked with "*" have undergone the above noted time-reduction processes in ¶ 25.  For example, the 1.8 hours entry for 7/26/2022 was 3.6 hours before reduction.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | S. Moses. |
| 7/29/2022 | .8 | $760.00 | N. Bach | Conducting analysis of potential to bring anti-SLAPP motion against Tracy Anderson's UCL claim and email to C. Chatham, S. Moses re same. |
| 7/29/2022 | 4.2 | $3,591.00 | S. Moses | Research Unfair Competition Claim and Lanham Act claim; prepare summary for N. Bach re same. |
| 7/29/2022 | .3* | $256.50 | S. Moses | Videoconference with client re call with opposing counsel; review and analyze email correspondence re same. |
| 8/1/2022 | 1.9* | $1,805.00 | N. Bach | Continue researching and drafting letter to DLA Piper requesting dismissal. |
| 8/2/2022 | .5* | $475.00 | N. Bach | Call with C. Chatham, S. Moses; revise letter to DLA per team's comments and send draft to clients. |
| 8/2/2022 | .5* | $427.50 | S. Moses | Review and analyze letter to Plaintiffs' counsel regarding motion to dismiss; teleconference with C. Chatham and N. Bach regarding same. |
| 8/3/2022 | .5* | $475.00 | N. Bach | Finalize letter to DLA Piper requesting dismissal of action |
| 8/9/2022 | .3* | $270.00 | C. Chatham | Identify key issues to address with opposing counsel; outline correspondence to client; |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 147

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 149 of 501
Page ID #:3116
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 13 of 56   Page ID #:356

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | continue to review and respond to client; review and discuss immediate next steps regarding response to Complaint; review and respond re potential Anti-SLAPP motion. |
| 8/16/2022 | 1* | $760.00 | A. Castro | Analyze complaint and prepare outline for motion to dismiss and special motion to strike; discuss same with N. Bach. |
| 8/16/2022 | 1.4* | $1,064.00 | A. Castro | Analyze case law regarding anti-SLAPP motions; analyze case law regarding copyright and Lanham claims. |
| 8/17/2022 | 2.8* | $2,128.00 | A. Castro | Draft motion to dismiss. |
| 8/17/2022 | .4* | $304.00 | A. Castro | Draft proposed order for motion to dismiss. |
| 8/17/2022 | .5* | $380.00 | A. Castro | Draft declaration in support of motion to dismiss. |
| 8/19/2022 | .5* | $380.00 | A. Castro | Revise motion to dismiss. |
| 8/19/2022 | 1.3 | $988.00 | A. Castro | Analyze law regarding special motions to strike. |
| 8/19/2022 | 1.9* | $1,444.00 | A. Castro | Continue revising motion to dismiss and seek assistance in preparing final document. |
| 8/19/2022 | .2* | $190.00 | N. Bach | Call with S. Moses re drafting motion to dismiss. |
| 8/20/2022 | 1.5 | $1,282.50 | S. Moses | Review and analyze Supreme Court decision regarding commercial speech in anti-SLAPP context. |
| 8/22/2022 | .7* | $532.00 | A. Castro | Finalize motion to dismiss; |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 148

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
|  |  |  |  | strategize regarding the same. |
| 8/22/2022 | .8* | $608.00 | A. Castro | Revise declaration and supporting documents to motion to dismiss. |
| 8/22/2022 | 1.1* | $940.50 | S. Moses | Drafting motion to dismiss complaint. |
| 8/23/2022 | .8* | $684.00 | S. Moses | Continue drafting motion to dismiss complaint. |
| 8/26/2022 | 1.2* | $1,026.00 | S. Moses | Prepare motion to dismiss Complaint. |
| 8/29/2022 | 2.0* | $1,710.00 | S. Moses | Conduct research for and continue to draft motion to dismiss Complaint. |
| 8/30/2022 | 2.5* | $2,137.50 | S. Moses | Continue to draft motion to dismiss Complaint. |
| 8/31/2022 | 1.1* | $940.50 | S. Moses | Continue to draft motion to dismiss Complaint. |
| 9/1/2022 | 1.8* | $1,539.00 | S. Moses | Prepare motion to dismiss complaint. |
| 9/2/2022 | .2* | $190.00 | N. Bach | Review and revise draft motion to dismiss and strike Anderson's complaint. |
| 9/8/2022 | 1.1* | $1,045.00 | N. Bach | Review letter from DLA Piper and email to C. Chatham, S. Moses, and clients re same; begin revising motion to dismiss; email to T. Bentz re meet and confer. |
| 9/8/2022 | .3* | $270.00 | C. Chatham | Review and analyze DLA Piper's responses to client's letter regarding copyright infringement, Lanham Act, |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 149

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | breach of contract, California UCL, and related reasoning regarding same; Discuss same; Address further handling and coordinate strategy with Motion to Dismiss. |
| 9/9/2022 | 2.0* | $1,900.00 | N. Bach | Prepare for meet and confer with DLA Piper; participate in meet and confer regarding Defendants' intended motion to dismiss; email update to clients re same; researching issues and case law regarding motion to dismiss and anti-SLAPP motion to strike. |
| 9/9/2022 | .3 | $171.00 | S. Moses | Participate in meet and confer call re motion to dismiss. |
| 9/12/2022 | .6 | $513.00 | S. Moses | Prepare motion to dismiss Unfair Competition Law claim. |
| 9/13/2022 | .1 | $90.00 | C. Chatham | Review first amended complaint filed by the plaintiff; and discuss impact to motion to dismiss. |
| 9/14/2022 | 1.8* | $1,539.00 | S. Moses | Review and analyze First Amended Complaint; research impact of revisions to Lanham Act claim. |
| 9/15/2022 | 2.2 | $1,881.00 | S. Moses | Research standing for false advertising claims under the Lanham Act. |
| 9/16/2022 | 2.7 | $2,308.50 | S. Moses | Prepare motion to dismiss re amended Lanham Act claim. |
| 9/19/2022 | 1.8* | $1,710.00 | N. Bach | Reviewing and revising draft |

Ex. 6, Page 150

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | motion to dismiss the FAC. |
| 9/20/2022 | .2* | $152.00 | A. Castro | Draft correspondence regarding RJN and motion to dismiss. |
| 9/20/2022 | 1.9* | $1,805.00 | N. Bach | Review and revise motion to dismiss the FAC; meeting with S. Moses re same. |
| 9/20/2022 | .8 | $684.00 | S. Moses | Research motion to dismiss standard for materiality under Lanham Act false advertising claim; confer with N. Bach re same. |
| 9/21/2022 | .6* | $456.00 | A. Castro | Analyze case law regarding requests for judicial notice. |
| 9/21/2022 | 1.1* | $836.00 | A. Castro | Draft, revise and finalize request for judicial notice. |
| 9/21/2022 | .3* | $228.00 | A. Castro | Draft proposed order for request for judicial notice. |
| 9/21/2022 | 2.5* | $2,375.00 | N. Bach | Review and revise motion to dismiss the FAC. |
| 9/21/2022 | .5* | $450.00 | C. Chatham | Review and discuss preliminary draft of motion to dismiss; discuss revisions; review recent communications from opposing counsel; identify specific changes to amended complaint; discuss structure of arguments with counsel; update client. |
| 9/21/2022 | 1.0 | $855.00 | S. Moses | Research falsity, materiality, and heightened pleading standard under Lanham Act. |
| 9/22/2022 | .2* | $152.00 | A. Castro | Further correspondence regarding Request for Judicial |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 151

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 153 of 501
Page ID #:3120
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 17 of 56   Page ID #:360

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | Notice. |
| 9/22/2022 | 2.2* | $2,090.00 | N. Bach | Continue revising motion to dismiss the FAC. |
| 9/22/2022 | .6* | $513.00 | S. Moses | Research incorporation by reference doctrine and prepare insert for motion to dismiss re same. |
| 9/23/2022 | .8* | $760.00 | N. Bach | Continue reviewing and revising motion to dismiss/motion to strike. |
| 9/23/2022 | .6* | $513.00 | S. Moses | Research pleading standard for Lanham Act false advertising claims. |
| 9/24/2022 | 1.5* | $1,425.00 | N. Bach | Continue revising and drafting motion to dismiss the FAC. |
| 9/25/2022 | 4.1* | $3,895.00 | N. Bach | Continue revising and drafting motion to dismiss the FAC. |
| 9/25/2022 | .5* | $427.50 | S. Moses | Revise motion to dismiss First Amended Complaint. |
| 9/26/2022 | 1.3* | $988.00 | A. Castro | Revise motion to dismiss. |
| 9/26/2022 | .3* | $228.00 | A. Castro | Draft updated proposed order. |
| 9/26/2022 | .4* | $304.00 | A. Castro | Analyze local rules regarding filing of notice of motion. |
| 9/26/2022 | .1* | $76.00 | A. Castro | Prepare notice of motion |
| 9/26/2022 | .4* | $304.00 | A. Castro | Analyze case law regarding dismissal in motion to dismiss matters. Draft summary of the same. |
| 9/26/2022 | .1* | $76.00 | A. Castro | Engage in correspondence regarding filing of motion to dismiss. |

Ex. 6, Page 152

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 154 of 501
Page ID #:3121
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 18 of 56   Page ID #:361

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|------|------|------|------|------|
| 9/26/2022 | .3* | $228.00 | A. Castro | Correspondence with litigation team regarding motion to dismiss. |
| 9/26/2022 | 5.4* | $5,130.00 | N. Bach | Review and revisions to motion to dismiss draft; review and revise Bach declaration, proposed order, RJN, corporate disclosure statement; videoconference with clients re motion; continue revising motion and supporting papers. |
| 9/26/2022 | 1.1* | $990.00 | C. Chatham | Review and revise draft of motion to dismiss and strike complaint; review authority for copyright and Lanham arguments; review background and introduction paragraphs; revise same; discuss and revise copyright argument, anti-SLAPP section, and related provisions; respond to back-and-forth with N. Bach and S. Moses; update client regarding the same and discuss. |
| 9/26/2022 | 5.1* | $4,360.50 | S. Moses | Finalize motion to dismiss First Amended Complaint; teleconference with client re same. |
| 9/27/2022 | .3* | $228.00 | A. Castro | Analyze rules and regulation regarding proposed orders. Draft summary of the same. |
| 9/27/2022 | .3* | $228.00 | A. Castro | Correspondence with litigation team regarding today's filings. |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 155 of 501
Page ID #:3122
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 19 of 56   Page ID #:362

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| 9/27/2022 | .5* | $197.50 | B. Gasik | E-File Notice of Appearance, Motion to Dismiss, Memorandum of Points and Authorities, Declaration, Proposed Order and Certification of Interested Parties in United States District Court Central District California. |
| 9/27/2022 | 3.1* | $2,945.00 | N. Bach | Final proof and edits to motion to dismiss and supporting documents. |
| 9/27/2022 | .1* | $90.00 | C. Chatham | Continue to finalize motion to dismiss |
| 9/27/2022 | 4.9* | $4,410.00 | C. Chatham | Finalize review and revisions for motion to dismiss and to strike, and all supporting documents. |
| **Reviewing and responding to Plaintiff's Opposition brief** | | | | |
| 10/11/2022 | .7* | $665.00 | N. Bach | Review and analyze Anderson's opposition to motion to dismiss; emails to C. Chatham, S. Moses, and clients regarding same. |
| 10/12/2022 | .3* | $285.00 | N. Bach | Meet with S. Moses regarding preparation of reply brief; meeting with S. Moses, A. Gonzalez regarding same. |
| 10/12/2022 | .6* | $540.00 | C. Chatham | Review opposition to motion to dismiss first amended complaint and special motion to strike from opposing counsel; Provide analysis on opposition |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 154

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 156 of 501
Page ID #:3123
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 20 of 56   Page ID #:363

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | and discuss the same; organize and strategize key arguments with counter prevailing authority; update client and respond to back-and forth; review additional arguments on anti-SLAPP and address the same. |
| 10/12/2022 | 4.0* | $3,420.00 | S. Moses | Research for and prepare reply in support of motion to dismiss. |
| 10/13/2022 | 3.7* | $3,163.50 | S. Moses | Research for and prepare reply in support of motion to dismiss. |
| 10/14/2022 | 1.0* | $950.00 | N. Bach | Review and revise draft of reply in support of motion to dismiss; emails with S. Moses, A. Gonzalez regarding same. |
| 10/14/2022 | 3.0* | $2,565.00 | S. Moses | Prepare reply in support of motion to dismiss complaint. |
| 10/15/2022 | 1.0* | $950.00 | N. Bach | Review and revise reply brief in support of motion to dismiss. |
| 10/16/2022 | 1.7* | $1,615.00 | N. Bach | Review and revise reply brief in support of motion to dismiss and strike. |
| 10/17/2022 | 6.0* | $5,700.00 | N. Bach | Continuing to review and revise reply brief supporting motion to dismiss and strike. |
| 10/17/2022 | 1.8* | $1,539.00 | S. Moses | Research for and prepare reply in support of motion to dismiss and strike first amended complaint. |
| 10/18/2022 | 1.8 | $1,116.00 | A. Gonzalez | Conduct UCL related research for reply brief. |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 155

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 157 of 501
Page ID #:3124
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 21 of 56   Page ID #:364

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| 10/18/2022 | 2.6* | $1,612.00 | A. Gonzalez | Cite check of reply brief in support of motion to dismiss. |
| 10/18/2022 | .5* | $197.50 | B. Gasik | E-File Reply in United States District Court Northern District California. |
| 10/18/2022 | 4.6* | $4,370.00 | N. Bach | Final revisions, proofing, and edits to reply in support of motion to dismiss. |
| 10/18/2022 | 5.0* | $4,275.00 | S. Moses | Finalize and file reply in support of motion to dismiss and strike plaintiffs' first amended complaint. |
| 10/19/2022 | .5* | $450.00 | C. Chatham | Review Reply in support of motion to dismiss and special motion to strike; Discuss same; Address further handling and immediate next steps; update to client. |
| **Reviewing and analyzing Court's Order on Motion to Dismiss & Anti-SLAPP Motion, and researching and drafting the Request for Ruling** | | | | |
| 12/14/2022 | .2* | $124.00 | A. Gonzalez | Review and analysis of court's dismissal order. |
| 12/14/2022 | .4* | $380.00 | N. Bach | Analyzing order on motion to dismiss; zoom with clients, C. Chatham, S. Moses re order on MTD and next steps. |
| 12/14/2022 | .7* | $630.00 | C. Chatham | Review order regarding motion to dismiss and motion to strike; identify key parts of Judge Lew's ruling and identify immediate next steps; discuss potential fee recovery for anti- |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 156

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 158 of 501
Page ID #:3125
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 22 of 56    Page ID #:365

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | SLAPP motion; correspondence with litigation team; continue to review plaintiff's options to amend to allow the Lanham Act or Unfair Competition claims to survive; update client and discuss same. |
| 12/14/2022 | .6* | $513.00 | S. Moses | Review and analyze order on motion to dismiss; teleconference with client re same. |
| 12/15/2022 | .1* | $85.50 | S. Moses | Review and analyze Plaintiff's deadline to file an amended complaint. |
| 12/16/2022 | .3* | $186.00 | A. Gonzalez | Research and analyze trial court order regarding when amendment to complaint is due. |
| 12/16/2022 | .2* | $180.00 | C. Chatham | Review and discuss communications with opposing counsel regarding order allowing Plaintiffs leave to amend two causes of action; respond regarding deadlines and schedule going forward; review underlying order and reference to operative complaint and reference the same; further correspondence with litigation team. |
| 12/19/2022 | .1* | $85.50 | S. Moses | Exchange emails with Plaintiffs' counsel re time to amend complaint and file responsive pleading. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 159 of 501
Page ID #:3126
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 23 of 56   Page ID #:366

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| 12/20/2022 | .2* | $180.00 | C. Chatham | Review correspondence with opposing counsel regarding first amended complaint; update client regarding the same; review and respond to internal correspondence re same. |
| 12/21/2022 | .1* | $62.00 | A. Gonzalez | Discuss deadline for opposing counsel to file amended complaint with team. |
| 12/27/2022 | .1* | $62.00 | A. Gonzalez | Finalize deadline for filing amended complaint and Defendants' answer to same. |
| 1/4/2023 | .4* | $426.00 | N. Bach | Emails with DLA Piper, clients re Plaintiffs' decision not to amend complaint; meet with S. Moses, A. Gonzalez re same. |
| 1/4/2023 | .6* | $606.00 | C. Chatham | Continue to review, research and discuss anti-SLAPP motion; review communications from opposing counsel regarding not amending complaint; discuss and strategize regarding same; identify options for response to complaint and address same; review surviving copyright claim and strategy with the Violation of CA Unfair Competition Law being dismissed; communicate with client and team regarding same. |
| 1/4/2023 | .1* | $100.00 | S. Moses | Review and analyze correspondence with opposing |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 158

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 160 of 501
Page ID #:3127
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 24 of 56   Page ID #:367

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|------|------|------|------|------|
| | | | | counsel and client re second amended complaint |
| 1/5/2023 | .1* | $101.00 | C. Chatham | Address anti-SLAPP strategy. |
| 1/10/2023 | .6 | $639.00 | N. Bach | Research request for ruling on anti-SLAPP motion following non-amendment. |
| 1/11/2023 | 2.0 | $1,310.00 | A. Gonzalez | Research whether Roup is the prevailing party under anti-SLAPP law for attorneys' fees purposes. |
| 1/11/2023 | .5 | $500.00 | S. Moses | Review and analyze research re effect of failing to amend claims vis-à-vis prevailing party for anti-SLAPP motion. |
| 1/12/2023 | 2.2 | $2,343.00 | N. Bach | Review and revise request for entry of dismissal with prejudice and ruling on anti-SLAPP motion. |
| 1/12/2023 | 1.1 | $1,100.00 | S. Moses | Research for and prepare Request for Ruling on anti-SLAPP motion. |
| 1/16/2023 | .4* | $400.00 | S. Moses | Review, analyze, and incorporate revisions into Request for Ruling. |
| 1/17/2023 | .3* | $319.50 | N. Bach | Review and revise Request for ruling on anti-SLAPP motion and dismissal with prejudice. |
| 1/17/2023 | .7* | $700.00 | S. Moses | Revise request for ruling and supporting documents; teleconference with client re same. |
| 1/18/2023 | .5* | $227.50 | B. Gasik | E-File Request for Dismissal |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 161 of 501
Page ID #:3128
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 25 of 56    Page ID #:368

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | with Declaration in United States District Court Central District California. |
| 1/18/2023 | .6* | $639.00 | N. Bach | Final review of Request for dismissal with prejudice of claims and ruling on anti-SLAPP motion. |
| 1/18/2023 | 1.8* | $1,800.00 | S. Moses | Finalize revisions and review of Request for Ruling. |
| 1/19/2023 | .1 | $65.50 | A. Gonzalez | Review and analyze court order to determine briefing filing dates for the request for ruling that Defendants filed that the court construed as a motion for reconsideration. |
| 1/19/2023 | .6 | $600.00 | S. Moses | Review and analyze court order re Request for Dismissal and Ruling on Anti-SLAPP Motion; update client re same. |
| 2/7/2023 | 1.0 | $1,010.00 | C. Chatham | Review opposition regarding request to dismiss Lanham Act and UCL claims; continue to review opposition with request for ruling on special motion to strike; discuss with team; continue to strategize; update client regarding the same. |
| 2/7/2023 | 1.1 | $1,171.50 | N. Bach | Review Anderson's opposition to motion for reconsideration re anti-SLAPP and outline reply to same; begin drafting reply brief. |
| 2/7/2023 | .4 | $400.00 | S. Moses | Review and analyze Plaintiffs' |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 162 of 501
Page ID #:3129
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 26 of 56    Page ID #:369

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | opposition to request for ruling. |
| 2/8/2023 | .4 | $426.00 | N. Bach | Draft reply in support of request for ruling |
| 2/9/2023 | 1.0 | $1,065.00 | N. Bach | Research and draft reply in support of request for ruling on anti-SLAPP motion. |
| 2/10/2023 | 2.5 | $2,662.50 | N. Bach | Continue drafting reply in support of request for anti-SLAPP ruling. |
| 2/13/2023 | 1.4 | $917.00 | A. Gonzalez | Reviewing and analyzing citations to legal authority in our Reply in support of our Request for Ruling. |
| 2/13/2023 | 5.7 | $6,070.50 | N. Bach | Continue revising reply in support of request for ruling on anti-SLAPP motion. |
| 2/13/2023 | 1.6 | $1,600.00 | S. Moses | Revise reply in support of request for dismissal. |
| 2/14/2023 | 1.4 | $1,491.00 | N. Bach | Final review of reply in support of request for anti-SLAPP ruling. |
| 2/14/2023 | .7 | $707.00 | C. Chatham | Review, analyze, discuss and respond to reply in support of our request for ruling on the anti-SLAPP motion and dismissal with prejudice of the Lanham and UCL claims. |
| 2/21/2023 | .3 | $303.00 | C. Chatham | Review papers regarding ruling regarding dismissal and Anti-SLAPP. |
| 5/30/2023 | .2* | $200.00 | S. Moses | Review and analyze recent copyright and anti-SLAPP |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 161

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 163 of 501
Page ID #:3130
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 27 of 56   Page ID #:370

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | decisions from Judge Gutierrez. |
| **Researching and drafting the Attorneys' Fees Motion and supporting documents** | | | | |
| 6/13/2023 | .5 | $532.50 | N. Bach | Review Court's order granting motion to dismiss Lanham Act and UCL claims with prejudice and anti-SLAPP motion to strike; update client regarding same. |
| 6/13/2023 | .7 | $458.50 | A. Gonzalez | Review and analysis of court's order dismissing with prejudice and granting motion to strike based on state anti-SLAPP of certain of plaintiff's claims. |
| 6/13/2023 | .5 | $327.50 | A. Gonzalez | Review and analyze local rules and Judge Gutierrez's standing order to determine whether Defendants can seek an extension of attorneys' fees motion deadline via stipulation. |
| 6/13/2023 | 2.1 | $1,375.50 | A. Gonzalez | Research re attorneys' fees motion based on California anti-SLAPP win in federal court. |
| 6/13/2023 | 1.7 | $1,700.00 | S. Moses | Review and analyze order regarding motion to dismiss and anti-SLAPP motion; research time to move for attorneys' fees following grant of anti-SLAPP motion in federal court; exchange emails with N. Bach and A. Gonzalez regarding same. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 162

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 164 of 501
Page ID #:3131
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 28 of 56   Page ID #:371

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| 6/14/2023 | .4 | $426.00 | N. Bach | Strategizing regarding anti-SLAPP fee motion. |
| 6/14/2023 | .6 | $393.00 | A. Gonzalez | Prepare attorneys' fees motion as prevailing party in an anti-SLAPP motion. |
| 6/14/2023 | 1.3 | $1,300.00 | S. Moses | Prepare motion for attorneys' fees; exchange emails with internal team regarding same. |
| 6/15/2023 | .3 | $319.50 | N. Bach | Continue strategizing with S. Moses, A. Gonzalez regarding anti-SLAPP fee motion. |
| 6/15/2023 | 1.0 | $655.00 | A. Gonzalez | Research and review standards re submission of invoices in connection with motion for attorneys' fees. |
| 6/15/2023 | 1.3 | $851.50 | A. Gonzalez | Prepare and draft declaration of N. Bach in support of attorneys' fees. |
| 6/15/2023 | .7 | $458.50 | A. Gonzalez | Collect evidence attached to declaration of N. Bach in support of attorneys' fees. |
| 6/15/2023 | 6.7 | $6,700.00 | S. Moses | Prepare anti-SLAPP motion for attorneys' fees. |
| 6/15/2023 | .6 | $606.00 | C. Chatham | Communicate with team regarding Court's order and address motion for attorneys' fees in connection with Anti-SLAPP Motion to Strike. |
| 6/16/2023 | 1.0 | $1,065.00 | N. Bach | Review and revise first draft of motion for attorneys' fees. |
| 6/16/2023 | 1.6 | $1,048.00 | A. Gonzalez | Review, analysis and revise draft of attorneys' fees motion. |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 163

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 165 of 501
Page ID #:3132
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 29 of 56   Page ID #:372

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|------|------|------|------|------|
| 6/16/2023 | 2.1 | $1,375.50 | A. Gonzalez | Research recent cases in the Central District and in other California jurisdictions that have found fees similar to Manatt's reasonable. |
| 6/16/2023 | 2.0 | $1,310.00 | A. Gonzalez | Research re recoverability of fees in connection with motion for attorneys' fees (anti-SLAPP). |
| 6/16/2023 | .6 | $393.00 | A. Gonzalez | Prepare calculations of attorneys' fees from finalized invoices. |
| 6/16/2023 | 2.6 | $2,600.00 | S. Moses | Prepare motion for attorneys' fees (anti-SLAPP); exchange emails with opposing counsel regarding meet and confer regarding same. |
| 6/18/2023 | .9 | $589.50 | A. Gonzalez | Continue calculating recoverable attorneys' fees as a prevailing party under anti-SLAPP law. |
| 6/19/2023 | .5 | $532.50 | N. Bach | Working on attorneys' fee motion and correspondence with S. Moses, A. Gonzalez regarding same. |
| 6/19/2023 | 2.2 | $1,441.00 | A. Gonzalez | Continue gathering and calculating recoverable attorneys' fees as a prevailing party under anti-SLAPP law. |
| 6/20/2023 | 1.0 | $1,065.00 | N. Bach | Meet and confer with Anderson's counsel regarding motion for attorneys' fees; follow up email re same. |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 164

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 166 of 501
Page ID #:3133
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 30 of 56   Page ID #:373

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | Confer with S. Moses, A. Gonzalez regarding attorneys' fees motion. |
| 6/20/2023 | .5 | $327.50 | A. Gonzalez | Confer with opposing counsel regarding brining attorneys' fees motion; discussion with N. Bach and S. Moses regarding the same. |
| 6/20/2023 | 1.4 | $917.00 | A. Gonzalez | Calculate total fees related to dismissal motion as requested by opposing counsel in meet and confer process. |
| 6/20/2023 | 3.9 | $2,554.50 | A. Gonzalez | Draft declaration of N. Bach in support of motion for attorneys' fees. |
| 6/20/2023 | .5 | $525.00 | C. Chatham | Continue to review, discuss, and implement strategy regarding stipulating to amount of fees in connection with anti-SLAPP order. |
| 6/20/2023 | .7 | $700.00 | S. Moses | Review and analyze case law on recovering attorneys' fees in the contingency context; exchange emails with N. Bach and A. Gonzalez re same. |
| 6/21/2023 | .2 | $213.00 | N. Bach | Emails with T. Bentz regarding stipulation to extend deadline to file fees motion. |
| 6/21/2023 | .8 | $524.00 | A. Gonzalez | Draft declaration of N. Bach in support of motion for attorneys' fees. |
| 6/21/2023 | 3.1 | $2,030.50 | A. Gonzalez | Draft joint stipulation for extending deadline to file |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 165

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 167 of 501
Page ID #:3134
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 31 of 56   Page ID #:374

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | Attorneys' fees motion, declaration of N. Bach in support of the motion and a proposed order. |
| 6/21/2023 | 1.3 | $851.50 | A. Gonzalez | Draft and revise motion for attorneys' fees. |
| 6/21/2023 | .8 | $800.00 | S. Moses | Exchange emails with N. Bach and A. Gonzalez re timing and substance of attorneys' fees motion and stipulation re same. |
| 6/22/2023 | .2 | $213.00 | N. Bach | Emails with clients regarding order granting anti-SLAPP motion. |
| 6/22/2023 | 2.2 | $1,441.00 | A. Gonzalez | Draft and revise motion for attorneys' fees. |
| 6/22/2023 | 2.0 | $1,310.00 | A. Gonzalez | Prepare table of fees and costs to add to declaration of N. Bach in support of Defendants' motion for attorneys' fees. |
| 6/22/2023 | 1.2 | $786.00 | A. Gonzalez | Prepare and finalize joint stipulation to extend time for Defendants to file a motion for attorneys' fees. |
| 6/22/2023 | .3 | $300.00 | S. Moses | Review and analyze correspondence regarding stipulation to extend time to file attorneys' fees motion. |
| 6/22/2023 | .6 | $273.00 | B. Gasik | E-File Stipulation and related documents in United States District Court Central District California. |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 166

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| 6/23/2023 | .4 | $400.00 | S. Moses | Review and analyze draft motion for attorneys' fees; exchange emails with N. Bach and A. Gonzalez regarding substance and timing of same. |
| 6/23/2023 | 3.0 | $1,965.00 | A. Gonzalez | Continue preparing table of fees and costs to add to declaration of N. Bach in support of Defendants' motion for attorneys' fees. |
| 6/23/2023 | 1.5 | $982.50 | A. Gonzalez | Prepare notice of motion and proposed order for motion for attorneys' fees. |
| 6/26/2023 | .1 | $65.50 | A. Gonzalez | Review and analysis of order granting joint stipulation to extend time. |
| 6/28/2023 | .9 | $589.50 | A. Gonzalez | Finalizing calculations regarding attorneys' fees and costs for meet and confer discussions. |
| 6/28/2023 | 1.0 | $1,065.00 | N. Bach | Review order granting stipulation to extend fee motion deadline; review revised draft of fee motion. |
| 6/29/2023 | .5 | $525.00 | C. Chatham | Continue to discuss issues with respect to the anti-SLAPP motion. |
| 6/30/2023 | 1.8 | $1,917.00 | N. Bach | Reviewing and redlining draft of anti-SLAPP fee motion and attorney declaration in support of same. |
| 7/5/2023 | 1.6 | $1,048.00 | A. Gonzalez | Prepare joint stipulation to extend motion for attorneys' |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 32 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 167

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 169 of 501
Page ID #:3136
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 33 of 56   Page ID #:376

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | fees deadline. |
| 7/5/2023 | 1.7 | $1,810.50 | N. Bach | Emails with T. Bentz, then A. Gonzalez regarding extension of time to file motion for fees regarding Anti-SLAPP motion. |
| 7/6/2023 | .6 | $393.00 | A. Gonzalez | Finalize joint stipulation to extend deadline to file attorneys' fees; coordinate submission of same. |
| 7/6/2023 | .1 | $65.50 | A. Gonzalez | Review and analysis of Court order granting joint stipulation to extend attorneys' fees motion deadline. |
| 7/6/2023 | 1.1 | $1,155.00 | C. Chatham | Conference call with client regarding discussions with opposing counsel and procedural next steps; review and discuss second stipulation for extension regarding Motion for Attorneys' Fees Under CCP Section 425.16(c); discuss internally with team and strategize. |
| 7/10/2023 | .3 | $315.00 | C. Chatham | Confer with client, N. Bach, S. Moses re fee recovery. |
| 7/10/2023 | .3 | $300.00 | S. Moses | Conference call with clients, C. Chatham and N. Bach regarding strategy. |
| 7/10/2023 | .6 | $639.00 | N. Bach | Conference call with clients, C. Chatham, S. Moses regarding strategy; review stipulation extending deadline to file anti-SLAPP fees motion. |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 33 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 168

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 170 of 501
Page ID #:3137
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 34 of 56   Page ID #:377

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| 7/23/2023 | .8 | $524.00 | A. Gonzalez | Per Plaintiffs' proposal, research timing of when anti-SLAPP attorneys' fees granted before final judgment are typically due to be paid to the moving party. |
| 7/26/2023 | .3 | $196.50 | A. Gonzalez | Review and analysis of response to Plaintiffs' proposal re stipulating to anti-SLAPP attorneys' fees; correspond with team regarding same. |
| 7/26/2023 | .2 | $200.00 | S. Moses | Correspondence regarding attorneys' fees motion. |
| 7/26/2023 | 1.9 | $2,023.50 | N. Bach | Reviewing and revising anti-SLAPP fees motion; emails with S. Moses, A. Gonzalez regarding same. |
| 7/27/2023 | 3.1 | $3,301.50 | N. Bach | Review and revise anti-SLAPP motion for attorneys' fees. |
| 7/28/2023 | .4 | $262.00 | A. Gonzalez | Draft attorneys' biographies section of attorneys' fees motion. |
| 7/28/2023 | 1.4 | $917.00 | A. Gonzalez | Research recovery of fees for other claims inextricably intertwined with anti-SLAPP motion. |
| 7/28/2023 | 5.3 | $5,644.50 | N. Bach | Continue substantively revising memorandum of points and authorities in support of anti-SLAPP fee motion. |
| 7/29/2023 | 2.8 | $2,982.00 | N. Bach | Continue drafting and revising fee motion memorandum and Bach declaration in support |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 34 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 169

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 171 of 501
Page ID #:3138
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 35 of 56    Page ID #:378

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | thereof. |
| 7/29/2023 | 3 | $1,965.00 | A. Gonzalez | Fact cite-check of the anti-SLAPP attorneys' fees motion; revise declaration and motion re same. |
| 7/30/2023 | 3.9 | $2,554.50 | A. Gonzalez | Revise attorneys' fees motion per N. Bach comments; research reasonable fees of legal assistants and clerical tasks; review circuit precedent regarding what attorneys' fees have been found reasonable; research re establishing reasonability of hours incurred. |
| 7/30/2023 | 2.0 | $1,310.00 | A. Gonzalez | Review and analysis of time entries related to fees sought in Attorneys' Fees Motion, and confirming fee calculations. |
| 7/30/2023 | 3.2 | $3,408.00 | N. Bach | Continue revising anti-SLAPP fee motion and Bach declaration; revise notice of motion; correspond with A. Gonzalez regarding same. |
| 7/31/2023 | 3.1 | $2,030.50 | A. Gonzalez | Legal cite-check of the anti-SLAPP attorneys' fees motion. |
| 7/31/2023 | 5.4 | $5,751.00 | N. Bach | Final review and edits to anti-SLAPP attorneys' fees motion, memorandum of points and authorities, and Bach declaration and supporting exhibits. |
| 7/31/2023 | 3.7 | $2,423.50 | A. Gonzalez | Finalize anti-SLAPP attorneys' fees motion, declaration, |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 35 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 170

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 172 of 501
Page ID #:3139
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 36 of 56   Page ID #:379

| Date | Time[1] | Amount Incurred (Rate x Time) | Timekeeper | Task(s) |
|---|---|---|---|---|
| | | | | proposed order, and other supporting documents. |
| 7/31/2023 | .5 | $500.00 | S. Moses | Pre-filing review of anti-SLAPP attorneys' fees motion. |
| **Total Hours and Fees** | | | | |
| **TOTAL** | Hours: 275.7 | | Attorneys' Fees: $238,849.00 | |

27. In sum, through the filing of this Motion, attorneys and other professionals collectively spent 275.7 hours working on this matter, which resulted in $238,849.00 in attorneys' fees. Manatt will also seek any additional fees incurred in connection with preparing a reply and preparing for and attending any hearing on this Motion.

## Manatt's Costs

28. Manatt also seeks recovery of costs in connection with the Motion to Strike. In the regular course of business, Manatt maintains records of costs incurred in connection with a particular client and matter. At present, Manatt is solely seeking process server costs in connection with this Motion. These costs are detailed below and are a true and accurate reflection of our records:

| Date | Cost | Description |
|---|---|---|
| **Process Server Costs** | | |
| 9/30/2022 | $37.12 | First Legal Network, LLC delivery of Anti-SLAPP and Dismissal Motion courtesy copy to Court. |
| 10/31/2022 | $37.12 | First Legal Network, LLC delivery of Reply in support of Anti-SLAPP and Dismissal Motion courtesy copy to |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 36 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Ex. 6, Page 171

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 173 of 501
Page ID #:3140
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 37 of 56    Page ID #:380

| Date | Cost | Description |
|---|---|---|
|  |  | Court |
| 1/31/2023 | $55.25 | First Legal Network, LLC delivery of Request for Ruling courtesy copy to Court. |
| 2/15/2023 | $26.00 | First Legal Network, LLC delivery of Reply in support of Request for Ruling courtesy copy to Court. |
| 6/30/2023 | $26.00 | First Legal Network, LLC delivery of joint stipulation to extend anti-SLAPP attorneys' fees deadline courtesy copy to Court. |
| 7/15/2023 | $26.00 | First Legal Network, LLC delivery of joint stipulation to extend anti-SLAPP attorneys' fees deadline courtesy copy to Court. |
| **Total Costs** | | |
| **TOTAL** | **$207.49** | |

29.    In sum, through the filing of this Motion, Manatt incurred $207.49 in costs. Manatt is also seeking any additional fees incurred in connection with preparing a Reply and attending a hearing on this Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed in Los Angeles, California, on July 31, 2023.


By: /s/ *Nathaniel L. Bach*
         Nathaniel L. Bach

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 37 -

DECLARATION OF NATHANIEL L. BACH
2:22-CV-04735-PSG-E

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 174 of 501
Page ID #:3141
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 38 of 56   Page ID #:381

# EXHIBIT A

Ex. 6, Page 173

## manatt

# Nathaniel L. Bach

## Professional Experience

A Los Angeles-based Manatt Entertainment litigation partner, Nathaniel Bach represents prominent clients in the media, entertainment and technology industries, including film and television studios and networks, artists, brands, retailers, music publishers, producers, entrepreneurs and journalists. *Chambers USA* honored him in 2023 as one of the media and entertainment industry's notable Up & Coming lawyers, emphasizing that "He has incredible litigation expertise," "provides great counsel," and "His attention to detail is amazing." *Legal 500* recognized him as a 2021 Rising Star in Media and Entertainment Litigation. And *The Best Lawyers in America* has recognized him as "One to Watch" in Entertainment and Sports Law from 2021-2023.

Nat's broad commercial litigation practice spans copyright, trademark, right of publicity, First Amendment, contract, fashion, brand-protection, telecommunications, class action, intellectual property, and cutting-edge artificial intelligence, metaverse, digital assets, cryptocurrency and blockchain matters. In addition to his trial work, he maintains an active counseling practice, working with clients in pre-litigation and other risk-management matters. He has also represented clients in the financial industry in global regulatory and governmental investigations, and has played key roles in various other high-profile transactions and disputes.

Nat maintains an active pro bono practice. He successfully represented Dreamers to obtain a first-in-the-nation injunction blocking the Trump administration's unlawful revocation of the DACA program. Nat also represented one of the first Dreamers unlawfully targeted by the Trump administration, obtaining (after arguing) an unprecedented preliminary injunction that barred ICE and USCIS from falsely calling his client a gang member. He has partnered with diverse legal services organizations including the ACLU of Southern California, Public Counsel, Bet Tzedek, Lawyers Without Borders and the Equal Justice Initiative.



**Partner**
Manatt Entertainment

**T**  310.312.4204

**E**  nbach@manatt.com

## Education

- University of California, Los Angeles – School of Law, J.D., 2006
- University of Pennsylvania, B.A., Diplomatic History, French, 2002

## Memberships and Activities

- Admitted to practice in the state of California
- Trustee, Los Angeles Copyright Society
- Member, LACBA, Entertainment Law and Intellectual Property Section

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 174

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 176 of 501
Page ID #:3143
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 40 of 56   Page ID #:383

**Nathaniel L. Bach**

manatt

- Board Member, ShareWell, which operates the Cayton Children's Museum in Santa Monica
- Member of Advisory Board, Citizens of the World Los Angeles Charter Schools

## Honors and Awards

- Named as one of the Top-Ranked Attorneys, *Chambers USA*, 2023
- "One to Watch" in Entertainment and Sports Law, *The Best Lawyers in America*, 2021–2023
- Rising Star in Media and Entertainment Litigation, *Legal 500*, 2021
- Litigator of the Week, *AmLaw Litigation Daily*, 2020

## Experience

**Select Entertainment, Media & Technology Matters**

- *Wolf v. NBCUniversal* – Successfully defended NBCUniversal in a $150 million television profit participation licensing arbitration regarding a *Law & Order* series, including recouping arbitration fees.*
- *Herring Networks, Inc. v. Maddow et al.* – Successfully obtained anti-SLAPP dismissal of a defamation claim brought by the owner of a television network against Rachel Maddow, MSNBC, NBCUniversal and Comcast.*
- *Optimum Productions v. Home Box Office, Inc.* – Represented HBO against claims filed by Michael Jackson's estate over the Emmy-winning documentary *Leaving Neverland*.*
- *LMNO Cable Group, Inc. v. Discovery Communications, LLC* – Represented Discovery in complex copyright, trademark, profit participation, contract and fraud litigation against a reality television production company.*
- *Trump v. Trump* – Successfully represented Mary Trump in defeating Robert Trump's effort to enjoin publication of her best-selling memoir, *Too Much and Never Enough*.*
- *Brown v. Giongco et al.* – Successfully obtained full dismissal of singer Chris Brown's claims against a Philippine arena owner over alleged extortion following a Manila concert.*
- *DIRECTV, LLC v. Nexstar Broadcasting, Inc.* – Represented DIRECTV in a contract action in New York Supreme Court in a $12 million retransmission dispute.*
- Defended a studio in a profit participation arbitration with a major TV franchise.

**Select Intellectual Property Matters**

- *Tracy Anderson Mind and Body LLC v. Megan Roup et al.* -- Representing celebrity fitness entrepreneur Megan Roup and The Sculpt Society LLC against copyright, Lanham Act, UCL, and contract claims over dance-cardio fitness classes.
- *Real v. Yuga Labs et al.* – Representing artist Diplo in putative class action lawsuit claiming violation of securities laws in connection with ownership and alleged promotion of Bored Ape Yacht Club NFTs.
- *Iglesia Ni Cristo (Church of Christ) v. Samson* – Successfully obtained preliminary injunction and resolution of copyright infringement litigation against former minister who was infringing Church's original hymns by broadcasting them via a worship service over Zoom.

**Nathaniel L. Bach**

**manatt**

- *Estate of Hugh M. Hefner* – Representing the Hugh M. Hefner Foundation in intellectual property matters, including trademark, copyright and right of publicity matters.

## Select Music Matters

- *Warner/Chappell Music v. EMI Entertainment World Inc.* – Represented EMI and affiliates in litigation brought by Warner/Chappell and affiliates over royalty accounting matters for multiple song catalogues by artists such as Curtis Mayfield and Kool and the Gang, as well as film and television library catalogues with contracts dating back to the 1930s.

- *In re Estate of Prince Rogers Nelson* – Successfully obtained rescission of a music licensing agreement and full return of funds for record company in deal with Prince's estate.*

- *Soundgarden et al. v. UMG Recordings, Inc.* – Successfully represented record company in a putative class action over master recordings allegedly destroyed in a fire on the Universal Studios backlot.*

- *Johansen v. Sony Music Entertainment* – Represented record company in a putative copyright class action brought by recording artists over Section 203 termination rights and related infringement claims.*

- Francisco Partners – advised Francisco Partners Management, a U.S.-headquartered global investment firm, in its 2022 majority stake investment in Kobalt Music.

- Square Inc. – advised Square in its 2021 acquisition of music-streaming platform TIDAL.*

- *Edmunds v. Coleman* – Representing music manager in litigation seeking commissions from artist's catalog sale.

## Select Pro Bono Matters

- *State v. Martin* – Representing a former death-row inmate in challenging a capital murder conviction in Alabama. Served as one of the lead counsel at a three-week murder trial in 2019, examining multiple witnesses on direct and cross-examination before a jury.

- *Moore v. Harper* – Filed U.S. Supreme Court amicus brief for UCLA Law Professor Richard L. Hasen in support of respondents in case considering the so-called "independent state legislature theory."

- *Garcia v. United States* – Member of the litigation team that successfully blocked the Trump administration's attempt to terminate the DACA program and that was honored with *California Lawyer*'s 2018 Attorneys of the Year award.*

- *Ramirez Medina v. DHS* – Represented Dreamer in litigation challenging denial of DACA benefits. Argued two motions for preliminary injunction, motion for summary judgment and motion to dismiss before the chief judge of the U.S. District Court, Western District of Washington.*

- Partnered with ACLU to successfully protect a homeowner's association member's free speech rights.*

- Represented Cayton Children's Museum in various matters, including trademark and right of publicity matters.*

- Designed and drafted Lawyers Without Borders' 2014 Liberia Anti-Human Trafficking training program and its 2013 Kenya Anti-Corruption training program.*

- Successfully obtained the release of $76 million in California state funding for educationally related mental-health services on behalf of a class of mentally disabled children.*

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 176

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 178 of 501
Page ID #:3145
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 42 of 56   Page ID #:385

**Nathaniel L. Bach**

**manatt**

- Led a litigation team in securing a settlement for the full amount of liability ($1.6 million) in a class action lawsuit on behalf of developmentally disabled foster children.*

* Denotes prior firm experience

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 177

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 179 of 501
Page ID #:3146
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 43 of 56   Page ID #:386

# EXHIBIT B

**manatt**

# Christopher Chatham

## Professional Experience

Chris represents high-profile individuals and companies from media, entertainment, production, sports and technology, as well as family offices, startups, professional athletes, celebrities, public figures and influencers. His execution-oriented approach and unique breadth of experience handling cutting-edge transactions allow his clients to adapt and grow their businesses in today's advanced data- and technology-driven marketplace. His portfolio also includes mergers and acquisitions, joint ventures, brand monetization, cross-border transactions, equity and debt financings and corporate governance, as well as general business and dispute resolution-related matters.

Chris' broad litigation and counseling practice includes media and entertainment law; misappropriation of the right of publicity; employment disputes; defamation; business torts; breach of fiduciary duties; privately-held companies; the formation and division of trusts; real estate; and commercial law. Understanding his clients' objectives and risk tolerance, he serves as a trusted business and legal advisor, structuring and negotiating unprecedented deals on behalf of his clients and bringing them successfully across the finish line. Chris has become the go-to lawyer in town for complex corporate and commercial transactions involving icons and moguls across a wide range of industries, including media, entertainment, technology, sports, consumer brands and health and wellness.

Frequently recognized as one of the entertainment industry's top lawyers, Chris' clients are currently functioning on multiple platforms generating more than 800 hours of television per year (including the #1 syndicated TV talk show), engaged in the development of dozens of pilots, selling more than 50 million books and operating a number of digital platforms with over a hundred million users per month. His impactful work has earned him recognition as a top Hollywood dealmaker from various media publications across the country, including Variety's Legal Impact Report and the publication's highly competitive Dealmakers Impact Report, The Hollywood Reporter's Top Dealmakers which features major game-changing deals that have impacted the showbiz landscape, as well as other major publications such as the Los Angeles Times, Reuters, Bloomberg and other nationally recognized outlets. Before starting his career as a lawyer, Chris was a corporate bond trader on Wall Street and a Registered Representative of the National Association of Securities Dealers, coordinating billions of dollars in debt offerings for clients.



**Partner**
Manatt Entertainment

**T** 310.312.4159

**E** cchatham
@manatt.com

## Education

- Southwestern Law School, J.D., 2005
- University of Virginia, B.A., Government, 2000

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 179

**Christopher Chatham**

**manatt**

## Memberships and Activities

- Admitted to practice in the state of California, the state of Hawaii and the District of Columbia

## Honors and Awards

- Dealmakers Impact Report, *Variety*, 2014–23
- Legal Impact Report, *Variety*, 2014–23
- Top Dealmakers, *The Hollywood Reporter*, 2022
- Super Lawyer, *Super Lawyers Magazine*, 2015–23
- Rising Stars, *Super Lawyers Magazine*, 2012 and 2014

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 180

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 182 of 501
Page ID #:3149
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 46 of 56   Page ID #:389

# EXHIBIT C

Ex. 6, Page 181



# Sarah E. Moses

## Professional Experience

Sarah Moses is a partner in the Firm's industry-leading Manatt Entertainment group and focuses her practice on a variety of complex litigation and commercial disputes. Her representative matters within the broader entertainment sector have included guiding a major talent agency in an antitrust action, representing a grunge band in a copyright and trademark dispute with a fashion designer, and counseling a sports agency in contract disputes with professional athletes.



A significant portion of Sarah's practice is dedicated to white collar criminal defense work, representing high-net-worth individuals, politicians and companies in government investigations and prosecutions, and guiding companies through internal investigations. Her representative matters have included defending medical providers against health care fraud claims under the False Claims Act, representing employees in government investigations and administrative proceedings brought against an international banking institution, and defending politicians against public corruption charges.

Sarah has extensive hands-on experience researching and writing dispositive and other substantive motions in state and federal courts, and she works closely with clients to develop and manage case strategies. Sarah regularly serves as the primary advisor to clients on their most sensitive business matters.

Her pro bono experience has included spearheading the representation of a transgender inmate in Arizona state prison, including a briefing and oral argument before the U.S. Court of Appeals, Ninth Circuit.

Sarah began her legal career as a judicial extern to the Honorable David J. Cowan, Los Angeles Superior Court.

**Partner**
Entertainment Litigation

**T**  310.312.4128
**E**  smoses
     @manatt.com

## Education

- UCLA School of Law, J.D.; Symposium Editor, *UCLA Law Review*; Staff, *Journal of International Law & Foreign Affairs*, 2013
- Pace University, M.Sc. for Teachers, 2008
- Northwestern University, B.A., European History and Communication Studies, *magna cum laude*, 2006

## Memberships and Activities

- Admitted to practice in the state of California

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 182

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 184 of 501
Page ID #:3151
Case 2:22-cv-04735-PSG-E    Document 37-2    Filed 07/31/23    Page 48 of 56    Page ID #:391

**Sarah E. Moses**

## manatt

- Central District of California
- U.S. Court of Appeals, Ninth Circuit

## Honors and Awards

- Southern California *Super Lawyers*, Rising Star 2020–2023

## Experience

- Represented a prominent U.S. attorney and his law firm in connection with civil RICO and state law claims brought by an actress concerning the Firm's representation of Harvey Weinstein; secured a full dismissal of all claims with prejudice.

- Secured a favorable settlement for a music manager in a case alleging violation of federal human trafficking statutes.

- Obtained dismissal of a lawsuit brought against an online magazine and its president alleging civil RICO claims.

- Secured summary judgment for a prominent U.K. law firm and one of its partners in a legal malpractice case brought by a songwriter related to negotiation of the songwriter's music copublishing agreement.

- Won an appellate victory for an Olympic gold medalist in beach volleyball in an endorsement contract dispute; the California Court of Appeal affirmed a prevailing party fee award for the client.

- Obtained a favorable settlement for a prominent sports and entertainment company involving claims of copyright infringement.

- Secured a favorable settlement for a professional surfer in a breach of contract dispute with a sponsor involving allegations of failure to perform due to COVID-related disruptions.

- Represented a major talent agency in an antitrust dispute with the Writers Guild of America regarding packaging fees.

- Represented an iconic '90s grunge band in a copyright and trademark dispute brought against an international fashion designer.

- Represented the County of Los Angeles in connection with a long-running civil rights case, including ensuring compliance with a consent decree governing constitutional policing in the Antelope Valley.

- Engaged by the Hollywood Foreign Press Association to investigate complaints made to its hotline regarding claims of organizational misconduct.

- Represented a pool of 25 bank employees in connection with investigations by the U.S. Department of Justice and administrative proceedings brought by the Office of the Comptroller of the Currency.

- Represented employees of a cochlear implant manufacturer in connection with a civil division Department of Justice investigation.

- Represents a social media influencer talent management company in connection with artist disputes; provides prelitigation advice on non-disparagement, non-solicitation and confidentiality issues.

- Represented an executive of PG&E in connection with government charges related to the Camp Fire.

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 183

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 185 of 501
Page ID #:3152
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 49 of 56   Page ID #:392

# EXHIBIT D

Ex. 6, Page 184

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 186 of 501
Page ID #:3153
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 50 of 56   Page ID #:393



# Andrea Del-Carmen Gonzalez



## Professional Experience

Andrea Del-Carmen Gonzalez is an associate in Manatt's Los Angeles office. She is experienced in conducting reports and providing recommendations for complex commercial litigation matters.

Before joining Manatt, Andrea served as a judicial law clerk to the Honorable Michael R. Wilner of the U.S. District Court for the Central District of California and as a law clerk for the Orleans Public Defenders Office. She also worked as a summer associate at a New York-based law firm, where she assisted in a broad range of civil litigation matters, including an amicus brief to the Supreme Court. Andrea is fluent in Spanish.

## Education

- UCLA School of Law, J.D., 2020
  Coeditor-In-Chief, *UCLA Law Review*
- American University, B.A., International Studies, 2015

## Languages

- Spanish

## Memberships and Activities

- Admitted to practice in the state of California

**Associate**
Entertainment Litigation

**T**  310.312.4286
**E**  adgonzalez
     @manatt.com

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 185

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 187 of 501
Page ID #:3154
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 51 of 56   Page ID #:394

# EXHIBIT E

Ex. 6, Page 186

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 188 of 501
Page ID #:3155
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 52 of 56   Page ID #:395

**manatt**

# Alex Castro

## Professional Experience

Alex Castro is an employment and labor associate in the firm's Los Angeles office.

Before joining Manatt, Alex was an associate for a national law firm, where he was responsible for drafting and arguing motions, taking depositions, and negotiating Private Attorneys General Act settlements, while also participating in all phases of employment litigation.



## Education

- Loyola Law School, J.D., 2017
- University of California, Merced, B.A., Political Science, 2014

## Languages

- Spanish (fluent)

## Memberships and Activities

- Admitted to practice in the state of California

**Associate**
Employment and Labor

**T**  310.312.4216
**E**  acastro
@manatt.com

Manatt, Phelps & Phillips, LLP

Ex. 6, Page 187

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 189 of 501
Page ID #:3156
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 53 of 56   Page ID #:396

# EXHIBIT F

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 190 of 501
Page ID #:3157
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 54 of 56   Page ID #:397

## PEER MONITOR

| | |
|---|---|
| **Metric:** | Standard Rates (/hr.) |
| **Time:** | 202201-202209 |
| **Offices:** | Los Angeles CA |
| **Practices:** | Litigation |

| | My Firm | | | Peer Group - (120717) | | | |
|---|---|---|---|---|---|---|---|
| **Timekeepers** | | **Mean** | **Variance** | **Median** | **Variance** | **25th** | **75th** |
| Total All Lawyers | $919 | $907 | 1.3% | $904 | 1.6% | $806 | $1,014 |
| Total All Partners | $1,027 | $1,109 | -7.4% | $1,143 | -10.1% | $944 | $1,208 |
| Associate | $722 | $784 | -7.9% | $794 | -9.0% | $692 | $819 |
|   Associate (1st Year) | $555 | $579 | -4.1% | $595 | -6.7% | $550 | $600 |
|   Associate (2nd Year) | $619 | $611 | 1.3% | $601 | 3.0% | $555 | $675 |
|   Associate (3rd Year) | $510 | $709 | -28.1% | $715 | -28.7% | $637 | $755 |
|   Associate (4th Year) | $685 | $720 | -4.9% | $705 | -2.8% | $664 | $783 |
|   Associate (5th Year) | $825 | $816 | 1.0% | $805 | 2.5% | $739 | $875 |
|   Associate (6th Year) | $727 | $840 | -13.5% | $835 | -13.0% | $751 | $925 |
|   Associate (7th Year) | $860 | $904 | -4.8% | $890 | -3.4% | $810 | $980 |
|   Associate (Over 7 Years) | $840 | $935 | -10.2% | $933 | -9.9% | $860 | $986 |
|   Grad Date Not Found | $503 | * | * | * | * | N/A | N/A |
| Equity Partner | $1,125 | $1,142 | -1.5% | $1,169 | -3.8% | $969 | $1,249 |
|   Partners (11 - 13 Years) | X | $955 | * | $1,010 | * | $851 | $1,068 |
|   Partners (14 - 16 Years) | $995 | $1,079 | -7.8% | $1,082 | -8.1% | $1,065 | $1,149 |
|   Partners (17 - 19 Years) | $900 | $1,089 | -17.4% | $1,120 | -19.7% | $984 | $1,192 |
|   Partners (20 - 22 Years) | $994 | $1,225 | -18.8% | $1,216 | -18.3% | $1,170 | $1,250 |
|   Partners (23 - 25 Years) | $1,040 | $1,115 | -6.8% | $1,161 | -10.5% | $910 | $1,185 |
|   Partners (26 - 29 Years) | $1,250 | $1,195 | 4.6% | $1,250 | 0.0% | $1,090 | $1,345 |
|   Partners (30 - 34 Years) | $1,176 | $1,206 | -2.5% | $1,215 | -3.2% | $1,102 | $1,255 |
|   Partners (35 - 39 Years) | $1,242 | $1,212 | 2.4% | $1,221 | 1.7% | $1,022 | $1,349 |
|   Partners (40 - 44 Years) | $1,272 | $1,290 | -1.4% | $1,290 | -1.4% | $1,055 | $1,373 |
| Non-Equity Partner | $945 | $1,013 | -6.7% | $932 | 1.4% | $907 | $1,135 |
|   Partners (1 - 10 Years) | $815 | * | * | * | * | N/A | N/A |
|   Partners (11 - 13 Years) | $895 | * | * | * | * | N/A | N/A |
|   Partners (14 - 16 Years) | $885 | $961 | -7.9% | $953 | -7.0% | $845 | $1,045 |
|   Partners (17 - 19 Years) | $905 | * | * | * | * | N/A | N/A |
|   Partners (20 - 22 Years) | X | $962 | * | $915 | * | $852 | $1,094 |
|   Partners (23 - 25 Years) | $970 | $1,050 | -7.6% | $1,130 | -14.2% | $860 | $1,152 |
|   Partners (26 - 29 Years) | $1,002 | * | * | * | * | N/A | N/A |
|   Partners (30 - 34 Years) | $1,025 | * | * | * | * | N/A | N/A |
|   Partners (35 - 39 Years) | X | $1,124 | * | $1,135 | * | $918 | $1,295 |
|   Partners (40 - 44 Years) | $1,090 | * | * | * | * | N/A | N/A |
|   Partners (45 - 50 Years) | $1,129 | * | * | * | * | N/A | N/A |
|   Partners (Over 50 Years) | $945 | * | * | * | * | N/A | N/A |
| Of Counsel | $911 | $1,009 | -9.8% | $1,025 | -11.1% | $895 | $1,065 |
| Other Lawyer | $430 | $871 | -50.6% | $795 | -45.9% | $695 | $1,080 |

Ex. 6, Page 189

37

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 191 of 501
Page ID #:3158
Case 2:22-cv-04735-PSG-E   Document 37-2   Filed 07/31/23   Page 55 of 56   Page ID #:398

# EXHIBIT G

Ex. 6, Page 190

## PEER MONITOR

**Metric:** Standard Rates (/hr.)
**Time:** 202301-202305
**Currency:** USD
**Offices:** Los Angeles CA
**Practices:** Litigation

| Timekeepers | My Firm | Mean | Variance | Median | Variance | 25th | 75th |
|---|---|---|---|---|---|---|---|
| | | | | Peer Group - (120717) | | | |
| Total All Lawyers | $996 | $971 | 2.5% | $971 | 2.5% | $910 | $1,044 |
| Total All Partners | $1,144 | $1,195 | -4.3% | $1,253 | -8.7% | $1,033 | $1,343 |
| Equity Partner | $1,215 | $1,252 | -2.9% | $1,270 | -4.3% | $1,081 | $1,399 |
| Partners (11 - 13 Years) | X | $1,048 | * | $1,130 | * | $917 | $1,161 |
| Partners (14 - 16 Years) | $1,115 | $1,119 | -0.3% | $1,160 | -3.9% | $1,119 | $1,190 |
| Partners (17 - 19 Years) | $1,005 | $1,205 | -16.6% | $1,244 | -19.3% | $1,183 | $1,320 |
| Partners (20 - 22 Years) | $1,114 | $1,209 | -7.8% | $1,292 | -13.8% | $980 | $1,345 |
| Partners (23 - 25 Years) | $1,171 | * | * | * | * | N/A | N/A |
| Partners (26 - 29 Years) | $1,219 | $1,287 | -5.2% | $1,316 | -7.3% | $1,200 | $1,395 |
| Partners (30 - 34 Years) | $1,316 | $1,308 | 0.6% | $1,193 | 10.3% | $1,141 | $1,436 |
| Partners (35 - 39 Years) | $1,400 | $1,342 | 4.3% | $1,303 | 7.4% | $1,192 | $1,505 |
| Partners (40 - 44 Years) | $1,415 | $1,462 | -3.2% | $1,480 | -4.4% | $1,455 | $1,480 |
| Non-Equity Partner | $1,068 | $1,089 | -1.9% | $1,035 | 3.2% | $958 | $1,241 |
| Partners (1 - 10 Years) | X | * | * | * | * | N/A | N/A |
| Partners (11 - 13 Years) | $987 | * | * | * | * | N/A | N/A |
| Partners (14 - 16 Years) | $985 | * | * | * | * | N/A | N/A |
| Partners (17 - 19 Years) | $1,065 | $1,027 | 3.7% | $990 | 7.5% | $959 | $1,020 |
| Partners (20 - 22 Years) | $0 | * | * | * | * | N/A | N/A |
| Partners (23 - 25 Years) | $1,100 | $1,052 | 4.5% | $935 | 17.6% | $930 | $1,248 |
| Partners (26 - 29 Years) | $1,128 | * | * | * | * | N/A | N/A |
| Partners (30 - 34 Years) | $1,123 | * | * | * | * | N/A | N/A |
| Partners (35 - 39 Years) | $1,225 | $1,203 | 1.8% | $1,159 | 5.7% | $1,015 | $1,423 |
| Partners (40 - 44 Years) | $0 | * | * | * | * | N/A | N/A |
| Partners (45 - 50 Years) | $1,250 | * | * | * | * | N/A | N/A |
| Partners (Over 50 Years) | $975 | * | * | * | * | N/A | N/A |
| Associate | $742 | $851 | -12.8% | $862 | -13.9% | $764 | $925 |
| Associate (1st Year) | $590 | $629 | -6.3% | $635 | -7.1% | $584 | $668 |
| Associate (2nd Year) | $655 | $702 | -6.8% | $707 | -7.3% | $644 | $763 |
| Associate (3rd Year) | $693 | $765 | -9.5% | $769 | -9.9% | $725 | $860 |
| Associate (4th Year) | $585 | $825 | -29.1% | $838 | -30.1% | $741 | $917 |
| Associate (5th Year) | $738 | $859 | -14.2% | $855 | -13.7% | $770 | $940 |
| Associate (6th Year) | $895 | $949 | -5.7% | $944 | -5.2% | $853 | $1,027 |
| Associate (7th Year) | $767 | $965 | -20.5% | $950 | -19.3% | $845 | $1,035 |
| Associate (Over 7 Years) | $946 | $1,003 | -5.7% | $1,024 | -7.6% | $925 | $1,060 |
| Grad Date Not Found | $0 | $825 | -100.0% | $793 | -100.0% | $724 | $990 |
| Of Counsel | $1,075 | $1,187 | -9.4% | $1,172 | -8.3% | $982 | $1,285 |
| Other Lawyer | $455 | $929 | -51.0% | $870 | -47.7% | $745 | $1,120 |

Ex. 6, Page 191

# EXHIBIT 8

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK LIVES MATTER LOS ANGELES, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SANTA MONICA, et al., <br><br> Defendants. | Case No. 2:21-cv-05253-CAS-AJRx <br> CLASS ACTION <br><br> **FINAL ORDER APPROVING CLASS ACTION SETTLEMENT [DKT. 62]** <br><br> Judge:    Hon. Christina A. Snyder |

I.    **INTRODUCTION AND BACKGROUND.**

On May 31, 2020, in response to protests following the death of George Floyd in Minneapolis, the City of Santa Monica ("the City") instituted a City-wide curfew. Dkt. 1 ("Compl.") ¶¶ 1-2.  Between May 31, 2020 and June 1, 2020, the Santa Monica Police Department ("SMPD") arrested approximately 400 people.  Id. ¶ 3. Plaintiffs allege that these arrests were effectuated after protests were ended using force and that the SMPD "imposed unconstitutional conditions of confinement on arrestees by holding them on buses for many hours, tightly handcuffed with zip ties, without access to bathroom facilities, food, or water." Id. ¶ 5.  Arrestees were largely

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 195 of 501
Page ID #:3162
Case 2:21-cv-05253-CAS-AJR    Document 64    Filed 10/22/24    Page 2 of 16    Page ID
#:1702

transported to the Santa Monica Airport, where "all or almost all arrestees were released on a misdemeanor charge of violating a City Municipal Code provision that applied to the curfew." Id. ¶ 6. Some arrestees, including a number of minors, were taken to the Civic Center jail for processing. Dkt. 56 ("Mot. for Final Approval") at 1.

At the time of filing, plaintiffs were members of two damages classes. Compl. ¶ 38. The first was the "Arrest Class," made up of persons present at protests on May 31, 2020, and June 1, 2020, who were handcuffed and arrested by the SMPD or an agent of the City. Id. The second class was the "Direct Force Class," made up of individuals present at the relevant protests, who "were subjected to unlawful force employed by [d]efendant City and its agents." Id. At this stage, only the Arrest Class remains in this litigation.

On June 28, 2021, plaintiffs filed their initial complaint in this matter. Compl. On August 2, 2023, claims asserted by the Direct Force Class and named plaintiff Kerry Hogan were dismissed with prejudice. Dkt. 42. On February 22, 2024, defendants filed a notice of conditional settlement. Dkt. 50. On July 22, 2024, plaintiffs submitted an unopposed motion for preliminary approval of class certification. Dkt. 53. On July 25, 2024, the settlement was preliminarily approved. Dkt. 55.

On September 16, 2024, plaintiffs filed a motion for final settlement approval and a motion for attorneys' fees and costs. Dkts. 56-57.

## II.    SETTLEMENT AGREEMENT

### A. Definitions.

The capitalized terms used in this Final Approval Order shall have the meanings and/or definitions given to them in the Settlement Agreement [Dkt. 53-1 ("Settlement Agreement," "Settlement," or "Agreement")], or if not defined therein, the meanings and/or definitions given to them in this Final Approval Order.

Ex. 6, Page 194

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 196 of 501
Page ID #:3163
Case 2:21-cv-05253-CAS-AJR    Document 64    Filed 10/22/24    Page 3 of 16   Page ID
#:1703

**B. Incorporation of Documents.**

This Final Approval Order incorporates and makes a part hereof:

(a) the Settlement Agreement (including the exhibits thereto); and

(b) the Court's findings and conclusions contained in its Preliminary Approval Order.

**C. Jurisdiction and Venue.**

This Court has personal jurisdiction over the parties and the members of the Settlement Class. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 including, without limitation, jurisdiction to approve the Settlement, to settle and release all claims alleged in the action and all claims released by the Settlement, to adjudicate the objections submitted to the proposed Settlement by class members, and to dismiss the case with prejudice. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391.

**D. Definition of the Class and Settlement Class Members.**

The Settlement Class hereby certified by the Court is defined as:

All persons who were detained and cited or arrested in or around the City of Santa Monica between May 31, 2020 and June 1, 2020 in connection with law enforcement agencies' efforts to disperse Black Lives Matter protest and enforce a City-wide curfew.

Settlement Agreement at 2.

**E. Class Action Prerequisites are Satisfied.**

The Court finds that the Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23(a) for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority, and that Settlement Class Representatives and Class Counsel are adequate representatives of the Settlement Class.

Ex. 6, Page 195

The Court concludes that there are hundreds of members of the Settlement Class, making joinder of all members impracticable; there are questions of fact and law that are common to all members of the settlement class; the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and plaintiffs David Brown and David Clennon have and will fairly and adequately protect the interests of the absent members of the relevant Settlement Class and have retained counsel experienced in civil rights litigation who have and will continue to adequately advance the interests of the Settlement Class.

The Court finds that this action may be maintained as a class action under Rule 23(b)(3) for settlement because: (1) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**F. Settlement Terms**

Plaintiffs have submitted an unopposed motion for final approval of class settlement. Mot. for Final Approval.

The Settlement Agreement provides for a total monetary settlement of $2,300,000, which includes attorneys' fees and costs of class administration. Settlement Agreement ¶ 19. It also provides for the dismissal of all individually named defendants with prejudice, leaving the City as the only defendant to whom the agreement is applicable. Id. The Settlement Agreement provides for payment of costs related to publication and distribution by defendant and for payment by the City to the Administrator part of the costs of Class Administration before Final Approval. Id. ¶ 21.

The Settlement Agreement provides for payments of no less than $5,000 and no more than $7,000 to all class members who timely file. Id. ¶ 27. Additionally, the two class representatives will receive the same payment as their fellow class

Ex. 6, Page 196

members as well as a $15,000 incentive award per the terms of the Settlement Agreement.  Id. ¶ 28.  Any person opting out of the Settlement does not qualify for payment.  Id.

The Settlement Agreement establishes that once all costs, fees, expenses, and payments to class members are paid out, any remaining money in the Class Fund is to revert to the City after 180 days.  Id. ¶ 32.

Defendants, in the Settlement Agreement, continue to deny all allegations of wrongdoing and deny all liability for the allegations and claims made in this case.  ¶ 17.

**G. Objections to the Proposed Settlement.**

There have been no objections to the Settlement.  Mot. for Final Approval at 9.  Two individuals who are plaintiffs in a lawsuit proceeding in state court against the City and other defendants opted out, via letter from their counsel.  Id.; Dkt. 56-1.

**H. Legal Standard.**

The Court may only approve a settlement class after finding the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. Pro. 23(e)(2).  In doing so, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

Ex. 6, Page 197

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Id.

"The purpose of the [modern] Rule 23(e)(2) is [to] establish a consistent set of approval factors to be applied uniformly in every circuit, without displacing the various lists of additional approval factors the circuit courts have created over the past several decades." Zamora Jordan v. Nationstar Mortg., LLC, No. 2:14-CV-0175-TOR, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019). Factors that the Ninth Circuit has typically considered include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

**I. Findings and Conclusions.**

**1. Notice to the Class was Adequate.**

For every class to be certified under Rule 23(b), the Ninth Circuit mandates that "[d]istrict courts 'must direct notice [of a proposed settlement] in a reasonable manner to all class member who would be bound by the proposal." CLRB Hanson Indus., LLC v. Weiss & Assocs., PC, 465 F. App'x 617, 619 (9th Cir. 2012) (quoting Fed. R. Civ. P 23(e)(1)(B)) (edits in original). See also Altes v. Sambazon, Inc., No. 8:19-cv-01340-JLS-JDE, 2020 U.S. Dist. LEXIS 267747, at *8 (C.D. Cal. May 12, 2020). "[T]o satisfy due process, notice to class members must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id., citing Martinez v. Hammer Corp., No. 09-cv-06135-MMM-

5

AGRx, 2010 WL 11520538, at *2 (quoting In re Marsh ERISA Litigation, 265 F.R.D. 128, 144 (S.D.N.Y. 2010)) (internal quotations omitted).

The Court finds that fair and adequate notice of class members' right to object to the Settlement and to appear at the Fairness Hearing in support of such an objection has been provided in the form and manner required by the Settlement Agreement, the Court's Preliminary Approval Order, the requirements of due process, Rule 23, and any other applicable law. In particular, the Court finds that the Class Notice provided the best practicable notice of class members' rights and options and of the binding effect of the orders and Judgment in this case, whether favorable or unfavorable, on all class members.

Class counsel provided detailed information describing outreach to putative class members and the challenges to contacting the class, both because some citations were missing and others were not accurate, as well the number of times class members moved over the course of four years. Even so, class participation was slightly more than 50-percent of the potential class and 65-percent of those where current contacts were found. This is a good participation rate.

Plaintiffs provided information on publication of the notice on several activist websites and social media. The Declaration of Katherine Shapiro detailed outreach to those for whom the City provided citations. These persons were sent notice and claim forms by postal mail, email, and texts and online searches. Claims could be filed by mail, email or online on a dedicated website. In addition to conducting their own online searches, Plaintiffs hired a private investigator to conduct skip/trace searches for persons without current contact information. This is more than was required by the Court's Preliminary Approval Order.

The absence of objections to the Settlement by all class members strongly supports approval. See, e.g., Feist v. Petco Animal Supplies, Inc., No. 3:16-cv-01369-H-MSB, 2018 WL 6040801, at *5 (S.D. Cal. Nov. 16, 2018) ("[T]he absence

of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (quoting Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004)); In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (same; three objections out of approximately 57,000 class members).  In response to the Class Notice, there were no objections and only two opt-outs.  Mot. for Final Approval at 9.

### 2. The Settlement was negotiated at arm's length.

Where, as here, the settlement agreement is negotiated prior to the grant of a motion for formal class certification, "courts must be 'particularly vigilant' for signs of collusion because, at this stage of the litigation, there is an even 'greater potential for breach of fiduciary duty owed to the class during settlement.'" In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011). For this reason, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Id.

The Ninth Circuit directs courts to look for these "subtle signs" of collusion:

"(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no [money] but class counsel are amply rewarded;

(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay counsel excessive fees and costs in exchange for counsel accepting an unfair settlement [ ]; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund."

Altes, 2020 U.S. Dist. LEXIS 267747 at *8 (citing In re Bluetooth, 654 F.3d at 947).

7

Ex. 6, Page 200

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 202 of 501
Page ID #:3169
Case 2:21-cv-05253-CAS-AJR    Document 64    Filed 10/22/24    Page 9 of 16    Page ID
#:1709

Based on the evidence filed in support of the motion for preliminary approval, the motion for final approval and the motion for attorney fees and costs, the Court is satisfied that there is no collusion in this instance and that approval is appropriate.

### 3. Incentive Awards

The settlement agreement provides for incentive awards to the two named class representatives. The Settlement Agreement provides for a $15,000 incentive award to each of the two class representatives. The Ninth Circuit instructs that "district courts [should] scrutinize carefully [incentive] awards so that they do not undermine the adequacy of the class representative." Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157. 1163 (9th Cir. 2013). This includes considering "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015) (quoting Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003)).

Plaintiffs submit that the two class representatives, David Brown and David Clennon, assisted in gathering evidence, stayed in contact and met with counsel, responded to discovery from defendants, participated in deposition preparation, and discussed the Settlement Agreement with counsel. Mot. for Final Approval at 13. The plaintiffs also submit that the payment of these awards has no impact on the amount to be paid to other class members. Id. at 12. The proposed incentive award is just over two times the high end of the damages award for class members. Id. at 13.

The most important factor in approving incentive awards is the proportion between the amount received by class members and the incentive award. In determining an appropriate service award, courts consider whether the proposed amount is proportional to class members' payments under the settlement. Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).

The proposed incentive awards are just slightly more than twice the individual damage awards to class members. Cf. Roe v. Frito-Lay, Inc., No. 14-CV-00751-HSG, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (reducing service award from $10,000 to $5,000 where "[a] $10,000 incentive award is substantially disproportionate to class members' anticipated recovery of $193.45"); Smith v. Am. Greetings Corp., No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) (reducing $7,500 service award to $5,000 in a wage and hour class action where the proposed award was 4.7 times the average class member damages of $1,608.16); Willner v. Manpower Inc., No. 11-CV-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015), at *9 (reducing requested $11,000 award to $5,000 where projected average settlement payment in a wage and hour case was $605.02).  In each of these cases the proportion between the reduced incentive award and average amount to class members was greater than the ratio here.

Because the proposed incentive awards to the two class representatives are well within the proportional ratio to the individual damages provided to class members, the Court approves incentive awards of $15,000 to each named plaintiff.

**4. Relief provided is adequate.**

The Settlement delivers adequate relief by providing substantial cash payments to class members.  Each class member is to receive a minimum of $5,000 and a maximum of $7,000, with class representatives receiving an additional $15,000 incentive award.  Settlement Agreement ¶ 27.

The Court has considered the realistic range of outcomes in this matter, including the amount plaintiffs might receive if they prevailed at trial, the strength and weaknesses of the case, the novelty and number of the complex legal issues involved, the risk that plaintiffs would receive less than the relief afforded by the

Ex. 6, Page 202

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 204 of 501
Page ID #:3171
Case 2:21-cv-05253-CAS-AJR    Document 64    Filed 10/22/24    Page 11 of 16    Page ID #:1711

Settlement Agreement or recover nothing at trial, and the risk of a reversal of any judgment. The Settlement is well within a range of reasonableness.

In this case, the parties have reached settlement before litigating dispositive motions or preparing for trial. Parties did, however, conduct extensive discovery over the course of the three years between the filing of this case and settlement.

**5. Proposed distribution method is effective.**

The Administrator will be responsible for processing and paying class claims based on submission of Proof of Claim Forms pursuant to the Settlement Agreement. Settlement Agreement ¶ 43.

**6. Attorneys' fees are reasonable.**

Pursuant to the Settlement Agreement, attorneys' fees are capped at $690,000, 30% of the total settlement. Id. ¶ 39. These fees are included in the total $2,300,000 settlement amount. Id. Further discussion of the reasonableness of attorneys' fees in this case can be found in Section V, infra.

**7. The Settlement Agreement treats class members equitably.**

In addition to the incentive awards described above, the Settlement Agreement provides for equal payments to each class member (exclusive of the class representatives). Settlement Agreement ¶ 27.

**III.    LATE FILED CLAIMS**

Plaintiffs also request the Court approve several claims filed after the September 9 Bar date. Most of the late claims were filed on behalf of individuals who were minors at the time of their arrest in 2020 and for whom the City did not produce arrest citations, as set out in Plaintiffs' Motion for Final Approval.

Pursuant to Ninth Circuit authority, the Court has the discretion to permit late claims filed in a large class action settlement fund. Advance Drywall Co. v. U.S. Gypsum Co. (In re Gypsum Antitrust Cases), 565 F.2d 1123, 1127-28 (9th Cir. 1977). "[I]n the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'" Id. at 1127

10

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 205 of 501
Page ID #:3172
Case 2:21-cv-05253-CAS-AJR    Document 64    Filed 10/22/24    Page 12 of 16    Page ID #:1712

(quoting Reports of the Conference for District Court Judges, 63 F.R.D. 231, 262 (1973)).  The Ninth Circuit found that three months is "ordinarily a sufficiently long period within which class members may file claims." Id. at 1128. In this instance, the claims period was only half of this with slightly less than three months from preliminary to final approval of the settlement in this matter.

The Ninth Circuit approach is consistent with decisions in other circuits and the recommendation of the Manual of Complex Litigation. "Multiple circuits had held that the court maintains an inherent equitable power to 'allow late-filed proofs of claim and late-cured proofs of claim.' In re Cendant Corp. Prides Litig., 233 F.3d 188, 195 (3d Cir. 2000); accord Burns v. Elrod, 757 F.2d 151, 155 (7th Cir. 1985); Zients v. LaMorte, 459 F.2d 628, 630 (2d Cir. 1972) … . The Manual for Complex Litigation also recommends that '[t]he court should allow adequate time for late claims before any refund or other disposition of settlement funds occurs.' Manual for Complex Litigation (Fourth) § 21.662 (2004)."  Norton v. LVNV Funding, LLC, No. 18-cv-05051-DMR, 2022 WL 562831, at *6 (N.D. Cal. Feb. 24, 2022) (edits supplied).

Based on strong authority allowing late claims the Court grants the request and directs that all such claim forms be approved.

## IV.  ATTORNEYS' FEES

### A. Legal Standard.

District courts must ensure that attorneys' fees awards in class action cases are reasonable.  Lowery v. Rhapsody Int'l, Inc., 75 F.4th 985, 991 (9th Cir. 2023). In the Ninth Circuit, there are "two ways to determine attorneys' fees awards in class actions: (1) the 'lodestar' method and (2) the 'percentage-of-recovery' method." Id. at 990.  "[T]he choice between lodestar and percentage calculation depends on the circumstances, but . . . 'either method may . . . have its place in determining what would be reasonable compensation.'" Six (6) Mexican Workers v. Arizona Citrus

11

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 206 of 501
Page ID #:3173
Case 2:21-cv-05253-CAS-AJR    Document 64    Filed 10/22/24    Page 13 of 16   Page ID
#:1713

Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) (third alteration in original) (quoting Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989)).

Twenty-five percent recovery is the benchmark for attorneys' fees, though courts in the Ninth Circuit have approved upward departures to be within the acceptable range. See In re Bluetooth, 654 F.3d at 942 (noting 25% benchmark); Powers v. Eichen, 229 F.3d 1249. 1256-57 (9th Cir. 2000) (upward departure acceptable when expressly explained).

Having reviewed the history and facts of this case, the Court finds that the percentage approach, followed by a lodestar cross check to ensure the reasonableness of fees is appropriate.

**B. Calculating Attorneys' Fees.**

Plaintiffs argue that the attorneys' fees and costs of $690,000 are reasonable compared to a total settlement fund of $2,300,000 applying either the percentage calculation approach or the lodestar method. Dkt. 57 ("Mot. for Attorneys' Fees and Costs").

**1. Percentage calculation**

Attorneys' fees and costs of $690,000, what plaintiffs' counsel requests here, amount to 30% of the settlement fund. Id. at 1. This includes reimbursed costs of litigation, plaintiffs contend, thus the fees are actually equal to about 27% of the Class Fund. Id. at 2. Though this is above the 25% benchmark set by the Ninth Circuit, the Court finds that the slight upward deviation is warranted here.

In determining whether a deviation from the 25% benchmark is warranted, courts frequently consider the Vizcaino factors: (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was

Ex. 6, Page 205

handled on a contingency basis.  In re Optical Disk Drive Prod. Antitrust Litig., 959 F.3d 922, 930 (9th Cir. 2020) (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043,1048-50 (9th Cir. 2002)).

Factor one, exceptional results, favors a slight upward deviation.  A payout ranging from $5,000 to $7,000 per plaintiff is substantial.  Plaintiffs point out that the amount is "greater than the base recovery in the comparator settlements and nearly twice the presumed damages of $4000 set out by the California Legislature for a Bane Act Violation."  Mot. for Final Approval at 8.  The Court agrees with plaintiffs that the settlement is favorable for the class.

Factor two, risk of the case for class counsel, is neutral. The Court does not find that the case was particularly risky for Class Counsel, as counsel in this case litigates primarily in this field; however, a favorable result was by no means certain. Looking to the third factor, the Court notes that there are no non-monetary benefits of the settlement to consider, thus this factor is also neutral.

The fourth factor, market rate, also supports an award slightly above the benchmark.  The Ninth Circuit has found that 25% of the total settlement fund is the benchmark for attorney's fees in common fund cases, but that 20-30% of the fund is "the usual range."  Vizcaino, 290 F.3d at 1047 (citing Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989)).  The Court notes that the 27% agreed upon here falls within this range.  The Court finds that the fifth factor, burden on class counsel, favors a slight upward adjustment.  Class counsel and defendants negotiated this case without the assistance of a paid mediator, increasing the burden on counsel.  Mot. for Final Approval at 10-11.  Counsel also undertook additional notice procedures beyond those required by the Court to attempt to notify class members whose information was unclear or improperly recorded on their citations. Id. at 4.  Finally, the sixth factor, contingency, also favors upward adjustment from the benchmark, as this case was litigated on a contingency basis.

Ex. 6, Page 206

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 208 of 501
Page ID #:3175
Case 2:21-cv-05253-CAS-AJR    Document 64    Filed 10/22/24    Page 15 of 16    Page ID #:1715

Given these factors, the Court finds that the slight upward adjustment, from the Ninth Circuit's benchmark of 25%, to approximately 27%, is reasonable in this case.

### 2. Lodestar cross-check

A lodestar cross-check confirms that $690,000 is a reasonable award of attorneys' fees and costs. To guard against an unreasonable result, the Ninth Circuit encourages district courts to "cross-check[] their calculations against a second method." In re Bluetooth, 654 F.3d at 944; see also Vizcaino, 290 F.3d at 1050-51 (applying a lodestar cross-check to ensure the percentage-of-recovery method yielded a reasonable result).

Here, plaintiffs' counsel calculated their collective lodestar to be $702,662. Mot. for Attorneys' Fees at 4. In support, counsel submitted summary charts listing the attorneys and the student group that worked on the case, their hours, and their hourly rates. Id. These calculations are reproduced here.

| Name | Role | Admitted | Hours | Rate | Lodestar |
|---|---|---|---|---|---|
| Paul L. Hoffman | Attorney | 1976 | 18.8 | $1,425.00 | $ 26,790.00 |
| Carol A. Sobel | Attorney | 1978 | 239.8 | $1,325.00 | $ 317,735.00 |
| Erin Darling | Attorney | 2008 | 161.2 | $ 975.00 | $ 157,170.00 |
| John Washington | Attorney | 2017 | 19.5 | $ 770.00 | $ 15,105.00 |
| Katherine Robinson | Attorney | 2018 | 41.1 | $ 695.00 | $ 28,564.50 |
| Weston Rowland | Attorney | 2019 | 187.3 | $ 675.00 | $ 126,427.50 |
| UCI Civil Rights | Students | 2L/3L | 137.2 | $ 225.00 | $ 30,870.00 |
| TOTAL LODESTAR | | | 805.1 | | $ 702,662.00 |

Id. at 4.

These calculations are unopposed. The Court finds that the reported lodestar of $702,662 supports the reasonableness of a 27% award.

14

Ex. 6, Page 207

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 209 of 501
Page ID #:3176
Case 2:21-cv-05253-CAS-AJR    Document 64    Filed 10/22/24    Page 16 of 16    Page ID
#:1716

## V.    RETENTION OF JURISDICTION.

The Court has jurisdiction to enter this Final Approval Order.  Without in any way affecting the finality of this Final Approval Order, for the benefit of the Settlement Class and defendants, and to protect this Court's jurisdiction, the Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, including but not limited to any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement, the administration of the Settlement and Settlement relief, including notices, payments, and benefits thereunder, the Class Notice and sufficiency thereof, any objection to the Settlement, the adequacy of representation by Class Counsel and/or the class representatives, the amount of attorneys' fees and litigation expenses paid to plaintiffs' counsel, the amount of incentive awards to be paid to the class representatives, any claim by any person or entity relating to the representation of the Settlement Class by Class Counsel, any remand after appeal or denial of any appellate challenge, any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement, and all other issues related to this case and Settlement.

## VI.    CONCLUSION.

The Motion for Final Approval is **GRANTED** on the terms set forth in this Final Approval Order, and the parties and their counsel are directed to implement and consummate the Settlement according to its terms and provisions as set forth in the Settlement Agreement.

The Motion for Attorneys' Fees and Costs is also **GRANTED**.

Plaintiffs are to file a Notice of Dismissal within one week of this Order.

**IT IS SO ORDERED.**

DATED: October 22, 2024          By: _____

Honorable Judge Christina A. Snyder,
United States District Court Judge

15

Ex. 6, Page 208

# EXHIBIT 9

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 211 of 501
Page ID #:3178
Case 5:20-cv-00416-JGB-SP   Document 188   Filed 02/21/24   Page 1 of 7   Page ID #:4461

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-0416 JGB (SPx)** | Date | February 21, 2024 |
|---|---|---|---|
| Title | ***Paola French, et al. v. City of Los Angeles, et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 185); and (2) VACATING the February 26, 2024 Hearing (IN CHAMBERS)**

Before the Court is a motion for attorneys' fees filed by plaintiffs Paola French and Russell French ("Plaintiffs"). ("Motion," Dkt. No. 185.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The hearing set for February 26, 2024 is **VACATED**.

## I.   BACKGROUND

On February 28, 2020, Paola French and Russell French commenced this action against Defendants City of Los Angeles ("City") and Salvador Sanchez ("Sanchez") (collectively, "Defendants"). ("Complaint," Dkt. No. 1.) Plaintiffs alleged that Mr. Sanchez, who was an officer with the Los Angeles Police Department ("LAPD") at the time, used excessive force against them and their son Kenneth French ("Decedent," or "Kenneth") inside of a Costco warehouse store in Corona, California. (See id.) On April 1, 2020, Plaintiffs filed a first amended complaint as of right. ("FAC," Dkt. No. 10.) Following the Court's order dismissing Plaintiffs' federal causes of action (Dkt. No. 19), Plaintiffs filed a second amended complaint on July 20, 2020. ("SAC," Dkt. No. 21.) On January 8, 2021, the Court dismissed-in-part one of Plaintiffs' municipal liability claims, dismissed Plaintiffs' second municipal liability claim and negligent training, hiring, and retention claim, and granted Plaintiffs leave to amend. (Dkt. No. 45.) On January 18, 2021, Plaintiffs filed a third amended complaint, the operative complaint. ("TAC," Dkt. No. 46.)

---

Page 1 of 7                **CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk mg

Ex. 6, Page 210

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 212 of 501
Page ID #:3179
Case 5:20-cv-00416-JGB-SP   Document 188   Filed 02/21/24   Page 2 of 7   Page ID #:4462

The TAC asserted twelve causes of action: (1) unreasonable search and seizure, unlawful detention and arrest in violation of 42 U.S.C. § 1983 ("Section 1983"); (2) unreasonable search and seizure, excessive force in violation of Section 1983; (3) unreasonable search and seizure, denial of medical care in violation of Section 1983; (4) interference with familial relationship in violation of the Fourteenth Amendment's Substantive Due Process Clause and Section 1983; (5) municipal liability, unconstitutional custom, practice, or policy in violation of Section 1983; (6) false arrest/false imprisonment; (7) battery, including wrongful death; (8) negligence, including wrongful death; (9) negligent infliction of emotional distress; (10) violation of the Bane Act, Cal. Civil Code § 52.1; (11) negligent training, hiring, and retention; and (12) loss of consortium. (See TAC.)

On October 4, 2021, the Court granted in part and denied in part the City's motion for summary judgment. ("MSJ Order," Dkt. No. 92.) The Court dismissed Plaintiffs' municipal liability claim (Count Five), but denied summary judgment on Plaintiffs' state law claims (Counts Six through Twelve). (Id. at 16.)

On October 19, 2021, a jury trial began on Plaintiffs' federal and state law claims. (Dkt. No. 106.) On October 26, 2021, following the parties' presentation of the evidence, Plaintiffs voluntarily dismissed their Section 1983 claims for unlawful detention and arrest (Count One), denial of medical care (Count Three), and interference with familial relationship (Count Four), as well as their state law claims for false arrest/false imprisonment (Count Six) and negligent training, hiring, and retention claim (Count Eleven). (Dkt. No. 129, 10-26-21 RT 550:4-20.) Plaintiffs' remaining six claims were as follows: (1) excessive force under Section 1983 (Count Two), (2) battery (Count Seven), (3) negligence (Count Eight), (4) negligent infliction of emotional distress ("NIED") (Count Nine), (5) violation of the Bane Act (Count Ten), and (6) loss of consortium (Count Twelve). (10-26-21 RT 550:21-551:13.)

The Court also heard arguments on the parties' respective motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) ("Rule 50a") on October 26, 2021. The Court granted in part and denied in part Plaintiffs' motion and denied the City's motion, ruling that (1) Mr. Sanchez's use of force was unreasonable and, therefore, excessive, and (2) Mr. Sanchez's excessive force caused Plaintiffs' and Kenneth's injuries as a matter of law. (Id. 562:7-25.) The Court determined that, as a result, the corresponding elements for Plaintiffs' battery, negligence, NIED, and Bane Act claims were also satisfied as a matter of law. (Id. 562:12-16.) However, the Court found that disputed factual issues required the jury to determine whether Mr. Sanchez acted under color of state law and in the course and scope of his employment. (Id. 563:1-3.)

On October 27, 2021, the jury returned a verdict for Plaintiffs. ("Special Verdict," Dkt. No. 114.) The jury answered, "Yes," to all questions: whether Mr. Sanchez acted under color of state law during the incident, whether Mr. Sanchez acted within the course and scope of his employment with the City as a peace officer during the incident, whether he negligently inflicted severe emotional distress on Plaintiffs, and whether Plaintiffs suffered loss of consortium as a

Ex. 6, Page 211

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 213 of 501
Page ID #:3180
Case 5:20-cv-00416-JGB-SP    Document 188    Filed 02/21/24    Page 3 of 7    Page ID #:4463

result of Mr. Sanchez's use of unreasonable force against them.  (Id. at 3–4.)  The jury awarded $17,002,000.00 in total damages: (1) $4,000,000.00 for Kenneth's pre-death pain and suffering and loss of life damages; (2) $4,771,000.00 in compensatory damages for Paola French; (3) $400,000.00 in loss of consortium damages for Paola French; (4) $5,431,000.00 in compensatory damages for Russell French; (5) $400,000.00 in loss of consortium damages for Russell French; and (6) $2,000,000.00 for Plaintiffs' past and future wrongful death damages.  (Id. at 5–7.)  On November 29, 2021, the Court entered judgment consistent with the Special Verdict.  (Dkt. No. 133.)

On December 27, 2021, the City timely filed a motion for judgment as a matter of law.  (See Dkt. No. 138.)  On January 24, 2022, Plaintiffs filed a motion for attorneys' fees.[1]  (See Dkt. No. 145.)  On May 10, 2022, the Court denied the City's motion for a judgment as a matter of law and granted in part Plaintiffs motion for attorneys' fees.  ("Fees Order," Dkt. No. 165.)  The Court awarded Plaintiffs' counsel $1,922,931.00 in attorneys' fees.  (Id.)

On June 7, 2022, the City filed a notice of appeal to the Ninth Circuit Court of Appeals.  ("Fees Order Appeal," Dkt. No. 168.)  On October 16, 2023, the Ninth Circuit affirmed this Court's Fees Order (Dkt. Nos. 178-180) and granted appellees' motion to transfer consideration of attorneys' fees on appeal to this Court (Dkt. No. 181).

On January 18, 2024, Plaintiffs filed this Motion.  (Motion.)  In support, Plaintiffs filed the following:

- Declaration of Carol A. Sobel with attached exhibits ("Sobel Decl.," Dkt. No. 185-1);
- Declaration of Dale K. Galipo with attached exhibits ("Galipo Decl.," Dkt. No. 185-21);
- Declaration of John Fattahi with attached exhibits ("Fattahi Decl.," Dkt. No. 185-25);
- Declaration of Eric Valenzuela ("Valenzuela Decl.," Dkt. No. 185-30); and
- Declaration of Renee V. Masongsong with attached exhibit ("Masongsong Decl.," Dkt. No. 185-31).

On February 5, 2024, the City opposed the Motion.  ("Opposition," Dkt. No. 186.)  On February 6, 2024, Plaintiffs replied.  ("Reply," Dkt. No. 187.)  In support, Plaintiffs filed the declaration of John Fattahi ("Fattahi Reply Decl.," Dkt. No. 187-1.)

## II.    DISCUSSION

Plaintiffs move for attorneys' fees as the prevailing party on appeal.  (See Motion.)  The Court considers whether the requested fees are reasonable.

---

[1] Plaintiffs initially filed the attorneys' fees motion as a motion for application to tax costs, but filed a notice of errata to clarify that it is a motion for attorneys' fees.  (Dkt. No. 149.)

Ex. 6, Page 212

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 214 of 501
Page ID #:3181
Case 5:20-cv-00416-JGB-SP   Document 188   Filed 02/21/24   Page 4 of 7   Page ID #:4464

## A.  Legal Standard

In general, courts apply the "American Rule," where "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).  Under 42 U.S.C. § 1988 ("Section 1988"), a court may, in its discretion, award reasonable attorneys' fees in a suit seeking to vindicate rights under 42 U.S.C. § 1983.  Braunstein v. Ariz. Dep't of Transp., 683 F.3d 1177, 1187 (9th Cir. 2012); 42 U.S.C. § 1988(b).  Plaintiffs who prevail on a Bane Act claim are also entitled to attorneys' fees.  Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1112 (9th Cir. 2014) (citing Cal. Civ. Code § 52.1(h)).

The customary method of determining the reasonableness of attorneys' fees under either 42 U.S.C. § 1988 or the Bane Act is the lodestar method.  Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006) (Section 1988); Chaudhry, 751 F.3d 1096 (Bane Act).  Under this method, a court multiplies "the time spent" with the "reasonable hourly compensation of each attorney involved in the presentation of the case." Hensley, 461 U.S. at 433.  This lodestar figure is "presumptively reasonable." Id.  "The district court may then adjust [the lodestar] upward or downward based on a variety of factors." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008).  These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."

Id.  Because "California law allows for a multiplier of the lodestar to compensate for the risk of contingent representation," the Ninth Circuit allows a "a plaintiff [who] succeeds on both federal and state claims" to seek "the state-law multiplier." Chaudhry, 751 F.3d at 1112 (citing Ketchum v. Moses, 24 Cal. 4th 1122, 1133 (2001), and Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1478–79 (9th Cir. 1995)).  The fee applicant holds the "burden of showing that the claimed rate and number of hours are reasonable." Blum v. Stenson, 465 U.S. 886, 897 (1984).

//
//
//
//
//
//
//

| **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk mg

Ex. 6, Page 213

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 215 of 501
Page ID #:3182
Case 5:20-cv-00416-JGB-SP   Document 188   Filed 02/21/24   Page 5 of 7   Page ID #:4465

## B.  Lodestar Analysis

Plaintiffs' counsel requests $596,655.00 in attorneys' fees for 395.5 hours worked. (See Reply at 3.)  The requested fee amount includes time associated with drafting the Reply and represents the lodestar figure multiplied by a 1.5 enhancement, as detailed below:

| Attorney / Biller | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 71 | $1,400.00 | $99,400.00 |
| John Fattahi | Attorney | 212.4 | $975.00 | $207,090.00 |
| Eric Valenzuela | Attorney | 44 | $800.00 | $35,200.00 |
| Renee Masongsong | Attorney | 70.1 | $800.00 | $56,080.00 |
| **SUBTOTAL** | | **395.5** | | **$397,770.00** |
| 1.5 Multiplier | | | | $198,885.00 |
| **TOTAL** | | | | **$596,655.00** |

(Reply at 3.)

The City argues that the requested fee award is unreasonable because of block-billing. (Opposition at 5.)

### 1.  Previously Approved Rates

On May 10, 2022, the Court granted in part Plaintiffs' post-trial motion for attorneys' fees and awarded the following:

| Attorney / Biller | | Revised Hours | Hourly Rate | Revised Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 547.3 | $1,100.00 | $602,030.00 |
| John Fattahi | Attorney | 37.4 | $785.00 | $29,359.00 |
| Renee v. Masongsong | Attorney | 461.5 | $600.00 | $276,900.00 |
| Eric Valenzuela | Attorney | 457.8 | $700.00 | $320,460.00 |
| Alejandro Monguia | Legal Assistant | 10.9 | $200.00 | $2,180.00 |
| Karen Slyapich | Legal Assistant | 171.7 | $200.00 | $34,340.00 |
| Santiago Laurel | Legal Assistant | 32.05 | $200.00 | $6,410.00 |
| Marielle Sider | Legal Intern | 68.5 | $150.00 | $10,275.00 |
| **SUBTOTAL** | | **1,787.15** | | **$1,281,954.00** |
| 1.5 Multiplier | | | | $640,977 |
| **TOTAL** | | | | **$1,922,931.00** |

(Fees Order at 29.)

//
//
//

Ex. 6, Page 214

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 216 of 501
Page ID #:3183
Case 5:20-cv-00416-JGB-SP   Document 188   Filed 02/21/24   Page 6 of 7   Page ID #:4466

### 2. Hourly Rate

Reasonable fees under Section 1988 are calculated according to the prevailing market rates in the relevant legal community.  Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  Because "the relevant community is the forum in which the district court sits," Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010), the prevailing rates in the Central District of California control here.  Plaintiffs request rates that are slightly higher than the Court awarded in 2022—a $300 increase per hour for Mr. Galipo; a $190 increase per hour for Mr. Fattahi; a $100 increase per hour for Mr. Valenzuela; a $200 increase per hour for Ms. Masongsong.  (Motion at 10.)  The City does not contest Plaintiffs' requested rates.  (See Opposition.)  Plaintiffs argue that these rates are reasonable based on two years of inflation and rate increases, along with the fact that this request pertains to appellate proceedings.  (Id.)  The Court agrees and concludes that Plaintiffs' requested rates are reasonable.

### 3. Hours Billed

Plaintiffs' counsel requests attorneys' fees for a total of 395.5 hours worked on the appeal in this case.  (Reply at 3.)  The City argues that these hours should be reduced because they include impermissible block billing.  (Opposition at 4-6.)

The City argues that Mr. Galipo has impermissibly block-billed time.  (Opposition at 4-6.)  In general, courts look unfavorably on block billing in timesheets because it "does not allow the Court to scrutinize the amount of time spent performing each task." Rahman v. FCA US LLC, -- F. Supp. 3d --, 2022 WL 1013433, at *4 (C.D. Cal. Mar. 29, 2022) (internal citations omitted).  A court may "reduc[e] or eliminat[e] certain claimed hours" based on such billing practices, but it may not "deny[] all fees."  Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008), overruled on other grounds by Arizona v. ASARCO LLC, 773 F.3d 1050 (9th Cir. 2014).  However, a court need not reduce hours for block-billing if it can determine the reasonableness of the hours spent on each task.  See Donastorg v. City of Ontario, 2021 WL 6103545, at 13–14 (C.D. Cal Sept. 2, 2021).

The City challenges Mr. Galipo's time entries for "oral argument preparation" as overbroad.  (Opposition at 5.)  The Court finds that Mr. Galipo's entries are reasonable and do not constitute block-billing.  See Donastorg, 2021 WL 6103545, at *14 (finding reasonable Mr. Galipo's 224.8 hours billed for "trial and trial preparation" over 17 days).  Thus, the Court will not reduce Mr. Galipo's hours on this basis.

### 4. Multiplier

Plaintiffs' counsel's lodestar is $397,770.00.  Plaintiffs' counsel seeks a 1.5 multiplier of the lodestar to bring their total requested fee amount to $596,655.00.  (Reply at 3.)  The City does not contest Plaintiffs' 1.5 multiplier.  (See Opposition.)  The Court previously analyzed and approved a 1.5 multiplier in this case.  (Fees Order at 29.)  Accordingly, the Court applies a 1.5 multiplier to the lodestar calculation of $397,770.00 for a total award of $596,655.00.

---

Ex. 6, Page 215

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 217 of 501
Page ID #:3184
Case 5:20-cv-00416-JGB-SP   Document 188   Filed 02/21/24   Page 7 of 7   Page ID #:4467

In sum, the Court **GRANTS** the Motion as follows:

| Attorney / Biller | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Dale K. Galipo | Attorney | 71 | $1,400.00 | $99,400.00 |
| John Fattahi | Attorney | 212.4 | $975.00 | $207,090.00 |
| Eric Valenzuela | Attorney | 44 | $800.00 | $35,200.00 |
| Renee Masongsong | Attorney | 70.1 | $800.00 | $56,080.00 |
| **SUBTOTAL** | | **395.5** | | **$397,770.00** |
| 1.5 Multiplier | | | | $198,885.00 |
| **TOTAL** | | | | **$596,655.00** |

### III.    CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiffs' Motion and **AWARDS** Plaintiffs' counsel $596,655.00 in attorneys' fees.  The February 26, 2024 hearing is **VACATED**.

**IT IS SO ORDERED.**

Ex. 6, Page 216

# EXHIBIT 10

**EXHIBIT A**

*Austin Dicker v. TuSimple Holdings, Inc., et al.*, Case No. 3:22-cv-01300-BEN-MSB
Robbins Geller Rudman & Dowd LLP
Inception through October 18, 2024

| *NAME* | | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|
| Albert, Michael | (P) | 20.70 | 785 | $        16,249.50 |
| Caringal, Jennifer N. | (P) | 928.80 | 835 | 775,548.00 |
| Gusikoff Stewart, Ellen A. | (P) | 119.90 | 1200 | 143,880.00 |
| Myers, Danielle S. | (P) | 60.10 | 1075 | 64,607.50 |
| Olts, Lucas F. | (P) | 1,284.20 | 945 | 1,213,569.00 |
| Robbins, Darren J. | (P) | 302.50 | 1400 | 423,500.00 |
| Sanchez, Juan Carlos | (P) | 54.50 | 785 | 42,782.50 |
| Dolitsky, Kenneth P. | (A) | 10.30 | 400 | 4,120.00 |
| Geiger, Heather G. | (A) | 309.00 | 540 | 166,860.00 |
| Johnson, Stephen D. | (A) | 146.30 | 400 | 58,520.00 |
| Petix, Andrew T. | (SA) | 28.80 | 450 | 12,960.00 |
| Jennette, Heather J. | (FA) | 10.20 | 650 | 6,630.00 |
| Nguyen, Lacy | (SUA) | 11.00 | 185 | 2,035.00 |
| Economic Analysts | | 39.10 | 315-470 | 16,083.00 |
| Research Analysts | | 12.80 | 325 | 4,160.00 |
| Investigators | | 488.10 | 325-350 | 167,522.50 |
| Litigation Support | | 17.20 | 315-415 | 5,878.00 |
| Paralegals | | 352.80 | 360-410 | 141,343.00 |
| Document Clerks | | 17.40 | 160 | 2,784.00 |
| Shareholder Relations | | 4.00 | 110 | 440.00 |
| *TOTAL* | | *4,217.70* | | *$  3,269,472.00* |

(P) Partner
(A) Associate
(SA) Staff Attorney
(FA) Forensic Accountant
(SUA) Summer Associate

# EXHIBIT 11

# Galvan v. Corrigan

Superior Court of California, County of Los Angeles

June 21, 2024, Decided; June 21, 2024, Filed

Case No.: BC703891, consolidated with 19STCV07689

**Reporter**

2024 Cal. Super. LEXIS 59325 *; 2024 LX 120357

RICHARD GALVAN, Plaintiff, v. DENNIS CORRIGAN, Defendant;RICHARD GALVAN, Plaintiff v. UNITED PARCEL SERVICE, et. al., Defendants

**Judges:  [*1]** KRISTIN S. ESCALANTE, SUPERIOR COURT JUDGE.

**Opinion by:** KRISTIN S. ESCALANTE

# Opinion

**ORDER ON PLAINTIFF'S MOTIONS FOR ATTORNEY FEES AND FOR PREJUDGMENT INTEREST**

**MOTION FOR ATTORNEY FEES**

Plaintiff's Motion for Attorney Fees is GRANTED in the reduced amount of S1,220,227.50.

## I. RELEVANT PROCEDURAL HISTORY

On April 25, 2018, the case *Galvan v. Corrigan*, Case No. BC703891 was filed by the Law Offices of Kevin Riva on behalf of plaintiff Richard Galvan against his co-worker Dennis Corrigan for assault, battery, and other related claims. On March 5, 2019, Shegerian & Associates filed *Galvan v. United Parcel Services*, Case No. 19STCV07689 against Galvan's employer United Parcel Service, Galvan's supervisor. John Pipkin, and co-worker Dennis Corrigan for violation of Labor Code section 1102.5, wrongful termination, and other related claims. The claims arose out of UPS's termination of Galvan on January 23, 2017 in retaliation for his complaints about violations of law. The two actions were consolidated and the claims against Corrigan and Pipkin were eventually dismissed.

Trial proceeded on the Labor Code section 1102.5 claim against UPS. The jury returned a verdict of $5,450,000 in compensatory damages. The recovery was ultimately reduced to $3,362,602.96 after post-trial **[*2]** motions and phase two of the trial regarding offsets for workers' compensation.

## II. WHETHER PLAINTIFF IS ENTITLED TO FEES

Ex. 6, Page 220

2024 Cal. Super. LEXIS 59325, *2

At the time this action was filed, in March 2019, Labor Code section 1102.5 did not have any provision allowing a prevailing party to be awarded attorneys fees. The statute was amended effective January 1, 2021 to add section 1102.5, subdivision (j), which provides: "The court is authorized to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of these provisions." The parties dispute whether this provision applies to an action that was filed before the effective date , but where the verdict and judgment were obtained after the effective date.

"It has long been recognized that a new statute governing the standard for awarding attorney's fees applies to actions pending on the statute's effective date." *(Dragones v. Calkins* (2024) 98 Cal.App.5th 1075, 1083-1084.) The California Supreme Court has "'authoritatively held' that in the absence of express legislative intent to the contrary, 'a new statute authorizing an award of attorney fees' or a statute 'increasing or decreasing litigation costs, including attorneys' fees' applies to actions pending at the time of the enactment." *(USS-Posco Industries v. Case* (2016) 244 Cal.App.4th 197, 220-221*(USS-Posco)*, citing *Stockton Theaters, Inc. v. Palermo* (1956) 47 Cal.2d 469, 477, *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, and a number of Court of Appeal cases.)

*USS-Posco* explained: **[\*3]**  "[The California Supreme Court and many, many Courts of Appeal have treated legislation affecting the recovery of costs, including attorney fees, as addressing a 'procedural' matter that is 'prospective' in character and thus not at odds with the general presumption against retroactivity." The court applied that principle to a change in Labor Code section 218.5 affecting a defendant's right to obtain attorney's fees, and concluded that the version of the statute that was in effect at the time the fee motion was ruled upon had to be applied. *(USS-Posco Industries, supra*, 244 Cal.App.4th at pp. 220-221; *see also Dragones, supra*, 98 Cal.App.5th at pp. 1083-1084, n.3.)

UPS argues that the Legislature has expressly indicated its intent that that the section 1102.5, subdivision (j) should not be applied to actions that were filed before its effective date. Section 4 provides of the Labor Code provides:

"No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible."

Courts have interpreted this statute as a rule against retroactive application of provisions of the Labor Code, akin to Civil Code section 3. Labor Code section 4 applies not just to the original provisions of the Labor Code but also to amendments.

But as noted, courts **[\*4]**  have interpreted the application of a newly enacted attorneys fee clause as a procedural matter that is prospective in character and thus applying a new attorneys fees provision to existing litigation is not considered to be a retroactive application of the statute. Thus, for example, the *USS-Posco* court applied the amended version of an attorney fees provision in the Labor Code to a case that was filed before the amendment took place. The court recognizes that construing a new attorney fee provision as a procedural change that only has prospective effect is to some extent a legal fiction. As the court in *Dragones* explained:

Ex. 6, Page 221

2024 Cal. Super. LEXIS 59325, *4

"The *USS-Posco* court pointed out an anomaly in the case law: Courts applying an amended attorney fee statute to a case currently pending do not deem such application "'retroactive'"; instead, they term such application "'prospective'" because an attorney fee statute is deemed to address a 'procedural' matter that is 'prospective' in character and thus not at odds with the general presumption against **retroactivity.**' [Citation.] Courts have consistently adhered to this terminology, even though, as the *USS-Pasco* court noted, 'legislation changing when **attorney fees** are available could readily **[*5]** be said to change the legal consequences of past conduct and substantially affect preexisting rights and obligations.' [Citation.] Notwithstanding the oddity in nomenclature and its potential for masking a material change in rights and obligations, the *USS-Posco* court followed the well-established rule, applying the amended Labor Code attorney fee statute to the pending case. [Citation.]."

*(Dragones, supra*, 98 Cal.App.5th at pp. 1083-1084, n.3.)

However, as the *Dragones* Court noted, this "oddity" is supported by a long line of authority, including cases favorably cited and relied upon by the Supreme Court in *Woodland Hills Residents Assn., Inc., supra*, 23 Cal.3d 917 (citing and relying on *Olson v. Hickman* (1972) 25 Cal.App.3d 920, 922). The court follows this longstanding authority here. (The court is not aware of any published decisions that have considered the application of these principles to section 1102.5, subdivision (j), but there are a number of cases currently pending before the Court of Appeal.)

UPS also argues that the Legislature indicated its intent that the new provision should not be applied to existing actions in a Senate Judiciary Committee Report for 2019 California Assembly Bill No. 1947. The court does not read the Committee Report in the way UPS does. AB 1947 proposed two changes to claims under Labor Code section 1102.5 — the addition of the attorney fee provision and the lengthening of **[*6]** the statute of limitations for the filing of a complaint with the Division of Labor Standards Enforcement. While there is some ambiguity. the portion of the Committee Report cited by UPS appears to apply solely to the statute of limitations issue. The report states:

"The bill is silent about its effect on pre-existing claims. In the absence of clear legislative intent to the contrary, a statute is presumed to operate only prospectively. *(Aetna Cas. & Sur. Co. v. Industrial Acc. Commission* (1947) 30 Cal.2d 388, 393.) In the specific context of legislation. like this bill, that extends a statute of limitation, the California Supreme Court has written that: [enlargement of statute of limitations period does not revive lapsed claims. The extensive quotation is omitted.] Applying these rules to this bill, it would automatically extend the time to file for incidents that occurred before the effective date of the change in law, but for which the limitations period has not expired. On the other hand, claims based on incidents for which the existing period has expired, or will expire prior to enactment of this bill, would not be revived."

That section of the Senate Judiciary Report says nothing about the attorney fees provision, and the court cannot interpret it as an **[*7]** explicit statement that the new attorney fees provision should not apply to pending cases. (In the future, counsel should request that the court take judicial notice of legislative history materials and should provide a copy for the court.)

Ex. 6, Page 222

## III. AMOUNT OF FEES

The court has carefully reviewed the time records. The court finds that the number of hours recorded by attorneys Shegerian, Madjidi, Hale, and Rodriguez were reasonable (except the court disallows time for local travel, including to and from the courthouse for trial).

The court awards no fees for the time of Anthony Nguyen, who recorded 29.6 hours of time to the case. Virtually all of the time billed by Mr. Nguyen appears to be for reviewing litigation documents prepared by someone else. It does not appear from the billing entries that Mr. Nguyen added value to the case, and in any case the time appears to be duplicative of that billed by other lawyers to the case. The court strikes the time for Rosie Zilifvan for the same reason.

The court reduces the time of John David and Beatriz Alfaro. Their staffing on the case appears to have resulted in inefficiencies and duplicative time for internal meetings and internal correspondence **[*8]** and the duplicative review materials that was also reviewed by other lawyers.

As to rates, the court finds that Mr. Shegerian's performance at trial was exceptional and commands premium rates. Ms. Madjidi also performed well at trial, and commands higher-than-average rates than other well-performing lawyers at her experience level. Further, both were extremely well prepared and had an exceptional command of the facts and details in the case. The rates set forth in the chart below for Mr. Shergarian and Ms. Madjidi reflect the excellence of their work in the courtroom, their reputation in the community, and other relevant factors. Ms. Madjidi also ably argued the scores of motions in this case and was well-versed in the facts and relevant legal authority. (The comment in the following paragraph does not apply to Ms. Madjidi's work.)

The court finds that the work of the other lawyers at the firm (including the written work product on motions and other papers prepared in the case), while competent, is not at the same elite level as Mr. Shegerian's trial work. This is not meant as a criticism, but instead explains why the court has not awarded rates at the levels sought for the lawyers preparing **[*9]** the papers. In the end, the firm achieved an exceptional result for its client, and the papers were as good as they needed to be to achieve that result, but the rates that are sought for much of the written work product are not justified, in the court's view.

The court is extremely familiar with the rates in the Los Angeles legal market and sets rates based on the court's assessment of the rates that the work would command on the open market. The court has considered all of the relevant factors, and finds that a multiplier is not warranted.

The following chart sets forth the calculation of the fees.

| Lawyer | Gross Hours | Deductions for travel | Hours Net of Travel | Hourly rate | Total |
|---|---|---|---|---|---|
| Shegarian | 453.9 | 53.5 | 400.4 | $1,300 | $520,650.00 |
| Madjidi | 703.7 | 46.5 | 657.2 | $750 | $492,900.00 |
| Matthew Hale | 305.2 | 41.7 | 25 3.> | $475 | $120,317.50 |
| Griselda | 134 | (none | 134 | $475 | $63,650.00 |

Ex. 6, Page 223

| Lawyer | Gross Hours | Deductions for travel | Hours Net of Travel | Hourly rate | Total |
|---|---|---|---|---|---|
| Rodriguez | | identified by defendant in opposition) | | | |
| John David | 46.8 (reduced) | (already deducted) | 46.8 | $350 | $16,380.00 |
| Beatriz Alfaro | 15 (reduced) | | 15 | $350 | $5,250.00 |
| Bryan Kirsh | 2.7 | | 2.7 | $400 | $1,080.00 |
| | | | TOTAL 1,492 | | TOTAL $1,220,227.50 |

## MOTION FOR PREJUDGMENT INTEREST

Plaintiff's Motion for Prejudgment Interest Pursuant to Civil Code Section 3291 and 3287 is DENIED.

## A. REQUEST FOR PREJUDGMENT INTEREST PURSUANT TO CIVIL CODE SECTION 3291

Plaintiff seeks prejudgment **[*10]** interest on the portion of the judgment for non-economic damages pursuant to Civil Code section 3291.

Section 3291 provides in relevant part:

"In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any . . . corporation . . . , whether by negligence or by willful intent of the . . . corporation . . . , and whether the injury was fatal or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section. [¶] If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiffs first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

On June 2, 2020, Galvan served an offer to compromise under section 998 in the amount of $1,959,999, which defendant rejected. Judgment was entered in the amount of $3,362,602.96, of which $2,500,000 was for non-economic damages. Plaintiff argues that section 3291 applies to the non-economic **[*11]** damages.

The court disagrees. This is not an "action brought to recover damages for personal injuries," and thus section 3291 does not apply.

*Holmes v. General Dynamics Corporation* (1993) 17 Cal.App.4th 1418, 1435-1436 is closely on point. In that case, the defendant fired the plaintiff in retaliation for plaintiff's disclosure to management that the company had violated the False Statements Act (18 USC § 1001.) Plaintiff

Ex. 6, Page 224

brought suit for wrongful termination in violation of public policy, and sought damages for lost wages and emotional distress. The jury awarded $106,000 in lost wages, $200,000 in emotional distress, and $500,000 in punitive damages. The court affirmed the trial court's decision denying prejudgment interest under section 3291, finding a tortious wrongful termination claim based on retaliation for reporting violations of law is not an action to recover personal injury damages within the meaning of the statute. "A wrongful termination claim primarily involves the infringement of property rights, not personal injury." *(Id.* at p. 1436.) "I he court stated: "We reach the foregoing conclusion even though we are well aware that GD's conduct caused Holmes to suffer extensive personal damages. As *[Gourly v. State Farm Mutual Auto Insurance Co.* (1991) 53 Cal.3d 121, 125-126] makes clear, in analyzing whether an action falls within the ambit of section 3291 a court must focus on the nature **[*12]** of the tort rather than the type or extent of the damages suffered in the particular case." (Holmes, p. 1436-1437.)

Here, the nature of the tort was identical to the nature of the tort at issue in Holmes. As in Holmes, plaintiff contended he was wrongfully terminated in retaliation for his numerous complaints about violations of law. Although plaintiff brought his claim under Labor Code section 1102.5 instead of the common law, that difference in immaterial in assessing the nature of the tort.

Plaintiff contends that the claim is one for personal injury because one of the violations of law that plaintiff complained about was a battery by his co-worker, Dennis Corrigan. But the claim that was tried to the jury was not a battery claim; it was a claim for wrongful termination. The fact that one of the violations complained of was battery does not change the nature of the tort.

## B. REQUEST FOR PREJUDGMENT INTEREST PURSUANT TO CIVIL CODE SECTION 3287

The court finds that the motion for prejudgment interest pursuant to Civil Code section 3287 is untimely. The court denies the motion on that ground.

"[R]equests for prejudgment interest under section 3287 by a successful plaintiff must be made by way of motion prior to entry of judgment, or the request must be made in the form of a motion for new **[*13]** trial no later than the time allowed for filing such a motion." *(North Oakland Medical Center Clinic v. Roger* (1998) 65 Cal.App.4th 824, 831.) The motion may also be brought as a motion for a modification of a judgment under Code of Civil Procedure section 657. *(Watson Bowman Acme Corp. v. RGW Construction, Inc.* (2016) 2 Cal.App.5th 279, 297.) The motion does not need to be labeled as a motion for a new trial or a motion for modification of a judgment, but the motion must be brought within the time for such a motion. *(Id.)*

Here, judgment was entered on January 4, 2024. The clerk mailed notice of entry of judgment on the same day. Plaintiff did not make a motion for prejudgment interest pursuant to section 3287 prior to entry of judgment, thus any motion for prejudgment interest had to be made within the time for a motion for a new trial or for a modification of a judgment.

Under Code of Civil Procedure section 659, a party intending to move for a motion for a new trial shall file and serve a notice of intention to move for a new trial, designating the grounds upon which the motion shall be made "within 15 days of the date of mailing notice of entry of judgment by the clerk." Here, defendant timely filed and served a notice of intent to move for a new trial on

January 18, 2024. Plaintiff had 15 days after the service of notice upon him to serve a notice of intention to move for a new trial. Plaintiff timely served a **[*14]** notice of intent to move for a new trial on January 19, 2024. Section 659a provides that within 10 days of filing the notice, the moving party must serve and file any briefs or accompanying documents. Plaintiff filed a brief and evidence in support of his motion on January 29, 2024. ***Plaintiff did not seek prejudgment interest pursuant to Civil Code section 3287 in that motion***. Further, the motion was later withdrawn.

Plaintiff argues that the time for a motion for prejudgment interest runs from the time the amended judgment was entered. The judgment was amended after plaintiff accepted the Court's remittitur which reduced the amount of future non-economic damages. Acceptance of the remittitur and entry of an amended judgment did not reopen the time for a new motion for a new trial or modification of the judgment.

Plaintiff also argued the parties stipulated that the motion could be brought after the amended judgment. The court finds that there was no stipulation between the parties to allow the motion to be brought at a date after the expiration of the time for the motion for a new trial. Thus, *Steiny & Co., Inc, v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285 is inapplicable.

In sum, the motion for prejudgment interest is DENIED.

Dated: JUN 21 2024

/s/ Kristin S. Escalante

**KRISTIN S. ESCALANTE [*15]**

**SUPERIOR COURT JUDGE**

---

**End of Document**

# EXHIBIT 12

# Depto v. St. Paul the Apostle Church

Superior Court of California, County of Los Angeles

November 4, 2025, Filed

BC691437

**Reporter**

2025 Cal. Super. LEXIS 69715 *; 2025 LX 561132

FRANK DEPTO v. ST PAUL THE APOSTLE CHURCH ET AL

**Counsel:  [*1]** For Plaintiff(s): Anthony Nguyen (Telephonic); Griselda S. Rodriguez (Telephonic).

For Defendant(s): WILL S. SKINNER (Telephonic).

**Judges:** Honorable Robert B. Broadbelt, Judge.

**Opinion by:** Robert B. Broadbelt

# Opinion

Minute Order

**NATURE OF PROCEEDINGS:** Hearing on Motion - Other for Determination that Defendants are Prevailing Parties and for Award of Costs filed by Defendants on 05-09-2025;; Hearing on Motion for Attorney Fees , Plus A Lodestar Multiplier of 2.0, and Expert Fees, Against Defendants filed by Plaintiff on 05-12-2025;

Case is called.

Counsel appearing today represent that they have seen the Court's posted tentative ruling. The matter is argued and stands submitted. The tentative ruling is adopted as the Order of the Court on grounds fully reflected therein, and it is signed and filed this day- as the Court's specially-prepared written order.

The Motion for Attorney Fees , Plus A Lodestar Multiplier of 2.0, and Expert Fees, Against Defendants filed by Plaintiff on 05-12-2025; filed by Frank Depto on 05/12/2025 is Granted.

The Motion re: for Determination that Defendants are Prevailing Parties and for Award of Costs filed by Defendants on 05-09-2025; filed by Archdiocese Of Los Angeles, St Paul The Apostle **[*2]**  Church, Saint Paul the Apostle Catholic School on 05/09/2025 is Denied.

The court considered the moving, opposition, and reply papers filed in connection with each motion.

REQUEST FOR JUDICIAL NOTICE

Ex. 6, Page 228

The court denies plaintiff Frank Depto's requests for judicial notice because they are not material to the court's disposition of his motion for attorney's fees. (Malek Media Group, LLC v. AXQG Corp. (2020) 58 Cal.App.5th 817, 825.)

BACKGROUND

Plaintiff Frank Depto ("Plaintiff") filed the operative Fifth Amended Complaint in this action on September 5, 2024.

The court held a trial by jury in this action on January 28-30, February 3-6, 10-11, 13, 18-20, 24-27, and March 3-6 and 10-12, 2025. Pursuant to the jury's verdicts, the court entered judgment in favor of Plaintiff and against defendants St. Paul the Apostle Church, The Roman Catholic Archbishop of Los Angeles, a Corporation Sole, and St. Paul the Apostle School ("Defendants") in the amount of $763,582. (March 13, 2025 Judgment, p. 2:1-4.)

Two motions are now pending before the court. First, on May 9, 2025, Defendants filed their motion for determination that they are the prevailing parties and for costs. Second, on May 12, 2025, Plaintiff filed his motion for attorney's fees and expert fees.

Because Defendants' **[\*3]** motion asserts that Plaintiff cannot recover attorney's fees incurred after the date that Defendants served their offer to compromise, the court addresses that motion first.

MOTION FOR DETERMINATION THAT DEFENDANTS ARE THE PREVAILING PARTIES AND FOR COSTS

Defendants move the court, pursuant to Code of Civil Procedure section 998, for an order (1) determining that they are the prevailing parties in this case, and (2) awarding post-offer costs, including expert witness fees, in favor of Defendants.

"The purpose of section 998 is to promote early resolution of litigation by encouraging parties to make—and accept—reasonable settlement offers." (Chen v. BMW of North America, LLC (2022) 87 Cal.App.5th 957, 961.) "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover their postoffer costs and shall pay the defendant's costs from the time of the offer." (Code Civ. Proc., § 998, subd. (c)(1).)

The court finds that Defendants have not shown that they are entitled to the requested relief under Code of Civil Procedure section 998.

As noted by Defendants, their Offer to Compromise stated that "[e]ach party shall bear its or his own fees and costs incurred in this action."[1] (Skinner Decl., Ex. A, Offer to Compromise, pp. 1:25-2:3, 2:14.) The court, however, disagrees that this language **[\*4]** "excludes pre offer costs/attorneys' fees from the Section 998 analysis." (Reply, p. 2:17-19.) "Section 998, subdivision (c)(2)(A) provides: 'In determining whether the plaintiff obtains a more favorable judgment, the court or arbitrator shall exclude the postoffer costs.' As the Fourth District Court of Appeal has explained: 'By specifying postoffer costs are excluded for purposes of determining whether plaintiff obtained a more favorable judgment, the statute necessarily implies that preoffer costs are included. [Citation.]' [Citation.] Costs include attorney fees for purposes of

section 998. [Citation.]" (Hersey v. Vopava (2019) 38 Cal.App.5th 792, 798-799 [internal citations omitted].) Defendants did not cite law establishing that, when an offer to compromise excludes from its scope attorney's fees and costs, the court cannot add preoffer costs to the damages award in determining whether Plaintiff obtained a more favorable judgment. (Id. at pp. 795 [subject offers to compromise "specified the parties would bear their own costs and fees"], 799 [finding that the plaintiff obtained a more favorable judgment than the 998 offer—which "expressly excluded costs and attorney fees"—after adding preoffer costs].)

Thus, the court must calculate the preoffer costs in determining whether Plaintiff obtained a more **[*5]** favorable judgment. (Code Civ. Proc., § 998, subd. (c)(1).) The court further finds that Plaintiff may recover attorney's fees under Labor Code section 1102.5, subdivision (j), since section 1102.5 was amended to provide for the recovery of attorney's fees while this action was pending. (Winston v. County of Los Angeles (2024) 107 Cal.App.5th 402, 409 [California courts have consistently held that 'statutory provisions that alter the recovery of attorney fees are deemed procedural in nature and apply to pending litigation'"] [internal citations omitted], 410 ["We thus hold section 1102.5, subdivision (j) applies to matters pending on the amended statute's effective date . . . ."].) The court therefore includes the amount of reasonable, preoffer attorney's fees incurred by Plaintiff in determining whether he obtained a more favorable judgment.

Based on the evidence and arguments set forth in connection with Plaintiff's motion for attorney's fees, the court finds that Plaintiff has shown that he incurred preoffer attorney's fees in the amount of $441,282.50 between the period of September 11, 2017 to August 30, 2024 (i.e., the date that Defendants served their Offer to Compromise), consisting of (1) 36.3 hours billed by attorney Shegerian at the reasonable hourly rate of $1,500 ($54,450); (2) 23.3 hours billed by attorney Nguyen at the reasonable hourly rate of $1,200 **[*6]** ($27,960); (3) 142.9 hours billed by attorney Rodriguez at the reasonable hourly rate of $800 ($114,320); (4) 122.6 hours billed by attorney Kirsch at the reasonable hourly rate of $575 ($70,495); (5) 127.2 hours billed by attorney Yenoki at the reasonable hourly rate of $425 ($54,060); (6) 12.2 hours billed by attorney Tumanyan at the reasonable hourly rate of $600 ($7,320); (7) 157.1 hours billed by attorney Henderson at the reasonable hourly rate of $550 ($86,405); (8) 2.2 hours billed by attorney Takash at the reasonable hourly rate of $450 ($990); (9) 18.1 hours billed by attorney Guevara at the reasonable hourly rate of $425 ($7,692.50); (10) 5.5 hours billed by attorney Levy at the reasonable hourly rate of $450 ($2,475); (11) 7.5 hours billed by attorney Mangan at the reasonable hourly rate of $425 ($3,187.50); (12) 1.6 hours billed by attorney Jingozian at the reasonable hourly rate of $500 ($800); (13) 3.1 hours billed by attorney Eginli at the reasonable hourly rate of $575 ($1,782.50); (14) 3.1 hours billed by attorney Kingkade at the reasonable hourly rate of $550 ($1,705); (15) 3 hours billed by attorney Burga at the reasonable hourly rate of $400 ($1,200); and (16) 11.2 **[*7]** hours billed by attorney Ter-Mambreyan at the reasonable hourly rate of $575 ($6,440). (Shegerian Decl., Ex. 1, pp. 1-4 [billing records for attorney Shegerian], Ex. 2, pp. 1-2 [billing records for attorney Nguyen], Ex. 3, pp. 1-6 [billing records for attorney Rodriguez], Ex. 4, pp. 1-3 [billing records for attorney Kirsch], Ex. 5, pp. 1-6 [billing records for attorney Yenoki], Ex. 20 [billing records for attorney Tumanyan], Ex. 21 [billing records for attorney Henderson], Ex. 22 [billing records for attorney Takash], Ex. 23 [billing records for attorney Guevara], Ex. 24 [billing records for attorney Levy], Ex. 25 [billing records for attorney Mangan], Ex. 26 [billing records for attorney Jingozian], Ex. 27 [billing records for

attorney Eginli], Ex. 28 [billing records for attorney Kingkade], Ex. 29 [billing records for attorney Burga], and Ex. 30 [billing records for attorney Ter-Mambreyan].)

Thus, the court finds, after considering the amount of reasonable preoffer attorney's fees incurred by Plaintiff,[2] that Plaintiff obtained a more favorable judgment since (1) the jury awarded him $763,582 in damages, and (2) he incurred $441,282.50 in preoffer attorney's fees, which together **[*8]** amount to a total recovery of $1,204,864.50, thereby exceeding the $1,000,001.00 offered by Defendants.

Because Plaintiff obtained a more favorable judgment or award, the court denies Defendants' requests for relief pursuant to Code of Civil Procedure section 998. (Code Civ. Proc., § 998, subd. (c)(1).)

MOTION FOR ATTORNEY'S FEES AND EXPERT FEES

Plaintiff moves the court for an order awarding attorney's fees in his favor, to be paid by Defendants, in the total amount of $4,966,160, consisting of a lodestar amount of $2,483.080 and a lodestar multiplier of 2.0. Plaintiff also requests trial strategist fees of $66,500 and expert fees of $57,241.80.

First, the court finds that Plaintiff (1) is the prevailing party in this action since he obtained a net monetary recovery, and (2) may recover attorney's fees under Labor Code section 1102.5. (Code Civ. Proc., § 1032, subd. (a)(4); Lab. Code, § 1102.5, subd. (j) ["The court is authorized to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of these provisions"]; Winston, supra, 107 Cal.App.5th at p. 410.)

Second, the court finds that Plaintiff has established a lodestar figure (inclusive of both preoffer and postoffer attorney's fees) of $1,890,737.50.

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable **[*9]** hourly rate ..... ¿ The reasonable hourly rate is that prevailing in the community for similar work.¿ The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided."¿ (PLCM Group v. Drexler (2000) 22 Cal.4th 1084, 1095 (internal citations omitted); Reck v. FCA US LLC (2021) 64 Cal.App.5th 682, 691 ["To determine a reasonable attorney fee award, the trial court applies the lodestar method"].)¿ "[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous."¿ (Horsford v. Board of Trustees of California State Univ. (2005) 132 Cal.App.4th 359, 396.)¿¿¿¿¿

The court has reviewed the declarations of attorneys Shegerian, Nguyen, Rodriguez, Yenoki, and Kirsch regarding the education and experience of counsel. (Shegerian Decl., ¶¶ 2, 7, 42-52; Nguyen Decl., ¶¶ 2-3; Rodriguez Decl., ¶¶ 4-6; Yenoki Decl., ¶¶ 2-3, 5-6; Kirsch Decl., ¶¶ 2-6.) Upon review of those declarations, the court finds the reasonable hourly rates for Plaintiff's counsel to be as follows:

Attorney Shegerian: $1,500 hourly rate.

Attorney Nguyen: $1,200 hourly rate.

Ex. 6, Page 231

2025 Cal. Super. LEXIS 69715, *9

Attorney Rodriguez: $800 hourly rate.

Attorney Tumanyan: $600 hourly rate.

Attorney Kirsch: $575 hourly rate.

Attorney Henderson: $550 **[*10]** hourly rate.

Attorney Takash: $450 hourly rate.

Attorney Yenoki: $425 hourly rate.

Attorney Guevara: $425 hourly rate.

Attorney Levy: $450 hourly rate.

Attorney Mangan: $425 hourly rate.

Attorney Jingozian: $500 hourly rate.

Attorney Eginli: $575 hourly rate.

Attorney Kingkade: $550 hourly rate.

Attorney Burga: $400 hourly rate.

Attorney Ter-Mambreyan: $575 hourly rate.

Plaintiff's attorneys have billed a total of 2,179.3 hours. Defendants did not object to any specific billing entries, and instead have argued that (1) Plaintiff is not the prevailing party, and (2) Plaintiff overstaffed and over-litigated this case. As set forth above, the court has concluded that Plaintiff is the prevailing party. The court further finds that Plaintiff did not over-litigate this action, which was pending for over seven years before proceeding to trial, and that the fees requested are not, on their face, unreasonable. The court has also considered that this case was hard-fought by both Plaintiff and Defendants, justifying the attorney's fees sought.

The court has reviewed the billing records submitted by Plaintiff in support of this motion. The court finds that the total 17 hours incurred by attorney Yenoki to **[*11]** "Drive to Riverside" and "Drive to LA" were not reasonably expended because (1) Plaintiff did not explain why those fees were incurred, and (2) those fees do not appear to include time to travel to trial, which were separately billed by Yenoki. (Shegerian Decl., Ex. 5, PDF pp. 86 [Jan. 16, 19, 23, and 26, 2025 entries], 87 [Jan. 30, 2025 entry and Feb. 2 and 6, 2025 entries], 88 [Feb. 13 and 16, 2025 entries], 89 [Feb. 20, 23, and 27, 2025 entries], 90 [Mar. 2, 6, 9, and 12, 2025 entries].) The court finds that the other entries billed by Yenoki and the remaining attorneys are reasonable. Further, as set forth above, Defendants did not object to any specific entries supported by adequate argument and analysis explaining why such entries were unreasonable or unnecessary.

The court therefore finds that Plaintiff has established a total lodestar of $1,890,737.50 ((347.3 hours x Shegerian's $1,500 hourly rate = $520,950) + (458.7 hours x Nguyen's $1,200 hourly rate = $550,440) + (530.4 hours x Rodriguez's $800 hourly rate = $424,320) + (12.2 hours x

Ex. 6, Page 232

Tumanyan's $600 hourly rate = $7,320) + (131.8 hours x Kirsh's $575 hourly rate = $75,785) + (157.1 hours x Henderson's $550 hourly rate = **[*12]** $86,405) + (2.2 hours x Takash's $450 hourly rate = $990) + (459.2 hours x Yenoki's $425 hourly rate = $195,160) + (18.3 hours x Guevara's $425 hourly rate = $7,777.50) + (5.5 hours x Levy's $450 hourly rate = $2,475) + (7.5 hours x Mangan's $425 hourly rate = $3,187.50) + (1.6 hours x Jingozian's $500 hourly rate = $800) + (3.1 hours x Eginli's $575 hourly rate = $1,782.50) + (3.1 hours x Kingkade's $550 hourly rate = $1,705) + (13 hours x Burga's $400 hourly rate = $5,200) + (11.2 hours x Ter-Mambreyan's $575 hourly rate = $6,440)).[3]

Third, while the court acknowledges that this case was taken on a contingency basis and that Plaintiff's attorneys displayed skill in litigating this action, the court exercises its discretion to deny Plaintiff's request for a 2.0 multiplier. (Mikhaeilpoor v. BMW of North America, LLC (2020) 48 Cal.App.5th 240, 248 [setting forth factors a trial court may consider in adjusting the lodestar figure].)

Fourth, the court does not rule on Plaintiff's requests for expert fees and trial strategist fees because those costs may be sought by filing a Memorandum of Costs. Moreover, it appears that Defendants might have challenged some or all of those costs in connection with their motion to strike or tax costs, which is set for hearing **[*13]** on November 24, 2025. (Def. Motion to Strike or Tax Costs, pp. 4:8-9 [challenging expert fees], 8:15 [challenging "trial services [costs in the amount of] $66,500.00"].)

ORDER

The court denies defendants St. Paul the Apostle Church, The Roman Catholic Archbishop of Los Angeles, a Corporation Sole, and St. Paul the Apostle School's motion for determination that defendants are prevailing parties and for award of costs.

The court grants in part plaintiff Frank Depto's motion for attorneys' fees and expert fees as follows.

The court orders that plaintiff Frank Depto shall recover from defendants St. Paul the Apostle Church, The Roman Catholic Archbishop of Los Angeles, a Corporation Sole, and St. Paul the Apostle School attorney's fees in the total amount of $1,890,737.50.

The court orders plaintiff Frank Depto to give notice of this ruling.

[1] The court also notes that the Offer to Compromise states that the $1,000,001.00 amount is "inclusive of attorney's fees and costs incurred by Plaintiff[,]" which renders the condition that each party shall bear its or his own fees or costs incurred in this action inconsistent and uncertain. (Skinner Decl., Ex. A, Offer to Compromise, pp. 1:25-2:3, 2:14.) **[*14]** That inconsistency renders the Offer to Compromise invalid since it was not "sufficiently specific [in light of the inconsistency described above] to allow [Plaintiff] to evaluate the worth of the offer and make a reasoned decision whether to accept the offer." (Covert v. FCA USA, LLC (2022) 73 Cal.App.5th 821, 833 [internal quotation marks and citations omitted].)

[2] The court notes that Plaintiff has also claimed other preoffer costs. Because the costs claimed by Plaintiff are the subject of a pending motion to strike or tax costs, the court does not,

in connection with this motion, determine the amount of reasonable preoffer costs claimed in the Memorandum of Costs.

[3] The chart in Plaintiff's moving papers states that Jingozian billed 1.5 hours, but the billing records show that Jingozian billed 1.6 hours. (Pl. Motion, p. 13:10-11; Shegerian Decl., Ex. 26.)

Similarly, the chart states that Kingkade billed 2.6 hours, but the billing records show that Kingkade billed 3.1 hours. (Pl. Motion, p. 13:12; Shegerian Decl., Ex. 28.)

The chart also states that Ter-Mambreyan billed 12.2 hours, but the billing records show that Ter-Mambreyan billed only 11.2 hours. (Pl. Motion, p. 13:13-14; Shegerian Decl., Ex. 29.)

---

**End of Document**

# EXHIBIT 13

# EXHIBIT 4

Case 2:21-cv-06010-TJH-JC     Document 170-6     Filed 01/06/26     Page 2 of 265   Page
ID #:4374

ELM Solutions

# 2025 Real Rate Report® powered by LegalVIEW® DynamicInsights

The industry's leading analysis of law firm rates, trends, and practices



Ex. 6, Page 237



| Report Editor | Contributing Analysts and Authors |
|---|---|
| **Jennifer McIver** | **Haemi Jung** |
| Director, Legal Operations and Industry Insights | Strategic Business Intelligence Manager |
| Wolters Kluwer ELM Solutions | Wolters Kluwer ELM Solutions |

**Lead Data Analysts**

**Manish Sharma**
Director, Business Analysis
Wolters Kluwer ELM Solutions

**Anand Kumar Pathinettam Padian**
Software and Data Engineer
Wolters Kluwer ELM Solutions

**Karen Sekley-Dandrea**
Director, Marketing
Wolters Kluwer ELM Solutions

**Farhan Shaikh**
Data Scientist
Wolters Kluwer ELM Solutions

**Mat Greener**
Project & Program Management Director
Wolters Kluwer ELM Solutions

**ELM Solutions Creative**

**Executive Sponsor**

**David Andrews**
Senior Graphic Designer
Wolters Kluwer ELM Solutions

**Brian Jorgenson**
Vice President, Product Management
Wolters Kluwer ELM Solutions

©2004 – 2025 Wolters Kluwer ELM Solutions. All rights reserved. This material may not be reproduced, displayed, modified, or distributed in any form without the express prior written permission of the copyright holders. To request permission, please contact:

Wolters Kluwer ELM Solutions
2929 Allen Pkwy Ste 3300
Houston, TX 77019 United States
ATTN: Marketing
ELMSolutionsSales@wolterskluwer.com

**LEGAL CAVEAT**

Wolters Kluwer ELM Solutions has worked to ensure the accuracy of the information in this report powered by LegalVIEW DynamicInsights; however, we cannot guarantee accuracy in all cases. Neither this report nor LegalVIEW DynamicInsights constitute legal, accounting, or professional advice and should not be used as such. This material should not be construed as a substitute for professional advice based on specific facts or circumstances. ELM Solutions is not responsible for any claims or losses arising from reliance on the information or recommendations included in this solution. View terms of use.

Ex. 6, Page 238

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 240 of 501
Case 2:21-cv-06010-TJH-JC    Document 78-3207 Filed 01/06/26    Page 4 of 265   Page
ID #:4376

# Table of Contents - 2025 Real Rate Report

**A Letter to Our Readers • 4**

**Real Rate Report Overview • 5**

**Section I: High-Level Data Cuts • 9**

- Partners, Associates, and Paralegals
- Partners, Associates, and Paralegals by Practice Area and Matter Type
- Partners and Associates by City
- Partners and Associates by City and Matter Type
- Partners by City and Years of Experience
- Associates by City and Years of Experience
- Partners and Associates by Firm Size and Matter Type

**Section II: Industry Analysis • 71**

- Partners, Associates, and Paralegals by Industry Group
- Partners and Associates by Industry Group and Matter Type
- Basic Materials and Utilities
- Consumer Goods
- Consumer Services
- Financials (Excluding Insurance)
- Health Care
- Industrials
- Insurance
- Technology and Telecommunications

**Section III: Practice Area Analysis • 98**

- Bankruptcy and Collections
- Commercial
- Corporate: Mergers, Acquisitions, and Divestitures
- Corporate: Other
- Corporate: Regulatory and Compliance
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability (Litigation Only)
- Insurance Defense (Litigation Only)
- Intellectual Property: Other
- Intellectual Property: Patents
- Intellectual Property: Trademarks
- Real Estate

**Section IV: In-Depth Analysis for Select US Cities • 201**

- Boston, MA
- Chicago, IL
- Los Angeles, CA
- New York, NY
- Philadelphia, PA
- San Francisco, CA
- Washington, DC

**Section V: International Analysis • 226**

**Section VI: Matter Staffing Analysis • 255**

**Appendix: Data Methodology • 259**

---

**NOTE:**
You may experience an issue that can sometimes occur in PDF viewer. Thin lines (like table borders) may appear to "disappear" or look broken when zoomed out in a PDF viewer. This is usually a display/rendering issue rather than a problem with the actual content of the PDF.

**Solution:**
- Open the PDF in Acrobat and go to Edit > Preferences > Page Display.
- Uncheck Enhance thin lines (if it's checked).
- Restart Acrobat and reopen the PDF.

---

Ex. 6, Page 239

wolterskluwer.com

# A Letter to Our Readers

**Welcome to the latest edition of the Real Rate Report®, the legal industry's most trusted benchmark for legal billing rates.**

Since 2010, the Real Rate Report has helped legal departments and law firms make smarter decisions about pricing, resourcing, and vendor management. That hasn't changed. What has changed is how we deliver those insights.

This year, the Real Rate Report is powered by LegalVIEW® DynamicInsights—our new digital-first platform that brings the same trusted LegalVIEW data to life in a more interactive, flexible, and timely way. Leveraging  Wolters Kluwer's LegalVIEW database, with over $200B in anonymized, approved, invoice data, LegalVIEW DynamicInsights offers dynamic filters, quarterly updates, and calendar-year alignment to help users tailor benchmarks to their unique needs, on demand.

The Real Rate Report remains a vital snapshot of the market, and we know many of you rely on it as a reference tool. But DynamicInsights goes further. It enables deeper exploration of rate trends by role, experience, geography, practice area, industry, and more. Whether you're negotiating rates, evaluating law firm performance, or planning budgets, DynamicInsights gives you the agility and precision today's legal environment demands.

As always, we welcome your feedback and thank our data contributors for making this work possible. We're proud to be your partner in legal analytics and look forward to continuing to deliver insights that drive better business outcomes.

Sincerely,

**Brian Jorgenson**
Vice President, Product Management
Wolters Kluwer ELM Solutions

Ex. 6, Page 240    wolterskluwer.com

# Real Rate Report Overview

The Real Rate Report is powered by LegalVIEW DynamicInsights, a web-based solution that delivers dynamic, invoice-backed insights through approved legal billing rates. It enables legal professionals to analyze rate trends by role, experience, industry, geography, practice area, and more using the world's largest repository of legal spend data.

DynamicInsights leverages the same trusted LegalVIEW database that has powered the Real Rate Report for years, now encompassing over $200B+ in anonymized, approved legal invoice data. As with previous Real Rate Reports, our data is sourced from corporations' and law firms' e-billing and time management solutions. We have included lawyer and paralegal rate data filtered by specific practice and sub-practice areas, metropolitan areas, and types of matters. This level of granularity gives legal departments and law firms the precision they need to identify areas of opportunity.

### What's different with DynamicInsights?

Same source, same methodology: DynamicInsights uses the same rigorous data validation and methodology as the Real Rate Report.

- **Enhanced flexibility:** With dynamic filters, DynamicInsights enables users to tailor benchmarks to their unique needs and on demand.

- **Full year data:** DynamicInsights now aligns to a calendar year view—January through December—replacing the previous July-to-June format used in the Real Rate Report, reducing confusion and improving consistency across reporting periods.

- **More up to date:** Unlike the annual and static Real Rate Report, DynamicInsights is refreshed quarterly, offering more timely insights.

- **Digital-first access:** Delivered via a secure online interface, users can interact with the data, bookmark views, and share insights in real time.

DynamicInsights provides the same level of credibility and analytical power long trusted in the Real Rate Report with more agility and transparency for today's legal environment.

### 2025 Real Rate Report use considerations

- Examines law firm rates over time
- Identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal)
- Itemizes variables that drive rates up or down

All the analyses included in DynamicInsights and this report are derived from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment.

Examining real, approved rate information, along with the ranges of those rates and their changes over time, highlights the role these variables play in driving aggregate legal cost and income. The analyses can energize questions for both corporate clients and law firm principals.

Legal departments might ask whether they are paying the right amount for different types of legal services, while law firm principals might ask whether they are charging the right amount for legal services and whether to modify their pricing approach.

### Examples of data to consider when reviewing rates:

- **Industry** – Compare spend and rate trends across various industries
- **Practice area** – Analyze cost variations in different legal practice areas
- **Detailed practice area** – Drill down into niche legal specialties for precise benchmarking
- **Am Law** – Benchmark against top-ranked law firms for competitive rate analysis
- **City** – Understand rate trends in specific metropolitan areas
- **Country** – Gain a global perspective on legal costs and spend management
- **Role** – Assess legal spend distribution across different law firm roles

Ex. 6, Page 241

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 243 of 501
Case 2:21-cv-06010-TJH-JC    Document 76-6    Filed 01/06/26    Page 7 of 265   Page
ID #:4379    Page ID #:3210

# Real Rate Report Overview

**Understanding key statistical terms**

To help interpret the legal rate data presented in DynamicInsights and this report, it's important to understand the statistical measures used. Below are definitions of the core metrics:

- **Mean (average):** The sum of all rate values divided by the total number of values added. It provides a general sense of the central tendency of the rates but can be influenced by extreme values (outliers).
- **Median:** The middle value when all rates are arranged in ascending order. If there is an even number of rates being analyzed, the median is the average of the two middle rates. It is a robust measure of central tendency of rates that is less affected by outliers.
- **First quartile (Q1):** The value below which 25% of the rates fall. It marks the lower boundary of the middle 50% of the rates and helps identify the lower range of typical values.
- **Third quartile (Q3):** The value below which 75% of the rates fall. It marks the upper boundary of the middle 50% of the rates and helps identify the upper range of typical values.
- **n:** The number of unique timekeepers contributing to the data.

These metrics are used to provide a more nuanced view of legal rates, helping users identify trends, outliers, and benchmarks across various dimensions.

Ex. 6, Page 242

Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 8 of 265   Page ID #:4380








# See clearly.
# Spend wisely.

Step into the future of legal spend management with responsibly developed AI-powered solutions.

Our innovative Total Spend Management approach leverages AI-powered capabilities to empower intelligent workflows and improved outcomes.

Up to 10% savings on legal spend

Up to 20% improvement in billing guideline compliance

Increased efficiencies free up time for more value-add work

Wolters Kluwer

www.wolterskluwer.com

Ex. 6, Page 243

Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 9 of 26S   Page ID #:4381

# LegalVIEW® DynamicInsights

Legal rates keep climbing and 2026 will be no exception. Stay ahead with award-winning insights designed to give your team the edge in every negotiation.

## Data that wins awards...and rate negotiations

- **Unmatched Data Power:** Leverages over **$200B in invoice-backed legal spend data** to deliver deep, actionable insights.

- **Strategic Legal Spend Management**: Empowers legal teams to negotiate smarter, plan more effectively, and control costs with greater precision.

- **Enhanced Transparency & Collaboration:** Strengthens law firm-client relationships through data-driven transparency and benchmarking.

- **Insight-Driven Decision Making**: Enables analysis across key dimensions to support strategic negotiations and financial optimization.







Ex. 6, Page 244

Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 10 of 265    Page
ID #4382



# Section I: High-Level Data Cuts

All data and analysis based on data collected thru Q2 2025

Ex. 6, Page 245

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 247 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 11 of 265   Page
ID #:4383

# Section I: High-Level Data Cuts

**All**
By Role

**2025 Real Rates by Partner, Associate, and Paralegal**     **Trend Analysis - Mean**

| Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---|----------------|--------|----------------|------|------|------|
| Partner | 9,072 | $420 | $675 | $1,099 | $820 | $817 | $774 |
| Associate | 7,357 | $336 | $530 | $842 | $627 | $611 | $571 |
| Paralegal | 3,515 | $150 | $226 | $350 | $271 | $264 | $253 |

Ex. 6, Page 246

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 248 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 12 of 265   Page
ID #:4384

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Albany NY** | **Non-Litigation** | Partner | 22 | $314 | $332 | $349 | $360 | $370 | $337 |
|  |  | Associate | 11 | $262 | $262 | $278 | $267 | $284 | $247 |
| **Albuquerque NM** | **Non-Litigation** | Partner | 10 | $202 | $221 | $249 | $222 | $214 | $220 |
| **Atlanta GA** | **Litigation** | Partner | 105 | $354 | $618 | $906 | $661 | $704 | $672 |
|  |  | Associate | 82 | $271 | $400 | $614 | $469 | $482 | $496 |
|  | **Non-Litigation** | Partner | 186 | $476 | $690 | $1,100 | $789 | $784 | $718 |
|  |  | Associate | 155 | $386 | $485 | $700 | $562 | $580 | $559 |

Ex. 6, Page 247

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                                                        **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Austin TX** | **Litigation** | Partner | 23 | $295 | $520 | $908 | $622 | $621 | $580 |
| | | Associate | 15 | $255 | $255 | $494 | $364 | $383 | $383 |
| | **Non-Litigation** | Partner | 43 | $410 | $489 | $632 | $537 | $550 | $529 |
| | | Associate | 24 | $292 | $396 | $492 | $403 | $440 | $437 |
| **Baltimore MD** | **Litigation** | Partner | 51 | $425 | $595 | $760 | $615 | $629 | $570 |
| | | Associate | 35 | $322 | $504 | $658 | $509 | $537 | $525 |
| | **Non-Litigation** | Partner | 79 | $512 | $792 | $1,096 | $815 | $817 | $759 |
| | | Associate | 75 | $385 | $605 | $840 | $639 | $580 | $564 |
| **Baton Rouge LA** | **Non-Litigation** | Partner | 21 | $315 | $330 | $380 | $353 | $350 | $336 |

Ex. 6, Page 248

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 250 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 14 of 265   Page
ID #:4386

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                                   **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| Birmingham AL | Litigation | Partner | 70 | $360 | $376 | $515 | $434 | $431 | $409 |
| | | Associate | 62 | $280 | $300 | $350 | $320 | $310 | $302 |
| | Non-Litigation | Partner | 56 | $329 | $434 | $510 | $436 | $438 | $439 |
| | | Associate | 40 | $285 | $314 | $364 | $326 | $327 | $293 |
| Boston MA | Litigation | Partner | 123 | $375 | $665 | $991 | $751 | $717 | $657 |
| | | Associate | 100 | $290 | $510 | $775 | $567 | $534 | $493 |
| | Non-Litigation | Partner | 171 | $585 | $850 | $1,209 | $940 | $971 | $897 |
| | | Associate | 131 | $425 | $565 | $775 | $646 | $708 | $641 |
| Bridgeport CT | Non-Litigation | Partner | 10 | $288 | $409 | $584 | $474 | $391 | $381 |
| Buffalo NY | Litigation | Partner | 34 | $275 | $307 | $443 | $355 | $358 | $349 |
| | | Associate | 17 | $225 | $245 | $333 | $270 | $270 | $276 |
| | Non-Litigation | Partner | 15 | $198 | $300 | $375 | $335 | $352 | $355 |

Ex. 6, Page 249

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Charleston WV** | **Litigation** | Partner | 16 | $275 | $341 | $350 | $319 | $303 | $289 |
| | **Non-Litigation** | Partner | 12 | $330 | $360 | $460 | $410 | $353 | $350 |
| **Charlotte NC** | **Litigation** | Partner | 25 | $416 | $586 | $668 | $551 | $588 | $618 |
| | | Associate | 27 | $325 | $389 | $445 | $413 | $442 | $435 |
| | **Non-Litigation** | Partner | 46 | $626 | $886 | $1,035 | $831 | $845 | $799 |
| | | Associate | 55 | $421 | $471 | $558 | $507 | $517 | $506 |
| **Chicago IL** | **Litigation** | Partner | 227 | $400 | $751 | $1,160 | $830 | $789 | $772 |
| | | Associate | 200 | $293 | $585 | $775 | $584 | $542 | $529 |
| | **Non-Litigation** | Partner | 416 | $585 | $963 | $1,349 | $996 | $990 | $924 |
| | | Associate | 270 | $425 | $709 | $957 | $709 | $683 | $652 |

wolterskluwer.com

Ex. 6, Page 250

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Cincinnati OH** | **Litigation** | Partner | 45 | $300 | $395 | $495 | $439 | $392 | $400 |
| | | Associate | 44 | $276 | $310 | $360 | $315 | $301 | $295 |
| | **Non-Litigation** | Partner | 66 | $475 | $568 | $650 | $587 | $532 | $512 |
| | | Associate | 39 | $292 | $320 | $385 | $348 | $322 | $312 |
| **Cleveland OH** | **Litigation** | Partner | 62 | $485 | $593 | $867 | $723 | $679 | $603 |
| | | Associate | 35 | $304 | $360 | $450 | $400 | $358 | $359 |
| | **Non-Litigation** | Partner | 133 | $437 | $555 | $750 | $631 | $617 | $609 |
| | | Associate | 120 | $300 | $360 | $575 | $428 | $404 | $368 |
| **Columbia SC** | **Litigation** | Partner | 41 | $313 | $490 | $575 | $448 | $468 | $481 |
| | | Associate | 25 | $289 | $317 | $374 | $321 | $318 | $309 |
| | **Non-Litigation** | Partner | 33 | $320 | $475 | $590 | $477 | $554 | $478 |
| | | Associate | 20 | $244 | $283 | $381 | $321 | $339 | $310 |

Ex. 6, Page 251

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 253 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3    Filed 01/06/26    Page 17 of 265   Page
ID #:4389

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                                                              **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Columbus OH** | **Litigation** | Partner | 15 | $475 | $495 | $828 | $686 | $524 | $490 |
| | **Non-Litigation** | Partner | 31 | $441 | $586 | $774 | $617 | $551 | $523 |
| | | Associate | 21 | $320 | $355 | $435 | $395 | $420 | $397 |
| **Dallas TX** | **Litigation** | Partner | 70 | $300 | $600 | $930 | $660 | $659 | $627 |
| | | Associate | 77 | $265 | $327 | $574 | $445 | $448 | $461 |
| | **Non-Litigation** | Partner | 133 | $450 | $683 | $1,021 | $784 | $786 | $786 |
| | | Associate | 123 | $345 | $525 | $850 | $611 | $570 | $573 |
| **Denver CO** | **Litigation** | Partner | 49 | $423 | $585 | $732 | $603 | $584 | $576 |
| | | Associate | 28 | $389 | $445 | $504 | $446 | $397 | $379 |
| | **Non-Litigation** | Partner | 97 | $475 | $580 | $706 | $621 | $628 | $602 |
| | | Associate | 55 | $346 | $403 | $474 | $426 | $449 | $426 |

Ex. 6, Page 252

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 254 of 501
Case 2:21-cv-06010-TJH-JC     Document 10-6     Filed 01/06/26     Page 18 of 265   Page
ID #:4390

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                                **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Detroit MI** | **Litigation** | Partner | 50 | $279 | $330 | $392 | $347 | $328 | $335 |
| | | Associate | 27 | $246 | $287 | $310 | $289 | $285 | $272 |
| | **Non-Litigation** | Partner | 46 | $340 | $415 | $576 | $442 | $443 | $435 |
| | | Associate | 30 | $265 | $325 | $390 | $342 | $352 | $333 |
| **Greenville SC** | **Non-Litigation** | Partner | 22 | $425 | $504 | $540 | $482 | $482 | $463 |
| **Hartford CT** | **Litigation** | Partner | 29 | $360 | $467 | $679 | $503 | $484 | $457 |
| | | Associate | 21 | $256 | $306 | $383 | $342 | $317 | $309 |
| | **Non-Litigation** | Partner | 24 | $366 | $500 | $670 | $558 | $550 | $594 |
| | | Associate | 10 | $243 | $300 | $325 | $274 | $281 | $289 |

Ex. 6, Page 253

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 255 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3 Filed 01/06/26    Page 19 of 265   Page
ID #:4391

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Houston TX** | **Litigation** | Partner | 67 | $425 | $600 | $995 | $732 | $719 | $704 |
| | | Associate | 54 | $375 | $443 | $660 | $554 | $565 | $506 |
| | **Non-Litigation** | Partner | 101 | $350 | $675 | $965 | $720 | $809 | $790 |
| | | Associate | 104 | $304 | $441 | $715 | $523 | $519 | $554 |
| **Indianapolis IN** | **Litigation** | Partner | 25 | $363 | $475 | $671 | $508 | $524 | $465 |
| | | Associate | 20 | $208 | $348 | $371 | $345 | $359 | $318 |
| | **Non-Litigation** | Partner | 37 | $395 | $520 | $635 | $527 | $493 | $504 |
| | | Associate | 20 | $305 | $353 | $405 | $356 | $343 | $301 |
| **Jackson MS** | **Litigation** | Partner | 53 | $303 | $397 | $448 | $409 | $389 | $355 |
| | | Associate | 26 | $251 | $310 | $339 | $304 | $292 | $269 |
| | **Non-Litigation** | Partner | 27 | $345 | $450 | $604 | $492 | $437 | $401 |

Ex. 6, Page 254

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Jacksonville FL** | **Litigation** | Partner | 11 | $360 | $360 | $387 | $404 | $366 | $376 |
| | **Non-Litigation** | Partner | 10 | $275 | $295 | $372 | $355 | $439 | $394 |
| **Kansas City MO** | **Litigation** | Partner | 46 | $460 | $530 | $630 | $563 | $561 | $527 |
| | | Associate | 30 | $374 | $400 | $435 | $410 | $379 | $361 |
| | **Non-Litigation** | Partner | 99 | $502 | $648 | $787 | $655 | $645 | $599 |
| | | Associate | 59 | $340 | $397 | $443 | $402 | $402 | $361 |
| **Las Vegas NV** | **Litigation** | Partner | 19 | $277 | $355 | $406 | $373 | $365 | $390 |
| | | Associate | 16 | $256 | $292 | $325 | $298 | $347 | $331 |
| | **Non-Litigation** | Partner | 15 | $245 | $270 | $443 | $385 | $439 | $386 |
| | | Associate | 14 | $250 | $321 | $327 | $303 | $344 | $332 |
| **Louisville KY** | **Litigation** | Partner | 12 | $272 | $390 | $479 | $385 | $351 | $347 |
| | **Non-Litigation** | Partner | 24 | $318 | $399 | $500 | $426 | $425 | $401 |
| | | Associate | 13 | $277 | $299 | $341 | $304 | $276 | $274 |

Ex. 6, Page 255

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 257 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-3224iled 01/06/26    Page 21 of 265   Page
ID #:4393

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                                                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Los Angeles CA | Litigation | Partner | 289 | $519 | $875 | $1,334 | $984 | $945 | $866 |
| | | Associate | 229 | $461 | $700 | $1,041 | $763 | $736 | $687 |
| | Non-Litigation | Partner | 335 | $515 | $950 | $1,377 | $1,002 | $1,005 | $949 |
| | | Associate | 312 | $504 | $740 | $959 | $759 | $744 | $681 |
| Memphis TN | Litigation | Partner | 13 | $313 | $352 | $420 | $353 | $358 | $334 |
| Miami FL | Litigation | Partner | 59 | $300 | $485 | $658 | $502 | $537 | $491 |
| | | Associate | 34 | $225 | $376 | $475 | $361 | $366 | $359 |
| | Non-Litigation | Partner | 140 | $195 | $550 | $800 | $569 | $590 | $623 |
| | | Associate | 101 | $175 | $263 | $481 | $356 | $404 | $411 |
| Milwaukee WI | Litigation | Partner | 13 | $275 | $432 | $625 | $497 | $469 | $493 |
| | Non-Litigation | Partner | 21 | $400 | $510 | $650 | $540 | $600 | $520 |

Ex. 6, Page 256                                      wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 258 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3 Filed 01/06/26    Page 22 of 265   Page ID #:4394
Page ID #:3225

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Minneapolis MN** | **Litigation** | Partner | 57 | $470 | $655 | $960 | $701 | $609 | $583 |
| | | Associate | 64 | $346 | $445 | $620 | $490 | $477 | $436 |
| | **Non-Litigation** | Partner | 97 | $490 | $697 | $870 | $686 | $696 | $656 |
| | | Associate | 64 | $315 | $456 | $615 | $479 | $455 | $427 |
| **Nashville TN** | **Litigation** | Partner | 30 | $325 | $465 | $650 | $491 | $503 | $418 |
| | | Associate | 18 | $225 | $336 | $375 | $329 | $332 | $272 |
| | **Non-Litigation** | Partner | 52 | $517 | $608 | $784 | $646 | $619 | $565 |
| | | Associate | 40 | $366 | $422 | $479 | $431 | $438 | $395 |
| **New Orleans LA** | **Litigation** | Partner | 48 | $302 | $360 | $392 | $356 | $370 | $361 |
| | | Associate | 42 | $252 | $277 | $280 | $278 | $284 | $273 |
| | **Non-Litigation** | Partner | 61 | $236 | $365 | $553 | $443 | $436 | $402 |
| | | Associate | 37 | $195 | $250 | $290 | $279 | $273 | $274 |

Ex. 6, Page 257

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 259 of 501
Case 2:21-cv-06010-TJH-JC     Document 170-3 Filed 01/06/26     Page 23 of 265   Page
ID #:4395

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                          **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **New York NY** | **Litigation** | Partner | 474 | $423 | $710 | $1,191 | $880 | $897 | $878 |
| | | Associate | 504 | $401 | $617 | $937 | $691 | $662 | $635 |
| | **Non-Litigation** | Partner | 988 | $710 | $1,410 | $2,008 | $1,395 | $1,357 | $1,246 |
| | | Associate | 1,102 | $645 | $980 | $1,330 | $989 | $916 | $832 |
| **Oklahoma City OK** | **Litigation** | Partner | 13 | $220 | $275 | $325 | $274 | $284 | $276 |
| | **Non-Litigation** | Partner | 12 | $250 | $283 | $332 | $299 | $310 | $307 |
| **Omaha NE** | **Non-Litigation** | Partner | 33 | $344 | $375 | $450 | $416 | $422 | $397 |
| | | Associate | 32 | $220 | $225 | $271 | $241 | $243 | $241 |
| **Orlando FL** | **Litigation** | Partner | 22 | $396 | $518 | $560 | $503 | $523 | $486 |
| | | Associate | 11 | $260 | $405 | $425 | $353 | $362 | $339 |
| | **Non-Litigation** | Partner | 27 | $256 | $397 | $600 | $458 | $547 | $532 |
| | | Associate | 24 | $220 | $300 | $427 | $357 | $341 | $318 |

wolterskluwer.com

Ex. 6, Page 258

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 260 of 501
Case 2:21-cv-06010-TJH-JC    Document 106-3    Filed 01/06/26    Page 24 of 265   Page
ID #:4396

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Philadelphia PA** | **Litigation** | Partner | 311 | $450 | $690 | $994 | $739 | $728 | $676 |
| | | Associate | 297 | $368 | $524 | $675 | $534 | $515 | $466 |
| | **Non-Litigation** | Partner | 380 | $525 | $820 | $1,095 | $856 | $846 | $778 |
| | | Associate | 281 | $450 | $605 | $730 | $617 | $570 | $519 |
| **Phoenix AZ** | **Litigation** | Partner | 25 | $375 | $450 | $559 | $466 | $431 | $489 |
| | | Associate | 20 | $265 | $300 | $341 | $318 | $287 | $317 |
| | **Non-Litigation** | Partner | 55 | $315 | $425 | $632 | $502 | $461 | $460 |
| | | Associate | 30 | $238 | $310 | $385 | $325 | $352 | $329 |
| **Pittsburgh PA** | **Litigation** | Partner | 74 | $480 | $585 | $853 | $662 | $651 | $612 |
| | | Associate | 70 | $360 | $500 | $540 | $468 | $457 | $413 |
| | **Non-Litigation** | Partner | 124 | $480 | $706 | $937 | $738 | $763 | $690 |
| | | Associate | 100 | $340 | $459 | $575 | $482 | $512 | $468 |

Ex. 6, Page 259

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **Portland ME** | **Non-Litigation** | Partner | 35 | $311 | $420 | $471 | $404 | $399 | $378 |
| | | Associate | 14 | $270 | $307 | $315 | $290 | $263 | $253 |
| **Portland OR** | **Litigation** | Partner | 28 | $428 | $525 | $610 | $577 | $568 | $490 |
| | | Associate | 23 | $420 | $644 | $741 | $607 | $554 | $426 |
| | **Non-Litigation** | Partner | 43 | $466 | $470 | $654 | $604 | $577 | $535 |
| | | Associate | 37 | $290 | $400 | $658 | $489 | $474 | $422 |
| **Providence RI** | **Litigation** | Partner | 10 | $328 | $408 | $486 | $391 | $367 | $340 |
| | | Associate | 16 | $250 | $325 | $353 | $319 | $322 | $287 |
| | **Non-Litigation** | Partner | 15 | $331 | $372 | $462 | $391 | $426 | $406 |
| | | Associate | 10 | $264 | $310 | $350 | $308 | $290 | $265 |
| **Raleigh NC** | **Litigation** | Partner | 14 | $349 | $424 | $533 | $514 | $473 | $444 |
| | **Non-Litigation** | Partner | 16 | $350 | $475 | $475 | $493 | $467 | $467 |

Ex. 6, Page 260

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 262 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3    Filed 01/06/26    Page 26 of 265   Page
ID #:4398

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**        **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Richmond VA** | **Litigation** | Partner | 32 | $355 | $595 | $751 | $605 | $649 | $571 |
| | | Associate | 24 | $378 | $437 | $486 | $446 | $447 | $430 |
| | **Non-Litigation** | Partner | 45 | $478 | $725 | $985 | $751 | $809 | $743 |
| | | Associate | 33 | $302 | $509 | $678 | $520 | $600 | $578 |
| **Sacramento CA** | **Non-Litigation** | Partner | 11 | $475 | $537 | $684 | $596 | $665 | $576 |
| **Salt Lake City UT** | **Litigation** | Partner | 18 | $350 | $373 | $477 | $430 | $412 | $391 |
| | **Non-Litigation** | Partner | 31 | $350 | $437 | $492 | $427 | $413 | $415 |
| | | Associate | 16 | $266 | $309 | $333 | $312 | $338 | $277 |
| **San Diego CA** | **Litigation** | Partner | 38 | $233 | $337 | $583 | $510 | $514 | $484 |
| | | Associate | 29 | $195 | $236 | $271 | $275 | $281 | $260 |
| | **Non-Litigation** | Partner | 55 | $420 | $504 | $960 | $729 | $692 | $686 |
| | | Associate | 43 | $266 | $374 | $669 | $486 | $440 | $392 |

wolterskluwer.com

Ex. 6, Page 261

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 263 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3   Filed 01/06/26    Page 27 of 265   Page
ID #:4399

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| San Francisco CA | Litigation | Partner | 106 | $400 | $718 | $1,378 | $908 | $819 | $803 |
| | | Associate | 80 | $385 | $666 | $875 | $683 | $652 | $614 |
| | Non-Litigation | Partner | 132 | $445 | $689 | $1,249 | $856 | $868 | $788 |
| | | Associate | 97 | $335 | $550 | $922 | $640 | $664 | $593 |
| San Jose CA | Litigation | Partner | 23 | $650 | $800 | $1,250 | $998 | $1,024 | $1,011 |
| | | Associate | 20 | $625 | $815 | $1,030 | $852 | $802 | $721 |
| | Non-Litigation | Partner | 33 | $745 | $950 | $1,266 | $1,033 | $1,104 | $1,108 |
| | | Associate | 27 | $527 | $610 | $966 | $718 | $709 | $701 |
| Seattle WA | Litigation | Partner | 57 | $520 | $902 | $925 | $790 | $719 | $628 |
| | | Associate | 29 | $425 | $653 | $700 | $586 | $518 | $475 |
| | Non-Litigation | Partner | 119 | $402 | $615 | $925 | $694 | $635 | $652 |
| | | Associate | 79 | $307 | $445 | $676 | $496 | $484 | $467 |

Ex. 6, Page 262

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 264 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3 Filed 01/06/26    Page 28 of 265   Page
ID #:4400

# Section I: High-Level Data Cuts

## Cities
By Matter Type

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **St. Louis MO** | **Litigation** | Partner | 33 | $288 | $333 | $416 | $383 | $370 | $354 |
| | **Non-Litigation** | Partner | 61 | $227 | $456 | $688 | $496 | $487 | $453 |
| | | Associate | 20 | $165 | $215 | $215 | $217 | $224 | $203 |
| **Tampa FL** | **Litigation** | Partner | 27 | $425 | $453 | $570 | $493 | $522 | $529 |
| | | Associate | 16 | $335 | $366 | $425 | $419 | $367 | $358 |
| | **Non-Litigation** | Partner | 37 | $395 | $485 | $692 | $555 | $493 | $506 |
| | | Associate | 16 | $295 | $340 | $361 | $331 | $343 | $313 |
| **Trenton NJ** | **Litigation** | Partner | 10 | $350 | $930 | $1,095 | $780 | $657 | $606 |
| | **Non-Litigation** | Partner | 13 | $779 | $877 | $1,014 | $871 | $795 | $760 |
| **Washington DC** | **Litigation** | Partner | 427 | $805 | $1,075 | $1,375 | $1,106 | $1,056 | $975 |
| | | Associate | 366 | $590 | $805 | $995 | $805 | $759 | $689 |
| | **Non-Litigation** | Partner | 818 | $740 | $995 | $1,343 | $1,080 | $1,065 | $1,001 |
| | | Associate | 608 | $522 | $787 | $995 | $788 | $763 | $700 |

Ex. 6, Page 263

wolterskluwer.com

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Albany NY** | Partner | 25 | $314 | $332 | $355 | $357 | $373 | $336 |
| | Associate | 12 | $262 | $262 | $298 | $275 | $294 | $255 |
| **Albuquerque NM** | Partner | 15 | $202 | $221 | $267 | $248 | $229 | $249 |
| **Atlanta GA** | Partner | 272 | $425 | $664 | $990 | $743 | $757 | $702 |
| | Associate | 224 | $350 | $485 | $690 | $529 | $547 | $535 |
| **Austin TX** | Partner | 58 | $317 | $495 | $750 | $569 | $576 | $555 |
| | Associate | 37 | $255 | $362 | $493 | $387 | $424 | $444 |
| **Baltimore MD** | Partner | 119 | $463 | $700 | $952 | $728 | $732 | $672 |
| | Associate | 103 | $350 | $577 | $769 | $593 | $559 | $533 |
| **Baton Rouge LA** | Partner | 23 | $315 | $330 | $355 | $347 | $349 | $336 |

wolterskluwer.com

Ex. 6, Page 264

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**　　　　　　　　　　　　　**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Birmingham AL** | Partner | 119 | $360 | $415 | $512 | $435 | $434 | $420 |
|  | Associate | 91 | $285 | $302 | $351 | $322 | $316 | $300 |
| **Boston MA** | Partner | 267 | $513 | $795 | $1,130 | $863 | $876 | $816 |
|  | Associate | 220 | $387 | $557 | $775 | $612 | $642 | $589 |
| **Bridgeport CT** | Partner | 16 | $304 | $423 | $584 | $499 | $446 | $426 |
|  | Associate | 10 | $274 | $388 | $529 | $417 | $331 | $318 |
| **Buffalo NY** | Partner | 44 | $275 | $303 | $433 | $348 | $355 | $351 |
|  | Associate | 20 | $225 | $241 | $325 | $263 | $264 | $258 |
| **Charleston SC** | Partner | 19 | $300 | $451 | $550 | $417 | $393 | $400 |
| **Charleston WV** | Partner | 23 | $296 | $346 | $365 | $354 | $327 | $318 |
| **Charlotte NC** | Partner | 67 | $438 | $721 | $906 | $722 | $758 | $734 |
|  | Associate | 78 | $339 | $446 | $535 | $475 | $500 | $492 |

Ex. 6, Page 265

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 267 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 31 of 265   Page
ID #:4403

# Section I: High-Level Data Cuts

### Cities
By Role

**2025 Real Rates for Associate and Partner**                                          **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Chicago IL** | Partner | 581 | $510 | $892 | $1,318 | $938 | $923 | $874 |
| | Associate | 430 | $392 | $651 | $875 | $656 | $633 | $611 |
| **Cincinnati OH** | Partner | 105 | $350 | $490 | $640 | $518 | $464 | $460 |
| | Associate | 78 | $285 | $316 | $365 | $328 | $309 | $303 |
| **Cleveland OH** | Partner | 169 | $450 | $574 | $770 | $658 | $636 | $607 |
| | Associate | 147 | $300 | $360 | $557 | $422 | $395 | $366 |
| **Columbia SC** | Partner | 61 | $318 | $480 | $575 | $461 | $515 | $474 |
| | Associate | 42 | $250 | $315 | $375 | $321 | $326 | $319 |
| **Columbus OH** | Partner | 44 | $475 | $577 | $777 | $637 | $544 | $505 |
| | Associate | 30 | $320 | $355 | $488 | $418 | $420 | $392 |
| **Dallas TX** | Partner | 188 | $379 | $637 | $983 | $739 | $734 | $728 |
| | Associate | 194 | $293 | $447 | $745 | $546 | $523 | $536 |

Ex. 6, Page 266

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Dayton OH** | Partner | 13 | $368 | $431 | $487 | $426 | $404 | $387 |
| **Denver CO** | Partner | 129 | $470 | $580 | $713 | $616 | $618 | $596 |
| | Associate | 81 | $365 | $425 | $480 | $432 | $437 | $417 |
| **Detroit MI** | Partner | 92 | $291 | $369 | $463 | $389 | $399 | $382 |
| | Associate | 51 | $253 | $303 | $359 | $317 | $312 | $290 |
| **El Paso TX** | Partner | 10 | $374 | $600 | $750 | $568 | $604 | $530 |
| **Greenville SC** | Partner | 27 | $425 | $490 | $546 | $485 | $487 | $453 |
| **Hartford CT** | Partner | 48 | $360 | $492 | $675 | $530 | $518 | $530 |
| | Associate | 28 | $255 | $303 | $344 | $320 | $302 | $299 |
| **Honolulu HI** | Partner | 11 | $300 | $350 | $446 | $412 | $340 | $354 |
| **Houston TX** | Partner | 153 | $400 | $662 | $975 | $725 | $776 | $760 |
| | Associate | 148 | $321 | $443 | $708 | $534 | $533 | $538 |

Ex. 6, Page 267

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 269 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3236iled 01/06/26    Page 33 of 265   Page
ID #:4405

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Indianapolis IN** | Partner | 60 | $393 | $500 | $640 | $519 | $508 | $485 |
| | Associate | 38 | $291 | $350 | $401 | $351 | $349 | $312 |
| **Jackson MS** | Partner | 75 | $330 | $400 | $489 | $436 | $402 | $369 |
| | Associate | 30 | $277 | $310 | $348 | $317 | $295 | $243 |
| **Jacksonville FL** | Partner | 19 | $290 | $360 | $379 | $386 | $397 | $381 |
| **Kansas City MO** | Partner | 127 | $461 | $561 | $713 | $620 | $623 | $582 |
| | Associate | 78 | $356 | $400 | $435 | $405 | $392 | $359 |
| **Las Vegas NV** | Partner | 32 | $245 | $350 | $425 | $378 | $401 | $424 |
| | Associate | 29 | $250 | $320 | $326 | $300 | $346 | $335 |
| **Lexington KY** | Partner | 12 | $325 | $417 | $477 | $403 | $344 | $338 |
| **Little Rock AR** | Partner | 18 | $215 | $259 | $315 | $289 | $311 | $296 |
| | Associate | 11 | $166 | $170 | $210 | $185 | $177 | $173 |

Ex. 6, Page 268

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 270 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3237Filed 01/06/26    Page 34 of 265   Page
ID #:4406

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Los Angeles CA** | Partner | 565 | $517 | $925 | $1,365 | $993 | $979 | $913 |
| | Associate | 518 | $485 | $720 | $982 | $761 | $741 | $684 |
| **Louisville KY** | Partner | 32 | $291 | $395 | $500 | $411 | $395 | $380 |
| | Associate | 19 | $275 | $290 | $342 | $304 | $274 | $268 |
| **Madison WI** | Partner | 10 | $275 | $420 | $491 | $420 | $443 | $563 |
| **Memphis TN** | Partner | 22 | $325 | $394 | $470 | $404 | $428 | $387 |
| **Miami FL** | Partner | 191 | $250 | $525 | $733 | $547 | $570 | $575 |
| | Associate | 128 | $175 | $330 | $479 | $357 | $389 | $393 |
| **Milwaukee WI** | Partner | 32 | $364 | $459 | $649 | $524 | $581 | $525 |
| | Associate | 18 | $322 | $455 | $690 | $498 | $462 | $404 |
| **Minneapolis MN** | Partner | 138 | $475 | $694 | $918 | $692 | $673 | $637 |
| | Associate | 111 | $333 | $450 | $620 | $485 | $467 | $432 |

Ex. 6, Page 269

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 271 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3 Filed 01/06/26    Page 35 of 265   Page
ID #:4407

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**                              **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Nashville TN** | Partner | 77 | $412 | $593 | $732 | $590 | $582 | $530 |
|  | Associate | 58 | $300 | $393 | $460 | $398 | $409 | $372 |
| **New Orleans LA** | Partner | 100 | $280 | $360 | $454 | $401 | $403 | $380 |
|  | Associate | 77 | $225 | $262 | $281 | $278 | $280 | $275 |
| **New York NY** | Partner | 1,348 | $585 | $1,153 | $1,860 | $1,232 | $1,220 | $1,132 |
|  | Associate | 1,538 | $515 | $871 | $1,231 | $898 | $841 | $770 |
| **Oklahoma City OK** | Partner | 24 | $220 | $275 | $325 | $284 | $301 | $298 |
|  | Associate | 13 | $206 | $250 | $269 | $242 | $224 | $211 |
| **Omaha NE** | Partner | 40 | $336 | $375 | $450 | $411 | $414 | $382 |
|  | Associate | 34 | $220 | $228 | $264 | $241 | $243 | $240 |
| **Orlando FL** | Partner | 45 | $335 | $483 | $568 | $481 | $530 | $504 |
|  | Associate | 34 | $243 | $350 | $425 | $356 | $351 | $327 |

Ex. 6, Page 270

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 272 of 501
Case 2:21-cv-06010-TJH-JC     Document 107-3     Filed 01/06/26     Page 36 of 265   Page
ID #:4408

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|---------------|------|------|------|
| **Philadelphia PA** | Partner | 628 | $480 | $775 | $1,040 | $800 | $794 | $732 |
| | Associate | 538 | $403 | $565 | $695 | $571 | $542 | $495 |
| **Phoenix AZ** | Partner | 75 | $324 | $438 | $596 | $490 | $450 | $474 |
| | Associate | 50 | $239 | $303 | $385 | $322 | $326 | $330 |
| **Pittsburgh PA** | Partner | 168 | $480 | $677 | $890 | $710 | $721 | $661 |
| | Associate | 153 | $345 | $498 | $550 | $476 | $491 | $446 |
| **Portland ME** | Partner | 41 | $354 | $420 | $482 | $436 | $428 | $394 |
| | Associate | 15 | $270 | $308 | $318 | $293 | $262 | $250 |
| **Portland OR** | Partner | 68 | $463 | $506 | $643 | $596 | $573 | $519 |
| | Associate | 56 | $360 | $425 | $726 | $529 | $497 | $422 |
| **Providence RI** | Partner | 21 | $328 | $390 | $483 | $391 | $410 | $379 |
| | Associate | 25 | $253 | $323 | $350 | $315 | $299 | $278 |

Ex. 6, Page 271

wolterskluwer.com

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Raleigh NC** | Partner | 29 | $350 | $450 | $512 | $502 | $469 | $455 |
| | Associate | 12 | $297 | $338 | $366 | $361 | $336 | $315 |
| **Richmond VA** | Partner | 72 | $426 | $700 | $950 | $695 | $755 | $687 |
| | Associate | 57 | $321 | $482 | $655 | $491 | $530 | $499 |
| **Rochester NY** | Partner | 16 | $373 | $390 | $582 | $637 | $473 | $449 |
| **Sacramento CA** | Partner | 12 | $480 | $576 | $691 | $601 | $645 | $550 |
| | Associate | 11 | $325 | $364 | $487 | $410 | $373 | $376 |
| **Salt Lake City UT** | Partner | 46 | $350 | $417 | $492 | $428 | $419 | $413 |
| | Associate | 20 | $265 | $309 | $336 | $309 | $319 | $293 |
| **San Diego CA** | Partner | 84 | $285 | $471 | $915 | $628 | $602 | $594 |
| | Associate | 67 | $229 | $266 | $444 | $380 | $348 | $318 |
| **San Francisco CA** | Partner | 214 | $400 | $700 | $1,335 | $881 | $846 | $794 |
| | Associate | 167 | $348 | $595 | $910 | $659 | $658 | $601 |

Ex. 6, Page 272

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS Document 139-7 Filed 07/02/26 Page 274 of 501
Case 2:21-cv-06010-TJH-JC Document 170-6 Filed 01/06/26 Page 38 of 265 Page
ID #:4410

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate and Partner**                                **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|---------------|------|------|------|
| San Jose CA | Partner | 50 | $658 | $888 | $1,262 | $1,018 | $1,073 | $1,071 |
| | Associate | 40 | $550 | $678 | $1,026 | $772 | $757 | $734 |
| Seattle WA | Partner | 162 | $434 | $692 | $925 | $724 | $661 | $645 |
| | Associate | 106 | $327 | $465 | $700 | $518 | $493 | $469 |
| St. Louis MO | Partner | 86 | $254 | $390 | $652 | $459 | $449 | $418 |
| | Associate | 25 | $165 | $215 | $235 | $227 | $233 | $227 |
| Tampa FL | Partner | 59 | $395 | $455 | $665 | $531 | $508 | $521 |
| | Associate | 30 | $310 | $345 | $400 | $371 | $352 | $331 |
| Trenton NJ | Partner | 21 | $527 | $911 | $1,075 | $822 | $722 | $685 |
| | Associate | 12 | $210 | $525 | $614 | $507 | $485 | $454 |
| Virginia Beach VA | Partner | 10 | $288 | $340 | $508 | $397 | $477 | $446 |
| Washington DC | Partner | 1,092 | $759 | $1,025 | $1,350 | $1,088 | $1,062 | $994 |
| | Associate | 900 | $552 | $800 | $995 | $794 | $762 | $696 |

Ex. 6, Page 273

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 275 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 39 of 265   Page
ID #:4411

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | **Litigation** | Partner | 366 | $339 | $430 | $585 | $516 | $550 | $507 |
| | | Associate | 243 | $286 | $326 | $425 | $383 | $399 | $380 |
| | | Paralegal | 180 | $155 | $185 | $250 | $218 | $217 | $204 |
| | **Non-Litigation** | Partner | 115 | $403 | $475 | $575 | $553 | $532 | $476 |
| | | Associate | 85 | $300 | $355 | $440 | $386 | $390 | $346 |
| | | Paralegal | 55 | $165 | $200 | $249 | $223 | $207 | $194 |

Ex. 6, Page 274

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 276 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-6  Filed 01/06/26    Page 40 of 265   Page
ID #:4412

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | Litigation | Partner | 497 | $481 | $685 | $1,055 | $812 | $802 | $766 |
| | | Associate | 387 | $368 | $575 | $787 | $618 | $600 | $553 |
| | | Paralegal | 185 | $191 | $250 | $350 | $285 | $288 | $285 |
| | Non-Litigation | Partner | 343 | $575 | $805 | $1,160 | $923 | $882 | $894 |
| | | Associate | 189 | $416 | $560 | $805 | $642 | $637 | $667 |
| | | Paralegal | 55 | $235 | $295 | $435 | $346 | $360 | $336 |
| Corporate: Antitrust and Competition | Litigation | Partner | 29 | $938 | $1,055 | $1,154 | $1,120 | $1,121 | $1,111 |
| | | Associate | 42 | $635 | $700 | $902 | $782 | $766 | $749 |
| | | Paralegal | 14 | $281 | $328 | $423 | $367 | $352 | $386 |
| | Non-Litigation | Partner | 31 | $891 | $1,144 | $2,093 | $1,393 | $1,291 | $1,212 |
| | | Associate | 32 | $616 | $769 | $1,292 | $958 | $884 | $747 |
| | | Paralegal | 10 | $421 | $466 | $525 | $439 | $386 | $346 |

Ex. 6, Page 275

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 277 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3    Filed 01/06/26    Page 41 of 265   Page
ID #:4413

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Governance** | **Non-Litigation** | Partner | 94 | $624 | $1,265 | $1,619 | $1,217 | $1,253 | $1,203 |
| | | Associate | 80 | $641 | $842 | $1,078 | $863 | $806 | $832 |
| | | Paralegal | 21 | $375 | $450 | $470 | $403 | $412 | $364 |
| **Corporate: Mergers, Acquisitions and Divestitures** | **Litigation** | Partner | 15 | $435 | $687 | $1,098 | $870 | $889 | $1,125 |
| | | Associate | 15 | $396 | $485 | $974 | $673 | $686 | $774 |
| | | Paralegal | 10 | $191 | $275 | $584 | $357 | $398 | $308 |
| | **Non-Litigation** | Partner | 299 | $975 | $1,303 | $1,891 | $1,394 | $1,279 | $1,149 |
| | | Associate | 344 | $653 | $948 | $1,296 | $991 | $878 | $784 |
| | | Paralegal | 101 | $429 | $535 | $605 | $515 | $456 | $410 |

Ex. 6, Page 276

wolterskluwer.com

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**   **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Other** | **Litigation** | Partner | 657 | $450 | $753 | $1,297 | $894 | $851 | $775 |
| | | Associate | 541 | $375 | $608 | $930 | $668 | $628 | $574 |
| | | Paralegal | 231 | $185 | $280 | $419 | $315 | $290 | $280 |
| | **Non-Litigation** | Partner | 957 | $690 | $1,183 | $1,579 | $1,187 | $1,090 | $990 |
| | | Associate | 765 | $575 | $886 | $1,065 | $868 | $810 | $706 |
| | | Paralegal | 261 | $207 | $384 | $473 | $366 | $334 | $306 |
| **Corporate: Partnerships and Joint Ventures** | **Non-Litigation** | Partner | 42 | $1,502 | $1,862 | $2,307 | $1,808 | $1,614 | $1,149 |
| | | Associate | 52 | $907 | $1,131 | $1,518 | $1,186 | $1,100 | $945 |

Ex. 6, Page 277

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 279 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3    Filed 01/06/26    Page 43 of 265   Page
ID #:4415

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Regulatory and Compliance** | **Litigation** | Partner | 128 | $679 | $895 | $1,270 | $984 | $997 | $923 |
| | | Associate | 94 | $475 | $592 | $778 | $648 | $663 | $636 |
| | | Paralegal | 49 | $208 | $300 | $369 | $311 | $308 | $316 |
| | **Non-Litigation** | Partner | 651 | $620 | $845 | $1,194 | $952 | $964 | $891 |
| | | Associate | 487 | $437 | $625 | $984 | $716 | $702 | $650 |
| | | Paralegal | 119 | $230 | $260 | $409 | $344 | $297 | $286 |
| **Corporate: Tax** | **Litigation** | Partner | 16 | $502 | $575 | $620 | $597 | $743 | $605 |
| | | Associate | 10 | $321 | $333 | $388 | $350 | $528 | $408 |
| | **Non-Litigation** | Partner | 179 | $755 | $1,027 | $1,454 | $1,126 | $1,164 | $1,095 |
| | | Associate | 112 | $522 | $716 | $1,038 | $818 | $790 | $710 |
| | | Paralegal | 31 | $224 | $358 | $505 | $427 | $378 | $352 |
| **Corporate: Treasury** | **Non-Litigation** | Partner | 28 | $758 | $905 | $1,061 | $967 | $1,046 | $953 |
| | | Associate | 16 | $585 | $715 | $886 | $723 | $672 | $611 |

Ex. 6, Page 278

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 280 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3 #:3247 Filed 01/06/26    Page 44 of 265   Page
ID #:4416

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                                       **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Employment and Labor: Agreements** | **Litigation** | Partner | 15 | $1,095 | $1,275 | $1,275 | $1,161 | $965 | $750 |
| | | Associate | 13 | $575 | $795 | $795 | $723 | $648 | $550 |
| | **Non-Litigation** | Partner | 22 | $606 | $1,359 | $2,421 | $1,514 | $844 | $736 |
| **Employment and Labor: Compensation and Benefits** | **Litigation** | Partner | 18 | $537 | $692 | $1,205 | $822 | $771 | $741 |
| | **Non-Litigation** | Partner | 81 | $656 | $840 | $980 | $860 | $888 | $811 |
| | | Associate | 36 | $424 | $547 | $614 | $558 | $593 | $562 |
| **Employment and Labor: Discrimination Retaliation and Harassment / EEO** | **Litigation** | Partner | 84 | $450 | $545 | $740 | $636 | $660 | $609 |
| | | Associate | 54 | $362 | $466 | $548 | $486 | $482 | $449 |
| | | Paralegal | 33 | $163 | $229 | $277 | $239 | $245 | $229 |
| | **Non-Litigation** | Partner | 91 | $393 | $491 | $635 | $591 | $585 | $570 |
| | | Associate | 70 | $312 | $373 | $483 | $439 | $443 | $381 |
| | | Paralegal | 37 | $141 | $185 | $265 | $214 | $215 | $208 |

Ex. 6, Page 279

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 281 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3    Filed 01/06/26    Page 45 of 265   Page
ID #:4417

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Employment and Labor: ERISA | Non-Litigation | Partner | 53 | $651 | $776 | $1,002 | $816 | $763 | $679 |
| | | Associate | 25 | $390 | $470 | $595 | $526 | $566 | $446 |
| Employment and Labor: Immigration | Non-Litigation | Partner | 25 | $550 | $754 | $884 | $730 | $743 | $671 |
| | | Associate | 14 | $390 | $453 | $527 | $477 | $624 | $507 |
| | | Paralegal | 13 | $126 | $236 | $240 | $204 | $194 | $188 |
| Employment and Labor: Other | Litigation | Partner | 155 | $562 | $830 | $1,164 | $887 | $850 | $897 |
| | | Associate | 160 | $423 | $491 | $680 | $552 | $578 | $608 |
| | | Paralegal | 51 | $175 | $254 | $295 | $255 | $287 | $270 |
| | Non-Litigation | Partner | 443 | $466 | $603 | $837 | $719 | $684 | $655 |
| | | Associate | 245 | $370 | $444 | $624 | $534 | $500 | $477 |
| | | Paralegal | 82 | $150 | $248 | $306 | $255 | $249 | $244 |

Ex. 6, Page 280

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 282 of 501
Case 2:21-cv-06010-TJH-JC    Document 70-3 #:3249 Filed 01/06/26    Page 46 of 265   Page
ID #:4418

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**          **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Employment and Labor: Union Relations and Negotiations / NLRB** | **Litigation** | Partner | 46 | $441 | $559 | $769 | $610 | $588 | $616 |
| | | Associate | 20 | $392 | $538 | $750 | $568 | $511 | $521 |
| | | Paralegal | 10 | $185 | $220 | $351 | $250 | $271 | $202 |
| | **Non-Litigation** | Partner | 41 | $531 | $575 | $820 | $673 | $648 | $662 |
| | | Associate | 18 | $386 | $414 | $668 | $523 | $451 | $433 |
| **Employment and Labor: Wages, Tips and Overtime** | **Litigation** | Partner | 15 | $564 | $696 | $795 | $742 | $687 | $621 |
| | **Non-Litigation** | Partner | 20 | $497 | $564 | $723 | $639 | $708 | $568 |
| | | Associate | 11 | $443 | $450 | $486 | $513 | $421 | $379 |
| **Employment and Labor: Wrongful Termination** | **Litigation** | Partner | 12 | $580 | $770 | $1,040 | $818 | $749 | $702 |

Ex. 6, Page 281

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Environmental** | **Litigation** | Partner | 93 | $454 | $630 | $794 | $657 | $614 | $605 |
| | | Associate | 61 | $415 | $440 | $555 | $483 | $440 | $420 |
| | | Paralegal | 20 | $215 | $230 | $245 | $230 | $259 | $348 |
| | **Non-Litigation** | Partner | 132 | $470 | $565 | $725 | $636 | $604 | $591 |
| | | Associate | 67 | $290 | $388 | $542 | $442 | $458 | $468 |
| | | Paralegal | 18 | $202 | $245 | $280 | $265 | $260 | $255 |
| **Finance and Securities: Debt/Equity Offerings** | **Non-Litigation** | Partner | 61 | $949 | $1,210 | $1,460 | $1,306 | $1,251 | $1,070 |
| | | Associate | 59 | $541 | $639 | $878 | $807 | $802 | $700 |
| **Finance and Securities: Fiduciary Services** | **Non-Litigation** | Partner | 30 | $478 | $561 | $973 | $727 | $633 | $725 |

Ex. 6, Page 282

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 284 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 48 of 265   Page
ID #:4420

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Investments and Other Financial Instruments** | **Litigation** | Partner | 12 | $834 | $1,210 | $1,418 | $1,213 | $1,226 | $1,212 |
| | | Associate | 27 | $605 | $825 | $956 | $781 | $694 | $691 |
| | **Non-Litigation** | Partner | 151 | $858 | $1,190 | $1,571 | $1,250 | $1,277 | $1,133 |
| | | Associate | 115 | $415 | $703 | $906 | $748 | $790 | $719 |
| | | Paralegal | 50 | $272 | $337 | $436 | $421 | $368 | $351 |
| **Finance and Securities: Loans and Financing** | **Litigation** | Partner | 112 | $375 | $465 | $760 | $590 | $678 | $601 |
| | | Associate | 113 | $300 | $345 | $500 | $412 | $451 | $441 |
| | | Paralegal | 38 | $165 | $200 | $275 | $221 | $228 | $215 |
| | **Non-Litigation** | Partner | 859 | $650 | $956 | $1,395 | $1,079 | $1,093 | $991 |
| | | Associate | 751 | $486 | $730 | $981 | $778 | $782 | $707 |
| | | Paralegal | 352 | $275 | $372 | $465 | $385 | $360 | $328 |

Ex. 6, Page 283

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 285 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3 Filed 01/06/26    Page 49 of 265   Page
ID #:4421

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                                   **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Other** | **Litigation** | Partner | 56 | $448 | $640 | $912 | $742 | $691 | $677 |
| | | Associate | 49 | $325 | $445 | $670 | $486 | $445 | $446 |
| **Finance and Securities: Routine Financial Transactions** | **Non-Litigation** | Partner | 33 | $394 | $905 | $1,095 | $850 | $901 | $889 |
| | | Associate | 18 | $281 | $398 | $612 | $479 | $561 | $539 |
| **Finance and Securities: SEC Filings and Financial Reporting** | **Non-Litigation** | Partner | 36 | $1,359 | $1,502 | $2,140 | $1,675 | $1,537 | $1,467 |
| | | Associate | 34 | $838 | $991 | $1,300 | $1,086 | $879 | $1,031 |
| | | Paralegal | 11 | $291 | $495 | $514 | $445 | $324 | $438 |

Ex. 6, Page 284

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 286 of 501
Case 2:21-cv-06010-TJH-JC    Document 70-3 Filed 01/06/26    Page 50 of 265   Page
ID #:4422

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| General Liability: Asbestos/Meso-thelioma | Litigation | Partner | 82 | $254 | $338 | $430 | $396 | $354 | $372 |
| | | Associate | 52 | $205 | $278 | $310 | $291 | $261 | $265 |
| | | Paralegal | 64 | $125 | $145 | $146 | $155 | $136 | $140 |
| | Non-Litigation | Partner | 101 | $241 | $350 | $400 | $463 | $439 | $373 |
| | | Associate | 54 | $245 | $275 | $807 | $504 | $493 | $299 |
| | | Paralegal | 54 | $114 | $125 | $133 | $163 | $219 | $136 |
| General Liability: Auto and Transportation | Litigation | Partner | 22 | $209 | $300 | $371 | $338 | $283 | $265 |
| | | Associate | 17 | $185 | $250 | $336 | $263 | $225 | $203 |
| | | Paralegal | 13 | $100 | $125 | $195 | $146 | $135 | $122 |
| General Liability: Consumer Related Claims | Litigation | Partner | 43 | $358 | $751 | $948 | $706 | $722 | $637 |
| | | Associate | 26 | $355 | $486 | $701 | $521 | $547 | $483 |
| | | Paralegal | 10 | $139 | $183 | $219 | $209 | $227 | $184 |

Ex. 6, Page 285

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 287 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3    Filed 01/06/26    Page 51 of 265   Page
ID #:4423

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**　　　　　　　　　　**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **General Liability: Other** | **Litigation** | Partner | 139 | $275 | $335 | $1,250 | $674 | $594 | $601 |
| | | Associate | 121 | $216 | $442 | $815 | $510 | $425 | $451 |
| | | Paralegal | 99 | $121 | $140 | $330 | $212 | $184 | $173 |
| | **Non-Litigation** | Partner | 58 | $454 | $590 | $744 | $622 | $607 | $529 |
| | | Paralegal | 26 | $164 | $263 | $300 | $250 | $265 | $245 |
| **General Liability: Personal Injury/Wrongful Death** | **Litigation** | Partner | 216 | $222 | $323 | $524 | $415 | $399 | $385 |
| | | Associate | 149 | $200 | $252 | $380 | $307 | $289 | $287 |
| | | Paralegal | 148 | $109 | $133 | $195 | $161 | $151 | $142 |
| **General Liability: Premises** | **Litigation** | Partner | 35 | $342 | $495 | $610 | $514 | $565 | $525 |
| | | Associate | 26 | $296 | $345 | $484 | $399 | $413 | $387 |
| | | Paralegal | 23 | $129 | $169 | $199 | $171 | $174 | $197 |

Ex. 6, Page 286

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 288 of 501
Case 2:21-cv-06010-TJH-JC   Document 170-3   Filed 01/06/26   Page 52 of 265   Page ID #:4424
Page ID #:3255

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**          **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **General Liability: Product and Product Liability** | **Litigation** | Partner | 254 | $360 | $550 | $763 | $643 | $590 | $516 |
| | | Associate | 171 | $260 | $425 | $670 | $492 | $461 | $409 |
| | | Paralegal | 142 | $140 | $196 | $310 | $223 | $201 | $186 |
| | **Non-Litigation** | Partner | 71 | $288 | $400 | $590 | $462 | $451 | $417 |
| | | Associate | 52 | $242 | $279 | $344 | $338 | $308 | $283 |
| | | Paralegal | 35 | $135 | $147 | $158 | $153 | $149 | $152 |
| **General Liability: Property Damage** | **Litigation** | Partner | 47 | $403 | $557 | $673 | $557 | $551 | $534 |
| | | Associate | 41 | $337 | $399 | $435 | $423 | $430 | $379 |
| **General Liability: Toxic Tort** | **Litigation** | Partner | 17 | $373 | $450 | $553 | $592 | $600 | $550 |
| | | Associate | 18 | $279 | $379 | $778 | $538 | $550 | $529 |
| | | Paralegal | 11 | $131 | $174 | $200 | $218 | $192 | $211 |

Ex. 6, Page 287

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Government Relations | Non-Litigation | Partner | 66 | $772 | $992 | $1,316 | $1,082 | $1,018 | $989 |
| | | Associate | 52 | $555 | $969 | $1,195 | $916 | $899 | $763 |
| Insurance Policies and Coverage: Policy Coverage Dispute | Litigation | Partner | 265 | $250 | $325 | $438 | $364 | $372 | $387 |
| | | Associate | 166 | $225 | $291 | $350 | $304 | $295 | $311 |
| Intellectual Property: Licensing | Non-Litigation | Partner | 14 | $390 | $605 | $960 | $776 | $668 | $645 |
| Intellectual Property: Other | Litigation | Partner | 40 | $656 | $1,081 | $1,399 | $1,057 | $888 | $835 |
| | | Associate | 35 | $766 | $1,125 | $1,290 | $1,028 | $825 | $749 |
| | | Paralegal | 26 | $392 | $533 | $554 | $478 | $342 | $322 |
| | Non-Litigation | Partner | 85 | $410 | $626 | $800 | $619 | $657 | $599 |
| | | Associate | 43 | $384 | $440 | $577 | $504 | $505 | $512 |
| | | Paralegal | 23 | $213 | $279 | $336 | $284 | $296 | $276 |

Ex. 6, Page 288

wolterskluwer.com

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Intellectual Property: Patents | Litigation | Partner | 230 | $665 | $1,045 | $1,400 | $1,057 | $962 | $878 |
| | | Associate | 195 | $650 | $856 | $1,055 | $862 | $791 | $697 |
| | | Paralegal | 133 | $285 | $355 | $450 | $371 | $340 | $312 |
| | Non-Litigation | Partner | 230 | $416 | $625 | $876 | $682 | $698 | $667 |
| | | Associate | 198 | $300 | $423 | $633 | $489 | $445 | $450 |
| | | Paralegal | 162 | $216 | $256 | $315 | $268 | $257 | $245 |
| Intellectual Property: Trademarks | Non-Litigation | Partner | 75 | $511 | $658 | $861 | $716 | $722 | $680 |
| | | Associate | 40 | $341 | $525 | $745 | $582 | $545 | $487 |
| | | Paralegal | 44 | $211 | $261 | $340 | $284 | $281 | $287 |
| Miscellaneous: Billing or Administrative Matter | Non-Litigation | Partner | 60 | $449 | $618 | $975 | $743 | $831 | $845 |
| | | Associate | 24 | $369 | $535 | $783 | $631 | $623 | $608 |

Ex. 6, Page 289

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 291 of 501
Case 2:21-cv-06010-TJH-JC    Document 70-3    Page ID #:3258  Filed 01/06/26    Page 55 of 265   Page
ID #:4427

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                                         **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Miscellaneous: General Advice & Counsel | Litigation | Partner | 11 | $479 | $685 | $1,033 | $888 | $668 | $1,199 |
| | Non-Litigation | Partner | 142 | $623 | $865 | $1,108 | $932 | $903 | $884 |
| | | Associate | 79 | $450 | $625 | $926 | $712 | $603 | $592 |
| | | Paralegal | 23 | $186 | $250 | $349 | $307 | $281 | $262 |
| Miscellaneous: Other | Litigation | Partner | 177 | $600 | $790 | $945 | $855 | $793 | $680 |
| | | Associate | 148 | $393 | $514 | $690 | $592 | $555 | $477 |
| | Non-Litigation | Partner | 61 | $480 | $690 | $940 | $755 | $820 | $997 |
| | | Associate | 50 | $376 | $497 | $781 | $560 | $630 | $712 |
| Real Estate: Construction/ Development | Non-Litigation | Partner | 11 | $630 | $683 | $788 | $714 | $790 | $896 |
| Real Estate: Land Use/Zoning/ Restrictive Covenants | Non-Litigation | Partner | 19 | $520 | $695 | $1,072 | $816 | $667 | $582 |
| | | Associate | 15 | $338 | $540 | $694 | $566 | $436 | $396 |

Ex. 6, Page 290

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 292 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3259iled 01/06/26    Page 56 of 265   Page
ID #:4428

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Real Estate: Leasing** | **Non-Litigation** | Partner | 73 | $363 | $525 | $727 | $594 | $579 | $570 |
| | | Associate | 48 | $265 | $349 | $551 | $424 | $411 | $415 |
| | | Paralegal | 19 | $134 | $165 | $244 | $186 | $222 | $217 |
| **Real Estate: Other** | **Litigation** | Partner | 42 | $415 | $522 | $700 | $589 | $579 | $728 |
| | | Associate | 25 | $270 | $410 | $699 | $481 | $516 | $585 |
| | | Paralegal | 17 | $141 | $209 | $250 | $232 | $280 | $322 |
| | **Non-Litigation** | Partner | 153 | $450 | $632 | $882 | $673 | $635 | $583 |
| | | Associate | 78 | $294 | $425 | $607 | $468 | $455 | $439 |
| | | Paralegal | 38 | $221 | $301 | $390 | $312 | $269 | $259 |
| **Real Estate: Property/Land Acquisition or Divestiture** | **Non-Litigation** | Partner | 30 | $416 | $535 | $685 | $723 | $639 | $684 |
| | | Associate | 33 | $345 | $525 | $870 | $597 | $521 | $513 |
| | | Paralegal | 22 | $154 | $324 | $347 | $292 | $228 | $261 |

Ex. 6, Page 291

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 293 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 57 of 265   Page
ID #:4429

# Section I: High-Level Data Cuts

## Detailed Practice Area
By Matter Type

**2025 Real Rates for Partner, Associate, and Paralegal**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Real Estate: Titles** | **Litigation** | Partner | 187 | $295 | $350 | $425 | $400 | $394 | $377 |
| | **Non-Litigation** | Partner | 521 | $295 | $340 | $425 | $402 | $386 | $370 |
| **Requests for Information: Subpoena** | **Litigation** | Partner | 143 | $710 | $979 | $1,343 | $1,057 | $946 | $913 |
| | | Associate | 130 | $640 | $805 | $965 | $801 | $728 | $690 |
| | | Paralegal | 43 | $298 | $400 | $534 | $409 | $350 | $334 |

Ex. 6, Page 292

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 294 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6  Filed 01/06/26    Page 58 of 265   Page
ID #:4430

# Section I: High-Level Data Cuts

## Firm Size
By Matter Type

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 552 | $280 | $365 | $499 | $420 | $410 | $405 |
| | | Associate | 302 | $230 | $289 | $368 | $342 | $329 | $318 |
| | **Non-Litigation** | Partner | 742 | $300 | $395 | $574 | $443 | $420 | $425 |
| | | Associate | 407 | $220 | $280 | $355 | $310 | $301 | $302 |
| **51-200 Lawyers** | **Litigation** | Partner | 649 | $315 | $416 | $615 | $505 | $503 | $469 |
| | | Associate | 362 | $250 | $310 | $412 | $363 | $341 | $327 |
| | **Non-Litigation** | Partner | 770 | $350 | $485 | $681 | $571 | $563 | $548 |
| | | Associate | 437 | $235 | $309 | $415 | $369 | $375 | $366 |

Ex. 6, Page 293

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 295 of 501
Case 2:21-cv-06010-TJH-JC     Document 170-6 Filed 01/06/26     Page 59 of 265   Page
ID #:4431

# Section I: High-Level Data Cuts

## Firm Size
By Matter Type

**2025 Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| 201-500 Lawyers | Litigation | Partner | 639 | $425 | $625 | $890 | $706 | $675 | $654 |
| | | Associate | 485 | $331 | $437 | $675 | $519 | $486 | $486 |
| | Non-Litigation | Partner | 1,112 | $492 | $695 | $983 | $789 | $769 | $721 |
| | | Associate | 740 | $373 | $500 | $776 | $595 | $571 | $514 |
| 501-1,000 Lawyers | Litigation | Partner | 610 | $725 | $940 | $1,370 | $1,051 | $999 | $928 |
| | | Associate | 607 | $525 | $741 | $995 | $779 | $729 | $647 |
| | Non-Litigation | Partner | 1,222 | $779 | $1,113 | $1,642 | $1,251 | $1,163 | $1,044 |
| | | Associate | 1,201 | $616 | $900 | $1,176 | $931 | $833 | $720 |
| More Than 1,000 Lawyers | Litigation | Partner | 477 | $865 | $1,147 | $1,452 | $1,184 | $1,140 | $1,050 |
| | | Associate | 541 | $550 | $710 | $925 | $757 | $744 | $681 |
| | Non-Litigation | Partner | 960 | $963 | $1,235 | $1,603 | $1,313 | $1,292 | $1,196 |
| | | Associate | 854 | $597 | $823 | $1,051 | $854 | $844 | $796 |

Ex. 6, Page 294

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 296 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 60 of 265   Page
ID #:4432

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Partner**                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|--------------------|---|----------------|--------|----------------|------|------|------|
| Atlanta GA | Fewer Than 21 Years | 44 | $443 | $606 | $845 | $650 | $683 | $599 |
| | 21 or More Years | 75 | $375 | $560 | $1,025 | $707 | $726 | $686 |
| Austin TX | Fewer Than 21 Years | 10 | $389 | $660 | $923 | $672 | $720 | $612 |
| | 21 or More Years | 25 | $356 | $511 | $741 | $578 | $560 | $577 |
| Baltimore MD | Fewer Than 21 Years | 18 | $505 | $771 | $865 | $766 | $791 | $722 |
| | 21 or More Years | 49 | $485 | $721 | $822 | $706 | $725 | $684 |
| Birmingham AL | Fewer Than 21 Years | 34 | $364 | $392 | $440 | $407 | $394 | $396 |
| | 21 or More Years | 46 | $360 | $433 | $569 | $463 | $460 | $435 |
| Boston MA | Fewer Than 21 Years | 41 | $450 | $749 | $1,079 | $794 | $857 | $849 |
| | 21 or More Years | 77 | $504 | $868 | $1,101 | $888 | $942 | $865 |

Ex. 6, Page 295

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 297 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3264iled 01/06/26    Page 61 of 265   Page
ID #:4433

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Partner**                                                                                        **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Buffalo NY** | 21 or More Years | 10 | $428 | $480 | $505 | $483 | $448 | $406 |
| **Charleston SC** | 21 or More Years | 10 | $300 | $517 | $559 | $446 | $426 | $408 |
| **Charleston WV** | 21 or More Years | 14 | $312 | $350 | $359 | $339 | $325 | $332 |
| **Charlotte NC** | Fewer Than 21 Years | 18 | $718 | $846 | $1,043 | $813 | $813 | $802 |
| | 21 or More Years | 25 | $667 | $886 | $941 | $857 | $875 | $812 |
| **Chicago IL** | Fewer Than 21 Years | 103 | $586 | $980 | $1,390 | $994 | $934 | $891 |
| | 21 or More Years | 228 | $624 | $990 | $1,358 | $1,037 | $994 | $920 |
| **Cincinnati OH** | Fewer Than 21 Years | 28 | $257 | $350 | $475 | $381 | $345 | $346 |
| | 21 or More Years | 28 | $475 | $641 | $773 | $629 | $558 | $550 |
| **Cleveland OH** | Fewer Than 21 Years | 50 | $450 | $540 | $689 | $611 | $625 | $589 |
| | 21 or More Years | 62 | $500 | $600 | $801 | $697 | $660 | $644 |
| **Columbia SC** | 21 or More Years | 14 | $400 | $520 | $625 | $509 | $560 | $515 |

Ex. 6, Page 296

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 298 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3 Filed 01/06/26    Page 62 of 265   Page
ID #:4434

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Partner**                                                        **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Columbus OH** | 21 or More Years | 21 | $488 | $585 | $815 | $662 | $564 | $525 |
| **Dallas TX** | Fewer Than 21 Years | 46 | $493 | $779 | $944 | $740 | $667 | $662 |
| | 21 or More Years | 41 | $420 | $625 | $1,125 | $784 | $789 | $772 |
| **Denver CO** | Fewer Than 21 Years | 31 | $477 | $539 | $684 | $593 | $560 | $550 |
| | 21 or More Years | 48 | $474 | $609 | $880 | $680 | $666 | $629 |
| **Detroit MI** | Fewer Than 21 Years | 18 | $275 | $356 | $471 | $378 | $387 | $382 |
| | 21 or More Years | 40 | $298 | $369 | $473 | $399 | $388 | $368 |
| **Greenville SC** | 21 or More Years | 11 | $427 | $522 | $546 | $502 | $503 | $483 |
| **Hartford CT** | 21 or More Years | 22 | $470 | $620 | $730 | $616 | $593 | $601 |
| **Houston TX** | Fewer Than 21 Years | 14 | $370 | $585 | $1,057 | $686 | $729 | $740 |
| | 21 or More Years | 43 | $532 | $825 | $1,082 | $809 | $829 | $825 |
| **Indianapolis IN** | 21 or More Years | 27 | $395 | $550 | $706 | $565 | $540 | $543 |

Ex. 6, Page 297

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Partner**   **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Jackson MS** | 21 or More Years | 30 | $345 | $442 | $553 | $466 | $422 | $386 |
| **Kansas City MO** | Fewer Than 21 Years | 30 | $431 | $530 | $636 | $567 | $585 | $530 |
| | 21 or More Years | 50 | $525 | $650 | $793 | $663 | $654 | $628 |
| **Las Vegas NV** | 21 or More Years | 11 | $221 | $325 | $477 | $374 | $419 | $435 |
| **Los Angeles CA** | Fewer Than 21 Years | 105 | $550 | $978 | $1,488 | $1,044 | $1,010 | $908 |
| | 21 or More Years | 193 | $425 | $865 | $1,291 | $923 | $966 | $899 |
| **Louisville KY** | Fewer Than 21 Years | 12 | $325 | $395 | $509 | $433 | $388 | $377 |
| | 21 or More Years | 11 | $265 | $398 | $507 | $417 | $427 | $415 |
| **Memphis TN** | 21 or More Years | 10 | $313 | $420 | $444 | $373 | $386 | $382 |
| **Miami FL** | Fewer Than 21 Years | 19 | $238 | $450 | $650 | $470 | $469 | $528 |
| | 21 or More Years | 56 | $425 | $617 | $800 | $638 | $636 | $610 |
| **Milwaukee WI** | 21 or More Years | 11 | $390 | $445 | $635 | $552 | $642 | $607 |

Ex. 6, Page 298

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 300 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 64 of 265   Page
ID #:4436

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Partner**  **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|--------------------|---|----------------|--------|----------------|------|------|------|
| **Minneapolis MN** | Fewer Than 21 Years | 34 | $522 | $780 | $902 | $716 | $657 | $587 |
| | 21 or More Years | 44 | $563 | $780 | $1,016 | $769 | $705 | $693 |
| **Nashville TN** | Fewer Than 21 Years | 23 | $497 | $542 | $653 | $595 | $572 | $536 |
| | 21 or More Years | 27 | $389 | $596 | $635 | $549 | $574 | $550 |
| **New Orleans LA** | Fewer Than 21 Years | 24 | $285 | $389 | $446 | $413 | $439 | $411 |
| | 21 or More Years | 42 | $298 | $392 | $595 | $463 | $458 | $429 |
| **New York NY** | Fewer Than 21 Years | 280 | $650 | $1,305 | $1,967 | $1,334 | $1,251 | $1,126 |
| | 21 or More Years | 525 | $623 | $1,171 | $1,900 | $1,273 | $1,258 | $1,165 |
| **Omaha NE** | Fewer Than 21 Years | 10 | $320 | $335 | $350 | $346 | $357 | $332 |
| | 21 or More Years | 19 | $401 | $450 | $495 | $457 | $453 | $433 |
| **Orlando FL** | 21 or More Years | 14 | $400 | $500 | $550 | $500 | $489 | $482 |
| **Philadelphia PA** | Fewer Than 21 Years | 121 | $550 | $800 | $933 | $777 | $737 | $666 |
| | 21 or More Years | 250 | $499 | $793 | $1,093 | $803 | $796 | $751 |

Ex. 6, Page 299

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 301 of 501
Case 2:21-cv-06010-TJH-JC     Document 170-3 Filed 01/06/26     Page 65 of 265   Page
ID #:4437

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Partner**                                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---------------------|---|----------------|--------|----------------|------|------|------|
| **Phoenix AZ** | 21 or More Years | 25 | $350 | $490 | $674 | $559 | $499 | $540 |
| **Pittsburgh PA** | Fewer Than 21 Years | 41 | $501 | $600 | $810 | $669 | $658 | $599 |
| | 21 or More Years | 72 | $480 | $691 | $860 | $705 | $733 | $669 |
| **Portland ME** | 21 or More Years | 18 | $386 | $435 | $484 | $418 | $421 | $381 |
| **Portland OR** | Fewer Than 21 Years | 17 | $402 | $465 | $525 | $599 | $536 | $509 |
| | 21 or More Years | 32 | $470 | $525 | $639 | $594 | $607 | $553 |
| **Raleigh NC** | 21 or More Years | 12 | $396 | $475 | $510 | $489 | $477 | $477 |
| **Richmond VA** | Fewer Than 21 Years | 10 | $604 | $703 | $855 | $707 | $746 | $687 |
| | 21 or More Years | 24 | $431 | $713 | $1,084 | $739 | $756 | $726 |
| **Salt Lake City UT** | Fewer Than 21 Years | 12 | $395 | $447 | $459 | $422 | $445 | $412 |
| | 21 or More Years | 16 | $350 | $463 | $521 | $480 | $433 | $407 |
| **San Diego CA** | 21 or More Years | 33 | $438 | $785 | $1,334 | $894 | $898 | $882 |

Ex. 6, Page 300                                        wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 302 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6  Filed 01/06/26    Page 66 of 265   Page
ID #:4438

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Partner**                                                            **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|--------------------|---|----------------|--------|----------------|------|------|------|
| **San Francisco CA** | Fewer Than 21 Years | 41 | $400 | $788 | $1,351 | $912 | $859 | $830 |
| | 21 or More Years | 80 | $542 | $883 | $1,287 | $956 | $902 | $831 |
| **San Jose CA** | Fewer Than 21 Years | 13 | $794 | $1,085 | $1,230 | $1,105 | $1,168 | $1,084 |
| | 21 or More Years | 21 | $650 | $800 | $1,303 | $986 | $1,055 | $1,089 |
| **Seattle WA** | Fewer Than 21 Years | 41 | $460 | $655 | $966 | $723 | $633 | $559 |
| | 21 or More Years | 51 | $416 | $691 | $944 | $739 | $678 | $684 |
| **St. Louis MO** | Fewer Than 21 Years | 16 | $318 | $530 | $575 | $443 | $467 | $418 |
| | 21 or More Years | 47 | $250 | $394 | $663 | $462 | $447 | $427 |
| **Tampa FL** | Fewer Than 21 Years | 10 | $425 | $434 | $539 | $575 | $507 | $530 |
| | 21 or More Years | 18 | $442 | $499 | $671 | $567 | $531 | $519 |
| **Trenton NJ** | 21 or More Years | 14 | $413 | $894 | $1,095 | $802 | $708 | $720 |
| **Washington DC** | Fewer Than 21 Years | 269 | $732 | $995 | $1,300 | $1,041 | $1,005 | $944 |
| | 21 or More Years | 456 | $777 | $1,034 | $1,375 | $1,098 | $1,076 | $1,004 |

Ex. 6, Page 301

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 303 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6 Filed 01/06/26    Page 67 of 265   Page
ID #:4439

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Associate**                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---------------------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | 3 to Fewer Than 7 Years | 19 | $416 | $485 | $485 | $525 | $494 | $472 |
| | 7 or More Years | 26 | $355 | $485 | $690 | $594 | $560 | $543 |
| **Baltimore MD** | 3 to Fewer Than 7 Years | 14 | $515 | $675 | $850 | $676 | $605 | $553 |
| | 7 or More Years | 19 | $346 | $636 | $839 | $618 | $600 | $628 |
| **Birmingham AL** | 3 to Fewer Than 7 Years | 13 | $280 | $290 | $343 | $306 | $311 | $267 |
| **Boston MA** | 3 to Fewer Than 7 Years | 20 | $500 | $604 | $758 | $614 | $691 | $569 |
| | 7 or More Years | 25 | $318 | $632 | $763 | $628 | $643 | $585 |

Ex. 6, Page 302

wolterskluwer.com

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Associate**  **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Charlotte NC** | 3 to Fewer Than 7 Years | 17 | $374 | $493 | $572 | $500 | $490 | $443 |
| | 7 or More Years | 14 | $404 | $463 | $522 | $462 | $510 | $552 |
| **Chicago IL** | 3 to Fewer Than 7 Years | 41 | $290 | $562 | $836 | $608 | $588 | $541 |
| | 7 or More Years | 47 | $366 | $752 | $1,027 | $729 | $692 | $709 |
| **Cleveland OH** | 3 to Fewer Than 7 Years | 21 | $310 | $345 | $479 | $398 | $406 | $358 |
| | 7 or More Years | 33 | $330 | $365 | $504 | $437 | $399 | $373 |
| **Dallas TX** | 3 to Fewer Than 7 Years | 25 | $321 | $641 | $850 | $641 | $491 | $505 |
| | 7 or More Years | 17 | $317 | $550 | $926 | $660 | $605 | $546 |
| **Denver CO** | 3 to Fewer Than 7 Years | 12 | $334 | $387 | $478 | $437 | $431 | $399 |
| **Houston TX** | 7 or More Years | 11 | $405 | $532 | $995 | $702 | $623 | $647 |
| **Kansas City MO** | 3 to Fewer Than 7 Years | 13 | $309 | $450 | $540 | $442 | $397 | $339 |

Ex. 6, Page 303

wolterskluwer.com

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Associate**                                                                                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Los Angeles CA** | 3 to Fewer Than 7 Years | 57 | $649 | $796 | $1,086 | $844 | $810 | $648 |
| | 7 or More Years | 70 | $425 | $815 | $1,065 | $797 | $794 | $728 |
| **Minneapolis MN** | 3 to Fewer Than 7 Years | 15 | $370 | $498 | $670 | $554 | $524 | $485 |
| | 7 or More Years | 19 | $380 | $620 | $823 | $601 | $619 | $531 |
| **New York NY** | Fewer Than 3 Years | 109 | $675 | $924 | $1,175 | $959 | $820 | $673 |
| | 3 to Fewer Than 7 Years | 202 | $548 | $991 | $1,353 | $985 | $915 | $724 |
| | 7 or More Years | 227 | $550 | $956 | $1,407 | $1,007 | $918 | $799 |
| **Philadelphia PA** | Fewer Than 3 Years | 34 | $475 | $562 | $600 | $536 | $514 | $436 |
| | 3 to Fewer Than 7 Years | 100 | $461 | $599 | $687 | $567 | $530 | $478 |
| | 7 or More Years | 123 | $473 | $665 | $790 | $627 | $595 | $528 |

Ex. 6, Page 304

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 306 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3  Filed 01/06/26    Page 70 of 265   Page
ID #:4442

# Section I: High-Level Data Cuts

## Cities
By Years of Experience

**2025 Real Rates for Associate**                                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---------------------|---|----------------|--------|----------------|------|------|------|
| **Pittsburgh PA** | 3 to Fewer Than 7 Years | 27 | $421 | $500 | $500 | $470 | $462 | $398 |
| | 7 or More Years | 33 | $320 | $486 | $596 | $495 | $525 | $476 |
| **Portland OR** | 3 to Fewer Than 7 Years | 22 | $290 | $400 | $619 | $454 | $455 | $342 |
| | 7 or More Years | 18 | $521 | $758 | $881 | $693 | $580 | $467 |
| **San Diego CA** | 7 or More Years | 11 | $260 | $374 | $518 | $437 | $481 | $435 |
| **San Francisco CA** | 3 to Fewer Than 7 Years | 16 | $628 | $875 | $975 | $831 | $753 | $631 |
| | 7 or More Years | 25 | $468 | $785 | $1,098 | $799 | $791 | $694 |
| **San Jose CA** | 7 or More Years | 11 | $600 | $641 | $985 | $792 | $765 | $648 |
| **Seattle WA** | 3 to Fewer Than 7 Years | 21 | $388 | $515 | $700 | $514 | $468 | $417 |
| | 7 or More Years | 12 | $328 | $680 | $875 | $617 | $528 | $431 |

Ex. 6, Page 305

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 307 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3274iled 01/06/26    Page 71 of 265   Page
ID #:4443

# Section I: High-Level Data Cuts

## Cities
By Role

**2025 Real Rates for Associate**                                                    **Trend Analysis - Mean**

| City | Years of Experience | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|--------------------|----|----------------|--------|----------------|------|------|------|
| **Washington DC** | Fewer Than 3 Years | 66 | $540 | $707 | $895 | $732 | $627 | $574 |
| | 3 to Fewer Than 7 Years | 127 | $521 | $790 | $1,025 | $790 | $733 | $633 |
| | 7 or More Years | 117 | $585 | $877 | $1,055 | $889 | $849 | $769 |

Ex. 6, Page 306    wolterskluwer.com

Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 72 of 265    Page ID #:4444



# Section II: Industry Analysis

All data and analysis based on data collected thru Q2 2025

wolterskluwer.com

Ex. 6, Page 307

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 309 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6 Filed 01/06/26    Page 73 of 265   Page
ID #:4445

# Section II: Industry Analysis

**All**
By Matter Type

**2025 - Real Rates for Associate and Partner**                                           **Trend Analysis - Mean**

| Industry | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Basic Materials and Utilities** | **Litigation** | Partner | 249 | $360 | $536 | $696 | $562 | $523 | $513 |
| | | Associate | 188 | $297 | $379 | $450 | $411 | $378 | $360 |
| | **Non-Litigation** | Partner | 206 | $525 | $750 | $1,354 | $969 | $936 | $909 |
| | | Associate | 174 | $479 | $835 | $1,252 | $875 | $797 | $773 |
| **Consumer Goods** | **Litigation** | Partner | 162 | $325 | $403 | $575 | $526 | $549 | $526 |
| | | Associate | 98 | $250 | $341 | $418 | $396 | $396 | $376 |
| | **Non-Litigation** | Partner | 212 | $495 | $650 | $870 | $713 | $697 | $689 |
| | | Associate | 81 | $352 | $426 | $551 | $466 | $497 | $468 |

Ex. 6, Page 308

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 310 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 74 of 265   Page
ID #:4446

# Section II: Industry Analysis

**All**
By Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Industry | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Consumer Services** | **Litigation** | Partner | 379 | $544 | $701 | $1,003 | $837 | $795 | $719 |
| | | Associate | 335 | $460 | $603 | $805 | $675 | $638 | $566 |
| | **Non-Litigation** | Partner | 569 | $550 | $749 | $1,234 | $994 | $936 | $814 |
| | | Associate | 530 | $417 | $664 | $1,020 | $798 | $720 | $592 |
| **Financials** | **Litigation** | Partner | 1,058 | $350 | $483 | $826 | $635 | $679 | $670 |
| | | Associate | 889 | $286 | $375 | $575 | $469 | $488 | $507 |
| | **Non-Litigation** | Partner | 1,879 | $589 | $939 | $1,350 | $1,043 | $1,063 | $986 |
| | | Associate | 1,431 | $441 | $675 | $964 | $752 | $760 | $687 |
| **Health Care** | **Litigation** | Partner | 487 | $524 | $905 | $1,267 | $916 | $860 | $755 |
| | | Associate | 397 | $475 | $653 | $845 | $667 | $646 | $555 |
| | **Non-Litigation** | Partner | 295 | $600 | $800 | $1,232 | $894 | $864 | $819 |
| | | Associate | 256 | $410 | $591 | $995 | $677 | $645 | $596 |

Ex. 6, Page 309

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 311 of 501
Case 2:21-cv-06010-TJH-JC    Document 10-6 Filed 01/06/26    Page 75 of 265   Page ID #:4447
Page ID #:3278

# Section II: Industry Analysis

**All**
By Matter Type

**2025 - Real Rates for Associate, Paralegal, and Partner**  **Trend Analysis - Mean**

| Industry | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Insurance** | **Litigation** | Partner | 3,831 | $186 | $215 | $270 | $303 | $289 | $278 |
| | | Associate | 2,537 | $170 | $195 | $240 | $245 | $231 | $219 |
| | **Non-Litigation** | Partner | 8,364 | $200 | $235 | $280 | $298 | $304 | $298 |
| | | Associate | 5,925 | $175 | $205 | $240 | $248 | $257 | $257 |
| **Manufacturing** | **Litigation** | Partner | 394 | $550 | $868 | $1,348 | $981 | $879 | $853 |
| | | Associate | 347 | $509 | $745 | $987 | $755 | $667 | $641 |
| | **Non-Litigation** | Partner | 714 | $485 | $835 | $1,329 | $949 | $903 | $832 |
| | | Associate | 636 | $425 | $688 | $969 | $726 | $666 | $627 |
| **Tech and Telecom** | **Litigation** | Partner | 389 | $656 | $906 | $1,095 | $954 | $896 | $827 |
| | | Associate | 340 | $434 | $674 | $945 | $713 | $655 | $586 |
| | **Non-Litigation** | Partner | 795 | $550 | $825 | $1,195 | $967 | $898 | $834 |
| | | Associate | 622 | $392 | $617 | $985 | $708 | $657 | $595 |

Ex. 6, Page 310

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 312 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3279iled 01/06/26    Page 76 of 265   Page
ID #:4448

# Section II: Industry Analysis

**All**
By Role

**2025 - Real Rates for Partner, Associate, and Paralegal**                    **Trend Analysis - Mean**

| Industry | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|----------|------|---|----------------|--------|----------------|------|------|------|
| **Basic Materials and Utilities** | Partner | 433 | $410 | $607 | $865 | $732 | $732 | $728 |
| | Associate | 357 | $339 | $437 | $835 | $611 | $585 | $576 |
| | Paralegal | 219 | $145 | $208 | $297 | $235 | $222 | $246 |
| **Consumer Goods** | Partner | 360 | $375 | $550 | $790 | $633 | $641 | $630 |
| | Associate | 175 | $285 | $380 | $526 | $427 | $452 | $429 |
| | Paralegal | 111 | $150 | $177 | $274 | $217 | $226 | $208 |
| **Consumer Services** | Partner | 867 | $550 | $732 | $1,141 | $932 | $877 | $774 |
| | Associate | 810 | $440 | $628 | $957 | $752 | $686 | $580 |
| | Paralegal | 328 | $215 | $302 | $445 | $344 | $335 | $295 |

Ex. 6, Page 311

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 313 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 77 of 265   Page
ID #:4449

# Section II: Industry Analysis

**All**
By Role

**2025 - Real Rates for Partner, Associate, and Paralegal**                          **Trend Analysis - Mean**

| Industry | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|----------|------|---|----------------|--------|----------------|------|------|------|
| **Financials** | Partner | 2,784 | $450 | $760 | $1,183 | $889 | $933 | $879 |
| | Associate | 2,241 | $345 | $535 | $842 | $639 | $665 | $626 |
| | Paralegal | 1,017 | $165 | $260 | $395 | $300 | $296 | $279 |
| **Health Care** | Partner | 751 | $560 | $850 | $1,254 | $908 | $861 | $782 |
| | Associate | 636 | $445 | $646 | $926 | $671 | $646 | $572 |
| | Paralegal | 348 | $175 | $260 | $330 | $274 | $276 | $258 |
| **Insurance** | Partner | 10,651 | $195 | $230 | $277 | $300 | $299 | $291 |
| | Associate | 7,620 | $175 | $200 | $240 | $247 | $248 | $244 |
| | Paralegal | 6,039 | $95 | $105 | $120 | $118 | $118 | $117 |
| **Manufacturing** | Partner | 991 | $501 | $850 | $1,337 | $960 | $895 | $838 |
| | Associate | 912 | $450 | $700 | $975 | $736 | $667 | $631 |
| | Paralegal | 385 | $187 | $312 | $490 | $344 | $317 | $291 |

Ex. 6, Page 312

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 314 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6 Filed 01/06/26    Page 78 of 265   Page
ID #:4450

# Section II: Industry Analysis

**All**
By Role

**2025 - Real Rates for Partner, Associate, and Paralegal**        **Trend Analysis - Mean**

| Industry | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|----------|------|---|---------------|--------|----------------|------|------|------|
| **Tech and Telecom** | Partner | 1,107 | $600 | $852 | $1,170 | $963 | $898 | $832 |
| | Associate | 920 | $424 | $629 | $971 | $710 | $656 | $592 |
| | Paralegal | 362 | $207 | $299 | $417 | $325 | $291 | $267 |

Ex. 6, Page 313

# Section II: Industry Analysis

### Basic Material and Utilities
By Detailed Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Regulatory and Compliance** | **Non-Litigation** | Partner | 28 | $519 | $750 | $950 | $739 | $823 | $770 |
| | | Associate | 19 | $413 | $500 | $628 | $586 | $572 | $546 |
| **Environmental** | **Non-Litigation** | Partner | 35 | $513 | $580 | $901 | $684 | $716 | $704 |
| | | Associate | 12 | $350 | $505 | $714 | $537 | $585 | $604 |

Ex. 6, Page 314

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 316 of 501
Case 2:21-cv-06010-TJH-JC    Document 130-6    Filed 01/06/26    Page 80 of 265   Page
ID #:4452

# Section II: Industry Analysis

## Consumer Goods
By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | **Litigation** | Partner | 51 | $430 | $550 | $758 | $660 | $701 | $621 |
| | | Associate | 22 | $325 | $380 | $654 | $510 | $470 | $475 |
| **Corporate: Regulatory and Compliance** | **Non-Litigation** | Partner | 20 | $619 | $860 | $1,154 | $862 | $966 | $984 |
| **Employment and Labor: Other** | **Non-Litigation** | Partner | 42 | $434 | $608 | $762 | $625 | $617 | $597 |
| | | Associate | 13 | $342 | $380 | $482 | $443 | $433 | $406 |

Ex. 6, Page 315

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 317 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 81 of 265   Page
ID #:4453

# Section II: Industry Analysis

## Consumer Services
By Detailed Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | **Litigation** | Partner | 119 | $561 | $799 | $1,088 | $821 | $767 | $730 |
| | | Associate | 104 | $409 | $616 | $761 | $611 | $577 | $531 |
| | **Non-Litigation** | Partner | 58 | $562 | $700 | $1,018 | $796 | $722 | $711 |
| | | Associate | 33 | $416 | $530 | $805 | $619 | $546 | $519 |
| **Corporate: Other** | **Non-Litigation** | Partner | 98 | $934 | $1,915 | $2,386 | $1,674 | $1,458 | $1,230 |
| | | Associate | 114 | $868 | $1,231 | $1,712 | $1,195 | $1,083 | $831 |
| **Corporate: Regulatory and Compliance** | **Non-Litigation** | Partner | 150 | $550 | $669 | $923 | $794 | $799 | $700 |
| | | Associate | 123 | $382 | $561 | $805 | $629 | $616 | $578 |

Ex. 6, Page 316

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 318 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6 Filed 01/06/26    Page 82 of 265   Page
ID #:4454

# Section II: Industry Analysis

## Consumer Services
By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Employment and Labor: Discrimination, Retaliation and Harassment / EEO | Litigation | Partner | 27 | $393 | $495 | $613 | $509 | $463 | $436 |
| | | Associate | 19 | $400 | $475 | $493 | $437 | $387 | $370 |
| Employment and Labor: Other | Litigation | Partner | 24 | $564 | $692 | $1,252 | $956 | $782 | $683 |
| | | Associate | 14 | $384 | $469 | $564 | $553 | $484 | $458 |
| | Non-Litigation | Partner | 25 | $450 | $574 | $695 | $579 | $573 | $548 |
| | | Associate | 25 | $397 | $450 | $525 | $465 | $472 | $456 |
| Intellectual Property: Patents | Non-Litigation | Partner | 41 | $350 | $595 | $691 | $605 | $652 | $634 |
| | | Associate | 51 | $208 | $373 | $517 | $382 | $378 | $389 |
| Real Estate: Leasing | Non-Litigation | Partner | 17 | $410 | $539 | $865 | $616 | $664 | $667 |
| | | Associate | 10 | $278 | $404 | $617 | $482 | $444 | $478 |
| Real Estate: Other | Non-Litigation | Partner | 58 | $480 | $626 | $940 | $694 | $612 | $540 |
| | | Associate | 39 | $320 | $460 | $733 | $503 | $468 | $415 |

Ex. 6, Page 317

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 319 of 501
Case 2:21-cv-06010-TJH-JC    Document 47-6    Filed 01/06/26    Page 83 of 265   Page
ID #:3286
ID #:4455

# Section II: Industry Analysis

## Financials Excluding Insurance

By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | **Litigation** | Partner | 325 | $321 | $425 | $585 | $514 | $548 | $505 |
| | | Associate | 209 | $286 | $325 | $408 | $381 | $400 | $376 |
| | **Non-Litigation** | Partner | 103 | $393 | $475 | $547 | $529 | $509 | $447 |
| | | Associate | 79 | $300 | $355 | $441 | $387 | $385 | $338 |
| **Commercial** | **Litigation** | Partner | 176 | $451 | $572 | $1,000 | $785 | $801 | $769 |
| | | Associate | 127 | $345 | $500 | $785 | $592 | $590 | $569 |
| | **Non-Litigation** | Partner | 116 | $699 | $955 | $1,299 | $1,115 | $1,128 | $1,157 |
| | | Associate | 54 | $491 | $661 | $894 | $773 | $812 | $813 |
| **Corporate: Governance** | **Non-Litigation** | Partner | 25 | $612 | $1,350 | $1,924 | $1,262 | $1,436 | $1,470 |

Ex. 6, Page 318

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 320 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-6   Filed 01/06/26    Page 84 of 265   Page
ID #:3287
ID #:4456

# Section II: Industry Analysis

## Financials Excluding Insurance
By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                                 **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Mergers, Acquisitions and Divestitures | Non-Litigation | Partner | 32 | $979 | $1,144 | $1,387 | $1,216 | $1,201 | $1,142 |
|  |  | Associate | 18 | $523 | $813 | $955 | $765 | $752 | $637 |
| Corporate: Other | Litigation | Partner | 160 | $350 | $475 | $803 | $673 | $715 | $763 |
|  |  | Associate | 105 | $275 | $364 | $603 | $484 | $499 | $613 |
|  | Non-Litigation | Partner | 168 | $623 | $1,161 | $1,595 | $1,151 | $1,155 | $1,030 |
|  |  | Associate | 87 | $545 | $838 | $1,085 | $850 | $875 | $705 |
| Corporate: Regulatory and Compliance | Non-Litigation | Partner | 115 | $988 | $1,275 | $1,829 | $1,440 | $1,421 | $1,294 |
|  |  | Associate | 72 | $715 | $1,058 | $1,364 | $1,091 | $980 | $827 |
| Corporate: Tax | Non-Litigation | Partner | 21 | $981 | $1,221 | $2,143 | $1,465 | $1,445 | $1,397 |
|  |  | Associate | 10 | $551 | $716 | $1,068 | $799 | $851 | $853 |
| Corporate: Treasury | Non-Litigation | Partner | 24 | $758 | $905 | $1,034 | $935 | $1,044 | $964 |
| Employment and Labor: Compensation and Benefits | Non-Litigation | Partner | 14 | $837 | $904 | $1,100 | $1,047 | $988 | $865 |
|  |  | Associate | 11 | $522 | $553 | $567 | $584 | $610 | $537 |

Ex. 6, Page 319

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 321 of 501
Case 2:21-cv-06010-TJH-JC    Document 47-6  Filed 01/06/26    Page 85 of 265   Page
Page ID #:3288
ID #:4457

# Section II: Industry Analysis

## Financials Excluding Insurance
By Detailed Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Employment and Labor: Discrimination, Retaliation and Harassment / EEO** | **Litigation** | Partner | 19 | $455 | $674 | $1,061 | $795 | $972 | $889 |
| | | Associate | 14 | $371 | $513 | $830 | $585 | $692 | $737 |
| **Employment and Labor: Other** | **Litigation** | Partner | 60 | $821 | $986 | $1,191 | $961 | $994 | $1,142 |
| | **Non-Litigation** | Partner | 104 | $425 | $603 | $1,151 | $853 | $816 | $796 |
| | | Associate | 43 | $351 | $678 | $975 | $721 | $701 | $651 |
| **Finance and Securities: Debt/Equity Offerings** | **Non-Litigation** | Partner | 57 | $1,012 | $1,228 | $1,520 | $1,353 | $1,270 | $1,034 |
| | | Associate | 58 | $542 | $645 | $879 | $811 | $793 | $621 |
| **Finance and Securities: Fiduciary Services** | **Non-Litigation** | Partner | 30 | $478 | $561 | $973 | $727 | $633 | $725 |
| **Finance and Securities: Investments and Other Financial Instruments** | **Litigation** | Partner | 12 | $834 | $1,210 | $1,418 | $1,213 | $1,226 | $1,212 |
| | | Associate | 27 | $605 | $825 | $956 | $781 | $694 | $691 |
| | **Non-Litigation** | Partner | 151 | $858 | $1,190 | $1,571 | $1,250 | $1,277 | $1,132 |
| | | Associate | 115 | $415 | $703 | $906 | $748 | $789 | $719 |

Ex. 6, Page 320

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 322 of 501
Case 2:21-cv-06010-TJH-JC    Document 47-7   Filed 01/06/26    Page 86 of 265   Page ID #:3289
ID #:4458

# Section II: Industry Analysis

## Financials Excluding Insurance
By Detailed Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Loans and Financing** | **Litigation** | Partner | 109 | $373 | $465 | $760 | $592 | $681 | $601 |
| | | Associate | 112 | $300 | $340 | $500 | $412 | $450 | $441 |
| | **Non-Litigation** | Partner | 842 | $650 | $950 | $1,371 | $1,067 | $1,094 | $994 |
| | | Associate | 737 | $485 | $720 | $971 | $771 | $784 | $711 |
| **Finance and Securities: Routine Financial Transactions** | **Non-Litigation** | Partner | 28 | $552 | $951 | $1,170 | $917 | $944 | $896 |
| | | Associate | 12 | $270 | $461 | $643 | $501 | $609 | $559 |
| **Miscellaneous: General Advice & Counsel** | **Non-Litigation** | Partner | 88 | $550 | $889 | $1,106 | $883 | $898 | $901 |
| **Real Estate: Leasing** | **Non-Litigation** | Partner | 12 | $274 | $373 | $870 | $667 | $516 | $427 |
| **Real Estate: Other** | **Litigation** | Partner | 19 | $313 | $509 | $589 | $498 | $592 | $784 |
| | **Non-Litigation** | Partner | 40 | $375 | $661 | $854 | $650 | $644 | $603 |

Ex. 6, Page 321

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 323 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-6  Filed 01/06/26    Page 87 of 265   Page
ID #:4459

# Section II: Industry Analysis

## Health Care

By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | Litigation | Partner | 30 | $760 | $1,250 | $1,361 | $1,123 | $1,110 | $937 |
| | Non-Litigation | Partner | 76 | $574 | $736 | $1,191 | $830 | $838 | $825 |
| | | Associate | 65 | $380 | $460 | $715 | $559 | $601 | $561 |
| Employment and Labor: Discrimination Retaliation and Harassment / EEO | Litigation | Partner | 14 | $488 | $805 | $850 | $701 | $671 | $667 |
| Employment and Labor: Other | Non-Litigation | Partner | 18 | $461 | $621 | $747 | $626 | $631 | $615 |
| General Liability: Product and Product Liability | Litigation | Partner | 127 | $425 | $678 | $1,250 | $779 | $679 | $571 |
| | | Associate | 86 | $339 | $595 | $796 | $564 | $511 | $446 |

wolterskluwer.com

Ex. 6, Page 322

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 324 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3291    Filed 01/06/26    Page 88 of 265   Page
ID #:4460

# Section II: Industry Analysis

## Health Care

By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Intellectual Property: Other** | **Non-Litigation** | Partner | 12 | $546 | $664 | $769 | $629 | $632 | $652 |
| **Intellectual Property: Patents** | **Litigation** | Partner | 88 | $976 | $1,358 | $1,435 | $1,181 | $1,063 | $941 |
| | **Non-Litigation** | Partner | 67 | $578 | $710 | $890 | $741 | $715 | $727 |
| | | Associate | 49 | $390 | $479 | $650 | $529 | $499 | $521 |
| **Intellectual Property: Trademarks** | **Non-Litigation** | Partner | 18 | $436 | $708 | $1,259 | $847 | $887 | $798 |

Ex. 6, Page 323

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 325 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-6  Filed 01/06/26    Page 89 of 265   Page
ID #:4461

# Section II: Industry Analysis

## Industrials

By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | **Non-Litigation** | Partner | 45 | $562 | $830 | $1,266 | $938 | $859 | $780 |
|  |  | Associate | 35 | $475 | $676 | $845 | $696 | $661 | $653 |
| **Corporate: Mergers, Acquisitions and Divestitures** | **Non-Litigation** | Partner | 124 | $1,124 | $1,317 | $1,839 | $1,458 | $1,341 | $1,276 |
|  |  | Associate | 145 | $649 | $875 | $1,140 | $948 | $853 | $822 |
| **Corporate: Other** | **Litigation** | Partner | 113 | $1,018 | $1,350 | $1,769 | $1,365 | $1,140 | $970 |
|  | **Non-Litigation** | Partner | 279 | $486 | $973 | $1,350 | $978 | $908 | $872 |
|  |  | Associate | 246 | $427 | $695 | $974 | $708 | $662 | $645 |
| **Corporate: Regulatory and Compliance** | **Non-Litigation** | Partner | 30 | $528 | $920 | $1,441 | $984 | $958 | $974 |
|  |  | Associate | 27 | $508 | $765 | $1,054 | $788 | $735 | $729 |

Ex. 6, Page 324

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 326 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3 Filed 01/06/26    Page 90 of 265   Page
ID #:4462

# Section II: Industry Analysis

## Industrials
By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Tax** | **Non-Litigation** | Partner | 25 | $575 | $1,235 | $1,581 | $1,207 | $1,091 | $1,094 |
| | | Associate | 21 | $378 | $594 | $1,020 | $714 | $676 | $610 |
| **Employment and Labor: Compensation and Benefits** | **Non-Litigation** | Partner | 19 | $545 | $714 | $1,081 | $842 | $968 | $835 |
| | | Associate | 16 | $363 | $429 | $614 | $493 | $537 | $551 |
| **Employment and Labor: Other** | **Non-Litigation** | Partner | 71 | $419 | $450 | $677 | $562 | $570 | $539 |
| | | Associate | 37 | $395 | $457 | $575 | $510 | $488 | $504 |
| **Environmental** | **Non-Litigation** | Partner | 25 | $525 | $575 | $951 | $746 | $666 | $629 |
| | | Associate | 10 | $291 | $330 | $691 | $512 | $581 | $687 |
| **General Liability: Product and Product Liability** | **Litigation** | Partner | 42 | $374 | $610 | $955 | $666 | $628 | $522 |
| | | Associate | 32 | $401 | $643 | $670 | $570 | $559 | $471 |
| **Intellectual Property: Other** | **Non-Litigation** | Partner | 11 | $460 | $725 | $811 | $662 | $743 | $611 |

Ex. 6, Page 325                    wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 327 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3 Filed 01/06/26    Page 91 of 265   Page
ID #:4463

# Section II: Industry Analysis

## Industrials
By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                              **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Intellectual Property: Patents | Non-Litigation | Partner | 36 | $325 | $490 | $966 | $671 | $675 | $494 |
| | | Associate | 32 | $371 | $635 | $703 | $592 | $439 | $317 |
| Miscellaneous, General Advice & Counsel | Non-Litigation | Partner | 22 | $714 | $861 | $1,087 | $1,123 | $992 | $897 |

Ex. 6, Page 326

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 328 of 501
Case 2:21-cv-06010-TJH-JC    Document 107-3295iled 01/06/26    Page 92 of 265   Page
ID #:4464

# Section II: Industry Analysis

## Insurance
By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Bankruptcy and Collections | Litigation | Partner | 14 | $403 | $427 | $487 | $462 | $573 | $519 |
| Commercial | Litigation | Partner | 49 | $494 | $813 | $1,269 | $917 | $820 | $775 |
| | | Associate | 43 | $425 | $752 | $938 | $743 | $755 | $654 |
| | Non-Litigation | Partner | 17 | $805 | $1,388 | $1,564 | $1,261 | $1,174 | $1,273 |
| Corporate: Governance | Non-Litigation | Partner | 16 | $915 | $1,606 | $1,950 | $1,422 | $1,382 | $1,417 |
| Corporate: Mergers, Acquisitions and Divestitures | Non-Litigation | Partner | 20 | $1,388 | $1,586 | $1,799 | $1,550 | $1,367 | $1,290 |
| Corporate: Other | Non-Litigation | Partner | 114 | $744 | $1,125 | $1,688 | $1,195 | $1,036 | $914 |
| | | Associate | 53 | $620 | $805 | $985 | $830 | $738 | $678 |

Ex. 6, Page 327

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 329 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3296 Filed 01/06/26    Page 93 of 265   Page
ID #:4465

# Section II: Industry Analysis

## Insurance
By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | Litigation | Partner | 15 | $345 | $700 | $1,739 | $1,032 | $1,068 | $1,066 |
| | Non-Litigation | Partner | 33 | $839 | $1,175 | $1,395 | $1,166 | $1,087 | $939 |
| | | Associate | 24 | $735 | $895 | $1,067 | $888 | $799 | $752 |
| Employment and Labor: Other | Non-Litigation | Partner | 49 | $550 | $650 | $855 | $722 | $716 | $678 |
| | | Associate | 21 | $350 | $415 | $536 | $482 | $489 | $453 |
| Insurance Defense: Advertising Injury | Litigation | Partner | 28 | $195 | $208 | $289 | $248 | $242 | $248 |
| | | Associate | 15 | $156 | $170 | $250 | $199 | $214 | $213 |
| Insurance Defense: Asbestos/ Mesothelioma | Litigation | Partner | 31 | $177 | $185 | $228 | $200 | $207 | $189 |
| Insurance Defense: Auto and Transportation | Litigation | Partner | 1,256 | $181 | $203 | $230 | $266 | $249 | $260 |
| | | Associate | 819 | $163 | $180 | $200 | $186 | $181 | $175 |
| | Non-Litigation | Partner | 1,573 | $168 | $190 | $215 | $197 | $193 | $186 |
| | | Associate | 1,387 | $155 | $175 | $190 | $177 | $171 | $167 |

Ex. 6, Page 328

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 330 of 501
Case 2:21-cv-06010-TJH-JC    Document 70-3297 Filed 01/06/26    Page 94 of 265   Page
ID #:4466

# Section II: Industry Analysis

## Insurance

By Detailed Practice Area and
Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Insurance Defense: Insurer Work Comp** | **Litigation** | Partner | 73 | $165 | $175 | $188 | $212 | $179 | $175 |
| | | Associate | 47 | $158 | $175 | $199 | $181 | $173 | $165 |
| **Insurance Defense: Other** | **Litigation** | Partner | 1,623 | $180 | $205 | $250 | $271 | $273 | $267 |
| | | Associate | 971 | $165 | $180 | $215 | $195 | $192 | $189 |
| | **Non-Litigation** | Partner | 2,254 | $210 | $240 | $291 | $272 | $272 | $268 |
| | | Associate | 1,396 | $185 | $210 | $245 | $233 | $238 | $230 |
| **Insurance Defense: Personal Injury/ Wrongful Death** | **Litigation** | Partner | 85 | $155 | $180 | $217 | $197 | $192 | $191 |
| | | Associate | 46 | $155 | $173 | $199 | $174 | $167 | $165 |
| **Insurance Defense: Pollution** | **Litigation** | Partner | 44 | $204 | $255 | $268 | $276 | $280 | $261 |
| | | Associate | 21 | $195 | $215 | $215 | $207 | $223 | $237 |
| **Insurance Defense: Product and Product Liability** | **Litigation** | Partner | 35 | $188 | $195 | $209 | $203 | $197 | $204 |
| | **Non-Litigation** | Partner | 179 | $210 | $235 | $292 | $266 | $248 | $228 |

Ex. 6, Page 329

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 331 of 501
Case 2:21-cv-06010-TJH-JC   Document 170-3 Filed 01/06/26   Page 95 of 265   Page
ID #:4467

# Section II: Industry Analysis

### Insurance
By Detailed Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Insurance Defense: Professional Liability** | **Litigation** | Partner | 279 | $220 | $240 | $265 | $253 | $243 | $235 |
| **Insurance Defense: Property Damage** | **Litigation** | Partner | 416 | $195 | $230 | $265 | $258 | $263 | $239 |
| | | Associate | 283 | $175 | $200 | $239 | $207 | $196 | $189 |
| | **Non-Litigation** | Partner | 51 | $258 | $365 | $435 | $350 | $324 | $298 |
| **Insurance Policies and Coverage: Policy Coverage Dispute** | **Litigation** | Partner | 262 | $250 | $325 | $430 | $356 | $362 | $379 |
| | | Associate | 164 | $225 | $291 | $343 | $303 | $292 | $308 |
| **Intellectual Property: Other** | **Non-Litigation** | Partner | 16 | $245 | $599 | $828 | $565 | $450 | $413 |

Ex. 6, Page 330

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 332 of 501
Case 2:21-cv-06010-TJH-JC    Document 170-3    Filed 01/06/26    Page 96 of 265   Page
ID #:4468
ID #:3299

# Section II: Industry Analysis

**Technology and
Telecommunications**
By Detailed Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | Litigation | Partner | 29 | $687 | $922 | $925 | $805 | $831 | $965 |
| Corporate: Antitrust and Competition | Non-Litigation | Partner | 16 | $1,291 | $2,093 | $2,409 | $1,836 | $1,562 | $1,373 |
| | | Associate | 25 | $621 | $975 | $1,486 | $1,039 | $982 | $874 |
| Corporate: Other | Litigation | Partner | 60 | $786 | $1,141 | $1,532 | $1,232 | $1,096 | $832 |
| | | Associate | 56 | $654 | $945 | $1,185 | $957 | $768 | $543 |
| | Non-Litigation | Partner | 140 | $943 | $1,290 | $1,725 | $1,331 | $1,077 | $998 |
| | | Associate | 133 | $655 | $864 | $1,026 | $876 | $789 | $677 |
| Corporate: Regulatory and Compliance | Non-Litigation | Partner | 165 | $640 | $836 | $1,016 | $855 | $798 | $795 |
| | | Associate | 96 | $445 | $672 | $995 | $694 | $650 | $608 |

Ex. 6, Page 331

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 333 of 501
Case 2:21-cv-06010-TJH-JC    Document 1D #3300led 01/06/26    Page 97 of 265   Page
ID #:4469

# Section II: Industry Analysis

**Technology and Telecommunications**
By Detailed Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Employment and Labor: Compensation and Benefits | Non-Litigation | Partner | 14 | $673 | $725 | $725 | $813 | $923 | $834 |
| Employment and Labor: Discrimination, Retaliation and Harassment / EEO | Non-Litigation | Partner | 19 | $550 | $625 | $792 | $675 | $619 | $604 |
| Employment and Labor: ERISA | Non-Litigation | Partner | 11 | $546 | $656 | $783 | $694 | $644 | $642 |
| Employment and Labor: Other | Non-Litigation | Partner | 98 | $550 | $550 | $795 | $677 | $624 | $605 |
|  |  | Associate | 71 | $376 | $385 | $480 | $455 | $426 | $406 |
| General Liability: Consumer Related Claims | Litigation | Partner | 30 | $438 | $758 | $949 | $752 | $775 | $643 |
|  |  | Associate | 19 | $355 | $486 | $713 | $523 | $593 | $558 |

Ex. 6, Page 332

wolterskluwer.com

# Section II: Industry Analysis

**Technology and Telecommunications**
By Detailed Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                                       **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Intellectual Property: Patents** | **Litigation** | Partner | 65 | $703 | $999 | $1,369 | $1,054 | $947 | $885 |
| | | Associate | 47 | $608 | $815 | $1,058 | $833 | $749 | $630 |
| | **Non-Litigation** | Partner | 67 | $386 | $492 | $974 | $695 | $738 | $704 |
| | | Associate | 57 | $294 | $350 | $500 | $491 | $439 | $465 |
| **Intellectual Property: Trademarks** | **Non-Litigation** | Partner | 18 | $523 | $619 | $710 | $666 | $703 | $684 |
| | | Associate | 15 | $338 | $425 | $603 | $518 | $476 | $470 |

Ex. 6, Page 333

Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 99 of 265    Page ID #4471



# Section III: Practice Area Analysis

All data and analysis based on data collected thru Q2 2025

wolterskluwer.com

Ex. 6, Page 334

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 336 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3303 Filed 01/06/26    Page 100 of 265
Page ID #:4472

# Section III: Practice Area Analysis

**Bankruptcy and Collections**
By City

**2025 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Baltimore MD** | Partner | 11 | $360 | $425 | $484 | $428 | $466 | $448 |
| **Boston MA** | Partner | 24 | $545 | $748 | $997 | $861 | $744 | $680 |
| **Chicago IL** | Associate | 17 | $260 | $260 | $302 | $321 | $315 | $330 |
| **Cincinnati OH** | Partner | 20 | $385 | $438 | $475 | $523 | $487 | $378 |
| | Associate | 19 | $311 | $345 | $391 | $373 | $333 | $298 |
| **Cleveland OH** | Partner | 16 | $495 | $510 | $625 | $581 | $578 | $540 |
| **Dallas TX** | Partner | 15 | $297 | $450 | $821 | $603 | $633 | $621 |
| | Associate | 17 | $287 | $291 | $300 | $359 | $411 | $341 |
| **Hartford CT** | Partner | 14 | $383 | $451 | $495 | $431 | $422 | $413 |

Ex. 6, Page 335

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 337 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3304 Filed 01/06/26    Page 101 of 265
Page ID #:4473

# Section III: Practice Area Analysis

**Bankruptcy and Collections**
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Philadelphia PA** | Partner | 57 | $425 | $575 | $805 | $619 | $610 | $543 |
| | Associate | 39 | $340 | $442 | $525 | $457 | $452 | $431 |
| **Pittsburgh PA** | Partner | 17 | $379 | $480 | $532 | $477 | $449 | $427 |
| | Associate | 14 | $360 | $415 | $480 | $409 | $444 | $365 |

Ex. 6, Page 336

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 338 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3305  Filed 01/06/26    Page 102 of 265
Page ID #:4474

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By Matter Type and YOE

**2025 - Real Rates for Partner**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 67 | $289 | $396 | $502 | $440 | $444 | $396 |
| | Non-Litigation | 37 | $423 | $457 | $495 | $483 | $485 | $446 |
| **21 or More Years** | Litigation | 150 | $330 | $419 | $546 | $489 | $509 | $497 |
| | Non-Litigation | 59 | $378 | $475 | $575 | $549 | $533 | $471 |

Ex. 6, Page 337

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 339 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3306    Filed 01/06/26    Page 103 of 265
Page ID #:4475

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By Matter Type and YOE

**2025 - Real Rates for Associate**                                              **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **3 to Fewer Than 7 Years** | Litigation | 31 | $281 | $294 | $350 | $363 | $370 | $365 |
| **7 or More Years** | Litigation | 44 | $285 | $320 | $463 | $398 | $404 | $386 |
|  | Non-Litigation | 27 | $328 | $361 | $453 | $421 | $350 | $340 |

Ex. 6, Page 338

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 340 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-7    Filed 01/06/26    Page 104 of 265
Page ID #:4476

# Section III: Practice Area Analysis

## Bankruptcy and Collections
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 73 | $284 | $341 | $425 | $354 | $348 | $344 |
| | | Associate | 49 | $260 | $286 | $302 | $287 | $282 | $272 |
| **51-200 Lawyers** | **Litigation** | Partner | 78 | $332 | $390 | $475 | $424 | $444 | $447 |
| | | Associate | 32 | $280 | $291 | $341 | $308 | $328 | $298 |
| | **Non-Litigation** | Partner | 27 | $394 | $467 | $508 | $509 | $513 | $450 |
| **201-500 Lawyers** | **Litigation** | Partner | 76 | $381 | $476 | $805 | $573 | $566 | $530 |
| | | Associate | 65 | $300 | $335 | $435 | $387 | $379 | $397 |
| | **Non-Litigation** | Partner | 46 | $447 | $498 | $654 | $587 | $524 | $516 |
| | | Associate | 24 | $333 | $360 | $440 | $396 | $376 | $359 |
| **501-1,000 Lawyers** | **Litigation** | Partner | 19 | $505 | $730 | $1,088 | $773 | $827 | $746 |

Ex. 6, Page 339

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 341 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-3308    Filed 01/06/26    Page 105 of 265
Page ID #:4477

# Section III: Practice Area Analysis

## Commercial
By City

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Baltimore MD** | Associate | 10 | $539 | $700 | $826 | $703 | $612 | $620 |
| **Chicago IL** | Partner | 56 | $718 | $1,065 | $1,450 | $1,120 | $1,003 | $910 |
|  | Associate | 37 | $528 | $670 | $807 | $662 | $657 | $602 |
| **Cleveland OH** | Partner | 34 | $458 | $556 | $668 | $595 | $646 | $606 |
|  | Associate | 24 | $294 | $334 | $483 | $363 | $363 | $350 |

Ex. 6, Page 340

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 342 of 501
Case 2:21-cv-06010-TJH-JC    Document 173309    Filed 01/06/26    Page 106 of 265
Page ID #:4478

# Section III: Practice Area Analysis

## Commercial
By City

**2025 - Real Rates for Associate and Partner**                     **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Dallas TX** | Partner | 14 | $415 | $885 | $990 | $834 | $613 | $739 |
| | Associate | 10 | $506 | $780 | $1,054 | $775 | $505 | $589 |
| **Denver CO** | Partner | 16 | $589 | $650 | $906 | $728 | $708 | $642 |
| | Associate | 10 | $465 | $540 | $599 | $535 | $468 | $428 |
| **Houston TX** | Partner | 16 | $682 | $827 | $951 | $895 | $801 | $763 |
| **Kansas City MO** | Partner | 16 | $550 | $605 | $732 | $661 | $606 | $562 |
| **Los Angeles CA** | Partner | 49 | $600 | $955 | $1,351 | $1,001 | $1,007 | $980 |
| | Associate | 34 | $425 | $563 | $882 | $694 | $730 | $732 |
| **Miami FL** | Partner | 16 | $538 | $723 | $988 | $773 | $658 | $677 |
| | Associate | 12 | $390 | $454 | $684 | $526 | $539 | $464 |
| **Minneapolis MN** | Partner | 51 | $663 | $832 | $1,005 | $834 | $796 | $722 |
| | Associate | 33 | $476 | $604 | $724 | $603 | $539 | $507 |

Ex. 6, Page 341

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 343 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-10    Filed 01/06/26    Page 107 of 265
Page ID #:4479

# Section III: Practice Area Analysis

**Commercial**
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **New York NY** | Partner | 85 | $650 | $1,078 | $1,564 | $1,160 | $1,214 | $1,321 |
| | Associate | 79 | $517 | $775 | $1,027 | $819 | $843 | $852 |
| **Philadelphia PA** | Partner | 86 | $556 | $796 | $1,046 | $845 | $805 | $749 |
| | Associate | 71 | $471 | $639 | $769 | $626 | $556 | $478 |
| **Pittsburgh PA** | Partner | 17 | $400 | $585 | $760 | $616 | $614 | $617 |
| **Portland OR** | Associate | 16 | $403 | $532 | $784 | $585 | $553 | $443 |
| **San Francisco CA** | Partner | 12 | $710 | $906 | $1,292 | $1,016 | $951 | $907 |
| | Associate | 10 | $708 | $875 | $1,089 | $899 | $822 | $767 |
| **Seattle WA** | Partner | 26 | $611 | $925 | $1,074 | $884 | $798 | $695 |
| **Washington DC** | Partner | 97 | $827 | $1,103 | $1,398 | $1,162 | $1,125 | $1,037 |
| | Associate | 74 | $583 | $770 | $975 | $794 | $784 | $709 |

Ex. 6, Page 342

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 344 of 501
Case 2:21-cv-06010-TJH-JC     Document 117-11     Filed 01/06/26     Page 108 of 265
Page ID #:4480

# Section III: Practice Area Analysis

## Commercial
By Matter Type and YOE

**2025 - Real Rates for Partner**     **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 121 | $480 | $695 | $1,027 | $817 | $764 | $725 |
| | Non-Litigation | 72 | $543 | $714 | $1,032 | $837 | $784 | $803 |
| **21 or More Years** | Litigation | 202 | $502 | $712 | $1,095 | $843 | $824 | $772 |
| | Non-Litigation | 122 | $650 | $854 | $1,174 | $986 | $914 | $943 |

Ex. 6, Page 343

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 345 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-6    Filed 01/06/26    Page 109 of 265
Page ID #:4481
Page ID #:3362

# Section III: Practice Area Analysis

## Commercial
By Matter Type and YOE

**2025 - Real Rates for Associate**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 23 | $353 | $630 | $671 | $620 | $538 | $401 |
| **3 to Fewer Than 7 Years** | Litigation | 69 | $395 | $639 | $776 | $619 | $619 | $542 |
|  | Non-Litigation | 21 | $421 | $572 | $840 | $643 | $613 | $540 |
| **7 or More Years** | Litigation | 81 | $360 | $618 | $959 | $683 | $615 | $538 |
|  | Non-Litigation | 14 | $475 | $560 | $852 | $662 | $726 | $688 |

Ex. 6, Page 344

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 346 of 501
Case 2:21-cv-06010-TJH-JC    Document 47-3613    Filed 01/06/26    Page 110 of 265
Page ID #:4482

# Section III: Practice Area Analysis

## Commercial
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**　　　　　　　　　　**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 64 | $343 | $474 | $658 | $504 | $513 | $506 |
| | | Associate | 35 | $265 | $385 | $443 | $381 | $372 | $318 |
| | **Non-Litigation** | Partner | 26 | $353 | $519 | $670 | $535 | $506 | $478 |
| | | Associate | 10 | $374 | $410 | $437 | $404 | $405 | $372 |
| **51-200 Lawyers** | **Litigation** | Partner | 81 | $376 | $500 | $665 | $575 | $567 | $538 |
| | | Associate | 43 | $288 | $385 | $498 | $411 | $376 | $343 |
| | **Non-Litigation** | Partner | 35 | $402 | $475 | $618 | $512 | $484 | $505 |
| | | Associate | 21 | $292 | $350 | $390 | $368 | $365 | $326 |

Ex. 6, Page 345

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 347 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-7    Filed 01/06/26    Page 111 of 265
Page ID #:4483
Page ID #:3304

# Section III: Practice Area Analysis

## Commercial
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **201-500 Lawyers** | **Litigation** | Partner | 89 | $495 | $646 | $864 | $713 | $696 | $660 |
| | | Associate | 59 | $329 | $393 | $694 | $509 | $460 | $420 |
| | **Non-Litigation** | Partner | 76 | $618 | $796 | $1,001 | $856 | $744 | $716 |
| | | Associate | 35 | $419 | $539 | $652 | $555 | $550 | $547 |
| **501-1,000 Lawyers** | **Litigation** | Partner | 108 | $855 | $995 | $1,258 | $1,090 | $1,076 | $1,046 |
| | | Associate | 107 | $613 | $708 | $941 | $790 | $767 | $694 |
| | **Non-Litigation** | Partner | 75 | $805 | $990 | $1,335 | $1,157 | $1,169 | $1,150 |
| | | Associate | 32 | $558 | $784 | $1,023 | $864 | $850 | $769 |
| **More Than 1,000 Lawyers** | **Litigation** | Partner | 52 | $1,043 | $1,331 | $1,682 | $1,389 | $1,237 | $1,111 |
| | | Associate | 51 | $742 | $930 | $1,085 | $915 | $859 | $730 |
| | **Non-Litigation** | Partner | 43 | $974 | $1,383 | $1,676 | $1,429 | $1,262 | $1,288 |
| | | Associate | 21 | $664 | $835 | $1,101 | $841 | $817 | $893 |

Ex. 6, Page 346

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 348 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-15  Filed 01/06/26    Page 112 of 265
Page ID #:4484

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Akron OH** | Partner | 16 | $189 | $239 | $325 | $265 | $263 | $237 |
| **Albany NY** | Partner | 52 | $234 | $314 | $332 | $307 | $307 | $267 |
| | Associate | 28 | $200 | $225 | $262 | $239 | $245 | $211 |
| **Albuquerque NM** | Partner | 70 | $182 | $207 | $229 | $219 | $213 | $214 |
| | Associate | 35 | $161 | $180 | $195 | $182 | $178 | $174 |
| **Anchorage AK** | Partner | 16 | $225 | $239 | $249 | $262 | $280 | $284 |
| **Atlanta GA** | Partner | 734 | $225 | $261 | $450 | $414 | $431 | $415 |
| | Associate | 669 | $185 | $229 | $347 | $307 | $318 | $313 |
| **Austin TX** | Partner | 81 | $248 | $423 | $630 | $483 | $491 | $490 |
| | Associate | 54 | $210 | $300 | $451 | $354 | $390 | $404 |

Ex. 6, Page 347

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 349 of 501
Case 2:21-cv-06010-TJH-JC    Document 133-16    Filed 01/06/26    Page 113 of 265
Page ID #:4485

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**                     **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Baltimore MD** | Partner | 190 | $225 | $425 | $760 | $548 | $553 | $500 |
| | Associate | 149 | $200 | $352 | $675 | $469 | $452 | $420 |
| **Baton Rouge LA** | Partner | 42 | $179 | $315 | $330 | $287 | $283 | $267 |
| | Associate | 18 | $176 | $250 | $250 | $236 | $218 | $212 |
| **Beaumont TX** | Partner | 20 | $235 | $235 | $260 | $264 | $246 | $234 |
| | Associate | 26 | $205 | $205 | $205 | $208 | $204 | $203 |
| **Billings MT** | Partner | 16 | $221 | $240 | $318 | $271 | $282 | $250 |
| **Birmingham AL** | Partner | 218 | $213 | $315 | $450 | $388 | $383 | $368 |
| | Associate | 143 | $200 | $285 | $340 | $282 | $274 | $261 |
| **Boise City ID** | Partner | 35 | $185 | $211 | $248 | $254 | $263 | $260 |
| | Associate | 33 | $168 | $175 | $213 | $206 | $202 | $209 |
| **Boston MA** | Partner | 426 | $246 | $425 | $904 | $625 | $638 | $592 |
| | Associate | 352 | $220 | $370 | $669 | $482 | $514 | $470 |

Ex. 6, Page 348

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 350 of 501
Case 2:21-cv-06010-TJH-JC     Document 17-3317  Filed 01/06/26     Page 114 of 265
Page ID #:4486

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Bridgeport CT** | Partner | 36 | $200 | $264 | $420 | $337 | $308 | $300 |
|  | Associate | 20 | $174 | $175 | $265 | $261 | $233 | $215 |
| **Brownsville TX** | Partner | 10 | $190 | $195 | $221 | $197 | $201 | $204 |
| **Buffalo NY** | Partner | 94 | $198 | $250 | $325 | $279 | $241 | $242 |
|  | Associate | 41 | $185 | $212 | $246 | $224 | $198 | $186 |
| **Burlington VT** | Partner | 10 | $186 | $200 | $210 | $204 | $202 | $229 |
| **Cape Coral FL** | Partner | 17 | $185 | $195 | $206 | $197 | $200 | $200 |
| **Charleston SC** | Partner | 77 | $165 | $195 | $225 | $232 | $231 | $219 |
|  | Associate | 50 | $150 | $175 | $200 | $189 | $180 | $177 |
| **Charleston WV** | Partner | 54 | $175 | $195 | $301 | $247 | $228 | $228 |
|  | Associate | 18 | $150 | $175 | $180 | $172 | $169 | $171 |
| **Charlotte NC** | Partner | 125 | $198 | $232 | $632 | $430 | $481 | $513 |
|  | Associate | 120 | $169 | $280 | $450 | $341 | $378 | $374 |

Ex. 6, Page 349

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 351 of 501
Case 2:21-cv-06010-TJH-JC    Document 133-18  Filed 01/06/26    Page 115 of 265
Page ID #:4487

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|---------------|------|------|------|
| **Chicago IL** | Partner | 1,054 | $245 | $375 | $933 | $624 | $621 | $598 |
| | Associate | 763 | $209 | $285 | $675 | $456 | $453 | $436 |
| **Cincinnati OH** | Partner | 151 | $210 | $333 | $550 | $406 | $366 | $366 |
| | Associate | 101 | $205 | $293 | $340 | $290 | $271 | $270 |
| **Cleveland OH** | Partner | 287 | $210 | $419 | $626 | $493 | $479 | $463 |
| | Associate | 219 | $190 | $300 | $417 | $337 | $316 | $301 |
| **Columbia SC** | Partner | 122 | $204 | $226 | $425 | $315 | $322 | $285 |
| | Associate | 80 | $175 | $190 | $315 | $241 | $228 | $214 |
| **Columbus OH** | Partner | 72 | $195 | $207 | $490 | $374 | $348 | $334 |
| | Associate | 49 | $186 | $300 | $370 | $317 | $324 | $307 |
| **Dallas TX** | Partner | 398 | $235 | $265 | $560 | $455 | $470 | $456 |
| | Associate | 339 | $185 | $235 | $450 | $383 | $375 | $385 |

Ex. 6, Page 350

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 352 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-33119  Filed 01/06/26    Page 116 of 265
Page ID #:4488

# Section III: Practice Area Analysis

## Corporate: Mergers, Acquisitions, and Divestitures
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Dayton OH** | Partner | 17 | $183 | $310 | $450 | $316 | $338 | $298 |
|  | Associate | 18 | $150 | $177 | $185 | $204 | $186 | $188 |
| **Denver CO** | Partner | 240 | $200 | $290 | $565 | $412 | $411 | $394 |
|  | Associate | 147 | $175 | $250 | $417 | $313 | $313 | $299 |
| **Des Moines IA** | Partner | 27 | $175 | $205 | $225 | $256 | $275 | $258 |
|  | Associate | 13 | $156 | $175 | $185 | $261 | $279 | $282 |
| **Detroit MI** | Partner | 274 | $175 | $190 | $294 | $256 | $252 | $247 |
|  | Associate | 186 | $160 | $165 | $248 | $211 | $201 | $194 |
| **El Paso TX** | Partner | 24 | $210 | $300 | $600 | $407 | $426 | $369 |
|  | Associate | 11 | $189 | $230 | $419 | $285 | $240 | $216 |
| **Fresno CA** | Partner | 29 | $296 | $350 | $425 | $393 | $370 | $391 |
|  | Associate | 21 | $220 | $225 | $278 | $246 | $270 | $242 |

Ex. 6, Page 351

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 353 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-33    Filed 01/06/26    Page 117 of 265
Page ID #:4489

# Section III: Practice Area Analysis

## Corporate: Mergers, Acquisitions, and Divestitures
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Grand Rapids MI** | Partner | 25 | $169 | $185 | $368 | $239 | $264 | $245 |
| | Associate | 15 | $156 | $164 | $171 | $180 | $183 | $169 |
| **Greenville SC** | Partner | 57 | $198 | $415 | $509 | $419 | $422 | $416 |
| | Associate | 24 | $151 | $175 | $233 | $214 | $198 | $209 |
| **Gulfport MS** | Partner | 16 | $186 | $210 | $231 | $222 | $204 | $200 |
| **Harrisburg PA** | Partner | 40 | $197 | $197 | $215 | $235 | $247 | $248 |
| | Associate | 21 | $180 | $180 | $205 | $224 | $205 | $187 |
| **Hartford CT** | Partner | 87 | $220 | $280 | $500 | $391 | $380 | $372 |
| | Associate | 55 | $210 | $250 | $325 | $270 | $252 | $245 |
| **Honolulu HI** | Partner | 38 | $222 | $260 | $329 | $305 | $267 | $253 |
| | Associate | 26 | $178 | $190 | $205 | $205 | $199 | $188 |
| **Houston TX** | Partner | 291 | $235 | $300 | $616 | $486 | $517 | $509 |
| | Associate | 327 | $200 | $230 | $400 | $354 | $361 | $367 |

Ex. 6, Page 352

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 354 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3321  Filed 01/06/26    Page 118 of 265
Page ID #:4490

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Huntsville AL** | Partner | 10 | $152 | $210 | $412 | $303 | $283 | $250 |
| **Indianapolis IN** | Partner | 110 | $180 | $222 | $475 | $331 | $321 | $320 |
|  | Associate | 70 | $170 | $225 | $355 | $272 | $263 | $252 |
| **Jackson MS** | Partner | 118 | $250 | $323 | $442 | $354 | $328 | $299 |
|  | Associate | 45 | $225 | $281 | $334 | $281 | $265 | $218 |
| **Jacksonville FL** | Partner | 56 | $195 | $210 | $250 | $253 | $259 | $262 |
|  | Associate | 40 | $175 | $190 | $195 | $193 | $195 | $195 |
| **Kansas City MO** | Partner | 210 | $250 | $460 | $633 | $476 | $471 | $448 |
|  | Associate | 141 | $195 | $293 | $404 | $311 | $294 | $294 |
| **Knoxville TN** | Partner | 31 | $185 | $185 | $225 | $209 | $201 | $189 |
|  | Associate | 21 | $170 | $200 | $220 | $193 | $187 | $192 |
| **Lafayette LA** | Partner | 24 | $190 | $211 | $225 | $203 | $205 | $204 |
| **Lancaster PA** | Partner | 13 | $205 | $370 | $375 | $343 | $289 | $271 |

Ex. 6, Page 353

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 355 of 501
Case 2:21-cv-06010-TJH-JC    Document 133-2    Filed 01/06/26    Page 119 of 265
Page ID #:4491

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Las Vegas NV** | Partner | 104 | $215 | $235 | $266 | $264 | $259 | $249 |
|  | Associate | 107 | $185 | $205 | $235 | $220 | $228 | $217 |
| **Lexington KY** | Partner | 49 | $176 | $189 | $211 | $219 | $214 | $212 |
|  | Associate | 62 | $155 | $161 | $214 | $190 | $179 | $165 |
| **Little Rock AR** | Partner | 55 | $203 | $216 | $244 | $253 | $261 | $294 |
|  | Associate | 29 | $167 | $170 | $191 | $179 | $172 | $171 |
| **Los Angeles CA** | Partner | 1,214 | $240 | $314 | $864 | $602 | $615 | $610 |
|  | Associate | 1,003 | $220 | $315 | $786 | $515 | $525 | $503 |
| **Louisville KY** | Partner | 71 | $175 | $255 | $395 | $291 | $293 | $281 |
|  | Associate | 41 | $150 | $215 | $280 | $219 | $205 | $211 |
| **Macon GA** | Partner | 12 | $158 | $165 | $183 | $177 | $167 | $161 |
| **Madison WI** | Partner | 16 | $186 | $235 | $400 | $313 | $342 | $434 |
|  | Associate | 12 | $174 | $185 | $223 | $210 | $262 | $203 |

Ex. 6, Page 354

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 356 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-3    Filed 01/06/26    Page 120 of 265
Page ID #:4492

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Manchester NH** | Partner | 11 | $220 | $240 | $355 | $319 | $253 | $264 |
| | Associate | 11 | $200 | $226 | $320 | $240 | $214 | $206 |
| **Memphis TN** | Partner | 57 | $197 | $225 | $337 | $284 | $298 | $279 |
| | Associate | 24 | $169 | $185 | $200 | $199 | $208 | $209 |
| **Miami FL** | Partner | 659 | $186 | $205 | $275 | $355 | $324 | $302 |
| | Associate | 519 | $170 | $175 | $214 | $224 | $220 | $221 |
| **Milwaukee WI** | Partner | 60 | $205 | $272 | $452 | $373 | $394 | $353 |
| | Associate | 40 | $185 | $220 | $328 | $300 | $285 | $277 |
| **Minneapolis MN** | Partner | 246 | $205 | $326 | $699 | $468 | $460 | $440 |
| | Associate | 196 | $200 | $300 | $495 | $368 | $346 | $323 |
| **Missoula MT** | Partner | 13 | $230 | $236 | $250 | $255 | $235 | $224 |
| **Montgomery AL** | Partner | 21 | $150 | $165 | $165 | $202 | $199 | $230 |
| **Morgantown WV** | Partner | 12 | $175 | $175 | $195 | $194 | $181 | $189 |

Ex. 6, Page 355

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 357 of 501
Case 2:21-cv-06010-TJH-JC    Document 133    Filed 01/06/26    Page 121 of 265
Page ID #:4493

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Nashville TN** | Partner | 117 | $196 | $388 | $608 | $437 | $430 | $386 |
| | Associate | 84 | $171 | $240 | $404 | $303 | $309 | $294 |
| **New Haven CT** | Partner | 14 | $175 | $295 | $461 | $321 | $356 | $323 |
| | Associate | 14 | $175 | $175 | $280 | $222 | $245 | $258 |
| **New Orleans LA** | Partner | 234 | $196 | $225 | $325 | $286 | $292 | $277 |
| | Associate | 161 | $175 | $195 | $260 | $222 | $219 | $215 |
| **New York NY** | Partner | 2,275 | $240 | $450 | $1,302 | $817 | $802 | $773 |
| | Associate | 2,261 | $223 | $525 | $1,040 | $674 | $629 | $597 |
| **Oklahoma City OK** | Partner | 60 | $202 | $226 | $275 | $243 | $243 | $226 |
| | Associate | 46 | $185 | $201 | $250 | $216 | $200 | $185 |
| **Omaha NE** | Partner | 80 | $225 | $320 | $406 | $347 | $362 | $350 |
| | Associate | 59 | $185 | $220 | $243 | $226 | $224 | $217 |

Ex. 6, Page 356                    wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 358 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-5    Filed 01/06/26    Page 122 of 265
Page ID #:4494
Page ID #:3325

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| Orlando FL | Partner | 164 | $190 | $210 | $290 | $283 | $290 | $286 |
| | Associate | 142 | $175 | $186 | $220 | $223 | $215 | $210 |
| Oxnard CA | Partner | 12 | $205 | $282 | $394 | $313 | $333 | $298 |
| Pensacola FL | Partner | 16 | $179 | $188 | $203 | $189 | $196 | $197 |
| | Associate | 11 | $162 | $170 | $179 | $169 | $174 | $168 |
| Philadelphia PA | Partner | 1,034 | $225 | $400 | $833 | $568 | $576 | $533 |
| | Associate | 868 | $200 | $330 | $600 | $421 | $412 | $378 |
| Phoenix AZ | Partner | 238 | $204 | $237 | $275 | $291 | $275 | $279 |
| | Associate | 143 | $193 | $215 | $245 | $242 | $229 | $231 |
| Pittsburgh PA | Partner | 297 | $208 | $351 | $752 | $493 | $508 | $475 |
| | Associate | 230 | $185 | $320 | $500 | $365 | $380 | $357 |
| Portland ME | Partner | 62 | $223 | $300 | $425 | $351 | $321 | $301 |
| | Associate | 21 | $200 | $265 | $310 | $255 | $232 | $219 |

Ex. 6, Page 357

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 359 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-6    Filed 01/06/26    Page 123 of 265
Page ID #:4495

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Portland OR** | Partner | 151 | $225 | $275 | $470 | $385 | $389 | $361 |
| | Associate | 127 | $205 | $250 | $400 | $346 | $346 | $319 |
| **Providence RI** | Partner | 35 | $210 | $298 | $400 | $320 | $324 | $307 |
| | Associate | 37 | $203 | $250 | $325 | $268 | $241 | $237 |
| **Raleigh NC** | Partner | 77 | $205 | $223 | $383 | $319 | $305 | $292 |
| | Associate | 69 | $169 | $185 | $195 | $224 | $216 | $197 |
| **Richmond VA** | Partner | 147 | $215 | $250 | $695 | $439 | $506 | $475 |
| | Associate | 100 | $190 | $225 | $486 | $350 | $375 | $371 |
| **Riverside CA** | Partner | 36 | $225 | $262 | $375 | $291 | $293 | $293 |
| | Associate | 23 | $205 | $205 | $205 | $212 | $226 | $260 |
| **Roanoke VA** | Partner | 12 | $190 | $194 | $274 | $220 | $202 | $201 |
| **Rochester NY** | Partner | 30 | $199 | $230 | $390 | $399 | $312 | $298 |
| | Associate | 15 | $200 | $250 | $300 | $257 | $238 | $226 |

Ex. 6, Page 358

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 360 of 501
Case 2:21-cv-06010-TJH-JC    Document 133-7    Filed 01/06/26    Page 124 of 265
Page ID #:4496

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Sacramento CA** | Partner | 71 | $190 | $238 | $326 | $316 | $326 | $321 |
| | Associate | 75 | $190 | $190 | $240 | $246 | $242 | $227 |
| **Salt Lake City UT** | Partner | 100 | $209 | $225 | $350 | $314 | $292 | $315 |
| | Associate | 42 | $170 | $195 | $276 | $232 | $228 | $224 |
| **San Antonio TX** | Partner | 27 | $205 | $216 | $235 | $247 | $235 | $244 |
| | Associate | 17 | $175 | $175 | $191 | $215 | $196 | $194 |
| **San Diego CA** | Partner | 243 | $240 | $272 | $386 | $422 | $403 | $405 |
| | Associate | 170 | $205 | $240 | $290 | $293 | $280 | $256 |
| **San Francisco CA** | Partner | 801 | $254 | $269 | $350 | $431 | $435 | $426 |
| | Associate | 539 | $230 | $240 | $328 | $367 | $369 | $350 |
| **San Jose CA** | Partner | 54 | $658 | $913 | $1,325 | $1,030 | $1,036 | $1,033 |
| | Associate | 47 | $550 | $685 | $1,035 | $776 | $736 | $736 |
| **Savannah GA** | Partner | 16 | $175 | $200 | $366 | $278 | $238 | $241 |

Ex. 6, Page 359

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 361 of 501
Case 2:21-cv-06010-TJH-JC     Document 133-28  Filed 01/06/26     Page 125 of 265
Page ID #:4497

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Scranton PA** | Partner | 19 | $185 | $201 | $210 | $199 | $200 | $195 |
| **Seattle WA** | Partner | 256 | $240 | $375 | $765 | $516 | $497 | $496 |
| | Associate | 186 | $213 | $235 | $445 | $354 | $341 | $363 |
| **Shreveport LA** | Partner | 23 | $165 | $175 | $200 | $183 | $182 | $179 |
| **Sioux Falls SD** | Partner | 14 | $205 | $230 | $261 | $238 | $231 | $222 |
| **Spartanburg SC** | Partner | 10 | $160 | $160 | $180 | $234 | $228 | $233 |
| **St. Louis MO** | Partner | 157 | $200 | $225 | $385 | $328 | $316 | $296 |
| | Associate | 44 | $165 | $200 | $215 | $206 | $208 | $211 |
| **Syracuse NY** | Partner | 43 | $200 | $220 | $233 | $289 | $260 | $214 |
| | Associate | 25 | $165 | $175 | $200 | $180 | $190 | $173 |
| **Tallahassee FL** | Partner | 28 | $207 | $223 | $465 | $392 | $310 | $312 |
| | Associate | 13 | $167 | $170 | $178 | $187 | $166 | $168 |

Ex. 6, Page 360

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 362 of 501
Case 2:21-cv-06010-TJH-JC   Document 17-3   Filed 01/06/26   Page 126 of 265
Page ID #:3329
Page ID #:4498

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| Tampa FL | Partner | 162 | $192 | $220 | $395 | $329 | $322 | $317 |
| | Associate | 120 | $170 | $193 | $260 | $236 | $227 | $229 |
| Trenton NJ | Partner | 38 | $268 | $325 | $930 | $564 | $509 | $487 |
| | Associate | 23 | $203 | $225 | $525 | $363 | $342 | $345 |
| Tulsa OK | Partner | 38 | $175 | $195 | $250 | $232 | $226 | $209 |
| | Associate | 31 | $168 | $195 | $250 | $204 | $190 | $181 |
| Virginia Beach VA | Partner | 18 | $180 | $235 | $465 | $317 | $305 | $362 |
| | Associate | 15 | $201 | $225 | $269 | $264 | $298 | $323 |
| Washington DC | Partner | 1,249 | $633 | $960 | $1,303 | $977 | $966 | $907 |
| | Associate | 999 | $462 | $742 | $995 | $735 | $703 | $647 |
| Wheeling WV | Partner | 43 | $905 | $1,043 | $1,160 | $1,043 | $973 | $852 |
| Wichita KS | Partner | 12 | $189 | $235 | $348 | $276 | $263 | $247 |
| Winston NC | Partner | 11 | $145 | $295 | $482 | $334 | $358 | $365 |

Ex. 6, Page 361

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 363 of 501
Case 2:21-cv-06010-TJH-JC    Document 117-3    Filed 01/06/26    Page 127 of 265
Page ID #:4499

# Section III: Practice Area Analysis

### Corporate: Mergers, Acquisitions, and Divestitures
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Worcester MA** | Partner | 14 | $248 | $331 | $396 | $356 | $385 | $355 |
|  | Associate | 11 | $257 | $301 | $325 | $294 | $274 | $245 |

Ex. 6, Page 362

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 364 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3331    Filed 01/06/26    Page 128 of 265
Page ID #:4500

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
By Matter Type and YOE

**2025 - Real Rates for Partner**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 1,227 | $212 | $350 | $691 | $527 | $490 | $452 |
| | Non-Litigation | 2,172 | $230 | $365 | $808 | $604 | $589 | $550 |
| **21 or More Years** | Litigation | 2,458 | $205 | $293 | $656 | $498 | $478 | $462 |
| | Non-Litigation | 4,350 | $225 | $335 | $788 | $581 | $591 | $568 |

Ex. 6, Page 363

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 365 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-2    Filed 01/06/26    Page 129 of 265
Page ID #:4501

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
By Matter Type and YOE

**2025 - Real Rates for Associate**                                **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **3 to Fewer Than 7 Years** | Non-Litigation | 32 | $592 | $792 | $1,157 | $893 | $825 | $683 |
| **7 or More Years** | Non-Litigation | 42 | $816 | $1,093 | $1,637 | $1,148 | $933 | $780 |

Ex. 6, Page 364

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 366 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3    Filed 01/06/26    Page 130 of 265
Page ID #:4502
Page ID #:3333

# Section III: Practice Area Analysis

**Corporate: Mergers, Acquisitions, and Divestitures**
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                        **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **201-500 Lawyers** | **Non-Litigation** | Partner | 34 | $718 | $975 | $1,303 | $990 | $959 | $859 |
| | | Associate | 23 | $587 | $605 | $779 | $670 | $678 | $567 |
| **501-1,000 Lawyers** | **Non-Litigation** | Partner | 48 | $958 | $1,332 | $2,310 | $1,565 | $1,329 | $1,180 |
| | | Associate | 66 | $819 | $1,127 | $1,537 | $1,130 | $922 | $763 |
| **More Than 1,000 Lawyers** | **Non-Litigation** | Partner | 128 | $1,186 | $1,506 | $1,895 | $1,557 | $1,443 | $1,350 |
| | | Associate | 134 | $690 | $923 | $1,293 | $991 | $881 | $850 |

Ex. 6, Page 365

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 367 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3334    Filed 01/06/26    Page 131 of 265
Page ID #:4503

# Section III: Practice Area Analysis

**Corporate: Other**
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 41 | $484 | $494 | $851 | $745 | $736 | $734 |
| | Associate | 47 | $437 | $485 | $561 | $542 | $470 | $511 |
| **Austin TX** | Partner | 10 | $455 | $511 | $1,089 | $728 | $584 | $618 |
| **Baltimore MD** | Partner | 17 | $620 | $760 | $791 | $754 | $763 | $625 |
| | Associate | 12 | $450 | $504 | $654 | $551 | $573 | $490 |
| **Birmingham AL** | Partner | 11 | $350 | $450 | $606 | $480 | $504 | $415 |
| | Associate | 14 | $275 | $325 | $350 | $333 | $326 | $312 |
| **Boston MA** | Partner | 63 | $545 | $913 | $1,326 | $973 | $931 | $852 |
| | Associate | 43 | $470 | $602 | $1,020 | $712 | $727 | $648 |

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 368 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7    Filed 01/06/26    Page 132 of 265
Page ID #:3335
Page ID #:4504

# Section III: Practice Area Analysis

## Corporate: Other
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Chicago IL** | Partner | 125 | $843 | $1,265 | $1,442 | $1,154 | $1,068 | $1,001 |
| | Associate | 116 | $580 | $775 | $985 | $790 | $755 | $695 |
| **Cleveland OH** | Partner | 17 | $661 | $805 | $1,169 | $867 | $688 | $703 |
| **Dallas TX** | Partner | 20 | $479 | $935 | $1,268 | $973 | $839 | $772 |
| | Associate | 18 | $300 | $745 | $1,006 | $703 | $597 | $644 |
| **Detroit MI** | Partner | 13 | $410 | $415 | $550 | $475 | $468 | $455 |
| **Hartford CT** | Partner | 10 | $463 | $500 | $681 | $570 | $598 | $582 |
| **Houston TX** | Partner | 23 | $663 | $1,070 | $1,272 | $994 | $976 | $894 |
| | Associate | 16 | $426 | $712 | $920 | $706 | $714 | $600 |
| **Indianapolis IN** | Partner | 12 | $426 | $571 | $713 | $570 | $583 | $477 |
| **Kansas City MO** | Partner | 21 | $470 | $659 | $903 | $739 | $594 | $568 |
| **Los Angeles CA** | Partner | 146 | $686 | $1,200 | $1,615 | $1,176 | $1,111 | $1,024 |
| | Associate | 112 | $610 | $799 | $1,139 | $850 | $812 | $750 |

Ex. 6, Page 367

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 369 of 501
Case 2:21-cv-06010-TJH-JC     Document #7336     Filed 01/06/26     Page 133 of 265
Page ID #:4505

# Section III: Practice Area Analysis

## Corporate: Other
By City

**2025 - Real Rates for Associate and Partner**                                              **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Miami FL** | Partner | 23 | $438 | $600 | $950 | $699 | $669 | $590 |
| | Associate | 10 | $382 | $435 | $599 | $494 | $456 | $441 |
| **New Orleans LA** | Partner | 15 | $321 | $356 | $451 | $378 | $403 | $400 |
| **New York NY** | Partner | 270 | $1,156 | $1,676 | $2,175 | $1,591 | $1,436 | $1,293 |
| | Associate | 331 | $759 | $1,008 | $1,371 | $1,052 | $966 | $844 |
| **Philadelphia PA** | Partner | 98 | $662 | $930 | $1,183 | $913 | $898 | $835 |
| | Associate | 60 | $405 | $547 | $695 | $555 | $577 | $550 |
| **Phoenix AZ** | Partner | 16 | $329 | $355 | $597 | $497 | $432 | $415 |
| | Associate | 14 | $240 | $298 | $329 | $303 | $281 | $288 |
| **Pittsburgh PA** | Partner | 12 | $655 | $831 | $968 | $850 | $999 | $803 |
| **Portland ME** | Partner | 15 | $205 | $425 | $495 | $400 | $396 | $336 |
| **Richmond VA** | Partner | 10 | $285 | $695 | $718 | $532 | $615 | $519 |

Ex. 6, Page 368

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS Document 139-7 Filed 07/02/26 Page 370 of 501
Case 2:21-cv-06010-TJH-JC Document 1-7337 Filed 01/06/26 Page 134 of 265
Page ID #:4506

# Section III: Practice Area Analysis

## Corporate: Other
By City

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **San Diego CA** | Partner | 23 | $322 | $495 | $1,318 | $749 | $684 | $645 |
| | Associate | 20 | $252 | $350 | $451 | $425 | $399 | $380 |
| **San Francisco CA** | Partner | 33 | $865 | $1,375 | $1,627 | $1,312 | $1,198 | $977 |
| | Associate | 30 | $585 | $906 | $1,150 | $890 | $842 | $747 |
| **San Jose CA** | Partner | 13 | $775 | $850 | $1,230 | $1,085 | $1,049 | $1,077 |
| **Seattle WA** | Partner | 13 | $904 | $1,071 | $1,174 | $957 | $818 | $741 |
| **Tampa FL** | Partner | 10 | $382 | $483 | $920 | $632 | $550 | $519 |
| **Washington DC** | Partner | 250 | $981 | $1,328 | $1,450 | $1,268 | $1,160 | $1,030 |
| | Associate | 204 | $750 | $934 | $995 | $899 | $820 | $707 |

Ex. 6, Page 369

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 371 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-33    Filed 01/06/26    Page 135 of 265
Page ID #:4507

# Section III: Practice Area Analysis

## Corporate: Other
By Matter Type and YOE

**2025 - Real Rates for Partner**                                      **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 116 | $531 | $837 | $1,356 | $988 | $900 | $765 |
| | Non-Litigation | 181 | $704 | $1,303 | $1,740 | $1,288 | $1,137 | $980 |
| **21 or More Years** | Litigation | 233 | $532 | $805 | $1,337 | $951 | $931 | $847 |
| | Non-Litigation | 362 | $721 | $1,195 | $1,600 | $1,215 | $1,140 | $1,044 |

Ex. 6, Page 370

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 372 of 501
Case 2:21-cv-06010-TJH-JC    Document 473-3    Filed 01/06/26    Page 136 of 265
Page ID #:4508

# Section III: Practice Area Analysis

## Corporate: Other
By Matter Type and YOE

**2025 - Real Rates for Associate**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Non-Litigation | 53 | $648 | $977 | $1,231 | $968 | $799 | $605 |
| **3 to Fewer Than 7 Years** | Litigation | 54 | $461 | $608 | $855 | $684 | $681 | $553 |
| | Non-Litigation | 83 | $698 | $991 | $1,313 | $1,014 | $876 | $653 |
| **7 or More Years** | Litigation | 61 | $425 | $710 | $840 | $722 | $666 | $604 |
| | Non-Litigation | 93 | $708 | $991 | $1,576 | $1,070 | $916 | $759 |

Ex. 6, Page 371

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 373 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-7    Filed 01/06/26    Page 137 of 265
Page ID #:7334
Page ID #:4509

# Section III: Practice Area Analysis

**Corporate: Other**
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 53 | $320 | $465 | $663 | $501 | $470 | $466 |
| | | Associate | 32 | $325 | $530 | $805 | $526 | $446 | $372 |
| | **Non-Litigation** | Partner | 82 | $335 | $500 | $680 | $516 | $515 | $488 |
| | | Associate | 26 | $263 | $345 | $441 | $370 | $397 | $367 |
| **51-200 Lawyers** | **Litigation** | Partner | 74 | $372 | $517 | $758 | $602 | $635 | $570 |
| | | Associate | 36 | $293 | $345 | $533 | $406 | $408 | $404 |
| | **Non-Litigation** | Partner | 56 | $444 | $538 | $912 | $671 | $646 | $654 |
| | | Associate | 28 | $225 | $268 | $729 | $510 | $344 | $434 |

wolterskluwer.com

Ex. 6, Page 372

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 374 of 501
Case 2:21-cv-06010-TJH-JC    Document #7341    Filed 01/06/26    Page 138 of 265
Page ID #:4510

# Section III: Practice Area Analysis

## Corporate: Other
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**　　　　　　　　　　　　**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **201-500 Lawyers** | **Litigation** | Partner | 121 | $655 | $988 | $1,342 | $991 | $887 | $764 |
|  |  | Associate | 97 | $594 | $700 | $975 | $753 | $678 | $603 |
|  | **Non-Litigation** | Partner | 168 | $580 | $990 | $1,339 | $996 | $915 | $821 |
|  |  | Associate | 135 | $485 | $798 | $968 | $739 | $714 | $562 |
| **501-1,000 Lawyers** | **Litigation** | Partner | 124 | $736 | $1,292 | $1,626 | $1,233 | $1,104 | $967 |
|  |  | Associate | 106 | $505 | $739 | $995 | $805 | $739 | $621 |
|  | **Non-Litigation** | Partner | 270 | $1,238 | $1,580 | $2,036 | $1,606 | $1,453 | $1,257 |
|  |  | Associate | 285 | $865 | $998 | $1,354 | $1,095 | $1,009 | $843 |
| **More Than 1,000 Lawyers** | **Litigation** | Partner | 91 | $850 | $1,154 | $1,586 | $1,229 | $1,215 | $1,105 |
|  |  | Associate | 106 | $549 | $750 | $1,000 | $800 | $766 | $725 |
|  | **Non-Litigation** | Partner | 179 | $1,166 | $1,355 | $1,710 | $1,428 | $1,349 | $1,265 |
|  |  | Associate | 136 | $725 | $906 | $1,065 | $939 | $911 | $846 |

Ex. 6, Page 373

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 375 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7 342    Filed 01/06/26    Page 139 of 265
Page ID #:4511

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
*By City*

**2025 - Real Rates for Associate and Partner**    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 14 | $701 | $917 | $1,251 | $1,017 | $1,067 | $920 |
| | Associate | 18 | $435 | $608 | $932 | $651 | $639 | $662 |
| **Baltimore MD** | Partner | 17 | $760 | $1,008 | $1,160 | $971 | $917 | $819 |
| **Boston MA** | Associate | 14 | $628 | $735 | $905 | $856 | $678 | $564 |
| **Chicago IL** | Partner | 42 | $652 | $867 | $1,244 | $988 | $1,051 | $1,008 |
| | Associate | 35 | $467 | $565 | $808 | $646 | $681 | $729 |
| **Denver CO** | Partner | 15 | $469 | $592 | $870 | $673 | $634 | $590 |
| **Kansas City MO** | Partner | 11 | $576 | $665 | $724 | $643 | $654 | $598 |
| **Los Angeles CA** | Partner | 32 | $708 | $1,029 | $1,306 | $1,068 | $990 | $922 |
| | Associate | 31 | $637 | $780 | $922 | $802 | $786 | $744 |

Ex. 6, Page 374

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 376 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7334    Filed 01/06/26    Page 140 of 265
Page ID #:4512

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Miami FL** | Partner | 16 | $570 | $655 | $994 | $738 | $781 | $733 |
| | Associate | 12 | $399 | $475 | $491 | $463 | $524 | $564 |
| **Nashville TN** | Partner | 31 | $602 | $729 | $792 | $701 | $675 | $617 |
| **New York NY** | Partner | 70 | $869 | $1,431 | $1,946 | $1,506 | $1,419 | $1,258 |
| | Associate | 77 | $579 | $918 | $1,328 | $1,008 | $930 | $804 |
| **Philadelphia PA** | Partner | 36 | $653 | $819 | $1,095 | $900 | $890 | $802 |
| | Associate | 39 | $475 | $550 | $759 | $607 | $582 | $509 |
| **Pittsburgh PA** | Partner | 13 | $606 | $760 | $950 | $817 | $834 | $728 |
| | Associate | 12 | $370 | $471 | $532 | $469 | $465 | $454 |
| **San Francisco CA** | Partner | 12 | $855 | $1,356 | $1,453 | $1,193 | $968 | $840 |
| | Associate | 15 | $489 | $842 | $1,078 | $819 | $886 | $695 |
| **Seattle WA** | Partner | 17 | $520 | $830 | $925 | $758 | $798 | $887 |

Ex. 6, Page 375

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 377 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-34    Filed 01/06/26    Page 141 of 265
Page ID #:4513

# Section III: Practice Area Analysis

### Corporate: Regulatory and Compliance
*By City*

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Washington DC** | Partner | 278 | $709 | $970 | $1,264 | $1,035 | $1,064 | $977 |
| | Associate | 181 | $495 | $736 | $995 | $754 | $751 | $691 |

Ex. 6, Page 376

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 378 of 501
Case 2:21-cv-06010-TJH-JC     Document 1-7345     Filed 01/06/26     Page 142 of 265
Page ID #:4514

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By Matter Type and YOE

**2025 - Real Rates for Partner**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 17 | $735 | $964 | $1,300 | $1,048 | $979 | $924 |
| | Non-Litigation | 145 | $607 | $845 | $1,172 | $950 | $955 | $873 |
| **21 or More Years** | Litigation | 49 | $650 | $828 | $1,250 | $970 | $1,008 | $930 |
| | Non-Litigation | 226 | $650 | $850 | $1,202 | $991 | $985 | $894 |

Ex. 6, Page 377

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 379 of 501
Case 2:21-cv-06010-TJH-JC     Document 1-3346     Filed 01/06/26     Page 143 of 265
Page ID #:4515

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By Matter Type and YOE

**2025 - Real Rates for Associate**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Non-Litigation | 34 | $461 | $591 | $757 | $644 | $632 | $641 |
| **3 to Fewer Than 7 Years** | Non-Litigation | 79 | $453 | $625 | $880 | $738 | $699 | $617 |
| **7 or More Years** | Litigation | 19 | $475 | $675 | $849 | $688 | $724 | $700 |
|  | Non-Litigation | 62 | $452 | $805 | $995 | $849 | $805 | $694 |

Ex. 6, Page 378

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 380 of 501
Case 2:21-cv-06010-TJH-JC    Document 117-7    Filed 01/06/26    Page 144 of 265
Page ID #:4516

# Section III: Practice Area Analysis

## Corporate: Regulatory and Compliance
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Non-Litigation** | Partner | 87 | $543 | $643 | $701 | $616 | $596 | $567 |
| | | Associate | 42 | $317 | $375 | $443 | $412 | $400 | $348 |
| **51-200 Lawyers** | **Non-Litigation** | Partner | 52 | $474 | $666 | $963 | $736 | $650 | $621 |
| | | Associate | 30 | $313 | $395 | $495 | $417 | $455 | $419 |
| **201-500 Lawyers** | **Litigation** | Partner | 12 | $415 | $603 | $1,499 | $891 | $815 | $831 |
| | **Non-Litigation** | Partner | 98 | $690 | $825 | $979 | $876 | $799 | $741 |
| | | Associate | 49 | $451 | $568 | $653 | $645 | $593 | $578 |

Ex. 6, Page 379

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 381 of 501
Case 2:21-cv-06010-TJH-JC   Document 1-33848   Filed 01/06/26   Page 145 of 265
Page ID #:4517

# Section III: Practice Area Analysis

**Corporate: Regulatory and Compliance**
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **501-1,000 Lawyers** | **Litigation** | Partner | 37 | $736 | $777 | $1,133 | $931 | $1,020 | $1,006 |
| | | Associate | 29 | $475 | $559 | $828 | $651 | $689 | $725 |
| | **Non-Litigation** | Partner | 154 | $940 | $1,159 | $1,450 | $1,287 | $1,231 | $1,131 |
| | | Associate | 152 | $655 | $930 | $995 | $929 | $864 | $725 |
| **More Than 1,000 Lawyers** | **Litigation** | Partner | 26 | $1,095 | $1,300 | $1,703 | $1,402 | $1,282 | $1,086 |
| | | Associate | 30 | $496 | $675 | $775 | $684 | $718 | $612 |
| | **Non-Litigation** | Partner | 151 | $926 | $1,170 | $1,364 | $1,195 | $1,263 | $1,132 |
| | | Associate | 132 | $553 | $743 | $1,022 | $788 | $821 | $763 |

Ex. 6, Page 380

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 382 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-34    Filed 01/06/26    Page 146 of 265
Page ID #:4518

# Section III: Practice Area Analysis

## Employment and Labor
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 40 | $436 | $542 | $673 | $605 | $588 | $566 |
| | Associate | 18 | $350 | $386 | $485 | $425 | $411 | $410 |
| **Baltimore MD** | Partner | 10 | $614 | $721 | $1,235 | $875 | $880 | $782 |
| **Boston MA** | Partner | 26 | $493 | $749 | $927 | $763 | $746 | $650 |
| | Associate | 15 | $445 | $540 | $597 | $571 | $544 | $488 |
| **Chicago IL** | Partner | 66 | $608 | $798 | $1,007 | $869 | $808 | $741 |
| | Associate | 32 | $362 | $483 | $763 | $587 | $537 | $461 |
| **Cincinnati OH** | Partner | 14 | $340 | $588 | $680 | $556 | $515 | $493 |
| **Cleveland OH** | Partner | 23 | $425 | $543 | $750 | $644 | $623 | $597 |
| | Associate | 16 | $345 | $385 | $442 | $409 | $359 | $355 |

Ex. 6, Page 381

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 383 of 501
Case 2:21-cv-06010-TJH-JC    Document #7350    Filed 01/06/26    Page 147 of 265
Page ID #:4519

# Section III: Practice Area Analysis

## Employment and Labor
*By City*

**2025 - Real Rates for Associate and Partner**                     **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|---------------|------|------|------|
| **Dallas TX** | Partner | 20 | $449 | $644 | $775 | $639 | $648 | $575 |
| | Associate | 12 | $332 | $400 | $499 | $432 | $415 | $359 |
| **Denver CO** | Partner | 20 | $466 | $550 | $625 | $601 | $606 | $600 |
| **Houston TX** | Partner | 24 | $517 | $675 | $860 | $691 | $653 | $621 |
| **Los Angeles CA** | Partner | 60 | $525 | $720 | $1,195 | $857 | $821 | $806 |
| | Associate | 59 | $446 | $684 | $878 | $703 | $660 | $630 |
| **Minneapolis MN** | Partner | 19 | $718 | $788 | $1,047 | $816 | $667 | $625 |
| | Associate | 14 | $456 | $540 | $733 | $574 | $578 | $460 |
| **Nashville TN** | Partner | 13 | $500 | $551 | $600 | $550 | $546 | $493 |
| **New York NY** | Partner | 176 | $550 | $756 | $1,191 | $939 | $867 | $840 |
| | Associate | 141 | $394 | $476 | $686 | $596 | $607 | $604 |
| **Philadelphia PA** | Partner | 56 | $541 | $688 | $889 | $766 | $760 | $716 |
| | Associate | 68 | $450 | $548 | $599 | $547 | $540 | $499 |

Ex. 6, Page 382

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 384 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7351    Filed 01/06/26    Page 148 of 265
Page ID #:4520

# Section III: Practice Area Analysis

## Employment and Labor
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Phoenix AZ** | Partner | 10 | $525 | $592 | $675 | $622 | $514 | $537 |
| **Pittsburgh PA** | Partner | 18 | $492 | $759 | $895 | $772 | $771 | $734 |
| | Associate | 16 | $358 | $424 | $619 | $476 | $559 | $520 |
| **San Diego CA** | Partner | 14 | $491 | $505 | $605 | $655 | $617 | $582 |
| | Associate | 12 | $350 | $443 | $907 | $564 | $413 | $431 |
| **San Francisco CA** | Partner | 26 | $517 | $675 | $995 | $812 | $774 | $711 |
| | Associate | 19 | $403 | $575 | $663 | $545 | $546 | $425 |
| **Seattle WA** | Partner | 19 | $564 | $635 | $796 | $681 | $609 | $612 |
| **Washington DC** | Partner | 105 | $753 | $912 | $1,092 | $937 | $923 | $868 |
| | Associate | 65 | $486 | $700 | $805 | $670 | $657 | $603 |

Ex. 6, Page 383

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 385 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7352    Filed 01/06/26    Page 149 of 265
Page ID #:4521

# Section III: Practice Area Analysis

## Employment and Labor
By Matter Type and YOE

**2025 - Real Rates for Partner**

**Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 70 | $495 | $650 | $935 | $730 | $721 | $636 |
| | Non-Litigation | 151 | $485 | $599 | $824 | $679 | $641 | $597 |
| **21 or More Years** | Litigation | 146 | $500 | $725 | $1,019 | $792 | $794 | $779 |
| | Non-Litigation | 299 | $510 | $674 | $923 | $773 | $715 | $680 |

Ex. 6, Page 384

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 386 of 501
Case 2:21-cv-06010-TJH-JC     Document 117-5     Filed 01/06/26     Page 150 of 265
Page ID #:4522

# Section III: Practice Area Analysis

## Employment and Labor
By Matter Type and YOE

**2025 - Real Rates for Associate**                           **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **3 to Fewer Than 7 Years** | Litigation | 44 | $392 | $550 | $649 | $530 | $508 | $448 |
| | Non-Litigation | 45 | $352 | $396 | $535 | $482 | $436 | $404 |
| **7 or More Years** | Litigation | 53 | $445 | $623 | $780 | $654 | $573 | $490 |
| | Non-Litigation | 75 | $385 | $445 | $540 | $500 | $494 | $472 |

Ex. 6, Page 385

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 387 of 501
Case 2:21-cv-06010-TJH-JC     Document 17385     Filed 01/06/26     Page 151 of 265
Page ID #:4523

# Section III: Practice Area Analysis

## Employment and Labor
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 21 | $380 | $543 | $728 | $620 | $508 | $494 |
| | **Non-Litigation** | Partner | 17 | $346 | $395 | $450 | $450 | $448 | $501 |
| **51-200 Lawyers** | **Litigation** | Partner | 21 | $350 | $445 | $475 | $447 | $430 | $417 |
| | **Non-Litigation** | Partner | 62 | $495 | $725 | $994 | $767 | $708 | $625 |
| | | Associate | 20 | $325 | $415 | $603 | $472 | $473 | $390 |
| **201-500 Lawyers** | **Litigation** | Partner | 77 | $484 | $675 | $891 | $713 | $746 | $767 |
| | | Associate | 68 | $430 | $476 | $548 | $494 | $541 | $626 |
| | **Non-Litigation** | Partner | 140 | $425 | $488 | $641 | $598 | $563 | $539 |
| | | Associate | 49 | $331 | $380 | $485 | $447 | $425 | $405 |

Ex. 6, Page 386

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 388 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-3855    Filed 01/06/26    Page 152 of 265
Page ID #:4524

# Section III: Practice Area Analysis

## Employment and Labor
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **501-1,000 Lawyers** | **Litigation** | Partner | 71 | $606 | $790 | $1,082 | $839 | $785 | $742 |
| | | Associate | 50 | $457 | $554 | $750 | $613 | $547 | $475 |
| | **Non-Litigation** | Partner | 218 | $550 | $658 | $831 | $751 | $680 | $645 |
| | | Associate | 134 | $358 | $395 | $540 | $550 | $454 | $422 |
| **More Than 1,000 Lawyers** | **Litigation** | Partner | 74 | $786 | $1,000 | $1,225 | $1,000 | $1,012 | $935 |
| | | Associate | 83 | $550 | $585 | $726 | $635 | $643 | $598 |
| | **Non-Litigation** | Partner | 94 | $813 | $895 | $1,238 | $1,029 | $989 | $940 |
| | | Associate | 82 | $494 | $575 | $740 | $638 | $629 | $601 |

Ex. 6, Page 387

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 389 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-3    Filed 01/06/26    Page 153 of 265
Page ID #:4525

# Section III: Practice Area Analysis

## Environmental
By City

**2025 - Real Rates for Associate and Partner**                     **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **New York NY** | Partner | 29 | $523 | $625 | $696 | $605 | $552 | $632 |
| | Associate | 23 | $415 | $415 | $440 | $436 | $420 | $418 |
| **Philadelphia PA** | Partner | 20 | $599 | $798 | $1,095 | $822 | $896 | $817 |
| | Associate | 14 | $495 | $665 | $675 | $631 | $596 | $578 |
| **Washington DC** | Partner | 24 | $695 | $888 | $1,068 | $903 | $854 | $882 |
| | Associate | 23 | $445 | $495 | $670 | $599 | $624 | $665 |

wolterskluwer.com

Ex. 6, Page 388

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 390 of 501
Case 2:21-cv-06010-TJH-JC     Document 1-7357     Filed 01/06/26     Page 154 of 265
Page ID #:4526

# Section III: Practice Area Analysis

## Environmental
By Matter Type and YOE

**2025 - Real Rates for Partner**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 11 | $391 | $625 | $681 | $544 | $526 | $433 |
| | Non-Litigation | 20 | $402 | $465 | $502 | $458 | $450 | $465 |
| **21 or More Years** | Litigation | 31 | $519 | $695 | $806 | $681 | $660 | $661 |
| | Non-Litigation | 59 | $525 | $595 | $762 | $660 | $657 | $633 |

Ex. 6, Page 389

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 391 of 501
Case 2:21-cv-06010-TJH-JC    Document 11-8    Filed 01/06/26    Page 155 of 265
Page ID #:4527
Page ID #:3358

# Section III: Practice Area Analysis

## Environmental
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|-----------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 10 | $420 | $454 | $455 | $445 | $454 | $445 |
|  | **Non-Litigation** | Partner | 13 | $345 | $455 | $575 | $483 | $429 | $416 |
| **51-200 Lawyers** | **Litigation** | Partner | 20 | $393 | $518 | $695 | $569 | $495 | $457 |
|  | **Non-Litigation** | Partner | 55 | $441 | $536 | $609 | $546 | $518 | $486 |
|  |  | Associate | 28 | $270 | $290 | $396 | $339 | $346 | $329 |
| **201-500 Lawyers** | **Litigation** | Partner | 26 | $603 | $671 | $703 | $685 | $671 | $627 |
|  |  | Associate | 17 | $415 | $417 | $437 | $432 | $430 | $424 |
|  | **Non-Litigation** | Partner | 19 | $550 | $660 | $756 | $686 | $662 | $689 |

Ex. 6, Page 390

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 392 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-35    Filed 01/06/26    Page 156 of 265
Page ID #:4528
Page ID #:3359

# Section III: Practice Area Analysis

## Finance and Securities
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 39 | $887 | $1,172 | $1,375 | $1,157 | $1,083 | $996 |
| | Associate | 40 | $428 | $779 | $999 | $765 | $789 | $720 |
| **Baltimore MD** | Partner | 19 | $610 | $835 | $1,074 | $855 | $898 | $831 |
| | Associate | 11 | $570 | $605 | $838 | $678 | $634 | $635 |
| **Boston MA** | Partner | 44 | $874 | $1,288 | $1,604 | $1,253 | $1,270 | $1,218 |
| | Associate | 46 | $588 | $719 | $906 | $789 | $851 | $803 |
| **Charlotte NC** | Partner | 27 | $775 | $892 | $1,050 | $919 | $922 | $928 |
| | Associate | 33 | $446 | $498 | $577 | $556 | $563 | $552 |
| **Chicago IL** | Partner | 107 | $874 | $1,165 | $1,533 | $1,201 | $1,162 | $1,048 |
| | Associate | 87 | $656 | $820 | $966 | $813 | $729 | $675 |

Ex. 6, Page 391

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 393 of 501
Case 2:21-cv-06010-TJH-JC   Document 1-3   Filed 01/06/26   Page 157 of 265
Page ID #:7360
Page ID #:4529

# Section III: Practice Area Analysis

## Finance and Securities
By City

**2025 - Real Rates for Associate and Partner**                              **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Cincinnati OH** | Partner | 41 | $395 | $500 | $637 | $522 | $473 | $469 |
|  | Associate | 34 | $284 | $317 | $365 | $321 | $304 | $291 |
| **Cleveland OH** | Partner | 46 | $458 | $544 | $655 | $611 | $616 | $568 |
|  | Associate | 27 | $315 | $345 | $400 | $382 | $403 | $364 |
| **Dallas TX** | Partner | 50 | $621 | $963 | $1,244 | $951 | $917 | $865 |
|  | Associate | 67 | $397 | $595 | $850 | $636 | $605 | $556 |
| **Denver CO** | Partner | 11 | $515 | $595 | $779 | $661 | $650 | $663 |
| **Detroit MI** | Partner | 23 | $361 | $494 | $624 | $516 | $491 | $453 |
|  | Associate | 12 | $300 | $325 | $357 | $330 | $343 | $309 |
| **Houston TX** | Associate | 25 | $500 | $660 | $844 | $697 | $752 | $804 |
| **Kansas City MO** | Associate | 19 | $372 | $424 | $459 | $426 | $460 | $424 |
| **Los Angeles CA** | Partner | 66 | $864 | $1,068 | $1,587 | $1,180 | $1,283 | $1,188 |
|  | Associate | 60 | $591 | $742 | $1,098 | $839 | $869 | $793 |

Ex. 6, Page 392

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 394 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-6    Filed 01/06/26    Page 158 of 265
Page ID #:4530

# Section III: Practice Area Analysis

## Finance and Securities
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Miami FL** | Partner | 20 | $735 | $874 | $988 | $903 | $783 | $714 |
| | Associate | 13 | $400 | $495 | $684 | $565 | $507 | $420 |
| **Minneapolis MN** | Partner | 13 | $645 | $850 | $880 | $807 | $828 | $810 |
| | Associate | 11 | $430 | $477 | $520 | $501 | $491 | $483 |
| **Nashville TN** | Partner | 10 | $555 | $883 | $1,048 | $829 | $826 | $743 |
| **New York NY** | Partner | 300 | $1,125 | $1,510 | $1,999 | $1,540 | $1,512 | $1,341 |
| | Associate | 343 | $686 | $945 | $1,231 | $975 | $934 | $842 |
| **Philadelphia PA** | Partner | 98 | $750 | $896 | $1,134 | $1,000 | $946 | $864 |
| | Associate | 113 | $498 | $626 | $728 | $654 | $603 | $531 |
| **Pittsburgh PA** | Partner | 68 | $585 | $760 | $912 | $762 | $792 | $724 |
| | Associate | 57 | $480 | $500 | $550 | $529 | $548 | $484 |

Ex. 6, Page 393

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 395 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3362    Filed 01/06/26    Page 159 of 265
Page ID #:4531

# Section III: Practice Area Analysis

## Finance and Securities
By City

**2025 - Real Rates for Associate and Partner**                 **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Seattle WA** | Partner | 22 | $941 | $990 | $1,232 | $1,009 | $905 | $775 |
| | Associate | 18 | $642 | $700 | $861 | $727 | $686 | $612 |
| **Washington DC** | Partner | 97 | $999 | $1,250 | $1,596 | $1,322 | $1,324 | $1,186 |
| | Associate | 61 | $610 | $895 | $1,114 | $917 | $921 | $829 |

Ex. 6, Page 394

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 396 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7336    Filed 01/06/26    Page 160 of 265
Page ID #:4532

# Section III: Practice Area Analysis

## Finance and Securities
By Matter Type and YOE

**2025 - Real Rates for Partner**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 71 | $370 | $490 | $725 | $608 | $612 | $641 |
| | Non-Litigation | 304 | $596 | $946 | $1,292 | $1,019 | $1,009 | $916 |
| **21 or More Years** | Litigation | 71 | $375 | $690 | $999 | $776 | $821 | $748 |
| | Non-Litigation | 502 | $695 | $1,015 | $1,466 | $1,137 | $1,149 | $1,053 |

Ex. 6, Page 395

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 397 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-6    Filed 01/06/26    Page 161 of 265
Page ID #:4533

# Section III: Practice Area Analysis

**Finance and Securities**
By Matter Type and YOE

**2025 - Real Rates for Associate**                                     **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Non-Litigation | 75 | $486 | $610 | $776 | $659 | $639 | $559 |
| **3 to Fewer Than 7 Years** | Litigation | 37 | $393 | $500 | $550 | $525 | $567 | $450 |
| | Non-Litigation | 186 | $441 | $638 | $833 | $698 | $700 | $586 |
| **7 or More Years** | Litigation | 52 | $299 | $345 | $500 | $463 | $492 | $494 |
| | Non-Litigation | 183 | $507 | $791 | $995 | $835 | $792 | $716 |

Ex. 6, Page 396

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 398 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7365    Filed 01/06/26    Page 162 of 265
Page ID #:4534

# Section III: Practice Area Analysis

## Finance and Securities
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Non-Litigation** | Partner | 44 | $379 | $494 | $736 | $669 | $557 | $518 |
| | | Associate | 18 | $305 | $400 | $592 | $522 | $403 | $382 |
| **51-200 Lawyers** | **Litigation** | Partner | 22 | $330 | $360 | $367 | $388 | $378 | $390 |
| | **Non-Litigation** | Partner | 132 | $458 | $542 | $825 | $748 | $694 | $669 |
| | | Associate | 89 | $300 | $360 | $610 | $512 | $511 | $472 |
| **201-500 Lawyers** | **Litigation** | Partner | 58 | $389 | $452 | $690 | $594 | $606 | $647 |
| | | Associate | 72 | $300 | $345 | $494 | $408 | $413 | $469 |
| | **Non-Litigation** | Partner | 294 | $640 | $854 | $1,082 | $941 | $931 | $888 |
| | | Associate | 242 | $467 | $647 | $884 | $707 | $678 | $615 |

Ex. 6, Page 397

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 399 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-6    Filed 01/06/26    Page 163 of 265
Page ID #:7366
Page ID #:4535

# Section III: Practice Area Analysis

## Finance and Securities
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **501-1,000 Lawyers** | **Litigation** | Partner | 33 | $733 | $1,170 | $1,375 | $1,101 | $1,166 | $1,058 |
| | | Associate | 44 | $531 | $849 | $965 | $759 | $738 | $651 |
| | **Non-Litigation** | Partner | 320 | $943 | $1,217 | $1,626 | $1,335 | $1,315 | $1,176 |
| | | Associate | 325 | $665 | $850 | $1,145 | $924 | $869 | $779 |
| **More Than 1,000 Lawyers** | **Litigation** | Partner | 42 | $760 | $865 | $1,000 | $947 | $953 | $943 |
| | | Associate | 45 | $500 | $500 | $550 | $609 | $630 | $570 |
| | **Non-Litigation** | Partner | 248 | $1,076 | $1,443 | $1,734 | $1,442 | $1,452 | $1,321 |
| | | Associate | 206 | $638 | $845 | $1,100 | $887 | $938 | $881 |

Ex. 6, Page 398

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 400 of 501
Case 2:21-cv-06010-TJH-JC    Document #7367    Filed 01/06/26    Page 164 of 265
Page ID #:4536

# Section III: Practice Area Analysis

## General Liability: Litigation Only
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 20 | $290 | $493 | $1,074 | $659 | $693 | $687 |
|  | Associate | 11 | $260 | $265 | $705 | $430 | $476 | $552 |
| **Baltimore MD** | Partner | 12 | $395 | $760 | $845 | $711 | $667 | $627 |
|  | Associate | 11 | $633 | $675 | $820 | $641 | $556 | $543 |
| **Birmingham AL** | Partner | 14 | $502 | $568 | $633 | $565 | $514 | $476 |
| **Boston MA** | Partner | 24 | $212 | $325 | $563 | $445 | $403 | $313 |
|  | Associate | 17 | $200 | $263 | $300 | $286 | $387 | $289 |
| **Chicago IL** | Partner | 40 | $246 | $293 | $400 | $395 | $423 | $429 |
|  | Associate | 19 | $185 | $235 | $263 | $316 | $299 | $348 |

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 401 of 501
Case 2:21-cv-06010-TJH-JC    Page ID #:7368    Filed 01/06/26    Page 165 of 265
Page ID #:4537

# Section III: Practice Area Analysis

## General Liability: Litigation Only
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Dallas TX** | Partner | 12 | $265 | $350 | $700 | $538 | $520 | $482 |
| | Associate | 17 | $209 | $235 | $280 | $281 | $295 | $285 |
| **Detroit MI** | Partner | 12 | $267 | $300 | $386 | $322 | $304 | $295 |
| **Houston TX** | Partner | 14 | $324 | $410 | $454 | $481 | $500 | $421 |
| | Associate | 10 | $250 | $332 | $400 | $330 | $269 | $313 |
| **Jackson MS** | Partner | 47 | $300 | $397 | $449 | $413 | $388 | $351 |
| | Associate | 25 | $246 | $310 | $339 | $302 | $292 | $269 |
| **Kansas City MO** | Partner | 13 | $435 | $527 | $615 | $530 | $545 | $458 |
| **Los Angeles CA** | Partner | 26 | $595 | $980 | $1,250 | $949 | $898 | $682 |
| | Associate | 30 | $525 | $663 | $811 | $681 | $629 | $558 |
| **Miami FL** | Partner | 16 | $190 | $250 | $356 | $306 | $316 | $313 |
| **Minneapolis MN** | Partner | 13 | $341 | $360 | $548 | $423 | $443 | $411 |
| | Associate | 17 | $235 | $260 | $360 | $321 | $278 | $262 |

Ex. 6, Page 400

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 402 of 501
Case 2:21-cv-06010-TJH-JC     Document 73369     Filed 01/06/26     Page 166 of 265
Page ID #:4538

# Section III: Practice Area Analysis

**General Liability: Litigation Only**
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Nashville TN** | Partner | 13 | $288 | $413 | $576 | $443 | $447 | $401 |
| **New Orleans LA** | Partner | 20 | $333 | $363 | $383 | $353 | $338 | $322 |
| | Associate | 18 | $256 | $260 | $280 | $256 | $243 | $241 |
| **New York NY** | Partner | 77 | $275 | $625 | $818 | $646 | $639 | $567 |
| | Associate | 57 | $202 | $367 | $524 | $411 | $409 | $406 |
| **Philadelphia PA** | Partner | 46 | $445 | $686 | $1,121 | $739 | $629 | $629 |
| | Associate | 55 | $475 | $595 | $815 | $592 | $549 | $492 |
| **St. Louis MO** | Partner | 14 | $250 | $330 | $338 | $317 | $297 | $295 |
| **Washington DC** | Partner | 46 | $980 | $1,250 | $1,375 | $1,150 | $1,035 | $1,053 |
| | Associate | 43 | $580 | $810 | $995 | $791 | $727 | $644 |

Ex. 6, Page 401

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 403 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-7    Filed 01/06/26    Page 167 of 265
Page ID #:4539

# Section III: Practice Area Analysis

**General Liability:**
**Litigation Only**
By Matter Type and YOE

**2025 - Real Rates for Partner**                                          **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 |
|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 106 | $300 | $420 | $710 | $571 | $530 |
| **21 or More Years** | Litigation | 271 | $306 | $501 | $787 | $619 | $554 |

Ex. 6, Page 402

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 404 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-3    Filed 01/06/26    Page 168 of 265
Page ID #:4540

# Section III: Practice Area Analysis

**General Liability: Litigation Only**
By Matter Type and YOE

**2025 - Real Rates for Associate**                              **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **3 to Fewer Than 7 Years** | Litigation | 39 | $347 | $415 | $595 | $460 | $430 | $379 |
| **7 or More Years** | Litigation | 74 | $350 | $475 | $815 | $565 | $490 | $453 |

Ex. 6, Page 403

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 405 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7372    Filed 01/06/26    Page 169 of 265
Page ID #:4541

# Section III: Practice Area Analysis

## General Lability:
## Litigation Only
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                     **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 140 | $265 | $325 | $400 | $344 | $347 | $349 |
| | | Associate | 88 | $202 | $235 | $275 | $258 | $256 | $268 |
| **51-200 Lawyers** | **Litigation** | Partner | 179 | $233 | $335 | $450 | $373 | $367 | $358 |
| | | Associate | 104 | $200 | $255 | $331 | $269 | $257 | $249 |
| **201-500 Lawyers** | **Litigation** | Partner | 97 | $425 | $595 | $696 | $613 | $565 | $541 |
| | | Associate | 61 | $367 | $419 | $523 | $466 | $421 | $396 |
| **501-1,000 Lawyers** | **Litigation** | Partner | 69 | $617 | $850 | $1,201 | $917 | $888 | $847 |
| | | Associate | 55 | $425 | $625 | $995 | $669 | $659 | $566 |
| **More Than 1,000 Lawyers** | **Litigation** | Partner | 60 | $980 | $1,250 | $1,250 | $1,157 | $1,115 | $960 |
| | | Associate | 86 | $595 | $675 | $815 | $691 | $679 | $611 |

Ex. 6, Page 404

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 406 of 501
Case 2:21-cv-06010-TJH-JC     Document 1-7337     Filed 01/06/26     Page 170 of 265
Page ID #:4542

# Section III: Practice Area Analysis

## Insurance Defense: Litigation Only
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Albuquerque NM** | Partner | 24 | $179 | $192 | $205 | $194 | $189 | $184 |
| | Associate | 17 | $170 | $180 | $185 | $175 | $167 | $163 |
| **Atlanta GA** | Partner | 126 | $196 | $225 | $265 | $294 | $300 | $312 |
| | Associate | 131 | $176 | $190 | $228 | $223 | $210 | $205 |
| **Baltimore MD** | Partner | 30 | $186 | $210 | $230 | $235 | $226 | $209 |
| | Associate | 17 | $169 | $185 | $200 | $256 | $212 | $196 |
| **Baton Rouge LA** | Partner | 13 | $175 | $179 | $200 | $192 | $189 | $195 |
| **Birmingham AL** | Partner | 40 | $183 | $212 | $215 | $482 | $491 | $445 |
| | Associate | 14 | $180 | $200 | $200 | $197 | $191 | $187 |

Ex. 6, Page 405

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 407 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7    Filed 01/06/26    Page 171 of 265
Page ID #:7374
Page ID #:4543

# Section III: Practice Area Analysis

## Insurance Defense: Litigation Only
*By City*

**2025 - Real Rates for Associate and Partner**                           **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Boise City ID** | Partner | 11 | $231 | $241 | $248 | $268 | $243 | $230 |
| **Boston MA** | Partner | 37 | $220 | $235 | $300 | $329 | $309 | $229 |
| | Associate | 29 | $220 | $240 | $265 | $265 | $288 | $202 |
| **Cape Coral FL** | Partner | 10 | $195 | $205 | $206 | $199 | $203 | $201 |
| **Charleston SC** | Partner | 35 | $165 | $195 | $215 | $191 | $183 | $180 |
| | Associate | 21 | $150 | $174 | $180 | $169 | $162 | $159 |
| **Charleston WV** | Partner | 24 | $175 | $175 | $195 | $184 | $180 | $184 |
| **Charlotte NC** | Partner | 21 | $185 | $198 | $204 | $194 | $206 | $191 |
| | Associate | 21 | $150 | $170 | $175 | $168 | $172 | $167 |
| **Chicago IL** | Partner | 168 | $200 | $237 | $293 | $344 | $349 | $381 |
| | Associate | 102 | $165 | $195 | $234 | $213 | $214 | $209 |
| **Cincinnati OH** | Partner | 23 | $175 | $185 | $204 | $195 | $191 | $190 |

Ex. 6, Page 406

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 408 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-5    Filed 01/06/26    Page 172 of 265
Page ID #:3375
Page ID #:4544

# Section III: Practice Area Analysis

**Insurance Defense: Litigation Only**
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Cleveland OH** | Partner | 44 | $187 | $195 | $213 | $307 | $259 | $222 |
| | Associate | 23 | $176 | $185 | $190 | $184 | $188 | $176 |
| **Columbia SC** | Partner | 27 | $198 | $213 | $215 | $209 | $204 | $195 |
| | Associate | 20 | $175 | $180 | $187 | $186 | $178 | $175 |
| **Columbus OH** | Partner | 13 | $191 | $195 | $195 | $200 | $200 | $197 |
| **Dallas TX** | Partner | 60 | $222 | $250 | $255 | $295 | $294 | $253 |
| | Associate | 43 | $185 | $195 | $230 | $262 | $240 | $203 |
| **Denver CO** | Partner | 43 | $200 | $200 | $253 | $251 | $227 | $213 |
| | Associate | 26 | $160 | $170 | $200 | $188 | $193 | $184 |
| **Des Moines IA** | Partner | 10 | $175 | $205 | $205 | $193 | $189 | $189 |
| **Detroit MI** | Partner | 92 | $174 | $178 | $185 | $185 | $177 | $174 |
| | Associate | 91 | $160 | $162 | $165 | $170 | $164 | $158 |
| **Greenville SC** | Partner | 13 | $195 | $200 | $355 | $457 | $482 | $497 |

Ex. 6, Page 407

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 409 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7376    Filed 01/06/26    Page 173 of 265
Page ID #:4545

# Section III: Practice Area Analysis

## Insurance Defense: Litigation Only
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Harrisburg PA** | Partner | 24 | $194 | $197 | $197 | $197 | $192 | $178 |
| **Hartford CT** | Partner | 23 | $185 | $236 | $601 | $365 | $345 | $320 |
|  | Associate | 19 | $210 | $210 | $324 | $254 | $241 | $232 |
| **Houston TX** | Partner | 43 | $230 | $235 | $283 | $317 | $305 | $286 |
|  | Associate | 40 | $190 | $199 | $234 | $264 | $271 | $215 |
| **Indianapolis IN** | Partner | 28 | $155 | $189 | $205 | $185 | $189 | $184 |
|  | Associate | 17 | $161 | $168 | $179 | $184 | $192 | $208 |
| **Jacksonville FL** | Partner | 19 | $190 | $205 | $210 | $202 | $203 | $197 |
|  | Associate | 11 | $190 | $195 | $195 | $189 | $181 | $185 |
| **Kansas City MO** | Partner | 26 | $185 | $235 | $321 | $256 | $256 | $242 |
| **Knoxville TN** | Partner | 11 | $155 | $185 | $185 | $171 | $171 | $168 |
| **Lafayette LA** | Partner | 10 | $160 | $195 | $204 | $183 | $170 | $196 |
| **Las Vegas NV** | Associate | 36 | $192 | $203 | $231 | $208 | $207 | $190 |

Ex. 6, Page 408

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 410 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7337    Filed 01/06/26    Page 174 of 265
Page ID #:4546

# Section III: Practice Area Analysis

**Insurance Defense:
Litigation Only**
*By City*

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Los Angeles CA** | Partner | 292 | $218 | $255 | $285 | $341 | $331 | $304 |
| | Associate | 220 | $195 | $220 | $245 | $319 | $292 | $239 |
| **Louisville KY** | Partner | 11 | $158 | $168 | $172 | $175 | $172 | $174 |
| **Memphis TN** | Partner | 11 | $158 | $200 | $234 | $214 | $204 | $209 |
| **Miami FL** | Partner | 185 | $190 | $205 | $226 | $454 | $351 | $245 |
| | Associate | 151 | $175 | $181 | $196 | $203 | $193 | $183 |
| **Minneapolis MN** | Partner | 53 | $190 | $200 | $210 | $225 | $229 | $214 |
| | Associate | 31 | $160 | $180 | $185 | $201 | $202 | $191 |
| **Nashville TN** | Partner | 16 | $185 | $186 | $235 | $217 | $195 | $216 |
| | Associate | 12 | $173 | $175 | $178 | $171 | $160 | $164 |
| **New Orleans LA** | Partner | 25 | $165 | $170 | $230 | $204 | $206 | $207 |
| | Associate | 19 | $152 | $160 | $180 | $168 | $173 | $186 |

Ex. 6, Page 409

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 411 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-8    Filed 01/06/26    Page 175 of 265
Page ID #:7337
Page ID #:4547

# Section III: Practice Area Analysis

## Insurance Defense: Litigation Only
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|----------------|------|------|------|
| **New York NY** | Partner | 245 | $169 | $225 | $260 | $293 | $250 | $252 |
|  | Associate | 153 | $155 | $178 | $235 | $303 | $236 | $227 |
| **Omaha NE** | Partner | 14 | $215 | $223 | $318 | $446 | $411 | $446 |
| **Orlando FL** | Partner | 38 | $190 | $205 | $209 | $203 | $203 | $187 |
|  | Associate | 24 | $175 | $189 | $195 | $186 | $177 | $168 |
| **Philadelphia PA** | Partner | 167 | $190 | $208 | $238 | $245 | $229 | $221 |
|  | Associate | 133 | $175 | $190 | $220 | $219 | $201 | $192 |
| **Phoenix AZ** | Partner | 71 | $195 | $219 | $265 | $233 | $227 | $220 |
|  | Associate | 31 | $175 | $210 | $235 | $208 | $195 | $198 |
| **Pittsburgh PA** | Partner | 52 | $176 | $180 | $185 | $185 | $240 | $252 |
|  | Associate | 30 | $160 | $165 | $171 | $170 | $168 | $178 |
| **Portland OR** | Partner | 36 | $219 | $225 | $300 | $257 | $317 | $302 |

Ex. 6, Page 410

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 412 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-79    Filed 01/06/26    Page 176 of 265
Page ID #:4548
Page ID #:7337

# Section III: Practice Area Analysis

**Insurance Defense: Litigation Only**
*By City*

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Raleigh NC** | Partner | 16 | $169 | $200 | $220 | $226 | $219 | $214 |
| | Associate | 20 | $160 | $172 | $182 | $212 | $189 | $176 |
| **Richmond VA** | Partner | 34 | $192 | $211 | $225 | $209 | $250 | $317 |
| | Associate | 21 | $175 | $190 | $220 | $194 | $194 | $191 |
| **Sacramento CA** | Partner | 12 | $210 | $225 | $271 | $252 | $235 | $243 |
| **Salt Lake City UT** | Partner | 32 | $200 | $210 | $250 | $277 | $219 | $272 |
| | Associate | 10 | $159 | $165 | $198 | $183 | $173 | $181 |
| **San Diego CA** | Partner | 48 | $245 | $265 | $300 | $459 | $464 | $496 |
| | Associate | 22 | $170 | $205 | $226 | $214 | $219 | $209 |
| **San Francisco CA** | Partner | 155 | $241 | $265 | $295 | $323 | $321 | $327 |
| | Associate | 73 | $217 | $240 | $255 | $240 | $242 | $234 |
| **Seattle WA** | Partner | 48 | $220 | $250 | $375 | $365 | $405 | $391 |
| | Associate | 29 | $200 | $210 | $260 | $227 | $223 | $232 |

Ex. 6, Page 411

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 413 of 501
Case 2:21-cv-06010-TJH-JC    Document 73880    Filed 01/06/26    Page 177 of 265
Page ID #:4549

# Section III: Practice Area Analysis

## Insurance Defense: Litigation Only
*By City*

**2025 - Real Rates for Associate and Partner**                                          **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|---------------|--------|---------------|------|------|------|
| St. Louis MO | Partner | 47 | $197 | $206 | $224 | $224 | $210 | $199 |
| | Associate | 14 | $187 | $198 | $201 | $192 | $186 | $186 |
| Tampa FL | Partner | 45 | $190 | $206 | $229 | $260 | $267 | $263 |
| | Associate | 41 | $175 | $194 | $260 | $212 | $208 | $216 |
| Tulsa OK | Partner | 11 | $175 | $215 | $250 | $220 | $218 | $209 |
| Washington DC | Partner | 47 | $240 | $292 | $600 | $542 | $565 | $563 |
| | Associate | 28 | $231 | $338 | $773 | $492 | $508 | $515 |

Ex. 6, Page 412

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 414 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-30    Filed 01/06/26    Page 178 of 265
Page ID #:4550

# Section III: Practice Area Analysis

**Insurance Defense:
Litigation Only**
By Matter Type and YOE

**2025 - Real Rates for Partner**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 477 | $190 | $210 | $250 | $262 | $257 | $238 |
| **21 or More Years** | Litigation | 1,085 | $185 | $207 | $250 | $243 | $233 | $224 |

Ex. 6, Page 413

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 415 of 501
Case 2:21-cv-06010-TJH-JC    Document 47-3    Filed 01/06/26    Page 179 of 265
Page ID #:7382
Page ID #:4551

# Section III: Practice Area Analysis

**Insurance Defense: Litigation Only**
By Matter Type and YOE

**2025 - Real Rates for Associate**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Litigation | 56 | $160 | $185 | $253 | $310 | $243 | $193 |
| **3 to Fewer Than 7 Years** | Litigation | 144 | $185 | $197 | $285 | $351 | $302 | $237 |
| **7 or More Years** | Litigation | 184 | $170 | $195 | $250 | $274 | $245 | $224 |

Ex. 6, Page 414

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 416 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7383    Filed 01/06/26    Page 180 of 265
Page ID #:4552

# Section III: Practice Area Analysis

**Insurance Defense:
Litigation Only**
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 1,157 | $177 | $200 | $240 | $244 | $236 | $231 |
| | | Associate | 778 | $161 | $176 | $210 | $189 | $182 | $176 |
| **51-200 Lawyers** | **Litigation** | Partner | 777 | $195 | $206 | $240 | $235 | $232 | $224 |
| | | Associate | 525 | $175 | $185 | $200 | $195 | $190 | $185 |
| **201-500 Lawyers** | **Litigation** | Partner | 377 | $225 | $260 | $295 | $446 | $391 | $372 |
| | | Associate | 173 | $185 | $217 | $270 | $251 | $240 | $226 |
| **501-1,000 Lawyers** | **Litigation** | Partner | 67 | $268 | $278 | $545 | $541 | $444 | $392 |
| | | Associate | 57 | $231 | $625 | $957 | $600 | $509 | $346 |
| **More Than 1,000 Lawyers** | **Litigation** | Partner | 34 | $1,181 | $1,525 | $1,704 | $1,417 | $1,268 | $1,039 |

Ex. 6, Page 415

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 417 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3384    Filed 01/06/26    Page 181 of 265
Page ID #:4553

# Section III: Practice Area Analysis

## Intellectual Property: Other
*By City*

**2025 - Real Rates for Associate and Partner**            **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Chicago IL** | Partner | 12 | $460 | $550 | $846 | $692 | $733 | $712 |
| **New York NY** | Partner | 11 | $374 | $675 | $750 | $676 | $714 | $658 |
| **Washington DC** | Partner | 32 | $690 | $926 | $1,248 | $977 | $982 | $1,049 |
| | Associate | 18 | $588 | $961 | $1,138 | $862 | $802 | $791 |

wolterskluwer.com

Ex. 6, Page 416

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 418 of 501
Case 2:21-cv-06010-TJH-JC    Document 117-3385 Filed 01/06/26    Page 182 of 265
Page ID #:4554

# Section III: Practice Area Analysis

## Intellectual Property: Other
By Matter Type and YOE

**2025 - Real Rates for Partner**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 15 | $629 | $656 | $1,240 | $904 | $795 | $755 |
| | Non-Litigation | 14 | $355 | $508 | $761 | $569 | $610 | $585 |
| **21 or More Years** | Litigation | 12 | $656 | $949 | $1,519 | $1,106 | $868 | $821 |
| | Non-Litigation | 18 | $460 | $664 | $754 | $608 | $617 | $605 |

Ex. 6, Page 417

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 419 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3386  Filed 01/06/26    Page 183 of 265
Page ID #:4555

# Section III: Practice Area Analysis

## Intellectual Property: Other
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**　　　　　　　　　**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|-----------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **50 Lawyers or Fewer** | **Non-Litigation** | Partner | 21 | $318 | $370 | $460 | $400 | $374 | $383 |
| **501-1,000 Lawyers** | **Litigation** | Partner | 21 | $656 | $1,255 | $1,460 | $1,198 | $1,188 | $1,056 |
| | **Non-Litigation** | Partner | 14 | $664 | $776 | $863 | $753 | $756 | $694 |

wolterskluwer.com

Ex. 6, Page 418

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 420 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-6887 Filed 01/06/26    Page 184 of 265
Page ID #:4556

# Section III: Practice Area Analysis

## Intellectual Property: Patents
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 14 | $840 | $916 | $985 | $892 | $845 | $807 |
|  | Associate | 10 | $527 | $619 | $723 | $611 | $626 | $607 |
| **Austin TX** | Partner | 13 | $394 | $750 | $820 | $643 | $624 | $645 |
| **Boston MA** | Partner | 31 | $643 | $774 | $904 | $800 | $799 | $730 |
|  | Associate | 18 | $454 | $535 | $689 | $577 | $557 | $548 |
| **Chicago IL** | Partner | 26 | $601 | $704 | $1,135 | $875 | $774 | $698 |
|  | Associate | 15 | $506 | $660 | $800 | $652 | $618 | $497 |
| **Cleveland OH** | Partner | 12 | $238 | $272 | $326 | $436 | $490 | $560 |
|  | Associate | 18 | $200 | $200 | $200 | $200 | $201 | $210 |

Ex. 6, Page 419

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 421 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-33    Filed 01/06/26    Page 185 of 265
Page ID #:4557

# Section III: Practice Area Analysis

**Intellectual Property: Patents**
*By City*

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Dallas TX** | Partner | 10 | $528 | $820 | $1,048 | $889 | $949 | $921 |
| **Houston TX** | Partner | 15 | $325 | $350 | $845 | $605 | $580 | $623 |
| | Associate | 31 | $192 | $224 | $333 | $312 | $281 | $309 |
| **Los Angeles CA** | Partner | 23 | $904 | $1,305 | $1,427 | $1,195 | $1,042 | $910 |
| | Associate | 32 | $670 | $947 | $1,132 | $914 | $828 | $756 |
| **Minneapolis MN** | Associate | 10 | $312 | $386 | $421 | $395 | $365 | $328 |
| **New York NY** | Partner | 39 | $551 | $888 | $1,424 | $993 | $986 | $848 |
| | Associate | 63 | $650 | $855 | $1,126 | $915 | $825 | $706 |
| **Philadelphia PA** | Partner | 22 | $741 | $935 | $1,022 | $949 | $893 | $784 |
| | Associate | 23 | $557 | $663 | $815 | $692 | $649 | $495 |
| **San Francisco CA** | Partner | 26 | $970 | $1,280 | $1,475 | $1,304 | $1,224 | $1,055 |
| | Associate | 23 | $587 | $846 | $978 | $794 | $775 | $706 |

Ex. 6, Page 420

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 422 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-6389 Filed 01/06/26    Page 186 of 265
Page ID #:4558

# Section III: Practice Area Analysis

**Intellectual Property: Patents**
By City

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **San Jose CA** | Associate | 11 | $600 | $880 | $999 | $845 | $790 | $866 |
| **Washington DC** | Partner | 94 | $629 | $1,022 | $1,390 | $1,020 | $911 | $862 |
| | Associate | 77 | $397 | $635 | $991 | $696 | $599 | $564 |

Ex. 6, Page 421

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 423 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3690 Filed 01/06/26    Page 187 of 265
Page ID #:4559

# Section III: Practice Area Analysis

## Intellectual Property: Patents
By Matter Type and YOE

**2025 - Real Rates for Partner**                                              **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 77 | $650 | $1,085 | $1,375 | $1,057 | $944 | $835 |
| | Non-Litigation | 38 | $465 | $601 | $853 | $650 | $726 | $696 |
| **21 or More Years** | Litigation | 87 | $699 | $1,051 | $1,475 | $1,109 | $1,016 | $953 |
| | Non-Litigation | 79 | $471 | $710 | $991 | $759 | $733 | $697 |

Ex. 6, Page 422

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 424 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3091  Filed 01/06/26    Page 188 of 265
Page ID #:4560

# Section III: Practice Area Analysis

## Intellectual Property: Patents
By Matter Type and YOE

**2025 - Real Rates for Associate**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **3 to Fewer Than 7 Years** | Litigation | 36 | $546 | $836 | $1,146 | $850 | $777 | $649 |
| | Non-Litigation | 12 | $439 | $661 | $878 | $672 | $561 | $454 |
| **7 or More Years** | Litigation | 41 | $650 | $983 | $1,200 | $939 | $881 | $744 |
| | Non-Litigation | 27 | $364 | $538 | $666 | $594 | $520 | $526 |

Ex. 6, Page 423

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 425 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-7    Filed 01/06/26    Page 189 of 265
Page ID #:4561

# Section III: Practice Area Analysis

## Intellectual Property: Patents
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|-----------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 22 | $514 | $589 | $650 | $581 | $575 | $595 |
| | | Associate | 15 | $411 | $547 | $643 | $518 | $482 | $562 |
| | **Non-Litigation** | Partner | 37 | $295 | $350 | $528 | $409 | $407 | $455 |
| | | Associate | 42 | $200 | $285 | $325 | $277 | $275 | $323 |
| **51-200 Lawyers** | **Litigation** | Partner | 48 | $600 | $671 | $928 | $803 | $759 | $689 |
| | | Associate | 26 | $417 | $591 | $872 | $672 | $568 | $460 |
| | **Non-Litigation** | Partner | 41 | $500 | $600 | $710 | $628 | $616 | $606 |
| | | Associate | 24 | $384 | $427 | $553 | $477 | $455 | $416 |

Ex. 6, Page 424

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 426 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-3393 Filed 01/06/26    Page 190 of 265
Page ID #:4562

# Section III: Practice Area Analysis

## Intellectual Property: Patents
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **201-500 Lawyers** | **Litigation** | Partner | 36 | $819 | $1,192 | $1,403 | $1,126 | $1,006 | $910 |
| | | Associate | 33 | $609 | $893 | $1,069 | $897 | $757 | $684 |
| | **Non-Litigation** | Partner | 48 | $550 | $721 | $840 | $707 | $721 | $668 |
| | | Associate | 23 | $458 | $538 | $606 | $540 | $496 | $472 |
| **501-1,000 Lawyers** | **Litigation** | Partner | 51 | $998 | $1,375 | $1,503 | $1,327 | $1,166 | $979 |
| | | Associate | 59 | $786 | $1,020 | $1,288 | $1,024 | $959 | $741 |
| | **Non-Litigation** | Partner | 24 | $893 | $995 | $1,115 | $1,005 | $1,045 | $943 |
| | | Associate | 17 | $500 | $631 | $911 | $685 | $666 | $643 |
| **More Than 1,000 Lawyers** | **Litigation** | Partner | 48 | $1,085 | $1,360 | $1,552 | $1,355 | $1,258 | $1,095 |
| | | Associate | 46 | $670 | $879 | $1,060 | $895 | $846 | $779 |
| | **Non-Litigation** | Partner | 24 | $629 | $978 | $1,279 | $976 | $1,014 | $918 |
| | | Associate | 19 | $528 | $687 | $1,051 | $819 | $642 | $626 |

Ex. 6, Page 425

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 427 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7384    Filed 01/06/26    Page 191 of 265
Page ID #:4563

# Section III: Practice Area Analysis

## Intellectual Property: Trademarks
*By City*

**2025 - Real Rates for Associate and Partner**                     **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Chicago IL** | Partner | 12 | $521 | $695 | $955 | $721 | $648 | $689 |
| **Washington DC** | Partner | 20 | $611 | $710 | $921 | $802 | $770 | $757 |

Ex. 6, Page 426

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 428 of 501
Case 2:21-cv-06010-TJH-JC     Document 173305     Filed 01/06/26     Page 192 of 265
Page ID #:4564

# Section III: Practice Area Analysis

### Intellectual Property: Trademarks
By Matter Type and YOE

**2025 - Real Rates for Partner**                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **21 or More Years** | Non-Litigation | 30 | $595 | $678 | $848 | $715 | $692 | $680 |

Ex. 6, Page 427

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 429 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-30    Filed 01/06/26    Page 193 of 265
Page ID #:4565

# Section III: Practice Area Analysis

## Intellectual Property: Trademarks
By Matter Type and Firm Size

**2025 - Real Rates for Associate**

**Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **50 Lawyers or Fewer** | **Non-Litigation** | Partner | 15 | $379 | $446 | $575 | $475 | $498 | $474 |
| **201-500 Lawyers** | **Non-Litigation** | Partner | 12 | $592 | $700 | $736 | $674 | $712 | $681 |
| **501-1,000 Lawyers** | **Non-Litigation** | Partner | 11 | $664 | $695 | $1,062 | $860 | $807 | $765 |
| **More Than 1,000 Lawyers** | **Non-Litigation** | Partner | 13 | $825 | $1,008 | $1,275 | $1,010 | $1,090 | $1,033 |

Ex. 6, Page 428

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 430 of 501
Case 2:21-cv-06010-TJH-JC     Document #7397     Filed 01/06/26     Page 194 of 265
Page ID #:4566

# Section III: Practice Area Analysis

## Real Estate
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Atlanta GA** | Partner | 36 | $290 | $358 | $498 | $434 | $436 | $441 |
| | Associate | 26 | $265 | $300 | $441 | $354 | $338 | $373 |
| **Baltimore MD** | Partner | 12 | $300 | $300 | $408 | $393 | $380 | $430 |
| **Birmingham AL** | Partner | 16 | $315 | $360 | $375 | $358 | $364 | $315 |
| | Associate | 15 | $261 | $285 | $285 | $272 | $264 | $259 |
| **Boston MA** | Partner | 20 | $350 | $610 | $922 | $653 | $701 | $591 |
| | Associate | 24 | $260 | $288 | $419 | $391 | $438 | $378 |
| **Chicago IL** | Partner | 42 | $295 | $400 | $730 | $518 | $573 | $599 |
| | Associate | 25 | $225 | $270 | $508 | $373 | $406 | $414 |

Ex. 6, Page 429

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 431 of 501
Case 2:21-cv-06010-TJH-JC   Document 139-7   Filed 01/06/26   Page 195 of 265
Page ID #:7398
Page ID #:4567

# Section III: Practice Area Analysis

## Real Estate
By City

**2025 - Real Rates for Associate and Partner**                              **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Cincinnati OH** | Partner | 10 | $537 | $589 | $743 | $610 | $479 | $463 |
| **Cleveland OH** | Partner | 17 | $283 | $496 | $565 | $450 | $421 | $444 |
| | Associate | 18 | $280 | $325 | $365 | $331 | $321 | $280 |
| **Dallas TX** | Partner | 22 | $300 | $525 | $625 | $515 | $541 | $541 |
| | Associate | 14 | $300 | $357 | $426 | $368 | $400 | $352 |
| **Denver CO** | Partner | 16 | $360 | $505 | $626 | $524 | $610 | $554 |
| | Associate | 13 | $248 | $340 | $354 | $350 | $390 | $339 |
| **Houston TX** | Partner | 16 | $300 | $300 | $685 | $464 | $540 | $479 |
| **Indianapolis IN** | Partner | 13 | $274 | $324 | $513 | $417 | $303 | $367 |
| **Kansas City MO** | Partner | 13 | $300 | $400 | $550 | $450 | $476 | $450 |
| | Associate | 15 | $258 | $260 | $380 | $317 | $327 | $305 |
| **Los Angeles CA** | Partner | 86 | $355 | $401 | $875 | $587 | $537 | $546 |
| | Associate | 49 | $268 | $608 | $811 | $557 | $525 | $487 |

Ex. 6, Page 430

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 432 of 501
Case 2:21-cv-06010-TJH-JC   Document 73-9   Filed 01/06/26   Page 196 of 265
Page ID #:4568
Page ID #:7399

# Section III: Practice Area Analysis

## Real Estate
By City

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **Miami FL** | Partner | 31 | $275 | $426 | $685 | $463 | $445 | $504 |
| | Associate | 22 | $203 | $247 | $351 | $320 | $301 | $346 |
| **Minneapolis MN** | Partner | 11 | $300 | $315 | $350 | $381 | $449 | $455 |
| **New York NY** | Partner | 101 | $356 | $470 | $731 | $610 | $549 | $568 |
| | Associate | 70 | $297 | $350 | $580 | $481 | $418 | $441 |
| **Orlando FL** | Partner | 11 | $290 | $400 | $518 | $431 | $431 | $460 |
| **Philadelphia PA** | Partner | 57 | $382 | $438 | $821 | $636 | $583 | $507 |
| | Associate | 40 | $325 | $345 | $679 | $477 | $419 | $429 |
| **San Diego CA** | Partner | 23 | $266 | $300 | $450 | $415 | $415 | $373 |
| | Associate | 16 | $235 | $250 | $260 | $277 | $273 | $254 |
| **San Francisco CA** | Partner | 34 | $341 | $401 | $825 | $588 | $587 | $582 |
| | Associate | 14 | $265 | $330 | $453 | $370 | $481 | $492 |
| **Seattle WA** | Partner | 14 | $404 | $610 | $803 | $632 | $519 | $516 |

Ex. 6, Page 431

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 433 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-3    Filed 01/06/26    Page 197 of 265
Page ID #:7340
Page ID #:4569

# Section III: Practice Area Analysis

**Real Estate**
By City

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| City | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|------|---|----------------|--------|----------------|------|------|------|
| **St. Louis MO** | Partner | 18 | $310 | $370 | $744 | $516 | $462 | $419 |
| **Washington DC** | Partner | 32 | $400 | $450 | $650 | $541 | $591 | $593 |
|  | Associate | 20 | $250 | $335 | $460 | $386 | $470 | $482 |

Ex. 6, Page 432

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 434 of 501
Case 2:21-cv-06010-TJH-JC     Document 1-7     Filed 01/06/26     Page 198 of 265
Page ID #:4570
Page ID #:3401

# Section III: Practice Area Analysis

## Real Estate
By Matter Type and YOE

**2025 - Real Rates for Partner**                                    **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 21 Years** | Litigation | 46 | $303 | $365 | $429 | $403 | $392 | $394 |
| | Non-Litigation | 120 | $302 | $359 | $473 | $441 | $428 | $418 |
| **21 or More Years** | Litigation | 122 | $295 | $361 | $514 | $444 | $475 | $475 |
| | Non-Litigation | 331 | $311 | $400 | $595 | $497 | $497 | $493 |

Ex. 6, Page 433

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 435 of 501
Case 2:21-cv-06010-TJH-JC     Document #7340-2     Filed 01/06/26     Page 199 of 265
Page ID #:4571

# Section III: Practice Area Analysis

## Real Estate
By Matter Type and YOE

**2025 - Real Rates for Associate**                          **Trend Analysis - Mean**

| Years of Experience | Matter Type | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **Fewer Than 3 Years** | Non-Litigation | 29 | $228 | $285 | $325 | $291 | $320 | $289 |
| **3 to Fewer Than 7 Years** | Litigation | 15 | $250 | $320 | $343 | $351 | $317 | $330 |
| | Non-Litigation | 50 | $245 | $315 | $350 | $361 | $355 | $355 |
| **7 or More Years** | Litigation | 18 | $265 | $303 | $386 | $379 | $347 | $307 |
| | Non-Litigation | 72 | $250 | $285 | $393 | $374 | $361 | $367 |

Ex. 6, Page 434

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 436 of 501
Case 2:21-cv-06010-TJH-JC     Document 173403     Filed 01/06/26     Page 200 of 265
Page ID #:4572

# Section III: Practice Area Analysis

## Real Estate
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|-----------|-------------|------|---|----------------|--------|----------------|------|------|------|
| **50 Lawyers or Fewer** | **Litigation** | Partner | 91 | $275 | $310 | $395 | $342 | $334 | $328 |
| | | Associate | 43 | $210 | $250 | $273 | $263 | $258 | $254 |
| | **Non-Litigation** | Partner | 232 | $275 | $324 | $410 | $360 | $345 | $348 |
| | | Associate | 141 | $222 | $250 | $300 | $268 | $268 | $258 |
| **51-200 Lawyers** | **Litigation** | Partner | 74 | $300 | $377 | $525 | $444 | $440 | $400 |
| | | Associate | 32 | $205 | $275 | $350 | $299 | $270 | $277 |
| | **Non-Litigation** | Partner | 159 | $300 | $375 | $549 | $472 | $476 | $439 |
| | | Associate | 79 | $220 | $260 | $325 | $286 | $300 | $297 |

Ex. 6, Page 435

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 437 of 501
Case 2:21-cv-06010-TJH-JC    Document 73404    Filed 01/06/26    Page 201 of 265
Page ID #:7340
Page ID #:4573

# Section III: Practice Area Analysis

**Real Estate**
By Matter Type and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **201-500 Lawyers** | **Litigation** | Partner | 44 | $361 | $425 | $650 | $547 | $546 | $539 |
| | | Associate | 30 | $313 | $338 | $425 | $399 | $380 | $382 |
| | **Non-Litigation** | Partner | 147 | $352 | $425 | $582 | $515 | $516 | $485 |
| | | Associate | 121 | $285 | $325 | $365 | $364 | $340 | $336 |
| **501-1,000 Lawyers** | **Litigation** | Partner | 15 | $444 | $614 | $1,005 | $732 | $801 | $883 |
| | | Associate | 14 | $401 | $621 | $746 | $595 | $625 | $669 |
| | **Non-Litigation** | Partner | 58 | $559 | $692 | $944 | $775 | $720 | $679 |
| | | Associate | 47 | $345 | $628 | $802 | $613 | $509 | $481 |
| **More Than 1,000 Lawyers** | **Non-Litigation** | Partner | 19 | $850 | $875 | $1,080 | $950 | $945 | $894 |

Ex. 6, Page 436

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 438 of 501
Page ID #:3405
Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 202 of 265
Page ID #:4372

# Section IV: In-Depth Analysis for Select US Cities

All data and analysis based on data collected thru Q2 2025



Ex. 6, Page 437

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 439 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-6    Filed 01/06/26    Page 203 of 265
Page ID #:4575

# Section IV: In-Depth Analysis for Select US Cities

**Boston, MA**
By Detailed Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Loans and Financing** | **501-1,000 Lawyers** | Associate | 15 | $623 | $747 | $1,016 | $857 | $926 | $757 |
| **Insurance Defense: Other** | **50 Lawyers or Fewer** | Partner | 21 | $215 | $235 | $310 | $274 | $250 | $224 |
| | | Associate | 23 | $220 | $250 | $265 | $244 | $214 | $177 |
| | **51-200 Lawyers** | Partner | 35 | $220 | $227 | $237 | $368 | $372 | $300 |
| | | Associate | 17 | $193 | $200 | $205 | $200 | $253 | $255 |

Ex. 6, Page 438

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS　　Document 139-7　　Filed 07/02/26　　Page 440 of 501
Case 2:21-cv-06010-TJH-JC　　Document #7340　　Filed 01/06/26　　Page 204 of 265
Page ID #:4576

# Section IV: In-Depth Analysis for Select US Cities

## Chicago, IL
By Detailed Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**　　　　　　　　　　　　**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | **201-500 Lawyers** | Partner | 19 | $566 | $753 | $1,355 | $955 | $879 | $768 |
| | **501-1,000 Lawyers** | Partner | 16 | $917 | $1,088 | $1,130 | $1,135 | $979 | $1,039 |
| | | Associate | 24 | $609 | $676 | $813 | $692 | $690 | $596 |
| | **More Than 1,000 Lawyers** | Partner | 11 | $1,064 | $1,511 | $1,870 | $1,591 | $1,427 | $1,159 |
| **Corporate: Other** | **201-500 Lawyers** | Partner | 48 | $1,056 | $1,342 | $1,458 | $1,283 | $1,160 | $1,012 |
| | **501-1,000 Lawyers** | Partner | 13 | $833 | $1,022 | $1,424 | $1,120 | $1,054 | $967 |
| | **More Than 1,000 Lawyers** | Partner | 39 | $846 | $1,228 | $1,488 | $1,194 | $1,161 | $1,123 |
| | | Associate | 26 | $535 | $633 | $880 | $720 | $728 | $712 |

Ex. 6, Page 439

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 441 of 501
Case 2:21-cv-06010-TJH-JC    Document 73408    Filed 01/06/26    Page 205 of 265
Page ID #:4577

# Section IV: In-Depth Analysis for Select US Cities

## Chicago, IL
By Detailed Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | More Than 1,000 Lawyers | Partner | 27 | $698 | $999 | $1,334 | $1,062 | $1,189 | $1,053 |
| | | Associate | 24 | $443 | $578 | $835 | $670 | $776 | $811 |
| Corporate: Tax | More Than 1,000 Lawyers | Partner | 11 | $1,105 | $1,475 | $1,538 | $1,385 | $1,187 | $1,138 |
| | | Associate | 13 | $378 | $587 | $716 | $600 | $663 | $717 |
| Employment and Labor: Other | 501-1,000 Lawyers | Partner | 14 | $788 | $815 | $904 | $772 | $651 | $633 |
| Finance and Securities: Loans and Financing | 201-500 Lawyers | Partner | 17 | $699 | $988 | $1,328 | $1,024 | $973 | $879 |
| | More Than 1,000 Lawyers | Partner | 36 | $1,250 | $1,555 | $1,740 | $1,532 | $1,471 | $1,354 |
| Insurance Defense: Auto and Transportation | 50 Lawyers or Fewer | Partner | 17 | $170 | $170 | $188 | $193 | $194 | $204 |

Ex. 6, Page 440

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 442 of 501
Case 2:21-cv-06010-TJH-JC    Document 73409    Filed 01/06/26    Page 206 of 265
Page ID #:4578

# Section IV: In-Depth Analysis for Select US Cities

## Chicago, IL
By Detailed Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Defense: Other | 50 Lawyers or Fewer | Partner | 81 | $252 | $305 | $375 | $318 | $297 | $264 |
| | | Associate | 49 | $205 | $250 | $275 | $243 | $229 | $209 |
| | 51-200 Lawyers | Partner | 38 | $226 | $240 | $270 | $248 | $250 | $241 |
| | | Associate | 27 | $195 | $205 | $210 | $198 | $198 | $187 |
| | 201-500 Lawyers | Partner | 21 | $267 | $292 | $300 | $527 | $603 | $698 |
| Insurance Defense: Premises | 51-200 Lawyers | Partner | 18 | $231 | $238 | $300 | $259 | $257 | $231 |
| Insurance Defense: Professional Liability | 50 Lawyers or Fewer | Partner | 16 | $245 | $255 | $275 | $264 | $250 | $238 |
| Insurance Defense: Property Damage | 50 Lawyers or Fewer | Partner | 23 | $265 | $305 | $436 | $339 | $318 | $301 |
| | | Associate | 19 | $225 | $250 | $295 | $256 | $254 | $251 |
| Insurance Policies and Coverage: Policy Coverage Dispute | 50 Lawyers or Fewer | Partner | 12 | $181 | $420 | $435 | $339 | $307 | $369 |

Ex. 6, Page 441

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 443 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-10    Filed 01/06/26    Page 207 of 265
Page ID #:7340
Page ID #:4579

# Section IV: In-Depth Analysis for Select US Cities

## Chicago, IL
By Detailed Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Intellectual Property: Patents** | **51-200 Lawyers** | Partner | 12 | $524 | $607 | $686 | $596 | $587 | $546 |
| | **More Than 1,000 Lawyers** | Partner | 11 | $1,049 | $1,375 | $1,440 | $1,228 | $1,044 | $991 |

Ex. 6, Page 442

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 444 of 501
Case 2:21-cv-06010-TJH-JC    Document #7341    Filed 01/06/26    Page 208 of 265
Page ID #:4580

# Section IV: In-Depth Analysis for Select US Cities

## Los Angeles, CA
By Detailed Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | **50 Lawyers or Fewer** | Partner | 13 | $355 | $600 | $825 | $650 | $670 | $629 |
| | **More Than 1,000 Lawyers** | Partner | 12 | $1,367 | $1,440 | $1,699 | $1,527 | $1,415 | $1,289 |
| **Corporate: Other** | **201-500 Lawyers** | Partner | 18 | $695 | $1,024 | $1,233 | $953 | $916 | $803 |
| | | Associate | 10 | $595 | $718 | $846 | $712 | $679 | $624 |
| | **501-1,000 Lawyers** | Partner | 29 | $870 | $1,297 | $1,586 | $1,328 | $1,280 | $1,091 |
| | | Associate | 24 | $610 | $837 | $1,039 | $862 | $888 | $796 |
| | **More Than 1,000 Lawyers** | Partner | 35 | $1,273 | $1,615 | $1,871 | $1,645 | $1,529 | $1,362 |
| | | Associate | 27 | $870 | $1,065 | $1,251 | $1,057 | $990 | $892 |

Ex. 6, Page 443

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 445 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-12    Filed 01/06/26    Page 209 of 265
Page ID #:4581

# Section IV: In-Depth Analysis for Select US Cities

## Los Angeles, CA
By Detailed Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | 501-1,000 Lawyers | Associate | 12 | $735 | $848 | $901 | $854 | $867 | $811 |
| | More Than 1,000 Lawyers | Associate | 11 | $673 | $780 | $1,031 | $857 | $805 | $802 |
| Employment and Labor: Other | More Than 1,000 Lawyers | Partner | 10 | $1,245 | $1,317 | $1,479 | $1,361 | $1,136 | $1,076 |
| | | Associate | 10 | $566 | $675 | $994 | $807 | $754 | $708 |
| Finance and Securities: Loans and Financing | 501-1,000 Lawyers | Partner | 17 | $879 | $1,068 | $1,301 | $1,201 | $1,157 | $1,063 |
| Insurance Defense: Auto and Transportation | 50 Lawyers or Fewer | Partner | 43 | $240 | $255 | $296 | $315 | $295 | $308 |
| | 51-200 Lawyers | Partner | 10 | $240 | $265 | $273 | $258 | $264 | $271 |
| | | Associate | 15 | $183 | $195 | $236 | $205 | $217 | $214 |
| Intellectual Property: Patents | 501-1,000 Lawyers | Associate | 15 | $871 | $1,020 | $1,256 | $1,028 | $953 | $912 |
| | More Than 1,000 Lawyers | Associate | 11 | $731 | $1,020 | $1,138 | $974 | $969 | $800 |

Ex. 6, Page 444

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 446 of 501
Case 2:21-cv-06010-TJH-JC    Document #7341.3    Filed 01/06/26    Page 210 of 265
Page ID #:4582

# Section IV: In-Depth Analysis for Select US Cities

## Los Angeles, CA
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Insurance Defense: Other** | **50 Lawyers or Fewer** | Partner | 72 | $225 | $236 | $280 | $260 | $279 | $270 |
| | | Associate | 53 | $194 | $230 | $245 | $222 | $214 | $209 |
| | **51-200 Lawyers** | Partner | 36 | $240 | $275 | $320 | $283 | $312 | $263 |
| | | Associate | 39 | $196 | $225 | $245 | $228 | $217 | $202 |
| | **201-500 Lawyers** | Partner | 38 | $240 | $285 | $320 | $392 | $378 | $387 |

Ex. 6, Page 445

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 447 of 501
Case 2:21-cv-06010-TJH-JC    Document #73414    Filed 01/06/26    Page 211 of 265
Page ID #:4583

# Section IV: In-Depth Analysis for Select US Cities

## New York, NY
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | **201-500 Lawyers** | Partner | 11 | $638 | $690 | $930 | $759 | $791 | $815 |
| | **501-1,000 Lawyers** | Partner | 22 | $1,124 | $1,458 | $2,025 | $1,607 | $1,737 | $1,712 |
| | | Associate | 16 | $868 | $1,033 | $1,403 | $1,098 | $1,148 | $981 |
| | **More Than 1,000 Lawyers** | Partner | 17 | $1,320 | $1,525 | $1,714 | $1,536 | $1,516 | $1,474 |
| | | Associate | 23 | $918 | $988 | $1,199 | $1,048 | $988 | $903 |
| **Corporate: Corporate Development** | **501-1,000 Lawyers** | Partner | 10 | $1,929 | $1,979 | $2,695 | $2,157 | $1,450 | $1,665 |
| **Corporate: Governance** | **501-1,000 Lawyers** | Partner | 16 | $1,924 | $2,029 | $2,305 | $2,055 | $1,886 | $1,816 |
| | | Associate | 26 | $810 | $1,039 | $1,278 | $1,042 | $963 | $932 |

Ex. 6, Page 446

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 448 of 501
Case 2:21-cv-06010-TJH-JC   Document 73-15   Filed 01/06/26   Page 212 of 265
Page ID #:4584

# Section IV: In-Depth Analysis for Select US Cities

## New York, NY
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Mergers, Acquisitions and Divestitures | 501-1,000 Lawyers | Associate | 50 | $874 | $1,267 | $1,641 | $1,272 | $1,129 | $1,010 |
| | More Than 1,000 Lawyers | Partner | 39 | $1,760 | $2,200 | $2,285 | $2,056 | $1,835 | $1,718 |
| | | Associate | 50 | $1,026 | $1,203 | $1,496 | $1,243 | $1,158 | $1,034 |
| Corporate: Other | 50 Lawyers or Fewer | Partner | 19 | $320 | $450 | $678 | $504 | $479 | $511 |
| | 201-500 Lawyers | Partner | 31 | $853 | $1,198 | $1,587 | $1,252 | $1,204 | $1,051 |
| | | Associate | 23 | $437 | $660 | $859 | $709 | $747 | $637 |
| | 501-1,000 Lawyers | Partner | 146 | $1,635 | $1,914 | $2,346 | $1,923 | $1,720 | $1,540 |
| | | Associate | 221 | $923 | $1,100 | $1,471 | $1,184 | $1,104 | $951 |
| | More Than 1,000 Lawyers | Partner | 35 | $1,224 | $1,579 | $1,906 | $1,640 | $1,582 | $1,530 |
| | | Associate | 46 | $741 | $930 | $1,161 | $968 | $986 | $913 |
| Corporate: Tax | More Than 1,000 Lawyers | Partner | 20 | $1,076 | $1,558 | $1,940 | $1,568 | $1,719 | $1,461 |

Ex. 6, Page 447

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 449 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-16    Filed 01/06/26    Page 213 of 265
Page ID #:4585

# Section IV: In-Depth Analysis for Select US Cities

**New York, NY**
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Regulatory and Compliance** | **501-1,000 Lawyers** | Partner | 35 | $1,209 | $1,901 | $2,527 | $1,833 | $1,666 | $1,511 |
| | | Associate | 39 | $645 | $1,143 | $1,539 | $1,150 | $1,069 | $854 |
| | **More Than 1,000 Lawyers** | Partner | 20 | $1,157 | $1,381 | $1,781 | $1,441 | $1,480 | $1,323 |
| | | Associate | 25 | $585 | $823 | $1,130 | $866 | $850 | $813 |
| **Employment and Labor: Other** | **51-200 Lawyers** | Partner | 13 | $815 | $976 | $1,250 | $914 | $856 | $863 |
| | **201-500 Lawyers** | Partner | 37 | $482 | $736 | $1,191 | $798 | $843 | $1,160 |
| | | Associate | 55 | $423 | $476 | $535 | $495 | $575 | $785 |
| | **501-1,000 Lawyers** | Partner | 47 | $535 | $730 | $1,073 | $875 | $773 | $748 |
| | | Associate | 21 | $379 | $400 | $525 | $599 | $566 | $521 |
| | **More Than 1,000 Lawyers** | Partner | 16 | $603 | $850 | $1,029 | $931 | $1,165 | $1,152 |

Ex. 6, Page 448

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 450 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-17    Filed 01/06/26    Page 214 of 265
Page ID #:4586

# Section IV: In-Depth Analysis for Select US Cities

## New York, NY
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**   **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Environmental | 51-200 Lawyers | Partner | 11 | $378 | $441 | $547 | $465 | $464 | $467 |
| | 201-500 Lawyers | Partner | 14 | $644 | $660 | $696 | $674 | $663 | $667 |
| Finance and Securities: Debt/Equity Offerings | 501-1,000 Lawyers | Partner | 15 | $1,171 | $1,536 | $2,373 | $1,725 | $1,356 | $1,300 |
| | | Associate | 15 | $724 | $1,142 | $1,411 | $1,137 | $879 | $867 |
| | More Than 1,000 Lawyers | Partner | 13 | $1,228 | $1,280 | $1,945 | $1,504 | $1,486 | $974 |
| | | Associate | 17 | $608 | $716 | $799 | $794 | $866 | $752 |
| Finance and Securities: Investments and Other Financial Instruments | 501-1,000 Lawyers | Partner | 31 | $1,331 | $1,550 | $1,769 | $1,536 | $1,639 | $1,341 |
| | | Associate | 49 | $723 | $945 | $995 | $890 | $938 | $807 |
| | More Than 1,000 Lawyers | Partner | 11 | $1,352 | $1,495 | $1,700 | $1,537 | $1,441 | $1,419 |

Ex. 6, Page 449

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 451 of 501
Case 2:21-cv-06010-TJH-JC     Document 173-18     Filed 01/06/26     Page 215 of 265
Page ID #:3418
Page ID #:4587

# Section IV: In-Depth Analysis for Select US Cities

**New York, NY**
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Finance and Securities: Loans and Financing** | **51-200 Lawyers** | Partner | 12 | $624 | $940 | $1,274 | $997 | $918 | $888 |
| | **201-500 Lawyers** | Partner | 48 | $1,136 | $1,759 | $1,975 | $1,573 | $1,569 | $1,418 |
| | | Associate | 79 | $820 | $948 | $1,200 | $964 | $953 | $843 |
| | **501-1,000 Lawyers** | Partner | 52 | $1,302 | $1,702 | $2,258 | $1,710 | $1,609 | $1,492 |
| | | Associate | 71 | $807 | $1,193 | $1,391 | $1,115 | $1,015 | $930 |
| | **More Than 1,000 Lawyers** | Partner | 37 | $1,604 | $2,046 | $2,206 | $1,960 | $1,751 | $1,614 |
| | | Associate | 34 | $912 | $1,159 | $1,347 | $1,149 | $1,167 | $1,083 |
| **Finance and Securities: SEC Filings and Financial Reporting** | **501-1,000 Lawyers** | Partner | 17 | $1,943 | $2,218 | $2,360 | $2,123 | $1,987 | $1,766 |
| | | Associate | 21 | $991 | $1,231 | $1,669 | $1,270 | $1,085 | $1,062 |

Ex. 6, Page 450

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 452 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-19    Filed 01/06/26    Page 216 of 265
Page ID #:7341
Page ID #:4588

# Section IV: In-Depth Analysis for Select US Cities

**New York, NY**
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Insurance Defense: Auto and Transportation** | **50 Lawyers or Fewer** | Partner | 66 | $140 | $155 | $169 | $203 | $184 | $208 |
| | | Associate | 102 | $125 | $150 | $168 | $150 | $151 | $148 |
| | **51-200 Lawyers** | Partner | 54 | $146 | $165 | $223 | $197 | $161 | $170 |
| | | Associate | 60 | $156 | $165 | $185 | $186 | $153 | $157 |
| | **201-500 Lawyers** | Partner | 16 | $190 | $210 | $225 | $206 | $206 | $197 |
| **Insurance Defense: Other** | **50 Lawyers or Fewer** | Partner | 81 | $215 | $235 | $255 | $289 | $236 | $234 |
| | | Associate | 78 | $172 | $195 | $209 | $197 | $194 | $191 |
| | **51-200 Lawyers** | Partner | 100 | $215 | $230 | $290 | $265 | $270 | $277 |
| | | Associate | 47 | $180 | $200 | $238 | $216 | $224 | $227 |
| | **201-500 Lawyers** | Partner | 35 | $206 | $210 | $258 | $240 | $261 | $263 |
| | | Associate | 22 | $175 | $195 | $225 | $226 | $221 | $246 |
| | **501-1,000 Lawyers** | Partner | 32 | $240 | $265 | $351 | $359 | $301 | $278 |

Ex. 6, Page 451

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 453 of 501
Case 2:21-cv-06010-TJH-JC     Document #7342-0     Filed 01/06/26     Page 217 of 265
Page ID #:4589

# Section IV: In-Depth Analysis for Select US Cities

## New York, NY
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**     **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Intellectual Property: Patents | 201-500 Lawyers | Associate | 10 | $523 | $856 | $1,067 | $897 | $601 | $596 |
| | 501-1,000 Lawyers | Associate | 21 | $782 | $1,126 | $1,322 | $1,073 | $1,003 | $754 |
| | More Than 1,000 Lawyers | Partner | 17 | $1,050 | $1,470 | $1,568 | $1,307 | $1,287 | $1,038 |
| | | Associate | 13 | $925 | $1,051 | $1,220 | $1,055 | $892 | $823 |

Ex. 6, Page 452

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 454 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-21    Filed 01/06/26    Page 218 of 265
Page ID #:4590

# Section IV: In-Depth Analysis for Select US Cities

## Philadelphia, PA
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Bankruptcy and Collections** | **201-500 Lawyers** | Partner | 22 | $644 | $841 | $933 | $839 | $795 | $690 |
| | | Associate | 19 | $372 | $442 | $653 | $496 | $484 | $475 |
| **Commercial** | **51-200 Lawyers** | Partner | 17 | $500 | $918 | $1,181 | $884 | $873 | $772 |
| | | Associate | 10 | $494 | $593 | $649 | $589 | $455 | $350 |
| | **201-500 Lawyers** | Partner | 21 | $675 | $843 | $1,055 | $880 | $834 | $779 |
| | | Associate | 17 | $642 | $696 | $789 | $691 | $571 | $497 |
| | **501-1,000 Lawyers** | Partner | 11 | $713 | $915 | $1,055 | $991 | $873 | $884 |
| | | Associate | 11 | $579 | $685 | $765 | $735 | $662 | $516 |

Ex. 6, Page 453

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 455 of 501
Case 2:21-cv-06010-TJH-JC   Document #73422   Filed 01/06/26   Page 219 of 265
Page ID #:4591

# Section IV: In-Depth Analysis for Select US Cities

**Philadelphia, PA**
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Other** | **51-200 Lawyers** | Partner | 15 | $703 | $947 | $1,077 | $873 | $890 | $844 |
| | **201-500 Lawyers** | Partner | 14 | $722 | $815 | $921 | $833 | $779 | $684 |
| | **501-1,000 Lawyers** | Partner | 18 | $610 | $955 | $1,287 | $960 | $925 | $889 |
| | | Associate | 20 | $335 | $403 | $553 | $437 | $465 | $543 |
| **Corporate: Regulatory and Compliance** | **501-1,000 Lawyers** | Associate | 11 | $475 | $527 | $649 | $586 | $577 | $559 |
| **Employment and Labor: Other** | **201-500 Lawyers** | Partner | 11 | $434 | $478 | $650 | $618 | $624 | $613 |
| **Insurance Defense: Auto and Transportation** | **50 Lawyers or Fewer** | Partner | 30 | $205 | $205 | $221 | $208 | $197 | $191 |
| | | Associate | 34 | $190 | $200 | $224 | $204 | $194 | $177 |
| | **51-200 Lawyers** | Partner | 23 | $160 | $195 | $210 | $193 | $193 | $184 |
| | | Associate | 18 | $175 | $180 | $205 | $180 | $172 | $158 |

Ex. 6, Page 454

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 456 of 501
Case 2:21-cv-06010-TJH-JC     Document 73-23     Filed 01/06/26     Page 220 of 265
Page ID #:4592

# Section IV: In-Depth Analysis for Select US Cities

## Philadelphia, PA
By Practice and Firm Size

**2025 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Defense: Other | 50 Lawyers or Fewer | Partner | 64 | $205 | $239 | $293 | $263 | $239 | $226 |
| | | Associate | 58 | $190 | $225 | $269 | $231 | $207 | $186 |
| | 51-200 Lawyers | Partner | 45 | $200 | $215 | $225 | $220 | $230 | $230 |
| | | Associate | 33 | $198 | $205 | $205 | $203 | $193 | $187 |
| | 201-500 Lawyers | Partner | 51 | $205 | $210 | $224 | $220 | $222 | $231 |
| | | Associate | 48 | $180 | $195 | $199 | $209 | $196 | $202 |

Ex. 6, Page 455

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 457 of 501
Case 2:21-cv-06010-TJH-JC     Document 73-4     Filed 01/06/26     Page 221 of 265
Page ID #:4593

# Section IV: In-Depth Analysis for Select US Cities

## San Francisco, CA
By Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**                              **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Other** | **501-1,000 Lawyers** | Partner | 11 | $1,375 | $1,570 | $2,046 | $1,706 | $1,466 | $1,204 |
| **Employment and Labor: Other** | **501-1,000 Lawyers** | Partner | 13 | $517 | $574 | $726 | $628 | $678 | $592 |
| **Insurance Defense: Other** | **50 Lawyers or Fewer** | Partner | 22 | $233 | $290 | $337 | $284 | $276 | $265 |
| | | Associate | 14 | $225 | $254 | $280 | $251 | $226 | $201 |
| | **51-200 Lawyers** | Partner | 11 | $225 | $253 | $303 | $269 | $410 | $455 |
| | **201-500 Lawyers** | Associate | 85 | $230 | $230 | $240 | $235 | $225 | $209 |

Ex. 6, Page 456

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 458 of 501
Case 2:21-cv-06010-TJH-JC     Document 73425     Filed 01/06/26     Page 222 of 265
Page ID #:4594

# Section IV: In-Depth Analysis for Select US Cities

## Washington, DC
By Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | 50 Lawyers or Fewer | Partner | 15 | $600 | $668 | $747 | $686 | $652 | $627 |
| | 201-500 Lawyers | Partner | 28 | $899 | $980 | $1,156 | $1,038 | $947 | $894 |
| | | Associate | 23 | $582 | $658 | $782 | $707 | $710 | $608 |
| | 501-1,000 Lawyers | Partner | 24 | $1,154 | $1,374 | $1,621 | $1,439 | $1,327 | $1,119 |
| | | Associate | 15 | $961 | $995 | $1,247 | $1,123 | $938 | $763 |
| | More Than 1,000 Lawyers | Partner | 16 | $1,160 | $1,440 | $1,687 | $1,521 | $1,322 | $1,366 |
| | | Associate | 13 | $732 | $930 | $1,045 | $872 | $905 | $834 |
| Corporate: Antitrust and Competition | More Than 1,000 Lawyers | Partner | 11 | $1,055 | $1,225 | $1,330 | $1,251 | $1,336 | $1,284 |
| | | Associate | 18 | $616 | $791 | $1,022 | $818 | $909 | $888 |

Ex. 6, Page 457

woltersbluwer.com

Case 2:24-cv-04805-MCS-KS   Document 139-7   Filed 07/02/26   Page 459 of 501
Case 2:21-cv-06010-TJH-JC   Document 73-6   Filed 01/06/26   Page 223 of 265
Page ID #:3426
Page ID #:4595

# Section IV: In-Depth Analysis for Select US Cities

## Washington, DC
By Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Mergers, Acquisitions and Divestitures | More Than 1,000 Lawyers | Partner | 35 | $1,280 | $1,400 | $1,780 | $1,520 | $1,414 | $1,411 |
| | | Associate | 22 | $854 | $1,064 | $1,152 | $1,088 | $865 | $896 |
| Corporate: Other | 50 Lawyers or Fewer | Partner | 12 | $620 | $710 | $805 | $690 | $712 | $619 |
| | | Associate | 20 | $530 | $805 | $805 | $655 | $620 | $598 |
| | 51-200 Lawyers | Partner | 10 | $834 | $965 | $1,074 | $953 | $959 | $858 |
| | 201-500 Lawyers | Partner | 48 | $1,006 | $1,288 | $1,350 | $1,185 | $1,086 | $980 |
| | | Associate | 42 | $904 | $957 | $1,017 | $929 | $847 | $705 |
| | 501-1,000 Lawyers | Partner | 89 | $1,247 | $1,375 | $1,474 | $1,357 | $1,199 | $1,093 |
| | | Associate | 55 | $995 | $995 | $995 | $958 | $897 | $732 |
| | More Than 1,000 Lawyers | Partner | 62 | $1,124 | $1,373 | $1,686 | $1,397 | $1,321 | $1,184 |
| | | Associate | 67 | $710 | $906 | $1,070 | $931 | $860 | $762 |

Ex. 6, Page 458

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 460 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-7    Filed 01/06/26    Page 224 of 265
Page ID #:7342
Page ID #:4596

# Section IV: In-Depth Analysis for Select US Cities

## Washington, DC
By Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Corporate: Regulatory and Compliance | 50 Lawyers or Fewer | Partner | 51 | $613 | $667 | $710 | $666 | $659 | $617 |
| | | Associate | 21 | $350 | $392 | $530 | $467 | $447 | $376 |
| | 51-200 Lawyers | Partner | 23 | $806 | $964 | $1,183 | $987 | $875 | $804 |
| | | Associate | 17 | $495 | $556 | $666 | $588 | $543 | $494 |
| | 201-500 Lawyers | Partner | 45 | $853 | $980 | $1,295 | $1,087 | $949 | $897 |
| | | Associate | 23 | $560 | $615 | $695 | $699 | $652 | $635 |
| | 501-1,000 Lawyers | Partner | 82 | $995 | $1,159 | $1,375 | $1,192 | $1,256 | $1,118 |
| | | Associate | 58 | $845 | $995 | $995 | $910 | $896 | $760 |
| | More Than 1,000 Lawyers | Partner | 60 | $1,120 | $1,285 | $1,776 | $1,379 | $1,385 | $1,269 |
| | | Associate | 49 | $683 | $894 | $1,135 | $890 | $883 | $811 |
| Corporate: Tax | More Than 1,000 Lawyers | Partner | 20 | $1,202 | $1,523 | $1,664 | $1,515 | $1,424 | $1,355 |
| | | Associate | 16 | $713 | $958 | $1,091 | $920 | $905 | $805 |

Ex. 6, Page 459

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 461 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-7428    Filed 01/06/26    Page 225 of 265
Page ID #:4597

# Section IV: In-Depth Analysis for Select US Cities

## Washington, DC
By Practice Area and Firm Size

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Employment and Labor: Other** | **501-1,000 Lawyers** | Partner | 11 | $509 | $973 | $1,110 | $887 | $841 | $1,007 |
| | **More Than 1,000 Lawyers** | Partner | 19 | $888 | $1,007 | $1,219 | $1,076 | $955 | $931 |
| | | Associate | 10 | $513 | $735 | $838 | $699 | $620 | $625 |
| **Finance and Securities: Investments and Other Financial Instruments** | **More Than 1,000 Lawyers** | Partner | 10 | $1,144 | $1,261 | $1,483 | $1,306 | $1,406 | $1,343 |
| **Finance and Securities: Loans and Financing** | **501-1,000 Lawyers** | Partner | 20 | $1,078 | $1,365 | $1,582 | $1,390 | $1,393 | $1,117 |
| | **More Than 1,000 Lawyers** | Partner | 11 | $1,136 | $1,540 | $1,957 | $1,595 | $1,546 | $1,461 |
| | | Associate | 10 | $959 | $1,066 | $1,463 | $1,200 | $1,178 | $1,053 |
| **Government Relations** | **501-1,000 Lawyers** | Partner | 13 | $995 | $995 | $995 | $971 | $978 | $1,038 |
| **Insurance Defense: Other** | **50 Lawyers or Fewer** | Partner | 10 | $238 | $267 | $270 | $247 | $226 | $220 |
| **Intellectual Property:** | **501-1,000 Lawyers** | Partner | 16 | $751 | $1,250 | $1,398 | $1,149 | $1,174 | $1,139 |

Ex. 6, Page 460

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 462 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-29    Filed 01/06/26    Page 226 of 265
Page ID #:4598

# Section IV: In-Depth Analysis for Select US Cities

## Washington, DC
*By Practice Area and Firm Size*

**2025 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Practice Area | Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Intellectual Property: Patents** | **201-500 Lawyers** | Partner | 23 | $1,062 | $1,400 | $1,440 | $1,260 | $1,098 | $1,027 |
| | | Associate | 10 | $675 | $1,023 | $1,090 | $874 | $857 | $759 |
| | **501-1,000 Lawyers** | Partner | 22 | $1,130 | $1,375 | $1,375 | $1,338 | $1,160 | $1,014 |
| | | Associate | 14 | $975 | $995 | $1,009 | $1,019 | $875 | $705 |
| | **More Than 1,000 Lawyers** | Partner | 11 | $1,437 | $1,520 | $1,667 | $1,570 | $1,381 | $1,200 |
| **Requests for Information: Subpoena** | **501-1,000 Lawyers** | Partner | 29 | $843 | $972 | $1,055 | $1,040 | $975 | $1,010 |

Ex. 6, Page 461

Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 227 of 265
Page ID #:4398



# Section V: International Analysis

All data and analysis based on
data collected thru Q2 2025

wolterskluwer.com

Ex. 6, Page 462

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 464 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-1    Filed 01/06/26    Page 228 of 265
Page ID #:4600

# Section V: International Analysis

## Australia
By Role

**2025 - Real Rates for Associate and Partner**                           **Trend Analysis - Mean**

| Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---|----------------|--------|----------------|------|------|------|
| Partner | 60 | $452 | $580 | $736 | $635 | $605 | $561 |
| Associate | 73 | $262 | $311 | $430 | $380 | $369 | $349 |
| Paralegal | 17 | $151 | $200 | $251 | $210 | $225 | $185 |

Ex. 6, Page 463

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 465 of 501
Case 2:21-cv-06010-TJH-JC     Document 1-3     Filed 01/06/26     Page 229 of 265
Page ID #:4601

# Section V: International Analysis

## Australia
By Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Employment and Labor: Other** | **Non-Litigation** | Associate | 13 | $257 | $264 | $394 | $312 | $312 | $269 |
| **Intellectual Property: Trademarks** | **Non-Litigation** | Associate | 10 | $261 | $276 | $350 | $329 | $302 | $302 |

Ex. 6, Page 464

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 466 of 501
Case 2:21-cv-06010-TJH-JC     Document 73-3     Filed 01/06/26     Page 230 of 265
Page ID #:4602

# Section V: International Analysis

## Australia
By Firm Size and Role

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **51-200 Lawyers** | Associate | 12 | $196 | $261 | $290 | $367 | $293 | $294 |
| **More Than 1,000 Lawyers** | Partner | 14 | $574 | $644 | $1,015 | $806 | $781 | $698 |
| | Associate | 20 | $345 | $457 | $543 | $457 | $432 | $391 |

Ex. 6, Page 465

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS      Document 139-7      Filed 07/02/26      Page 467 of 501
Case 2:21-cv-06010-TJH-JC      Document 173-4      Filed 01/06/26      Page 231 of 265
Page ID #:4603

# Section V: International Analysis

**Canada**
By Role

**2025 - Real Rates for Partner, Associate and Paralegal**                      **Trend Analysis - Mean**

| Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---|----------------|--------|----------------|------|------|------|
| Partner | 273 | $534 | $750 | $946 | $757 | $725 | $659 |
| Associate | 79 | $375 | $580 | $828 | $627 | $600 | $544 |
| Paralegal | 145 | $191 | $288 | $365 | $279 | $276 | $248 |

Ex. 6, Page 466                wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 468 of 501
Case 2:21-cv-06010-TJH-JC    Document 173435    Filed 01/06/26    Page 232 of 265
Page ID #:4604

# Section V: International Analysis

## Canada
By Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | **Non-Litigation** | Partner | 43 | $806 | $975 | $1,093 | $943 | $892 | $866 |
| **Corporate: Other** | **Non-Litigation** | Partner | 41 | $618 | $881 | $996 | $854 | $874 | $838 |
|  |  | Paralegal | 18 | $237 | $295 | $355 | $297 | $305 | $292 |
| **Corporate: Regulatory and Compliance** | **Non-Litigation** | Partner | 25 | $833 | $1,050 | $1,150 | $981 | $886 | $817 |

Ex. 6, Page 467

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 469 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-6    Filed 01/06/26    Page 233 of 265
Page ID #:4605

# Section V: International Analysis

## Canada
By Firm Size and Role

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|-----------|------|---|----------------|--------|----------------|------|------|------|
| **50 Lawyers or Fewer** | Partner | 24 | $325 | $405 | $534 | $474 | $488 | $421 |
| **51-200 Lawyers** | Partner | 40 | $405 | $545 | $648 | $545 | $561 | $504 |
| **201-500 Lawyers** | Partner | 96 | $714 | $885 | $1,050 | $870 | $840 | $751 |
| | Associate | 24 | $461 | $741 | $865 | $684 | $658 | $591 |
| **501-1,000 Lawyers** | Partner | 72 | $648 | $795 | $999 | $839 | $821 | $754 |
| | Associate | 22 | $650 | $830 | $1,010 | $842 | $803 | $708 |

Ex. 6, Page 468

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 470 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-7    Filed 01/06/26    Page 234 of 265
Page ID #:4606

# Section V: International Analysis

**France**
By Role

**2025 - Real Rates for Associate and Partner**                                                    **Trend Analysis - Mean**

| Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---|----------------|--------|----------------|------|------|------|
| Partner | 80 | $521 | $680 | $907 | $740 | $722 | $636 |
| Associate | 128 | $350 | $435 | $610 | $509 | $495 | $418 |
| Paralegal | 20 | $214 | $296 | $434 | $302 | $309 | $259 |

Ex. 6, Page 469

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 471 of 501
Case 2:21-cv-06010-TJH-JC     Document 73-8     Filed 01/06/26     Page 235 of 265
Page ID #:4607

# Section V: International Analysis

### France
By Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Other** | **Non-Litigation** | Associate | 10 | $516 | $559 | $696 | $540 | $492 | $381 |

Ex. 6, Page 470

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 472 of 501
Case 2:21-cv-06010-TJH-JC    Document 1-3-39    Filed 01/06/26    Page 236 of 265
Page ID #:4608

# Section V: International Analysis

## France
By Firm Size and Role

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| **More Than 1,000 Lawyers** | Partner | 34 | $631 | $756 | $925 | $865 | $826 | $740 |
| | Associate | 63 | $414 | $541 | $705 | $604 | $567 | $468 |

Ex. 6, Page 471

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 473 of 501
Case 2:21-cv-06010-TJH-JC    Document 47-7    Filed 01/06/26    Page 237 of 265
Page ID #:4609

# Section V: International Analysis

**Germany**
By Role

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---|----------------|--------|----------------|------|------|------|
| Partner | 156 | $379 | $578 | $763 | $616 | $650 | $602 |
| Associate | 179 | $353 | $429 | $564 | $490 | $481 | $441 |
| Paralegal | 23 | $200 | $256 | $363 | $295 | $272 | $237 |

Ex. 6, Page 472

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 474 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-44    Filed 01/06/26    Page 238 of 265
Page ID #:7341
Page ID #:4610

# Section V: International Analysis

## Germany
By Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**

**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Commercial** | **Non-Litigation** | Partner | 15 | $363 | $410 | $751 | $522 | $659 | $530 |
| **Corporate: Other** | **Litigation** | Partner | 12 | $587 | $707 | $775 | $695 | $710 | $728 |
| | **Non-Litigation** | Partner | 10 | $682 | $718 | $730 | $738 | $875 | $801 |
| | | Associate | 15 | $414 | $580 | $706 | $585 | $546 | $471 |
| **Corporate: Regulatory and Compliance** | **Non-Litigation** | Partner | 13 | $419 | $520 | $578 | $541 | $633 | $594 |
| | | Associate | 13 | $338 | $400 | $460 | $476 | $509 | $405 |
| **Intellectual Property: Other** | **Non-Litigation** | Partner | 10 | $347 | $352 | $433 | $363 | $413 | $410 |
| **Intellectual Property: Patents** | **Litigation** | Partner | 23 | $660 | $739 | $885 | $713 | $668 | $562 |
| | **Non-Litigation** | Partner | 23 | $294 | $364 | $522 | $400 | $480 | $390 |
| | | Associate | 24 | $341 | $361 | $399 | $362 | $375 | $354 |

Ex. 6, Page 473

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 475 of 501
Case 2:21-cv-06010-TJH-JC    Document 73-2    Filed 01/06/26    Page 239 of 265
Page ID #:4611

# Section V: International Analysis

### Germany
By Firm Size and Role

**2025 - Real Rates for Associate and Partner**                                                    **Trend Analysis - Mean**

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|-----------|------|---|----------------|--------|----------------|------|------|------|
| **51-200 Lawyers** | Partner | 12 | $363 | $364 | $379 | $383 | $387 | $376 |
| **201-500 Lawyers** | Partner | 31 | $374 | $459 | $512 | $455 | $473 | $428 |
|  | Associate | 28 | $320 | $355 | $425 | $359 | $347 | $341 |
| **More Than 1,000 Lawyers** | Partner | 58 | $598 | $774 | $928 | $793 | $843 | $736 |
|  | Associate | 73 | $410 | $500 | $646 | $551 | $558 | $479 |

Ex. 6, Page 474

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 476 of 501
Case 2:21-cv-06010-TJH-JC     Document 173-3     Filed 01/06/26     Page 240 of 265
Page ID #:4612

# Section V: International Analysis

**United Kingdom**
By Role

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|------|---|----------------|--------|----------------|------|------|------|
| Partner | 440 | $606 | $830 | $1,201 | $947 | $929 | $838 |
| Associate | 718 | $387 | $525 | $757 | $593 | $596 | $537 |
| Paralegal | 232 | $163 | $236 | $309 | $249 | $257 | $236 |

Ex. 6, Page 475

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 477 of 501
Case 2:21-cv-06010-TJH-JC     Document 173-44     Filed 01/06/26     Page 241 of 265
Page ID #:4613

# Section V: International Analysis

## United Kingdom
By Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**          **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| Commercial | Non-Litigation | Partner | 20 | $586 | $744 | $1,170 | $899 | $911 | $897 |
| | | Associate | 31 | $407 | $476 | $753 | $626 | $603 | $604 |
| Corporate: Mergers, Acquisitions and Divestitures | Non-Litigation | Partner | 26 | $508 | $1,087 | $1,465 | $1,058 | $962 | $938 |
| | | Associate | 42 | $362 | $511 | $790 | $570 | $574 | $588 |
| Corporate: Other | Litigation | Partner | 12 | $1,081 | $1,380 | $1,683 | $1,343 | $998 | $774 |
| | | Associate | 22 | $590 | $818 | $1,001 | $761 | $679 | $542 |
| | Non-Litigation | Partner | 47 | $990 | $1,315 | $1,558 | $1,295 | $1,230 | $1,097 |
| | | Associate | 51 | $626 | $745 | $955 | $811 | $786 | $727 |
| | | Paralegal | 19 | $241 | $317 | $420 | $327 | $346 | $311 |

Ex. 6, Page 476

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 478 of 501
Case 2:21-cv-06010-TJH-JC    Document 139-7    Filed 01/06/26    Page 242 of 265
Page ID #:3445
Page ID #:4614

# Section V: International Analysis

### United Kingdom
By Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate: Regulatory and Compliance** | **Non-Litigation** | Partner | 25 | $842 | $1,013 | $1,199 | $1,011 | $980 | $939 |
| | | Associate | 39 | $485 | $696 | $868 | $738 | $757 | $655 |
| **Employment and Labor: Other** | **Non-Litigation** | Partner | 26 | $631 | $769 | $971 | $853 | $739 | $739 |
| | | Associate | 25 | $510 | $577 | $797 | $678 | $577 | $505 |
| **Finance and Securities: Investments and Other Financial Instruments** | **Non-Litigation** | Associate | 11 | $696 | $792 | $1,071 | $888 | $796 | $671 |
| **Intellectual Property: Other** | **Non-Litigation** | Associate | 17 | $378 | $414 | $451 | $474 | $419 | $413 |
| **Intellectual Property: Patents** | **Litigation** | Partner | 18 | $743 | $1,062 | $1,305 | $1,027 | $999 | $866 |
| | **Non-Litigation** | Partner | 17 | $519 | $585 | $742 | $621 | $553 | $560 |
| | | Associate | 17 | $364 | $450 | $582 | $467 | $404 | $404 |
| | | Paralegal | 15 | $84 | $170 | $252 | $189 | $227 | $234 |

Ex. 6, Page 477

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 479 of 501
Case 2:21-cv-06010-TJH-JC     Document 1-3446     Filed 01/06/26     Page 243 of 265
Page ID #:4615

# Section V: International Analysis

## United Kingdom
By Practice Area and Matter Type

**2025 - Real Rates for Associate and Partner**　　　　　　**Trend Analysis - Mean**

| Practice Area | Matter Type | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Intellectual Property: Trademarks** | **Non-Litigation** | Paralegal | 11 | $288 | $304 | $311 | $289 | $280 | $248 |
| **Miscellaneous: General Advice & Counsel** | **Non-Litigation** | Partner | 11 | $631 | $676 | $987 | $785 | $728 | $696 |
| | | Associate | 20 | $350 | $512 | $618 | $524 | $481 | $415 |
| **Real Estate: Leasing** | **Non-Litigation** | Associate | 31 | $292 | $363 | $408 | $396 | $361 | $386 |

Ex. 6, Page 478

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 480 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-7    Filed 01/06/26    Page 244 of 265
Page ID #:4616

# Section V: International Analysis

## United Kingdom
By Firm Size and Role

**2025 - Real Rates for Associate and Partner**　　　　　　　**Trend Analysis - Mean**

| Firm Size | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---|---|---|---|---|---|---|---|---|
| 50 Lawyers or Fewer | Partner | 31 | $509 | $530 | $772 | $626 | $568 | $538 |
| | Associate | 76 | $309 | $382 | $409 | $394 | $390 | $365 |
| 51-200 Lawyers | Partner | 11 | $467 | $514 | $922 | $691 | $700 | $734 |
| | Associate | 21 | $379 | $420 | $502 | $460 | $430 | $430 |
| 201-500 Lawyers | Partner | 14 | $670 | $1,134 | $1,325 | $1,029 | $918 | $805 |
| | Associate | 15 | $335 | $380 | $714 | $518 | $572 | $565 |
| 501-1,000 Lawyers | Associate | 11 | $655 | $1,045 | $1,308 | $1,000 | $927 | $857 |
| More Than 1,000 Lawyers | Partner | 204 | $783 | $1,070 | $1,322 | $1,118 | $1,053 | $924 |
| | Associate | 341 | $491 | $696 | $899 | $731 | $709 | $620 |

Ex. 6, Page 479

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 481 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-8    Filed 01/06/26    Page 245 of 265
Page ID #:4617

# Section V: International Analysis

## All Countries
By Role

**2025 - Real Rates for Associate and Partner**　　　　**Trend Analysis - Mean**

| Country | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---------|------|---|----------------|--------|----------------|------|------|------|
| **Argentina** | Associate | 19 | $118 | $280 | $508 | $314 | $298 | $300 |
| **Australia** | Partner | 60 | $452 | $580 | $736 | $635 | $605 | $561 |
| | Associate | 73 | $262 | $311 | $430 | $380 | $369 | $349 |
| | Paralegal | 17 | $151 | $200 | $251 | $210 | $225 | $185 |
| **Austria** | Associate | 16 | $413 | $619 | $710 | $565 | $536 | $443 |
| **Belgium** | Partner | 29 | $407 | $576 | $1,058 | $691 | $821 | $751 |
| | Associate | 61 | $279 | $418 | $574 | $506 | $552 | $466 |
| **Brazil** | Partner | 37 | $350 | $469 | $500 | $451 | $457 | $428 |
| | Associate | 44 | $180 | $274 | $410 | $293 | $269 | $237 |

Ex. 6, Page 480

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 482 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-9    Filed 01/06/26    Page 246 of 265
Page ID #:4618

# Section V: International Analysis

## All Countries
By Role

**2025 - Real Rates for Associate and Partner**                                  **Trend Analysis - Mean**

| Country | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---------|------|---|----------------|--------|----------------|------|------|------|
| **Canada** | Partner | 273 | $534 | $750 | $946 | $757 | $725 | $659 |
| | Associate | 79 | $375 | $580 | $828 | $627 | $600 | $544 |
| | Paralegal | 145 | $191 | $288 | $365 | $279 | $276 | $248 |
| **China** | Partner | 82 | $462 | $660 | $987 | $742 | $693 | $653 |
| | Associate | 98 | $340 | $420 | $650 | $521 | $486 | $432 |
| | Paralegal | 27 | $284 | $342 | $449 | $357 | $301 | $291 |
| **Finland** | Associate | 11 | $342 | $405 | $492 | $421 | $381 | $382 |
| **France** | Partner | 80 | $521 | $680 | $907 | $740 | $722 | $636 |
| | Associate | 128 | $350 | $435 | $610 | $509 | $495 | $418 |
| | Paralegal | 20 | $214 | $296 | $434 | $302 | $309 | $259 |
| **Germany** | Partner | 156 | $379 | $578 | $763 | $616 | $650 | $602 |
| | Associate | 179 | $353 | $429 | $564 | $490 | $481 | $441 |
| | Paralegal | 23 | $200 | $256 | $363 | $295 | $272 | $237 |

Ex. 6, Page 481

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 483 of 501
Case 2:21-cv-06010-TJH-JC    Document 73450    Filed 01/06/26    Page 247 of 265
Page ID #:4619

# Section V: International Analysis

## All Countries
By Role

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Country | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---------|------|---|----------------|--------|----------------|------|------|------|
| **Hong Kong** | Partner | 24 | $730 | $1,074 | $1,318 | $1,040 | $1,108 | $1,061 |
| | Associate | 49 | $287 | $443 | $769 | $553 | $543 | $553 |
| | Paralegal | 19 | $266 | $338 | $408 | $337 | $347 | $345 |
| **India** | Partner | 21 | $300 | $425 | $480 | $429 | $441 | $393 |
| | Associate | 29 | $145 | $200 | $240 | $208 | $241 | $235 |
| **Ireland** | Partner | 38 | $596 | $675 | $726 | $680 | $682 | $631 |
| | Associate | 57 | $354 | $433 | $512 | $430 | $456 | $407 |
| | Paralegal | 24 | $214 | $261 | $278 | $261 | $251 | $240 |
| **Israel** | Partner | 21 | $248 | $276 | $293 | $333 | $346 | $355 |
| | Associate | 16 | $158 | $180 | $316 | $226 | $215 | $228 |
| **Italy** | Partner | 23 | $400 | $551 | $735 | $575 | $605 | $653 |
| | Associate | 54 | $281 | $333 | $489 | $388 | $415 | $435 |

Ex. 6, Page 482

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 484 of 501
Case 2:21-cv-06010-TJH-JC     Document 73451     Filed 01/06/26     Page 248 of 265
Page ID #:4620

# Section V: International Analysis

### All Countries
By Role

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Country | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---------|------|---|----------------|--------|----------------|------|------|------|
| **Japan** | Partner | 25 | $310 | $409 | $556 | $500 | $573 | $527 |
| | Associate | 47 | $197 | $208 | $511 | $389 | $347 | $328 |
| | Paralegal | 20 | $116 | $134 | $217 | $160 | $172 | $163 |
| **Korea, Republic of** | Partner | 83 | $692 | $800 | $890 | $782 | $807 | $771 |
| | Associate | 65 | $346 | $400 | $490 | $413 | $427 | $407 |
| | Paralegal | 14 | $254 | $266 | $300 | $266 | $255 | $249 |
| **Luxembourg** | Partner | 14 | $752 | $869 | $1,187 | $950 | $887 | $769 |
| | Associate | 21 | $410 | $425 | $501 | $472 | $523 | $422 |
| **Mexico** | Partner | 22 | $350 | $451 | $510 | $468 | $501 | $461 |
| | Associate | 36 | $280 | $349 | $418 | $382 | $383 | $386 |
| **Netherlands** | Partner | 24 | $538 | $708 | $804 | $686 | $654 | $589 |
| | Associate | 45 | $311 | $405 | $501 | $418 | $443 | $402 |

Ex. 6, Page 483

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 485 of 501
Case 2:21-cv-06010-TJH-JC     Document 117-6     Filed 01/06/26     Page 249 of 265
Page ID #:3452
Page ID #:4621

# Section V: International Analysis

## All Countries
By Role

**2025 - Real Rates for Associate and Partner**            **Trend Analysis - Mean**

| Country | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---------|------|---|---------------|--------|----------------|------|------|------|
| **Poland** | Partner | 15 | $256 | $360 | $360 | $361 | $324 | $366 |
|  | Associate | 39 | $166 | $192 | $247 | $220 | $219 | $222 |
| **Singapore** | Partner | 18 | $357 | $787 | $1,132 | $808 | $812 | $806 |
|  | Associate | 25 | $425 | $617 | $911 | $681 | $605 | $604 |
| **Spain** | Partner | 23 | $668 | $722 | $820 | $710 | $687 | $641 |
|  | Associate | 65 | $321 | $447 | $595 | $483 | $477 | $450 |
|  | Paralegal | 12 | $263 | $307 | $324 | $294 | $228 | $215 |
| **Switzerland** | Partner | 28 | $581 | $669 | $771 | $714 | $648 | $619 |
|  | Associate | 29 | $396 | $453 | $526 | $459 | $436 | $448 |
| **Taiwan** | Partner | 13 | $388 | $518 | $548 | $484 | $468 | $438 |
|  | Associate | 36 | $220 | $260 | $385 | $313 | $277 | $273 |
| **Turkey** | Associate | 14 | $228 | $228 | $229 | $243 | $255 | $252 |

Ex. 6, Page 484

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 486 of 501
Case 2:21-cv-06010-TJH-JC    Document 173453    Filed 01/06/26    Page 250 of 265
Page ID #:4622

# Section V: International Analysis

## All Countries
By Role

**2025 - Real Rates for Associate and Partner**                    **Trend Analysis - Mean**

| Country | Role | n | First Quartile | Median | Third Quartile | 2025 | 2024 | 2023 |
|---------|------|---|----------------|--------|----------------|------|------|------|
| **United Arab Emirates** | Partner | 14 | $814 | $1,035 | $1,138 | $999 | $968 | $809 |
| | Associate | 22 | $466 | $559 | $690 | $576 | $635 | $553 |
| **United Kingdom** | Partner | 440 | $606 | $830 | $1,201 | $947 | $929 | $838 |
| | Associate | 718 | $387 | $525 | $757 | $593 | $596 | $537 |
| | Paralegal | 232 | $163 | $236 | $309 | $249 | $257 | $236 |
| **United States** | Partner | 9,072 | $420 | $675 | $1,099 | $820 | $817 | $774 |
| | Associate | 7,357 | $336 | $530 | $842 | $627 | $611 | $571 |
| | Paralegal | 3,515 | $150 | $226 | $350 | $271 | $264 | $253 |

Ex. 6, Page 485

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 487 of 501
Page ID #:3454
Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 251 of 265
Page ID #:4628



# Section VI: Matter Staffing Analysis

All data and analysis based on
data collected thru Q2 2025

Ex. 6, Page 486

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 488 of 501
Case 2:21-cv-06010-TJH-JC    Document #3465    Filed 01/06/26    Page 252 of 265
Page ID #:4624

# Section VI: Matter Staffing Analysis          Detailed Practice Areas

## Short Litigation Matters, 40 to 100 Total Hours Billed

2020 to 2025 -- Percentage of Hours Billed per Matter



| Practice Area | Partners | Associates | Paralegals | Other | n |
|---|---|---|---|---|---|
| Bankruptcy and Collections | 70% | 22% | 7% | | 164 |
| Commercial | 49% | 42% | 5% | 4% | 394 |
| Corporate | 42% | 45% | 6% | 7% | 315 |
| Corporate: Mergers, Acquisitions and Divestitures | 50% | 44% | 3% | 3% | 80 |
| Corporate: Other | 54% | 35% | 8% | 3% | 825 |
| Corporate: Regulatory and Compliance | 43% | 45% | 6% | 6% | 471 |
| Employment and Labor | 49% | 36% | 12% | 3% | 595 |
| Finance and Securities | 39% | 51% | 6% | 3% | 1538 |
| General Liability | 40% | 31% | 28% | | 524 |
| Insurance Defense | 49% | 37% | 14% | | 23560 |
| Intellectual Property: Other | 56% | 38% | 4% | 2% | 84 |
| Intellectual Property: Patents | 30% | 39% | 20% | 11% | 1473 |
| Intellectual Property: Trademarks | 42% | 27% | 29% | | 81 |
| Real Estate | 62% | 31% | 6% | | 1629 |

Ex. 6, Page 487

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 489 of 501
Case 2:21-cv-06010-TJH-JC    Document #3456    Filed 01/06/26    Page 253 of 265
Page ID #:4625

# Section VI: Matter Staffing Analysis

# Detailed Practice Areas

## Long Litigation Matters, More Than 100 Total Hours Billed

2020 to 2025 -- Percentage of Hours Billed per Matter



Ex. 6, Page 488

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 490 of 501
Case 2:21-cv-06010-TJH-JC     Document #3457     Filed 01/06/26     Page 254 of 265
Page ID #:4626

# Section VI: Matter Staffing Analysis

## Detailed Practice Areas

## Short Non-Litigation Matters, 40 to 100 Total Hours Billed

2020 to 2025 -- Percentage of Hours Billed per Matter



Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 491 of 501
Case 2:21-cv-06010-TJH-JC    Document #3458    Filed 01/06/26    Page 255 of 265
Page ID #:4627

# Section VI: Matter Staffing Analysis

## Detailed Practice Areas

### Long Non-Litigation Matters, More Than 100 Total Hours Billed

2020 to 2025 -- Percentage of Hours Billed per Matter



Ex. 6, Page 490

Case 2:21-cv-06010-TJH-JC    Document 170-6    Filed 01/06/26    Page 256 of 265
Page ID #:4628



# Section VII: Data Methodology

All data and analysis based on
data collected thru Q2 2025

wolterskluwer.com

Ex. 6, Page 491

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 493 of 501
Case 2:21-cv-06010-TJH-JC     Document 17-346     Filed 01/06/26     Page 257 of 265
Page ID #:4629

# Appendix: Data Methodology

## Invoice information

Data in DynamicInsights is taken from invoice line-item entries contained in invoices received and approved by participating companies through Wolters Kluwer. Invoice data were received in the Legal Electronic Data Exchange Standard (LEDES) format (LEDES.org). The following information was extracted from those invoices and their line items:

- Law firm (which exists as a random number in the ELM Solutions reference database)
- Timekeeper ID (which exists as a random number in the ELM Solutions reference database)
- Matter ID (which exists as a random number in the ELM Solutions reference database)
- Timekeeper's position (role) within the law firm (partner, associate, paralegal, etc.)
- Uniform Task-Based Management System (UTBMS) code set, task codes, and activity codes
- Date of service
- Hours billed
- Hourly rate billed
- Fees billed

## Non-invoice information

To capture practice area details, the matter ID within each invoice was associated with matter profiles containing areas of work in the systems of each company. The areas of work were then systematically categorized into legal practice areas. Normalization of practice areas was done based on company mappings to system-level practice areas available in the ELM Solutions system and by naming convention.

The majority of analyses included in DynamicInsights have been mapped to one of 12 practice areas, further divided into sub-areas and litigation/non-litigation.

To capture location and jurisdiction details, law firms and timekeepers were systematically mapped to the existing profiles within ELM Solutions systems, as well as with publicly available data sources for further validation and normalization. Where city location information is provided, it includes any address within that city's defined Core-Based Statistical Area (CBSA) as defined by the Office of Management and Budget (OMB). The CBSAs are urban centers with populations of 10,000 or more and include all adjacent counties that are economically integrated with that urban center.

Where the analyses focus on partners, associates, of counsel, and paralegals, the underlying data occasionally included some sub-roles, such as "senior partner" or "junior associate." In such instances, those timekeeper sub-roles were placed within the broader partner, associate, and paralegal segments. The years-of-experience for timekeepers is populated from data submitted by vendors within ELM Solutions systems and supplemented by available data from Martindale-Hubbell.

Demographics regarding law firm size, location, and lawyer years of experience were augmented by incorporating publicly available information.

Ex. 6, Page 492

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS     Document 139-7     Filed 07/02/26     Page 494 of 501
Case 2:21-cv-06010-TJH-JC     Document #3461     Filed 01/06/26     Page 258 of 265
Page ID #:4630

# Appendix: Data Methodology
## A Note on US Cities

Throughout the report, we have used city names to refer to CBSA and consistently used the principal city in the CBSA to refer to the entire area. The following are the shorthand city names used in this report and the corresponding CBSA designations, as defined by the OMB.

| Principal City | CBSA Name |
| --- | --- |
| Akron, OH | Akron, OH |
| Albany, NY | Albany-Schenectady-Troy, NY |
| Albuquerque, NM | Albuquerque, NM |
| Atlanta, GA | Atlanta-Sandy Springs-Alpharetta, GA |
| Austin, TX | Austin-Round Rock-Georgetown, TX |
| Baltimore, MD | Baltimore-Columbia-Towson, MD |
| Baton Rouge, LA | Baton Rouge, LA |
| Beaumont, TX | Beaumont-Port Arthur, TX |
| Billings, MT | Billings, MT |
| Birmingham, AL | Birmingham-Hoover, AL |
| Boise, ID | Boise, ID |
| Boston, MA | Boston-Cambridge-Newton, MA-NH |
| Bridgeport, CT | Bridgeport-Stamford-Norwalk, CT |
| Brownsville, TX | Brownsville-Harlingen, TX |
| Buffalo, NY | Buffalo-Cheektowaga, NY |
| Burlington, VT | Burlington-South Burlington, VT |
| Cape Coral, FL | Cape Coral-Fort Myers, FL |
| Charleston, SC | Charleston-North Charleston, SC |
| Charleston, WV | Charleston, WV |
| Charlotte, NC | Charlotte-Concord-Gastonia, NC-SC |
| Chicago, IL | Chicago-Naperville-Elgin, IL-IN-WI |
| Cincinnati, OH | Cincinnati, OH-KY-IN |
| Cleveland, OH | Cleveland-Elyria, OH |
| Columbia, SC | Columbia, SC |
| Columbus, OH | Columbus, OH |
| Dallas, TX | Dallas-Fort Worth-Arlington, TX |
| Dayton, OH | Dayton-Kettering, OH |
| Denver, CO | Denver-Aurora-Lakewood, CO |
| Des Moines, IA | Des Moines-West Des Moines, IA |
| Detroit, MI | Detroit-Warren-Dearborn, MI |
| El Paso, TX | El Paso, TX |
| Fresno, CA | Fresno, CA |
| Grand Rapids, MI | Grand Rapids-Kentwood, MI |
| Greenville, SC | Greenville-Anderson, SC |
| Gulfport, MS | Gulfport-Biloxi, MS |

Ex. 6, Page 493

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 495 of 501
Case 2:21-cv-06010-TJH-JC    Document #3462    Filed 01/06/26    Page 259 of 265
Page ID #:4631

# Appendix: Data Methodology
## A Note on US Cities

| Principal City | CBSA Name |
| --- | --- |
| Harrisburg, PA | Harrisburg-Carlisle, PA |
| Hartford, CT | Hartford-East Hartford-Middletown, CT |
| Honolulu, HI | Urban Honolulu HI |
| Houston, TX | Houston-The Woodlands-Sugar Land, TX |
| Huntsville, AL | Huntsville, AL |
| Indianapolis, IN | Indianapolis-Carmel-Anderson, IN |
| Jackson, MS | Jackson, MS |
| Jacksonville, FL | Jacksonville, FL |
| Kansas City, MO | Kansas City, MO-KS |
| Knoxville, TN | Knoxville, TN |
| Lafayette, LA | Lafayette, LA |
| Las Vegas, NV | Las Vegas-Henderson-Paradise, NV |
| Lexington, KY | Lexington-Fayette, KY |
| Little Rock, AR | Little Rock-North Little Rock-Conway, AR |
| Los Angeles, CA | Los Angeles-Long Beach-Anaheim, CA |
| Louisville, KY | Louisville/Jefferson County, KY-IN |
| Macon, GA | Macon-Bibb County, GA |
| Madison, WI | Madison, WI |
| Manchester, NH | Manchester-Nashua, NH |
| Memphis, TN | Memphis-Forrest City, TN-MS-AR |
| Miami, FL | Miami-Fort Lauderdale-Pompano Beach, FL |
| Milwaukee, WI | Milwaukee-Waukesha, WI |
| Minneapolis, MN | Minneapolis-St. Paul-Bloomington, MN-WI |
| Missoula, MT | Missoula, MT |
| Montgomery, AL | Montgomery, AL |
| Morgantown, WV | Morgantown, WV |
| Nashville, TN | Nashville-Davidson-Murfreesboro-Franklin, TN |
| New Haven, CT | New Haven-Milford, CT |
| New Orleans, LA | New Orleans-Metairie, LA |
| New York, NY | New York-Newark-Jersey City, NY-NJ-PA |
| Oklahoma City, OK | Oklahoma City, OK |
| Omaha, NE | Omaha-Council Bluffs, NE-IA |
| Orlando, FL | Orlando-Kissimmee-Sanford, FL |
| Oxnard, CA | Oxnard-Thousand Oaks-Ventura, CA |
| Pensacola, FL | Pensacola-Ferry Pass-Brent, FL |
| Philadelphia, PA | Philadelphia-Camden-Wilmington, PA-NJ-DE-MD |
| Phoenix, AZ | Phoenix-Mesa-Chandler, AZ |
| Pittsburgh, PA | Pittsburgh, PA |
| Portland, ME | Portland-South Portland, ME |

Ex. 6, Page 494

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 496 of 501
Case 2:21-cv-06010-TJH-JC    Document #3463    Filed 01/06/26    Page 260 of 265
Page ID #:4632

# Appendix: Data Methodology
## A Note on US Cities

| Principal City | CBSA Name |
|---|---|
| Portland, OR | Portland-Vancouver-Hillsboro, OR-WA |
| Providence, RI | Providence-Warwick, RI-MA |
| Raleigh, NC | Raleigh-Cary, NC |
| Reno, NV | Reno-Carson City-Fernley, NV |
| Richmond, VA | Richmond, VA |
| Riverside, CA | Riverside-San Bernardino-Ontario, CA |
| Roanoke, VA | Roanoke, VA |
| Rochester, NY | Rochester, NY |
| Sacramento, CA | Sacramento-Roseville-Folsom, CA |
| Salt Lake City, UT | Salt Lake City, UT |
| San Antonio, TX | San Antonio-New Braunfels, TX |
| San Diego, CA | San Diego-Chula Vista-Carlsbad, CA |
| San Francisco, CA | San Francisco-Oakland-Berkeley, CA |
| San Jose, CA | San Jose-Sunnyvale-Santa Clara, CA |
| San Juan, PR | San Juan-Bayamon-Caguas, PR |
| Savannah, GA | Savannah, GA |
| Scranton, PA | Scranton-Wilkes-Barre, PA |
| Seattle, WA | Seattle-Tacoma-Bellevue, WA |
| Shreveport, LA | Shreveport-Bossier City, LA |
| Sioux Falls, SD | Sioux Falls, SD |
| Spartanburg, SC | Spartanburg, SC |
| St. Louis, MO | St. Louis, MO-IL |
| Syracuse, NY | Syracuse, NY |
| Tallahassee, FL | Tallahassee, FL |
| Tampa, FL | Tampa-St. Petersburg-Clearwater, FL |
| Toledo, OH | Toledo, OH |
| Trenton, NJ | Trenton-Princeton, NJ |
| Tulsa, OK | Tulsa, OK |
| Virginia Beach, VA | Virginia Beach-Norfolk-Newport News, VA-NC |
| Washington, DC | Washington-Arlington-Alexandria, DC-VA-MD-WV |
| Wheeling, WV | Wheeling, WV-OH |
| Wichita, KS | Wichita, KS |
| Winston, NC | Winston-Salem, NC |
| Worcester, MA | Worcester, MA-CT |

Ex. 6, Page 495

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 497 of 501
Case 2:21-cv-06010-TJH-JC    Document 173-4    Filed 01/06/26    Page 261 of 265
Page ID #:4633
Page ID #:3464

# Appendix: Data Methodology

**Anonymization of the dataset**

Prior to inclusion in the ELM Solutions reference database, we systematically scrubbed the data of any information that would identify a particular matter, company, law firm, invoice, or timekeeper (individual). To ensure relationships necessary for analysis, those variables were assigned randomly generated numbers. To maintain data integrity and allow for proper analysis, these numbers are linked across data tables to enforce their associations. To further ensure anonymity and confidentiality:

- The information is published in such a manner as to make it reasonably impervious to reverse analysis should some attempt be made to determine what data might pertain to any company, law firm, timekeeper, invoice, or matter.

- Neither DyanmicInsights nor this report will reveal which ELM Solutions client or clients are included or excluded in its analyses.

- Clients are not and will not be informed as to whether their data are included within a particular facet of analysis.

- No textual description of any legal work performed by any individual exists in the ELM Solutions reference database.

**A note on insurance litigation**

Our aim is to provide a point of comparison for companies purchasing law firm services. To improve comparability, we removed data related to insurance company defense litigation for all analyses unless noted otherwise. Insurance litigation tends to be less expensive than other types of litigation, as it is typically more repetitive and less complex.

**"Real rate" definition**

The information in DynamicInsights consists of data taken from client invoices submitted by law firms for work performed through the service dates referenced in the platform. All invoices are submitted through Wolters Kluwer ELM Solutions' e-billing systems and are updated on a quarterly basis to ensure data recency and relevance.

The analyses contained in DynamicInsights are derived from aggregating hours, fees, and rates submitted as line items on those invoices. For a line item to qualify for inclusion, it had to undergo multiple and rigorous testing processes to ensure its validity.

For example, for a rate to be loaded to the ELM Solutions reference database and used in DynamicInsights, it must have been part of an invoice line entry in which all of the following items were included:

- Name of the biller
- Role of the biller
- Date of activity
- Hourly rate charged
- Time charged
- UTBMS code associated with the time charged
- Total amount charged for the activity

In addition, each line-item's hourly rate was validated against its "real rate" (calculated by dividing the total amount charged for the activity by the time charged). Any line items with an hourly rate that did not align closely with the real rate were not loaded to the reference database.

Real rate = Line-item total/Line-item hours (units)
Example: $4,000/10 hours = Real rate of $400

Adjustments the client made to line-item amounts subsequent to submission are not factored into the dataset. These types of adjustments may impact the effective rate paid by the client to the law firm but do not reflect the real rate billed.

In short, the real rate is the rate appearing on an approved invoice at the invoice line-item level.

Aggregations of data taken from millions of these line item–level invoice entries are the core of the information analyzed.

Ex. 6, Page 496

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 498 of 501
Case 2:21-cv-06010-TJH-JC    Document 17-6    Filed 01/06/26    Page 262 of 265
Page ID #:4634
Page ID #:3465

# Appendix: Data Methodology

## A note on negotiated rates and billing

Practices law firms can generally follow vary for submitting "negotiated" rates on invoices. Firms may submit the negotiated rate as the hourly rate identified on the invoice line item, insert a vendor line-item adjustment to ensure compliance, or provide a vendor invoice level adjustment to bring the total amount of the fees into compliance with agreed-on discounts. Although the former two are considered part of the real rate calculation, the latter can be problematic. It is not directly linked to a line item, and therefore, for the purposes of determining the rate, it should not be assumed that the adjustment is related to a specific line item. Invoice-level adjustments may represent a credit or some other type of adjustment placed on the invoice. To ensure these types of adjustments would not adversely impact the analysis contained within LegalVIEW DynamicInsights, the team reviewed the population of invoices and line items to determine what the deviation of the real rate might be based on inclusion or exclusion. The analysis demonstrated that the variance was not significant (less than 1%).

As such, we decided not to include the vendor-level adjustments in DynamicInsights.

## Types of matters included in the analysis

Matters within the ELM Solutions system are associated with areas of work described and defined by ELM Solutions clients. Those areas of work were analyzed and systematically categorized into legal practice areas. Normalization of practice areas was supported by mappings to system-level practice areas available in the ELM Solutions system and by naming convention.

All data included within DynamicInsights has been mapped to a corresponding practice area. The majority of our analyses focus on the following 14 practice areas:

- Bankruptcy and Collections
- Commercial
- Corporate
- Employment and Labor
- Environmental
- Finance and Securities
- General Liability
- Government Relations
- Insurance Defense
- Insurance Policies and Coverage
- Intellectual Property
- Marketing and Advertising
- Real Estate
- Request for Information

Within each client's areas of work, sub-areas are often identified. The lists that follow identify client areas of work and, within those areas, the sub-areas underneath each practice area. Often, the same sub-area appears within different practice areas. For example, the sub-area "General/Other" when listed under "Commercial and Contracts" refers to general work provided regarding Commercial and Contracts matters. When listed under the "Employment and Labor" practice area, the same sub-area refers to work provided on Employment and Labor. Where applicable and practicable, each area and sub-area has been further subdivided into litigation and non-litigation work for the purposes of granular analysis.

Ex. 6, Page 497

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 499 of 501
Case 2:21-cv-06010-TJH-JC    Document #73466    Filed 01/06/26    Page 263 of 265
Page ID #:4635

# Appendix: Data Methodology

**Bankruptcy and Collections**

Chapter 11
Collections
General/Other
Workouts and Restructuring

**Commercial (Commercial Transactions and Agreements)**

Contract Breach or Dispute
General, Drafting, and Review
General/Other

**Corporate[1]**

Antitrust and Competition
Corporate Development
General/Other
Governance
Information and Technology
International
Mergers, Acquisitions, and Divestitures
Partnerships and Joint Ventures
Regulatory and Compliance
Tax
Treasury
White Collar/Fraud/Abuse

**Employment and Labor**

ADA
Agreements
Compensation and Benefits
Discrimination, Retaliation, and Harassment/EEO
Employee Dishonesty/Misconduct
ERISA
General/Other
Immigration
OFCCP
OSHA
Union Relations and Negotiations/NLRB
Wages, Tips, and Overtime
Workers Compensations
Wrongful Termination

**Environmental**

General/Other
Health and Safety
Permits
Superfund
Waste/Remediation

**Finance and Securities**

Commercial Loans and Financing
Debt/Equity Offerings
Fiduciary Services
General/Other
Investments and Other Financial Instruments
Routine Financial Transactions
SEC Filings and Financial Reporting
Securities and Banking Regulations

---

[1] All references to "Corporate: General/Other" in the 2025 Real Rate Report are the aggregation of all Corporate subareas excluding the Mergers, Acquisitions, and Divestitures sub-area and the Regulatory and Compliance sub-area.

Ex. 6, Page 498

wolterskluwer.com

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 500 of 501
Case 2:21-cv-06010-TJH-JC    Document 73467    Filed 01/06/26    Page 264 of 265
Page ID #:4636

# Appendix: Data Methodology

## General Liability

Asbestos/Mesothelioma
Auto and Transportation
Consumer Related Claims
Crime, Dishonesty and Fraud
Employment
General/Other

Personal Injury/Wrongful Death
Premises
Product and Product Liability
Property Damage
Toxic Tort
Workplace Safety

## Government Relations

General/Other

## Insurance Defense

Advertising Injury
Asbestos/Mesothelioma
Auto and Transportation
Errors and Omissions
General/Other
Insurer Work Comp
Marine

Personal Injury/Wrongful Death
Pollution
Premises
Product and Product Liability
Professional Liability
Property Damage

## Insurance Policies and Coverage

Claims and Coverage Analysis
General/Other
Policy Coverage Dispute

## Intellectual Property

Copyrights
General/Other
Licensing

Opinions
Patents
Trademarks

## Marketing and Advertising

General/Other

## Real Estate

Construction/Development
Easement and Right of Way
General/Other
Land Use/Zoning/Restrictive Covenants
Landlord/Tenant Issues

Leasing
Liens
Property/Land Acquisition or Disposition
Titles

## Requests for Information

Subpoena

Ex. 6, Page 499

Case 2:24-cv-04805-MCS-KS    Document 139-7    Filed 07/02/26    Page 501 of 501
Case 2:21-cv-06010-TJH-JC    Document #73468    Filed 01/06/26    Page 265 of 265
Page ID #:4637



# About Wolters Kluwer ELM Solutions

ELM Solutions is the market-leading global provider of enterprise legal spend and matter management and legal analytics solutions. It provides a comprehensive suite of tools that address the growing needs of corporate legal operations and insurance claims departments to increase operational efficiency and reduce costs, including the LegalVIEW legal spend database featuring more than $200B+ in invoices. Corporate legal and insurance claims departments trust its innovative technology and end-to-end customer experience to drive world-class business outcomes. In 2025, Wolters Kluwer ELM Solutions earned Globee Awards for Achievement (Gold): Legal Technology Solutions – LegalVIEW DynamicInsights and Merit Awards for Business (Silver): Business Technology – LegalVIEW DynamicInsights.

Ex. 6, Page 500