# Exhibit 9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

JENNIE QUAN, individually and as
successor in interest to BENJAMIN
CHIN, deceased,

           Plaintiffs,

vs.                        Case No.  No. 2:24-cv-04805-MCS-KS

COUNTY OF LOS ANGELES;
MARISOL BARAJAS; HECTOR
VASQUEZ; and DOES 3-10, inclusive,

           Defendants.
_____/

STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEO DEPOSITION OF HECTOR VASQUEZ

THURSDAY, SEPTEMBER 25, 2025

Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No.  20243

APPEARANCES (Remote)


FOR THE PLAINTIFFS:

        LAW OFFICES OF DALE K. GALIPO
        BY:  DALE K. GALIPO, ESQ.
             HANG LE, ESQ.
        21800 Burbank Boulevard, Suite 310
        Woodland Hills, California 91367
        818.347.3333
        dalekgalipo@yahoo.com
        hlee@galipolaw.com

FOR THE DEFENDANTS:

        HURRELL CANTRALL LLP
        BY:  THOMAS C. HURRELL, ESQ.
             JERAD MILLER, ESQ.
        725 S. Figueroa Street, Suite 3800
        Los Angeles, California 90017
        213.426.2000
        thurrell@hurrellcantrall.com
        jjmiller@hurrellcantrall.com

ALSO PRESENT:

        Karen Torres-Corona, Videographer

                --oOo--

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 2

Hector Vasquez

INDEX OF EXAMINATION

WITNESS:  HECTOR VASQUEZ

EXAMINATION BY                                              PAGE

        MR. GALIPO.............................5

EXHIBITS FOR REFERENCE

EXHIBIT                  DESCRIPTION                  PAGE

1 - Still shot of body-worn camera footage of
      Hector Vasquez..............................72

2 - Still shot of body-worn camera footage of
      Hector Vasquez..............................72

3 - Still shot of body-worn camera footage of
      Hector Vasquez..............................73

4 - Still shot of body-worn camera footage of
      Hector Vasquez..............................73

5 - Still shot of body-worn camera footage of
      Hector Vasquez..............................73

6 - Still shot of body-worn camera footage of
      Hector Vasquez..............................74

7 - Still shot of body-worn camera footage of
      Hector Vasquez..............................75

8 - Body-worn camera footage, Bates-stamped
      COLA 00855.................................67

--oOo--

Hector Vasquez

A.   Correct.

Q.   As part of your training in handling situations like this, are you trained not to panic?

A.   I think that they try to do that, yes.

Q.   Okay.  I think you told me at the beginning that you did watch some of the body-worn camera footage?

A.   Yes.

Q.   So we're going to try to just look at these briefly.  And I may play it through or stop it and ask you a few questions.  I have Exhibits 1 through 7, I'm going briefly show you in a moment.  But if it's okay, we're going to start with Exhibit 8, because I think that's a portion of your body-worn camera footage, and we're going to try to play it.  Hopefully you'll be able to see it.

And for the record -- Hang, is it 2:08, in the bottom left?

MS. LE:  Yeah.  So for the record, this is Bates stamp COLA 00855.  We're starting in the video at 2:08; but on the Axon timestamp, it's 11:41 and 52 seconds.

(Exhibit Number 8 was marked.)

MR. GALIPO:  Okay.  Let's play.

(Video being played.)

MR. GALIPO:  Okay.  We stopped it at -- is that

6:03 on the bottom left?

MS. LE:   It's 6:03.   And the stamp on the Axon body cam is 11:45 and 47 seconds.

MR. GALIPO:  Okay.  Can we go back to the beginning again?  And I'm just going to stop it a few times and ask the detective a few questions.

(Video being played.)

MR. GALIPO:  Okay.  Stop it right there.

BY MR. GALIPO:

Q.   All right.  I stopped it at 2:16.  Is that Deputy De la Torre?

A.   Yes.

Q.   And there seems to be an Asian woman on the sidewalk.  Is that the one that you had a brief -- exchanged some words with?

A.   Yeah.  She's the one with the bloody hands.

Q.   Okay.  You now know that to be his mother?

A.   I now know that to be his mother, yes.

Q.   Okay.  All right.  Let's continue, please.

(Video being played.)

MR. GALIPO:   Let's stop right there.

BY MR. GALIPO:

Q.   So that's, I think, at -- is that 2:28?

MS. LE:   That's 2:28.   And on Axon body cam timestamp, it's 11:42 and 13 seconds.

Hector Vasquez

Q.   Is this one of the times when the lady said, "Don't shoot him," or words to that effect?

MR. GALIPO:  Okay.  Let's continue.

(Video being played.)

MR. GALIPO:  Let's stop it again, please.

BY MR. GALIPO:

Q.   So this is at 3:02.  Was she continuing to try to talk to you, if you recall?

A.   I don't remember.

Q.   Okay.  And is this the time frame where you're putting in the slugs?

A.   Correct.

Q.   Okay.  Let's continue, please.

(Video being played.)

MR. GALIPO:  Stop it if you can.

BY MR. GALIPO:

Q.   Okay.  We stopped it at -- is that 3:09?

MS. LE:  It's 5:09.

MR. GALIPO:  5:09.

MS. LE:  Yeah.  And the Axon timestamp is 11:44 and 53 seconds.

BY MR. GALIPO:

Q.   Is he at this point walking northbound?

A.   Yes.

Q.   And you're moving, as you described earlier, on

the sidewalk?

A.    Correct.

Q.    Okay.

MR. GALIPO:  Let's continue, please.

(Video being played.)

MR. GALIPO:  Stop it right there.

BY MR. GALIPO:

Q.    Okay.  Did you hear the shot?

A.    Yes.

Q.    Was that your shot, if you know, or someone else's shot?

A.    Not my shot.

Q.    Okay.  And he still would be facing northbound at this point?

A.    Yes.

MR. GALIPO:  Alright.  Let's try, if we can, to stop it when we hear the next shot.

BY MR. GALIPO:

Q.    Okay.  Would that be your first shot?

A.    Yes.

Q.    And that's at -- is that 5:25 --

A.    Yes.

Q.    -- on the lower left?

And on the upper right?

MS. LE:  In the upper right, it's 11:45 and 10

seconds.

MR. GALIPO:  Okay.

BY MR. GALIPO:

Q.    And he still would be, at this point, it looks like facing northbound; is that correct?

A.    Correct.

MR. GALIPO:  Okay.  Please continue.

(Video being played.)

MR. GALIPO:  Let's stop.  Okay.  We stopped at what, at 5:30?

MS. LE:  5:30.  And on the Axon timestamp it's 11:45 and 15 seconds.

BY MR. GALIPO:

Q.    Okay.  Did you see he appears to be bent forward to some extent here?

A.    Yes.

Q.    Do you know if you fired your second shot yet or not?  Can you tell?

A.    I don't think so.

Q.    Do you recall him bending forward at some point before you fired your second shot?

A.    No.

MR. GALIPO:  Okay.  Please continue.

(Video being played.)

MR. GALIPO:  Okay.  We can stop it.

Hector Vasquez

BY MR. GALIPO:

Q.    Does this refresh your recollection that he ended up on his back at some point?

A.    Yes, it looks like he's on his back.

Q.    Okay.  Okay.  Let's look at Exhibit 1, if we can, which I think is a still shot from your body-worn camera.

(Exhibit Number 1 was marked.)

BY MR. GALIPO:

Q.    Okay.  Are you able to see this on your screen?

A.    Yes.

MR. GALIPO:  And Hang, what's the time stamp here?

MS. LE:  11:44 and 59 seconds.

BY MR. GALIPO:

Q.    And can you tell if he is walking northbound on Diamond Bar at this point?

A.    Yes.

Q.    Does he appear to be?

A.    It looks like he is, yes.

Q.    Okay.  And then let's look at Exhibit 2, please.

(Exhibit Number 2 was marked.)

BY MR. GALIPO:

Q.    And this looks like 11:45 and 5 seconds.  And

does he still look to be northbound on Diamond Bar in

this frame?

     A.   Yes.

     Q.   Can we go to Exhibit 3, please.

          (Exhibit Number 3 was marked.)

BY MR. GALIPO:

     Q.   And this is at 11:45 and 9 seconds.  Does he

still appear to be walking or facing northbound on

Diamond Bar Boulevard?

     A.   That's what it looks like in the still, yes.

     Q.   Okay.  Can we go to Exhibit 4, please.

          (Exhibit Number 4 was marked.)

BY MR. GALIPO:

     Q.   And this is at 11:45 and 11 seconds.  Again, he

still appears to be facing or walking northbound on

Diamond Bar Boulevard here?

     A.   Yes, that's what it looks like.

     Q.   All right.  Can we go to Exhibit 5, please.

          (Exhibit Number 5 was marked.)

BY MR. GALIPO:

     Q.   And this is at 11:45:14.  Did you see some

smoke in this image?

     A.   Not smoke, but there's a little blurriness or

-- I don't know what it is.

     Q.   Okay.  Does he appear to be slightly bent over

in this image?

A.   He does.

Q.   Still generally facing northbound?

A.   Looks like it.

Q.   Okay.  Let's go to the next exhibit, I think will be 6.

(Exhibit Number 6 was marked.)

BY MR. GALIPO:

Q.   And this is at 11:45:14.  Again, he appears to be bent over, somewhat facing northbound in this image?

A.   I can't really tell.

Q.   Hard to tell?

A.   Yeah.  I'm having a hard time.  It's kind of small.

MR. GALIPO:  Okay.  Are we able to zoom in at all for him, Hang?

BY MR. GALIPO:

Q.   Is it easier to see now that's zoomed in a little bit?

A.   I'm not -- no.

MR. HURRELL:  The question is, is he standing upright or --

BY MR. GALIPO:

Q.   Yeah.  Can you -- well, first of all, can you see him in this image?

A.    It's very blurry, but I can see what I believe to be him, yes.

Q.    And does he appear to be generally facing northbound?

A.    It looks like -- I would say standing straight.

Q.    Okay.

A.    And looks like his feet are offset with his left foot kind of behind his right foot.

Q.    Okay.  Do you recall what color his vest was?

A.    It was dark.  I'm assuming it was black.

Q.    Okay.  Do you see in this image a little bit of his white shirt showing from the bottom of the vest?

A.    I see white.  I can tell that maybe it's his arm.  And I'm not sure if it's his shirt or pants that is showing.

Q.    Okay.  All right.  Can we look at, I guess, 7, please.

(Exhibit Number 7 was marked.)

BY MR. GALIPO:

Q.    Okay.  This is at 11:45:15.  Are you able to see him?  I know it's probably small, but can you see him in this image?

A.    Yeah.

Q.    Okay.  Can we zoom in a little bit on him, Hang?

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 75

Can you see him slightly bent over, still directionally northbound?

A.   Slightly bent over with his feet are more -- more offset, it looks like.

Q.   But generally facing northbound?

A.   I mean, from the camera -- from the photo still, I guess if I have to give it a direction it would be more northwesterly at this point.

Q.   Do you see what appears to be an object -- is that your casing, if you know?

A.   Yes.  Right in the middle of the screen, pretty much.

Q.   Can you tell from looking at this image, Exhibit 7, whether this is your first shot or second shot?

A.   I don't know, not from the image alone.

Q.   Okay.  Thank you.

MR. GALIPO:  Okay.  I think we'll take our last break, for ten minutes.  And then I'm confident I'll be able to finish within like 20 minutes of coming back, Tom.

MR. HURRELL:  Sounds good.

MR. GALIPO:  So we'll take our last break.  And I'll be back in ten minutes.  And we'll send these exhibits to Kimberly and Tom and Jerad after the depo.

a few questions.

MR. GALIPO:  See if we can play that Hang, and I'll let you know if we need to stop it.

(Exhibit Number 9 was marked.)

BY MR. GALIPO:

Q.   And it looks like the time is --

MS. LE:  We're starting at 7:35.  And the time stamp on the Axon body cam is 11:44 and 34 seconds.

MR. GALIPO:  Okay.  Thank you.

(Video being played.)

MR. GALIPO:  All right.  Can you stop it there? Where did we stop it, Hang?

MS. LE:  This is 8:15.  And the video on the timestamp on the Axon body cam 11:45 and 13 seconds.

BY MR. GALIPO:

Q.   Okay.  Are you able to see that on your screen, Detective?

A.   Yes.

Q.   And have you heard a couple shots go off, so far?

A.   It sounded like, yes.

Q.   Could you tell if any of those shots that went on so far were yours?

A.   I don't know.

Q.   Okay.  Can you see the decedent in this image

on your screen?

A. Yes.

Q. Would you agree that his upper body appears to be facing north in this image?

A. It looks like it, yes.

Q. Okay. And -- and it's your understanding the gun we're looking at here would be Deputy Barajas's gun; correct?

A. Yes.

Q. Okay.

MR. GALIPO: Can we go slightly forward and stop again, please.

(Video being played.)

MR. GALIPO: Okay. Where are we stopped now?

MS. LE: 8:16. And the Axon body time stamp is 11:45 and 15 seconds.

BY MR. GALIPO:

Q. Can you see him in this image, Detective?

A. Yes.

Q. Does he appear to be somewhat bent or canted forward at this point?

A. Yes, somewhat.

Q. Does he appear to be pointing the rifle at anyone at this point, in this image?

A. It looks like he has it gripped, but I can't

tell where it's pointing.

Q.   Okay.  Would you agree that he's still -- he's not turned west, at least at this point?

A.   Well, his feet are starting to offset.  And in the still it still looks like he's facing north.

MR. GALIPO:  What's the time frame on this again, Hang?

MS. LE:  11:45 and 15 seconds.

MR. GALIPO:  Okay.  Go ahead and play.

(Video being played.)

MR. GALIPO:  Stop.

Q.   Do you know if that last shot was your shot or not?

A.   I don't know.

Q.   Okay.  Let's just back it up and play it one last time for the detective.

(Video being played.)

MR. GALIPO:  Not the whole thing, just the shooting sequence.  Yeah.  Where are we starting?

MS. LE:  We're at 8:03, which is 11:45 and 2 seconds.

MR. GALIPO:  Okay.  Thank you.

(Video being played.)

MR. GALIPO:  Okay.  I think this is good to stop here.  Where did we stop?

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 80

MS. LE: This is 9:19. And the Axon body time stamp is 11:46 and 18 seconds.

BY MR. GALIPO:

Q. Okay. Did you notice, Detective, when you listened to and watched Deputy Barajas's body worn camera, it appeared that she fired more than one shot?

A. Looks like it, yes.

Q. Is it your understanding now that she fired multiple shoots?

A. Yes.

Q. But you're saying, at the time of the incident, you were just aware of the first shot?

A. Correct.

Q. Okay.

MR. GALIPO: Tom, I think that's all the questions I have. I don't know if you have any questions today?

MR. HURRELL: I don't.

MR. GALIPO: Okay. So Kimberly -- I guess we can go off the video record. First, we'll go off the video record.

THE VIDEOGRAPHER: We're off the record at 11:28 a.m.

MR. HURRELL: I'll have a copy.

(11:28 a.m., deposition concluded.)

STATE OF CALIFORNIA)
                   ) ss:
COUNTY OF BUTTE    )


          I, KIMBERLY E. D'URSO, do hereby certify:


          That the witness named in the foregoing

deposition was present remotely and duly sworn to testify

to the truth in the within-entitled action on the day and

date and at the time and place therein specified;

          That the testimony of said witness was reported

by me in shorthand and was thereafter transcribed through

computer-aided transcription;

          That the foregoing constitutes a full, true and

correct transcript of said deposition and of the

proceedings which took place;

          Further, that if the foregoing pertains to the

original transcript of a deposition in a federal case,

before completion of the proceedings, review of the

transcript [ ] was [ ] was not requested.

          That I am a certified stenographic reporter and

a disinterested person to the said action;

          IN WITNESS WHEREOF, I have hereunder subscribed

my hand this 30th day of September, 2025.

_____

KIMBERLY D'URSO, CSR NO. 11372, RPR