# Exhibit 10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

JENNIE QUAN, individually and as
successor in interest to BENJAMIN
CHIN, deceased,

       Plaintiffs,

vs.              Case No.  No. 2:24-cv-04805-MCS-KS

COUNTY OF LOS ANGELES;
MARISOL BARAJAS; HECTOR
VASQUEZ; and DOES 3-10, inclusive,

       Defendants.
_____/


STENOGRAPHIC REPORTER'S TRANSCRIPT OF

REMOTE VIDEO DEPOSITION OF MARISOL BARAJAS

FRIDAY, SEPTEMBER 26, 2025


Reported Stenographically by:

KIMBERLY D'URSO, CSR 11372, RPR

Job No.   20346

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 1

APPEARANCES (Remote)


 FOR THE PLAINTIFFS:

          LAW OFFICES OF DALE K. GALIPO
          BY:  DALE K. GALIPO, ESQ.
               HANG LE, ESQ.
          21800 Burbank Boulevard, Suite 310
          Woodland Hills, California 91367
          818.347.3333
          dalekgalipo@yahoo.com
          hlee@galipolaw.com

 FOR THE DEFENDANTS:

          HURRELL CANTRALL LLP
          BY:  THOMAS C. HURRELL, ESQ.
               JERAD MILLER, ESQ.
          725 S. Figueroa Street, Suite 3800
          Los Angeles, California 90017
          213.426.2000
          thurrell@hurrellcantrall.com
          jjmiller@hurrellcantrall.com

 ALSO PRESENT:

          Karen Torres-Corona, Videographer

                    --oOo--

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 2

that in your statement as well?

A.   Yes, not towards -- not towards -- at least not within my view.

Q.   Yeah.  Do you recall being asked if he ever raised the rifle at any time, and you said no?

A.   Well, towards my -- my point of view, no.

Q.   So from your point of view, did you see him raise the rifle at any time?

A.   No.

Q.   Do you recall also saying that you didn't believe he reacted to your first shot?

A.   Yes.

Q.   And that after he didn't react to your first shot, that's when you panicked even more?  Do you recall saying that?

A.   Yes.

Q.   I have a few still photos I want to show you, and I'm going to start with Exhibit 1.  We're going to try to put it on the screen and see if we can look at it together.

(Exhibit Number 1 was marked.)

MR. GALIPO:  Can we enlarge that at all, Ms. Le?  Thank you.

BY MR. GALIPO:

Q.   Are you able to see that on your screen?

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 48

A.   Yes.

Q.   Was this about Mr. Quan's position, relative to you, when you fired your first shot?

A.   Yes.

Q.   Can we look at Exhibit 2, please.

(Exhibit Number 2 was marked.)

BY MR. GALIPO:

Q.   Can you see Mr. Quan in this image?

A.   Yes.

Q.   Can you tell if he appears to be reacting at all to that shot?

A.   No.

MR. HURRELL:  Well, belated objection.  Vague and ambiguous.  From the still, we can't tell whether this is before or after the shot.

MR. GALIPO:  Okay.  That's fair enough.

BY MR. GALIPO:

Q.   Do you ever recall him in this position that we see in Exhibit 2?

A.   Yes.

MR. GALIPO:  If we can look at Exhibit 3, please.

(Exhibit Number 3 was marked.)

BY MR. GALIPO:

Q.   So he would have been in the number one

southbound lane?  Does that sound correct?

A.    Yes.

Q.    And it looks like -- is your car in the number two lane?

A.    Yes.

Q.    Almost looks like there's three southbound lanes.  Does that sound right?

A.    Yes, sir.

Q.    Maybe one's for parking?

A.    No, I don't believe so, sir.

MR. HURRELL:  Actually, it looks like the number one lane is the left-hand turn lane.

MR. GALIPO:  Oh, I see.

THE WITNESS:  Crooked Creek.

MR. HURRELL:  Yeah.

MR. GALIPO:  Okay.  Thank you.

All right.  Let look at Exhibit 4, please.

(Exhibit Number 4 was marked.)

BY MR. GALIPO:

Q.    Does this look like it's kind of your point of view, relative to Mr. Quan?

A.    Yes.

Q.    And was he in this approximate position when you fired at least some of your shots?

A.    Yes.

MR. GALIPO:  Exhibit 5, please.

(Exhibit Number 5 was marked.)

BY MR. GALIPO:

Q.    I think you indicated earlier, at some point he bent over slightly?  Do you recall that?

A.    Yes, sir.

Q.    Is this what you were describing, this basic position, when he just bent over slightly, initially?

A.    Yes, sir.

Q.    And do you believe this would be after at least some of the shots were fired?

A.    Yes.

MR. GALIPO:  Can we look at Exhibit 6, please?

BY MR. GALIPO:

Q.    At some point, does he bend over a little bit more than slightly?

A.    Yes.

Q.    And do you know if any shots were fired after he was in this position that we see in Exhibit 6?

A.    I can't recall, sir.

MR. GALIPO:  Could we look at Exhibit 7, please?

(Exhibit Numbers 6 and 7 was marked.)

BY MR. GALIPO:

Q.    Did you fire any shots while Mr. Quan was in

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 52

the position we see here?

A.   I can't recall, sir.

Q.   Do you recall if you heard any shots from Deputy Vasquez when Mr. Quan was in the position we see here?

A.   I can't recall if it was after or before, sir.

Q.   Okay.

MR. GALIPO:   Can we look at Exhibit 8, please?

(Exhibit Number 8 was marked.)

BY MR. GALIPO:

Q.   This looks like a similar position that we saw on Exhibit 7; is that correct?

A.   Yes.

Q.   And it looks like the gun is essentially pointed down towards the ground?   Would you agree?

A.   Yes.

MR. GALIPO:   And Exhibit 9, please.

(Exhibit Number 9 was marked.)

BY MR. GALIPO:

Q.   Again, similar position, you would agree, that he's bent forward with the gun pointed down?   Is that fair?

A.   Yes.

Q.   And you're saying you're not sure if any shots were fired with him in this position?

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 53

A.    Correct.

MR. GALIPO:   Exhibit 10.

(Exhibit Number 10 was marked.)

MR. GALIPO:   And Exhibit 11, please.

(Exhibit Number 11 was marked.)

BY MR. GALIPO:

Q.    Do you recall him being in this position we see in Exhibit 11, at some point before he went to the ground?

A.    Yes.

Q.    And we have just two more.

MR. GALIPO:   Exhibit 12, please.

(Exhibit Number 12 was marked.)

BY MR. GALIPO:

Q.    Again, it looks like he's bent forward with the gun pointed down.  Would you agree?

A.    Yes.

Q.    And it looks like --

MR. GALIPO:   If we can go to 13.

(Exhibit Number 13 was marked.)

BY MR. GALIPO:

Q.    It looks like your gun is in one hand at this point; correct?

A.    Yes.

Q.    Would that give you any information as to

whether you were still firing or whether you stopped firing at this point?

A.   I believe I had to use my other hand to key my radio, sir, for additional radio traffic.

Q.   I see.  Do you recall hearing a shot from Deputy Vasquez about this time frame, with Mr. Quan in this position?

A.   I do not recall, sir.

Q.   Okay.  I think we just have the two body-worn cameras.

MR. GALIPO:  What did we go up to?  Was it 13, Kimberly?

THE CERTIFIED STENOGRAPHER:  That's correct.

MR. GALIPO:  Ms. Le, can we show a portion, first of Deputy Vasquez's body-worn camera, of the shooting?

THE CERTIFIED STENOGRAPHER:  And will this be marked as an exhibit, Mr. Galipo?

MR. GALIPO:  Yes.  We'll make this 14.

(Exhibit Number 14 was marked.)

MR. GALIPO:  Okay.  We're starting it?

MS. LE:  It's 4:51.  And the time stamp on the Axon body cam is 11:44 and 36 seconds.

MR. GALIPO:  Okay.  Please play.

(Video being played.)

Madison Barajas

A.    Yes.

Q.    Okay.

MR. GALIPO:  Let's, lastly, just show a portion, if we can, of Deputy Barajas body-worn camera. We'll mark that as Exhibit 15, please.

(Exhibit Number 15 was marked.)

MS. LE: And we're 7:26 in the video, which is 11:44, and 25 seconds on the Axon timestamp.

MR. GALIPO:  Thank you, Hang.

(Video being played.)

MR. GALIPO:  You can stop.

BY MR. GALIPO:

Q.    Were you able to tell from looking at it how many shots you fired?

A.    It sounded like four, sir.

Q.    Okay.  And could you tell -- and I can play it again -- whether there was any shots fired after your last shot?

A.    If I can tell?

Q.    Yes, by -- by watching and listening to the video.  We can play it back if you like.

MR. GALIPO:  Go a little bit back, if you can, Ms. Le?

(Video being played.)

MR. GALIPO:  Okay.

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 57

STATE OF CALIFORNIA)
                   ) ss:
COUNTY OF BUTTE    )

            I, KIMBERLY E. D'URSO, do hereby certify:

            That the witness named in the foregoing deposition was present remotely and duly sworn to testify to the truth in the within-entitled action on the day and date and at the time and place therein specified;

            That the testimony of said witness was reported by me in shorthand and was thereafter transcribed through computer-aided transcription;

            That the foregoing constitutes a full, true and correct transcript of said deposition and of the proceedings which took place;

            Further, that if the foregoing pertains to the original transcript of a deposition in a federal case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

            That I am a certified stenographic reporter and a disinterested person to the said action;

            IN WITNESS WHEREOF, I have hereunder subscribed my hand this 30th day of September, 2025.

_____

KIMBERLY D'URSO, CSR NO. 11372, RPR

Jennie Quan v. County of Los Angeles, et al.
Focus Litigation Solutions

Page: 62